# No. 25-1177

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

**In re: U LOCK INC.,**

**Debtor.**

**CHRISTINE BIROS,**

**Movant-Appellee,**

**v.**

**GEORGE SNYDER,**

**Objector-Creditor-Appellant**

---

On Appeal from the Judgment Entered December 31, 2024, by the United States District Court for the Western District of Pennsylvania, No. 2:24cv00135 (Hon. Cathy Bissoon, U.S.Dist. Judge), affirming the Order Entered January 8, 2024, by the United States Bankruptcy Court for the Western District of Pennsylvania at 22-bk-20823 (Hon. Gregory Taddonio, U.S.Bk. Judge)

---

### GEORGE SNYDER'S INFORMAL APPENDIX VOLUME II

---

**GEORGE SNYDER**
**PO BOX 15**
**IRWIN PA 15642**
**(412) 979-9999**
**georgecsnyder@pm.me**

**APPELLANT**

# INDEX TO APPENDIX

| Appx Page | Doc# | Date | Description |
|---|---|---|---|
| | **VOLUME I** | | |
| a001 | District 23 | 1/28/25 | Notice of Appeal to the Third Circuit |
| a002 | Bank. 532 | 1/22/24 | Notice of Appeal to the District Court |
| a004 | Bank. 542 | 1/31/24 | Revised Notice of Appeal to District Ct |
| a006 | District 21 | 12/31/24 | Judgment of District Court |
| a007 | District 20 | 12/31/24 | Memorandum and Opinion of District Ct |
| a010 | Bank. 523 | 01/08/24 | Order of Bankruptcy Court |
| | **VOLUME II** | | |
| a014 | District Court | 6/10/25 | Docket Sheet – District Court |
| a018 | Bankruptcy Ct | 6/10/25 | Docket Sheet – Bankruptcy Court |
| a109 | Bankruptcy Ct | 6/10/25 | Claims Register – Bankruptcy Court |
| a112 | Bank. 36 | 6/3/25 | Order Granting Biros Temporary Relief |
| a117 | Claim 2-1 | 8/24/2022 | Biros claim for property taxes |
| a125 | Claim 3-1 | 8/25/22 | Biros Claim for prepetition rent |
| a129 | Claim 4-1 | 8/26/22 | Biros Claim for Environmental Damage |
| a134 | Claim 5-1 | 8/26/22 | George Snyder Claim for compensation |
| a137 | 258 | 12/22/22 | Christine Biros Motion for Allowance of Administrative Expense |
| a144 | 277 | 1/6/23 | Trustee's Response to Biros Motion 258 |

| a150 | 285 | 1/9/23 | Shanni Snyder objection to Biros 258 |
|------|-----|--------|--------------------------------------|
| a156 | 291 | 1/9/23 | George Snyder objection to Biros 258 |
| a195 | 293 | 1/17/23 | "Pigs Get Fat" Opinion |
| a205 | 294 | 1/17/23 | Order to Show Cause |
| a207 | 304 | 1/25/23 | Biros Response to Show Cause |
| a220 | 314 | 1/30/23 | Order re Rule to Show Cause |
| a222 | Bank Adv. 23-2020 Entry 1 | 2/28/2023 | Adversary Complaint by Shanni Snyder assignee of Chapter 7 Trustee. |
| a233 | 344 | 3/1/23 | Biros Amended Motion for Administrative Expense |
| a256 | 345 | 3/1/23 | Consent Motion to Approve Settlement |
| a272 | Bk. Claim 2-2 | 3/1/23 | Biros Amended Claim 2 for tax |
| a276 | Bk. Claim 3-2 | 3/1/23 | Biros Amended Claim 3 for rent |
| a281 | 352 | 3/16/23 | Shanni Snyder Objection to 344/345 |
| a284 | 354 | 3/20/23 | George Snyder Objection to 344 |
| a293 | 355 | 3/17/23 | George Snyder Objection to 345 |
| a346 | 377 | 4/13/23 | Hearing Transcript April 13, 2025 |
| a397 | Bk. Adv. 23-2020 Entry 17 | 4/19/23 | Amended Adversary Complaint Shanni Snyder as assignee of Chapter 7 Trustee v. Christine Biros |
| a419 | Bk. Claim 7-1 | 4/26/23 | George Snyder Claim for Indemnification |
| a422 | Bk. Claim 6-2 | 5/4/23 | IRS Claim for $65,421.08 |
| a426 | Bk. Claim 9-1 | 7/9/23 | George Snyder Administrative Claim for Payment of Insurance |

| a429 | Bk. Adv. 23-2020 Entry 35 | 7/21/23 | Order dismissing adversary suit by Shanni Snyder as assignee of the Chapter 7 Trustee against Biros |
|---|---|---|---|
| a448 | 492 | 8/2/23 | Order Allowing George Snyder Claim 9 |
| a449 | 501 | 11/29/23 | Motion to Reset the Hearing |
| a455 | 506 | 12/23/23 | Shanni Snyder Response to 501 |
| a459 | 507 | 12/23/23 | George Snyder Response to 501 |
| a462 | 524 | 1/4/24 | Transcript of Hearing |
| a481 | Bk. Adv. 23-2020 District Court Order affirming | 1/5/24 | Order of District Court affirming the Order dismissing Shanni Snyder's adversary Complaint against Christine Biros. |
| a491 | 529 | 1/22/24 | Limited Response of Biros |
| a493 | 530 | 1/22/24 | Biros Motion to Withdraw Claims |
| a500 | 550 | 2/9/24 | Certification of Non Objection 530 |
| a501 | 552 | 2/9/24 | Order Granting 530 |
| a502 | 593 | 6/24/24 | Order sustaining Rule 9011 violations |
| a505 | 594 | 6/24/24 | Memorandum Sanctioning Biros |
| a540 | 595 | 6/24/24 | Order Sanctioning Biros |
| a542 | Bk. Adv. 23-2020 | 1/9/25 | Third Circuit Order affirming 23-2020 decision |
| a549 | – | 1/25/2022 | Filed deed to Biros |

# U.S. District Court
## Western District of Pennsylvania (Pittsburgh)
### CIVIL DOCKET FOR CASE #: 2:24-cv-00135-CB

SNYDER v. BIROS et al
Assigned to: Judge Cathy Bissoon
Case in other court:  PAWB, 22-20823
              Third Circuit, 25-01177
Cause: 28:0158 Notice of Appeal re Bankruptcy Matter (BA

Date Filed: 02/01/2024
Date Terminated: 12/31/2024
Jury Demand: None
Nature of Suit: 422 Bankruptcy Appeal (801)
Jurisdiction: Federal Question

**Appellant**

**George Snyder**                    represented by    **George Snyder**
Box 15
Irwin, PA 15642
412-979-9999
Email: georgecsnyder@pm.me
PRO SE

V.

**Appellee**

**CHRISTINE BIROS**                  represented by    **Mary Anahit Shahverdian**
Bernstein-Burkley
601 Grant St
Ste Fl 8
15219-4430
Pittsburgh, PA 15219-4430
412-456-8138
Email: mshahverdian@bernsteinlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert S. Bernstein**
Bernstein-Burkley, P.C.
601 Grant Street
Ste 9th Floor
Pittsburgh, PA 15219
412-456-8101
Fax: 412-456-8135
Email: rbernstein@bernsteinlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stuart C. Gaul , Jr.**
Bernstein-Burkley, P.C.

**Appendix Vol. II**          **Page 014**

601 Grant Street
Ste 9th Floor
Pittsburgh, PA 15219
412-456-8139
Fax: 412-456-8135
Email: sgaul@bernsteinlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Appellee**

**ROBERT SLONE**                    represented by  **Robert H. Slone**
Mahady & Mahady
223 South Maple Avenue
Greensburg, PA 15601
724-834-2990
Fax: 724-834-1250
Email: robertslone223@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/31/2024 | 1 | Partial Notice of APPEAL FROM BANKRUPTCY COURT, filed by GEORGE SNYDER re USBC #: 22-20823-GLT, document number(s) 523. File received. FILING FEE NOT PAID, filed by GEORGE SNYDER. (Attachments: # 1 Cover Letter, # 2 Docket Report) (elt) Modified text on 2/2/2024. (elt) (Entered: 02/02/2024) |
| 02/01/2024 |  | Judge Cathy Bissoon added. (jkn) (Entered: 02/02/2024) |
| 02/06/2024 | 2 | NOTICE of Appearance by Stuart C. Gaul, Jr on behalf of CHRISTINE BIROS. (Gaul, Stuart) (Entered: 02/06/2024) |
| 02/27/2024 | 3 | Supplemental Record from Bankruptcy Court Received re USBC #: *22-20823 GLT*, document number(s) 551, 555. Parties are hereby advised that briefing will be in accordance with Bankruptcy Rule 8018, unless otherwise ordered by the assigned Judge. Appellant Brief due by 3/28/2024 (Attachments: # 1 DOC 555, # 2 DOC 551) (elt) (Entered: 02/28/2024) |
| 02/27/2024 | 4 | TRANSCRIPT of Bankruptcy Proceedings. Release of Transcript Restriction set for 4/9/2024. (elt) (Entered: 02/28/2024) |
| 02/28/2024 | 5 | ORDER. Appellant's Brief is due by 3/28/2024. Otherwise, briefing in this case will be governed by Federal Bankruptcy Rule 8018. Signed by Judge Cathy Bissoon on 2/28/2024. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (jmm) (Entered: 02/28/2024) |
| 03/22/2024 | 6 | Amended MOTION for Extension of Time to File *Brief and Appendix* by George Snyder. (Snyder, George) (Entered: 03/22/2024) |
| 03/22/2024 | 7 | RESPONSE to Motion re 6 Amended MOTION for Extension of Time to File *Brief and Appendix* filed by CHRISTINE BIROS. (Gaul, Stuart) (Entered: 03/22/2024) |

| | | |
|---|---|---|
| 03/25/2024 | 8 | ORDER granting 6 Amended Motion for Extension of Time to File Brief and Appendix. Appellant GEORGE SNYDER's brief is now due by 4/29/2024. Signed by Judge Cathy Bissoon on 3/25/2024. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (jmm) (Entered: 03/25/2024) |
| 04/10/2024 | 9 | MOTION for Extension of Time to File Brief by George Snyder. (Attachments: # 1 Proposed Order, # 2 Envelope) (njd) (Entered: 04/10/2024) |
| 04/17/2024 | 10 | ORDER denying as MOOT Appellant GEORGE SNYDER's 9 Motion for Extension of Time to File Brief. Like motion was granted on 3/25/24, providing the governing deadline of 4/29/24, for Appellant to file said brief. *See* Order (Doc. 8 ). Signed by Judge Cathy Bissoon on 4/17/24. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (tgl) (Entered: 04/17/2024) |
| 05/03/2024 | 11 | Unopposed MOTION for Extension of Time to File *brief and record* by George Snyder. (Snyder, George) (Entered: 05/03/2024) |
| 05/07/2024 | 12 | ORDER granting 11 Unopposed Motion for Extension of Time to File Brief and Record. Appellant GEORGE SNYDER's brief is now due by 5/20/2024. Signed by Judge Cathy Bissoon on 5/7/2024. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (jmm) (Entered: 05/07/2024) |
| 05/20/2024 | 13 | Appellant's BRIEF by George Snyder. filed by George Snyder. Appellee Brief due by 6/20/2024 (Snyder, George) (Entered: 05/20/2024) |
| 05/21/2024 | 14 | Appendix to 13 Appellant's Brief by George Snyder. (Snyder, George) (Entered: 05/21/2024) |
| 05/21/2024 | | CLERK'S OFFICE QUALITY CONTROL MESSAGE re 13 Appellant's Brief. ERROR: Attorney signature missing required information. CORRECTION: Attorney directed to comply with requirements of LCvR 5.2(B) in all future filings. This message is for informational purposes only. (njd) (Entered: 05/21/2024) |
| 05/23/2024 | 15 | NOTICE of Appearance by Mary Anahit Shahverdian on behalf of CHRISTINE BIROS. (Shahverdian, Mary) (Entered: 05/23/2024) |
| 06/13/2024 | 16 | Consent MOTION for Extension of Time to File Response/Reply as to 13 Appellant's Brief by CHRISTINE BIROS. (Attachments: # 1 Proposed Order) (Gaul, Stuart) (Entered: 06/13/2024) |
| 06/20/2024 | 17 | ORDER granting 16 Consent Motion for Extension of Time to File Response by CHRISTINE BIROS. Appellee CHRISTINE BIROS shall file a Response Brief as to 13 Appellant's Brief on or before 7/12/2024. Signed by Judge Cathy Bissoon on 6/20/2024. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (jmm) (Entered: 06/20/2024) |
| 07/11/2024 | 18 | Appellee's BRIEF by CHRISTINE BIROS. Appellant Reply Brief due by 7/25/2024 (Gaul, Stuart) (Entered: 07/11/2024) |
| 07/11/2024 | 19 | Appendix to 18 Appellee's Brief by CHRISTINE BIROS. (Gaul, Stuart) (Entered: 07/11/2024) |

| 12/31/2024 | 20 | MEMORANDUM AND ORDER. IT IS HEREBY ORDERED that the Bankruptcy Court's Order, dated January 8, 2024, is AFFIRMED as more fully set forth by said order. This case will be marked closed. Signed by Judge Cathy Bissoon on 12/31/2024. (jmm) (Entered: 12/31/2024) |
|---|---|---|
| 12/31/2024 | 21 | JUDGMENT pursuant to Rule 58 entered. This case has been marked closed. Signed by Judge Cathy Bissoon on 12/31/2024. (jmm) (Entered: 12/31/2024) |
| 01/25/2025 | 22 | NOTICE *of Appeal from Judgment December 31 2024 (ECF Malfunctions when choosing event category APPEAL DOCUMENTS see attached exhibit for screenshots of malfunction))* by George Snyder re 20 Memorandum Opinion, Order, 21 Rule 58 Judgment (Attachments: # 1 Exhibit This is what happens when event category APPEAL DOCUMENTS is chosen) (Snyder, George) Modified text on 1/29/2025; document removed from public view and refiled at 23 . (tla) (Entered: 01/25/2025) |
| 01/28/2025 | 23 | NOTICE OF APPEAL as to 20 Memorandum Opinion, Order, 21 Rule 58 Judgment by George Snyder. Filing fee $605, receipt number APAWDC-8672582. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. The Transcript Purchase Order form will NOT be mailed to the parties. The form is available on the Court's internet site. (Snyder, George) (Entered: 01/28/2025) |
| 01/31/2025 | 24 | USCA Case Number 25-1177 for 23 Notice of Appeal, filed by George Snyder. USCA Case Manager Stephanie (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (gch3) (Entered: 01/31/2025) |

## U.S. Bankruptcy Court
## WESTERN DISTRICT OF PENNSYLVANIA (Pittsburgh)
## Bankruptcy Petition #: 22-20823-GLT

| | |
|---|---|
| *Assigned to:* Chief Bankruptcy Jud Gregory L Taddonio | *Date filed:* 04/27/2022 |
| Chapter 7 | *341 meeting:* 01/06/2023 |
| Involuntary | *Deadline for filing claims:* 08/26/2022 |
| Asset | *Deadline for filing claims (govt.):* 12/14/2022 |

*Debtor*
**U LOCK INC**
14140 U.S. Route 30
N. Huntingdon, PA 15642
WESTMORELAND-PA
Tax ID / EIN: 47-4994911
*aka* **U-LOCK INC.**

represented by **J. Allen Roth**
805 S Alexandria Street
Latrobe, PA 15650
724-537-0939
Email: lawmatters@yahoo.com

*Petitioning Creditor*
**Shanni Snyder**
14390 Route 30
Unit H
North Huntingdon, PA 15642
SSN / ITIN: xxx-xx-6136

represented by **David L. Fuchs**
Fuchs Law Office, LLC
554 Washington Ave., First Floor
Carnegie, PA 15106
412-223-5404
Fax : 412-223-5406
Email: dfuchs@fuchslawoffice.com

**John B. Joyce**
Grenen & Birsic, P.C.
One Gateway Center
Suite 9W
Pittsburgh, PA 15222
412-281-7650
Email: jjoyce@grenenbirsic.com
*TERMINATED: 02/14/2023*

**Jeremy J Kobeski**
Grenen & Birsic, P.C.
One Gateway Center
Ninth Floor
Pittsburgh, PA 15222
412-281-7650
Fax : 412-281-4398
Email: jkobeski@grenenbirsic.com
*TERMINATED: 02/14/2023*

**John Patrick Lacher**
The Lynch Law Group LLCC
501 Smith Drive

Suite 3
Cranberry Twp, PA 16066
724-776-8000
Fax : 724-776-8001
Email: attorneylacher@yahoo.com

**Trustee**
**Charles O. Zebley, Jr.**                    represented by **Charles O. Zebley, Jr.**
P.O. Box 2124                                 P.O. Box 2124
Uniontown, PA 15401                           Uniontown, PA 15401
724-439-9200                                  724-439-9200
*TERMINATED: 06/22/2022*                      Email: COZ@Zeblaw.com

**Trustee**
**Robert H. Slone, Trustee**                  represented by **Robert H. Slone, Trustee**
223 South Maple Avenue                        223 South Maple Avenue
Greensburg, PA 15601                          Greensburg, PA 15601
724-834-2990                                  724-834-2990
                                              Email: robertslone223@gmail.com

**U.S. Trustee**
**Office of the United States Trustee**
1000 Liberty Avenue
Suite 1316
Pittsburgh, PA 15222
412-644-4756

| Filing Date | # | Docket Text |
|---|---|---|
| 04/27/2022 | 1<br>(5 pgs) | Chapter 7 Involuntary Petition. Receipt Number O, Fee Amount $338 Re: U LOCK INC Filed by Petitioning Creditor(s): Shanni Sue Snyder . (mgut) Additional attachment(s) added on 4/28/2022 (mgut). Modified on 4/29/2022 (mgut). (Entered: 04/28/2022) |
| 04/27/2022 | 5 | Receipt Number 17761, Fee Amount $ 338.00 (RE: related document(s): 1 Involuntary Petition Chapter 7 filed by Petitioning Creditor Shanni Snyder, Debtor U LOCK INC). (lkat) (Entered: 04/29/2022) |
| 04/28/2022 | 2 | Judge Judge unknown added to case (Entered: 04/28/2022) |
| 04/29/2022 | 3 | Notice To File Proofs of Claim. (adiuser) CORRECTIVE ENTRY: DOCKETED BY ADI IN ERROR. NO NOTICE WILL BE SENT. Modified on 4/29/2022 (mgut). (Entered: 04/29/2022) |

| | | |
|---|---|---|
| 04/29/2022 | [4](#)<br>(3 pgs; 2 docs) | Order Signed on 4/29/2022. It is hereby ORDERED, ADJUDGED, and DECREED that:1. On or before May 6, 2022, Petitioning Creditor shall file an amended involuntary petition in compliance with the Bankruptcy Code, this Order and Local Rules of this Court. 2. If the Petitioning Creditor fails to comply, the Involuntary Petition will be dismissed. (RE: related document(s): [1](#) Involuntary Petition Chapter 7). (aala) (Entered: 04/29/2022) |
| 05/01/2022 | [6](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [4](#) Order -Non-motion related-). Notice Date 05/01/2022. (Admin.) (Entered: 05/02/2022) |
| 05/04/2022 | 13 | Receipt Number 17785, Fee Amount $ 338.00 (RE: related document(s): [1](#) Involuntary Petition Chapter 7 filed by Petitioning Creditor Shanni Snyder, Debtor U LOCK INC, 5 Receipt Number and Filing Fee). This payment replaces the one at Doc. # 5 above. (lkat) (Entered: 05/17/2022) |
| 05/09/2022 | [7](#)<br>(4 pgs) | Amended Involuntary Petition Against a Non-Individual filed by Shanni Snyder (RE: related document(s): [4](#) Order -Non-motion related-). (aala) (Entered: 05/09/2022) |
| 05/10/2022 | [8](#)<br>(3 pgs; 2 docs) | One Involuntary Summons Issued on Shanni Snyder. Issued 05/10/2022 (Attachments: # [1](#) Instructions to Petitioner-Involuntary Cases) (aala) (Entered: 05/10/2022) |
| 05/10/2022 | [9](#)<br>(2 pgs; 2 docs) | Order Designating Principal Operating Officer of Alleged Corporation Debtor or Managing General Partner. George Snyder, and Kash Snyder Designated as Principal Operating Officer or Managing General Partner. Signed on 5/10/2022. (aala) (Entered: 05/10/2022) |
| 05/10/2022 | [10](#)<br>(5 pgs; 4 docs) | BNC PDF Notice - Documents were sent through the BNC to Shanni Snyder (Attachments: # [1](#) Instructions to Petitioner # [2](#) Order Designating Officer) (aala) (Entered: 05/10/2022) |
| 05/12/2022 | [11](#)<br>(2 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [9](#) Order Designating Principal Operating Officer/General Partner). Notice Date 05/12/2022. (Admin.) (Entered: 05/13/2022) |
| 05/12/2022 | [12](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [10](#) BNC PDF Notice). Notice Date 05/12/2022. (Admin.) (Entered: 05/13/2022) |

| | | |
|---|---|---|
| 05/20/2022 | 14<br>(211 pgs; 16 docs) | Expedited Motion to Dismiss Case , in addition to Motion For Sanctions *Against Petitioning Creditor*, or in the alternative Motion for Relief from Stay. Fee Amount $188., or in the alternative Motion to Abandon *the Movant's Property*. Fee Amount $ 188., in addition to Motion to Expedite Hearing Filed by Creditor Christine Biros. (Attachments: # 1 Proposed Order # 2 Exhibit A # 3 Exhibit B # 4 Exhibit C # 5 Exhibit D # 6 Exhibit E # 7 Exhibit F # 8 Exhibit G # 9 Exhibit H # 10 Exhibit I # 11 Exhibit J # 12 Exhibit K # 13 Exhibit L # 14 Exhibit M # 15 Exhibit N) (Wenrich, Sarah) (Entered: 05/20/2022) |
| 05/20/2022 | 15 | Receipt of Motion for Relief From Stay( 22-20823-GLT) [motion,mrlfsty] ( 188.00) filing fee. Receipt number A15927869, amount $ 188.00. (U.S. Treasury) (Entered: 05/20/2022) |
| 05/20/2022 | 16 | Receipt of Motion to Abandon( 22-20823-GLT) [motion,mabn] ( 188.00) filing fee. Receipt number A15927869, amount $ 188.00. (U.S. Treasury) (Entered: 05/20/2022) |
| 05/20/2022 | 17<br>(2 pgs; 2 docs) | Order Setting Hearing on (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). Hearing scheduled for 6/2/2022 at 09:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 5/31/2022 by 12 PM. (jhel) (Entered: 05/20/2022) |
| 05/20/2022 | 18<br>(47 pgs; 2 docs) | Exhibit *I (Amended)* Filed by Creditor Christine Biros (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing, 17 Order Scheduling a Hearing). (Attachments: # 1 Amended Exhibit I - Transcript) (Wenrich, Sarah) (Entered: 05/20/2022) |
| 05/20/2022 | 19<br>(2 pgs) | Certificate of Service Regarding the Hearing on 6/2/2022. Filed by Creditor Christine Biros (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing, 17 Order Scheduling a Hearing, 18 Exhibit filed by Creditor Christine Biros). (Wenrich, Sarah) (Entered: 05/20/2022) |

| | | |
|---|---|---|
| 05/27/2022 | [20](#) (6 pgs) | Summons Service Executed in an Involuntary Case on George Snyder. Service Executed on: 5/23/2022, Answer Due on: 6/13/2022. Add 3 days to the answer due date if service was made through the mail. Filed by Renee' E. Basista, Managing General Partner George Snyder (aala) (Entered: 05/27/2022) |
| 05/30/2022 | [21](#) (2 pgs; 2 docs) | Notice of Appearance and Request for Notice by J. Allen Roth Filed by Debtor U LOCK INC (Attachments: # [1](#) Certificate of Service) (Roth, J.) (Entered: 05/30/2022) |
| 05/31/2022 | [22](#) (7 pgs; 2 docs) | Opposition Response Regarding the Hearing on 06/02/2022. Filed by U LOCK INC (RE: related document(s): [14](#) Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). (Attachments: # [1](#) Certificate of Service) (Roth, J.) (Entered: 05/31/2022) |
| 05/31/2022 | [23](#) (30 pgs) | Exhibit *A in Opposition to Motion* Filed by Debtor U LOCK INC (RE: related document(s): [14](#) Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing, [22](#) Response filed by Debtor U LOCK INC). (Roth, J.) (Entered: 05/31/2022) |
| 05/31/2022 | [24](#) (76 pgs) | Opposition Response Regarding the Hearing on 6/2/2022. Filed by Shanni Snyder (RE: related document(s): [14](#) Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). (aala) (Entered: 05/31/2022) |
| 05/31/2022 | [25](#) (3 pgs; 2 docs) | Declaration Under Penalty of Perjury for Non-individual Debtors *in Response to the Emergency Motion filed by Christine Biros for hearing on June 2, 2022 at 9 a.m.* Filed by Debtor U LOCK INC (Attachments: # [1](#) Certificate of Service) (Roth, J.) (Entered: 05/31/2022) |

| | | |
|---|---|---|
| 06/01/2022 | [26](#)<br>(92 pgs; 3 docs) | Exhibit Filed by Debtor U LOCK INC (RE: related document(s): [14](#) Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing, [22](#) Response filed by Debtor U LOCK INC). (Attachments: # [1](#) Exhibit Correspondence of June 1 2022 sent from counsel for Christine Biros to state court judge advising him that filings are made that cast his actions "in a negative light" # [2](#) Certificate of Service) (Roth, J.) (Entered: 06/01/2022) |
| 06/02/2022 | [27](#)<br>(5 pgs; 3 docs) | Exhibit *Disclosing Police Report Regarding Garbage Truck Fire* Filed by Debtor U LOCK INC (RE: related document(s): [14](#) Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). (Attachments: # [1](#) Exhibit Police Report Regarding Garbage Truck Fire # [2](#) Certificate of Service) (Roth, J.) (Entered: 06/02/2022) |
| 06/03/2022 | [28](#)<br>(6 pgs; 3 docs) | Notice Regarding NOTICE OF PARTIAL NON-OBJECTION TO LIMITED RELIEF FROM THE STAY. *(not consent)* Filed by Debtor U LOCK INC (RE: related document(s): [14](#) Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). (Attachments: # [1](#) Exhibit Trailers that are property of family of Christine Biros # [2](#) Certificate of Service) (Roth, J.) (Entered: 06/03/2022) |
| 06/03/2022 | [29](#)<br>(8 pgs; 3 docs) | Response *TO NOTICE OF PARTIAL NON-OBJECTION TO LIMITED RELIEF FROM THE STAY* Regarding the Hearing on no hearing date scheduled. Filed by Christine Biros (RE: related document(s): [14](#) Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing, [22](#) Response filed by Debtor U LOCK INC, [28](#) Notice filed by Debtor U LOCK INC). (Attachments: # [1](#) Exhibit A - Proposed Order # [2](#) Certificate of Service) (Wenrich, Sarah) (Entered: 06/03/2022) |
| 06/03/2022 | 30 | TEXT ORDER: On June 2, 2022, the Court held a hearing on the Expedited Motion to Dismiss Case, in addition to Motion for Sanctions Against Petitioning Creditor, or in thealternative Motion for Relief from Stay, or in the alternative Motion to Abandon the Movant's Property [Dkt. No. 14]. Based upon statements made on the record at the June 2 hearing, it is hereby ORDERED that the Expedited Motion to Dismiss Case, in addition to |

| | | Motion for Sanctions Against Petitioning Creditor, or in thealternative Motion for Relief from Stay or in the alternative Motion to Abandon the Movant's Property [Dkt. No. 14] isCONTINUED to July 6, 2022 at 11 a.m. Judge Taddonio Signed on 6/3/2022. (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). Hearing scheduled for 7/6/2022 at 11:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (hthu) (Entered: 06/03/2022) |
|---|---|---|
| 06/03/2022 | 31 | TEXT ORDER: On June 2, 2022, the Court held a hearing on the Expedited Motion to Dismiss Case, in addition to Motion for Sanctions Against Petitioning Creditor, or in the alternative Motion for Relief from Stay, or in the alternative Motion to Abandon the Movant's Property [Dkt. No. 14]. Based upon statements made on the record at the June 2 hearing, it is hereby ORDERED that On or before June 3, 2022 at 4 p.m., the parties shall file, under certification of counsel, an order granting limited stay relief to Christine Biros for the purpose of initiating environmental remediation. (RE: related document(s): 14 Motion to Dismiss Case, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). (hthu) (Entered: 06/03/2022) |
| 06/03/2022 | 32 (3 pgs; 2 docs) | Reply *to the Response to the Statement of Non-Objection* Regarding the Hearing on under advisement. Filed by U LOCK INC (RE: related document(s): 29 Response filed by Creditor Christine Biros). (Attachments: # 1 Certificate of Service) (Roth, J.) (Entered: 06/03/2022) |
| 06/03/2022 | 33 (4 pgs; 2 docs) | Proposed Order RE: *(non consent) Limited Relief from Stay* Filed by Debtor U LOCK INC (RE: related document(s): 31 Order -Non-motion related-). (Attachments: # 1 Certificate of Service) (Roth, J.) (Entered: 06/03/2022) |
| 06/03/2022 | 34 (3 pgs) | Hearing Held on 6/2/2022 (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). 1. [Text Order] 2. [Text Order] (aala) (Entered: 06/03/2022) |
| 06/03/2022 | 35 (1 pg) | 3-Day Transcript Requested by Christine Biros regarding hearing held 06/02/2022. Transcript is being prepared by J&J Court Transcribers, Inc. Estimated completion date is 06/08/2022. (RE: related document(s): 34 Hearing Held). |

| | | (hsmi) (Entered: 06/03/2022) |
|---|---|---|
| 06/03/2022 | [36](#)<br>(7 pgs; 2 docs) | Order Granting Christine Biros Limited Relief from the Stay. Signed on 6/3/2022. (RE: related document(s): [14](#) Motion to Dismiss Case, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing, [22](#) Response, [28](#) Notice). (hthu) (Entered: 06/03/2022) |
| 06/05/2022 | [37](#)<br>(7 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [36](#) Order -Non-motion related-). Notice Date 06/05/2022. (Admin.) (Entered: 06/06/2022) |
| 06/08/2022 | [38](#)<br>(38 pgs) | Transcript regarding Hearing Held 06/02/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's Office or contact the Court Reporter/Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related document(s) [35](#) Transcript Request). Notice of Intent to Request Redaction due 6/15/2022. Redaction Request due 6/29/2022. Redacted Transcript Submission due 7/11/2022. Remote electronic access to the transcript is restricted through 9/6/2022. (hsmi) (Entered: 06/08/2022) |
| 06/08/2022 | [39](#)<br>(3 pgs; 2 docs) | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 06/02/2022 on Expedited Motion to Dismiss Case, in addition to Motion For Sanctions Against Petitioning Creditor, or in the alternative Motion for Relief from Stay Fee Amount, or in the alternative Motion to Abandon the Movants Property filed by Christine Biros; Amended Exhibit I has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): [38](#) Transcript). (hsmi) (Entered: 06/08/2022) |
| 06/10/2022 | [40](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [39](#) Notice of Filing of Transcript). Notice Date 06/10/2022. (Admin.) (Entered: 06/11/2022) |
| 06/17/2022 | [41](#)<br>(2 pgs; 2 docs) | Notice of Appointment of Trustee. (aala) (Entered: 06/17/2022) |
| 06/17/2022 | [42](#)<br>(2 pgs; 2 docs) | Order for Relief Signed on 6/17/2022. Incomplete Filings due by 7/1/2022. Statement of Current Monthly Income FR 122A due by 7/1/2022. List of all Creditors due 6/24/2022. Proofs of Claims due by 8/26/2022. Government Proof of Claim due by 12/14/2022. (aala) |

| | | |
|---|---|---|
| | | Modified on 6/21/2022 (aala). CORRECTIVE ENTRY: THE DEADLINE FOR THE STATEMENT OF CURRENT MONTHLY INCOME FR 122A IS DUE BY 7/5/2022 AND INCOMPLETE FILINGS ARE DUE BY 7/5/2022. THE 7/1/2022 DEADLINE WAS TERMINATED. (Entered: 06/17/2022) |
| 06/17/2022 | 43<br>(2 pgs; 2 docs) | ORDER AND NOTICE REGARDING INVOLUNTARY CHAPTER 7 PETITION. Signed on 6/17/2022. (RE: related document(s): 1 Involuntary Petition Chapter 7). IT IS FURTHER ORDERED that if the documents are not filed pursuant to this Order by July 5, 2022, a Rule to Show Cause hearing is to be held on 7/7/2022 at 11:00 AM at p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. cm: All Interested Parties (aala) (Entered: 06/17/2022) |
| 06/19/2022 | 44<br>(3 pgs) | BNC Certificate of Mailing. (RE: related document(s): 41 Notice Appointing Trustee). Notice Date 06/19/2022. (Admin.) (Entered: 06/20/2022) |
| 06/19/2022 | 45<br>(2 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 42 Order for Relief -Ch.7-). Notice Date 06/19/2022. (Admin.) (Entered: 06/20/2022) |
| 06/21/2022 | 46 | Deadlines Updated (RE: related document(s): 42 Order for Relief -Ch.7-). Statement of Current Monthly Income FR 122A due by 7/5/2022. Incomplete Filings due by 7/5/2022. (aala) (Entered: 06/21/2022) |
| 06/21/2022 | 47 | Corrective Entry: THE DEADLINE FOR THE STATEMENT OF CURRENT MONTHLY INCOME FR 122A IS DUE BY 7/5/2022 AND INCOMPLETE FILINGS ARE DUE BY 7/5/2022. THE 7/1/2022 DEADLINE WAS TERMINATED. (RE: related document(s): 42 Order for Relief -Ch.7-). (aala) (Entered: 06/21/2022) |
| 06/22/2022 | 48 | Rejection of Appointment by the Trustee. I, Charles O. Zebley, Jr., hereby reject the Appointment of Trustee in the above captioned case for the following reason(s) *Conflict of Interest*. Filed by Charles O. Zebley Jr.. (Zebley, Charles) (Entered: 06/22/2022) |
| 06/22/2022 | 49<br>(2 pgs; 2 docs) | Notice of Appointment of Trustee. (aala) (Entered: 06/22/2022) |

| | | |
|---|---|---|
| 06/23/2022 | [50](#)<br>(2 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [43](#) Order -Non-motion related-). Notice Date 06/23/2022. (Admin.) (Entered: 06/24/2022) |
| 06/24/2022 | [51](#)<br>(3 pgs) | BNC Certificate of Mailing. (RE: related document(s): [49](#) Notice Appointing Trustee). Notice Date 06/24/2022. (Admin.) (Entered: 06/25/2022) |
| 06/30/2022 | 52 | Text Order Rescheduling Hearing: The Court previously issued an order scheduling a show cause hearing for July 7, 2022 at 11am if the debtor failed to complete the petition by July 5, 2022. The continued hearing on the expedited Motion to Dismiss Case [Dkt. NO. 14] is scheduled for July 6, 2022 at 11 am. Therefore, in an effort to efficiently hear both matters on the same day, it is hereby ORDERED that the in-person Show Cause Hearing scheduled for July 7, 2022 is RESCHEDULED to July 6, 2022 at 11 am in Courtroom A 54th Floor U.S. Steel Tower, 600 Grant St., Pittsburgh, PA. Judge Taddonio signed on 6/30/2022. (RE: related document(s): [43](#) Order -Non-motion related-, Order to Show Cause). Hearing scheduled for 7/6/2022 at 11:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (hthu) (Entered: 06/30/2022) |
| 07/01/2022 | [53](#)<br>(8 pgs; 4 docs) | Motion to Convert Case from Chapter 7 to 11 . Fee Amount $922 Filed by Debtor U LOCK INC. (Attachments: # [1](#) Notice of Hearing and Deadline to Respond # [2](#) Proposed Order Proposed Order # [3](#) Certificate of Service) (Roth, J.) (Entered: 07/01/2022) |
| 07/01/2022 | 54 | Receipt of Motion to Convert Case from Chapter 7 to 11( [22-20823-GLT](#)) [motion,mcn7to11] ( 922.00) filing fee. Receipt number A15972573, amount $ 922.00. (U.S. Treasury) (Entered: 07/01/2022) |
| 07/05/2022 | [55](#)<br>(4 pgs; 2 docs) | Status Report *Relating to Remediation Relief from Stay* Filed by Debtor U LOCK INC (RE: related document(s): [36](#) Order -Non-motion related-). (Attachments: # [1](#) Certificate of Service) (Roth, J.) (Entered: 07/05/2022) |
| 07/05/2022 | [56](#)<br>(2 pgs; 2 docs) | Statement of Attorney *Pursuant to F.R.Bk. 2106* Filed by Debtor U LOCK INC (Attachments: # [1](#) Certificate of Service) (Roth, J.) (Entered: 07/05/2022) |
| 07/05/2022 | 57 | Text Order re: ([53](#) Motion to Convert Case from Chapter 7 to 11). Without further notice or hearing, this pleading will be denied without prejudice if the following action is not taken: THE NOTICE OF HEARING IS TO BE |

| | | |
|---|---|---|
| | | FILED AS A SEPARATE ENTRY UNDER BANKRUPTCY/MISC./HEARING ON A JUDGE TADDONIO CASE FILED BY AN ATTORNEY OR TRUSTEE. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 7/5/2022. (RE: related document(s): 53 Motion to Convert Case from Chapter 7 to 11). Required corrective action due on or before 7/13/2022. (aala) (Entered: 07/05/2022) |
| 07/05/2022 | 58 (2 pgs) | Hearing on NOTICE OF HEARING AND RESPONSE DEADLINE REGARDING MOTION OF U LOCK INC. TO CONVERT CASE FROM CHAPTER 7 TO CHAPTER 11 Filed by Debtor U LOCK INC (RE: related document(s): 53 Motion to Convert Case from Chapter 7 to 11 filed by Debtor U LOCK INC). Hearing scheduled for 8/9/2022 at 02:00 PM (check with court for location). Responses due by 7/19/2022. (Roth, J.) (Entered: 07/05/2022) |
| 07/05/2022 | 59 (1 pg) | Summary of Assets and Liabilities Schedules for Non-Individual Filed by Debtor U LOCK INC (Roth, J.) (Entered: 07/05/2022) |
| 07/05/2022 | 60 (11 pgs) | Schedule A/B: Property for Non-Individual Filed by Debtor U LOCK INC (Roth, J.) (Entered: 07/05/2022) |
| 07/06/2022 | 61 (1 pg) | Schedule D: Creditors Having Claims Secured by Property Filed by Debtor U LOCK INC (Roth, J.) (Entered: 07/06/2022) |
| 07/06/2022 | 62 (4 pgs) | Schedule E/F: Creditors Who Have Unsecured Claims for Non-Individual Filed by Debtor U LOCK INC (Roth, J.) (Entered: 07/06/2022) |
| 07/06/2022 | 63 (5 pgs) | Schedule G: Executory Contracts and Unexpired Leases Filed by Debtor U LOCK INC (Roth, J.) (Entered: 07/06/2022) |
| 07/06/2022 | 64 (1 pg) | Schedule H: Non-Individual- Codebtors *to the extent U Lock acted since 2015 in the capacity as a trustee* Filed by Debtor U LOCK INC (Roth, J.) (Entered: 07/06/2022) |
| 07/06/2022 | 65 (19 pgs) | Statement of Financial Affairs Filed by Debtor U LOCK INC (Roth, J.) (Entered: 07/06/2022) |
| 07/06/2022 | 66 (1 pg) | Declaration re: *Under Penalty of Perjury for Non-Individual Debtors* Filed by Debtor U LOCK INC (Roth, J.) (Entered: 07/06/2022) |

| | | |
|---|---|---|
| 07/06/2022 | 67<br>(3 pgs; 2 docs) | Mailing Matrix Filed by Debtor U LOCK INC (Attachments: # 1 Verification of Creditor Matrix) (Roth, J.) (Entered: 07/06/2022) |
| 07/06/2022 | 68 | Text Order re: (58 Hearing on a Judge Taddonio Case Set by Attorney or Trustee). Without further notice or hearing, this pleading will be denied without prejudice if the following action is not taken: THE LOCATION OF THE HEARING MUST BE REFLECTED IN THE DOCKET TEXT. MUST BE REFILED. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 7/6/2022. (RE: related document(s): 58 Hearing on a Judge Taddonio Case Set by Attorney or Trustee). Required corrective action due on or before 7/14/2022. (aala) (Entered: 07/06/2022) |
| 07/06/2022 | 69<br>(3 pgs; 2 docs) | Hearing on MOTION OF U LOCK INC. TO CONVERT CASE FROM CHAPTER 7 TO CHAPTER 11 Filed by Debtor U LOCK INC (RE: related document(s): 53 Motion to Convert Case from Chapter 7 to 11 filed by Debtor U LOCK INC). Hearing scheduled for 8/9/2022 at 02:00 PM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 7/19/2022. (Attachments: # 1 Certificate of Service) (Roth, J.) (Entered: 07/06/2022) |
| 07/06/2022 | 70 | Text Order re: (53 Motion to Convert Case from Chapter 7 to 11, 69 Hearing on a Judge Taddonio Case Set by Attorney or Trustee).. Without further notice or hearing, this pleading will be denied without prejudice if the following action is not taken: Counsel shall serve the motion and notice of hearing on all parties listed on the Clerk's office mailing matrix. Counsel shall file amended proof of service in compliance with W.PA.LBR 2002-1 and 5005-6(b). Specifically, the Filing User's name, address, telephone number, email address and state bar registration number should be included in the signature block. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 7/6/2022. (RE: related document(s): 53 Motion to Convert Case from Chapter 7 to 11, 69 Hearing on a Judge Taddonio Case Set by Attorney or Trustee). Required corrective action due on or before 7/14/2022. (hthu) (Entered: 07/06/2022) |
| 07/06/2022 | 71<br>(4 pgs; 2 docs) | Application to Employ Robert H. Slone as Counsel to Chapter 7 Trustee Filed by Trustee Robert H. Slone, Trustee. (Attachments: # 1 Proposed Order) (Slone, Trustee, Robert) (Entered: 07/06/2022) |

| | | |
|---|---|---|
| 07/06/2022 | [72](#)<br>(3 pgs) | Hearing Held on 7/6/22 (RE: related document(s): [14](#) Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). (hthu) (Entered: 07/06/2022) |
| 07/06/2022 | [73](#)<br>(2 pgs) | Order denying without prejudice the Expedited Motion [Dkt No.14] to the extent it seeks to dismiss the bankruptcy case. Order continuing hearing on the Expedited Motion [Dkt. No.14] to August 9, 2022 at 2pm to the extent it seeks stay relief. On or before the close of business on July 7, 2022, the Debtor shall file the declaration re: electronic filing. Judge Taddonio Signed on 7/6/2022. (RE: related document(s): [14](#) Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). Hearing scheduled for 8/9/2022 at 02:00 PM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Parties may participate in the hearing via Zoom video conference in compliance with Judge Taddonio's Procedures (hthu) (Entered: 07/06/2022) |
| 07/06/2022 | [74](#)<br>(2 pgs) | Exhibit A submitted at July 6, 2022 hearing by Debtor U LOCK INC (RE: related document(s): [72](#) Hearing Held). (hthu) (Entered: 07/06/2022) |
| 07/06/2022 | [75](#)<br>(3 pgs) | Amended Certificate of Service Regarding the Hearing on 8/9/2022. Filed by U LOCK INC (RE: related document(s): [53](#) Motion to Convert Case from Chapter 7 to 11, [69](#) Hearing on a Judge Taddonio Case Set by Attorney or Trustee, 70 Order Fixing Deadline to Deny a Motion). (Roth, J.) (Entered: 07/06/2022) |
| 07/07/2022 | [76](#)<br>(1 pg) | Declaration re: *Electronic Filing of Schedules and Statements* Filed by Debtor U LOCK INC (Roth, J.) Modified on 7/7/2022 (aala). CORRECTIVE ENTRY: THE DECLARATION OF ELECTRONIC FILING IS NOT TO BE FILED ELECTRONICALLY. THE EIN NUMBER IS REQUIRED ON THE DOCUMENT. MUST BE REFILED THROUGH THE EDSS SYSTEM PER JUDGE TADDONIO'S SIGNED ORDER 7/6/2022 AT DOCUMENT # 73. (Entered: 07/07/2022) |
| 07/07/2022 | 77 | Corrective Entry: THE DECLARATION OF ELECTRONIC FILING IS NOT TO BE FILED ELECTRONICALLY. THE EIN NUMBER IS REQUIRED ON THE DOCUMENT. MUST BE REFILED THROUGH THE EDSS SYSTEM PER JUDGE TADDONIO'S SIGNED ORDER 7/6/2022 AT |

| | | |
|---|---|---|
| | | DOCUMENT # 73. (RE: related document(s): 76 Declaration filed by Debtor U LOCK INC). (aala) (Entered: 07/07/2022) |
| 07/07/2022 | 78 (2 pgs; 2 docs) | Order Granting Application to Employ Robert H. Slone, Esq. as Counsel for the Chapter 7 Trustee. (Related Doc # 71) Signed on 7/7/2022. (aala) (Entered: 07/07/2022) |
| 07/07/2022 | 79 | Declaration Re: Electronic Filing (aala) (Entered: 07/07/2022) |
| 07/07/2022 | 80 (3 pgs; 2 docs) | Meeting of Creditors 341(a) meeting to be held on 09/09/2022 at 09:00 AM at 341 telephonic hearing. Proofs of Claims due by 8/26/2022. Government Proof of Claim due by 12/14/2022. (aala) (Entered: 07/07/2022) |
| 07/08/2022 | 81 (3 pgs) | Certificate of Service *for Order Granting Application to Employ Robert H. Slone, Esq. as Counsel for the Chapter 7 Trustee* Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 78 Order on Application to Employ). (Slone, Trustee, Robert) (Entered: 07/08/2022) |
| 07/09/2022 | 82 (5 pgs) | BNC Certificate of Mailing - Meeting of Creditors. (RE: related document(s): 80 Meeting of Creditors Chapter 7 Asset Business/Corporation). Notice Date 07/09/2022. (Admin.) (Entered: 07/10/2022) |
| 07/09/2022 | 83 (3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 78 Order on Application to Employ). Notice Date 07/09/2022. (Admin.) (Entered: 07/10/2022) |
| 07/12/2022 | 84 | Trustee's Notice of Assets & Request for Notice to Creditors Filed by Robert H. Slone, Trustee. (Slone, Trustee, Robert) (Entered: 07/12/2022) |
| 07/12/2022 | 85 (1 pg) | Three-Day Transcript Requested by U LOCK INC regarding hearing held on 07/06/2022. Transcript is being prepared by J&J Court Transcribers, Inc. Estimated completion date is 07/18/2022. (RE: related document(s): 72 Hearing Held). (aolo) (Entered: 07/12/2022) |
| 07/15/2022 | 86 (11 pgs; 3 docs) | Notice Regarding of Non-Compliance as Directed by Paragraph 12 of the Order at Entry 36. Filed by Debtor U LOCK INC (RE: related document(s): 36 Order -Non-motion related-). (Attachments: # 1 Exhibit Cease and Desist from North Huntingdon Township # 2 Declaration of George Snyder) (Roth, J.) (Entered: 07/15/2022) |

| | | |
|---|---|---|
| 07/15/2022 | [87](#)<br>(3 pgs; 2 docs) | Certificate of Service *of Notice of Non-Compliance* Filed by U LOCK INC (RE: related document(s): [86](#) Notice). (Attachments: # [1](#) Mailing Matrix of Persons Served) (Roth, J.) (Entered: 07/15/2022) |
| 07/18/2022 | [88](#)<br>(49 pgs) | Transcript regarding Hearing Held 07/06/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's Office or contact the Court Reporter/Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related document(s) [85](#) Transcript Request). Notice of Intent to Request Redaction due 7/25/2022. Redaction Request due 8/8/2022. Redacted Transcript Submission due 8/18/2022. Remote electronic access to the transcript is restricted through 10/17/2022. (hsmi) (Entered: 07/18/2022) |
| 07/18/2022 | [89](#)<br>(3 pgs; 2 docs) | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 07/06/2022 on Continued Expedited Motion to Dismiss Case, in addition to Motion For Sanctions Against Petitioning Creditor, or in the alternative Motion for Relief from Stay Fee Amount, or in the alternative Motion to Abandon the Movant's Property; Order to Show Cause has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): [88](#) Transcript). (hsmi) (Entered: 07/18/2022) |
| 07/18/2022 | [90](#)<br>(2 pgs; 2 docs) | This matter is before the Court upon the filing of the Notice Regarding Non-Compliance as Directed by Paragraph 12 of the Order at Entry 36 [Dkt. No.86] (the Notice) filed by U LOCK INC. It is hereby ORDERED, ADJUDGED AND DECREED that:(1) Any response to the Notice shall be filed on or before July 25, 2022. Order Signed on 7/18/2022. (RE: related document(s): [86](#) Notice). (aala) (Entered: 07/18/2022) |
| 07/19/2022 | [91](#)<br>(15 pgs; 5 docs) | Response *In Opposition* Regarding the Hearing on 08/09/22. Filed by Christine Biros (RE: related document(s): [53](#) Motion to Convert Case from Chapter 7 to 11 filed by Debtor U LOCK INC). (Attachments: # [1](#) Exhibit A # [2](#) Exhibit B # [3](#) Certificate of Service # [4](#) Mailing Matrix) (Wenrich, Sarah) (Entered: 07/19/2022) |
| 07/19/2022 | [92](#)<br>(5 pgs; 2 docs) | Response *to Motion to Convert Case from Chapter 7 to 11* Regarding the Hearing on 08/09/22. Filed by Robert H. Slone, Trustee (RE: related document(s): [53](#) Motion to Convert Case from Chapter 7 to 11 filed by Debtor U LOCK INC, [69](#) Hearing on a Judge Taddonio Case Set by |

| | | Attorney or Trustee filed by Debtor U LOCK INC). (Attachments: # 1 Proposed Order) (Slone, Trustee, Robert) (Entered: 07/19/2022) |
|---|---|---|
| 07/20/2022 | 93 (4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 89 Notice of Filing of Transcript). Notice Date 07/20/2022. (Admin.) (Entered: 07/21/2022) |
| 07/20/2022 | 94 (3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 90 Order -Non-motion related-). Notice Date 07/20/2022. (Admin.) (Entered: 07/21/2022) |
| 07/22/2022 | 95 (5 pgs; 2 docs) | Motion to Compel William Otto to File Appearance. Filed by Petitioning Creditor Shanni Snyder. (Attachments: # 1 Proposed Order) (mgut) (Entered: 07/22/2022) |
| 07/25/2022 | 96 (2 pgs) | Response *to Debtor U Lock's Notice of Non-Compliance* Regarding the Hearing on no hearing date scheduled. Filed by Robert H. Slone, Trustee (RE: related document(s): 86 Notice filed by Debtor U LOCK INC). (Slone, Trustee, Robert) (Entered: 07/25/2022) |
| 07/25/2022 | 97 (14 pgs; 4 docs) | Response *to Debtor U Locks notice of Non-Compliance* Regarding the Hearing on 08/09/2022. Filed by Christine Biros (RE: related document(s): 36 Order -Non-motion related-, 86 Notice filed by Debtor U LOCK INC). (Attachments: # 1 Exhibit A # 2 Certificate of Service # 3 Exhibit Creditor's Mail Matrix) (Wenrich, Sarah) (Entered: 07/25/2022) |
| 07/28/2022 | 98 (2 pgs; 2 docs) | Order Signed on 7/28/2022. ORDERED, ADJUDGED, and DECREED that the Motion will be dismissed on August 5, 2022, without prejudice unless the Movant takes the following corrective action:... (RE: related document(s): 95 Motion to Compel William Otto to file an Appearance). (lfin) (Entered: 07/28/2022) |
| 07/30/2022 | 99 (3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 98 Order -Non-motion related-). Notice Date 07/30/2022. (Admin.) (Entered: 07/31/2022) |
| 08/01/2022 | 104 (438 pgs; 3 docs) | Adversary case 22-2048. Complaint Pursuant to 11 USC 105(a) and 362(k) and by U LOCK INC against Christine Biros. Fee Amount $ 350. (Attachments: # 1 Exhibit A -- Contract between U Lock and Biros # 2 Exhibit B -- Decision of Court of Common Pleas # 3 Exhibit C -- Superior Court Opinion # 4 Exhibit D(1) -- State Court Docket Sheet #1 # 5 Exhibit D(2) -- State Court docket sheet pt 2 # 6 Exhibit Superior Court docket sheet # 7 Exhibit F -- Supreme Court of Pennsylvania docket sheet |

| | | |
|---|---|---|
| | | # 8 Exhibit G -- Unilateral Order of January 20 2022 # 9 Exhibit H-- January 25 2022 deed # 10 Exhibit I -- U Lock motion to stay remand of record # 11 Exhibit J -- Biros response to motion to stay # 12 Exhibit K-- March 16 2022 Order of Supreme Court of Pennsylvania # 13 Exhibit L -- U Lock motion to vacate unilateral order # 14 Exhibit M -- April 16 2022 Petition for Writ of Possession (never filed) # 15 Exhibit N -- Motion for Sanctions (never filed) # 16 Exhibit O -- U Lock preliminary objections to petition for possession # 17 Exhibit P -- Transcript of April 22 2022 hearing # 18 Exhibit Q -- May 13 2022 Order Granting Possession and Levy # 19 Exhibit R -- May 13 2022 Order Denying Motion to Vacate Unilateral Order # 20 Exhibit S May 18 2022 Letter from Christine Biros to state judge # 21 Exhibit T -- Transcript May 20 2022 state court hearing # 22 Exhibit U -- May 24 2022 letter from Christine Biros to state judge # 23 Exhibit V -- June 1 2022 letter from Christine Biros to state court judge # 24 Exhibit W -- Letter to state court judge May 5 2022) Nature of Suit: (91 (Declaratory judgment)),(14 (Recovery of money/property - other)) (Roth, J.) (Attachments: # 1 Exhibits A-N # 2 Exhibits O-W) (dpas) (Attachment 1 replaced on 8/5/2022) (dpas). (Attachment 2 replaced on 8/5/2022) (dpas). (Entered: 08/05/2022) |
| 08/03/2022 | 100 (6 pgs; 2 docs) | Declaration re: *Notice of Non-Compliance (Docket Entry 86)* Filed by Debtor U LOCK INC (Attachments: # 1 Certificate of Service) (Roth, J.) (Entered: 08/03/2022) |
| 08/03/2022 | 101 (5 pgs; 2 docs) | NOTICE OF HEARING AND RESPONSE DEADLINE REGARDING MOTION OF SHANNI SNYDER TO COMPEL WILLIAM OTTO TO FILE APPEARANCE (RE: related document(s): 95 Motion to Compel filed by Petitioning Creditor Shanni Snyder). Hearing scheduled for 9/9/2022 at 11:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 8/21/2022. Filed by Shanni Snyder (aala) (Entered: 08/03/2022) |
| 08/04/2022 | 102 (21 pgs; 2 docs) | Exhibit *s to be referenced at hearing on August 9, 2022* Filed by Debtor U LOCK INC (RE: related document(s): 53 Motion to Convert Case from Chapter 7 to 11 filed by Debtor U LOCK INC). (Attachments: # 1 Certificate of Service) (Roth, J.) (Entered: 08/04/2022) |
| 08/04/2022 | 103 (2 pgs; 2 docs) | Order Denying Motion To Compel William Otto to File Appearance - The hearing scheduled for September 9, 2022 is CANCELLED. (Related Doc # 95) Signed on 8/4/2022. (aala) (Entered: 08/04/2022) |

| | | |
|---|---|---|
| 08/05/2022 | [105](#)<br>(14 pgs; 2 docs) | Adversary case 22-02052. Complaint by Shanni Snyder against U LOCK INC. , Biros Irrevocable Life Insurance Trust , Christine Biros , Robert H. Slone , Charles O. Zebley Jr.. Receipt Number NFP, Fee Amount $ 350 . (Attachments: # [1](#) Letter) Nature of Suit: (91 (Declaratory judgment)) ,(21 (Validity, priority or extent of lien or other interest in property)) (aala) (Entered: 08/05/2022) |
| 08/05/2022 | [106](#)<br>(6 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [101](#) Order Scheduling Hearing). Notice Date 08/05/2022. (Admin.) (Entered: 08/06/2022) |
| 08/06/2022 | [107](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [103](#) Order on Motion to Compel). Notice Date 08/06/2022. (Admin.) (Entered: 08/07/2022) |
| 08/08/2022 | [108](#)<br>(19 pgs; 3 docs) | DECLARATION OF GEORGE SNYDER IN REFERENCE TO CERTAIN EQUIPMENT Filed by Managing General Partner George Snyder (Attachments: # [1](#) Exhibit # [2](#) Certificate of Service) (aala) (Entered: 08/08/2022) |
| 08/10/2022 | [109](#)<br>(2 pgs) | Hearing Held on 8/9/2022 (RE: related document(s): [14](#) Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing, [36](#) Order -Non-motion related-, [53](#) Motion to Convert Case from Chapter 7 to 11 filed by Debtor U LOCK INC, [102](#) Exhibit filed by Debtor U LOCK INC). (jhel) (Entered: 08/10/2022) |
| 08/10/2022 | 110 | TEXT ORDER: On August 9, 2022, a hearing was conducted on the Motion to Convert Case from Chapter 7 to 11 [Dkt. No. 53] ("Motion"). It is hereby ORDERED, ADJUDGED, and DECREED that the Motion is DENIED for the reasons stated on the record. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 8/10/2022. (jhel) (Entered: 08/10/2022) |
| 08/10/2022 | 111 | TEXT ORDER: On August 9, 2022, a hearing was conducted on the Notice Regarding Non-Compliance as Directed by Paragraph 12 of the Order at Entry 36 [Dkt. No. 86] ("Notice"). It is hereby ORDERED, ADJUDGED, and DECREED that the Notice is DENIED as WITHDRAWN. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 8/10/2022. (RE: related document(s): [86](#) Notice). (jhel) (Entered: 08/10/2022) |
| 08/10/2022 | 112 | TEXT ORDER: On August 9, 2022, a hearing was conducted on Adversary Proceeding (22-2048-GLT) [Dkt. |

| | | |
|---|---|---|
| | | No. 104] ("Adversary"). It is hereby ORDRED, ADJUDGED, and DECREED, that the Adversary is DISMISSED prejudice for the reasons stated on the record. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 8/10/2022.. (RE: related document(s): 104 Entry). (jhel) (Entered: 08/10/2022) |
| 08/10/2022 | 113 | TEXT ORDER: On August 9, 2022, a hearing was conducted on the continued Expedited Motion to Dismiss Case, in addition Motion for Sanctions, Motion to Abandon the Movants Property Against Petitioning Creditor, or in the alternative Motion for Relief from Stay or in the alternative Motion to Abandon the Movants Property ("Motion"). It is hereby ORDRED, ADJUDGED, and DECREED, that: (1) The Motion is CONTINUED to August 25, 2022, at 11:30 a.m. before Judge Gregory L. Taddonio in Courtroom A, 54th Floor U.S. Steel Tower, 600 Grant Street, Pittsburgh, Pennsylvania. (2) On or before August 23, 2022, the Trustee shall file a status report. (3) Parties that wish to participate in the hearing via Zoom video conference shall comply with Judge Taddonio's Procedures. If the parties already have registered for the hearing, there is no need to re-register for this time change. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 8/10/2022 (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). (jhel) (Entered: 08/10/2022) |
| 08/10/2022 | 114 (1 pg) | 3-Day Transcript Requested by U LOCK INC regarding hearing held 08/09/2022. Transcript is being prepared by J&J Court Transcribers, Inc. Estimated completion date is 08/15/2022. (RE: related document(s): 109 Hearing Held). (hsmi) (Entered: 08/10/2022) |
| 08/15/2022 | 115 (38 pgs) | Transcript regarding Hearing Held 08/09/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's Office or contact the Court Reporter/ Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related document(s) 114 Transcript Request). Notice of Intent to Request Redaction due 8/22/2022. Redaction Request due 9/6/2022. Redacted Transcript Submission due 9/15/2022. Remote electronic access to the transcript is restricted through 11/14/2022. (hsmi) (Entered: 08/15/2022) |

| | | |
|---|---|---|
| 08/15/2022 | [116](#)<br>(3 pgs; 2 docs) | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 08/09/2022 on Continued Expedited Motion to Dismiss Case, in addition to Motion For Sanctions Against Petitioning Creditor, or in the alternative Motion for Relief from Stay, or in the alternative Motion to Abandon the Movants Property; Order Granting Christine Biros Limited Relief from the Stay; Notice Regarding Non-Compliance as Directed by Paragraph 12 of the Order at Entry 36; Motion to Convert Case from Chapter 7 to 11; Exhibits to be referenced at hearing on 8/9/22 has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): [115](#) Transcript). (hsmi) (Entered: 08/15/2022) |
| 08/17/2022 | [117](#)<br>(7 pgs; 3 docs) | Application to Employ Eric E. Bononi, Esq., CPA as Accountant for the Trustee Filed by Trustee Robert H. Slone, Trustee. (Attachments: # [1](#) Exhibit # [2](#) Proposed Order) (Slone, Trustee, Robert) (Entered: 08/17/2022) |
| 08/17/2022 | [118](#)<br>(2 pgs) | Hearing on Trustee's Motion to Employ Accountant Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): [117](#) Application to Employ filed by Trustee Robert H. Slone, Trustee). Hearing scheduled for 9/22/2022 at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 9/6/2022. (Slone, Trustee, Robert) (Entered: 08/17/2022) |
| 08/17/2022 | [119](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [116](#) Notice of Filing of Transcript). Notice Date 08/17/2022. (Admin.) (Entered: 08/18/2022) |
| 08/22/2022 | [120](#)<br>(2 pgs) | Status Report Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 113 Hearing Continued). (Slone, Trustee, Robert) (Entered: 08/22/2022) |
| 08/23/2022 | [121](#)<br>(4 pgs; 2 docs) | Notice of Appeal *from Order Denying Motion to Convert*. Fee Amount $ 298. Filed by U LOCK INC (RE: related document(s): 110 Order on Motion to Convert Case from Chapter 7 to Chapter 11). Appellant Designation due by 09/6/2022 for 110 ,. (Roth, J.) (Entered: 08/23/2022) |
| 08/23/2022 | 122 | Receipt of Notice of Appeal( [22-20823-GLT](#)) [appeal,ntcapl] ( 298.00) filing fee. Receipt number A16028443, amount $ 298.00. (U.S. Treasury) (Entered: 08/23/2022) |
| 08/24/2022 | [123](#)<br>(2 pgs; 2 docs) | Letter Requesting Appeal Cover Sheet sent to J. Allen Roth, Esq. (mgut) (Entered: 08/24/2022) |

| | | |
|---|---|---|
| 08/24/2022 | [124](#)<br>(2 pgs; 2 docs) | Letter to All Parties Regarding Filing Designations of Record on Appeal. cm: Debtor, J. Allen Roth, Esq., Robert Slone, Esq., Christine Biros, Sarah E. Wenrich, Esq., Shanni Snyder (RE: related document(s): [121](#) Notice of Appeal filed by Debtor U LOCK INC, [123](#) Letter Requesting Appeal Cover Sheet). (mgut) (Entered: 08/24/2022) |
| 08/24/2022 | [125](#)<br>(2 pgs; 2 docs) | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): 110 Order on Motion to Convert Case from Chapter 7 to Chapter 11, [121](#) Notice of Appeal filed by Debtor U LOCK INC, [123](#) Letter Requesting Appeal Cover Sheet, [124](#) Letter Regarding Filing Designations). (mgut) (Entered: 08/24/2022) |
| 08/25/2022 | 126 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:22-cv-01218. District Court Document No. 1. Name of Judge: Robert J. Colville. (RE: related document(s): [121](#) Notice of Appeal filed by Debtor U LOCK INC). (aala) (Entered: 08/25/2022) |
| 08/26/2022 | [127](#)<br>(1 pg) | Hearing Held on 8/25/2022 (RE: related document(s): [14](#) Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). 1. [Text Order] 2. [Text Order] 3. [Chambers to Issue] (aala) (Entered: 08/26/2022) |
| 08/26/2022 | 128 | TEXT ORDER: On August 25, 2022, the Court held a continued hearing on the Expedited Motion to Dismiss Case, in addition to Motion For Sanctions Against Petitioning Creditor, or in the alternative Motion for Relief from Stay or in the alternative Motion to Abandon the Movants Property [Dkt. No. 14]. Based upon statements made on the record at the August 25 hearing, it is hereby ORDERED that the Expedited Motion [Dkt. No. 14] is DENIED without prejudice with respect to any request for additional relief beyond the Order entered on June 3, 2022 at Dkt. No. 36. Judge Taddonio Signed on 8/26/2022. (RE: related document(s): [14](#) Expedited Motion to Dismiss Case, Motion For Sanctions Against Petitioning Creditor, Motion for Relief from Stay. Fee Amount $188., Motion to Abandon the Movant's Property. Fee Amount $ 188., Motion to Expedite Hearing. (hthu) (Entered: 08/26/2022) |
| 08/26/2022 | 129 | TEXT ORDER: On August 25, 2022, the Court held a continued hearing on the Expedited Motion to Dismiss Case, in addition to Motion For Sanctions Against Petitioning Creditor, or in the alternative Motion for Relief from Stay or |

| | | |
|---|---|---|
| | | in the alternative Motion to Abandon the Movants Property [Dkt. No. 14]. Based upon statements made on the record at the August 25 hearing, it is hereby ORDERED that on or before September 26, 2022, the trustee is directed to review the various alleged stay violations by the parties and determinewhether to file any appropriate causes of action. Judge Taddonio Signed on 8/26/2022. (hthu) (Entered: 08/26/2022) |
| 08/26/2022 | [130](#)<br>(1 pg) | 3-Day Transcript Requested by U LOCK INC regarding hearing held 8/25/2022. Transcript is being prepared by J&J Court Transcribers, Inc. Estimated completion date is 8/31/2022. (RE: related document(s): [127](#) Hearing Held). (aolo) (Entered: 08/26/2022) |
| 08/26/2022 | 131 | The upcoming 341(a) meeting is scheduled to be held by phone. Call 1-866-687-2935 and use access code 3684723 to join the meeting. (Slone, Trustee, Robert) (Entered: 08/26/2022) |
| 08/26/2022 | [132](#)<br>(5 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [121](#) Notice of Appeal filed by Debtor U LOCK INC). Notice Date 08/26/2022. (Admin.) (Entered: 08/27/2022) |
| 08/26/2022 | [133](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [124](#) Letter Regarding Filing Designations). Notice Date 08/26/2022. (Admin.) (Entered: 08/27/2022) |
| 08/26/2022 | [134](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [125](#) Letter of Transmission to District Court). Notice Date 08/26/2022. (Admin.) (Entered: 08/27/2022) |
| 08/30/2022 | [135](#)<br>(8 pgs; 2 docs) | Motion For Sale of Property under Section 363(b) *(Rights of the Chapter 7 Trustee Regarding Property Located at 14140 U.S. Route 30, North Huntingdon, PA)* Filed by Trustee Robert H. Slone, Trustee. (Attachments: # [1](#) Proposed Order) (Slone, Trustee, Robert) (Entered: 08/30/2022) |
| 08/30/2022 | [136](#)<br>(2 pgs) | Hearing on Motion to Sell Property of the Estate--Rights of the Chapter 7 Trustee Regarding Property Located at 14140 U.S. Route 30, N. Huntingdon, PA Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): [135](#) Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee). Hearing scheduled for 10/6/2022 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 9/19/2022. (Slone, Trustee, Robert) (Entered: 08/30/2022) |

| | | |
|---|---|---|
| 08/31/2022 | [137](15 pgs; 3 docs) | Motion For Sale of Property under Section 363(b) Filed by Trustee Robert H. Slone, Trustee. (Attachments: # 1 Exhibit # 2 Proposed Order) (Slone, Trustee, Robert) (Entered: 08/31/2022) |
| 08/31/2022 | [138](2 pgs) | Hearing on Trustee's Motion to Sell Personal Property of the Estate Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 137 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee). Hearing scheduled for 10/6/2022 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 9/19/2022. (Slone, Trustee, Robert) (Entered: 08/31/2022) |
| 08/31/2022 | [139](18 pgs) | Transcript regarding Hearing Held 08/25/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's Office or contact the Court Reporter/ Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related document(s) 130 Transcript Request filed by Debtor U LOCK INC). Notice of Intent to Request Redaction due 9/7/2022. Redaction Request due 9/21/2022. Redacted Transcript Submission due 10/3/2022. Remote electronic access to the transcript is restricted through 11/29/2022. (hsmi) (Entered: 08/31/2022) |
| 08/31/2022 | [140](3 pgs; 2 docs) | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 08/25/2022 on Continued Expedited Motion to Dismiss Case, in addition to Motion For Sanctions Against Petitioning Creditor, or in the alternative Motion for Relief from Stay, or in the alternative Motion to Abandon the Movants Property and Order Granting Christine Biros Limited Relief from the Stay has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): 139 Transcript). (hsmi) (Entered: 08/31/2022) |
| 09/01/2022 | [141](3 pgs) | Appeal Cover Sheet Filed by U LOCK INC (RE: related document(s): 121 Notice of Appeal). (Roth, J.) (Entered: 09/01/2022) |
| 09/01/2022 | [142](1 pg) | Statement of Issues on Appeal, Filed by U LOCK INC (RE: related document(s): 121 Notice of Appeal, 141 Appeal Cover Sheet). (Roth, J.) (Entered: 09/01/2022) |
| 09/01/2022 | [143](3 pgs; 2 docs) | Order Signed on 9/1/2022. It is hereby ORDERED, ADJUDGED, and DECREED that:1. The State Courts Writ of Possession Order is deemed VOID. (RE: related document(s): 1 Involuntary Petition Chapter 7). 14 Motion |

|  | | to Dismiss (aala) (Entered: 09/01/2022) |
|---|---|---|
| 09/02/2022 | <u>144</u><br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): <u>140</u> Notice of Filing of Transcript). Notice Date 09/02/2022. (Admin.) (Entered: 09/03/2022) |
| 09/03/2022 | <u>145</u><br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): <u>143</u> Order -Non-motion related-). Notice Date 09/03/2022. (Admin.) (Entered: 09/04/2022) |
| 09/06/2022 | <u>148</u><br>(3 pgs; 2 docs) | Notice of Appeal . Receipt Number NFP,Fee Amount $ 298. Filed by Shanni Snyder (RE: related document(s): 110 Order on Motion to Convert Case from Chapter 7 to Chapter 11). Appellant Designation due by 9/20/2022 for 110 and for 110 , . (aala) (Entered: 09/07/2022) |
| 09/06/2022 | <u>149</u><br>(4 pgs; 2 docs) | Appeal Cover Sheet Filed by Shanni Snyder (RE: related document(s): <u>148</u> Notice of Appeal). (aala) (Entered: 09/07/2022) |
| 09/07/2022 | <u>146</u><br>(10 pgs) | Appellant Designation of Contents For Inclusion in Record On Appeal Filed by U LOCK INC (RE: related document(s): <u>121</u> Notice of Appeal, <u>141</u> Appeal Cover Sheet, <u>142</u> Statement of Issues on Appeal). Appellee designation due by 09/21/2022 for <u>142</u> and for <u>141</u> and for <u>121</u>,. Transmission of Designation Due by 10/7/2022 for <u>142</u> and for <u>141</u> and for <u>121</u>,. (Roth, J.) (Entered: 09/07/2022) |
| 09/07/2022 | <u>147</u><br>(1 pg) | Certificate of No Objection Regarding the Hearing on 9/22/2022. Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): <u>117</u> Application to Employ filed by Trustee Robert H. Slone, Trustee, <u>118</u> Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Slone, Trustee, Robert) (Entered: 09/07/2022) |
| 09/07/2022 | <u>150</u><br>(2 pgs; 2 docs) | Letter Requesting Appeal Cover Sheet (aala) (Entered: 09/07/2022) |
| 09/07/2022 | <u>151</u><br>(2 pgs; 2 docs) | Letter to All Parties Regarding Filing Designations of Record on Appeal. cm: All Interested Parties (RE: related document(s): <u>148</u> Notice of Appeal filed by Petitioning Creditor Shanni Snyder). (aala) (Entered: 09/07/2022) |

| | | |
|---|---|---|
| 09/07/2022 | [152](#)<br>(2 pgs; 2 docs) | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): 110 Order on Motion to Convert Case from Chapter 7 to Chapter 11, [148](#) Notice of Appeal filed by Petitioning Creditor Shanni Snyder). (aala) (Entered: 09/07/2022) |
| 09/09/2022 | [153](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [148](#) Notice of Appeal filed by Petitioning Creditor Shanni Snyder). Notice Date 09/09/2022. (Admin.) (Entered: 09/10/2022) |
| 09/09/2022 | [154](#)<br>(5 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [149](#) Appeal Cover Sheet filed by Petitioning Creditor Shanni Snyder). Notice Date 09/09/2022. (Admin.) (Entered: 09/10/2022) |
| 09/09/2022 | [155](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [150](#) Letter Requesting Appeal Cover Sheet). Notice Date 09/09/2022. (Admin.) (Entered: 09/10/2022) |
| 09/09/2022 | [156](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [151](#) Letter Regarding Filing Designations). Notice Date 09/09/2022. (Admin.) (Entered: 09/10/2022) |
| 09/09/2022 | [157](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [152](#) Letter of Transmission to District Court). Notice Date 09/09/2022. (Admin.) (Entered: 09/10/2022) |
| 09/12/2022 | [158](#)<br>(2 pgs) | Proof of Publication of Notice of Sale Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): [137](#) Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee, [138](#) Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Slone, Trustee, Robert) (Entered: 09/12/2022) |
| 09/12/2022 | [159](#)<br>(2 pgs) | Proof of Publication of Notice of Sale Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): [135](#) Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee, [136](#) Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Slone, Trustee, Robert) (Entered: 09/12/2022) |
| 09/12/2022 | 160 | Trustee Certification of Services Rendered Under 11 U.S.C. Section 330(e). I rendered the following service in the case and am eligible for payment under 11 U.S.C. Section 330(e): Filed a Notice of Assets. I declare under penalty of perjury that the foregoing is true and correct. (Executed on |

| | | 9/12/2022). Filed by Robert H. Slone, Trustee (RE: related document(s): 84 Notice of Assets & Request for Notice to Creditors). (Slone, Trustee, Robert) (Entered: 09/12/2022) |
|---|---|---|
| 09/14/2022 | 161 (2 pgs; 2 docs) | Default Order Granting Application to Employ Eric E. Bononi, Esq. as Accountant for the Trustee. (Related Doc 117) Signed on 9/14/2022. (aala) (Entered: 09/15/2022) |
| 09/17/2022 | 162 (3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 161 Order on Application to Employ). Notice Date 09/17/2022. (Admin.) (Entered: 09/18/2022) |
| 09/20/2022 | 163 (2 pgs; 2 docs) | Motion to Withdraw/Dismiss Document *(Motions to Sell Property of the Estate)* Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 135 Motion for Sale of Property under Section 363(b), 136 Hearing on a Judge Taddonio Case Set by Attorney or Trustee, 137 Motion for Sale of Property under Section 363(b), 138 Hearing on a Judge Taddonio Case Set by Attorney or Trustee). (Attachments: # 1 Proposed Order) (Slone, Trustee, Robert) (Entered: 09/20/2022) |
| 09/20/2022 | 164 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:22-cv-1284. District Court Document No. 148. Name of Judge: Robert J. Colville. (RE: related document(s): 148 Notice of Appeal filed by Petitioning Creditor Shanni Snyder). (aala) (Entered: 09/20/2022) |
| 09/21/2022 | 165 (2 pgs; 2 docs) | Notice of Intention to Transmit Partial Appeal. (RE: related document(s): 148 Notice of Appeal filed by Petitioning Creditor Shanni Snyder). Partial Appeal Document Completion Due Date: 10/5/2022. cm: All Interested Parties (aala) (Entered: 09/21/2022) |
| 09/21/2022 | 166 | Text Order re: (163 Motion to Withdraw/Dismiss Document -bk-).. Without further notice or hearing, this pleading will be denied without prejudice if the following action is not taken: The motion appears to be incomplete. Counsel shall refile the motion and proposed order.. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 9/21/2022. (RE: related document(s): 163 Motion to Withdraw/Dismiss Document -bk-). Required corrective action due on or before 9/29/2022. (hthu) (Entered: 09/21/2022) |
| 09/22/2022 | 167 (3 pgs; 2 docs) | Motion to Withdraw/Dismiss Document *(refiled per corrective entry)* Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 135 Motion for Sale of Property |

| | | |
|---|---|---|
| | | under Section 363(b), [136] Hearing on a Judge Taddonio Case Set by Attorney or Trustee, [137] Motion for Sale of Property under Section 363(b), [138] Hearing on a Judge Taddonio Case Set by Attorney or Trustee, [163] Motion to Withdraw/Dismiss Document -bk-, 166 Order Fixing Deadline to Deny a Motion). (Attachments: # [1] Proposed Order) (Slone, Trustee, Robert) (Entered: 09/22/2022) |
| 09/22/2022 | [168] (2 pgs; 2 docs) | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): [121] Notice of Appeal filed by Debtor U LOCK INC, [141] Appeal Cover Sheet filed by Debtor U LOCK INC, [142] Statement of Issues on Appeal filed by Debtor U LOCK INC, [146] Appellant Designation filed by Debtor U LOCK INC). (aala) (Entered: 09/22/2022) |
| 09/22/2022 | 169 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:22-cv-01218. District Court Document No. 5. Name of Judge: Robert J. Colville. (RE: related document(s): [121] Notice of Appeal filed by Debtor U LOCK INC). (aala) (Entered: 09/22/2022) |
| 09/23/2022 | [170] (3 pgs; 2 docs) | Amended Motion to Withdraw/Dismiss Document Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): [135] Motion for Sale of Property under Section 363(b), [136] Hearing on a Judge Taddonio Case Set by Attorney or Trustee, [137] Motion for Sale of Property under Section 363(b), [138] Hearing on a Judge Taddonio Case Set by Attorney or Trustee, [167] Motion to Withdraw/Dismiss Document -bk-). (Attachments: # [1] Proposed Order) (Slone, Trustee, Robert) (Entered: 09/23/2022) |
| 09/23/2022 | [171] (3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [165] Notice of Intention to Transmit Partial Appeal). Notice Date 09/23/2022. (Admin.) (Entered: 09/24/2022) |
| 09/24/2022 | [172] (3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [168] Letter of Transmission to District Court). Notice Date 09/24/2022. (Admin.) (Entered: 09/25/2022) |
| 09/27/2022 | [173] (2 pgs) | Status Report Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 129 Order -Non-motion related-). (Slone, Trustee, Robert) (Entered: 09/27/2022) |
| 09/27/2022 | [174] (2 pgs; 2 docs) | Order Withdrawing Motion For Sale of Property under Section 363(b) (Related Doc # [135]), and Withdrawing Motion For Sale of Property under Section 363(b) (Related Doc # [137]),and Granting Motion to Withdraw/Dismiss |

| | | Document (Related Doc # 170) Hearings scheduled for October 6, 2022 at 10:30 AM are cancelled. Signed on 9/27/2022. (aala) (Entered: 09/27/2022) |
|---|---|---|
| 09/28/2022 | 175 (20 pgs; 3 docs) | Motion For Sale of Property under Section 363(b) *Tangible and Intangible Personal Property of the Estate* Filed by Trustee Robert H. Slone, Trustee. (Attachments: # 1 Exhibit # 2 Proposed Order) (Slone, Trustee, Robert) (Entered: 09/28/2022) |
| 09/28/2022 | 176 (2 pgs) | Hearing on Motion for Sale of Property-Tangible and Intangible Personal Property of the Estate Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 175 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee). Hearing scheduled for 11/10/2022 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 10/17/2022. (Slone, Trustee, Robert) (Entered: 09/28/2022) |
| 09/29/2022 | 177 (2 pgs) | Statement of Issues on Appeal, Filed by Shanni Snyder (RE: related document(s): 148 Notice of Appeal). (aala) (Entered: 09/29/2022) |
| 09/29/2022 | 178 (3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 174 Order on Motion for Sale of Property under Section 363(b)). Notice Date 09/29/2022. (Admin.) (Entered: 09/30/2022) |
| 10/05/2022 | 179 (24 pgs; 2 docs) | Appellant Designation of Contents For Inclusion in Record On Appeal Filed by Shanni Snyder (RE: related document(s): 148 Notice of Appeal). Appellee designation due by 10/19/2022 for 148, . Transmission of Designation Due by 11/4/2022 for 148, . (aala) (Entered: 10/05/2022) |
| 10/07/2022 | 180 (25 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 179 Appellant Designation filed by Petitioning Creditor Shanni Snyder). Notice Date 10/07/2022. (Admin.) (Entered: 10/08/2022) |
| 10/10/2022 | 181 (2 pgs) | Proof of Publication of Notice of Sale *(Tribune Review)* Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 175 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee, 176 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Slone, Trustee, Robert) (Entered: 10/10/2022) |
| 10/10/2022 | 182 (2 pgs) | Proof of Publication of Notice of Sale *(Westmoreland Law Journal)* Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 175 Motion for Sale of Property under |

| | | |
|---|---|---|
| | | Section 363(b) filed by Trustee Robert H. Slone, Trustee, 176 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Slone, Trustee, Robert) (Entered: 10/10/2022) |
| 10/17/2022 | 183 (11 pgs; 4 docs) | Objection *to the Motion for Sale of Assets* Regarding the Hearing on 11/10/2022. Filed by U LOCK INC (RE: related document(s): 175 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee). (Attachments: # 1 Proposed Order # 2 Certificate of Service # 3 Certificate of Service Attachment to Certificate of Service) (Roth, J.) (Entered: 10/17/2022) |
| 10/17/2022 | 184 (5 pgs) | Objection *To The Motion For Sale* Regarding the Hearing on 11/10/2022. Filed by Shanni Snyder (RE: related document(s): 175 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee). (aala) (Entered: 10/18/2022) |
| 10/18/2022 | 185 (4 pgs) | Objection *To Motion for Sale* Regarding the Hearing on 11/10/2022. Filed by George Snyder (RE: related document(s): 175 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee). (aala) (Entered: 10/18/2022) |
| 10/20/2022 | 186 (2 pgs; 2 docs) | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): 177 Statement of Issues on Appeal filed by Petitioning Creditor Shanni Snyder, 179 Appellant Designation filed by Petitioning Creditor Shanni Snyder). (aala) (Entered: 10/20/2022) |
| 10/21/2022 | 187 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:22-cv-01284. District Court Document No. 6. Name of Judge: Robert J. Colville. (RE: related document(s): 148 Notice of Appeal filed by Petitioning Creditor Shanni Snyder, 177 Statement of Issues on Appeal filed by Petitioning Creditor Shanni Snyder, 179 Appellant Designation filed by Petitioning Creditor Shanni Snyder). (aala) (Entered: 10/21/2022) |
| 10/22/2022 | 188 (3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 186 Letter of Transmission to District Court). Notice Date 10/22/2022. (Admin.) (Entered: 10/23/2022) |

| | | |
|---|---|---|
| 10/25/2022 | 189<br>(7 pgs; 2 docs) | Certification of Counsel Regarding *Stipulated Order for Relief From Stay* Filed by Creditor Christine Biros (Attachments: # 1 Stipulated Order) (Wenrich, Sarah) (Entered: 10/25/2022) |
| 10/27/2022 | 190<br>(3 pgs; 2 docs) | Order Setting Hearing on (RE: related document(s): 189 Certification of Counsel Regarding filed by Creditor Christine Biros). Hearing scheduled for 11/2/2022 at 03:00 PM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due at the time of the hearing. (hthu) (Entered: 10/27/2022) |
| 10/27/2022 | 191<br>(3 pgs; 2 docs) | Certificate of Service Regarding the Hearing on 11/2/2022. Filed by Creditor Christine Biros (RE: related document(s): 189 Certification of Counsel Regarding filed by Creditor Christine Biros, 190 Order Scheduling a Hearing). (Attachments: # 1 Matrix) (Wenrich, Sarah) (Entered: 10/27/2022) |
| 10/28/2022 | 192 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:22-cv-01485. District Court Document No. 1. Name of Judge: Robert J. Colville. (RE: related document(s): 148 Notice of Appeal filed by Petitioning Creditor Shanni Snyder). (aala) (Entered: 10/28/2022) |
| 10/28/2022 | 193<br>(3 pgs; 2 docs) | Motion to Continue/Reschedule Hearing On *November 2, 2022* Filed by Debtor U LOCK INC (RE: related document(s): 189 Certification of Counsel Regarding, 190 Order Scheduling a Hearing). (Attachments: # 1 Proposed Order) (Roth, J.) (Entered: 10/28/2022) |
| 10/28/2022 | 194 | Text Order Rescheduling Hearing TIME ONLY: It is hereby ORDERED that the hearing on the Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee [Dkt. No. 175] scheduled for November 10, 2022 at 10:30 am is RESCHEDULED to November 10, 2022 at 11:30 am. This text only entry constitutes the Court's Order and Notice in this matter.Judge Taddonio signed on 10/28/2022. Hearing Scheduled for 11/10/2022 at 11:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (hthu) (Entered: 10/28/2022) |

| | | |
|---|---|---|
| 10/28/2022 | [195](#)<br>(2 pgs; 2 docs) | Order Granting Motion To Continue/Reschedule Hearing On (Related Doc # [193](#)) Signed on 10/28/2022. Hearing rescheduled for 11/10/2022 at 11:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (RE: related document(s): [189](#) Certification of Counsel Regarding). (aala) (Entered: 10/28/2022) |
| 10/30/2022 | [196](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [195](#) Order on Motion to Continue/Reschedule Hearing). Notice Date 10/30/2022. (Admin.) (Entered: 10/31/2022) |
| 11/03/2022 | [197](#)<br>(3 pgs) | Verified Statement *Disclosure of Connections in Relation to the Proposed Sale [Doc. No. 175]* Filed by Creditor Christine Biros (Wenrich, Sarah) (Entered: 11/03/2022) |
| 11/03/2022 | [198](#)<br>(1 pg) | Verification of Connections for Shanni Snyder in Relation to Proposed Sale. Filed by Petitioning Creditor Shanni Snyder. (mgut) (Entered: 11/04/2022) |
| 11/07/2022 | [199](#)<br>(3 pgs; 2 docs) | Certification of Counsel Regarding *Designation of Debtor's Tax Return Responsibilities* Filed by Trustee Robert H. Slone, Trustee (Attachments: # [1](#) Stipulation and Consent Order) (Slone, Trustee, Robert) (Entered: 11/07/2022) |
| 11/08/2022 | [200](#)<br>(10 pgs) | Objection *to the Certification Relating to Stipulated Order* Regarding the Hearing on 11/10/2022. Filed by Debtor U LOCK INC (RE: related document(s): [189](#) Certification of Counsel Regarding filed by Creditor Christine Biros). (Roth, J.) (Entered: 11/08/2022) |
| 11/08/2022 | 201 | Text Order re: ([200](#) Objection to the Certification Relating to Stipulated Order).. Without further notice or hearing, this pleading will be denied without prejudice if the following action is not taken: THE PROPOSED ORDER OF COURT SHOULD BE FILED AS AN ATTACHMENT; PLEASE RE-FILE UNDER EVENT CODE PROPOSED ORDER FOUND UNDER BANKRUPTCY/MISCELLANEOUS; LINK TO RELATED DOCUMENT. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 11/8/2022. (RE: related document(s): [200](#) Objection -Non-motion related-). Required corrective action due on or before 11/16/2022. (lfin) (Entered: 11/08/2022) |
| 11/09/2022 | [202](#)<br>(12 pgs; 2 docs) | Reply *TO OBJECTIONS TO SALE MOTION AND TO VERIFICATION OF CONNECTIONS OF SHANNI SNYDER* Regarding the Hearing on 11/10/22. Filed by Christine Biros (RE: related document(s): [175](#) Motion for |

| | | |
|---|---|---|
| | | Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee, 183 Objection filed by Debtor U LOCK INC, 184 Objection filed by Petitioning Creditor Shanni Snyder, 185 Objection filed by Managing General Partner George Snyder, 198 Verified Statement filed by Petitioning Creditor Shanni Snyder). (Attachments: # 1 Exhibit A - Amended Schedules I & J) (Wenrich, Sarah) (Entered: 11/09/2022) |
| 11/09/2022 | 203 (3 pgs; 2 docs) | Consent Order Regarding the Designation of Debtor's Tax Return Responsibilities to George Snyder Signed on 11/9/2022. (RE: related document(s): 199 Certification of Counsel Regarding). (dpas) (Entered: 11/09/2022) |
| 11/09/2022 | 205 (3 pgs) | Petitioning Creditor's Objection to the Consent Order Regarding the Hearing on 11/10/2022. Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): 189 Certification of Counsel Regarding filed by Creditor Christine Biros). (mgut) (Entered: 11/10/2022) |
| 11/09/2022 | 206 (18 pgs; 2 docs) | Objections of George Snyder to Consent Order Regarding the Hearing on 11/10/2022. Filed by Managing General Partner George Snyder (RE: related document(s): 189 Certification of Counsel Regarding filed by Creditor Christine Biros). (Attachments: # 1 Exhibit) (mgut) (Entered: 11/10/2022) |
| 11/10/2022 | 204 (1 pg) | Proposed Order RE: *Objections to Settlement and Certification of Counsel Regarding Stipulated Order* Filed by Debtor U LOCK INC (RE: related document(s): 200 Objection -Non-motion related- filed by Debtor U LOCK INC). (Roth, J.) (Entered: 11/10/2022) |
| 11/10/2022 | 207 (3 pgs; 2 docs) | Notice of Appearance and Request for Notice by John B. Joyce Filed by Petitioning Creditor Shanni Snyder (Attachments: # 1 Certificate of Service) (Joyce, John) (Entered: 11/10/2022) |
| 11/10/2022 | 208 (3 pgs; 2 docs) | Notice of Appearance and Request for Notice by Jeremy J Kobeski Filed by Petitioning Creditor Shanni Snyder (Attachments: # 1 Certificate of Service) (Kobeski, Jeremy) (Entered: 11/10/2022) |
| 11/11/2022 | 209 (4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 203 Order -Non-motion related-). Notice Date 11/11/2022. (Admin.) (Entered: 11/12/2022) |
| 11/14/2022 | 210 (12 pgs; 2 docs) | Order Scheduling Hearing (RE: related document(s): 175 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee, 183 Objection filed by |

| | | |
|---|---|---|
| | | Debtor U LOCK INC, 184 Objection filed by Petitioning Creditor Shanni Snyder, 185 Objection filed by Managing General Partner George Snyder). Auction at Sale Hearing scheduled for 12/1/2022 at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 11/30/2022. The trustee is directed to file an amended sale motion and notice of sale. Except as otherwise provided in this Order, all other objections to the Motion or the proposed sale are OVERRULED. (bsil) (Entered: 11/14/2022) |
| 11/14/2022 | 211 (4 pgs; 2 docs) | Order Denying Stipulated Order for Relief from Stay Signed on 11/14/2022. (RE: related document(s): 189 Certification of Counsel Regarding, 200 Objection -Non-motion related-, 205 Objection -Non-motion related-, 206 Objection -Non-motion related-). (bsil) (Entered: 11/14/2022) |
| 11/15/2022 | 212 (2 pgs) | Hearing Held on 11/10/2022 (RE: related document(s): 175 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee, 189 Certification of Counsel Regarding filed by Creditor Christine Biros). 1. [Chambers to Prepare] 2. [Chambers to Prepare] (aala) (Entered: 11/15/2022) |
| 11/15/2022 | 213 (13 pgs; 2 docs) | Amended Order Scheduling Hearing on (RE: related document(s): 175 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee, 183 Objection filed by Debtor U LOCK INC, 184 Objection filed by Petitioning Creditor Shanni Snyder, 185 Objection filed by Managing General Partner George Snyder). Sale Hearing scheduled for 12/1/2022 at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due no later than 4 p.m on 11/30/2022. Except as otherwise provided in this Order, all other objections to the Motion or the proposed sale are OVERRULED. (aala) (Entered: 11/15/2022) |
| 11/15/2022 | 214 (2 pgs) | Meeting of Creditors Rescheduled by Trustee Filed by Robert H. Slone, Trustee. (Slone, Trustee, Robert) (Entered: 11/15/2022) |
| 11/16/2022 | 215 (13 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 210 Order Scheduling Hearing). Notice Date 11/16/2022. (Admin.) (Entered: 11/17/2022) |
| 11/16/2022 | 216 (5 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 211 Order -Non-motion related-). Notice Date 11/16/2022. (Admin.) (Entered: 11/17/2022) |

| | | |
|---|---|---|
| 11/17/2022 | [217](#)<br>(11 pgs; 3 docs) | Motion to Sell Property Free and Clear of Liens under Section 363(f) . Re: Tangible and Intangible Personal Property of the Estate. Fee Amount $188 Filed by Trustee Robert H. Slone, Trustee. (Attachments: # [1](#) Proposed Order # [2](#) Exhibit) (Slone, Trustee, Robert) (Entered: 11/17/2022) |
| 11/17/2022 | [218](#)<br>(8 pgs; 2 docs) | Amended Hearing on Trustees Amended Motion for Sale of Tangible and Intangible Personal Property of the Estate Under 11 U.S.C. Section 363(f) Free and Clear of all Liens, Claims and Encumbrances Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): [217](#) Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee). Hearing scheduled for 12/1/2022 at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 11/30/2022. (Attachments: # [1](#) Exhibit) (Slone, Trustee, Robert) (Entered: 11/17/2022) |
| 11/17/2022 | 219 | The undersigned trustee hereby requests postponement of the fee required for filing Trustees Amended Motion for Sale of Tangible and Intangible Personal Property of the Estate Under 11 U.S.C. Section 363(f) Free and Clear of all Liens, Claims and Encumbrances. The fee will be paid at a later date, if there are assets available in the debtor's estate. Filed by Robert H. Slone, Trustee. (Slone, Trustee, Robert) (Entered: 11/17/2022) |
| 11/17/2022 | [220](#)<br>(3 pgs) | Certificate of Service Regarding the Hearing on 12/1/2022. Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): [213](#) Order Scheduling Hearing, [217](#) Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee, [218](#) Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Slone, Trustee, Robert) (Entered: 11/17/2022) |
| 11/17/2022 | [221](#)<br>(14 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [213](#) Order Scheduling Hearing). Notice Date 11/17/2022. (Admin.) (Entered: 11/18/2022) |
| 11/18/2022 | 222 | Receipt of Motion to Sell Property Free and Clear of Liens Under Section 363(f)([ 22-20823-GLT](#)) [motion,msell] ( 0.00) filing fee. Receipt number POSTPONEMENT REQUESTED, amount $ 0.00. (lkat) Modified on 11/18/2022 (lkat). (Entered: 11/18/2022) |
| 11/28/2022 | [223](#)<br>(2 pgs) | Proof of Publication of Notice of Sale Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): [217](#) Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee, |

| | | |
|---|---|---|
| | | [218](#) Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Slone, Trustee, Robert) (Entered: 11/28/2022) |
| 11/30/2022 | [224](#) (7 pgs; 2 docs) | Notice Regarding Notice of Qualified Bids Regarding Sale of Tangible and Intangible Personal Property of the Estate Under 11 U.S.C. Section 363(f) Free and Clear of Liens, Claims and Encumbrances. Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): [213](#) Order Scheduling Hearing, [217](#) Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee, [218](#) Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Attachments: # [1](#) Exhibit) (Slone, Trustee, Robert) (Entered: 11/30/2022) |
| 11/30/2022 | [225](#) (4 pgs) | Objection *of George Snyder To Motion For Sale* Regarding the Hearing on 12/01/2022. Filed by George Snyder (RE: related document(s): [217](#) Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee). (aala) (Entered: 11/30/2022) |
| 11/30/2022 | [226](#) (7 pgs) | Response *in Opposition (Objection)* Regarding the Hearing on 12/1/2022. Filed by U LOCK INC (RE: related document(s): [217](#) Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee, [218](#) Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Roth, J.) (Entered: 11/30/2022) |
| 11/30/2022 | [227](#) (14 pgs; 3 docs) | Objection *to the Trustees Amended Motion for Sale of Tangible and Intangible Personal Property of the Estate Under 11 U.S.C. Section 363(f) Free and clear of All Liens, Claims and Encumbrances* Regarding the Hearing on 12/01/22. Filed by Shanni Snyder (RE: related document(s): [217](#) Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee). (Attachments: # [1](#) Proposed Order # [2](#) Certificate of Service) (Joyce, John) (Entered: 11/30/2022) |
| 12/01/2022 | [228](#) (21 pgs; 4 docs) | Stipulation By Shanni Snyder and Between Charles O. Zebley, Jr., Chapter 7 Trustee, and Robert H. Slone, Chapter 7 Trustee,. Filed by Petitioning Creditor Shanni Snyder (Attachments: # [1](#) Exhibit A # [2](#) Proposed Order # [3](#) Certificate of Service) (Joyce, John) (Entered: 12/01/2022) |
| 12/01/2022 | 229 | The upcoming 341(a) meeting is scheduled to be held by phone. Call *1-866-687-2935* and use access code *3684723* to join the meeting. Filed by Robert H. Slone, Trustee. (Slone, Trustee, Robert) (Entered: 12/01/2022) |

| 12/02/2022 | <u>230</u><br>(2 pgs) | Affidavit Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): <u>217</u> Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee). (Joyce, John) (Entered: 12/02/2022) |
|---|---|---|
| 12/02/2022 | <u>231</u><br>(11 pgs; 8 docs) | Affidavit *(Verification of Christine Biros)* Filed by Creditor Christine Biros (Attachments: # <u>1</u> Exhibit 1 # <u>2</u> Exhibit 2 # <u>3</u> Exhibit 3 # <u>4</u> Exhibit 4 # <u>5</u> Exhibit 5 # <u>6</u> Exhibit 6 # <u>7</u> Exhibit 7) (Wenrich, Sarah) (Entered: 12/02/2022) |
| 12/02/2022 | <u>232</u><br>(2 pgs) | Hearing Held on 12/01/2022 (RE: related document(s): <u>217</u> Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee). 1. [Text Order] 2. [Chambers to Prepare] (aala) (Entered: 12/02/2022) |
| 12/02/2022 | <u>233</u><br>(4 pgs) | Declaration of George Snyder In Reference To Certain Equipment filed by George Snyder (aala) (Entered: 12/02/2022) |
| 12/02/2022 | <u>234</u><br>(5 pgs) | Supplemental Declaration Of George Snyder In Reference To Certain Equipment filed by George Snyder (aala) (Entered: 12/02/2022) |
| 12/02/2022 | <u>235</u><br>(5 pgs) | Declaration Of George Snyder In Reference To Certain Equipment filed by George Snyder (aala) (Entered: 12/02/2022) |
| 12/02/2022 | <u>236</u><br>(1 pg) | Status Report *With Address for Site Meeting* Filed by Creditor Christine Biros (RE: related document(s): <u>231</u> Affidavit filed by Creditor Christine Biros). (Wenrich, Sarah) (Entered: 12/02/2022) |
| 12/02/2022 | 237 | TEXT ORDER: It is hereby ORDERED that on or before December 2, 2022 at 10 a.m., George Snyder, Shanni Snyder, and Christine Biros shall each file a sworn affidavit signed under penalty of perjury pursuant to 28 U.S.C Section 1746 detailing the location of the assets listed on the Debtor's schedules and exhibits to the Amended Notice if Hearing dated November 17, 2022. Each party shall affirm that either: (a) they have not removed any property from the Debtor's place of business at 14140 Route 30, North Huntingdon PA; or (b) that, to the extent that they did not remove any property from the Debtor's place of business, where those assets are currently located and under what authority they were removed from the business premises. Judge Taddonio Signed on 12/2/2022. (RE: related document(s): <u>232</u> Hearing Held). (hthu) (Entered: 12/02/2022) |

| | | |
|---|---|---|
| 12/07/2022 | [238](#)<br>(1 pg) | Notice of Appearance and Request for Notice by Robert S. Bernstein Filed by Creditor Christine Biros (Bernstein, Robert) (Entered: 12/07/2022) |
| 12/07/2022 | [239](#)<br>(2 pgs; 2 docs) | Order Continuing Evidentiary Hearing (RE: related document(s): [217](#) Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee). Evidentiary hearing Continued to 12/15/2022 at 10:00 AM at p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (dpas) (Entered: 12/07/2022) |
| 12/08/2022 | [240](#)<br>(2 pgs) | Meeting of Creditors Rescheduled by Trustee Filed by Robert H. Slone, Trustee. (Slone, Trustee, Robert) (Entered: 12/08/2022) |
| 12/08/2022 | 241 | The upcoming 341(a) meeting is scheduled to be held by phone. Call *1-866-687-2935* and use access code *3684723* to join the meeting. Filed by Robert H. Slone, Trustee. (Slone, Trustee, Robert) (Entered: 12/08/2022) |
| 12/09/2022 | 242 | Update Meeting of Creditors (RE: related document(s): [80](#) Meeting of Creditors Chapter 7 Asset Business/ Corporation). 341(a) meeting to be held on 1/6/2023 at 11:00 AM at 341 telephonic hearing. (aala) (Entered: 12/09/2022) |
| 12/09/2022 | [243](#)<br>(1 pg) | Notice of Appearance and Request for Notice by Daniel McArdle Booker Filed by Creditor Christine Biros (Booker, Daniel) (Entered: 12/09/2022) |
| 12/09/2022 | [244](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [239](#) Order Scheduling Hearing). Notice Date 12/09/2022. (Admin.) (Entered: 12/10/2022) |
| 12/15/2022 | [245](#)<br>(5 pgs) | Proposed Order RE: Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): [217](#) Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee). (Joyce, John) (Entered: 12/15/2022) |
| 12/15/2022 | [246](#)<br>(3 pgs; 2 docs) | Order Setting Hearing on (RE: related document(s): [228](#) Stipulation filed by Petitioning Creditor Shanni Snyder). Hearing scheduled for 1/20/2023 at 11:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 1/3/2023. (hthu) (Entered: 12/15/2022) |
| 12/15/2022 | 247 | TEXT ORDER: Highest and best bid for the tangible and intangible property is $70,000 made by Shanni Snyder. Backup bid for tangible and intangible property is $65,000 |

|  |  |  |
|---|---|---|
|  |  | made by Christine Biros ($55,000 in cash and $10,000 credit). For the reasons stated on the record at the December 15, 2022 hearing, parties shall submit a proposed form of sale order approving the sale under certification of counsel before 5 p.m. on December 16, 2022. Judge Taddonio Signed on 12/15/2022. (RE: related document(s): 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f)). (hthu) (Entered: 12/15/2022) |
| 12/15/2022 | 248 (1 pg) | Hearing Held on 12/15/2022 (RE: related document(s): 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee). [Text Order] (aala) (Entered: 12/15/2022) |
| 12/16/2022 | 249 (4 pgs; 2 docs) | Order To Show Cause (RE: related document(s): 230 Affidavit filed by Petitioning Creditor Shanni Snyder, 231 Affidavit filed by Creditor Christine Biros, 233 Document filed by Managing General Partner George Snyder, 234 Document filed by Managing General Partner George Snyder, 235 Document filed by Managing General Partner George Snyder, 236 Status Report filed by Creditor Christine Biros). A Show Cause hearing to be held on 1/27/2023 at 10:00 AM at p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (aala) (Entered: 12/16/2022) |
| 12/16/2022 | 250 (14 pgs; 2 docs) | Proposed Order RE: *Proposed Order - Snyder Redline* Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee, 247 Order -Non-motion related-). (Attachments: # 1 Proposed Order Biros Redline) (Joyce, John) (Entered: 12/16/2022) |
| 12/17/2022 | 251 (4 pgs) | BNC Certificate of Mailing. (RE: related document(s): 246 Order Scheduling a Hearing). Notice Date 12/17/2022. (Admin.) (Entered: 12/18/2022) |
| 12/18/2022 | 252 (5 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 249 Order Scheduling Hearing). Notice Date 12/18/2022. (Admin.) (Entered: 12/19/2022) |
| 12/20/2022 | 253 (2 pgs) | Certificate of Service Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): 228 Stipulation filed by Petitioning Creditor Shanni Snyder, 246 Order Scheduling a Hearing). (Joyce, John) (Entered: 12/20/2022) |
| 12/20/2022 | 254 (12 pgs; 2 docs) | ORDER CONFIRMING SALE OF TANGIBLE AND INTANGIBLE PERSONAL PROPERTY OF THE ESTATE UNDER 11 U.S.C. § 363(f), FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES Order Signed |

| | | on 12/20/2022. (RE: related document(s): 213 Order Scheduling Hearing, 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f)). (aala) (Entered: 12/20/2022) |
|---|---|---|
| 12/22/2022 | 255 (11 pgs; 3 docs) | Motion for Relief from Stay. Fee Amount $188. Filed by Creditor Christine Biros. (Attachments: # 1 Exhibit A # 2 Proposed Order) (Bernstein, Robert) (Entered: 12/22/2022) |
| 12/22/2022 | 256 | Receipt of Motion for Relief From Stay( 22-20823-GLT) [motion,mrlfsty] ( 188.00) filing fee. Receipt number A16165741, amount $ 188.00. (U.S. Treasury) (Entered: 12/22/2022) |
| 12/22/2022 | 257 (2 pgs) | Hearing on Motion for Relief from Stay Filed by Creditor Christine Biros (RE: related document(s): 255 Motion for Relief From Stay filed by Creditor Christine Biros). Hearing scheduled for 1/20/2023 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 1/9/2023. (Bernstein, Robert) (Entered: 12/22/2022) |
| 12/22/2022 | 258 (8 pgs; 2 docs) | Application for Administrative Expenses *Pursuant to 11 U.S.C. §503(b)(1)* Filed by Creditor Christine Biros. (Attachments: # 1 Proposed Order) (Bernstein, Robert) (Entered: 12/22/2022) |
| 12/22/2022 | 259 (2 pgs) | Hearing on Motion for Administrative Expense Claim Filed by Creditor Christine Biros (RE: related document(s): 258 Application for Administrative Expenses filed by Creditor Christine Biros). Hearing scheduled for 1/20/2023 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 1/9/2023. (Bernstein, Robert) (Entered: 12/22/2022) |
| 12/22/2022 | 260 | The upcoming 341(a) meeting is scheduled to be held by phone. Call 1-866-687-2935 and use access code 3684723 to join the meeting. (Slone, Trustee, Robert) (Entered: 12/22/2022) |
| 12/22/2022 | 261 (4 pgs; 2 docs) | Certificate of Service Regarding the Hearing on 1/20/2023. Filed by Creditor Christine Biros (RE: related document(s): 255 Motion for Relief From Stay filed by Creditor Christine Biros, 257 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros, 258 Application for Administrative Expenses filed by Creditor Christine Biros, 259 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Attachments: # 1 Creditor Matrix) (Bernstein, Robert) (Entered: 12/22/2022) |

| | | |
|---|---|---|
| 12/22/2022 | [262](#)<br>(13 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [254](#) Order -Non-motion related-). Notice Date 12/22/2022. (Admin.) (Entered: 12/23/2022) |
| 12/23/2022 | [263](#)<br>(1 pg) | Three-Day Transcript Requested by Christine Biros regarding hearing held 12/15/2022. Transcript is being prepared by J&J Court Transcribers, Inc. Estimated completion date is 12/28/2022. (RE: related document(s): [248](#) Hearing Held). (hsmi) (Entered: 12/23/2022) |
| 12/28/2022 | [264](#)<br>(43 pgs) | Transcript regarding Hearing Held 12/15/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's Office or contact the Court Reporter/ Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related document(s) [263](#) Transcript Request). Notice of Intent to Request Redaction due 1/4/2023. Redaction Request due 1/18/2023. Redacted Transcript Submission due 1/30/2023. Remote electronic access to the transcript is restricted through 3/28/2023. (hsmi) (Entered: 12/28/2022) |
| 12/28/2022 | [265](#)<br>(3 pgs; 2 docs) | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 12/15/2022 on Evidentiary Hearing on Amended Motion to Sell Property Free and Clear of Liens under Section 363(f). Re: Tangible and Intangible Personal Property of the Estate has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): [264](#) Transcript). (hsmi) (Entered: 12/28/2022) |
| 12/30/2022 | [266](#)<br>(14 pgs; 2 docs) | Report of Sale Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): [217](#) Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee, [218](#) Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee, [232](#) Hearing Held, [254](#) Order -Non-motion related-). (Attachments: # [1](#) Exhibit) (Slone, Trustee, Robert) (Entered: 12/30/2022) |
| 12/31/2022 | [267](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [265](#) Notice of Filing of Transcript). Notice Date 12/31/2022. (Admin.) (Entered: 01/01/2023) |
| 01/03/2023 | [268](#)<br>(17 pgs; 3 docs) | Response *in Opposition and Reservation of Rights* Regarding the Hearing on 01/20/23. Filed by Christine Biros (RE: related document(s): [228](#) Stipulation filed by Petitioning Creditor Shanni Snyder, [246](#) Order Scheduling a Hearing). (Attachments: # [1](#) Exhibit A # [2](#) Certificate of |

| | | Service) (Bernstein, Robert) (Entered: 01/03/2023) |
|---|---|---|
| 01/03/2023 | [269](#)<br>(4 pgs; 2 docs) | Notice of Appeal *from Order of December 20 2022*. Fee Amount $ 298. Filed by U LOCK INC (RE: related document(s): [254](#) Order -Non-motion related-). Appellant Designation due by 01/17/2023 for [254](#),. (Roth, J.) (Entered: 01/03/2023) |
| 01/03/2023 | 270 | Receipt of Notice of Appeal( [22-20823-GLT](#)) [appeal,ntcapl] ( 298.00) filing fee. Receipt number A16174384, amount $ 298.00. (U.S. Treasury) (Entered: 01/03/2023) |
| 01/04/2023 | [271](#)<br>(2 pgs; 2 docs) | Letter Requesting Appeal Cover Sheet sent to J. Allen Roth, Esq. (mgut) (Entered: 01/04/2023) |
| 01/04/2023 | [272](#)<br>(2 pgs; 2 docs) | Letter to All Parties Regarding Filing Designations of Record on Appeal. cm:Debtor, J. Allen Roth, Esq., Robert Slone, Esq., Christine Biros, Sarah E. Wenrich, Esq., Shanni Snyder (RE: related document(s): [269](#) Notice of Appeal filed by Debtor U LOCK INC, [271](#) Letter Requesting Appeal Cover Sheet). (mgut) (Entered: 01/04/2023) |
| 01/04/2023 | [273](#)<br>(2 pgs; 2 docs) | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): [254](#) Order -Non-motion related-, [269](#) Notice of Appeal filed by Debtor U LOCK INC, [271](#) Letter Requesting Appeal Cover Sheet, [272](#) Letter Regarding Filing Designations). (mgut) (Entered: 01/04/2023) |
| 01/05/2023 | [274](#)<br>(22 pgs; 4 docs) | Motion to Enforce *Order Confirming Sale of Tangible and Intangible Personal Property of the Estate Under 11 U.S.C. Section 363(f) Free and clear of All Liens, Claims and Encumbrances* Filed by Petitioning Creditor Shanni Snyder. (Attachments: # [1](#) Exhibit 1 - Complaint & Docket # [2](#) Proposed Order # [3](#) Certificate of Service) (Joyce, John) (Entered: 01/05/2023) |
| 01/05/2023 | [275](#)<br>(2 pgs) | Hearing on Shanni Snyder vs. Christine Biros, et al. Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): [274](#) Motion to Enforce filed by Petitioning Creditor Shanni Snyder). Hearing scheduled for 2/2/2023 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 1/23/2023. (Joyce, John) (Entered: 01/05/2023) |
| 01/06/2023 | 276 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:23-cv-00010-CB. District Court Document No. 1. Name of Judge: Judge Cathy |

| | | |
|---|---|---|
| | | Bissoon. (RE: related document(s): <u>269</u> Notice of Appeal filed by Debtor U LOCK INC). (mgut) (Entered: 01/06/2023) |
| 01/06/2023 | <u>277</u><br>(8 pgs; 3 docs) | Response *of Trustee to Christine Biros' Motion for Allowance of Administrative Expense Claim* Regarding the Hearing on 1/20/2023. Filed by Robert H. Slone, Trustee (RE: related document(s): <u>258</u> Application for Administrative Expenses filed by Creditor Christine Biros, <u>259</u> Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Attachments: # <u>1</u> Exhibit # <u>2</u> Proposed Order) (Slone, Trustee, Robert) (Entered: 01/06/2023) |
| 01/06/2023 | <u>278</u><br>(4 pgs; 2 docs) | Amended Order to Show Cause Signed on 1/6/2023. (RE: related document(s): <u>249</u> Order Scheduling Hearing). Show Cause hearing to be held on 1/27/2023 at 10:00 AM at p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh, with Christine Biros and George Snyder to appear in person. On or before 1/20/2023 Christine Biros and George Snyder shall file written Responses to this Order to Show Cause. (nsha) (Entered: 01/06/2023) |
| 01/06/2023 | 279 | TEXT ORDER: AND NOW this 6th day of January, 2023, it is hereby ORDERED, ADJUDGED, and DECREED that the hearing on the Stipulation by Shann Snyder and Between Charles O. Zebley, Jr., Chapter 7 Trustee and Robert Slone, Chapter 7 Trustee [Dkt. No. 28] is RESCHEDULED to 1/27/2023 at 10 a.m. via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Judge Taddonio Signed on 1/6/2023. (RE: related document(s): <u>228</u> Stipulation filed by Petitioning Creditor Shanni Snyder). (jhel) (Entered: 01/06/2023) |
| 01/06/2023 | <u>280</u><br>(5 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): <u>269</u> Notice of Appeal filed by Debtor U LOCK INC). Notice Date 01/06/2023. (Admin.) (Entered: 01/07/2023) |
| 01/06/2023 | <u>281</u><br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): <u>272</u> Letter Regarding Filing Designations). Notice Date 01/06/2023. (Admin.) (Entered: 01/07/2023) |
| 01/06/2023 | <u>282</u><br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): <u>273</u> Letter of Transmission to District Court). Notice Date 01/06/2023. (Admin.) (Entered: 01/07/2023) |

| | | |
|---|---|---|
| 01/08/2023 | [283](#)<br>(5 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 278 Order Scheduling Hearing). Notice Date 01/08/2023. (Admin.) (Entered: 01/09/2023) |
| 01/09/2023 | [284](#)<br>(7 pgs; 3 docs) | Objection *to Christine Biros Motion for Relief from the Automatic Stay* Regarding the Hearing on 01/20/2023. Filed by Shanni Snyder (RE: related document(s): 255 Motion for Relief From Stay filed by Creditor Christine Biros). (Attachments: # 1 Proposed Order # 2 Certificate of Service) (Joyce, John) (Entered: 01/09/2023) |
| 01/09/2023 | [285](#)<br>(9 pgs; 3 docs) | Objection *to Christine Biros Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)* Regarding the Hearing on 01/20/2023. Filed by Shanni Snyder (RE: related document(s): 258 Application for Administrative Expenses filed by Creditor Christine Biros). (Attachments: # 1 Proposed Order # 2 Certificate of Service) (Joyce, John) (Entered: 01/09/2023) |
| 01/09/2023 | [291](#)<br>(39 pgs) | Objection Regarding the Hearing on 1/27/2023. Filed by George Snyder (RE: related document(s): 258 Application for Administrative Expenses filed by Creditor Christine Biros). (nsha) (Entered: 01/11/2023) |
| 01/09/2023 | [292](#)<br>(34 pgs) | Objection Regarding the Hearing on 1/27/2023. Filed by George Snyder (RE: related document(s): 255 Motion for Relief From Stay filed by Creditor Christine Biros). (nsha) (Entered: 01/11/2023) |
| 01/10/2023 | 286 | TEXT ORDER: It is hereby ORDERED that the hearing on the Motion for Relief from Stay [Dkt. No. 255] scheduled for January 20, 2023 is RESCHEDULED to January 27, 2023 at 10 am. Parties that wish to participate in the hearing via Zoom Video Conference may do so in compliance with Judge Taddonio's Procedures. Judge Taddonio Signed on 1/10/2023. (RE: related document(s): 255 Motion for Relief From Stay filed by Creditor Christine Biros). Hearing scheduled for 1/27/2023 at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (hthu) (Entered: 01/10/2023) |
| 01/10/2023 | 287 | TEXT ORDER: It is hereby ORDERED that the hearing on the Application for Administrative Expenses [Dkt. No. 258] scheduled for January 20, 2023 is RESCHEDULED to January 27, 2023 at 10 am. Parties that wish to participate in the hearing via Zoom Video Conference may do so in compliance with Judge Taddonio's Procedures. Judge Taddonio Signed on 1/10/2023. (RE: related document(s): 258 Application for Administrative Expenses filed by Creditor Christine Biros). Hearing scheduled for 1/27/2023 |

| | | at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (hthu) (Entered: 01/10/2023) |
|---|---|---|
| 01/10/2023 | 288 | TEXT ORDER: It is hereby ORDERED that the hearing on the Motion to Enforce [Dkt. No. 274] scheduled for February 2, 2023 is RESCHEDULED to January 27, 2023 at 10 am. Parties that wish to participate in the hearing via Zoom Video Conference may do so in compliance with Judge Taddonio's Procedures. Judge Taddonio Signed on 1/10/2023.(RE: related document(s): 274 Motion to Enforce filed by Petitioning Creditor Shanni Snyder). Hearing scheduled for 1/27/2023 at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (hthu) (Entered: 01/10/2023) |
| 01/10/2023 | 289 (34 pgs) | Objection Regarding the Hearing on 1/27/2023. Filed by George Snyder (RE: related document(s): 255 Motion for Relief From Stay filed by Creditor Christine Biros). (nsha) CORRECTIVE ENTRY: THIS OBJECTION WAS ORIGINALLY DOCKETED WITH AN INCORRECT DATE/TIME STAMP AND WAS RE-DOCKETED AT DOC. NO. 292 TO REFLECT THE CORRECT DATE/ TIME IT WAS RECEIVED. Modified on 1/11/2023 (nsha). (Entered: 01/10/2023) |
| 01/10/2023 | 290 (39 pgs) | Objection Regarding the Hearing on 1/27/2023. Filed by George Snyder (RE: related document(s): 258 Application for Administrative Expenses filed by Creditor Christine Biros). (nsha)CORRECTIVE ENTRY: THIS OBJECTION WAS ORIGINALLY DOCKETED WITH AN INCORRECT DATE/TIME STAMP AND WAS RE-DOCKETED AT DOC. NO. 291 TO REFLECT THE CORRECT DATE/TIME IT WAS RECEIVED Modified on 1/11/2023 (nsha). (Entered: 01/10/2023) |
| 01/17/2023 | 293 (11 pgs; 2 docs) | Memorandum Opinion Signed on 1/17/2023. (RE: related document(s): 258 Application for Administrative Expenses, 277 Response, 285 Objection, 291 Objection). cm: Christine Biros, Robert Bernstein, Esq. (nsha) (Entered: 01/17/2023) |
| 01/17/2023 | 294 (3 pgs; 2 docs) | Order to Show Cause signed on 1/17/2023. (RE: related document(s): 258 Application for Administrative Expenses filed by Creditor Christine Biros, 293 Memorandum Opinion). Show Cause hearing to be held on 1/27/2023 at 10:00 AM at p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 4:00 PM on 1/25/2023. (nsha) (Entered: 01/17/2023) |
| 01/19/2023 | 295 (12 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 293 Memorandum Opinion). Notice Date |

| | | |
|---|---|---|
| | | 01/19/2023. (Admin.) (Entered: 01/20/2023) |
| 01/19/2023 | 296<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 294 Order Scheduling Hearing). Notice Date 01/19/2023. (Admin.) (Entered: 01/20/2023) |
| 01/20/2023 | 297<br>(2 pgs; 2 docs) | Notice of Intention to Transmit Partial Appeal. cm: J. Allen Roth, Shanni Snyder, Christine Biros, Sarah Weinrich, Robert Slone (RE: related document(s): 269 Notice of Appeal filed by Debtor U LOCK INC). Partial Appeal Document Completion Due Date: 2/3/2023. (nsha) (Entered: 01/20/2023) |
| 01/20/2023 | 298<br>(22 pgs; 5 docs) | Response *to Amended Order to Show Cause* Regarding the Hearing on 01/27/2023. Filed by Christine Biros (RE: related document(s): 278 Order Scheduling Hearing). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Certificate of Service) (Bernstein, Robert) (Entered: 01/20/2023) |
| 01/20/2023 | 301<br>(4 pgs) | Response Regarding the Hearing on 1/27/2023. Filed by George Snyder (RE: related document(s): 278 Order Scheduling Hearing). (nsha) (Entered: 01/23/2023) |
| 01/21/2023 | 299<br>(5 pgs; 2 docs) | Reply *by Debtor to Response of Christine Biros* Regarding the Hearing on 1/27/2023. Filed by U LOCK INC (RE: related document(s): 298 Response filed by Creditor Christine Biros). (Attachments: # 1 Exhibit Copies of Money Orders given to Trustee for Recycled Cars) (Roth, J.) (Entered: 01/21/2023) |
| 01/22/2023 | 300<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 297 Notice of Intention to Transmit Partial Appeal). Notice Date 01/22/2023. (Admin.) (Entered: 01/23/2023) |
| 01/23/2023 | 302<br>(13 pgs; 2 docs) | Objection Regarding the Hearing on 1/27/23. Filed by Christine Biros (RE: related document(s): 274 Motion to Enforce filed by Petitioning Creditor Shanni Snyder). (Attachments: # 1 Certificate of Service) (Bernstein, Robert) (Entered: 01/23/2023) |
| 01/24/2023 | 303<br>(9 pgs) | Reply *to the Response re: Show Cause* Regarding the Hearing on 1/27/2023. Filed by George Snyder (RE: related document(s): 298 Response filed by Creditor Christine Biros). (nsha) (Entered: 01/24/2023) |
| 01/25/2023 | 304<br>(15 pgs; 2 docs) | Response *of Christine Biros and Robert S. Bernstein, Esq to Order to Show Cause* Regarding the Hearing on 1/27/23. Filed by Christine Biros (RE: related |

| | | |
|---|---|---|
| | | document(s): [258](#) Application for Administrative Expenses filed by Creditor Christine Biros, [259](#) Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros, [293](#) Memorandum Opinion, [294](#) Order Scheduling Hearing). (Attachments: # [1](#) Certificate of Service) (Bernstein, Robert) (Entered: 01/25/2023) |
| 01/27/2023 | [305](#)<br>(2 pgs; 2 docs) | Order Approving Stipulation Signed on 1/27/2023. (RE: related document(s): [228](#) Stipulation). (nsha) (Entered: 01/27/2023) |
| 01/27/2023 | [306](#)<br>(3 pgs; 2 docs) | Order Granting Motion For Relief From Stay (Related Doc # [255](#)) Signed on 1/27/2023. (nsha) (Entered: 01/27/2023) |
| 01/27/2023 | [307](#)<br>(3 pgs; 2 docs) | Amended Order Granting Motion For Relief From Stay (Related Doc # [255](#)) Signed on 1/27/2023. (nsha) (Entered: 01/27/2023) |
| 01/27/2023 | [308](#)<br>(26 pgs) | Bench Exhibits From 1/27/2023 Proceeding (nsha) (Entered: 01/27/2023) |
| 01/29/2023 | [309](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [305](#) Order -Non-motion related-). Notice Date 01/29/2023. (Admin.) (Entered: 01/30/2023) |
| 01/29/2023 | [310](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [306](#) Order on Motion For Relief From Stay). Notice Date 01/29/2023. (Admin.) (Entered: 01/30/2023) |
| 01/29/2023 | [311](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [307](#) Order on Motion For Relief From Stay). Notice Date 01/29/2023. (Admin.) (Entered: 01/30/2023) |
| 01/30/2023 | [312](#)<br>(2 pgs) | Hearing Held on 1/27/2023 (RE: related document(s): [278](#) Order Scheduling Hearing). [Amended Order to Show Cause is taken under Advisement] [Chambers to Prepare] (nsha) (Entered: 01/30/2023) |
| 01/30/2023 | [313](#)<br>(1 pg) | Daily Transcript Requested by Christine Biros regarding hearing held 01/27/2023. Transcript is being prepared by J&J Court Transcribers, Inc. Estimated completion date is 02/01/2023. (RE: related document(s): [312](#) Hearing Held). (hsmi) (Entered: 01/30/2023) |

| | | |
|---|---|---|
| 01/30/2023 | [314](#)<br>(3 pgs; 2 docs) | Order Regarding Order to Show Cause and Request for Administrative Expense Signed on 1/30/2023. (RE: related document(s): [293](#) Memorandum Opinion, [294](#) Order Scheduling Hearing, [304](#) Response). The Order to Show Cause is continued generally. The Oral Motion to Extend Time to File a Motion Seeking Reconsideration of the Memorandum Opinion is GRANTED and shall be filed on or before 3/1/2023. On or before 3/1/2023, Ms. Biros shall file a Renewed or Amended Application for Expense Claim shall be filed on or before 3/1/2023. (nsha) (Entered: 01/30/2023) |
| 01/30/2023 | [315](#)<br>(5 pgs; 3 docs) | Order Denying Motion to Enforce (Related Doc # [274](#)) Signed on 1/30/2023. (hthu) (Entered: 01/30/2023) |
| 02/01/2023 | [316](#)<br>(101 pgs) | Transcript regarding Hearing Held 01/27/2023. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's Office or contact the Court Reporter/Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related document(s) [313](#) Transcript Request). Notice of Intent to Request Redaction due 2/8/2023. Redaction Request due 2/22/2023. Redacted Transcript Submission due 3/6/2023. Remote electronic access to the transcript is restricted through 5/2/2023. (hsmi) (Entered: 02/01/2023) |
| 02/01/2023 | [317](#)<br>(3 pgs; 2 docs) | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 01/27/2023 on Order to Show Cause; Stipulation by Shanni Snyder; Motion for Relief from Stay and Motion to Enforce Order has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): [316](#) Transcript). (hsmi) (Entered: 02/01/2023) |
| 02/01/2023 | [318](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [314](#) Order -Non-motion related-). Notice Date 02/01/2023. (Admin.) (Entered: 02/02/2023) |
| 02/01/2023 | [319](#)<br>(5 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [315](#) Order on Motion to Enforce). Notice Date 02/01/2023. (Admin.) (Entered: 02/02/2023) |
| 02/02/2023 | [320](#)<br>(5 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [315](#) Order on Motion to Enforce). Notice Date 02/02/2023. (Admin.) (Entered: 02/03/2023) |

| | | |
|---|---|---|
| 02/03/2023 | [321](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [317](#) Notice of Filing of Transcript). Notice Date 02/03/2023. (Admin.) (Entered: 02/04/2023) |
| 02/06/2023 | [322](#)<br>(2 pgs; 2 docs) | Transmittal of Partial Record on Appeal to U.S. District Court in re: 2:23-cv-00010-CB (RE: related document(s): [146](#) Appellant Designation filed by Debtor U LOCK INC, [179](#) Appellant Designation filed by Petitioning Creditor Shanni Snyder, [269](#) Notice of Appeal filed by Debtor U LOCK INC, [297](#) Notice of Intention to Transmit Partial Appeal). (mgut) (Entered: 02/06/2023) |
| 02/06/2023 | 323 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania (RE: related document(s): [322](#) Transmittal of Partial Record on Appeal to U.S. District Court). Miscellaneous/ Civil Action No. 2:23-cv-00010. District Court Document No. 3. Name of Judge: Cathy Bissoon. (culy) (Entered: 02/07/2023) |
| 02/07/2023 | [324](#)<br>(370 pgs; 34 docs) | Notice Regarding FILING OF AFFIDAVIT OF WILLIAM E. OTTO, ESQ. PURSUANT TO 28 U.S.C. § 1746. Filed by Creditor Christine Biros (RE: related document(s): [315](#) Order on Motion to Enforce). (Attachments: # [1](#) Affidavit of William Otto # [2](#) Exhibit A # [3](#) Exhibit B-1 # [4](#) Exhibit B-2 # [5](#) Exhibit B-3 # [6](#) Exhibit B-4 # [7](#) Exhibit B-5 # [8](#) Exhibit B-6 # [9](#) Exhibit B-7 # [10](#) Exhibit B-8 # [11](#) Exhibit B-9 # [12](#) Exhibit B-10 # [13](#) Exhibit B-11 # [14](#) Exhibit B-12 # [15](#) Exhibit B-13 # [16](#) Exhibit B-14 # [17](#) Exhibit B-15 # [18](#) Exhibit B-16 # [19](#) Exhibit B-17 # [20](#) Exhibit B-18 # [21](#) Exhibit B-19 # [22](#) Exhibit B-20 # [23](#) Exhibit B-21 # [24](#) Exhibit C-1 # [25](#) Exhibit C-2 # [26](#) Exhibit C-3 # [27](#) Exhibit C-4 # [28](#) Exhibit C-5 # [29](#) Exhibit D-1 # [30](#) Exhibit D-2 # [31](#) Exhibit D-3 # [32](#) Exhibit D-4 # [33](#) Exhibit E) (Bernstein, Robert) (Entered: 02/07/2023) |
| 02/08/2023 | [325](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [322](#) Transmittal of Partial Record on Appeal to U.S. District Court). Notice Date 02/08/2023. (Admin.) (Entered: 02/09/2023) |
| 02/10/2023 | [326](#)<br>(3 pgs; 2 docs) | Notice of Appearance and Request for Notice *and Service of Papers* by John Patrick Lacher Filed by Petitioning Creditor Shanni Snyder (Attachments: # [1](#) Certificate of Service) (Lacher, John) (Entered: 02/10/2023) |

| | | |
|---|---|---|
| 02/10/2023 | [327](#)<br>(3 pgs) | Notice of Appearance and Request for Notice by David L. Fuchs Filed by Petitioning Creditor Shanni Snyder (Fuchs, David) (Entered: 02/10/2023) |
| 02/10/2023 | [328](#)<br>(27 pgs) | Declaration of Shanni Snyder Filed by Petitioning Creditor Shanni Snyder. (nsha) Modified on 2/13/2023 (mgut). (Entered: 02/10/2023) |
| 02/10/2023 | [329](#)<br>(48 pgs; 16 docs) | Declaration Under Penalty of Perjury for Non-individual Debtors *as Directed by Order of Entry 315* Filed by Debtor U LOCK INC (Attachments: # [1](#) Exhibit Order May 13 2022 Order re Caption # [2](#) Exhibit Order May 13 2022 granting possession # [3](#) Exhibit Order May 13 2022 denying reconsideration and nunc pro tunc appeal # [4](#) Exhibit Motion May 19 2022 to correct the caption # [5](#) Exhibit May 19 2022 Notice of Bankruptcy # [6](#) May 19 2022 Objections to Exhibits # [7](#) Exhibit May 23 2022 Notice of Appeal from January 23 2022 Order # [8](#) Exhibit May 23 2022 appeal from May 13 2022 possession order and denial reconsideration # [9](#) Exhibit May 23 2022 Order Directing U Lock to Submit Issues for Appeal # [10](#) Exhibit Appeal Docket Sheet re Appeal by Mark Mycka # [11](#) Exhibit Appeal Docket Sheet U Lock Appeal # [12](#) Certified Mail Receipt Appeal Docket Sheet U Lock Appeal # [13](#) Certified Mail Receipt Appeal Docket Sheet appeal of Shanni Snyder # [14](#) Exhibit June 23 2022 Notice of Bankruptcy Filed in All Appeals # [15](#) Certified Mail Receipt August 2 2022 Response to Show Cause Order from Appeals Court) (Roth, J.) (Entered: 02/10/2023) |
| 02/10/2023 | [330](#)<br>(4 pgs) | Declaration re: Filed by George Snyder (nsha) (Entered: 02/13/2023) |
| 02/13/2023 | [331](#)<br>(5 pgs; 3 docs) | Motion to Withdraw as Attorney Filed by Petitioning Creditor Shanni Snyder. (Attachments: # [1](#) Proposed Order # [2](#) Certificate of Service) (Joyce, John) (Entered: 02/13/2023) |
| 02/14/2023 | 332 | Text Order re: ([331](#) Motion to Withdraw as Attorney).. Without further notice or hearing, this pleading will be denied without prejudice if the following action is not taken: MOTION AND PROPOSED ORDER TO BE REFILED WITH A COMPLETE CAPTION NAMING A MOVANT AND ANY RESPONDENT(S) IN ACCORDANCE WITH W.PA.LBR 9004-1. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 2/14/2023. (RE: related document(s): [331](#) Motion to Withdraw as Attorney). Required corrective action due on or before 2/22/2023. |

| | | (nsha) (Entered: 02/14/2023) |
|---|---|---|
| 02/14/2023 | 333<br>(5 pgs; 3 docs) | Motion to Withdraw as Attorney Filed by Petitioning Creditor Shanni Snyder. (Attachments: # 1 Proposed Order # 2 Certificate of Service) (Joyce, John) (Entered: 02/14/2023) |
| 02/14/2023 | 334<br>(2 pgs; 2 docs) | Order Granting Motion To Withdraw As Attorney John B. Joyce, Esq. & Jeremy J. Kobeski, Esq. on behalf of Shanni Snyder(Related Doc # 333) Signed on 2/14/2023. (nsha) (Entered: 02/15/2023) |
| 02/16/2023 | 335 | Disposition of Adversary, Adversary Case 2:22-ap-2081 Closed. (dkam) (Entered: 02/16/2023) |
| 02/17/2023 | 336<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 334 Order on Motion to Withdraw as Attorney). Notice Date 02/17/2023. (Admin.) (Entered: 02/18/2023) |
| 02/24/2023 | 337<br>(184 pgs; 5 docs) | Objection to Claim of George Snyder. At claim number 5. Filed by Creditor Christine Biros. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Proposed Order) (Bernstein, Robert) (Entered: 02/24/2023) |
| 02/24/2023 | 338<br>(2 pgs) | Hearing on Objection to Claim of George Snyder. At claim number 5 with Response Deadline Filed by Creditor Christine Biros (RE: related document(s): 337 Objection to Claim filed by Creditor Christine Biros). Hearing scheduled for 4/13/2023 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 3/27/2023. (Bernstein, Robert) (Entered: 02/24/2023) |
| 02/24/2023 | 339<br>(2 pgs) | Certificate of Service *Objection to Claim of George Snyder at claim number 5 and the Notice of Hearing with Response Deadline* Regarding the Hearing on 4/13/2023. Filed by Creditor Christine Biros (RE: related document(s): 337 Objection to Claim filed by Creditor Christine Biros, 338 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Bernstein, Robert) (Entered: 02/24/2023) |
| 02/24/2023 | 340<br>(294 pgs; 7 docs) | Objection to Claim of Shanni Snyder. At claim number 1. Filed by Creditor Christine Biros. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Proposed Order) (Bernstein, Robert) (Entered: 02/24/2023) |

| | | |
|---|---|---|
| 02/24/2023 | 341<br>(2 pgs) | Hearing on Objection to Claim of Shanni Snyder at claim number 1 with Response Deadline Filed by Creditor Christine Biros (RE: related document(s): 340 Objection to Claim filed by Creditor Christine Biros). Hearing scheduled for 4/13/2023 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 3/27/2023. (Bernstein, Robert) (Entered: 02/24/2023) |
| 02/24/2023 | 342<br>(2 pgs) | Certificate of Service *of the Objection to Claim of Shanni Snyder at claim number 1 and the Notice of Hearing with Respone Deadline* Regarding the Hearing on 4/13/2023. Filed by Creditor Christine Biros (RE: related document(s): 340 Objection to Claim filed by Creditor Christine Biros, 341 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Bernstein, Robert) (Entered: 02/24/2023) |
| 02/28/2023 | 343<br>(46 pgs; 4 docs) | Adversary case 23-02020. Complaint by Shanni Snyder against Christine Biros, Biros Irrevocable Life Insurance Trust. Fee Amount $ 350. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Proposed Order) Nature of Suit: (13 (Recovery of money/property - 548 fraudulent transfer)), (12 (Recovery of money/property - 547 preference)),(14 (Recovery of money/property - other)) (Fuchs, David) (Entered: 02/28/2023) |
| 03/01/2023 | 344<br>(24 pgs; 2 docs) | Amended Application for Administrative Expenses *Pursuant to 11 U.S.C. § 503(b)(1) and/or for Payment of Adequate Protection* Filed by Creditor Christine Biros. (Attachments: # 1 Proposed Order) (Bernstein, Robert) (Entered: 03/01/2023) |
| 03/01/2023 | 345<br>(18 pgs; 3 docs) | Consent Motion to Approve Compromise under Rule 9019 Filed by Creditor Christine Biros. (Attachments: # 1 Exhibit A - Settlement Agreement # 2 Proposed Order) (Bernstein, Robert) (Entered: 03/01/2023) |
| 03/01/2023 | 346<br>(2 pgs) | Hearing on Consent Motion to Approve Settlement Filed by Creditor Christine Biros (RE: related document(s): 345 Motion to Approve Compromise under Rule 9019 filed by Creditor Christine Biros). Hearing scheduled for 4/13/2023 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 3/17/2023. (Bernstein, Robert) (Entered: 03/01/2023) |
| 03/01/2023 | 347<br>(4 pgs; 2 docs) | Certificate of Service Filed by Creditor Christine Biros (RE: related document(s): 344 Application for Administrative Expenses filed by Creditor Christine Biros). (Attachments: # 1 Creditor Matrix) (Bernstein, |

| | | |
|---|---|---|
| | | Robert) (Entered: 03/01/2023) |
| 03/01/2023 | [348](#)<br>(4 pgs; 2 docs) | Certificate of Service Regarding the Hearing on 4/13/2023. Filed by Creditor Christine Biros (RE: related document(s): [345](#) Motion to Approve Compromise under Rule 9019 filed by Creditor Christine Biros, [346](#) Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Attachments: # [1](#) Creditor Matrix) (Bernstein, Robert) (Entered: 03/01/2023) |
| 03/02/2023 | [349](#)<br>(2 pgs; 2 docs) | Order of Court Rescheduling Hearings Signed on 3/2/2023. (RE: related document(s): [294](#) Order Scheduling Hearing, [337](#) Objection to Claim filed by Creditor Christine Biros, [340](#) Objection to Claim filed by Creditor Christine Biros, [344](#) Application for Administrative Expenses filed by Creditor Christine Biros, [345](#) Motion to Approve Compromise under Rule 9019 filed by Creditor Christine Biros). Hearings scheduled for 4/13/2023 at 01:30 PM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Show Cause hearing to be held on 4/13/2023 at 01:30 PM at p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (nsha) (Entered: 03/02/2023) |
| 03/03/2023 | [350](#)<br>(2 pgs) | Proposed Order RE: *(Revised)* Filed by Creditor Christine Biros (RE: related document(s): [345](#) Motion to Approve Compromise under Rule 9019 filed by Creditor Christine Biros). (Martin, Lara) (Entered: 03/03/2023) |
| 03/04/2023 | [351](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [349](#) Hearing Rescheduled). Notice Date 03/04/2023. (Admin.) (Entered: 03/05/2023) |
| 03/16/2023 | [352](#)<br>(5 pgs; 3 docs) | Objection *to Consent Motion to Approve Settlement Agreement Purusnat to Rule 9019 of the Federal Rules of Bankruptcy Procedure* Regarding the Hearing on 04/13/23. Filed by Shanni Snyder (RE: related document(s): [258](#) Application for Administrative Expenses filed by Creditor Christine Biros, [345](#) Motion to Approve Compromise under Rule 9019 filed by Creditor Christine Biros). (Attachments: # [1](#) Proposed Order # [2](#) Certificate of Service) (Lacher, John) (Entered: 03/16/2023) |
| 03/17/2023 | [354](#)<br>(9 pgs) | Objection Regarding the Hearing on no Hearing Date Scheduled. Filed by George Snyder (RE: related document(s): [344](#) Application for Administrative Expenses filed by Creditor Christine Biros). (nsha) Modified on 3/20/2023 (nsha) (Entered: 03/20/2023) |

| | | |
|---|---|---|
| 03/17/2023 | 355<br>(52 pgs) | Objection Regarding the Hearing on 4/13/2023. Filed by George Snyder (RE: related document(s): 345 Motion to Approve Compromise under Rule 9019 filed by Creditor Christine Biros). (nsha) (Entered: 03/20/2023) |
| 03/20/2023 | 353 | Disposition of Adversary, Adversary Case 2:23-ap-2022 Closed. (dkam) (Entered: 03/20/2023) |
| 03/20/2023 | 356<br>(1 pg) | Response *to Consent Motion to Approve Settlement Agreement* Regarding the Hearing on 4/13/2023. Filed by Robert H. Slone, Trustee (RE: related document(s): 345 Motion to Approve Compromise under Rule 9019 filed by Creditor Christine Biros, 346 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Slone, Trustee, Robert) (Entered: 03/20/2023) |
| 03/27/2023 | 357<br>(6 pgs; 3 docs) | Response *to Objection to Claim Number 1 Filed by Shanni Snyder* Regarding the Hearing on 04/13/23. Filed by Shanni Snyder (RE: related document(s): 340 Objection to Claim filed by Creditor Christine Biros, 341 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Attachments: # 1 Certificate of Service # 2 Proposed Order) (Lacher, John) (Entered: 03/27/2023) |
| 03/28/2023 | 358<br>(2 pgs) | Response Regarding the Hearing on 4/13/2023. Filed by George Snyder (RE: related document(s): 337 Objection to Claim filed by Creditor Christine Biros). (nsha) (Entered: 03/28/2023) |
| 03/28/2023 | 359<br>(4 pgs) | Declaration re: Filed by George Snyder (nsha) (Entered: 03/28/2023) |
| 03/31/2023 | 360<br>(2 pgs; 2 docs) | Order Signed on 3/31/2023 (RE: related document(s): 278 Order Scheduling Show Cause Hearing). Status Conference to be held on 4/13/2023 at 01:30 PM at p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (nsha) (Entered: 03/31/2023) |
| 04/02/2023 | 361<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 360 Order Scheduling Hearing). Notice Date 04/02/2023. (Admin.) (Entered: 04/03/2023) |
| 04/04/2023 | 362<br>(2 pgs; 2 docs) | Motion for Extension of Time Nunc Pro Tunc as to Docket Entries 358 and 359 Filed by Managing General Partner George Snyder. (Attachments: # 1 Proposed Order) (nsha) (Entered: 04/04/2023) |

| | | |
|---|---|---|
| 04/05/2023 | 363<br>(2 pgs; 2 docs) | Order of Court Granting Motion to Extend Time. It is hereby ORDERED that the documents at Entry 358 and 359 are considered timely and will be considered by the Court. (Related Doc # 362) Signed on 4/5/2023. (nsha) (Entered: 04/06/2023) |
| 04/08/2023 | 364<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 363 Order on Motion to Extend Time). Notice Date 04/08/2023. (Admin.) (Entered: 04/09/2023) |
| 04/14/2023 | 365<br>(2 pgs) | Hearing Held on 4/13/2023 (RE: related document(s): 278 Order Scheduling Hearing, 294 Order Scheduling Hearing, 337 Objection to Claim filed by Creditor Christine Biros, 340 Objection to Claim filed by Creditor Christine Biros, 344 Application for Administrative Expenses filed by Creditor Christine Biros, 345 Motion to Approve Compromise under Rule 9019 filed by Creditor Christine Biros). 1) For the reasons stated on the record, the Objection to Claim Number 5 Filed by George Snyder [Dkt. No. 337] 1) For the reasons stated on the record, the Objection to Claim Number 5 Filed by George Snyder [Dkt. No. 337] is SUSTAINED, andClaim Number 5 submitted by George Snyder is DISALLOWED. [HT to enter proposed order at Dkt. No. 337].2) For the reasons stated on the record, the Objection to Claim Number 1 Filed by Shanni Snyder [Dkt. No. 340] is continued to evidentiary hearing on July 14, 2023 at 1:30 p.m. Parties shall have 60 days for discovery. [Chambers to prepare]. 3) For the reasons stated on the record, the Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 [Dkt. No. 345] and the Amended Motion for Allowance and Payment of Administrative Expenses Pursuant to 11 U.S.C.§ 503(b)(1) and/or for Payment of Adequate Protection [Dkt.No. 344] are continued pending further Court order. [Text order].4) For the reasons stated on the record, the Order to Show Cause dated 1/17/2023 [Dkt. No. 294] is resolved. [Chambers to prepare]. 5) For the reasons stated on the record, the Amended Order to Show Cause dated 1/6/2023 [Dkt. No. 278] is taken under advisement. [Taken under advisement]. (nsha) (Entered: 04/14/2023) |
| 04/14/2023 | 366<br>(2 pgs; 2 docs) | Order of Court Granting Objection to Claim (Related Doc # 337) Signed on 4/14/2023. (nsha) (Entered: 04/14/2023) |
| 04/14/2023 | 367 | TEXT ORDER: For the reasons stated on the record, the Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 [Dkt. No. 345] and the Amended M otion for Allowance and Payment of Administrative |

| | | |
|---|---|---|
| | | Expenses Pursuant to 11 U.S.C.§ 503(b)(1) and/or for Payment of Adequate Protection [Dkt.No. 344] are continued pending further Court order. Judge Taddonio Signed on 4/14/2023. (RE: related document(s): 344 Application for Administrative Expenses, 345 Motion to Approve Compromise under Rule 9019). (hthu) (Entered: 04/14/2023) |
| 04/14/2023 | 368 (4 pgs; 2 docs) | Order of Court Scheduling Evidentiary Hearing signed on 4/14/2023 (RE: related document(s): 340 Objection to Claim filed by Creditor Christine Biros). Evidentiary hearing scheduled for 7/14/2023 at 01:30 PM at p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 7/7/2023. Discovery due by 6/14/2023. (nsha) (Entered: 04/14/2023) |
| 04/16/2023 | 369 (3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 366 Order on Objection to Claim). Notice Date 04/16/2023. (Admin.) (Entered: 04/17/2023) |
| 04/16/2023 | 370 (5 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 368 Order Scheduling Hearing). Notice Date 04/16/2023. (Admin.) (Entered: 04/17/2023) |
| 04/17/2023 | 371 (1 pg) | Expedited Transcript Requested by Christine Biros regarding hearing held 04/13/2023. Transcript is being prepared by J&J Court Transcribers, Inc. Estimated completion date is 04/24/2023. (RE: related document(s): 365 Hearing Held). (hsmi) (Entered: 04/17/2023) |
| 04/24/2023 | 372 (3 pgs; 2 docs) | Notice of Appeal . Receipt Number NFP,Fee Amount $ 298. Filed by George Snyder (RE: related document(s): 366 Order on Objection to Claim). Appellant Designation due by 5/8/2023 for 366, . (nsha) (Entered: 04/24/2023) |
| 04/24/2023 | 373 (2 pgs; 2 docs) | Letter Requesting Appeal Cover Sheet and Filing Fee (nsha) (Entered: 04/24/2023) |
| 04/24/2023 | 374 (2 pgs; 2 docs) | Letter to All Parties Regarding Filing Designations of Record on Appeal. cm:All Parties (RE: related document(s): 372 Notice of Appeal filed by Managing General Partner George Snyder). (nsha) (Entered: 04/24/2023) |
| 04/24/2023 | 375 (2 pgs; 2 docs) | BNC PDF Notice of Form 17f-D (Letter Requesting Appeal Cover Sheet and Filing Fee, Doc.No.373) sent to George Snyder (nsha) (Entered: 04/24/2023) |

| | | |
|---|---|---|
| 04/24/2023 | <u>376</u><br>(3 pgs; 3 docs) | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): <u>372</u> Notice of Appeal filed by George Snyder). (nsha) (Entered: 04/24/2023) |
| 04/24/2023 | <u>377</u><br>(52 pgs) | Transcript regarding Hearing Held 04/13/2023. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's Office or contact the Court Reporter/Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related document(s) <u>371</u> Transcript Request). Notice of Intent to Request Redaction due 5/1/2023. Redaction Request due 5/15/2023. Redacted Transcript Submission due 5/25/2023. Remote electronic access to the transcript is restricted through 7/24/2023. (hsmi) (Entered: 04/24/2023) |
| 04/24/2023 | <u>378</u><br>(3 pgs; 2 docs) | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 04/13/2023 on #294 Continued Order to Show Cause; #278 Continued Amended Order to Show Cause; #345 Consent Motion to Approve Compromise under Rule 9019; #340 Objection to Claim of Shanni Snyder at claim number 1; #337 Objection to Claim of George Snyder at claim number 5 and #344 Amended Application for Administrative Expenses Pursuant to 11 U.S.C. 503(b)(1) and/or for Payment of Adequate Protection has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): <u>377</u> Transcript). (hsmi) (Entered: 04/24/2023) |
| 04/26/2023 | <u>379</u><br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): <u>372</u> Notice of Appeal filed by Managing General Partner George Snyder). Notice Date 04/26/2023. (Admin.) (Entered: 04/27/2023) |
| 04/26/2023 | <u>380</u><br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): <u>374</u> Letter Regarding Filing Designations). Notice Date 04/26/2023. (Admin.) (Entered: 04/27/2023) |
| 04/26/2023 | <u>381</u><br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): <u>375</u> BNC PDF Notice). Notice Date 04/26/2023. (Admin.) (Entered: 04/27/2023) |

| | | |
|---|---|---|
| 04/26/2023 | [382](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [376](#) Letter of Transmission to District Court). Notice Date 04/26/2023. (Admin.) (Entered: 04/27/2023) |
| 04/27/2023 | [383](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [378](#) Notice of Filing of Transcript). Notice Date 04/27/2023. (Admin.) (Entered: 04/28/2023) |
| 04/27/2023 | 384 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:23-cv-00691-DSC. District Court Document No. 1. Name of Judge: Judge David Stewart Cercone. (RE: related document(s): [376](#) Transmittal of Record on Appeal to U.S. District Court). (nsha) (Entered: 05/02/2023) |
| 05/01/2023 | [385](#)<br>(4 pgs; 3 docs) | Appeal Cover Sheet Filed by George Snyder (RE: related document(s): [372](#) Notice of Appeal, [373](#) Letter Requesting Appeal Cover Sheet). (nsha) (Entered: 05/02/2023) |
| 05/04/2023 | [386](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [385](#) Appeal Cover Sheet filed by Managing General Partner George Snyder). Notice Date 05/04/2023. (Admin.) (Entered: 05/05/2023) |
| 05/11/2023 | [387](#)<br>(3 pgs; 3 docs) | Notice of Intention to Transmit Partial Appeal. cm: George Snyder, Christine Biros, Robert Bernstein (RE: related document(s): [372](#) Notice of Appeal filed by Managing General Partner George Snyder). Partial Appeal Document Completion Due Date: 5/25/2023. (nsha) (Entered: 05/11/2023) |
| 05/13/2023 | [388](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [387](#) Notice of Intention to Transmit Partial Appeal). Notice Date 05/13/2023. (Admin.) (Entered: 05/14/2023) |
| 05/19/2023 | [389](#)<br>(7 pgs; 4 docs) | Motion for Withdrawal of Reference *PURSUANT TO 28 USC 157(d) AND FED. R. Bk. PROC. 5011(a) AS TO THE OBJECTION TO CLAIM NUMBER 1.* Fee Amount $ 188. Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): [340](#) Objection to Claim, [341](#) Hearing on a Judge Taddonio Case Set by Attorney or Trustee, [357](#) Response, [365](#) Hearing Held, [368](#) Order Scheduling Hearing, [378](#) Notice of Filing of Transcript). (Attachments: # [1](#) Certificate of Service # [2](#) Exhibit A # [3](#) Proposed Order) (Lacher, John) (Entered: 05/19/2023) |

| | | |
|---|---|---|
| 05/19/2023 | 390 | Receipt of Motion for Withdrawal of Reference( 22-20823-GLT) [motion,mwdref] ( 188.00) filing fee. Receipt number A16325330, amount $ 188.00. (U.S. Treasury) (Entered: 05/19/2023) |
| 05/23/2023 | 391 (2 pgs; 2 docs) | Order Setting Deadlines For Filing Of Designation of The Record and Supplemental Designation Of The Record Signed on 5/23/2023. (RE: related document(s): 389 Motion for Withdrawal of Reference). (dkam) (Entered: 05/23/2023) |
| 05/25/2023 | 392 (3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 391 Order -Non-motion related-). Notice Date 05/25/2023. (Admin.) (Entered: 05/26/2023) |
| 05/25/2023 | 393 (10 pgs; 2 docs) | Appellant Designation of Contents For Inclusion in Record On Appeal Filed by George Snyder (RE: related document(s): 372 Notice of Appeal, 385 Appeal Cover Sheet). Appellee designation due by 6/8/2023 for 385 and for 372, . Transmission of Designation Due by 6/09/2023 for 385 and for 372, . (dkam) (Entered: 05/26/2023) |
| 05/26/2023 | 394 (1 pg) | Notice of Appearance and Request for Notice by Michael F. Santicola Filed by Interested Party USAAG Systems Co. (Santicola, Michael) (Entered: 05/26/2023) |
| 05/26/2023 | 395 (56 pgs; 7 docs) | Emergency Motion to Quash *Subpoena or to Specify Conditions of Subpoena and to Direct Disclosure of prior Subpoena* Filed by Interested Party USAAG Systems Co.. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Certificate of Service # 6 Proposed Order) (Santicola, Michael) (Entered: 05/26/2023) |
| 05/28/2023 | 396 (11 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 393 Appellant Designation filed by Managing General Partner George Snyder). Notice Date 05/28/2023. (Admin.) (Entered: 05/29/2023) |
| 05/30/2023 | 397 | Text Order denying pleading without prejudice for failure to comply with the Federal Rules of Bankruptcy Procedure and Local Rules of this Court. The Motion fails to comply with W.PA.LBR 5005-6, W.PA.LBR 5005-13(d) and W.PA.LBR 9013-2(e). This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 5/30/2023. (RE: related document(s): 395 Motion to Quash). (hthu) (Entered: 05/30/2023) |

| | | |
|---|---|---|
| 05/31/2023 | [398](#)<br>(45 pgs; 8 docs) | Emergency Motion *TO STAY SUBPOENA HEARING OR REQUEST FOR EXPEDITED HEARING* Filed by Interested Party USAAG Systems Co.. (Attachments: # [1](#) Exhibit 1 Subpoena # [2](#) Exhibit 2 Transcript Excerpts # [3](#) Exhibit 3 ORDER FINDING GOOD FAITH # [4](#) Exhibit 4 ORDER LIMITING SUBJECT MATTER OF HEARING # [5](#) Proposed Order PROPOSED ORDER - HEARING ORDER AND STAY ORDER # [6](#) Proposed Order PROPOSED ORDER QUASH # [7](#) Certificate of Service CERTIFICATE OF SERVICE) (Santicola, Michael) (Entered: 05/31/2023) |
| 05/31/2023 | [399](#)<br>(3 pgs; 2 docs) | Designation of Record for Withdrawal of the Reference. Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): [389](#) Motion for Withdrawal of Reference filed by Petitioning Creditor Shanni Snyder). (Attachments: # [1](#) Certificate of Service) (Lacher, John) (Entered: 05/31/2023) |
| 05/31/2023 | [400](#)<br>(2 pgs; 2 docs) | Order Setting EXPEDITED Hearing on (RE: related document(s): [398](#) Motion filed by Interested Party USAAG Systems Co.). Hearing scheduled for 6/5/2023 at 11:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 6/2/2023 BY 4PM. (hthu) (Entered: 05/31/2023) |
| 06/01/2023 | [401](#)<br>(2 pgs; 2 docs) | Certificate of Service *of Expedited Hearing Order and Related Motion* Regarding the Hearing on 6/5/2023. Filed by Interested Party USAAG Systems Co. (RE: related document(s): [398](#) Motion filed by Interested Party USAAG Systems Co.). (Attachments: # [1](#) Notice of Hearing Notice and Order Setting Hearing on an Expedited Basis) (Santicola, Michael) (Entered: 06/01/2023) |
| 06/02/2023 | [402](#)<br>(1 pg) | Notice of Appearance and Request for Notice by Stuart C. Gaul Jr. Filed by Creditor Christine Biros (Gaul, Stuart) (Entered: 06/02/2023) |
| 06/02/2023 | [403](#)<br>(6 pgs; 2 docs) | Response *in Opposition to Motion to Withdraw Reference* Regarding the Hearing on no hearing date scheduled. Filed by Christine Biros (RE: related document(s): [340](#) Objection to Claim filed by Creditor Christine Biros, [389](#) Motion for Withdrawal of Reference filed by Petitioning Creditor Shanni Snyder). (Attachments: # [1](#) Certificate of Service) (Bernstein, Robert) (Entered: 06/02/2023) |
| 06/02/2023 | [404](#)<br>(2 pgs) | Designation of Record for Withdrawal of the Reference. *(Designation of Additional Items to be Included in the Record)* Filed by Creditor Christine Biros (RE: related |

| | | document(s): 389 Motion for Withdrawal of Reference filed by Petitioning Creditor Shanni Snyder). (Bernstein, Robert) (Entered: 06/02/2023) |
|---|---|---|
| 06/02/2023 | 405<br>(7 pgs; 2 docs) | Response *and Joinder to USAAG Systems Co.'s REquest for Expedited Hearing or Emergency Motion to Stay Subpoena Pending Hearing; MOtion for a PRotective ORder; Motion to Quash Subpoena; or, in the alternative, Motion to Specify Conditions of Subpoena; and, Motion to Direct Disclosure of Prior Subpoena* Regarding the Hearing on 06/05/2023. Filed by Shanni Snyder (RE: related document(s): 398 Motion filed by Interested Party USAAG Systems Co., 400 Order Scheduling a Hearing). (Attachments: # 1 Proposed Order) (Fuchs, David) (Entered: 06/02/2023) |
| 06/02/2023 | 406<br>(60 pgs; 10 docs) | Response *In Opposition to USAAG Systems Co.'s Expedited Motoion to Quash Subpoena* Regarding the Hearing on 06/05/23. Filed by Christine Biros (RE: related document(s): 398 Motion filed by Interested Party USAAG Systems Co., 400 Order Scheduling a Hearing). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Certificate of Service) (Gaul, Stuart) (Entered: 06/02/2023) |
| 06/02/2023 | 414<br>(15 pgs; 4 docs) | Motion to Expedite Hearing , Motion to Quash Filed by Interested Party Emanuel Snyder . (Attachments: # 1 Exhibit # 2 Notice of Hearing # 3 Proposed Order) (nsha) CORRECTIVE ENTRY: THIS MOTION WAS REFILED VIA CM/ECF AT DOC.NO 409. Modified on 6/6/2023 (nsha). (Entered: 06/06/2023) |
| 06/04/2023 | 407<br>(4 pgs; 2 docs) | Reply *in Support of Request for Expedited Hearing or Emergency Motion to Stay Subpoena Pending Hearing; Motion for a Protective Order; Motion to Quash Subpoena; or, in the alternative, Motion to Specify Conditions of Subpoena; and, Motion to Direct Disclosure of Prior Subpoena* Regarding the Hearing on 06/05/23. Filed by USAAG Systems Co. (RE: related document(s): 403 Response filed by Creditor Christine Biros, 406 Response filed by Creditor Christine Biros). (Attachments: # 1 Certificate of Service) (Santicola, Michael) (Entered: 06/04/2023) |
| 06/04/2023 | 408<br>(2 pgs) | Reply *to Christine Biros Response to the Motion to Stay or Quash Subpoena* Regarding the Hearing on 6/5/2023. Filed by U LOCK INC (RE: related document(s): 398 Motion filed by Interested Party USAAG Systems Co., 400 Order Scheduling a Hearing, 406 Response filed by Creditor |

| | | Christine Biros). (Roth, J.) (Entered: 06/04/2023) |
|---|---|---|
| 06/05/2023 | [409](#)<br>(20 pgs; 5 docs) | First Motion to Expedite Hearing , Motion to Quash Filed by Emanuel Snyder (Attachments: # [1](#) expedited hearing # [2](#) Subpoena # [3](#) Proposed Order Expedited Hearing Order # [4](#) Proposed Order Order of Court) (Berger, Leonard) (Entered: 06/05/2023) |
| 06/05/2023 | [410](#)<br>(2 pgs; 2 docs) | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): [389](#) Motion for Withdrawal of Reference filed by Petitioning Creditor Shanni Snyder). (nsha) (Entered: 06/05/2023) |
| 06/05/2023 | [416](#)<br>(1 pg) | Hearing Held on 6/5/2023 (RE: related document(s): [398](#) Motion filed by Interested Party USAAG Systems Co.). 1) For the reasons stated on the record, Request for Expedited Hearing or Emergency Motion to Stay Subpoena Pending Hearing;Motion for a Protective Order; Motion to Quash Subpoena; or, in the Alternative, Motion to Specify Conditions of Subpoena; and, Motion to Direct Disclosure of Prior Subpoena[Dkt. No. 398] is GRANTED and the subpoena QUASHED. The Court shall issue an appropriate protective order. [Chambers to prepare]. 2) For the reasons stated on the record, on or before June 12, 2023, Christine Biros or her counsel shall disclose any/all subpoenas she has issued in this bankruptcy case. [Text order]. (nsha) (Entered: 06/06/2023) |
| 06/06/2023 | [411](#)<br>(27 pgs; 7 docs) | Motion *for Clarification of Order of January 27 2023 Entry 307* Filed by Debtor U LOCK INC. (Attachments: # [1](#) Exhibit Request from Superior Court to Clarify # [2](#) Exhibit January 27 2023 relief from stay # [3](#) Exhibit January 20 2022 Order transferring deeds to Christine Biros # [4](#) Exhibit Order May 13 2022 Denying Motion to Strike January 20 2022 Order # [5](#) Exhibit Response of Shanni Snyder to Superior Court Show Cause # [6](#) Proposed Order) (Roth, J.) CORRECTIVE ENTRY: COUNSEL SHALL FILE PROOF OF SERVICE. Modified on 6/6/2023 (hthu). (Entered: 06/06/2023) |
| 06/06/2023 | [412](#)<br>(2 pgs) | Hearing on Motion for Clarification*of Order Entered January 27 2023 at Entry 307* Filed by Debtor U LOCK INC (RE: related document(s): [411](#) Motion filed by Debtor U LOCK INC). Hearing scheduled for 7/7/2023 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 6/23/2023. (Roth, J.) (Entered: 06/06/2023) |
| 06/06/2023 | 413 | CORRECTIVE ENTRY: COUNSEL SHALL FILE PROOF OF SERVICE. (RE: related document(s): [411](#) |

| | | |
|---|---|---|
| | | Motion filed by Debtor U LOCK INC, 412 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Debtor U LOCK INC). (hthu) (Entered: 06/06/2023) |
| 06/06/2023 | 415 | CORRECTIVE ENTRY: THIS MOTION WAS REFILED VIA CM/ECF AT DOC.NO 409. (RE: related document(s): 414 Motion to Expedite Hearing filed by Interested Party Emanuel Snyder, Motion to Quash). (nsha) (Entered: 06/06/2023) |
| 06/06/2023 | 417 (3 pgs; 3 docs) | Order Requiring Payment of Processing Fee and Sanction of Attorney Leonard J. Berger Jr Signed on 6/6/2023. (RE: related document(s): 414 Motion to Expedite Hearing, Motion to Quash). Processing Fee and Sanction due 6/20/2023. (nsha) (Entered: 06/06/2023) |
| 06/06/2023 | 418 | TEXT ORDER: For the reasons stated on the record at the June 5, 2023 hearing, it is hereby ORDERED that on or before June 12, 2023, Christine Biros or her counsel shall disclose any/all subpoenas she has issued in this bankruptcy case. Judge Taddonio Signed on 6/6/2023. (RE: related document(s): 398 Motion). (hthu) (Entered: 06/06/2023) |
| 06/06/2023 | 419 (3 pgs; 2 docs) | Order of Court Signed on 6/6/2023. (RE: related document(s): 398 Emergency Motion TO STAY SUBPOENA HEARING OR REQUEST FOR EXPEDITED HEARING).On or before June 20, 2023, a copy of the prior subpoena shall be provided to the parties. On or before June 20, 2023, all records obtained from the prior subpoena shall be returned to counsel for USAAG Systems Co., and the parties shall not maintain copies of them. (nsha) (Entered: 06/06/2023) |
| 06/06/2023 | 420 (3 pgs; 2 docs) | Order of Court Signed on 6/6/2023. (RE: related document(s): 409 Motion to Expedite Hearing, Motion to Quash). To the extent Christine Biros believes the subpoena should not be quashed, the Court grants her leave to file an appropriate response requesting reinstatement of the subpoena on or before June 20, 2023. (nsha) (Entered: 06/06/2023) |
| 06/06/2023 | 421 (8 pgs; 4 docs) | Response Regarding the Hearing on no hearing date scheduled. Filed by Christine Biros (RE: related document(s): 409 Motion to Expedite Hearing filed by Interested Party Emanuel Snyder, Motion to Quash, 420 Order -Non-motion related-). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Certificate of Service) (Gaul, Stuart) (Entered: 06/06/2023) |

| | | |
|---|---|---|
| 06/06/2023 | 422 | TEXT ORDER: It is hereby ORDERED that Emanuel Snyder or his counsel shall serve this Order[Dkt. No. 420] on the Catholic School System, Greensburg Catholic Diocese, and file a corresponding certificate of service within 3 business days. Judge Taddonio Signed on 6/6/2023. (RE: related document(s): 420 Order -Non-motion related-). (hthu) (Entered: 06/06/2023) |
| 06/07/2023 | 423<br>(5 pgs; 2 docs) | Certificate of Service Regarding the Hearing on 7/7/2023. Filed by Debtor U LOCK INC (RE: related document(s): 411 Motion filed by Debtor U LOCK INC). (Attachments: # 1 Exhibit matrix) (Roth, J.) (Entered: 06/07/2023) |
| 06/07/2023 | 424<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 410 Letter of Transmission to District Court). Notice Date 06/07/2023. (Admin.) (Entered: 06/08/2023) |
| 06/08/2023 | 425<br>(2 pgs) | Appellee Designation of Contents for Inclusion in Record of Appeal Filed by Christine Biros (RE: related document(s): 372 Notice of Appeal, 385 Appeal Cover Sheet, 393 Appellant Designation). (Bernstein, Robert) (Entered: 06/08/2023) |
| 06/08/2023 | 426<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 419 Order -Non-motion related-). Notice Date 06/08/2023. (Admin.) (Entered: 06/12/2023) |
| 06/08/2023 | 427<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 420 Order -Non-motion related-). Notice Date 06/08/2023. (Admin.) (Entered: 06/12/2023) |
| 06/12/2023 | 428<br>(1 pg) | First Certificate of Service Filed by Interested Party Emanuel Snyder (RE: related document(s): 422 Order -Non-motion related-). (Berger, Leonard) (Entered: 06/12/2023) |
| 06/12/2023 | 429 | Receipt Number 18267, Fine Amount $ 150.00 (RE: related document(s): 417 Order Requiring Payment of Processing Fee and Sanction). (nsha) (Entered: 06/12/2023) |
| 06/12/2023 | 430<br>(3 pgs; 3 docs) | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): 372 Notice of Appeal filed by Managing General Partner George Snyder). (nsha) (Entered: 06/12/2023) |
| 06/12/2023 | 431<br>(1 pg) | Notice Regarding Subpoena's Issued. Filed by Creditor Christine Biros (RE: related document(s): 418 Order -Non-motion related-). (Gaul, Stuart) (Entered: 06/12/2023) |

| | | |
|---|---|---|
| 06/12/2023 | 432 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:23-cv-00979-RJC. District Court Document No. 1. Name of Judge: Robert J. Colville. (RE: related document(s): 389 Motion for Withdrawal of Reference filed by Petitioning Creditor Shanni Snyder). (nsha) (Entered: 06/13/2023) |
| 06/13/2023 | 433 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:23-cv:00691. District Court Document No. 2. Name of Judge: David Stewart Cercone. (RE: related document(s): 372 Notice of Appeal filed by Managing General Partner George Snyder). (nsha) (Entered: 06/14/2023) |
| 06/14/2023 | 434 (3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 376 Letter of Transmission to District Court). Notice Date 06/14/2023. (Admin.) (Entered: 06/15/2023) |
| 06/14/2023 | 435 (4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 385 Appeal Cover Sheet filed by Managing General Partner George Snyder). Notice Date 06/14/2023. (Admin.) (Entered: 06/15/2023) |
| 06/14/2023 | 436 (3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 430 Letter of Transmission to District Court). Notice Date 06/14/2023. (Admin.) (Entered: 06/15/2023) |
| 06/21/2023 | 438 (4 pgs; 2 docs) | Final Order By District Court Judge Nora Barry Fischer, on Civil Action Number: 2:22-cv-1284, ORDER: upon consideration of the Appeal filed by Shanni Snyder at Civil A. No. 22-1222 and the Cross Appeal filed by U Lock Inc. at Civil A. No. 22-1284, the August 10, 2022 Orders of the Honorable Gregory J. are AFFIRMED; the Clerk of Court shall mark Civil Action Nos. 22-1222 and 22-1284 CLOSED. Signed by Judge Nora Barry Fischer on 6/21/2023. (RE: related document(s): 148 Notice of Appeal). (nsha) (Entered: 06/22/2023) |
| 06/21/2023 | 439 (2 pgs; 2 docs) | Final Order By District Court Judge Nora Barry Fischer, on Civil Action Number: 2:22-cv-1485, ORDER granting 9 Motion to Dismiss; appeal is DISMISSED. The Clerk of Court shall mark this case CLOSED. Signed by Judge Nora Barry Fischer on 6/21/2023. (RE: related document(s): 148 Notice of Appeal). (nsha) (Entered: 06/22/2023) |

| | | |
|---|---|---|
| 06/21/2023 | [440](#)<br>(2 pgs; 2 docs) | Final Order By District Court Judge Nora Barry Fischer, on Civil Action Number: 2:22-cv-1218, ORDER granting [18](#) Motion to Dismiss; appeal is DISMISSED. The Clerk of Court shall mark this case CLOSED. Signed by Judge Nora Barry Fischer on 6/21/2023.(RE: related document(s): [121](#) Notice of Appeal). (nsha) (Entered: 06/22/2023) |
| 06/22/2023 | [437](#)<br>(1 pg) | Daily Transcript Requested by U LOCK INC regarding hearing held 6/5/2023. Transcript is being prepared by J&J Court Transcribers, Inc. Estimated completion date is 6/23/2023. (RE: related document(s): [416](#) Hearing Held). (hsmi) (Entered: 06/22/2023) |
| 06/23/2023 | [441](#)<br>(5 pgs; 2 docs) | Response Regarding the Hearing on 07/07/23. Filed by Christine Biros (RE: related document(s): [411](#) Motion filed by Debtor U LOCK INC, [412](#) Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Debtor U LOCK INC). (Attachments: # [1](#) Certificate of Service) (Bernstein, Robert) (Entered: 06/23/2023) |
| 06/23/2023 | [442](#)<br>(4 pgs; 3 docs) | Response *to Motion for Clarification* Regarding the Hearing on 07/07/23. Filed by Shanni Snyder (RE: related document(s): [411](#) Motion filed by Debtor U LOCK INC, [412](#) Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Debtor U LOCK INC). (Attachments: # [1](#) Certificate of Service # [2](#) Proposed Order) (Lacher, John) (Entered: 06/23/2023) |
| 06/23/2023 | [443](#)<br>(23 pgs) | Transcript regarding Hearing Held 06/05/2023. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's Office or contact the Court Reporter/Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related document(s) [437](#) Transcript Request). Notice of Intent to Request Redaction due 6/30/2023. Redaction Request due 7/14/2023. Redacted Transcript Submission due 7/24/2023. Remote electronic access to the transcript is restricted through 9/21/2023. (hsmi) (Entered: 06/23/2023) |

| | | |
|---|---|---|
| 06/23/2023 | [444](#)<br>(3 pgs; 2 docs) | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 06/05/2023 on Emergency Motion to Stay Subpoena Hearing or Request for Expedited Hearing filed by USAAG Systems Co. has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): [443](#) Transcript). (hsmi) (Entered: 06/23/2023) |
| 06/24/2023 | [445](#)<br>(5 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [438](#) Final Order by District Court Judge). Notice Date 06/24/2023. (Admin.) (Entered: 06/25/2023) |
| 06/24/2023 | [446](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [439](#) Final Order by District Court Judge). Notice Date 06/24/2023. (Admin.) (Entered: 06/25/2023) |
| 06/24/2023 | [447](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [440](#) Final Order by District Court Judge). Notice Date 06/24/2023. (Admin.) (Entered: 06/25/2023) |
| 06/25/2023 | [448](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [444](#) Notice of Filing of Transcript). Notice Date 06/25/2023. (Admin.) (Entered: 06/26/2023) |
| 07/06/2023 | [449](#)<br>(66 pgs; 12 docs) | Emergency Motion to Compel *ANSWERS AND RESPONSES OF CLAIMANT, SHANNI SNYDER, TO DISCOVERY REQUESTS* Filed by Creditor Christine Biros. (Attachments: # [1](#) Exhibit A # [2](#) Exhibit B # [3](#) Exhibit C # [4](#) Exhibit D # [5](#) Exhibit E # [6](#) Exhibit F # [7](#) Exhibit G # [8](#) Exhibit H # [9](#) Exhibit I # [10](#) Exhibit J # [11](#) Exhibit K # [12](#) Exhibit L # [13](#) Exhibit M # [14](#) Exhibit N # [15](#) Exhibit O # [16](#) Proposed Order) (Gaul, Stuart) (Entered: 07/06/2023) |
| 07/07/2023 | [450](#)<br>(6 pgs; 2 docs) | Pre-Trial Statement *of Respondent Shanni Snyder* Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): [340](#) Objection to Claim filed by Creditor Christine Biros, [357](#) Response filed by Petitioning Creditor Shanni Snyder, [368](#) Order Scheduling Hearing). (Attachments: # [1](#) Certificate of Service) (Lacher, John) (Entered: 07/07/2023) |
| 07/07/2023 | [451](#)<br>(2 pgs; 2 docs) | Order Signed on 7/7/2023. (RE: related document(s): [340](#) Objection to Claim, [345](#) Motion to Approve Compromise under Rule 9019, [352](#) Objection, [355](#) Objection, [356](#) Response, [357](#) Response). It is hereby ORDERED, ADJUDGED, and DECREED that: On or before July 13, |

| | | |
|---|---|---|
| | | 2023, the chapter 7 trustee shall file a status report indicating :a. The estimated fees incurred by the chapter 7 trustee to date; b. The amount of estate funds currently on hand; and c. Whether the chapter 7 trustee believes any claims still exist that might result in a recovery for the estate and, if possible, their estimated value. 2. To the extent desirable, the chapter 7 trustee may file an interim application for compensation. (nsha) (Entered: 07/07/2023) |
| 07/07/2023 | 452 (1 pg) | Hearing Held on 7/7/2023 (RE: related document(s): 411 Motion filed by Debtor U LOCK INC). 1) For the reasons stated on the record, the Motion for Clarification [Dkt. No. 411] is GRANTED subject to modification. [HT to enterproposed order at dkt. no. 411 with modifications].2) For the reasons stated on the record, Christine Biros and Shanni Snyder shall submit a status report regarding the Emergency Motionof Christine Biros to Compel Answers and Responses of Claimant Shanni Snyder to Discovery Requests [Dkt. No. 449] by noon onJuly 10, 2023. Thereafter, the Court shall schedule a hearing if necessary. [Text order]. (nsha) (Entered: 07/07/2023) |
| 07/07/2023 | 453 (2 pgs; 2 docs) | Modified Order signed 7/7/2023 (Related Doc # 411 Motion for Clarification of Order of January 27 2023 Entry 307) Signed on 7/7/2023. (nsha) (Entered: 07/07/2023) |
| 07/07/2023 | 454 (13 pgs; 2 docs) | Pre-Trial Statement Filed by Creditor Christine Biros (RE: related document(s): 340 Objection to Claim filed by Creditor Christine Biros, 357 Response filed by Petitioning Creditor Shanni Snyder, 368 Order Scheduling Hearing). (Attachments: # 1 Exhibit List) (Gaul, Stuart) (Entered: 07/07/2023) |
| 07/07/2023 | 455 (7 pgs) | Exhibit *and Witness List* Filed by Creditor Christine Biros (RE: related document(s): 340 Objection to Claim filed by Creditor Christine Biros, 357 Response filed by Petitioning Creditor Shanni Snyder, 368 Order Scheduling Hearing). (Gaul, Stuart) (Entered: 07/07/2023) |
| 07/07/2023 | 456 | TEXT ORDER: For the reasons stated on the record, Christine Biros and Shanni Snyder shall submit a status report regarding the Emergency Motion of Christine Biros to Compel Answers and Responses of Claimant Shanni Snyder to Discovery Requests [Dkt. No. 449] by noon on July 10, 2023. Thereafter, the Court shall schedule a hearing if necessary. Judge Taddonio Signed on 7/7/2023. (RE: related document(s): 449 Motion to Compel). (hthu) (Entered: 07/07/2023) |

| | | |
|---|---|---|
| 07/07/2023 | [457](457)<br>(3 pgs; 2 docs) | Order Signed on 7/7/2023. (RE: related document(s): [450](450) Pre-Trial Statement). It is hereby ORDERED, ADJUDGED, and DECREED that: On or before July 11, 2023, Ms. Snyder shall file a trial brief citing legalauthority for her contention that:a. The Court lacks jurisdiction to decide this contested matter because itarises from a final, default judgment entered by the District Court.b. A final, default judgment entered by the District Court is entitled topreclusive effect against a subsequent claim objection in the bankruptcy court.2. Ms. Biros may, but need not, file any response by July 13, 2023 at 12 p.m. (nsha) (Entered: 07/07/2023) |
| 07/07/2023 | 458 | TEXT ORDER: Upon consideration of the Exhibit Lists attached to the Joint Pretrial Statement/Stipulation filed on July 7, 2023, and the numerous objections identified therein, it is hereby ORDERED, ADJUDGED, and DECREED that the Ms. Biros and Ms. Snyder shall meet and confer in an attempt to resolve these objections in good faith, failing which, the parties shall file by 12 p.m. on July 11, 2023, a joint statement articulating the basis for each objection and any response. Judge Taddonio Signed on 7/7/2023. (RE: related document(s): [450](450) Pre-Trial Statement, [454](454) Pre-Trial Statement). (hthu) (Entered: 07/07/2023) |
| 07/09/2023 | [459](459)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [451](451) Order -Non-motion related-). Notice Date 07/09/2023. (Admin.) (Entered: 07/10/2023) |
| 07/09/2023 | [460](460)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [453](453) Order). Notice Date 07/09/2023. (Admin.) (Entered: 07/10/2023) |
| 07/09/2023 | [461](461)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [457](457) Order -Non-motion related-). Notice Date 07/09/2023. (Admin.) (Entered: 07/10/2023) |
| 07/10/2023 | [462](462)<br>(3 pgs; 2 docs) | Certification of Counsel Regarding *Emergency Motion of Christine Biros to Compel Answers and Responses of Claimant, Shanni Snyder, to Discovery Requests* Filed by Creditor Christine Biros (RE: related document(s): [449](449) Motion to Compel filed by Creditor Christine Biros, 456 Order -Non-motion related-). (Attachments: # [1](1) Joint Status Report) (Gaul, Stuart) (Entered: 07/10/2023) |
| 07/10/2023 | [463](463)<br>(6 pgs; 3 docs) | George Snyder's Motion for Allowance and Payment of Administrative Expense Pursuant to 11 U.S.C. 503 (b) (1), 11 USC 507 (a) (2), or any other Statute Filed by George Snyder. (Attachments: # [1](1) Proposed Order # [2](2) Certificate |

| | | |
|---|---|---|
| | | of Service) (nsha) (Entered: 07/10/2023) |
| 07/10/2023 | 464<br>(3 pgs; 2 docs) | Notice of Hearing on Motion for Allowance and Payment of Administrative Expense filed by George Snyder (RE: related document(s): 463 Application for Administrative Expenses filed by Managing General Partner George Snyder). Hearing scheduled for 8/17/2023 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 7/28/2023. (nsha) (Entered: 07/10/2023) |
| 07/10/2023 | 465<br>(3 pgs; 2 docs) | Consent Order on Joint Status Report Regarding Emergency Motion to Compel Answers and Responses to Discovery Requests Signed on 7/10/2023. (RE: related document(s): 449 Motion to Compel, 462 Certification of Counsel Regarding). (nsha) (Entered: 07/10/2023) |
| 07/10/2023 | 466<br>(2 pgs; 2 docs) | Order Rescheduling Hearing TIME ONLY Signed on 7/10/2023. (RE: related document(s): 463 Application for Administrative Expenses filed by Managing General Partner George Snyder and 464). Hearing rescheduled for 8/17/2023 at 11:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (nsha) (Entered: 07/10/2023) |
| 07/10/2023 | 467<br>(21 pgs; 2 docs) | Emergency Motion to Seal Certain Documents Filed With This Court (RE: related document(s)449 Motion to Compel). Filed by Creditor Christine Biros (RE: related document(s): 449 Motion to Compel). (Attachments: # 1 Exhibit A # 2 Exhibit B) (culy) (Entered: 07/10/2023) |
| 07/10/2023 | 468<br>(3 pgs; 2 docs) | Order: On or before July 17, 2023, Christine Biros shall electronically re-file the Restricted Documents in Compliance with Fed.R.Bankr.P.9037(a)...Judge Taddonio Signed on 7/10/2023. (RE: related document(s): 467 Motion to Seal Document). (hthu) (Entered: 07/10/2023) |
| 07/11/2023 | 469<br>(9 pgs; 2 docs) | Brief/Memorandum *Regarding Bankruptcy Court Jurisdiction Over Contested Matter as to Validity of Shanni Snyder Claim* Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): 450 Pre-Trial Statement filed by Petitioning Creditor Shanni Snyder, 457 Order -Non-motion related-). (Attachments: # 1 Certificate of Service) (Lacher, John) (Entered: 07/11/2023) |

| | | |
|---|---|---|
| 07/12/2023 | [470](#)<br>(3 pgs) | Joint Report *Statement Regarding Objections to Exhibits* Filed by Creditor Christine Biros (RE: related document(s): [450](#) Pre-Trial Statement filed by Petitioning Creditor Shanni Snyder, [454](#) Pre-Trial Statement filed by Creditor Christine Biros, 458 Order -Non-motion related-). (Gaul, Stuart) (Entered: 07/12/2023) |
| 07/12/2023 | [471](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [464](#) Order Scheduling Hearing). Notice Date 07/12/2023. (Admin.) (Entered: 07/13/2023) |
| 07/12/2023 | [472](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [465](#) Order -Non-motion related-). Notice Date 07/12/2023. (Admin.) (Entered: 07/13/2023) |
| 07/12/2023 | [473](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [466](#) Hearing Rescheduled). Notice Date 07/12/2023. (Admin.) (Entered: 07/13/2023) |
| 07/12/2023 | [474](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [468](#) Order -Non-motion related-). Notice Date 07/12/2023. (Admin.) (Entered: 07/13/2023) |
| 07/13/2023 | [475](#)<br>(14 pgs; 4 docs) | Interim Application for Compensation for Robert H. Slone, Trustee, Trustee's Attorney, Period: 7/7/2022 to 6/22/2023, Fee: $31,620.00, Expenses: $0.00. Filed by Attorney Robert H. Slone, Trustee. (Attachments: # [1](#) Summary Cover # [2](#) Exhibit # [3](#) Proposed Order) (Slone, Trustee, Robert) (Entered: 07/13/2023) |
| 07/13/2023 | [476](#)<br>(2 pgs) | Hearing on Application of Counsel to Chapter 7 Trustee for Allowance of Interim Compensation Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): [451](#) Order -Non-motion related-, [475](#) Application for Compensation filed by Trustee Robert H. Slone, Trustee). Hearing scheduled for 8/11/2023 at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 7/31/2023. (Slone, Trustee, Robert) (Entered: 07/13/2023) |
| 07/13/2023 | [477](#)<br>(19 pgs; 2 docs) | Status Report Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): [451](#) Order -Non-motion related-). (Attachments: # [1](#) Exhibit) (Slone, Trustee, Robert) (Entered: 07/13/2023) |
| 07/13/2023 | [478](#)<br>(11 pgs; 2 docs) | Reply *Brief in Opposition to Shann Snyder's Brief Regarding Bankruptcy Court Jurisdiction Over Contested Matter as to Validity of Shanni Snyder Claim* Regarding the Hearing on 07/14/23. Filed by Christine Biros (RE: related |

| | | document(s): <u>340</u> Objection to Claim filed by Creditor Christine Biros, <u>357</u> Response filed by Petitioning Creditor Shanni Snyder, <u>368</u> Order Scheduling Hearing, <u>454</u> Pre-Trial Statement filed by Creditor Christine Biros, <u>457</u> Order -Non-motion related-, <u>469</u> Brief/Memorandum filed by Petitioning Creditor Shanni Snyder). (Attachments: # <u>1</u> Certificate of Service) (Gaul, Stuart) (Entered: 07/13/2023) |
|---|---|---|
| 07/13/2023 | 479 | Text Order re: (<u>475</u> Application for Compensation).. Without further notice or hearing, this pleading will be denied without prejudice if the following action is not taken: THE INCORRECT CASE NUMBER IS LISTED IN THE CAPTION OF THE SUMMARY OF FEES/ NOTICE AND MUST BE REFILED WITH THE CORRECT CASE NUMBER LISTED. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 7/13/2023. (RE: related document(s): <u>475</u> Application for Compensation). Required corrective action due on or before 7/21/2023. (nsha) (Entered: 07/13/2023) |
| 07/13/2023 | <u>480</u><br>(2 pgs) | Exhibit *(Summary Cover Sheet)* Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): <u>475</u> Application for Compensation filed by Trustee Robert H. Slone, Trustee, 479 Order Fixing Deadline to Deny a Motion). (Slone, Trustee, Robert) (Entered: 07/13/2023) |
| 07/13/2023 | <u>481</u><br>(2 pgs) | Exhibit *Summary Cover Sheet (refiled to correct case number and judge)* Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): <u>475</u> Application for Compensation filed by Trustee Robert H. Slone, Trustee, 479 Order Fixing Deadline to Deny a Motion). (Slone, Trustee, Robert) (Entered: 07/13/2023) |
| 07/13/2023 | <u>482</u><br>(9 pgs; 2 docs) | Supplement/Addendum to *Exhibit and Witness List* Filed by Creditor Christine Biros (RE: related document(s): <u>340</u> Objection to Claim filed by Creditor Christine Biros, <u>357</u> Response filed by Petitioning Creditor Shanni Snyder, <u>368</u> Order Scheduling Hearing, <u>454</u> Pre-Trial Statement filed by Creditor Christine Biros, <u>455</u> Exhibit filed by Creditor Christine Biros). (Attachments: # <u>1</u> Certificate of Service) (Gaul, Stuart) (Entered: 07/13/2023) |
| 07/14/2023 | <u>483</u><br>(1 pg) | Evidentiary Hearing Held 7/14/2023. (RE: related document(s): <u>340</u> Objection to Claim filed by Creditor Christine Biros). (hthu) (Entered: 07/14/2023) |
| 07/14/2023 | 484 | TEXT ORDER: Evidentiary hearing concluded. For the reasons stated on the record, it is hereby Ordered that on or before August 14, 2023, the parties shall submit posttrial |

| | | briefs. Judge Taddonio Signed on 7/14/2023. (RE: related document(s): 340 Objection to Claim). (hthu) (Entered: 07/14/2023) |
|---|---|---|
| 07/17/2023 | 485<br>(13 pgs; 5 docs) | Exhibit *(Replacement Exhibits B, C, D & E)* Filed by Creditor Christine Biros (RE: related document(s): 449 Motion to Compel filed by Creditor Christine Biros, 467 Motion to Seal Document filed by Creditor Christine Biros, 468 Order -Non-motion related-). (Attachments: # 1 Exhibit B # 2 Exhibit C # 3 Exhibit D # 4 Exhibit E) (Gaul, Stuart) (Entered: 07/17/2023) |
| 07/18/2023 | 486<br>(1 pg) | Expedited Transcript Requested by Christine Biros regarding hearing held 7/14/2023. Transcript is being prepared by J&J Court Transcribers, Inc. The estimated completion for this transcript is 7/25/2023. (RE: related document(s): 483 Hearing Held). (hsmi) (Entered: 07/18/2023) |
| 07/25/2023 | 487 | Disposition of Adversary, Adversary Case 2:22-ap-2052 Closed. (dkam) (Entered: 07/25/2023) |
| 07/26/2023 | 488<br>(114 pgs) | Transcript regarding Hearing Held 07/14/2023. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's Office or contact the Court Reporter/Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related document(s) 486 Transcript Request). Notice of Intent to Request Redaction due 8/2/2023. Redaction Request due 8/16/2023. Redacted Transcript Submission due 8/28/2023. Remote electronic access to the transcript is restricted through 10/24/2023. (hsmi) (Entered: 07/26/2023) |
| 07/26/2023 | 489<br>(3 pgs; 2 docs) | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 07/14/2023 on Evidentiary Hearing on Objection to Claim #1 of Shanni Snyder filed by Creditor Christine Biros has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): 488 Transcript). (hsmi) (Entered: 07/26/2023) |
| 07/28/2023 | 490<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 489 Notice of Filing of Transcript). Notice Date 07/28/2023. (Admin.) (Entered: 07/29/2023) |
| 07/31/2023 | 491<br>(1 pg) | Certificate of No Objection Filed by Managing General Partner George Snyder (RE: related document(s): 463 Application for Administrative Expenses filed by |

| | | Managing General Partner George Snyder). (nsha) (Entered: 08/01/2023) |
|---|---|---|
| 08/02/2023 | 492 (2 pgs; 2 docs) | Default Order Granting Application For Administrative Expenses (Related Doc # 463) Signed on 8/2/2023. (nsha) (Entered: 08/02/2023) |
| 08/02/2023 | 493 (1 pg) | Certificate of No Objection *to Application of Counsel to the Chapter 7 Trustee for Allowance of Interim Compensation* Regarding the Hearing on 8/11/2023. Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 475 Application for Compensation filed by Trustee Robert H. Slone, Trustee, 476 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Slone, Trustee, Robert) (Entered: 08/02/2023) |
| 08/04/2023 | 494 (2 pgs; 2 docs) | Default Order of Court Approving Interim Compensation For Counsel to the Chapter 7 Trustee and Scheduling Status Conference signed on 8/4/2023. (RE: related document(s): 475 Application for Compensation filed by Trustee Robert H. Slone, Trustee). Status Conference scheduled for 8/17/2023 at 11:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (nsha) (Entered: 08/04/2023) |
| 08/04/2023 | 495 (3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 492 Order on Application for Administrative Expenses). Notice Date 08/04/2023. (Admin.) (Entered: 08/05/2023) |
| 08/06/2023 | 496 (3 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 494 Order Scheduling Hearing). Notice Date 08/06/2023. (Admin.) (Entered: 08/07/2023) |
| 08/14/2023 | 497 (11 pgs; 2 docs) | Brief/Memorandum *Regarding Shanni Snyder Claim and the Objection Thereto* Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): 340 Objection to Claim filed by Creditor Christine Biros, 357 Response filed by Petitioning Creditor Shanni Snyder, 365 Hearing Held, 368 Order Scheduling Hearing, 454 Pre-Trial Statement filed by Creditor Christine Biros, 455 Exhibit filed by Creditor Christine Biros, 483 Hearing Held, 484 Order -Non-motion related-). (Attachments: # 1 Certificate of Service) (Lacher, John) (Entered: 08/14/2023) |
| 08/14/2023 | 498 (23 pgs) | Brief/Memorandum *(Post Trial Brief in Support of Christine Biros' Objection to the Claim of Shanni Snyder)* Filed by Creditor Christine Biros (RE: related document(s): 340 Objection to Claim filed by Creditor Christine Biros, |

| | | |
|---|---|---|
| | | 484 Order -Non-motion related-). (Gaul, Stuart) (Entered: 08/14/2023) |
| 08/17/2023 | [499](#) (1 pg) | Hearing Held on 8/17/2023 (RE: related document(s): [475](#) Application for Compensation filed by Trustee Robert H. Slone, Trustee). 1) Status conference concluded. On or before September 5,2023, counsel for Christine Biros shall let the chapter 7 trustee know in writing if she intends to make an offer for the chapter 7 trustee's claims against George Snyder. If nothing is communicated in writing by September 5, 2023, the Court shall assume that she is not pursuing the claims and the chapter 7 trustee has exhausted all other options. [Text order]. (nsha) (Entered: 08/17/2023) |
| 08/17/2023 | 500 | TEXT ORDER: Status conference concluded. It is hereby ORDERED that on or before September 5,2023, counsel for Christine Biros shall let the chapter 7 trustee know in writing if she intends to make an offer for the chapter 7 trustee's claims against George Snyder. If nothing is communicated in writing by September 5, 2023, the Court shall assume that she is not pursuing the claims and the chapter 7 trustee has exhausted all other options. Judge Taddonio Signed on 8/17/2023. (RE: related document(s): [475](#) Application for Compensation). (hthu) (Entered: 08/17/2023) |
| 11/29/2023 | [501](#) (7 pgs; 2 docs) | Motion to Continue/Reschedule Hearing On *the Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure [Doc. No. 345]* Filed by Creditor Christine Biros (RE: related document(s): [344](#) Application for Administrative Expenses, [345](#) Motion to Approve Compromise under Rule 9019, [346](#) Hearing on a Judge Taddonio Case Set by Attorney or Trustee, [349](#) Hearing Rescheduled, [365](#) Hearing Held, 367 Order -Non-motion related-). (Attachments: # [1](#) Proposed Order) (Bernstein, Robert) (Entered: 11/29/2023) |
| 12/01/2023 | 502 | Text Order re: ([501](#) Motion to Continue/Reschedule Hearing).. Without further notice or hearing, this pleading will be stricken without prejudice if the following action is not taken: Counsel shall file and serve a notice of hearing and self-schedule the matter in compliance with W.PA.LBR 9013-5 and Judge Taddonio's Procedures. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 12/1/2023. (RE: related document(s): [501](#) Motion to Continue/Reschedule Hearing). Required corrective action due on or before 12/11/2023. (hthu) (Entered: |

| | | 12/01/2023) |
|---|---|---|
| 12/04/2023 | 503 <br> (2 pgs) | Hearing on Motion to Reset/Reschedule Hearing on Consent Motion to Approve Settlement Filed by Creditor Christine Biros (RE: related document(s): 501 Motion to Continue/Reschedule Hearing filed by Creditor Christine Biros, 502 Order Fixing Deadline to Deny a Motion). Hearing scheduled for 1/4/2024 at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 12/21/2023. (Bernstein, Robert) (Entered: 12/04/2023) |
| 12/04/2023 | 504 <br> (3 pgs) | Certificate of Service Regarding the Hearing on 1/4/2024. Filed by Creditor Christine Biros (RE: related document(s): 501 Motion to Continue/Reschedule Hearing filed by Creditor Christine Biros, 503 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Bernstein, Robert) (Entered: 12/04/2023) |
| 12/19/2023 | 505 <br> (7 pgs; 3 docs) | Final Memorandum and Order By District Court Judge Cathy Bissoon, on Civil Action Number: 2:23-cv-00691 Signed on 12/19/2023. The Bankruptcy Court's decision, dated 4/14/2023, and the Order entered contemporaneously therewith, are AFFIRMED. (RE: related document(s): 366 Order on Objection to Claim, 372 Notice of Appeal). (Attachments: # 1 Order)(culy) (Entered: 12/20/2023) |
| 12/21/2023 | 506 <br> (7 pgs; 3 docs) | Response *to Motion to Reset the Hearing on Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* Regarding the Hearing on 01/04/24. Filed by Shanni Snyder (RE: related document(s): 344 Application for Administrative Expenses filed by Creditor Christine Biros, 345 Motion to Approve Compromise under Rule 9019 filed by Creditor Christine Biros, 352 Objection filed by Petitioning Creditor Shanni Snyder, 356 Response filed by Trustee Robert H. Slone, Trustee, 365 Hearing Held, 367 Order -Non-motion related-, 501 Motion to Continue/Reschedule Hearing filed by Creditor Christine Biros, 503 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Attachments: # 1 Certificate of Service # 2 Proposed Order) (Lacher, John) (Entered: 12/21/2023) |
| 12/21/2023 | 507 <br> (3 pgs) | Response *to Motion to Reset Hearing* Regarding the Hearing on 1/4/2024. Filed by George Snyder (RE: related document(s): 501 Motion to Continue/Reschedule Hearing filed by Creditor Christine Biros). (culy) |

| | | (Entered: 12/22/2023) |
|---|---|---|
| 12/22/2023 | 508<br>(8 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 505 Final Order by District Court Judge). Notice Date 12/22/2023. (Admin.) (Entered: 12/23/2023) |
| 01/03/2024 | 509<br>(3 pgs; 2 docs) | Objection to Claim of Christine Biros at Claim Number 2. Filed by Managing General Partner George Snyder . (culy) Additional attachment(s) added on 1/3/2024 (culy). (Entered: 01/03/2024) |
| 01/03/2024 | 510 | Corrective Entry: The Proposed Order was added by a member of the Clerk's staff. (RE: related document(s): 509 Objection to Claim No. 2 of Christine Biros filed by Managing General Partner George Snyder). (culy) (Entered: 01/03/2024) |
| 01/03/2024 | 511<br>(1 pg) | Notice of Hearing on (RE: related document(s): 509 Objection to Claim No. 2 of Christine Biros filed by Managing General Partner George Snyder). Hearing scheduled for 3/28/2024 at 01:30 PM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 1/22/2024. (culy) (Entered: 01/03/2024) |
| 01/03/2024 | 512<br>(1 pg) | Certificate of Service Regarding the Hearing on 3/28/2024. Filed by Managing General Partner George Snyder (RE: related document(s): 509 Objection to Claim No. 2 of Christine Biros filed by Managing General Partner George Snyder, 511 Order Scheduling Hearing). (culy) (Entered: 01/03/2024) |
| 01/03/2024 | 513<br>(2 pgs; 2 docs) | Objection to Claim of Christine Biros at Claim Number 3. Filed by Managing General Partner George Snyder . (Attachments: # 1 Proposed Order) (culy) (Entered: 01/03/2024) |
| 01/03/2024 | 514<br>(1 pg) | Notice of Hearing on (RE: related document(s): 513 Objection to Claim No. 3 of Christine Biros filed by Managing General Partner George Snyder). Hearing scheduled for 3/28/2024 at 01:30 PM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 1/22/2024. (culy) (Entered: 01/03/2024) |

| | | |
|---|---|---|
| 01/03/2024 | [515](#)<br>(1 pg) | Certificate of Service Regarding the Hearing on 3/28/2024. Filed by Managing General Partner George Snyder (RE: related document(s): [513](#) Objection to Claim No. 3 of Christine Biros filed by Managing General Partner George Snyder, [514](#) Notice of Hearing). (culy) (Entered: 01/03/2024) |
| 01/03/2024 | [516](#)<br>(2 pgs; 2 docs) | Notice Re: Nonconforming Document (RE: related document(s): [513](#) Objection to Claim No. 3 of Christine Biros filed by Managing General Partner George Snyder). (culy) (Entered: 01/03/2024) |
| 01/03/2024 | [517](#)<br>(3 pgs; 2 docs) | Objection to Claim of Christine Biros at Claim Number 4. Filed by Managing General Partner George Snyder . (Attachments: # [1](#) Proposed Order) (culy) (Entered: 01/04/2024) |
| 01/03/2024 | [518](#)<br>(1 pg) | Notice of Hearing on (RE: related document(s): [517](#) Objection to Claim No. 4 of Christine Biros filed by Managing General Partner George Snyder). Hearing scheduled for 3/28/2024 at 01:30 PM at p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 1/22/2024. (culy) (Entered: 01/04/2024) |
| 01/03/2024 | [519](#)<br>(1 pg) | Certificate of Service Regarding the Hearing on 3/28/2024. Filed by Managing General Partner George Snyder (RE: related document(s): [517](#) Objection to Claim No. 4 of Christine Biros filed by Managing General Partner George Snyder, [518](#) Notice of Hearing). (culy) (Entered: 01/04/2024) |
| 01/04/2024 | [520](#)<br>(1 pg) | Hearing Held on 1/4/2024 (RE: related document(s): [501](#) Motion to Continue/Reschedule Hearing the Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure [Doc. No. 345] filed by Creditor Christine Biros). Order to issue. (culy) (Entered: 01/04/2024) |
| 01/04/2024 | [521](#)<br>(1 pg) | 3-Day transcript requested by Shanni Snyder regarding hearing held 1/4/2024. Transcript is being prepared by J&J Court Transcribers, Inc. Estimated completion date is 1/9/2024. (RE: related document(s): [520](#) Hearing Held). (hsmi) (Entered: 01/04/2024) |
| 01/05/2024 | [522](#)<br>(4 pgs) | BNC Certificate of Mailing. (RE: related document(s): [516](#) Notice Regarding Nonconforming Document). Notice Date 01/05/2024. (Admin.) (Entered: 01/06/2024) |

| 01/08/2024 | [523](#) <br> (5 pgs; 2 docs) | Order Granting Motion to Reschedule Hearing and Granting in Part Motion to Approve Compromise under Rule 9019 (Related Doc # [345](#), [501](#)) Signed on 1/8/2024. (Related Doc # [345](#), [501](#)) (culy) (Entered: 01/08/2024) |
|---|---|---|
| 01/10/2024 | [524](#) <br> (19 pgs) | Transcript regarding Hearing Held 01/04/2024. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's Office or contact the Court Reporter/Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related document(s) [521](#) Transcript Request). Notice of Intent to Request Redaction due 1/22/2024. Redaction Request due 1/31/2024. Redacted Transcript Submission due 2/12/2024. Remote electronic access to the transcript is restricted through 4/9/2024. (hsmi) (Entered: 01/10/2024) |
| 01/10/2024 | [525](#) <br> (3 pgs; 2 docs) | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 01/04/2024 on Motion to Continue/Reschedule Hearing On the Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (Doc. No. 345) has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): [524](#) Transcript). (hsmi) (Entered: 01/10/2024) |
| 01/10/2024 | [526](#) <br> (7 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [523](#) Order on Motion to Approve Compromise under Rule 9019). Notice Date 01/10/2024. (Admin.) (Entered: 01/11/2024) |
| 01/11/2024 | [527](#) <br> (1 pg) | Corrected Proposed Order RE: Filed by Managing General Partner George Snyder (RE: related document(s): [513](#) Objection to Claim No. 3 of Christine Biros filed by Managing General Partner George Snyder). (culy) (Entered: 01/11/2024) |
| 01/12/2024 | [528](#) <br> (5 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [525](#) Notice of Filing of Transcript). Notice Date 01/12/2024. (Admin.) (Entered: 01/13/2024) |
| 01/17/2024 | [538](#) <br> (1 pg) | Notice of Appeal to the U.S. Third Circuit Court of Appeals Re: Memorandum and Order and Final Judgment By District Court Judge Cathy Bissoon, on Civil Action Number: 2:23-cv-00691 Signed on 12/19/2023 Filed by Managing General Partner George Snyder (RE: related document(s): [505](#) Final Order by District Court Judge). USCA Case Number 24-1163 (culy) Modified on |

| | | |
|---|---|---|
| | | 1/29/2024 (culy). (Entered: 01/25/2024) |
| 01/22/2024 | <u>529</u><br>(5 pgs; 2 docs) | Response *(Limited Response and Reservation of Rights)* Regarding the Hearing on 03/28/24. Filed by Christine Biros (RE: related document(s): <u>509</u> Objection to Claim filed by Managing General Partner George Snyder, <u>511</u> Order Scheduling Hearing, <u>513</u> Objection to Claim filed by Managing General Partner George Snyder, <u>514</u> Order Scheduling Hearing, <u>517</u> Objection to Claim filed by Managing General Partner George Snyder, <u>518</u> Order Scheduling Hearing). (Attachments: # <u>1</u> Certificate of Service) (Bernstein, Robert) (Entered: 01/22/2024) |
| 01/22/2024 | <u>530</u><br>(8 pgs; 2 docs) | Motion to Withdraw/Dismiss Document *Claim Numbers 2, 3, & 4* Filed by Creditor Christine Biros. (Attachments: # <u>1</u> Proposed Order) (Bernstein, Robert) (Entered: 01/22/2024) |
| 01/22/2024 | <u>531</u><br>(2 pgs) | Corrective Entry: Counsel shall file proof of service. Hearing on Motion to Withdraw Claim Numbers 2, 3, & 4 Filed by Creditor Christine Biros (RE: related document(s): <u>530</u> Motion to Withdraw/Dismiss Document -bk- filed by Creditor Christine Biros). Hearing scheduled for 2/22/2024 at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 2/8/2024. (Bernstein, Robert) Modified on 1/23/2024 (hthu). (Entered: 01/22/2024) |
| 01/22/2024 | <u>532</u><br>(3 pgs; 2 docs) | Notice of Appeal . Receipt Number NFP,Fee Amount $ 298. Filed by George Snyder (RE: related document(s): <u>523</u> Order on Motion to Approve Compromise under Rule 9019). Appellant Designation due by 2/5/2024 for <u>523</u>. (culy) (Entered: 01/23/2024) |
| 01/23/2024 | <u>533</u><br>(2 pgs; 2 docs) | Letter Requesting Appeal Cover Sheet & Filing Fee. (Related Doc. No. <u>532</u>) cm: George Snyder (culy). (Entered: 01/23/2024) |
| 01/23/2024 | <u>534</u><br>(2 pgs; 2 docs) | Request for Revised Notice of Appeal. (RE: related document(s): <u>532</u> Notice of Appeal filed by Managing General Partner George Snyder). cm: George Snyder (culy) (Entered: 01/23/2024) |
| 01/23/2024 | 535 | Corrective Entry: Counsel shall file proof of service. (RE: related document(s): <u>530</u> Motion to Withdraw/Dismiss Document -bk- filed by Creditor Christine Biros, <u>531</u> Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (hthu) (Entered: 01/23/2024) |

| | | |
|---|---|---|
| 01/24/2024 | [536](#)<br>(3 pgs) | Certificate of Service Regarding the Hearing on 2/22/2024. Filed by Creditor Christine Biros (RE: related document(s): [530](#) Motion to Withdraw/Dismiss Document -bk- filed by Creditor Christine Biros, [531](#) Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Bernstein, Robert) (Entered: 01/24/2024) |
| 01/24/2024 | [537](#)<br>(6 pgs; 2 docs) | Amended Certificate of Service *(Amended to include Mailing List)* Regarding the Hearing on 2/22/2024. Filed by Creditor Christine Biros (RE: related document(s): [530](#) Motion to Withdraw/Dismiss Document -bk- filed by Creditor Christine Biros, [531](#) Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros, [536](#) Certificate of Service filed by Creditor Christine Biros). (Attachments: # [1](#) Creditor Matrix) (Bernstein, Robert) (Entered: 01/24/2024) |
| 01/25/2024 | [539](#)<br>(5 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [532](#) Notice of Appeal filed by Managing General Partner George Snyder). Notice Date 01/25/2024. (Admin.) (Entered: 01/26/2024) |
| 01/25/2024 | [540](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [533](#) Letter Requesting Appeal Cover Sheet). Notice Date 01/25/2024. (Admin.) (Entered: 01/26/2024) |
| 01/25/2024 | [541](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [534](#) Request for Revised Notice of Appeal). Notice Date 01/25/2024. (Admin.) (Entered: 01/26/2024) |
| 01/31/2024 | [542](#)<br>(2 pgs) | Revised Notice of Appeal. Filed by George Snyder (RE: related document(s): [523](#) Order on Motion to Approve Compromise under Rule 9019, [532](#) Notice of Appeal, [534](#) Request for Revised Notice of Appeal). (culy) (Entered: 01/31/2024) |
| 01/31/2024 | [543](#)<br>(2 pgs; 2 docs) | Letter to All Parties Regarding Filing Designations of Record on Appeal. (RE: related document(s): [542](#) Revised Notice of Appeal filed by George Snyder). cm: George Snyder; Christine Biros; Robert Bernstein, Esq.; Robert Slone, Esq. (culy) (Entered: 01/31/2024) |
| 01/31/2024 | [544](#)<br>(3 pgs; 2 docs) | BNC PDF Notice - Doc. No. [542](#) Revised Notice of Appeal sent to George Snyder; Christine Biros; Robert Bernstein, Esq.; Robert Slone, Esq.; Office of the U.S. Trustee (culy) (Entered: 01/31/2024) |

| | | |
|---|---|---|
| 01/31/2024 | 545<br>(2 pgs; 2 docs) | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): 523 Order on Motion to Approve Compromise under Rule 9019, Order on Motion to Continue/Reschedule Hearing, 532 Notice of Appeal filed by George Snyder, 533 Letter Requesting Appeal Cover Sheet, 534 Request for Revised Notice of Appeal, 542 Revised Notice of Appeal filed by George Snyder, 543 Letter Regarding Filing Designations). (culy) (Entered: 01/31/2024) |
| 02/02/2024 | 546 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:24-cv-00135-CB. District Court Document No. 1. Name of Judge: Hon. Cathy Bissoon. (RE: related document(s): 542 Revised Notice of Appeal filed by George Snyder, 545 Letter of Transmission to District Court. (culy) (Entered: 02/02/2024) |
| 02/02/2024 | 547<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 543 Letter Regarding Filing Designations). Notice Date 02/02/2024. (Admin.) (Entered: 02/03/2024) |
| 02/02/2024 | 548<br>(5 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 544 BNC PDF Notice). Notice Date 02/02/2024. (Admin.) (Entered: 02/03/2024) |
| 02/02/2024 | 549<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 545 Letter of Transmission to District Court). Notice Date 02/02/2024. (Admin.) (Entered: 02/03/2024) |
| 02/09/2024 | 550<br>(1 pg) | Certificate of No Objection Regarding the Hearing on 2/22/2024. Filed by Creditor Christine Biros (RE: related document(s): 530 Motion to Withdraw/Dismiss Document -bk- filed by Creditor Christine Biros, 531 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Bernstein, Robert) (Entered: 02/09/2024) |
| 02/09/2024 | 551<br>(6 pgs; 2 docs) | Appellant Designation of Contents For Inclusion in Record On Appeal and Statement of Issues on Appeal Filed by George Snyder (RE: related document(s): 532 Notice of Appeal, 542 Revised Notice of Appeal). Appellee designation due by 2/23/2024 for 542 and for 532. Transmission of Designation Due by 3/11/2024 for 542 and for 532. (culy) (Entered: 02/09/2024) |

| | | |
|---|---|---|
| 02/09/2024 | 552<br>(2 pgs; 2 docs) | Default Order Granting Motion to Withdraw Claims 2, 3 and 4 without prejudice (Related Doc # 530) Signed on 2/9/2024. (culy) (Entered: 02/09/2024) |
| 02/09/2024 | 553 | Claim Status Correction- Claims 2, 3 and 4 of Christine Biros withdrawn w/o prejudice per Order dated 2/9/2024. (RE: related document(s): 552 Default Order on Motion to Withdraw Document). (culy) (Entered: 02/09/2024) |
| 02/11/2024 | 554<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 552 Order on Motion to Withdraw/ Dismiss Document). Notice Date 02/11/2024. (Admin.) (Entered: 02/12/2024) |
| 02/22/2024 | 555<br>(5 pgs) | Appellee Designation of Contents for Inclusion in Record of Appeal Filed by Christine Biros (RE: related document(s): 542 Revised Notice of Appeal, 551 Appellant Designation, Statement of Issues on Appeal). (Gaul, Stuart) (Entered: 02/22/2024) |
| 02/26/2024 | 556<br>(2 pgs; 2 docs) | Letter of Transmission to District Court Re: 2:24-cv-00135-CB. Documents Delivered to District Court. (RE: related document(s): 551 Appellant Designation filed by Managing General Partner George Snyder, Statement of Issues on Appeal, 555 Appellee Designation filed by Creditor Christine Biros). (culy) (Entered: 02/26/2024) |
| 02/28/2024 | 557 | Receipt of Electronic Notification of Supplemental Record from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:24-cv-00135-CMB. District Court Document No. 3. Name of Judge: Hon. Cathy Bissoon. (RE: related document(s): 556 Letter of Transmission to District Court). (culy) (Entered: 02/28/2024) |
| 02/28/2024 | 558<br>(2 pgs; 2 docs) | Order from Circuit Court Re: Appeal on Appellate Case Number: 24-1163, It is Ordered that the above-captioned case is hereby dismissed for faiure to timely prosecute insofar as appellant failed to pay the requisite fee as directed. Signed on 2/28/2024. (RE: related document(s): 538 Notice of Appeal to Third Circuit Court of Appeals. Also related to: 372 Notice of Appeal, 505 Final Order by District Court Judge on Appeal at 2:23-cv-00691) (culy) (Entered: 02/29/2024) |
| 02/29/2024 | 559<br>(39 pgs; 2 docs) | Memorandum Opinion Signed on 2/29/2024. (RE: related document(s): 340 Christine Biros' Objection to Claim No. 1 of Shanni Snyder). (culy) (Entered: 02/29/2024) |

| | | |
|---|---|---|
| 02/29/2024 | [560](#)<br>(2 pgs; 2 docs) | Order Signed on 2/29/2024. The Objection to Claim is sustained. Claim No. 1 filed by Shanni Snyder is disallowed. (RE: related document(s): [559](#) Memorandum Opinion). (culy) (Entered: 02/29/2024) |
| 02/29/2024 | [561](#)<br>(3 pgs; 2 docs) | Order Show Cause Signed on 2/29/2024. Ms. Snyder shall file a written response to this Order to Show Cause no later than 14 days after the Court's order disallowing her claim becomes final. (RE: related document(s): [340](#) Objection to Claim). (culy) (Entered: 02/29/2024) |
| 02/29/2024 | [562](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [556](#) Letter of Transmission to District Court). Notice Date 02/29/2024. (Admin.) (Entered: 03/01/2024) |
| 03/02/2024 | [563](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [558](#) Order from Circuit Court). Notice Date 03/02/2024. (Admin.) (Entered: 03/03/2024) |
| 03/02/2024 | [564](#)<br>(41 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [559](#) Memorandum Opinion). Notice Date 03/02/2024. (Admin.) (Entered: 03/03/2024) |
| 03/02/2024 | [565](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [560](#) Order -Non-motion related-). Notice Date 03/02/2024. (Admin.) (Entered: 03/03/2024) |
| 03/02/2024 | [566](#)<br>(5 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [561](#) Order to Show Cause). Notice Date 03/02/2024. (Admin.) (Entered: 03/03/2024) |
| 03/05/2024 | 567 | Final Order By District Court Judge Robert J. Colville, on Civil Action Number: 2:23-cv-00979-RJC, ORDER dismissing Plaintiff's motion to withdraw reference 1 as moot. A bankruptcy court order dismissing an adversary proceeding moots a motion to withdraw the refence as to that adversary proceeding. In re Garden Fresh Restaurants, LLC, 21-CV-1440, 2022 WL 410942, at *1 (S.D. Cal. Feb. 10, 2022) (citing In re Lear Corp., 418 B.R. 46, 48 (S.D.N.Y. 2009)). Here, because a final order was entered by Judge Taddonio in the adversary proceeding (see 2:22-bk-20823), the motion to withdraw reference is denied as moot. The Clerk of Courts shall mark this case as CLOSED. Signed by Judge Robert J. Colville on 3/5/24. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. Signed on 3/5/2024. (RE: related document(s): [389](#) Motion for Withdrawal of |

| | | Reference). (culy) (Entered: 03/05/2024) |
|---|---|---|
| 03/14/2024 | 568<br>(5 pgs; 3 docs) | Notice of Appeal . Fee Amount $ 298. Filed by Shanni Snyder (RE: related document(s): 559 Memorandum Opinion, 560 Order -Non-motion related-). Appellant Designation due by 03/28/2024 for 559 and for 560,. (Attachments: # 1 Certificate of Service # 2 Exhibit A) (Lacher, John) (Entered: 03/14/2024) |
| 03/14/2024 | 569 | Receipt of Notice of Appeal( 22-20823-GLT) [appeal,ntcapl] ( 298.00) filing fee. Receipt number A16667272, amount $ 298.00. (U.S. Treasury) (Entered: 03/14/2024) |
| 03/14/2024 | 570<br>(2 pgs) | Appeal Cover Sheet Filed by Shanni Snyder (RE: related document(s): 568 Notice of Appeal). (Lacher, John) (Entered: 03/14/2024) |
| 03/15/2024 | 571<br>(2 pgs; 2 docs) | Request for Revised Notice of Appeal. (RE: related document(s): 568 Notice of Appeal filed by Petitioning Creditor Shanni Snyder). (culy) (Entered: 03/15/2024) |
| 03/19/2024 | 572<br>(16 pgs; 3 docs) | Application *for Unpaid Administrative Fees per Order to Show Cause* Filed by Trustee Robert H. Slone, Trustee. (Attachments: # 1 Exhibit # 2 Proposed Order) (Slone, Trustee, Robert) THIS APPLICATION HAS BEEN REFILED AT DOCUMENT NO. 583 PER THE TEXT ORDER AT DOCUMENT NO. 574 . Modified on 3/27/2024 (culy). (Entered: 03/19/2024) |
| 03/19/2024 | 573 | Text Order re: (572 Application). Without further notice or hearing, this pleading will be stricken without prejudice if the following action is not taken: COUNSEL SHALL REFILE THIS DOCUMENT USING CM/ECF EVENT: "BANKRUPTCY>MOTIONS/ APPLICATIONS>ADMINISTRATIVE EXPENSE." IN ADDITION, COUNSEL SHALL FILE A SELF-SCHEDULED HEARING NOTICE AND CERTIFICATE OF SERVICE IN COMPLIANCE WITH JUDGE TADDONIO'S SELF-SCHEDULING PROCEDURES. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 3/19/2024. (RE: related document(s): 572 Application). Required corrective action due on or before 3/27/2024. (culy) (Entered: 03/19/2024) |
| 03/19/2024 | 574 | TEXT ORDER: The Text Order dated 3/19/2024 was issued in error and requires amendment. Therefore it is hereby ORDERED that on or before March 27, 2024, Counsel shall refile the Application [Dkt. No. 572] using |

| | | CM/ECF event: "BANKRUPTCY>MOTIONS/ APPLICATIONS>ADMINISTRATIVE EXPENSE." COUNSEL IS NOT REQUIRED TO SELF-SCHEDULE THE MATTER. Judge Taddonio Signed on 3/19/2024. (RE: related document(s): 573 Order Fixing Deadline to Deny a Motion). (hthu) (Entered: 03/19/2024) |
|---|---|---|
| 03/21/2024 | 575 (4 pgs; 3 docs) | Revised Notice of Appeal. Filed by Shanni Snyder (RE: related document(s): 559 Memorandum Opinion, 560 Order -Non-motion related-, 571 Request for Revised Notice of Appeal). (Attachments: # 1 Exhibit Exhibit A # 2 Certificate of Service)(Lacher, John) (Entered: 03/21/2024) |
| 03/21/2024 | 576 (2 pgs; 2 docs) | Order CANCELLING 3/28/2024 HEARING and Mooting George Snyder's Objection to Claim No. 2 filed by Christine Biros (Related Doc # 509), Mooting George Snyder's Objection to Claim No. 3 filed by Christine Biros (Related Doc # 513), Mooting George Snyder's Objection to Claim No. 4 filed by Christine Biros (Related Doc # 517) Signed on 3/21/2024. (culy) (Entered: 03/21/2024) |
| 03/21/2024 | 577 (2 pgs; 2 docs) | Letter to All Parties Regarding Filing Designations of Record on Revised Appeal. (RE: related document(s): 570 Appeal Cover Sheet filed by Petitioning Creditor Shanni Snyder, 575 Revised Notice of Appeal filed by Petitioning Creditor Shanni Snyder). (culy) (Entered: 03/21/2024) |
| 03/21/2024 | 578 (5 pgs; 2 docs) | BNC PDF Notice - Revised Notice of Appeal at Doc. No. 575 sent to John P. Lacher, Esq.; David Fuchs, Esq.; Stuart C. Gaul, Jr., Esq.; Sarah E. Wenrich, Esq. and the Office of the U.S. Trustee (culy) (Entered: 03/21/2024) |
| 03/21/2024 | 579 (2 pgs; 2 docs) | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): 568 Notice of Appeal filed by Petitioning Creditor Shanni Snyder, 570 Appeal Cover Sheet filed by Petitioning Creditor Shanni Snyder, 575 Revised Notice of Appeal filed by Petitioning Creditor Shanni Snyder). (culy) (Entered: 03/21/2024) |
| 03/23/2024 | 580 (4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 576 Order on Objection to Claim). Notice Date 03/23/2024. (Admin.) (Entered: 03/24/2024) |

| 03/23/2024 | 581<br>(7 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 578 BNC PDF Notice). Notice Date 03/23/2024. (Admin.) (Entered: 03/24/2024) |
|---|---|---|
| 03/23/2024 | 582<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 579 Letter of Transmission to District Court). Notice Date 03/23/2024. (Admin.) (Entered: 03/24/2024) |
| 03/26/2024 | 583<br>(16 pgs; 3 docs) | Application for Administrative Expenses Filed by Trustee Robert H. Slone, Trustee. (Attachments: # 1 Exhibit Trustee Time Summary # 2 Proposed Order) (Slone, Trustee, Robert) (Entered: 03/26/2024) |
| 03/28/2024 | 584<br>(5 pgs; 2 docs) | Appellant Designation of Contents For Inclusion in Record On Appeal *and Statement of Issues to be Presented* Filed by Shanni Snyder (RE: related document(s): 568 Notice of Appeal, 570 Appeal Cover Sheet, 575 Revised Notice of Appeal). Appellee designation due by 04/11/2024 for 575 and for 568 and for 570,. Transmission of Designation Due by 04/29/2024 for 575 and for 568 and for 570,. (Attachments: # 1 Certificate of Service)(Lacher, John) (Entered: 03/28/2024) |
| 03/28/2024 | 585<br>(4 pgs) | Supplemental Statement of Issues on Appeal, Filed by Shanni Snyder (RE: related document(s): 575 Revised Notice of Appeal, 584 Appellant Designation). (culy) (Entered: 03/29/2024) |
| 03/29/2024 | 586 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:24-cv-00478-NBF. District Court Document No. 1. Name of Judge: Hon. Nora Barry Fischer. (RE: related document(s): 568 Notice of Appeal filed by Petitioning Creditor Shanni Snyder, 575 Revised Notice of Appeal filed by Petitioning Creditor Shanni Snyder). (mgut) (Entered: 04/01/2024) |
| 04/02/2024 | 587<br>(12 pgs) | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:23-cv-00979-RJC. District Court Document No. 9. Name of Judge: Robert J. Colvile. MOTION to Alter Judgement, MOTION for Reconsideration, and MOTION to Vacate filed on 4/2/24. (RE: related document(s): 567 Final Order by District Court Judge). (obro) Additional attachment(s) added on 4/3/2024 (obro). (Entered: 04/03/2024) |

| | 588 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:23-cv-00979-RJC. District Court Document No. 11. Name of Judge: Robert J. Colville. ORDER on Plaintiffs pro se Motion to Alter, Amend, Reconsider, or Vacate the Courts Order of March 5, 2024. Plaintiff is directed not to file pro se documents with the Court [because i]t is inappropriate for a party who is represented by counsel to make h[er] own filings with the Court. Rose v. Mahoning Township, No. 3:07cv1305, 2011 WL 13349404, at *3 (M.D. Pa. Aug. 30, 2011). For this reason, the Court will remove Plaintiff from the list of attorneys on the ECF system. Further, the Motion is denied on the merits for the reasons asserted by the Court in its March 5, 2024 Order dismissing Plaintiffs Motion to Withdraw Reference as moot. Signed by Judge Robert J. Colville on 4/3/24. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (RE: related document(s): 567 Final Order by District Court Judge, 587 Receipt of Electronic Notification from District Court). (dkam) Modified on 4/3/2024 (mgut). (Entered: 04/03/2024) |
| :--- | :---: | :--- |
| 04/03/2024 | | |
| 04/09/2024 | 589 (323 pgs; 27 docs) | Appellee Designation of Contents for Inclusion in Record of Appeal Filed by Christine Biros (RE: related document(s): 575 Revised Notice of Appeal, 584 Appellant Designation). (Attachments: # 1 Exhibit A # 2 Exhibit 1 # 3 Exhibit 2 # 4 Exhibit 3 # 5 Exhibit 4 # 6 Exhibit 5 # 7 Exhibit 6 # 8 Exhibit 7 # 9 Exhibit 8 # 10 Exhibit 9 # 11 Exhibit 10 # 12 Exhibit 11 # 13 Exhibit 12 # 14 Exhibit 13 # 15 Exhibit 14 # 16 Exhibit 15 # 17 Exhibit 16 # 18 Exhibit 17 # 19 Exhibit 18 # 20 Exhibit 19 # 21 Exhibit 20 # 22 Exhibit 21 # 23 Exhibit 22 # 24 Exhibit 23 # 25 Exhibit 24 # 26 Certificate of Service) (Gaul, Stuart) (Entered: 04/09/2024) |
| 04/11/2024 | 590 (2 pgs; 2 docs) | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): 584 Appellant Designation filed by Petitioning Creditor Shanni Snyder, 585 Statement of Issues on Appeal filed by Petitioning Creditor Shanni Snyder, 589 Appellee Designation filed by Creditor Christine Biros). (dkam) (Entered: 04/23/2024) |
| 05/01/2024 | 591 (1 pg) | Notice of Appeal to the Third Circuit as to 8 Order, Order for Administrative Case Closing, 11 Order on Motion to Alter Judgment, Order on Motion for Reconsideration, Order on Motion to Vacate, by SHANNI SNYDER. Filing fee $605, receipt number BPAWDC-8244829. |

| | | |
|---|---|---|
| | | Motion for IFP n/a. Certificate of Appealability n/a. Court Reporter(s): n/a. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. The Transcript Purchase Order form will NOT be mailed to the parties. The form is available on the Court's internet site. (Snyder, Shanni) (RE: related document(s): 432 Receipt of Electronic Notification from District Court, 567 Final Order by District Court Judge, 587 Receipt of Electronic Notification from District Court, 588 Receipt of Electronic Notification from District Court). (mgut) (Entered: 05/01/2024) |
| 05/02/2024 | 592 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:24-cv-00478-NBF. District Court Document No. 2. Name of Judge: Nora Barry Fischer. (RE: related document(s): 584 Appellant Designation filed by Petitioning Creditor Shanni Snyder, 585 Statement of Issues on Appeal filed by Petitioning Creditor Shanni Snyder, 589 Appellee Designation filed by Creditor Christine Biros, 590 Letter of Transmission to District Court). (dkam) (Entered: 05/02/2024) |
| 06/24/2024 | 593 (4 pgs; 2 docs) | Order Signed on 6/24/2024. The Order to Show Cause issued at Doc. No. 294 is RELEASED. (RE: related document(s): 294 Order Scheduling Hearing, 304 Response). (dpas) (Entered: 06/24/2024) |
| 06/24/2024 | 594 (36 pgs; 2 docs) | Memorandum Opinion cm: George Snyder. Judge Taddonio Signed on 6/24/2024. (RE: related document(s): 278 Amended Order to Show Cause Scheduling Hearing). (hthu) (Entered: 06/24/2024) |
| 06/24/2024 | 595 (3 pgs; 2 docs) | Order Signed on 6/24/2024. (RE: related document(s): 278 Order Scheduling Hearing, 594 Memorandum Opinion). (hthu) (Entered: 06/24/2024) |
| 06/26/2024 | 596 (6 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 593 Order -Non-motion related-). Notice Date 06/26/2024. (Admin.) (Entered: 06/27/2024) |
| 06/26/2024 | 597 (38 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 594 Memorandum Opinion). Notice Date 06/26/2024. (Admin.) (Entered: 06/27/2024) |

| | | |
|---|---|---|
| 06/26/2024 | 598<br>(5 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 595 Order -Non-motion related-). Notice Date 06/26/2024. (Admin.) (Entered: 06/27/2024) |
| 07/26/2024 | 599 | Receipt of a Fine - $500.00. Receipt Number 20379. (admin) (Entered: 07/26/2024) |
| 07/31/2024 | 600<br>(30 pgs; 9 docs) | Declaration re: *Certification of Christine Biros that all payments pursuant to 595 Order entered June 24, 2024 have been completed* Filed by Creditor Christine Biros (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Certificate of Service) (Gaul, Stuart) (Entered: 07/31/2024) |
| 10/11/2024 | 601<br>(24 pgs; 2 docs) | Final Order By District Court Judge Hon. Nora Barry Fischer, on Civil Action Number: 2:24-cv-00478-NBF, MEMORANDUM OPINION AND ORDER re: 1 Bankruptcy Appeal, filed by SHANNI SNYDER. The February 29, 2024 Memorandum Opinion and Order of the Bankruptcy Court in Bankruptcy No. 22-20823-GLT is AFFIRMED; the Clerk of Court shall mark this case CLOSED. Signed by Judge Hon. Nora Barry Fischer on 10/11/2024. Signed on 10/11/2024. (RE: related document(s): 568 Notice of Appeal). (msch) (Entered: 10/11/2024) |
| 10/13/2024 | 602<br>(26 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 601 Final Order by District Court Judge). Notice Date 10/13/2024. (Admin.) (Entered: 10/14/2024) |
| 11/12/2024 | 603<br>(15 pgs; 2 docs) | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:24-cv-00478-NBF. District Court Document No. 20 & 23. Name of Judge: Hon. Nora Barry Fischer. MOTION for Reconsideration re: No. 18 Memorandum Opinion, No. 19 Order, Terminate Civil Case, Pursuant to Rule 59(e) by SHANNI SNYDER; ORDER striking Motion for Reconsideration in violation of the rule against hybrid representation and otherwise denied as wholly without merit (RE: related document(s): 601 Final Order by District Court Judge). (msch) Additional attachment(s) added on 11/12/2024 (msch). Modified on 11/13/2024 (mgut). Additional attachment(s) added on 11/13/2024 (mgut). (Entered: 11/12/2024) |
| 11/12/2024 | 604<br>(1 pg) | Notice Regarding: NOTICE OF APPEAL as to 23 Terminate Motions, Order,19 Order, Terminate Civil Case, by SHANNI SNYDER. Filing fee $605, receipt number |

| | | |
|---|---|---|
| | | APAWDC-8555729. Motion for IFP n/a. Certificate of Appealability n/a. Court Reporter(s): n/a. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. The Transcript Purchase Order form will NOT be mailed to the parties. The form is available on the Court's internet site. (Snyder, Shanni). Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): 603 Receipt of Electronic Notification from District Court). (msch) (Entered: 11/13/2024) |
| 11/14/2024 | 605 | USCA Case Number: 24-3134 for doc. no. 568 Notice of Appeal Filed by Debtor. (msch) (Entered: 11/14/2024) |
| 12/31/2024 | 606 (5 pgs; 2 docs) | Final Memorandum, Order, and Judgement By District Court Judge Hon. Cathy Bissoon, on Civil Action Number: 2:24-cv-00135-CB, AFFIRMED Signed on 12/31/2024. (RE: related document(s): 532 Notice of Appeal, 542 Revised Notice of Appeal). (msch) (Entered: 12/31/2024) |
| 01/02/2025 | 607 (7 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 606 Final Order by District Court Judge). Notice Date 01/02/2025. (Admin.) (Entered: 01/03/2025) |
| 01/28/2025 | 608 (1 pg) | NOTICE OF APPEAL as to 20 Memorandum Opinion, Order, 21 Rule 58 Judgment by George Snyder. Filing fee $605, receipt number APAWDC-8672582. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. The Transcript Purchase Order form will NOT be mailed to the parties. The form is available on the Court's internet site. (Snyder, George). (RE: related document(s): 542 Revised Notice of Appeal filed by Managing General Partner George Snyder, 606 Final Order by District Court Judge). (msch) (Entered: 01/28/2025) |
| 01/31/2025 | 609 | USCA Case Number 25-1177 for 608 Notice of Appeal, filed by George Snyder. (msch)Modified on 2/3/2025 (msch). (Entered: 01/31/2025) |
| 02/19/2025 | 610 | Disposition of Adversary, Adversary Case 2:23-ap-2020 Closed. (dpas) (Entered: 02/19/2025) |
| 02/21/2025 | 611 (9 pgs; 2 docs) | MANDATE from Circuit Court Re: Appeal on Appellate Case Number: 24-1163, AFFIRMED. Signed on 2/21/2025. (RE: related document(s): 372 Notice of Appeal, 538 Notice, 558 Order from Circuit Court). (msch) (Entered: 02/21/2025) |

**Appendix Vol. II**      **Page 107**

| | | |
|---|---|---|
| 02/23/2025 | [612](#)<br>(11 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [611](#) Order from Circuit Court). Notice Date 02/23/2025. (Admin.) (Entered: 02/24/2025) |
| 03/06/2025 | 613 | Disposition of Adversary, Adversary Case 2:22-ap-2048 Closed. (dpas) (Entered: 03/06/2025) |
| 04/15/2025 | [614](#)<br>(3 pgs; 2 docs) | Order Scheduling Hearing. Show Cause hearing to be held on 6/2/2025 at 10:30 AM at p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Objections due by 5/27/2025. (msch) (Entered: 04/15/2025) |
| 04/17/2025 | [615](#)<br>(5 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [614](#) Order Scheduling Hearing). Notice Date 04/17/2025. (Admin.) (Entered: 04/18/2025) |
| 05/28/2025 | [616](#)<br>(2 pgs; 2 docs) | Order Lifting Stay Imposed by Pennsylvania Rule of Disciplinary Enforcement 321(g). Signed on 5/28/2025. (RE: related document(s): [614](#) Order Scheduling Hearing). The Show Cause Hearing scheduled for June 2, 2025, is CANCELLED. (msch) (Entered: 05/28/2025) |
| 05/30/2025 | [617](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [616](#) Order -Non-motion related-). Notice Date 05/30/2025. (Admin.) (Entered: 05/31/2025) |

# WESTERN DISTRICT OF PENNSYLVANIA
## Claims Register

### [22-20823-GLT U LOCK INC](#)

| | |
|---|---|
| **Chief Bankruptcy Jud:** Gregory L Taddonio | **Chapter:** 7 |
| **Office:** Pittsburgh | **Last Date to file claims:** 08/26/2022 |
| **Trustee:** Robert H. Slone, Trustee | **Last Date to file (Govt):** 12/14/2022 |

---

*Creditor:* (15485025)
Shanni Snyder
14390 Route 30
N Huntingdon, PA 15642

**Claim No: 1**
*Original Filed Date*: 05/27/2022
*Original Entered Date*: 05/27/2022

*Status:*
*Filed by:* CR
*Entered by:* admin
*Modified:*

  Amount claimed: $263100.00
  Secured claimed: $263100.00

*History:*

| | | |
|---|---|---|
| Details | 1-1 | 05/27/2022 Claim #1 filed by Shanni Snyder, Amount claimed: $263100.00 (admin) |

*Description:*
*Remarks:*

---

*Creditor:* (15509085)
Christine Biros
c/o Bernstein-Burkley, P.C.
601 Grant Street, 9th Floor
Pittsburgh, PA 15219

**Claim No: 2**
*Original Filed Date*: 08/25/2022
*Original Entered Date*: 08/25/2022
*Last Amendment Filed*: 03/01/2023
*Last Amendment Entered*: 03/01/2023

*Status:* **Withdraw - See Docket #** 553
*Filed by:* CR
*Entered by:* admin
*Modified:* 03/01/2023

  Amount claimed: $27701.59
  Priority claimed: $27701.59

*History:*

| | | |
|---|---|---|
| Details | 2-1 | 08/25/2022 Claim #2 filed by Christine Biros, Amount claimed: $20642.53 (admin) |
| Details | 2-2 | 03/01/2023 Amended Claim #2 filed by Christine Biros, Amount claimed: $27701.59 (admin) |
| | 553 | 02/09/2024 Claim Status Correction- Claims 2, 3 and 4 of Christine Biros withdrawn w/o prejudice per Order dated 2/9/2024. (RE: related document(s): [552](#) Default Order on Motion to Withdraw Document). (culy) Status: **Withdraw - See Docket #** |

*Description:*
*Remarks:*

---

*Creditor:* (15509085)
Christine Biros
c/o Bernstein-Burkley, P.C.
601 Grant Street, 9th Floor
Pittsburgh, PA 15219

**Claim No: 3**
*Original Filed Date*: 08/25/2022
*Original Entered Date*: 08/25/2022
*Last Amendment Filed*: 03/01/2023
*Last Amendment Entered*: 03/01/2023

*Status:* **Withdraw - See Docket #** 553
*Filed by:* CR
*Entered by:* admin
*Modified:* 03/01/2023

*History:*

| | | |
|---|---|---|
| Details | 3-1 | 08/25/2022 Claim #3 filed by Christine Biros, Amount claimed: $405000.00 (admin) |
| Details | 3-2 | 03/01/2023 Amended Claim #3 filed by Christine Biros, Amount claimed: $567000.00 (admin) |
| | 553 | 02/09/2024 Claim Status Correction- Claims 2, 3 and 4 of Christine Biros withdrawn w/o prejudice per Order dated 2/9/2024. (RE: related document(s): [552](#) Default Order on Motion to Withdraw Document). (culy) Status: **Withdraw - See Docket #** |

*Description:*
*Remarks:*

Amount claimed: $567000.00

*History:*

| Details | 3-1 | 08/25/2022 Claim #3 filed by Christine Biros, Amount claimed: $405000.00 (admin) |
| Details | 3-2 | 03/01/2023 Amended Claim #3 filed by Christine Biros, Amount claimed: $567000.00 (admin) |
| | 553 | 02/09/2024 Claim Status Correction- Claims 2, 3 and 4 of Christine Biros withdrawn w/o prejudice per Order dated 2/9/2024. (RE: related document(s): 552 Default Order on Motion to Withdraw Document). (culy) Status: **Withdraw - See Docket #** |

*Description:*

*Remarks:*

---

*Creditor:* (15509085)
Christine Biros
c/o Bernstein-Burkley, P.C.
601 Grant Street, 9th Floor
Pittsburgh, PA 15219

**Claim No: 4**
*Original Filed Date*: 08/26/2022
*Original Entered Date*: 08/26/2022

*Status:* **Withdraw - See Docket #** 553
*Filed by:* CR
*Entered by:* admin
*Modified:*

Amount claimed: $0.00

*History:*

| Details | 4-1 | 08/26/2022 Claim #4 filed by Christine Biros, Amount claimed: $0.00 (admin) |
| | 553 | 02/09/2024 Claim Status Correction- Claims 2, 3 and 4 of Christine Biros withdrawn w/o prejudice per Order dated 2/9/2024. (RE: related document(s): 552 Default Order on Motion to Withdraw Document). (culy) Status: **Withdraw - See Docket #** |

*Description:*

*Remarks:* (4-1) Filer Comment: Unknown

---

*Creditor:* (15509710)
George Snyder
Box 15
Irwin, PA 15642

**Claim No: 5**
*Original Filed Date*: 08/26/2022
*Original Entered Date*: 08/26/2022

*Status:*
*Filed by:* CR
*Entered by:* admin
*Modified:*

Amount claimed: $99000.00

*History:*

| Details | 5-1 | 08/26/2022 Claim #5 filed by George Snyder, Amount claimed: $99000.00 (admin) |

*Description:*

*Remarks:*

---

*Creditor:* (15555009)
Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

**Claim No: 6**
*Original Filed Date*: 12/19/2022
*Original Entered Date*: 12/19/2022
*Last Amendment Filed*: 05/04/2023
*Last Amendment Entered*: 05/04/2023

*Status:*
*Filed by:* CR
*Entered by:* Maureen Svetkovich
*Modified:*

Amount claimed: $65421.08
Priority claimed: $29556.00

*History:*

| Details | 6-1 | 12/19/2022 Claim #6 filed by Internal Revenue Service, Amount claimed: $600.00 (IRS - Bulk Electronic Claims) |
| Details | 6-2 | 05/04/2023 Amended Claim #6 filed by Internal Revenue Service, Amount claimed: $65421.08 (Svetkovich, Maureen) |

*Description:*

*Remarks:*

---

*Creditor:* (15509710)

**Claim No: 7**

*Status:*

George Snyder
Box 15
Irwin, PA 15642

*Original Filed Date*: 04/26/2023
*Original Entered Date*: 04/26/2023

*Filed by:* CR
*Entered by:* admin
*Modified:*

*No amounts claimed*

*History:*

[Details](#)    [7-1](#)    04/26/2023 Claim #7 filed by George Snyder, Amount claimed: (admin)

*Description:*

*Remarks:* (7-1) Filer Comment: The amount cannot be determined as it is for indemnification contribution and reimbursement based on a lawsuit filed by Christine Biros

---

*Creditor:*    (15612033)
IPFS Corporation
30 Montgomery Street
Suite 501
Jersey City, NJ 07302

**Claim No: 8**
*Original Filed Date*: 06/21/2023
*Original Entered Date*: 06/21/2023

*Status:*
*Filed by:* CR
*Entered by:* Lisa R. Chandler
*Modified:*

   Amount claimed: $103.91

*History:*

[Details](#)    [8-1](#)    06/21/2023 Claim #8 filed by IPFS Corporation, Amount claimed: $103.91 (Chandler, Lisa)

*Description:* (8-1) Amount due under premium finance agreement

*Remarks:*

---

*Creditor:*    (15509710)
George Snyder
Box 15
Irwin, PA 15642

**Claim No: 9**
*Original Filed Date*: 07/09/2023
*Original Entered Date*: 07/09/2023

*Status:*
*Filed by:* CR
*Entered by:* admin
*Modified:*

   Amount claimed: $1045.94
   Priority   claimed: $1045.94

*History:*

[Details](#)    [9-1](#)    07/09/2023 Claim #9 filed by George Snyder, Amount claimed: $1045.94 (admin)

*Description:*

*Remarks:*

## Claims Register Summary

**Case Name:** U LOCK INC
**Case Number:** 22-20823-GLT
**Chapter:** 7
**Date Filed:** 04/27/2022
**Total Number Of Claims:** 9

| Total Amount Claimed* | $1023372.52 |
|---|---|
| Total Amount Allowed* | |

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|
| Secured | $263100.00 | |

**Appendix Vol. II**      **Page 111**

FILED
6/3/22 5:04 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Case No. 22-20823-GLT |
| | : | |
| **U LOCK INC.,** | : | Chapter 7 |
| | : | |
| *Alleged Debtor.* | : | |
| | : | |
| **CHRISTINE BIROS,** | : | |
| | : | |
| *Movant,* | : | Related to Dkt. No. 14, 22 & 28 |
| | : | |
| v. | : | |
| | : | |
| **U LOCK INC.** and **SHANNI SNYDER**, | : | |
| | : | |
| *Respondents.* | : | |
| | : | |

## ORDER GRANTING CHRISTINE BIROS
## <u>LIMITED RELIEF FROM THE STAY</u>

Shanni Snyder commenced these proceedings by filing an involuntary bankruptcy petition against the alleged debtor, U Lock Inc., on April 27, 2022. By operation of law, a stay was imposed under 11 U.S.C. § 362(a) protecting the assets, rights, and interests of U Lock from, among other things, certain creditor actions that arose prepetition. U Lock has yet to file a response to the involuntary petition, but the deadline to do so has not yet expired.

Christine Biros holds deeds to the property located 14140 Route 30, North Huntingdon, Pennsylvania (the "Property") wherein U Lock conducts its business operations. She obtained the deeds through a state court judgment that was affirmed on appeal and constitutes a final, non-appealable order. Ms. Biros now requests either dismissal of the bankruptcy case or stay relief to eject U Lock from the Property.[1] She also contends the

---

[1]     *See Motion for Entry of an Order (I) Dismissing the Case and for Sanctions against the Petitioning Creditor, or in the alternative (II) Making a Determination that the Automatic Stay is Inapplicable to State Court Action pursuant to 11 U.S.C. § 362(b)(10), or in the alternative (III) Granting Relief from the Automatic Stay to the Movant in relation to the Movant's Property and the State Court Case, or in the*

1

Property is adversely affected by several environmental issues which have not been remediated. The *Motion* is opposed by both U Lock and Ms. Snyder.

The Court conducted an emergency hearing on June 2, 2022 to consider the *Motion* and responses. At the conclusion of the proceeding, the Court indicated it would grant limited stay relief to Ms. Biros and defer consideration of the remainder of the *Motion* until July 6, 2022 so as to have the benefit of U Lock's response to the involuntary petition. The Court invited the parties to craft a consent order granting limited stay relief consistent with its ruling. But after reviewing the parties' recent submissions,[2] it is apparent that no agreement exists. In the absence of any consensus, the Court deems it necessary to draft its own order addressing the matters adjudicated at the June 2, 2022 hearing. Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that Ms. Biros is hereby granted limited relief from the stay under 11 U.S.C. § 362(a) under the following terms:

1.      Ms. Biros shall be permitted to immediately commence environmental remediation activities subject to the following:  absent further Court Order or the consent of U Lock, Ms. Biros may not secure portions of the Property or restrict access to U Lock or its tenants. U Lock has not yet been adjudicated as a bankruptcy debtor and based on the Court's preliminary understanding, it continues to conduct business operations on the Property.

2.      With respect to the "garbage truck incident," Ms. Biros may conduct ground tests, take photographs, lodge an insurance claim with the waste management company that caused the accident, or initiate any legal action against that third-party related to the incident. Any ground tests and photographs shall occur during normal business hours (upon no less than 48-hours notice) and shall not impede U Lock's operations.

3.      U Lock shall remove all vehicles and trailers from the Property, and any and all proceeds received from the removal and/or sale of such items (including salvage and scrap payments) shall be held in escrow by U Lock's counsel until further order of this Court.

---

*alternative (IV) Abandoning the Movant's Property* [Doc. No. 14] (the "<u>Motion</u>"). Any capitalized term not otherwise defined herein shall have the same meaning ascribed in the *Motion*.

[2]      <u>See</u> Dkt. Nos. 28-29, 32-33.

4.     U Lock shall immediately make arrangements with the police to "tag" unauthorized vehicles on the Property.  Ms. Biros and her counsel may assist, facilitate, or demand the police move forward with the tagging process.

5.     U Lock shall remove all vehicles and trailers from the Property on or before the earlier of:  (a) June 24, 2022, or (b) ten (10) days after the date the police place "tags" on the subject vehicles.  To the extent U Lock requires additional time, it may make a reasonable request for an extension from Ms. Biros that shall not be unreasonably denied.

6.     Any vehicles or trailers remaining on the Property after June 24, 2022 (or such additional time as agreed by Ms. Biros) may be removed and disposed of by Ms. Biros at her convenience.  Notwithstanding the foregoing, the trailers pictured on **Exhibit "A"** hereto are disclaimed by U Lock and may be removed by Ms. Biros upon no less than 48-hours notice.

7.     On or before June 10, 2022, U Lock shall identify any tires placed on the Property by U Lock.  U Lock shall remove such tires on or before June 17, 2022.  Thereafter, Ms. Biros is authorized to remove any tires located on the Property upon no less than 48-hours notice.

8.     On or before June 10, 2022, U Lock shall itemize the tanks on the Property (listing them as unused, salvageable, or waste) and shall disclose the same to Ms. Biros.  All unused and salvageable tanks located on the Property shall be removed by U Lock on or before June 24, 2022.  Any and all proceeds related to the removal and/or sale of such items (including salvage and scrap payments) shall be held in escrow by U Lock's counsel until further order of this Court.  All tanks identified as waste by U Lock may be removed by Ms. Biros upon no less than 48-hours notice.

9.     Upon at least 48-hours notice, Ms. Biros may enter the Property with licensed contractors to conduct bona fide environmental testing and/or to create plans for remediation.

10.     Except as provided herein, nothing in this order shall:  (a) be construed as an ejectment of U Lock, (b) authorize the removal of any U Lock property that does not impede the environmental remediation efforts, and (c) authorize Ms. Biros to interfere with or impede U Lock's ongoing business operations or its tenant relationships.

11.     To the extent U Lock consents to bankruptcy relief, it shall disclose its list of tenants on *Schedule G*.  In the event U Lock does not consent to bankruptcy relief, it shall provide Ms. Biros with a list of tenants on or before June 17, 2022.

12.     If either U Lock or Ms. Biros fails to comply with the terms of this *Order*, the other respective party may file a notice of the non-compliance which shall specifically indicate:  (i) what action(s) have been taken since the entry of this *Order*, and (ii) what required actions remain outstanding.

13. The remaining requests for relief in the *Motion*, as well as any related claims or defenses thereto by U Lock and Ms. Snyder are preserved pending the continued hearing on the *Motion* scheduled for July 6, 2022.

BY THE COURT:

Dated: June 3, 2022

Gregory L. Taddonio
United States Bankruptcy Judge

BNC to serve:
U Lock Inc.
Christine Biros
Shanni Snyder

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:  U LOCK INC. a/k/a ) | |
| U-LOCK INC.                    ) | Bank. 22-20823-GLT |
| ) | |
| Debtor.        ) | Chapter 7 |
| ) | |
| ————————————————————— ) | |
| CHRISTINE BIROS,        ) | |
| ) | |
| Movant,      ) | |
| ) | |
| v.           ) | |
| ) | |
| SHANNI SNYDER,        ) | |
| ) | |
| Respondent.    ) | |

**EXHIBIT A – PHOTOS OF TRAILERS**





**FILED**

**U.S. Bankruptcy Court**
**WESTERN DISTRICT OF**
**PENNSYLVANIA**

8/25/2022

**Michael R. Rhodes, Clerk**

| Fill in this information to identify the case: |
|---|

| Debtor 1 | U LOCK INC |
|---|---|
| Debtor 2 | |
| (Spouse, if filing) | |
| United States Bankruptcy Court | **WESTERN DISTRICT OF** |
| **PENNSYLVANIA** | |
| Case number: | **22−20823** |

## Official Form 410
## Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Christine Biros

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Christine Biros | |
| Name | Name |
| c/o Bernstein−Burkley, P.C. 601 Grant Street, 9th Floor Pittsburgh, PA 15219 | |
| Contact phone | Contact phone |
| Contact email | Contact email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____  Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

Official Form 410                    Proof of Claim                    page 1

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7. How much is the claim?**

$ 20642.53

**Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Outstanding Taxes – Arising from Court Order

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____

**Amount of the claim that is secured:** $ _____

**Amount of the claim that is unsecured:** $ _____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

---

Official Form 410                     Proof of Claim                     page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply*: | | Amount entitled to priority |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies   $ _____

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   _8/25/2022_____
                    MM / DD / YYYY

/s/   _/s/ Sarah E. Wenrich_____
Signature

Print the name of the person who is completing and signing this claim:

Name      /s/ Sarah E. Wenrich
          First name    Middle name    Last name

Title     Attorney

Company   Bernstein–Burkley, P.C.
          Identify the corporate servicer as the company if the authorized agent is a servicer

Address   601 Grant Street, 9th Floor
          Number   Street
          Pittsburgh, PA 15219
          City   State   ZIP Code

Contact phone   412–456–8163        Email   swenrich@bernsteinlaw.com

Official Form 410                  Proof of Claim                         page 3

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>U LOCK INC,<br><br>     Debtor. | Case No. 22-20823<br><br>Chapter 7 |

### ADDENDUM TO PROOF OF CLAIM

As has already been determined by the Allegheny County Court of Common Pleas, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court, Christine Biros ("Biros") is the lawful owner of the real property located at 14140 U.S. Route 30, North Huntingdon, Pennsylvania (the "Property"). Biros purchased the Property in 2015 and the Debtor has operated on the Property since that time.

On March 16, 2022, the Pennsylvania Supreme Court entered an Order requiring the Debtor to pay outstanding property taxes related to the Property. A copy of that order, and the real estate tax lien certificate showing outstanding taxes on the Property, is attached to this Proof of Claim.

Biros reserves all to amend, modify, supplement, or withdraw her claim.

**IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT**

| | | |
|---|---|---|
| CHRISTINE BIROS, AN INDIVIDUAL, | : | No. 259 WAL 2021 |
| | : | |
| Respondent | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| U LOCK INC., A PENNSYLVANIA | : | |
| CORPORATION, | : | |
| | : | |
| Petitioner | : | |

**ORDER**

**PER CURIAM**

    **AND NOW**, this 16th day of March, 2022, the Application to Stay Remand of Record

Pending United States Supreme Court Review is **GRANTED**.  Additionally, in accordance

with Pa.R.A.P. 2572(d), Petitioner is hereby instructed to pay all accrued and unpaid real

estate taxes and to keep such taxes current during the pendency of its occupancy of the

Property.

A True Copy Nicole Traini
As Of 03/16/2022

Attest: *Nicole Traini*
Chief Clerk
Supreme Court of Pennsylvania

Denyel D. O'Brien
Director


**Westmoreland County**
Pennsylvania

Linda Kuchar
Deputy Director

Tim Andrews
Solicitor

Tax Claim Bureau
40 N. Pennsylvania Ave. Suite 109
Greensburg, PA 15601

Phone
724-830-3428

Office Hours
Monday Through Friday
8:30 AM to 4:00 PM

DATE:   7/19/2022                                                                                          PAGE    1

TIME:   9:24:35          **REAL ESTATE TAX LIEN CERTIFICATE**

```
┌────────────────────────────────────────────────────────────────────────────────┐
│  THIS DOCUMENT CERTIFIES THAT THE TAXES/COSTS DUE ON THE PROPERTY DESCRIBED BELOW,│
│  AS SHOWN BY THE RECORDS PROCESSED IN OUR OFFICE AS OF  7/19/22 ARE AS FOLLOWS.   │
└────────────────────────────────────────────────────────────────────────────────┘
```

******** DIST/CTL  54   9485 ********

BIROS CHRISTINE                              MAP NO    54 03 10 0 103
                                             SITUS     14140 RT 30 E

                                             PROPERTY BLDGS PCL 2
                                             DESC    21.0976 AC
                                                     SHANE PLAN
            N HUNTINGDON TWP                                          CERT MAIL-R/C 93850165
65650    NORWIN                              BOOK/PAGE0220   3085     CERT MAIL-SALE 94372326
                                             LAND USE C
STATUS  C                                    ACREAGE      21.097
                                             VALUE        46,410  VALUE C&G      46,410

| DATE | CODE | DESCRIPTION | RECEIPT NO | TAX | PENALTY | INTEREST | CHARGES | PAYMENTS | BALANCE DUE | INT ADDED EACH MO |
|------|------|-------------|------------|-----|---------|----------|---------|----------|-------------|-------------------|
| 1/30/18 | 200 | COU-N HUNTINGDON TWP | | 974.15 | 97.42 | 116.96 | 1188.53 | | | .00 |
| 1/30/18 | 300 | CBT-N HUNTINGDON TWP | | 539.28 | 53.93 | 64.64 | 657.85 | | | .00 |
| 1/30/18 | 400 | SCH-NORWIN | | 3601.42 | 360.14 | 432.16 | 4393.72 | | | .00 |
| | | | | | 2017 TAX TOTAL | | 6240.10 | | | |
| 1/30/18 | 201 | COU-FILING FEE | | | | | 45.00 | | | |
| 2/05/18 | 205 | REMINDER COST | | | | | .80 | | | |
| 4/03/18 | 202 | POSTAGE RET & CLAIM | | | | | 5.45 | | | |
| 4/03/18 | 242 | ARCHIVE FEE | | | | | 4.00 | | | |
| 10/04/18 | 205 | REMINDER COST | | | | | .80 | | | |
| 5/07/19 | 203 | RECORD REVIEW FEE | | | | | 10.00 | | | |
| 5/07/19 | 206 | SALE PREPARATION | | | | | 25.00 | | | |
| 5/07/19 | 207 | POSTAGE SALE NOTICE | | | | | 12.00 | | | |
| | | | | | 2017 FEE TOTAL | | 103.05 | | | |
| 5/28/19 | | PAYMENT RECEIVED: | 804461 | | | | | 6343.15- | | |
| | | | | | 2017 PAYMENT TOTAL | | | 6343.15- | | |
| | | | | 2017 YEAR TOTALS & BALANCE | | 6343.15 | | 6343.15- | .00 | |
| 1/22/19 | 200 | COU-N HUNTINGDON TWP | | 974.15 | 97.42 | 29.24 | 1100.81 | | | .00 |
| 1/22/19 | 300 | CBT-N HUNTINGDON TWP | | 539.28 | 53.93 | 16.16 | 609.37 | | | .00 |
| 1/22/19 | 400 | SCH-NORWIN | | 3712.80 | 371.28 | 387.88 | 4471.96 | | | .00 |
| | | | | | 2018 TAX TOTAL | | 6182.14 | | | |
| 1/22/19 | 201 | COU-FILING FEE | | | | | 45.00 | | | |
| 2/28/19 | 205 | REMINDER COST | | | | | .85 | | | |
| 4/02/19 | 242 | ARCHIVE FEE | | | | | 4.00 | | | |
| 4/02/19 | 202 | POSTAGE RET & CLAIM | | | | | 5.65 | | | |
| 11/01/19 | 205 | REMINDER COST | | | | | .80 | | | |
| 6/05/20 | 203 | RECORD REVIEW FEE | | | | | 10.00 | | | |
| 6/05/20 | 206 | SALE PREPARATION | | | | | 25.00 | | | |
| 6/05/20 | 207 | POSTAGE SALE NOTICE | | | | | 12.00 | | | |
| 7/08/20 | 209 | POSTING UPSET SALE | | | | | 65.00 | | | |
| 7/08/20 | 210 | ADVERTISING | | | | | 10.00 | | | |
| 8/14/20 | 220 | PROOF OF MAIL FEE | | | | | 2.00 | | | |
| | | | | | 2018 FEE TOTAL | | 180.30 | | | |
| 5/28/19 | | PAYMENT RECEIVED: | 804461 | | | | | 3656.85- | | |
| 9/09/20 | | PAYMENT RECEIVED: | 840566 | | | | | 2705.59- | | |
| | | | | | 2018 PAYMENT TOTAL | | | 6362.44- | | |

***** DIST/CTL  54   9485 *****                TAX LIEN CERTIFICATE CONTINUED                               PAGE    2

| DATE | CODE | DESCRIPTION | RECEIPT NO | TAX | PENALTY | INTEREST | CHARGES | PAYMENTS | BALANCE DUE | INT ADDED EACH MO |
|------|------|-------------|------------|-----|---------|----------|---------|----------|-------------|-------------------|
| | | 2018 YEAR TOTALS & BALANCE | | | | | 6362.44 | 6362.44- | .00 | |
| 1/22/20 | 200 | COU-N HUNTINGDON TWP | 974.15 | | 97.42 | 219.30 | 1290.87 | | | 7.31 |
| 1/22/20 | 300 | CBT-N HUNTINGDON TWP | 539.28 | | 53.93 | 121.20 | 714.41 | | | 4.04 |
| 1/22/20 | 400 | SCH-NORWIN | 3824.18 | | 382.42 | 860.40 | 5067.00 | | | 28.68 |
| | | 2019 TAX TOTAL | | | | | 7072.28 | | | |
| 1/22/20 | 201 | COU-FILING FEE | | | | | 45.00 | | | |
| 2/04/20 | 205 | REMINDER COST | | | | | .80 | | | |
| 5/14/20 | 242 | ARCHIVE FEE | | | | | 4.00 | | | |
| 5/14/20 | 202 | POSTAGE RET & CLAIM | | | | | 5.80 | | | |
| 5/17/21 | 203 | RECORD REVIEW FEE | | | | | 10.00 | | | |
| 5/17/21 | 206 | SALE PREPARATION | | | | | 25.00 | | | |
| 5/17/21 | 207 | POSTAGE SALE NOTICE | | | | | 12.00 | | | |
| 7/01/21 | 209 | POSTING UPSET SALE | | | | | 65.00 | | | |
| 7/01/21 | 210 | ADVERTISING | | | | | 10.00 | | | |
| 8/17/21 | 220 | PROOF OF MAIL FEE | | | | | 2.00 | | | |
| | | 2019 FEE TOTAL | | | | | 179.60 | | | |
| | | 2019 YEAR TOTALS & BALANCE | | | | | 7251.88 | .00 | 7251.88 | 40.03 |
| | | ESTIMATED BALANCE DUE NEXT MONTH | | | | | | | 7291.91 | |
| 1/26/21 | 200 | COU-N HUNTINGDON TWP | 997.35 | | 99.74 | 134.64 | 1231.73 | | | 7.48 |
| 1/26/21 | 300 | CBT-N HUNTINGDON TWP | 542.53 | | 54.25 | 73.26 | 670.04 | | | 4.07 |
| 1/26/21 | 400 | SCH-NORWIN | 3935.57 | | 393.56 | 531.36 | 4860.49 | | | 29.52 |
| | | 2020 TAX TOTAL | | | | | 6762.26 | | | |
| 1/26/21 | 201 | COU-FILING FEE | | | | | 45.00 | | | |
| 2/09/21 | 205 | REMINDER COST | | | | | .80 | | | |
| 4/13/21 | 242 | ARCHIVE FEE | | | | | 4.00 | | | |
| 4/14/21 | 202 | POSTAGE RET & CLAIM | | | | | 5.90 | | | |
| 5/17/22 | 203 | RECORD REVIEW FEE | | | | | 10.00 | | | |
| 5/17/22 | 206 | SALE PREPARATION | | | | | 25.00 | | | |
| 5/17/22 | 207 | POSTAGE SALE NOTICE | | | | | 13.00 | | | |
| 7/01/22 | 209 | POSTING UPSET SALE | | | | | 65.00 | | | |
| 7/01/22 | 210 | ADVERTISING | | | | | 12.00 | | | |
| | | 2020 FEE TOTAL | | | | | 180.70 | | | |
| | | 2020 YEAR TOTALS & BALANCE | | | | | 6942.96 | .00 | 6942.96 | 41.07 |
| | | ESTIMATED BALANCE DUE NEXT MONTH | | | | | | | 6984.03 | |
| 1/19/22 | 200 | COU-N HUNTINGDON TWP | 997.35 | | 99.74 | 44.88 | 1141.97 | | | 7.48 |
| 1/19/22 | 300 | CBT-N HUNTINGDON TWP | 542.53 | | 54.25 | 24.42 | 621.20 | | | 4.07 |
| 1/19/22 | 400 | SCH-NORWIN | 3935.57 | | 393.56 | 177.12 | 4506.25 | | | 29.52 |
| | | 2021 TAX TOTAL | | | | | 6269.42 | | | |
| 1/19/22 | 201 | COU-FILING FEE | | | | | 45.00 | | | |
| 2/10/22 | 205 | REMINDER COST | | | | | .85 | | | |
| 4/04/22 | 242 | ARCHIVE FEE | | | | | 4.00 | | | |
| 4/04/22 | 202 | POSTAGE RET & CLAIM | | | | | 6.25 | | | |
| | | 2021 FEE TOTAL | | | | | 56.10 | | | |
| | | 2021 YEAR TOTALS & BALANCE | | | | | 6325.52 | .00 | 6325.52 | 41.07 |
| | | ESTIMATED BALANCE DUE NEXT MONTH | | | | | | | 6366.59 | |
| | | CLAIM TOTALS | | | | | 33225.95 | 12705.59- | 20520.36 | 122.17 |
| | | ESTIMATED TOTAL DUE NEXT MONTH | | | | | | | 20642.53 | |

MISC RECEIPTS - - - - - - - - - - - - - - - -

| 4/23/19 | 960 | LIEN CERTIFICATE | 801274 | | | | | | 15.00 | |
| 5/20/19 | 960 | LIEN CERTIFICATE | 803746 | | | | | | 15.00 | |
| 6/12/19 | 960 | LIEN CERTIFICATE | 806067 | | | | | | 15.00 | |
| 2/10/22 | 960 | LIEN CERTIFICATE | 877079 | | | | | | 15.00 | |
| 4/18/22 | 960 | LIEN CERTIFICATE | 883783 | | | | | | 15.00 | |
| 4/22/22 | 960 | LIEN CERTIFICATE | 884304 | | | | | | 15.00 | |
| 5/17/22 | 960 | LIEN CERTIFICATE | 886316 | | | | | | 15.00 | |

***** DIST/CTL  54   9485 *****          TAX LIEN CERTIFICATE CONTINUED                    PAGE     3

| DATE | CODE | DESCRIPTION | RECEIPT NO | TAX | PENALTY | INTEREST | CHARGES | PAYMENTS | BALANCE DUE | INT ADDED EACH MO |
|------|------|-------------|------------|-----|---------|----------|---------|----------|-------------|-------------------|
| 5/20/22 | 960 | LIEN CERTIFICATE | 886573 | | | | | | 15.00 | |

CREDIT CARD TRANSACTIONS - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ---- - - - - - - -

.

**Page 125**

FILED

**U.S. Bankruptcy Court**
**WESTERN DISTRICT OF**
**PENNSYLVANIA**

8/25/2022

**Michael R. Rhodes, Clerk**

| Fill in this information to identify the case: |
| --- |

Debtor 1   U LOCK INC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **WESTERN DISTRICT OF**
**PENNSYLVANIA**

Case number:  **22–20823**

## Official Form 410
## Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Christine Biros

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Christine Biros

Name

c/o Bernstein–Burkley, P.C.
601 Grant Street, 9th Floor
Pittsburgh, PA 15219

Contact phone
Contact email

Where should payments to the creditor be sent? (if different)

Name

Contact phone
Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known)

Filed on
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

Official Form 410                                Proof of Claim                                page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

7. **How much is the claim?**  $    405000.00

**Does this amount include interest or other charges?**
☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Reasonable rent for possession of property from July '15 – April '22

9. **Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____

**Amount of the claim that is secured:** $ _____

**Amount of the claim that is unsecured:** $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

11. **Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

Official Form 410                                         Proof of Claim                                         page 2

| 12. | **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
| | | ☐ Yes. *Check all that apply:* | Amount entitled to priority |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies   $ _____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   8/25/2022

MM / DD / YYYY

/s/  /s/ Sarah E. Wenrich

Signature

Print the name of the person who is completing and signing this claim:

| Name | /s/ Sarah E. Wenrich |
| | First name      Middle name      Last name |
| Title | Attorney |
| Company | Bernstein–Burkley, P.C. |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 601 Grant Street, 9th Floor |
| | Number   Street |
| | Pittsburgh, PA 15219 |
| | City   State   ZIP Code |
| Contact phone | 412–456–8163      Email   swenrich@bernsteinlaw.com |

Official Form 410                               Proof of Claim                               page 3

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| In re: | Case No. 22-20823 |
|---|---|
| U LOCK INC, | Chapter 7 |
| Debtor. | |

### ADDENDUM TO PROOF OF CLAIM

As has already been determined by the Allegheny County Court of Common Pleas, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court, Christine Biros ("Biros") is the lawful owner of the real property located at 14140 U.S. Route 30, North Huntingdon, Pennsylvania (the "Property"). Biros purchased the Property in 2015 and the Debtor has operated on the Property since that time. During that time, the Debtor never paid any rent or otherwise compensated Biros for the Debtor's use and possession of the Property.

The Debtor's continued unlawful possession of the property has prevented Biros from operating the Property for her benefit and/or developing the property into a different use. As a result, Biros holds a claim for the reasonable amount of rent during the prepetition time period spanning nearly seven years. Based upon the Debtor's allegation that the Property is worth at least $1,900,000, a reasonable monthly payment for the use of the Property is likely upwards of $10,000 per month. However, Biros has used an estimated monthly "rent" of $5,000 in order to calculate the amount of her related claim for the Debtor's possession of the Property for six years and nine months[1] prepetition, totaling $405,000.00.

Biros reserves her right to update this claim in any manner, including increasing the amount of the claim to more accurately reflect the reasonable rent for the time period in question and increasing the amount of the claim to reflect damage caused by the Debtor to the Property while it was in possession of the Property.

---

[1] The 81 months span from July 2015, when Biros first purchased the Property, to April 2022, when the involuntary bankruptcy was filed against the Debtor.

FILED

**U.S. Bankruptcy Court**
**WESTERN DISTRICT OF**
**PENNSYLVANIA**

8/26/2022

**Michael R. Rhodes, Clerk**

| Fill in this information to identify the case: |
| --- |
| Debtor 1    U LOCK INC |
| Debtor 2 |
| (Spouse, if filing) |
| United States Bankruptcy Court    **WESTERN DISTRICT OF** **PENNSYLVANIA** |
| Case number:  **22–20823** |

## Official Form 410
## Proof of Claim

04/22

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

### Part 1:  Identify the Claim

| | |
| --- | --- |
| 1. **Who is the current creditor?** | Christine Biros |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |
| 2. **Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes. From whom? |

| 3. **Where should notices and payments to the creditor be sent?** | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| --- | --- | --- |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Christine Biros | |
| | Name | Name |
| | c/o Bernstein–Burkley, P.C. <br> 601 Grant Street, 9th Floor <br> Pittsburgh, PA 15219 | |
| | Contact phone | Contact phone |
| | Contact email | Contact email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |

| 4. **Does this claim amend one already filed?** | ☑ No <br> ☐ Yes. Claim number on court claims registry (if known) ____  Filed on ____ MM / DD / YYYY |
| --- | --- |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes. Who made the earlier filing? |

Official Form 410

Proof of Claim

page 1

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6.** **Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7.** **How much is the claim?**

$ 0.00 _____

**Does this amount include interest or other charges?**
☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Cost of Environmental Remediation / Damage caused by Debtor

**9.** **Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe:
_____

**Basis for perfection:**
_____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**          $ _____

**Amount of the claim that is secured:**          $ _____

**Amount of the claim that is unsecured:**          $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**          $ _____

**Annual Interest Rate** (when case was filed)          _____ %

☐ Fixed
☐ Variable

**10.** **Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11.** **Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

Official Form 410          Proof of Claim          page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
| | | ☐ Yes. *Check all that apply:* | | Amount entitled to priority |

| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ _____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  ___8/26/2022___

MM / DD / YYYY

/s/  Sarah E. Wenrich

Signature

Print the name of the person who is completing and signing this claim:

Name  ___Sarah E. Wenrich___

First name    Middle name    Last name

Title  ___Attorney___

Company  ___Bernstein–Burkley, P.C.___

Identify the corporate servicer as the company if the authorized agent is a servicer

Address  ___601 Grant Street, 9th Floor___

Number   Street
___Pittsburgh, PA 15219___

City   State   ZIP Code

Contact phone  ___412–456–8163___      Email  ___swenrich@bernsteinlaw.com___

Official Form 410                                 Proof of Claim                                        page 3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 22-20823 |
| U LOCK INC, | Chapter 7 |
| Debtor. | |

### ADDENDUM TO PROOF OF CLAIM

As has already been determined by the Allegheny County Court of Common Pleas, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court, Christine Biros ("Biros") is the lawful owner of the real property located at 14140 U.S. Route 30, North Huntingdon, Pennsylvania (the "Property"). Biros purchased the Property in 2015 and the Debtor has operated on the Property since that time.

During the time period that the Debtor was in possession of Biros' Property, the Debtor has failed to properly maintain the Property. The Debtor's failure to properly maintain the Property has resulted in various notices of violations issued by North Huntington Township. The first notices were issued directly to the Debtor and the most recent notices were issues to Biros following the Debtor's failure to remedy the township's concerns. Despite allegations that the Property had environmental issues since the time the Property was purchased by Biros, the first notice of violation was not issued until 2019 – after the Debtor had been operating on the Property for four years.

In addition to the Debtor's failure to maintain the property and to keep the Property free from the accumulation of garbage and debris set forth in the North Huntington Township notices, testing of soil on the Property has indicated the presence of polychlorinated biphenyls ("PCBs") in some of the soil. Biros has reason to believe that the presence of the PCBs on the soil was caused by the Debtor. PCBs are toxic and require costly remediation for removal, due in part to the required oversight of regulatory bodies.

As a result of the Debtor's possession of the Property and certain action (or inaction) taken by the Debtor while in possession of the Property, the Property requires costly remediation to (i)

comply with the relevant provisions of the North Huntington Township notices, and (ii) safely remove the PCBs from the soil. The Debtor has begun the clean-up process related to the North Huntington Township notices with the Trustee's consent. The total cost of the Property's remediation is unknown at this time.

Attached to this proof of claim are the notices from the North Huntington Township, reports related to the expected environmental remediation required on the Property (prior to the knowledge of the presence of PCBs on the Property), and a report identifying the PCBs on the Property's soil.

Biros reserves all to amend, modify, supplement, or withdraw her claim.

**Page 134**

FILED

**U.S. Bankruptcy Court**
**WESTERN DISTRICT OF**
**PENNSYLVANIA**

8/26/2022

**Michael R. Rhodes, Clerk**

| Fill in this information to identify the case: |
|---|
| Debtor 1   U LOCK INC |
| Debtor 2 |
| (Spouse, if filing) |
| United States Bankruptcy Court   **WESTERN DISTRICT OF PENNSYLVANIA** |
| Case number:  **22–20823** |

## Official Form 410
## Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

### Part 1:   Identify the Claim

**1. Who is the current creditor?**

George Snyder

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| George Snyder | |
| Name | Name |
| Box 15 Irwin, PA 15642 | |
| Contact phone _____ | Contact phone _____ |
| Contact email snyder4judge@yahoo.com | Contact email _____ |
| Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7. How much is the claim?**

$ ___99000.00___

**Does this amount include interest or other charges?**
☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

_____wage, fair labor standards._____

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____

**Amount of the claim that is secured:** $ _____

**Amount of the claim that is unsecured:** $ _____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

Official Form 410                        Proof of Claim                        page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No ☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). $ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). $ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies $ _____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:** **Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    8/26/2022

MM / DD / YYYY

/s/ George Snyder

Signature

Print the name of the person who is completing and signing this claim:

Name    George Snyder

First name    Middle name    Last name

Title

Company

Identify the corporate servicer as the company if the authorized agent is a servicer

Address    Box 15

Number Street

Iriwn, PA 15642

City State ZIP Code

Contact phone _____ Email    snyder4judge@yahoo.com

---

Official Form 410      Proof of Claim      page 3

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>U LOCK INC.,<br><br>    Debtor.<br><br>_____<br><br>CHRISTINE BIROS,<br><br>   Movant,<br><br>v.<br><br>ROBERT SLONE, Chapter 7 Trustee for the Estate of U Lock, Inc.,<br><br>   Respondent. | Bankruptcy No. 22-20823-GLT<br><br>Chapter 7 |

**CHRISTINE BIROS' MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b)(1)**

CHRISTINE BIROS ("Biros" or "Movant"), by and through Bernstein-Burkley, P.C., its attorneys, files this *Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. §503(b)(1)* (this "Motion"), and in support of this Motion states as follows:

**Jurisdiction and Venue**

1.      The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. These matters are core proceedings pursuant to 28 U.S.C. § 157.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      Sections 105 and 503(b) of title 11, United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, "Bankruptcy Code"), serve as the bases for the relief requested in this Motion.

## PROCEDURAL BACKGROUND

4.     U Lock Inc. ("Debtor" or "U Lock")'s case was commenced by the filing of an involuntary petition for relief under Chapter 7 of Title 11 of the United States Code on April 27, 2022 (the "Petition Date").

5.     The Debtor did not file a response to the involuntary petition.

6.     On June 17, 2022, the Court entered an Order for Relief.

7.     Robert H. Slone (the "Trustee") is the duly appointed Chapter 7 Trustee for the Debtor and is so acting.

8.     Prior to the filing, the Debtor has been in possession of non-residential real property owned by Movant located at 14140 Route 30, North Huntington, Westmoreland County, PA with County Tax Map Number of 54-03019-0-103 (the "Property").

9.     The Debtor (and the Trustee) continue to remain in possession of the Property.

10.    On November 17, 2022 the Trustee filed his Amended Motion for Sale of Tangible and Intangible Personal Property of the Estate under 11 U.S.C. Section 363(f) Free and Clear of Liens, Claims and Encumbrances (the "Amended Sale Motion") [Doc. 217] seeking a sale to Biros subject to the conditions contained therein.

11.    Biros and Shanni Snyder submitted qualified bids pursuant to the Amended Sale Motion.

12.    On December 2, 2022, this Honorable Court continued the sale hearing for the reasons stated on the record [Doc. No. 232].

13.    An evidentiary hearing on the Amended Sale Motion is scheduled for December 15, 2022 at 10:00 a.m.

## FACTUAL BACKGROUND

14.     Movant advanced the funds for Debtor to purchase the Property from the prior owners for the aggregate price of $325,316.00 on or around July 16, 2015.

15.     On or around July 16, 2015, the Debtor began to operate its business as a storage facility on the Property. However, the Debtor was not a properly formed entity at this time and the Debtor's initial formation actually occurred in September 2015.

16.     The Estate has been in continuous possession of the Property since the Possession Date of April 27, 2022 [*See,* Revised Sale Motion, Doc. 175]

## RELIEF REQUESTED

17.     Biros has not received post-petition payments for the Debtor's occupancy and use of the Property.

18.     Since the commencement of the case, the Debtor and the Trustee have possessed the Property without providing any payment of rent or other consideration to Biros for the Debtor's possession of the Property.

19.     The post-petition use and occupancy of Movant's Property was necessary and beneficial to the bankruptcy estate, as they were necessary for the Debtor's daily operations as the Trustee continued to collect rents, and store property for others, as well as store other property of the Estate.

*20.*     The Debtor and Biros do not have an actual lease.  However, Biros believes and avers that the appropriate monthly rent due is $18,000.00 per month as discussed *infra.*

21.     The Property is a commercial property investment.  An ROI (Return On Investment) is a metric that is used in commercial property investment, to measure how much profit or money is made on commercial property investment, as a percentage of its cost.

22.     In accounting terms, ROI commercial real estate indicates the percentage of invested capital, which is recouped after deducting all the associated expenses like repairs and renovations, rehabilitation costs, purchasing costs, and so on.

23.     The return on a commercial real estate investment can be considered as 10% and above. *See*, https://www.Privatecapitalinvestors.com/what-is-a-good-roi-for-commerical-real-estate-investors-2/

24.     This is based on looking at investments that match or exceed the S&P 500.  The historical average estimate of the S&P 500 is 10%.  Thus, a considerably good ROI on investments can be considered as 10% and above return cases.  *See*, https://www.Privatecapitalinvestors.com/what-is-a-good-roi-for-commerical-real-estate-investors-2/

25.     The updated average for the S&P as of August 2022 since inception is 11.82%. *See,* https://www.investopedia.com/ask/answers/042415/what-average-annual-return-sp-500.asp;   *See   also*, https://www.en.wikipedia.org/wiki/S%26P_500.

26.     Debtor has valued the Property at $1.9 million dollars. *See*, Schedule A/B [Doc. No. 60].

27.     Accordingly, an annual return of 10% would result in a monthly return of $15,833.

28.     At the current rate of 11.82%, the ROI would be $18,715.00.

29.     The Debtor and the Trustee have been using the Property since the Petition Date.  As of mid-December, eight months of post-petition amounts remain due and owing for the Property.

30.     At $18,000 per month, the total amount due to Biros is $144,000.00 for the use and occupancy of the Property.

31.     Accordingly, pursuant to Section 503(b)(1), Biros is entitled to an administrative expense claim in the amount of $144,000.00 for the occupancy and use of the Property after the commencement of this case.

32.     Section 503(b)(1) of the Bankruptcy Code provides that an entity can request payment of an administrative expense claim for the "actual, necessary costs and expenses of preserving the estate. . . ." 11 U.S.C. § 503(b)(1)(A).

33.     To be entitled to an administrative claim under Section 503(b)(1)(A), the claimant must show that "(1) there was a post-petition transaction between the claimant and the estate and (2) those expenses yielded a benefit to the estate." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021) (internal quotations and citations omitted).

34.     Bankruptcy courts have broad discretion to determine whether a claim is a proper administrative expense. *Upper Peninsula Power Co. v. Verso Corp. (In re Verso Corp.)*, 2019 U.S. Dist. LEXIS 125420, at *6 n.3 (D. Del. July 29, 2019)(citations omitted).

35.     "Actual and necessary costs under [s]ection 503 include costs ordinarily incident to operation of a business, and need not be limited to costs without which rehabilitation would be impossible." *In re Cohen & Sons Caterers, Inc.,* 143 B.R. 27 (E.D.Pa. 1992).

36.     Occupancy by trustee of premises from which debtor was operating gives rise to administrative liability under 11 USCS § 503 only to extent and for period that trustee actually uses and occupies premises and reasonable value of such use and occupancy is ordinarily, but not necessarily, determined by allocation of rent reserved in lease on pro rata basis. *In re Cardinal Export Corp.*, 30 B.R. 682 (Bankr. E.D.N.Y. 1983).

37.     Courts have found held that if: (1) a claim arises from transaction with Chapter 11 debtor because debtor still occupied leased premises subsequent to filing of petition; and (2) debtor's occupation of premises was beneficial to debtor in operation of business because portion of business was conducted on premises, the claim of beneficiary of lease is entitled to administrative rent priority under 11 USCS § 503. *See In re Xonics, Inc.*, 65 B.R. 69, 1986 Bankr. LEXIS 5544 (Bankr. N.D. Ill. 1986).

38.     Where premises are used and occupied by debtor and the use of premises benefitted estate in that debtor sold its merchandise from premises and derived revenues therefrom, courts have also found that such use and occupancy entitles a landlord o administrative expenses pursuant to 11 U.S.C. § 503(b) for postpetition arrears in rent. *See In re Jeans.com*, 491 B.R. 16, 2013 Bankr. LEXIS 1548 (Bankr. D.P.R. 2013).

39.     Here, there is no dispute that Debtor and Trustee have used and occupied the Property since the Petition Date.  Likewise, there is no dispute that the use of the Property benefitted the Estate in that Debtor's sole business operations stem from the Property.

40.     As set forth above, the Trustee has failed to make any post-petition payments for the usage and occupancy of the Property.

41.     The reasonable value of the use of the Property is approximately $18,000.00 per month.

42.     Pursuant to section 501(b)(1)(A) of the Bankruptcy Code, Biros is entitled to an administrative expense in the amount of $144,00.00 for the use and occupancy of the Property for the eight months since the Petition Date, and continuing until the Trustee is no longer in possession of the Property.

43.     Biros reserves all of her rights with respect to her 503(b)(1) Claim, including, without limitation: (i) her right to be paid in the ordinary course of business as post-petition creditor; (ii) her right to assert "cure" payments in connection with the Debtor's assumption of an executory contract between Biros and Debtor, if any, pursuant to 11 U.S.C. §365; (iii) her right to seek payment of prepetition invoices from any non-debtor parties, if any, that are co-obligors; and (iv) her right to assert any other rights under applicable law.

44.     Biros reserves the right to amend or supplement this request for any purpose.

WHEREFORE, Christine Biros submits this request for allowance and payment of her administrative expense claim pursuant to 11 U.S.C. §503(b)(1) and such other and further relief this court

deems just and proper.

Dated: December 22, 2022           BERNSTEIN-BURKLEY, P.C.

By: */s/ Robert S. Bernstein*
        Robert S. Bernstein (PA ID No. 34308)
        Lara S. Martin (PA ID No. 307272)
        601 Grant Street, Floor 9
        Pittsburgh, PA 15219
        Telephone: (412) 456-8108
        Facsimile: (412) 456-8135
        rbernstein@bernsteinlaw.com
        lmartin@bernsteinlaw.com

        Counsel for Christine Biros

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **BANKRUPTCY NO. 22-20823-GLT** |
| U LOCK INC. | ) | |
| | ) | **CHAPTER 7** |
| DEBTOR | ) | |
| ************************************* ) | | **RE: DOCUMENT NO. 258** |
| CHRISTINE BIROS | ) | |
| | ) | |
| MOVANT | ) | **Hearing Date: 1/20/23 @ 10:30 AM** |
| | ) | **Courtroom A—Pittsburgh** |
| vs. | ) | |
| | ) | |
| ROBERT H. SLONE, Chapter 7 Trustee | ) | |
| For the Estate of U Lock, Inc. | ) | |

## TRUSTEE'S RESPONSE TO CHRISTINE BIROS' MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. §503(b)(1)

AND NOW, comes Robert H. Slone, Trustee, by and through his counsel, Mahady & Mahady—Robert H. Slone, Esquire, and files this Response to Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. §503(b)(1), stating as follows:

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. The allegations of Paragraph 9 are admitted in part and denied in part in that partial relief from the automatic stay was granted to Movant, Christine Biros ("Biros").

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. The allegation of Paragraph 14 is unknown to Respondent and strict proof thereof is demanded.

15. The allegation of Paragraph 15 is unknown to Respondent and strict proof thereof is demanded.

16. The allegation of Paragraph 16 admitted other than that partial relief from the automatic stay was granted to Biros.

17. Admitted.

18. As to paragraph 18, it is admitted that Biros. has not received any payment.

19. As to paragraph 19, the Trustee received minimal rent after the date of the bankruptcy.

20. As to paragraph 20, it is denied that the rent due is $18,000.00 and strict proof thereof is demanded. It is further responded that the Trustee was never provided with any lease between Debtor and Biros.

21. As to paragraph 21, Biros made an updated offer for purchase of the estate assets of U Lock, Inc. by letter dated September 22, 2022, wherein Biros conservatively estimated that the administrative claim for the rent for the use and occupancy of the real property since April 27, 2022 is $5,000.00 per month. A copy of Biros' letter dated September 22, 2022 is attached hereto and made a part hereof as Exhibit "A".

22. As to paragraph 22, at the sale hearing held December 15, 2022, Biros as a bidder asked for a credit for the administrative rent. The Court granted the sum of $10,000.00 as an administrative rent claim., which is approximately $1,500.00 per month.

23. The amount of gross revenue as per the Debtor's bankruptcy schedules filed in this case for the year of 2021 was $13,200.00 and $12,000.00 for the year 2020. It is further submitted that a review of the bank statements from Citizens Bank for the period January 1, 2022 through June 30, 2022 showed deposits and credits totaling $2,610.00.

**WHEREFORE,** it is prayed that an administrative claim for rent of $18,000.00 per month for Movant, Christine Biros, be denied and that an administrative claim for rent for Christine Biros in a lesser amount be set by the Court.

Respectfully submitted,

Dated: January 6, 2023

/s/ ROBERT H. SLONE
Robert H. Slone, Esquire
Mahady & Mahady
223 South Maple Avenue
Greensburg, PA    15601
Ph #(724) 834-2990
PA I.D. No. 19963
E-mail: robertslone223@gmail.com



**BERNSTEIN · BURKLEY**
—— ATTORNEYS AT LAW ——

*A business approach to legal service* ℠

Sarah E. Wenrich

swenrich@bernsteinlaw.com | (412) 456-8206

September 22, 2022

Robert Slone
Mahady & Mahady
223 South Maple Avenue
Greensburg, PA 15601

<u>**RE: Updated Offer for Purchase of Estate Assets of U Lock Inc.**</u>

Dear Mr. Slone:

As you are aware, this firm represents Christine Biros, the owner of the site currently occupied by U Lock, Inc. (the "<u>Debtor</u>") and located at 14140 Route 30, North Huntingdon, PA (the "<u>Real Property</u>"). By correspondence dated September 9, 2022, Christine Biros' counsel, William E. Otto, Esq., conveyed an offer from Christine Biros to purchase all tangible and intangible property of the property of the Debtor's estate. This offer is hereby updated by the terms set forth below (the "<u>Offer</u>"). The four thousand dollar ($4,000) deposit which you have already received from my client should continued to be held as hand money for the offer as set forth below.

As you are aware, there was an apparent release of contaminants on the soil of the Real Property on or about May 22, 2022 while the Debtor was in possession of the Real Property. We believe this creates an obligation for the Estate to clean up the spill. We have been advised by our engineer that the costs could be in excess of $200,000. Our offer includes relieving the Estate of that liability.

Ms. Biros also continues to assert that the Estate has no right of possession in the premises. You and Ms. Biros have an understanding that you may continue to use the property during these proceedings, without any agreement to permit possession in the future. Nevertheless, Ms. Biros is willing to offer to buy any rights which the Estate has in the premises.

Christine Biros hereby submits the following offer to purchase all assets of U Lock, Inc., free and clear of any liens or encumbrances. This offers includes, but is not limited to the following property of the estate:

<u>**Tangible Personal Property:**</u>

    (a) All of the personal property set forth in Official Form 206Sum, Schedule 206A/B, submitted by the Debtor on July 5, 2022 at Doc. No. 59;

    (b) The eight land/sea containers located on the Real Property at the time of the sale of the Real Property by the Schur Estates and located in the northeast corner of the Real Property, adjacent to Lincoln Highway, as shown in the aerial photograph from 2014 attached to the September 9, 2022 correspondence (the "<u>Site Photo</u>"); and



601 Grant Street · 9th Floor · Pittsburgh, PA 15219
Phone: (412) 456-8100 · Fax (412) 456-8135
www.bernsteinlaw.com

(c) All of the truck trailers (approximately 23 trailers) shown in various locations in the 2014 Site photo; and

(d) Any other tangible personal property determined to be owned by the Debtor on or prior to April 27, 2022.

**Intangible Personal Property:**

(a) All intangible rights, claims, demands, actions, and causes of action which could be brought or asserted by or on behalf of U Lock for any reason, either as a Debtor in bankruptcy or otherwise, except for the estate's claims pursuant to § 546 or § 547 of the Bankruptcy Code against George Snyder and all cash held by the estate;

(b) All obligations and liabilities imposed by any regulatory authority or political subdivision to engage in any environmental remediation of the Real Property, whether that remediation is ultimately determined to be the responsibility of the owner or party in possession of the Real Property pursuant to the Estate's disputed claim of possession to the Real Property;

(c) Any unpaid rent owed to the Debtor or the Estate; and

(d) All intellectual property of the Debtor.

**Terms of the Offer:**

The following are the terms of the Offer:

(a) Cash in the amount of Twenty-Five Thousand Dollars ($25,000), including the $4,000 deposit already deposited with the Trustee;

(b) File a verified disclosure of connections to the bankruptcy case no later than five days prior to the scheduled sale hearing;

(c) Posting of a bond or other equivalent financial security in the amount of $100,000 within ten days of the entry of a Court Order approving the sale to Christine Biros;

(d) Christine Biros shall waive any additional claims against the estate related to required environmental remediation of the Real Property [Claim No. 4];

(e) Christine Biros shall waive any administrative claims against the Estate for rent for the use and occupancy of the Real Property since April 27, 2022, conservatively estimated to be $5,000 per month;

(f) The Sale shall close within ten days of the Bankruptcy Court entering an order approving the contemplated sale; and

(g) In the event that the successful purchaser is not Christine Biros, the successful purchaser must (i) remove all personal property from the Real Property within 30 days after the order approving the sale is entered, and (ii) must post an additional bond or other financial security in the amount of $25,000 to reimburse Christine Biros for the cost of removal and disposal of any tangible personal property which is not removed within 30 days of the entry of the sale order.

My client is aware that this sale must be completed as an auction sale in the Bankruptcy Court. Please let me know if you have any questions regarding the Offer and if you need any further information in order to move this process forward.

Very truly yours,
BERNSTEIN-BURKLEY, P.C.

Sarah E. Wenrich

SEW/sew

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: | ) CASE NO. 22-20823-GLT |
| | ) |
| U LOCK INC., | ) CHAPTER 7 |
| | ) |
|     Debtor. | ) |
| _____ | ) |
| | ) |
| CHRISTINE BIROS, | ) Related to Document No.: 258 |
| | ) |
|     Movant, | ) Hearing Date: 01/20/2023 @ 10:30 am |
| | ) Courtroom A - Pittsburgh |
| vs. | ) |
| | ) |
| ROBERT SLONE, Chapter 7 Trustee for | ) |
| the Estate of U Lock, Inc., | ) |
| | ) |
|     Respondent. | ) |

**SHANNI SNYDER'S OBJECTIONS TO
CHRISTINE BIROS' MOTION FOR ALLOWANCE OF
ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b)(1)**

AND NOW, comes Shanni Snyder, files these Objections to Christine Biros' Motion for

Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1) ("Motion") and

in support thereof states as follows:

1.      An Involuntary Petition for Relief under Chapter 7 of the United States

Bankruptcy Code was filed against U Lock Inc. ("Debtor" or "U Lock") in the Bankruptcy Court

for the Western District of Pennsylvania on or about April 27, 2022 ("Filing Date").

2.      Shanni Snyder ("Objector") is a party in interest under the provisions of the

Bankruptcy Code as she is an unsecured creditor of U Lock as documented by Claim 1-1 filed on

May 27, 2022.

3.      On or about December 22, 2022, Christine Biros filed a Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1) at Docket #258 ("Motion").

4.      In her Motion, Biros alleges she is entitled to rent of $18,000.00 per month because the Debtor and Trustee have possessed the non-residential real property located at 14140 Route 30, North Huntington, Westmoreland County, PA ("Property") without payment of rent or any other consideration to Biros and such possession was necessary and beneficial to the bankruptcy estate.  (See Motion ¶¶19-20).

5.      The Motion acknowledges the Debtor and Biros do not have an actual lease for the Property.  However, Biros alleges the Property is commercial investment property and the Return on Investment (ROI) for such property based upon an average of S&P 500 would be 11.82% assuming a value of $1.9 million dollars as scheduled by the Debtor.  (See Motion ¶¶22-28).  Based on this, the Motion seeks a total of $144,000.00 for the Debtor's use and occupancy of the Property. Notably, Biros fails provide any independent evidence of the value of the Property and ironically during this proceeding has asserted significant environmental liabilities with the Property.

6.      However, the Motion conveniently fails to mention that pursuant to the June 3, 2022 Order Granting Christine Biros Limited Relief from the Stay (Doc. 36), Biros has enjoyed nearly absolute possession and control of the Property and the bankruptcy estate has only had co-possession to very limited parts of the Property.

7.      Upon information and belief, Biros and/or her family members have been operating and conducting business at the Property, including a soil fill operation. Therefore, Biros has had the benefit, enjoyment and use of the Property.

8. Further, as partly documented this Court's Order to Show Cause [Doc. 249] dated December 16, 2022, its Order Denying Stipulated Order for Relief from Stay [Doc. 211] dated November 14, 2022, and by Shanni Snyder's Motion to Enforce Order Confirming Sale of Tangible and Intangible Personal Property of the Estate Under 11 U.S.C. § 363(f) Free and Clear of All Liens, Claims and Encumbrances ("Motion to Enforce") [Doc. 274] dated January 5, 2023, throughout these proceedings Biros has displayed a pattern and practice of flouting not only procedural rules of court and provisions of the United State Bankruptcy Code, but also substantive Orders issued by this Court. Such conduct has been a significant detriment and expense to the estate as it has caused the Trustee, Shanni Snyder as a bidder and purchaser of the tangible and intangible property to expend time and expense and even caused the Court to expend time, expense and extraordinary judicial resources through a site visit.

9. Notably, without approval from the Court or Trustee, Biros orchestrated the removal of numerous items of tangible personal property equipment prior and subsequent to the submission of a bid to purchase those items, up to the date of a scheduled inspection for potential buyers to view and inspect the tangible property of the Debtor. This conduct precluded potential buyers from having an opportunity to view the tangible personal property, caused a two month delay in the sale process and even led to the Court and other parties to have to expend time and judicial resources in order to undertake site visit to ascertain the location of the personal property improperly removed by Biros in violation of the automatic stay.

10. Not only did Biros "hide the ball" (i.e. equipment assets) from potential purchasers of the assets by moving them to a lot controlled by her in McKeesport, PA,, but she submitted a bid to the Trustee with terms requiring other bidders to post a $25,000 clean-up deposit and $100,000 environmental remediation bond for alleged environmental contamination

that occurred before the bankruptcy order for relief. These terms were designed to preclude other parties from bidding so only she could purchase the tangible and intangible property. Such conduct by Biros resulted in further cost and expense to the estate and caused delay in the sale process.

11.     Self-interest is also as an aspect to be considered under § 503(b)(1)(A) when the facts at hand present a situation which contemplates such an analysis. For cases which have recognized this principle in some form or another, See, *Wolf Creek Colliers Co. v. GEX Kentucky, Inc.* 127 B.R. 374, 379-80 (Bankr. N.D. OH 1991)*; In re Jartran, Inc.,* 886 F.2d 859, 871 (7th Cir. 1989), *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988); *In re Woodstock Associates I, Inc.*, 120 Bankr. 436, 451 (Bkrtcy. N.D. Ill. 1990)*; In re Philadelphia Mortgage Trust,* 117 Bankr. 820, 828 (Bkrtcy. E.D. Pa. 1990).

12.     Throughout these proceedings while Biros controlled the majority of the Property, she acted in her own self-interest by preventing access to the tenants, the Debtor and the public, which provided no benefit to estate, but rather prolonged the need for the Trustee to have his limited possession.

13.     Despite Biros' improper conduct which was no benefit to the estate, even assuming *arguendo* Biros could establish the estate actually benefitted from the use of the Property, the court must quantify the administrative expense.  In re Jas Enters., 180 B.R. 210, 217 (Bankr. D. Neb. 1995); In re Carmichael, 109 B.R. 849, 851 (Bankr. N.D. Ill. 1990); *In re Jeans.com*, 491 B.R. 16, 2013 Bankr. LEXIS 1548 (Bankr. D.P.R. 2013).

14.     The Motion cites to *In re: Cardinal Export Corp.* 30 B.R. 682 (Bankr. E.D.N.Y. 1983), but fails to include an important part of the citation qualifying that administrative liability arises only to the extent and period the trustee actually uses and occupies the premises based

upon the principle of unjust enrichment rather than the compensation of the creditor for the loss

to him. Specifically, the full quote from *In re: Cardinal Export,* is as follows:

> Occupancy by the trustee of the premises from which the debtor was operating gives rise to administrative liability only to the extent and for the period that the trustee actually uses and occupies the premises. 3 *Collier on Bankruptcy* para. 503.04[1][a], at p. 503-15 (15th ed. 1983). **This is because "the purpose of according priority is fulfillment of the equitable principle of preventing unjust enrichment of the debtor's estate, rather than the compensation of the creditor for the loss to him."** *American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119, 126 (2d Cir. 1960); *In re United Cigar Stores Co. of America,* 69 F.2d 513 (2d Cir.), *cert. denied sub nom. Reisenwebers, Inc. v. Irving Trust Co.,* 293 U.S. 566, 79 L. Ed. 665, 55 S. Ct. 76 (1934). The reasonable value of such use and occupancy is ordinarily, but not necessarily, determined by an allocation of the rent reserved in the lease on a *pro rata* basis. *Green v. Finnigan Realty Co.,* 70 F.2d 465 (5th Cir. 1934); *In re Chase Commissary Corp.,* 11 F. Supp. 288 (S.D.N.Y. 1935). (Emphasis added.)

*Wolf Creek Collieries Co. v. GEX Kentucky, Inc.*, 127 B.R. 374, 379. Here, there is no rent

reserved in the lease because there is no lease. However, under the circumstances of this instant

case, using the S&P 500 metric is not appropriate, especially since no value to the Property has

been independently established and Biros claims the Property has considerable environmental

contamination.

15.    When Biros bid on the personal property assets, she sought a credit toward the

purchase price based upon her alleged administrative rent claim. At the December 15, 2022 sale

hearing, the Court determined rent of $1,500.00 per month was appropriate for a total credit bid

for administrative rent of $10,000.00.

16.    Finally, any grant of an administrative claim to Biros should be specifically

contingent on the outcome of the adversary claims for avoidance, etc., that Shanni Snyder will be

filing as assignee of the Trustee. Alternatively, in the event the Court allows Biros any

administrative claim at this point, it must include terms enabling the allowance of such claim to be reversed if Ms. Snyder is successful in the adversary claims for relief.

      **WHEREFORE**, for the reasons set forth above, Shanni Snyder respectfully requests that this Court deny the Motion and requests any other relief the Court deems appropriate.

Grenen & Birsic, P.C.

Dated:  January 9, 2023        By:       _____/s/ John B. Joyce_____

                                  John B. Joyce, Esquire
                                  Pa. I.D. #68242
                                  Jeremy J. Kobeski, Esquire
                                  Pa. I.D. #94503
                                  One Gateway Center, 9th Floor
                                  Pittsburgh, PA 15222
                                  (412) 281-7650
                                  Email:  jjoyce@grenenbirsic.com
                                        jkobeski@grenenbirsic.com

                                  *Attorneys for Shanni Snyder*

FILED
Page 156
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

In re:  U LOCK INC. a/k/a              )
U-LOCK INC.                            )          Case. 22-20823-GLT
                                       )
            Debtor.                    )
                                       )
—————————————————————— )
CHRISTINE BIROS,                       )
                                       )
        v.                             )
                                       )
ROBERT SLONE, Chapter 7                )
Trustee,                               )
            Respondent.    )

**OBJECTIONS OF GEORGE SNYDER TO CHRISTINE BIROS'**
**MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM**
**PURSUANT TO 11 U.S.C. 503(b)(1)**

I am an officer of the debtor U Lock.  I file this objection in my personal capacity and as a creditor, and as a person with personal property on the premises that Christine Biros seeks possession of.

**BIROS EXTENDED THE TIME NECESSARY TO OCCUPY U LOCK**

Here's the latest obstruction by Christine Biros.  Just this week, to prevent tenants from accessing the warehouse and removing their property, the Biros family blocked the door.  That's one big rock the Biros family are "remediating" with, and the tenants can't



move it out of the way.

As shown by the attached police report, tenants cannot obtain their property because a

trespass warning is "criminal" and this Court's Orders are "civil." That's the conclusion per the police based on Biros' insistence and Mr. Otto's bad faith legal teachings and emails to them. (Police are not attorneys and therefore they accept Mr. Otto telling them that hearing notes are court Orders).   The police, Biros, and her attorney require a specific court order authorizing access. Mr. Otto and Ms. Biros specifically told the police that this Court's hearing summary "notes" interpret the written Order and that it implies that nobody can enter the property except the Trustee of U Lock and the Biros family.  Even if they didn't have a rock in front of their door, they would have to physically take down the chain which obstructs the entrance 24 hours a day, 7 days a week.

All I know is that nobody can remove their things since Biros chained it in October. The Trustee sloughed off the entire thing to Mr. Otto and NOBODY WILL EVER GET THEIR PROPERTY OUT UNTIL THERE IS AN ORGANIZED AND CLEAR DIRECTIVE that Ms. Biros actually has to comply with.  While I understood this Court's Order that Ms. Biros must provide access, she apparently has a different interpretation.  As far as the Trustee giving 9 days to tenants and then telling them to arrange via Mr. Otto, this certainly is not a legal eviction in any sense especially since the tenants cannot comply with Ms. Biros' chain.

If one looks at the police report, with all of Mr. Otto's circles with his subjective interpretation, it is clear that the possession by tenants will never cease because they never could access their things.

In other words, rather than being entitled to rent, Ms. Biros should be paying damages for her ignoring this Court's clarification and the automatic stay.  Why should the Estate pay rent when Biros is prolonging the need to possess the land?

### THE $2 MILLION DOLLAR VALUATION

As this Court knows, Ms. Biros provided U Lock an unsecured loan for $309,000 then ganked the property from her partners. Now she wants $18,000 a month rent for it when she occupied most of it during the bankruptcy.  I put the valuation of $1,900,000 on the schedule. I based this upon the conversations I had with John and Christine Biros when they had U Lock buy the property for our enterprise, what they told me it was worth based on their experience and ownership of land that they developed.  Understand that I possessed parts of this property prior to the death of Nicholas Schur, the prior owner.  This is how I knew the Estate was selling it. John Biros, Christine Biros, and I surmised that the property was valued at a little less than $2,000,000, and we were able to buy it for just a few hundred thousand dollars with Ms. Biros fronting the money.  I just took that figure and put it on the schedule. However, I am no expert.  I never had an official appraisal done on the property.  I also didn't believe there were environmental problems that Christine Biros now asserts would cost nearly half a million dollars to remediate. I just did the best I could to determine a number.

### FROM JUNE, BIROS HAD CONTROL OF 90 PERCENT OF U LOCK

U Lock is 20 acres.  The storage sheds occupy less than 10%.  As soon as this Court granted permission for Biros to "remediate," they started accepting boulders as part of a clean fill operation. They blocked the roads, they began accepting commercial fill.  They were repeatedly told not to by North Huntingdon Township, but they never stopped.  Finally around September 2022, after pressure from Mr. Otto, the Township appears to allow them but said no more boulders.  It is unclear if the Biros family received payment or what their terms of accepting the clean fill from Colony Holdings were, but usually people have to pay to get rid of the large boulders.  Accepting boulders from Colony Holdings without a permit so they can build an Auto Zone up the road isn't really remediation–and it definitely isn't

something the Estate should pay rent for.[1]  In other words, Biros occupied the majority of the property.

Certainly, Ms. Biros' possession of most of the property beginning in June reduces the amount she should receive – if she should receive anything – for the alleged rent.

Biros received the boulders then buried them.  The purpose of these pictures is not to criticize the operation but to demonstrate who possessed the majority of the property.



*"REMEDIATING" BY RECEIVING BOULDERS FROM COLONY HOLDINGS WHICH IS BUILDING AN AUTOZONE NEARBY AND NEEDED TO BE RID OF THEIR WASTE ROCK.  TRUCKLOADS AND TRUCKLOADS CAME.  IT IS UNCLEAR IF BIROS RECEIVED PAYMENT FOR TAKING THE WASTE OR WAS DOING A FAVOR (BIROS AND COLONY HOLDINGS ARE JOINT VENTURERS IN OAK PARK ASSOCIATES INC.).*

---

[1] The Court should direct Ms. Biros to disclose all income she received from receiving the boulders and selling the scrap she took.  Perhaps Ms. Biros owes the Estate a portion of her gains.



*BE IT REMEDIATION, CLEAN FILL OPERATION, OR PLAYING IN THE DIRT, BUT IT IS NOT U LOCK POSSESSING THE PROPERTY. IT IS BIROS POSSESSING, BLOCKING U LOCK, AND NOW TRYING TO GET $18,000 A MONTH FOR DOING IT.*



*MORE BOULDER "REMEDIATION" – ALL PLACED BY BIROS.*



***U LOCK ONLY POSSESSED THE BUILDINGS. THE BOULDER FARM WAS
ALL POSSESSED BY BIROS WITH ALL BOULDERS BROUGHT BY BIROS AND
THEN BURIED.  (The Court saw the property after they buried most boulders).***

Regardless of the merits of Biros' remediation, the Court needs to calculate the

percentage of occupancy by Biros and the percentage by U Lock.  As is clear, Biros' boulder

farm and activities occupied the vast majority of the land.

Here is a map of the area in yellow that Biros took complete control over and

"remediated" through clean fill and boulder burying, destroying any item in their way.  The

purple is area that U Lock did not use for any reason and which they could have done

whatever they wanted on.  The black squared buildings are the U Lock buildings.  The trees

below the yellow areas were not used or possessed by U Lock and Biros had control over.



PURPLE AREA BIROS COULD HAVE UTILIZED FOR THEIR OPERATIONS.  NOT USED BY ULOCK

YELLOW AREA IS THE PORTION OF THE LAND THAT BIROS PHYSICALLY TOOK OVER DEPOSITED BOULDERS AND BURIED OR OTHERWISE "REMEDIATED" AND CONTROLLED DESTROYING ANYTHING IN THEIR WAY INCLUDING PERSONAL PROPERTY

### TRUSTEE CEDED TOTAL CONTROL TO BIROS IN LATE OCTOBER

Rent should stop in October when Biros put up the chain and blocked access.  As I explained in my opposition to lift the stay, Biros took complete control of the property with the Trustee's blessing in October.  I cannot access my personal belongings and tenants cannot access the property.  This is because a chain blocks the entrance.  They misquoted this Court's allowing them to implement security by asserting that they can block all persons with a chain and never open it.  This is what they did.

From my Opposition to the Stay:

As explained below, and in the attached police report and letter to tenants, Robert Slone, Trustee, ceded complete control of the property to Christine Biros.

As this Court is aware, Biros placed a chain at U Lock and prevented access since late October 2022.  Since that time, nobody has been able to access the property. The chain went up, the tenants and myself were blocked.

When a tenant attempted to, the police were called and a trespass warning was given. Biros specifically told the police and tenant that they needed an Order allowing them access.  Counsel for Biros, William Otto, went so far as to give the police this Court's hearing notes to imply the Order was ambiguous and that access did not need to be given.

On November 21, 2022, apparently the Trustee sent letters to the tenants giving them nine (9) days to remove their items.  However, nobody could access the items because the letter said they had to go through Christine Biros.  I received the letter from a tenant who called me in late December 2022 saying he just got this letter. I told him I suppose he needed to call Mr. Otto since that is what the letter says.  I don't know if he called Mr. Otto or not.  The Trustee should be handling access, not Mr. Otto, but the letter says Mr. Otto is in control.  As shown by the police report, Mr. Otto's procedures aren't exactly tenant friendly.

The problem is that you cannot simply send a letter to tenants saying on November 21 they have until November 30 to obtain their property.  There's a Pennsylvania law called the Self Storage Facility Act that requires notification and publication.  I don't think that the Trustee had a lien because the law says for a lien to be enforced, it needed to be within the contract.  Regardless, mailing a letter regular mail to out of state and foreign people on November 21 saying the deadline is November 30, but the tenants are blocked by a chain, and have to call Mr. Otto does not appear to be a good procedure.

### MY PROPERTY[2]

---

[2] I cannot give a complete list of property because I cannot inventory it.  However, some of my items include 2 dumpsters,  1 commercial steel work bench, 4 pallets of cement block, 4 pallets of freezer curtain pallets of commercial shelving, 1 275 gallon oil tank, 1 500 gallon oil tank, 4 poly tanks, bundle

Specifically, on October 14, 2022, Trustee Slone emailed attorney Allen Roth and told him, "We've had complaints that George Snyder is bothering the workers on the U Lock property and telling them that they are not permitted to be there. Please have him refrain from being on the property at this time." Thus I cannot access my property.

On October 21, 2022, at 11:00 a.m., Trustee Slone and Mr. Otto set up a meeting at U Lock. I attended. I asked Mr. Otto for access. He stated that Christine Biros owned everything and I could not have access unless I paid rent. Later that day, Mr. Slone emailed U Lock's counsel Mr. Roth and stated, "George Snyder wishes to set up a time to remove his assets from the U Lock property. Please have him give me a list of what those assets are and how long it will take him to remove those assets. A time will then be set for him to remove the assets."

On October 27, 2022, I called Trustee Slone and advised him that the front door to the warehouse where tenants rent was wide opened and had obviously been breached. He told me I could enter to close the door. However, fearing accusations, I emailed him, "As per our discussion yesterday, I was going to enter the U Lock Property briefly to secure the door. I just wanted to get an email from you to confirm that I have your permission." I never received a reply.

Also Trustee Slone asked me to have U Lock's Allen Roth email him about setting up a time to inventory my property so I could give him a list. Mr. Roth emailed Trustee Slone on October 27, 2022, and advised that, although he did not represent me personally, "It is my understanding that Mr. Snyder explained to you that he needs to take inventory of the items that belong to him and, to avoid piecemeal back and forth, he requested an opportunity to visit the property, take inventory, and then submit the inventory to you. He suggested that once you receive the inventory, you can advise of the items you do not object to removing, and arrangements could be made to do so. This course of action appears reasonable. However, I am happy to convey any alternative plan to him." Trustee Slone never responded.

On November 1, 2022, I spoke to Trustee Slone and advised that Biros placed some of my personal property and some things belonging to U Lock in a dumpster. I asked if I could go to the dumpster to mitigate. He said, "not yet."

On November 3, 2022, I called Trustee Slone and advised that Robert Biros was smashing everything in the dumpster. He said, "I hope not." I said, "Well, there's no need to hope because he is." Later that day, the trustee emailed me and asked, "In addition to the statement that you are to provide me showing what you are looking for on the U Lock property, please also send the following: 1.    Proof of ownership of any asset that you claim ownership of that is on the U Lock property." It is impossible to provide proof of ownership as to most of these items. I offered Mr. Slone repeatedly to explain where I obtained the items from. He repeatedly told me that Mr. Otto must be satisfied. I explained that nobody was making an adverse claim as to these items. Mr. Slone said that Ms. Biros wanted them.

I met with Mr. Slone on a weekly basis in November and told him it would take about

---

of 2 X 4's, bundle of 2 X 10's, bundle of lumber, misc. Wood, pallet of marble sills, 2 commercial air conditioners, 4 doctor scales, 1 rotary torso selectorized machine, 1 seated calf machine, leg press, bulk weight equipment accessories, bulk weight equipment mfg inventory, 1 commercial parts cleaner, 4 ceiling fans, 6 racks,  3 aquariums, 10 tires, bulk pvc pipes and fitting, stack of metal building material, I beams and structrural steel, 4' x 4' sheets

five days to a week to remove my items as it would take several trips in a truck.

On December 23, 2022, the Trustee sent me an SMS message after I spoke with him. He said, "George, Contact Shanni or her attorney. She purchased the right to collect back rent. Her attorneys are Grennen and Birsic in Pittsburgh." I wrote back and said, "Ok just for clarification: Shanni and her attorney have the right to give me permission or any other tenant to enter the property and retrieve our possessions?" Slone wrote, "Probably. She purchased the U Lock tangible property."

On January 4, 2023, I met with Trustee Slone around 11:00 a.m. He was asking me for some U Lock files that are in a trailer on the property. I told him I needed access to the property. He told me that both Shanni Snyder and William Otto/Christine Biros must give me permission to enter the property. I told him I previously left messages for Mr. Otto and was never called back. I referred to the meeting with Mr. Otto where he said I could not access the property.

On January 5, 2023, U Lock's attorney Allen Roth emailed Trustee Slone and Biros attorney Ms. Wenrich advising that I was available January 7, 8, and 9 to access the U Lock records and possibly my personal property. Mr. Roth asked Trustee Slone to respond with clear instructions. I am informed that neither Mr. Slone nor Ms. Wenrich responded.

Clearly, the property cannot be given to Biros until this matter is resolved.

### U LOCK RECORDS

I have to do two things– file taxes for U Lock per the stipulation and also update certain property lists and employment data as the request of Mr. Slone. There are some petty cash receipts and employee notes in the trailer, some other notes and tablets with info needed to comply with the Trustee's request and the tax returns. As explained above, Trustee Slone keeps asking for the information but will not provide access leaving me in a Catch 22.

### CONCLUSION

I think it is clear that Ms. Biros should not receive any rent for the property, let alone $18,000 a month. Whatever figure for the land is appropriate, it should be reduced to 10% which U Lock possessed since June.

NOTE: ALL OF THE NOTES ON THE POLICE REPORT AND THE CIRCLES ON THE COURT ORDER ARE IN THEIR ORIGINAL FORM. I DID NOT MODIFY THE DOCUMENT.

### DECLARATION

I declare under the penalty for perjury that the foregoing is true and correct to the best of my knowledge, information, and belief (28 USC 1746).

**CERTIFICATE OF SERVICE**

. I also mailed a copy to Shanni Snyder, 14390 Route 30, Irwin PA 15642 by mail. Christine

Biros, U Lock, the United States Trustee, and Robert Slone trustee receive notification from

the Court.

This 9th day of January 2023.



George Snyder
Box 15
Irwin PA 15642
412-979-9999

LAW OFFICES
## MAHADY & MAHADY
223 S. MAPLE AVENUE
GREENSBURG, PENNSYLVANIA 15601

1308 LIGONIER STREET
LATROBE, PENNSYLVANIA 15650

PATRICK H. MAHADY
ROBERT H. SLONE
GEORGE A. BUTLER
SUZANNE J. MAHADY

REGIS F. MAHADY (1933-1973)
HON. PAUL W. MAHADY (1933-1973)
HENRY J. MAHADY (1945-1989)
THOMAS R. MAHADY (1948-1971)

SUITE 5 - JACKTOWN PROFESSIONAL BUILDING
11343 ROUTE 30
N. HUNTINGDON, PA 15642

Telephones:
GREENSBURG - 724/834-2990
LATROBE - 724/537-7761
N. HUNTINGDON - 724/863-0628
FAX - 834-1250
e-mail - mahady@puisenet.com

**Please reply to:**          **GREENSBURG OFFICE**          November 21, 2022

INW
800 E. Wishkah Street #1003
Aberdeen, WA 98520

> In Re: U Lock, Inc.
> Chapter 7 Bankruptcy No. 22-20823-GLT

Dear Sir/Ms.:

Please be advised that U Lock, Inc. is in Chapter 7 bankruptcy filed in the U.S. Bankruptcy Court for the Western District of Pennsylvania at case no. 22-20823-GLT. I have been appointed the Chapter 7 Trustee for this case.

This letter is notification that the deadline to remove the items from your storage locker is **November 30, 2022**. To make arrangements to clear out your storage locker, please contact attorney William Otto, Law Firm of William E. Otto, PO Box 701, Murrysville, PA 15668, (724) 519-8778, weo@ottolawfirm.com as soon as possible.

Thank you for your attention to this matter.

Very truly yours,

MAHADY & MAHADY

Robert H. Slone

Robert H. Slone, Esquire

RHS/kds

# NORTH HUNTINGDON TWP PD

22-011638
11/19/2022

## Incident Report Form

CIVIL

**Primary Officer:** TROY PECINA - 00086

| | | | | |
|---|---|---|---|---|
| ☐ Juvenile Involved | ☐ Investigation | ☐ Video Available | ☐ Gang Related | ☐ Paperless |
| ☐ Domestic Related | ☐ Suspects | ☐ Bias Crime | ☐ Accident | ☐ Administrative |
| ☐ Alcohol Involved | ☐ Arrests Made | ☐ Drugs Involved | ☐ Ready for DA / Prosecutor | ☐ Alarm Activated |

| Log Number 22-011638 | Incident Number 22-011638 | File Number | Case Number | | | |
|---|---|---|---|---|---|---|
| Incident Type CIVIL | 056 | | Dispatcher d0121 | Source | District | Status NEW |

**Incident Date / Times**

Incident Occurred At or Between

| Date Received 11/19/2022 | Day Rec'd Saturday | Rcvd 1537 | Disp 1538 | Arrv 1547 | Clrd 1557 | Earliest Date and Time | Latest Date and Time |
|---|---|---|---|---|---|---|---|

| Disposition   NFPA NO FURTHER POLICE ACTION | Cleared by Exception | | ☐ Suspended |
|---|---|---|---|

**Location**

☐ Intersection

14140  E  ROUTE #30
NORTH HUNTINGDON  PA  15642

| | Cross Street | |
|---|---|---|
| Municipality: NORTH HUNTINGDON TWP. | GPS Loc X 0 | GPS Loc Y 0 |
| Business Name | Premise Code | Arson Value |
| Gang | Weather | |

Modus Operandi Coding

Victim:

Entry:

Property:

Exit:

Area: **SECTOR 2**
Z2

Method:

Time of Day: **AFTERNOON (NOON TO 5 PM)**
ANOON

**WEAPON USED:**

| Caller / Complainant Type | Normal ☒ | Anonymous ☐ | Hangup ☐ | Refused ☐ |
|---|---|---|---|---|

**INVOLVEMENT NOT INDICATED**          Code not entered at run time or archive record with no code

| Name (Last, First, Middle) - Address - Phone Number | Juvenile ☐ | Age | Race W | Sex M | Ethnic | Social Security |
|---|---|---|---|---|---|---|

CHERIPKA, GARY ANTHONY
123 CATSKILL AVE
PITTSBURGH PA 15227

| | Weight | Height | Hair | Eyes | Phone |
|---|---|---|---|---|---|
| | Driver's | | | State | Class | Expiration Date |
| | ID Provided | | ID Detail | | | |

Link Comments

| Involvement **Involvement Not Entered** | Type (A=Auto/Truck) | Plate Number LPB4839 | Plate State PA | PlateType Code SW | Tag Year 2023 | Date Linked 11/19/2022 | Current Vehicle ☒ |
|---|---|---|---|---|---|---|---|
| Vehicle Year 2003 | Make GMC | Model | Color | Vehicle Identification | USDOT Number | | ICC Number |
| Vehicle Style/Type STATION WAGON | | Insurance Company | | | Insurance Company Policy Number | | |

Involvement Comments

| 22-011638 | 11/19/2022 | ☒ | APPROVED BY: KARI BAUER | | PAGE 1 |
|---|---|---|---|---|---|
| IRF 1.6 | | | APPROVED ON: 11/23/2022 | Print Date/Time 1/6/2023 8:06:59 AM | |

# NORTH HUNTINGDON TWP PD

**22-011638**
11/19/2022
CIVIL

## Incident Report Form

### RESPONDING / INVOLVED UNITS, OFFICERS, TIMES

| Division | Supervisor / ID |
| --- | --- |

| Agency Numbers | | Units & Times | | |
| --- | --- | --- | --- | --- |
| XX | XX-22-007403 | 00086 | DISP | 15:38:57 |
| | | | ARRV | 15:47:52 |
| | | | CLRD | 15:57:49 |
| | | 00017 | DISP | 15:38:57 |
| | | | CLRD | 15:57:49 |
| | | 00064 | DISP | 15:38:57 |
| | | | ARRV | 15:49:36 |
| | | | CLRD | 15:57:49 |
| | | 00088 | DISP | 15:49:34 |
| | | | ARRV | 15:49:36 |
| | | | CLRD | 15:57:49 |

### COMMENTS / NARRATIVES

Title
**Dispatcher**

| Narrative Created By / Creation Date | | | |
| --- | --- | --- | --- |
| ROBERT M BOSWELL | | 11/19/2022 | Narrative Updated By / Update On |

Narrative Approved By / Approved Date

Input: d0121 11/19/2022 15:38:52   Edited: d0121 11/19/2022 15:38:52
Christine Byros ▮▮▮▮▮▮▮▮▮▮▮ 14140 Route 30, ULock, advising there are court orders in place that nobody should be taking items from the property. She just got sent pictures that people are there taking items off the property. They people are supposedly Gary Chepkra and George Snyder / Pecina, Sgt Bauer, W Bouldin

Input: d0121 11/19/2022 15:48:25   Edited: d0121 11/19/2022 15:48:25
LPB4839

### COMMENTS / NARRATIVES

Title
**INITIAL INCIDENT REPORT**

| Narrative Created By / Creation Date | | Narrative Updated By / Update On | |
| --- | --- | --- | --- |
| TROY PECINA | 11/20/2022 | TROY PECINA | 11/20/2022 |
| Narrative Approved By / Approved Date | | | |
| KARI BAUER | 11/23/2022 | | |

On 11-20-2022, Chrstine Biros called the station to report that someone was on the property at 14140 Rt. 30 (the old U-lock) removing items and there is currently a court order that states no one is permitted to be on the property.

Officers Bouldin and Cartter and I went to the property and made contact with Gary Cherika. Gary stated that he was a tenant of the U-lock storage facility and were there to get his belongings. Gary showed us a paper copy of a court order which stated that the Trustee and tenants (who are paid up on rent) are to be given unfettered access to obtain their property.

Gary did walk around a mental string that was accross the access road but stated that he had keys to the building, was paid up on his rent, and had actual property that belonged to him on the lot.

Gary was left to gather the rest of his stuff. I called Sgt. Bauer and explained the situation which she then advised me to return to Gary to ask him to leave the property until a final court order was finalized.

| 22-011638 | 11/19/2022 | ☒ | APPROVED BY: KARI BAUER | PAGE   2 |
| --- | --- | --- | --- | --- |
| IRF 1.6 | | | APPROVED ON: 11/23/2022 | Print Date/Time   1/6/2023 8:06:59 AM |

# NORTH HUNTINGDON TWP PD

## Incident Report Form

By time I returned to the property, Gary was already gone.

While en-route back to the station, dispatched informed me that George Snyder was in the lobby and wanted to speak to me.

I spoke with George, who was the previous owner of the property, for a long while. By the end of the conversation I explained to him that we have no answer for him on to who's allowed on the property. I told him that he needed to wait for the finalized court order which is set to occur on 12-1-2022.

Nothing further at this time.

| 22-011638 | 11/19/2022 | ☒ | APPROVED BY: KARI BAUER | | |
|---|---|---|---|---|---|
| IRF 1.6 | | | APPROVED ON: 11/23/2022 | Print Date/Time   1/6/2023 8:06:59 AM | PAGE   3 |

# NORTH HUNTINGDON TWP PD

22-011680
11/20/2022
CIVIL

## Incident Report Form

**Primary Officer:** WILLIAM BOULDIN - 00064

| | | | | |
|---|---|---|---|---|
| ☐ Juvenile Involved | ☐ Investigation | ☐ Video Available | ☐ Gang Related | ☐ Paperless |
| ☐ Domestic Related | ☐ Suspects | ☐ Bias Crime | ☐ Accident | ☐ Administrative |
| ☐ Alcohol Involved | ☐ Arrests Made | ☐ Drugs Involved | ☐ Ready for DA / Prosecutor | ☐ Alarm Activated |

| Log Number | Incident Number | File Number | Case Number | |
|---|---|---|---|---|
| 22-011680 | 22-011680 | | | |

| Incident Type     056 | | Dispatcher | Source | District | Status |
|---|---|---|---|---|---|
| CIVIL | | d0123 | | B002 | NEW |

### Incident Date / Times
Incident Occurred At or Between

| Date Received | Day Rec'd | Rcvd | Disp | Arrv | Clrd | Earliest Date and Time | Latest Date and Time |
|---|---|---|---|---|---|---|---|
| 11/20/2022 | Sunday | 1124 | 1126 | 1131 | 1153 | 11/20/2022  1124  (Sunday) | 11/20/2022  1153  (Sunday) |

| Disposition     NFPA | Cleared by Exception | |
|---|---|---|
| NO FURTHER POLICE ACTION | | ☐ Suspended |

### Location
☐ Intersection

13890 E ROUTE #30
NORTH HUNTINGDON  PA  15642

| | Cross Street | |
|---|---|---|
| Municipality: NORTH HUNTINGDON TWP. | GPS Loc X   0 | GPS Loc Y   0 |

| Business Name | Premise Code     STORAG | |
|---|---|---|
| U LOCK | STORAGE FACILITY | Arson Value |

| Gang | Weather |
|---|---|

| Modus Operandi Coding | |
|---|---|
| | Victim: |
| Entry: | |
| | Property: |
| Exit: | |
| | Area: **ROUTE 30 CORRIDOR** |
| | RT 30 |
| Method: | |
| | Time of Day: **MORNING (5 AM TO NOON)** |
| | MORN |

WEAPON USED:

| Caller / Complainant Type | Normal ☒ | Anonymous ☐ | Hangup ☐ | Refused ☐ |
|---|---|---|---|---|

| 22-011680 | 11/20/2022 | ☒ | APPROVED BY: KARI BAUER | PAGE   1 |
|---|---|---|---|---|
| IRF 1.6 | | | APPROVED ON: 11/23/2022 | Print Date/Time   1/8/2023 8:05:25 AM |

# NORTH HUNTINGDON TWP PD

22-011680
11/20/2022

## Incident Report Form

CIVIL

## INVOLVED PERSONS

### CALLER

| Name (Last, First, Middle) - Address | Juvenile | | | | | | CODE: | CALLER |
|---|---|---|---|---|---|---|---|---|
| BIROS, CHRISTINE | ☐ | Date of Birth | Age | Race | Sex F | Ethnic | Social Security Number | |
| 1 BIROS HILL | | Weight | Height | Hair | | Eyes | Phone Number | |
| WHITE OAK PA 15131 | | Driver License Number | | | | State | Class | Expiration Date |
| | | ID Provided | | | ID Detail | | | |

Link Comments

### OTHER

| Name (Last, First, Middle) - Address | Juvenile | | | | | | CODE: | OTHER |
|---|---|---|---|---|---|---|---|---|
| SLONE, ROBERT H | ☐ | Date of Birth | Age | Race | Sex | Ethnic | Social Security Number | |
| 223 SOUTH MAPLE AVE | | Weight | Height | Hair | | Eyes | Phone Number | |
| GREENSBURG PA 15601 | | Driver License Number | | | | State | Class | Expiration Date |
| | | ID Provided | | | ID Detail | | | |

Link Comments

### SUSPECT

| Name (Last, First, Middle) - Address | Juvenile | | | | | | CODE: | SUSP |
|---|---|---|---|---|---|---|---|---|
| CHERIPKA, GARY ANTHONY | ☐ | Date of Birth | Age | Race W | Sex M | Ethnic | Social Security Number | |
| 123 CATSKILL AVE | | Weight | Height | Hair | | Eyes | Phone Number | |
| PITTSBURGH PA 15227 | | Driver License Number | | | | State | Class | Expiration Date |
| | | ID Provided | | | ID Detail | | | |

Link Comments

### SUSPECT

| Name (Last, First, Middle) - Address | Juvenile | | | | | | CODE: | SUSP |
|---|---|---|---|---|---|---|---|---|
| SNYDER, GEORGE CARDNER | ☐ | Date of Birth | Age | Race W | Sex M | Ethnic | Social Security Number | |
| 13600 ST CLAIR DRIVE | | Weight | Height | Hair BRO | | Eyes | | |
| NORTH HUNTINGDON PA 15642 | | Driver License Number | | | | State | Class | Expiration Date |
| | | ID Provided | | | ID Detail | | | |

Link Comments

## INVOLVED BUSINESSES / ORGANIZATIONS

| Business / Organization Name | | | 11/20/2022 | |
|---|---|---|---|---|
| U LOCK | | | Business Address | 13890 ROUTE #30 |
| Phone 1 | Phone 2 | Phone 3 | | |
| Involvement Comments | | | NORTH HUNTINGDON, PA 15642 | |

22-011680    11/20/2022    ☒   APPROVED BY: KARI BAUER
IRF 1.6                             APPROVED ON: 11/23/2022     PAGE 2
                                    Print Date/Time   1/6/2023 8:05:25 AM

**Appendix Vol. II          Page 172**

# NORTH HUNTINGDON TWP PD

## Incident Report Form

## RESPONDING / INVOLVED UNITS, OFFICERS, TIMES

| Division | Supervisor / ID | | |
|---|---|---|---|

| Agency Numbers | | Units & Times | | |
|---|---|---|---|---|
| XX | XX-22-007429 | 00064 | DISP | 11:26:42 |
| | | | ARRV | 11:31:38 |
| | | | CLRD | 11:53:06 |
| | | 00017 | DISP | 11:26:42 |
| | | | ARRV | 11:31:38 |
| | | | CLRD | 11:53:06 |
| | | 00086 | DISP | 11:31:38 |
| | | | CLRD | 11:53:06 |

## COMMENTS / NARRATIVES

Title
**Dispatcher**

| Narrative Created By / Creation Date | | Narrative Updated By / Update On |
|---|---|---|
| BRIAN HEMPEL | 11/20/2022 | |

Narrative Approved By / Approved Date

Input: d0123 11/20/2022 11:28:35   Edited: d0123 11/20/2022 11:28:35
    1122    Theft / Civil    011680Christine Biros, 412-901-8485, Received information that there is a Green Suburban on Ulock Property taking items / Supposedly has a court order that no one is to be on the property  / Bouldin, Pecina, Sgt Bauer / LPB4839

## COMMENTS / NARRATIVES

Title
**INITIAL INCIDENT REPORT 00064**

| Narrative Created By / Creation Date | | Narrative Updated By / Update On | |
|---|---|---|---|
| WILLIAM BOULDIN | 11/20/2022 | WILLIAM BOULDIN | 11/23/2022 |
| Narrative Approved By / Approved Date | | | |
| KARI BAUER | 11/23/2022 | | |

On 11/20/2022 at approximately 1124 hrs we were advised of a call for a unknown person in a green suburban SUV being on the property of the ulock storage facility on Route 30. Per dispatch according to the caller she has a court order no one is to be on the property.

I was aware of the suspect, Gary Cheripka being on the property yesterday from another incident we had.  Mr Cheripka had a copy of a court order that showed tenets were permitted on the property to get their property. I was informed by Ptlm Pecina that other paperwork was obtained from Mrs Biros which stated no one is to be on the property for any reason without permission from the court appointed trustee. I arrived on scene and stood by across the street until Sgt Bauer arrived. Another vehicle arrived on scene and was found to be George Snyder. Sgt Bauer informed me with the new paperwork that for no per Lt Arendas no one is to be on the property until a court order is received stating otherwise. Mr Snyder asked why we were here and we informed him that according to the information we have that anyone one the property is trespassing and due to the ambiguity with the civil orders we are going to ask Mr Cheripka to leave so we would not have to arrest him for trespassing. We advised Mr Snyder we do not enforce civil orders unless we are directly requested to do so by the courts. Trespassing on the other hand is a criminal matter.

We went to the main building and made contact with Mr Cheripka and explained the situation to him. We informed him until the court tell us other wise no one can be on this property. Mr Cheripka was not happy about the situation but understood and agreed to leave. We informed both he and Mr Snyder that they needed to get in contact with the court or the court trustee. They stated that they would. Sgt Bauer suggested to Mr Cheripka that he could try to

| 22-011680 | 11/20/2022 | ☒ | APPROVED BY: KARI BAUER | PAGE 3 |
|---|---|---|---|---|
| IRF 1.6 | | | APPROVED ON: 11/23/2022 | Print Date/Time  1/6/2023 6:05:25 AM |

## NORTH HUNTINGDON TWP PD

22-011680
11/20/2022

**Incident Report Form**

CIVIL

contact Mrs Biros and see about making arrangements to get his property. Mr Cheripka stated he has no contact for Mrs Biros. We asked if it would be ok to give her his number so she could call him and he stated that it would. We cleared.

On 11/20/2022 at approximately 1222 hrs I called Mrs Biros and explained what happened. Mrs Biros stated that no one is to be on the property without the permission of the court Trustee. I asked her if she was willing to take Mr Cheripka's phone number to make arrangement s so he could get his property. Mrs Biros stated no that he know how to get hold of the trustee and he can talk to him. Mrs Biros also stated that all the so called tenets are in default and are not to be on the property anyway. I told her that they need to get with the court and get them to send us copies of the orders so we can know what is going on. She stated she would. We ended the call.

On 11/20/2022 at approximately 1227 hrs I called Mr Cheripka and got his voice mail. I advised him that Mrs Biros stated he knows he has to call the court trustee and would not take his information. I told him is he needed to speak to me to call the station. I ended the call. I cleared.

On 11/20/2022 at approximately 1532 hrs Mr Snyder came into station. I had him come into the interview room and he showed me copies of two court order pertaining to this incident. The first order was an initial filing from back on 6/3/2022 the second was filed 11/14/2022 and appears to be signed by a Judge Gregory L. Taddonio. We went over the documents and I advised him take we are going to have to try to get hold of the court and possibly the trustee and get clarification on what is and is not correct with everything that is going on. We also need clarification as to what we are to do and or not to do. Mr Snyder gave me copies of the order and I added them to the report. I advised him i would try to have the day shift tomorrow try to contact the judge and get clarification as to what is the correct course of action with this. He left. I cleared.

I left a copy of this incident at the OIC desk and spoke to Sgt Wardman requesting that tomorrows daylight shift follow up with the trustee and the Judge on this incident.

| COMMENTS / NARRATIVES | | | |
|---|---|---|---|
| Title | | | |
| SUPPLEMENTAL REPORT | | | |
| Narrative Created By / Creation Date | | Narrative Updated By / Update On | |
| SCOTT THOMAS VARNER | 11/21/2022 | SCOTT THOMAS VARNER | 11/21/2022 |
| Narrative Approved By / Approved Date | | | |

On 11/21/2022 at approximately 1030 hours, Officer Varner contacted Robert Slone per request of Officer Bouldin.

I did speak with Slone, who is listed as the trustee of U Lock Inc in the original report. Slone confirmed that the property is now owned solely by Christine Biros. Slone did confirm that the Order Denying Stipulated Order for Relief from Stay filed on 11/14/2022 is the most current court order issued. This court order is related to Docket No. 211. Slone did state that no person(s) are permitted to be on the property without permission of Biros, however he does not know whether any permission was granted on the date of the incident (11/20/2022).

I did then contact the United States Bankruptcy Court for Western Pennsylvania, and spoke with the secretary of the court. She did state that she is familiar with the case, and I referred her to the docket number which she accessed. I did explain that our department simply wanted to know, per request of Biros, whether or not the appearance of George Snyder and Gary Cheripka on the property was in violation of the court order. She stated she would speak with Judge Taddonio directly and ask for clarification.

I was contacted by Holly from Bankruptcy Court at approximately 1600 hours. She did state that per the Judge: "the order speaks for itself, if Ms. Biros has any questions about who can or cannot be on her property, she or her attorney can contact the court for clarification". I did text Officer Bouldin to advise him of the update.

Officer cleared.

| 22-011680 | 11/20/2022 | ☒ | APPROVED BY: KARI BAUER | PAGE  4 |
|---|---|---|---|---|
| IRF 1.6 | | | APPROVED ON: 11/23/2022 | Print Date/Time    1/6/2023 8:05:25 AM |

# NORTH HUNTINGDON TWP PD

## Incident Report Form

22-011680
11/20/2022
CIVIL

### COMMENTS / NARRATIVES

Title
**SUPPLEMENTAL REPORT 00064**

| Narrative Created By / Creation Date | | Narrative Updated By / Update On | |
|---|---|---|---|
| **WILLIAM BOULDIN** | 11/23/2022 | **WILLIAM BOULDIN** | 11/23/2022 |

Narrative Approved By / Approved Date

On 11/23/2022 at approximately 0700 hrs I reviewed my texts and email and follow up report and new incident # 22-011705 from Officers Jandric and Varner in reference to this incident. From what I can tell Mrs Biros had full control of the property but with several stipulations that are to be handled through a court appointed trustee Robert Slone. It also appears that Mr Cheripka is permitted to get any property that is his and remove it from the property. I has also been stated that per the Trustee Mr Slone, Mr Cheripka is to contact, Mrs Biros's Attorney, William Otto to make arrangements. It was also stated from Judge Taddonio if Mrs Biros has a problem with who is on the property she is to contact the court. As far as I can understand this is not a police matter and just a civil matter between Mrs Biros. Mr Snyder and Mr Cheripka to be handled by the civil court. As of today I am closing this incident. I cleared.

| 22-011680 | 11/20/2022 | ☒ | APPROVED BY: **KARI BAUER** | | PAGE 5 |
|---|---|---|---|---|---|
| IRF 1.6 | | | APPROVED ON: **11/23/2022** | Print Date/Time   1/6/2023 8:05:25 AM | |

# NORTH HUNTINGDON TWP PD

## Incident Report Form

22-011705
11/21/2022
CIVIL

Primary Officer: <u>ANNA JANDRIC</u> - <u>00078</u>

| | | | | |
|---|---|---|---|---|
| ☐ Juvenile Involved | ☐ Investigation | ☐ Video Available | ☐ Gang Related | ☐ Paperless |
| ☐ Domestic Related | ☐ Suspects | ☐ Bias Crime | ☐ Accident | ☐ Administrative |
| ☐ Alcohol Involved | ☐ Arrests Made | ☐ Drugs Involved | ☐ Ready for DA / Prosecutor | ☐ Alarm Activated |

| Log Number 22-011705 | Incident Number 22-011705 | File Number | Case Number | | |
|---|---|---|---|---|---|
| Incident Type 056 CIVIL | | | Dispatcher d0119 | Source | District | Status NEW |

**Incident Date / Times**

Incident Occurred At or Between

| Date Received 11/21/2022 | Day Rec'd Monday | Rcvd 1034 | Disp 1036 | Arrv 0000 | Clrd 1110 | Earliest Date and Time | Latest Date and Time |
|---|---|---|---|---|---|---|---|

| Disposition NFPA NO FURTHER POLICE ACTION | Cleared by Exception | | ☐ Suspended |
|---|---|---|---|

| Location | | ☐ Intersection |
|---|---|---|

14140 E ROUTE #30
NORTH HUNTINGDON PA 15642

Cross Street

Municipality: NORTH HUNTINGDON TWP.

GPS Loc X 0     GPS Loc Y 0

| Business Name U LOCK | Premise Code STORAG STORAGE FACILITY | Arson Value |
|---|---|---|

| Gang | Weather |
|---|---|

Modus Operandi Coding

Victim:

Entry:

Property:

Exit:

Area: ROUTE 30 CORRIDOR
RT 30

Method:

Time of Day: AFTERNOON (NOON TO 5 PM)
ANON

WEAPON USED:

Caller / Complainant Type    Normal ☒    Anonymous ☐    Hangup ☐    Refused ☐

| 22-011705 | 11/21/2022 | ☐ | APPROVED BY: | PAGE 1 |
|---|---|---|---|---|
| IRF 1.6 | | | APPROVED ON: | Print Date/Time 1/6/2023 8:06:23 AM |

# NORTH HUNTINGDON TWP PD

## Incident Report Form

22-011705
11/21/2022
CIVIL

## INVOLVED PERSONS

### CALLER

CODE:  CALLER

| Name (Last, First, Middle) - Address | Juvenile | Date of Birth | Age | Race | Sex | Ethnic | Social Security Number |
|---|---|---|---|---|---|---|---|

BIROS, CHRISTINE
1 BIROS HILL
WHITE OAK PA 15131

Sex: F

| Weight | Height | Hair | Eyes | Phone Number |
|---|---|---|---|---|

| Driver License Number | State | Class | Expiration Date |
|---|---|---|---|

| ID Provided | ID Detail |
|---|---|

Link Comments

### DEFENDANT  ACTOR

CODE:  DEF

| Name (Last, First, Middle) - Address | Juvenile | Date of Birth | Age | Race | Sex | Ethnic | Social Security Number |
|---|---|---|---|---|---|---|---|

CHERIPKA, GARY ANTHONY
123 CATSKILL AVE
PITTSBURGH PA 15227

Race: W   Sex: M

| Weight | Height | Hair | Eyes | Phone Number |
|---|---|---|---|---|

| Driver License Number | State | Class | Expiration Date |
|---|---|---|---|

| ID Provided | ID Detail |
|---|---|

Link Comments

### OTHER

CODE:  OTHER

| Name (Last, First, Middle) - Address | Juvenile | Date of Birth | Age | Race | Sex | Ethnic | Social Security Number |
|---|---|---|---|---|---|---|---|

OTTO, WILLIAM E

Race: W   Sex: M

| Weight | Height | Hair | Eyes | Phone Number |
|---|---|---|---|---|

| Driver License Number | State | Class | Expiration Date |
|---|---|---|---|

| ID Provided | ID Detail |
|---|---|

Link Comments

### OTHER

CODE:  OTHER

| Name (Last, First, Middle) - Address | Juvenile | Date of Birth | Age | Race | Sex | Ethnic | Social Security Number |
|---|---|---|---|---|---|---|---|

SLONE, ROBERT H
223 SOUTH MAPLE AVE
GREENSBURG PA 15601

| Weight | Height | Hair | Eyes | Phone Number |
|---|---|---|---|---|

| Driver License Number | State | Class | Expiration Date |
|---|---|---|---|

| ID Provided | ID Detail |
|---|---|

Link Comments

## INVOLVED VEHICLES

### ACTOR VEHICLE

| Involvement | ACTV | Type (A=Auto/Truck) | Plate Number | State | PlateType Code | Tag Year | Date Linked | Current Vehicle |
|---|---|---|---|---|---|---|---|---|
| | | | LPB4839 | PA | SW | 2023 | 11/21/22 | ☑ |

| Vehicle Year | Make | Model | Color | Vehicle Identification Number (VIN) | USDOT Number | ICC Number |
|---|---|---|---|---|---|---|
| 2003 | GMC | | | 3GKFK16Z23G307500 | | |

| Vehicle Style/Type | Insurance Company | Insurance Company Policy Number |
|---|---|---|
| STATION WAGON | | |

Involvement Comments

## INVOLVED BUSINESSES / ORGANIZATIONS

11/21/2022

| 22-011705 | 11/21/2022 | ☐ APPROVED BY: | | PAGE  2 |
|---|---|---|---|---|
| IRF 1.6 | | APPROVED ON: | Print Date/Time  1/6/2023 8:06:23 AM | |

# NORTH HUNTINGDON TWP PD

22-011705
11/21/2022

## Incident Report Form

CIVIL

## INVOLVED BUSINESSES / ORGANIZATIONS

11/21/2022

| Business / Organization Name | Business Address |
|---|---|
| U LOCK | 13890 ROUTE #30 |

| Phone 1 | Phone 2 | Phone 3 | |
|---|---|---|---|
| | | | NORTH HUNTINGDON, PA 15642 |

Involvement Comments

## RESPONDING / INVOLVED UNITS, OFFICERS, TIMES

| Division | Supervisor / ID |
|---|---|
| | NICHOLAS SCOTT DREISTADT         00069 |

| Agency Numbers | Units & Times | | | |
|---|---|---|---|---|
| XX    XX-22-007442 | 00078 | DISP | 10:36:49 | |
| | | CLRD | 11:10:55 | |

## COMMENTS / NARRATIVES

Title
**Dispatcher**

| Narrative Created By / Creation Date | | Narrative Updated By / Update On |
|---|---|---|
| JEREMY BOROSKY | 11/21/2022 | |

Narrative Approved By / Approved Date

Input: d0119 11/21/2022 10:35:11   Edited: d0119 11/21/2022 10:35:11
AT BASE REPORTING TRESSPASSING AND THEFT FROM THE ABOVE

## COMMENTS / NARRATIVES

Title
**INITIAL INCIDENT REPORT**

| Narrative Created By / Creation Date | | Narrative Updated By / Update On | |
|---|---|---|---|
| ANNA JANDRIC | 11/21/2022 | ANNA JANDRIC | 11/21/2022 |

Narrative Approved By / Approved Date

On the above date and time, I, Ptlm. Jandric took a walk-in complaint regarding an ongoing trespassing issue.

I spoke with William E. Otto, Esq and Christine Biros (property owner) and they gave me a brief summary of what the issue was.

The summary of the incident is described below:

Christine is the property owner of 13890 E. Route 30, U Lock. U Lock runs the business on her property and recently went into bankruptcy.

Individuals who had items at the U Lock were given a certain number of days to retrieve their property and were advised they needed to vacate the property by Sept 20, 2022.The ones who did not remove property by that date were given instructions by the trustee of the property, Robert Slone - of Mahady and Mahady law firm on how to gain access from that point forward. The instructions advised everyone if they needed to retrieve property they would need to contact the trustee, or Christine Biros to make arrangements.

on November 15,2022 there was an amended court order that stated

| 22-011705 | 11/21/2022 | ☐ APPROVED BY: | PAGE   3 |
|---|---|---|---|
| IRF 1.6 | | APPROVED ON: | Print Date/Time   1/6/2023 8:06:23 AM |

# NORTH HUNTINGDON TWP PD

## Incident Report Form

22-011705
11/21/2022
CIVIL

Court : "Court orders indicate that the property belongs to Biros and she is free to do with it what she will, so long as she gives unrestricted access to the trustee and does not interfere with the estate, and subject to due diligence period. Will not authorize her to exercise powers that are otherwise in possession of the trustee."

Robert Slone (trustee) : Tenants ordered to vacate by Sept 20,2022. Still receiving checks from tenants U.S Steel Workers sent a check for rent last month, brought in by Mr. Snyder"

Court: Those who have been ordered to vacate are not entitled to have access to the property past that point. If there is a renter who needs to access past that point, they can gain access through the trustee"

Over the weekend Christine Biros captured photos of an individual on her property taking a TV and possibly other miscellaneous items out of the storage facility. The same individual returned on Sunday and was taking other items from the property. North Huntingdon Police responded. Officer Bouldin handled the call and advised Mr. Cheripka that he was not permitted to be on the property until we received confirmation or a court order that stated otherwise. Officer Bouldin informed him he was supposed to contact the trustee to gain access to the property.

Today, Monday November, 21st Christine and her attorney came to the station to ask for trespassing and theft charges to be filed on Mr. Cheripka due to yesterday's incident that Officer Bouldin was investigating.

I contacted the office of Mahady and Mahady and spoke with Mr. Slone, who did confirm Christine had full control of the property. He advised his office sent out letters to each person renting space from the property, Mr. Cheripka being one of those people. Mr. Slone advised, Cheripka has up until the end of November to remove his property but had to make arrangements with either him or Christine - and had not done that as of today. Mr. Slone stated he would email me a copy of the letter sent out to Mr. Cheripka. As of this time, I have still not recieved the email from Mr. Slone.

Officer Varner was asked to follow up on the case for Officer Bouldin - he contacted the trustee and was advised Christine had full control of the property as well.

Officcer Varner, myself and Sgt Dreistadt spoke about the situation and this incident should refrence back to incident **22-011680.**

**William Bouldin**

| | |
|---|---|
| **From:** | Anna Jandric |
| **Sent:** | Monday, November 21, 2022 4:57 PM |
| **To:** | William Bouldin |
| **Subject:** | Fw: U Lock, Inc. |
| **Attachments:** | U Lock Order.pdf |

*Ptlm. Anna Jandric*
**North Huntingdon Township**
11279 Center Hwy
Irwin, PA 15642
PH: 724-863-8800



**From:** Robert Slone <robertslone223@gmail.com>
**Sent:** Monday, November 21, 2022 2:24 PM
**To:** Anna Jandric <AJandric@nhtpd.us>
**Subject:** U Lock, Inc.

Dear Officer Jandrick:

Per our conversation, please find the court order dated 11/14/2022 issued in this case regarding the real property at 14140 U.S. Route 30, N. Huntingdon, PA.

I had last contacted Gary Cheripka by telephone on 10/21/22 and have instructed him again to make arrangements with Christine Biros' attorney, William Otto, to clear out his storage unit.  Mr. Cheripka is permitted to get his items from his storage unit.

Please call me if you have any further questions or concerns.

Thank you,

Robert H. Slone, Esquire
MAHADY & MAHADY
223 South Maple Avenue
Greensburg, PA 15601
(724) 834-2990
robertslone223@gmail.com

1

**Brian Hempel**

| | |
|---|---|
| **From:** | Troy Pecina |
| **Sent:** | Sunday, November 20, 2022 12:33 PM |
| **To:** | Brian Hempel |
| **Subject:** | Fwd: Property Access |
| **Attachments:** | Court Order 111122.pdf |

Get Outlook for iOS

**From:** William Otto <weo@ottolawfirm.com>
**Sent:** Saturday, November 19, 2022 4:49:18 PM
**To:** Troy Pecina <00086@nhtpd.us>
**Cc:** Christine Biros (christineb0610@yahoo.com) <christineb0610@yahoo.com>; Robert H. Slone (robertslone223@gmail.com) <robertslone223@gmail.com>; Sarah E. Wenrich (swenrich@bernsteinlaw.com) <swenrich@bernsteinlaw.com>
**Subject:** Property Access

Dear Sir:

This firm represents Ms. Christine Biros, the sole owner of that property located at 14140 US Route 30, North Huntingdon Township.  The attached document filed in the US Bankruptcy Court for the Western District of Pennsylvania is a filing by Judge Taddonio in the U Lock, Inc. bankruptcy case.

Please refer to the circled text on the second page of the attachment.  It clearly gives Christine Biros the authority to keep all others off the property, with the exception of Robert Slone, Esq., the U Lock Trustee.  George Snyder does NOT have authorization to enter the property, nor has access been granted to anyone else.

If you have any questions, please contact me.

Very truly yours.

William E. Otto, Esq.
Law Firm of William E. Otto, Esq.
PO Box 701
Murrysville, PA  15668

(724)519-8778 (Office)
(412)973-5837 (Cell)
www.ottolawfirm.com

1

**Brian Hempel**

| | |
|---|---|
| **From:** | Troy Pecina |
| **Sent:** | Sunday, November 20, 2022 12:33 PM |
| **To:** | Brian Hempel |
| **Subject:** | Fwd: The procedure to remove property from ulock |
| **Attachments:** | Slone Evict Ltrs 111122.pdf |

Get Outlook for iOS

**From:** christine biros <christineb0610@yahoo.com>
**Sent:** Saturday, November 19, 2022 4:30:16 PM
**To:** Troy Pecina <00086@nhtpd.us>
**Subject:** The procedure to remove property from ulock

Here is the latest trustee's instructions.
Thank You for your assistance in this matter.
Best Regards,
Christine Biros
412-901-8485

Sent from my iPhone

1

Chief Judge Gregory L. Taddonio

5490 U.S. Steel Tower
600 Grant Street
Pittsburgh, PA 15219
Ph. 412-644-3541

**List of Self-Scheduled Chapter 7, 11, 12 and 13 Hearing Dates** 📄

## Staff Information

| | | |
|---|---|---|
| **Chambers A - Main Line:** | | 412-644-3541 |
| **Law Clerks:** | | |
| Law Clerk | Steven J. Brujic | 412-644-4063 |
| Law Clerk | Charlotte Robertson | 412-644-6431 |
| **Courtroom Deputies:** | | |
| Cases ending in 1, 2: | Janet Heller | 412-316-1662 |
| Cases ending in 3, 4, 5, 6: | Holly Thurman | 412-644-4064 |
| Cases ending in 7, 8, 9, 0: | Doug Basinski | 412-316-1661 |

Filed Main
11/15/22 12:13 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| In re: | : | | |
| | : | Case No.: | 22-20823-GLT |
| U LOCK INC | : | Chapter: | 7 |
| | : | | |
| | : | | |
| | : | | |
| | : | Date: | |
| _Debtor(s)._ | : | Time: | |

### PROCEEDING MEMO

**MATTER:**    # 175 Motion For Sale of Property under Section 363(b) Tangible and Intangible Personal Property of the Estate
filed by the ch.7 trustee

> #181 - Proof of Publication in the Tribune-Review on 9/30/2022
> #182 - Proof of Publication in the Westmoreland Law Journal on 9/30/2022
> #183 - Objection filed by the Debtor
> #184 - Objection filed by Shanni Snyder
> #185 - Objection filed by George Snyder
> #197 - Verified Statement filed by Christine Biros
> #198 - Verification of Connections filed by Shanni Snyder
> > #202 - Reply to Objections to Sale Motion and to Verification of Connections of Shanni Snyder

> #189 Certification of Counsel Regarding Stipulated Order for Relief From Stay Filed by Creditor Christine Biros
> [Response due at the time of the hearing]
> #200 - Objection filed by Debtor

**APPEARANCES:**

| | |
|---|---|
| ULOCK: | J. Allen Roth [George Snyder] |
| Trustee: | Robert H. Slone |
| Christine Biros: | Sarah Wenrich, Bob Bernstein , William Otto |
| Shanni Snyder: | John Joyce |

**NOTES:**    [11:48]

Slone: Received offer from Christine Biros to purchase assets. Have received 3 objections to the sale moving forward. Deposit provided in September 2022 in connection with the original sale. Hand money sent August 16, 2022. Three bidders tendered deposits: Biros, USAAG, and Shanni Snyder. Wrong hearing date used on the publication notice, but the new proof of publication have the correct date and occurred with in the appropriate time provided by the local rules. Also wants to make clear that he is selling the trustee's interest in the assets, not selling physical property. As is, where is, sale. No representations or warranties.

Court: Can you speak to some of the environmental concerns? Has there been notice of this sale to any regulatory agency?

Slone: May be some environmental issues. Believes an environmental engineer has been to the property. There has not been notice of the sale to any environmental agencies.

Court: Why is clean up component included in the sale?

Slone: Put it in because it was in the offer.

Court: Why should a buyer provide a $25,000 bond for a removal of assets in the competing bid? Where is the estate's liability there? Once the assets are sold, there is no further responsibility.

Wenrich: Risk that assets on the property could cause further damage and just wants to avoid further damage to the property.

Joyce: Points out that the error in date on publication notice has not actually been fixed. Also does not believe that nothing in the motion specifies that the sale is "as is, where is" or "free and clear." Has concerns about the sufficiency of the description of the assets being sold and sufficiency of notice of sale. Dislikes environmental assumption of liability. Would proceed with sale if concerns are addressed.

Roth: Would also allow sale to proceed if concerns are addressed.

Joyce: Issues with language in sale order.

Case 22-20823-GLT    Doc 291    Filed 01/09/23    Entered 01/11/23 14:31:36    Desc Main
Case 22-20823-GLT    Doc 252    Filed 11/15/22    Entered 11/15/22 12:41:19    Desc Main
Document    Page 30 of 39
Document    Page 2 of 2

**Page 185**

Wenrich: Is okay with sale being just "as is, where is" and not free and clear. For the environmental bond, the $100,000 is an amount that they got from an environmental engineer. Environmental liability is fully related to the garbage truck incident. Sees no valid basis for not continuing with the sale at this point.

Mr. Snyder: Wants to mention that he is not allowed to be on the property and he can't get on the property to inventory / evaluate the value of his assets on the property. Wants to go on the property to get his things.

Court: That is outside of the bankruptcy courts jurisdiction. But to the extent assets are being removed or destroyed without the trustees consent, that should stop.

...

Court: Stipulated order, State court orders indicate that property belongs to Biros and she is free to do with it what she will, so long as she gives unrestricted access to the trustee and does not interfere with the estate, and subject to due diligence period. Will not authorize her to exercise powers that are otherwise in possession of the trustee. Stipulation problematic.

Slone: Tenants ordered to vacate by September 20, 2022. But still receiving checks from tenants. U.S. Steel Workers sent a check for rent last month. Brought by Mr. Snyder.

Court: Those who have been ordered to vacate are not entitled to have access to the property past that point. If there is a renter who needs access past that point, they can gain access through the trustee.    deny stipulation for stay relief.

*OUTCOME:*

1) For the reasons stated on the record, the *Motion For Sale of Property under Section 363(b) Tangible and Intangible Personal Property of the Estate Filed by chapter 7 trustee* [Dkt. No. 175] is continued to December 1, 2022 at 10 a.m. [Chambers to Prepare].

2) For the reasons stated on the record, the *Certification of Counsel Regarding Stipulated Order for Relief From Stay Filed by Creditor Christine Biros* [Dkt. No. 189] is DENIED as submitted. [Chambers to Prepare].

**DATED:** 11/10/2022

LAW OFFICES
**MAHADY & MAHADY**
223 S. MAPLE AVENUE
GREENSBURG, PENNSYLVANIA 15601

1308 LIGONIER STREET
LATROBE, PENNSYLVANIA 15650

SUITE 5 - JACKTOWN PROFESSIONAL BUILDING
11343 ROUTE 30
N. HUNTINGDON, PA 15642

PATRICK H. MAHADY
ROBERT H. SLONE
GEORGE A. BUTLER
SUZANNE J. MAHADY

REGIS F. MAHADY (1933-1973)
HON. PAUL W. MAHADY (1933-1973)
HENRY J. MAHADY (1945-1989)
THOMAS R. MAHADY (1948-1971)

Telephones:
GREENSBURG - 724/834-2990
LATROBE - 724/537-7761
N. HUNTINGDON - 724/863-0628
FAX - 834-1250
e-mail - mahady@pulsenet.com

**Please reply to:**

**GREENSBURG OFFICE**                                    November 11, 2022

James Clawson
2437 Saunders Station Road
Monroeville, PA 15146

    In Re:   U Lock, Inc.
        Chapter 7 Bankruptcy Case No. 22-20823-GLT

Dear Mr. Clawson

    Enclosed please find a copy of the letter sent to you on August 30, 2022 for your reference.

    Please be advised that U Lock, Inc. has ceased operations. All of your personal property contained in the storage unit you have been renting from U Lock, Inc. must be **_removed no later than November 30, 2022_**. To make arrangements to get access to the unit, please contact attorney William Otto at (724) 519-8778, email weo@ottolawfirm.com.

    Thank you for your attention to this matter.

                    Very truly yours,

                    MAHADY & MAHADY

                    Robert H. Slone, Esquire

RHS/kds
Enclosure
cc: William Otto, Esq.

LAW OFFICES
## MAHADY & MAHADY
223 S. MAPLE AVENUE
GREENSBURG, PENNSYLVANIA 15601

1308 LIGONIER STREET
LATROBE, PENNSYLVANIA 15650

SUITE 5 - JACKTOWN PROFESSIONAL BUILDING
11343 ROUTE 30
N. HUNTINGDON, PA 15642

PATRICK H. MAHADY
ROBERT H. SLONE
GEORGE A. BUTLER
SUZANNE J. MAHADY

REGIS F. MAHADY (1933-1973)
HON. PAUL W. MAHADY (1933-1973)
HENRY J. MAHADY (1945-1989)
THOMAS R. MAHADY (1948-1971)

Telephones:
GREENSBURG - 724/834-2990
LATROBE - 724/537-7761
N. HUNTINGDON - 724/863-0628
FAX - 834-1250
e-mail - mahady@pulsenet.com

**Please reply to:**

      **GREENSBURG OFFICE**　　　　　　　　　　　November 11, 2022

United Steelworkers of America
Local 1913
1945 Lincoln Highway
North Versailles, PA 15143

    In Re:　U Lock, Inc.
          Chapter 7 Bankruptcy Case No. 22-20823-GLT

Dear Sir/Ms.:

    Enclosed please find a copy of the letter sent to you on August 30, 2022 for your reference.

    Please be advised that U Lock, Inc. has ceased operations. All of your personal property contained in the storage unit you have been renting from U Lock, Inc. must be **_removed no later than November 30, 2022_**. To make arrangements to get access to the unit, please contact attorney William Otto at (724) 519-8778, email weo@ottolawfirm.com.

    Thank you for your attention to this matter.

                      Very truly yours,

                      MAHADY & MAHADY

                      Robert H. Slone, Esquire

RHS/kds
Enclosure
cc: William Otto, Esq.

FILED
11/14/22 3:40 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Case No. 22-20823-GLT |
| **U LOCK INC.,** | : | |
| | : | Chapter 7 |
| *Debtor.* | : | |
| | : | |
| **ROBERT H. SLONE,** in his capacity as | : | |
| chapter 7 trustee of U Lock, Inc., and | : | |
| **CHRISTINE BIROS,** | : | |
| | : | |
| *Movant,* | : | Related to Dkt. No. 189, 200, 205, 206 |
| | : | |
| v. | : | |
| | : | |
| **U LOCK INC., CHARLES O. ZEBLEY,** as | : | |
| chapter 7 trustee of the estate of Shanni | : | |
| Snyder, **SHANNI SNYDER, GEORGE** | : | |
| **SNYDER,** and **KASH SNYDER,** | : | |
| | : | |
| *Respondents.* | : | |

## **ORDER DENYING STIPULATED ORDER FOR RELIEF FROM STAY**

Robert H. Slone, the chapter 7 trustee for U Lock Inc., and creditor Christine
Biros jointly filed a *Stipulated Order for Relief from Stay.*[1]  The stipulation suffers from several
procedural defects.  Although submitted under a certification of counsel, it is unclear whether
the "agreed form of order has been reviewed and approved by all parties affected by the
order."[2]  As shown by the objections subsequently filed by several parties, the Court has reason
to question the veracity of the certification.[3]  In addition, the stipulation seeks significant
substantive relief from the Court, and yet – absent consent of the responding parties – it was
not filed as a motion as directed by the local rules.[4]  Notwithstanding these anomalies, the

---

[1]   Dkt. No. 189.
[2]   W.Pa.LBR 9013-8(b).
[3]   See Dkt. Nos. 200, 205, 206.
[4]   W.Pa.LBR 9013-1(c).

Court still scheduled the stipulation for hearing to air its concerns about a perceived effort to delegate the trustee's powers and authority to Biros.[5] After conducting a hearing on the stipulation on November 10, 2022, and for the reasons stated on the record, it is hereby

**ORDERED, ADJUDGED, and DECREED** that:

1.    The *Stipulated Order for Relief from Stay* [Dkt. No. 189] is **DENIED** as procedurally defective because it does not contain the consent of the respondents, nor was it filed as a motion.

2.    Based on troublesome comments made during the hearing, the Court is compelled to clarify several items to ensure there can be no mistake as to what actions the Court previously authorized:

(a)    On June 3, 2022, the Court issued an *Order Granting Christine Biros Limited Relief from the Stay* [Dkt. No. 36]. Through that Order, Biros was authorized to remove

(i)    "vehicles or trailers" (remaining after June 24, 2022);[6]

(ii)    "tires" (remaining after June 17, 2022 and with notice);[7] and

(iii)    "tanks identified as waste" (remaining after June 24, 2022 and with notice).[8]

The Court further directed that nothing in this order shall … be construed as an ejectment of U Lock [or] authorize the removal of any U Lock property that does not impede the environmental remediation efforts. Based on the foregoing, and after review of its docket, the Court finds nothing in the record that authorizes Biros to remove or destroy any items other than those listed above. Furthermore, the trustee has not identified any additional assets for abandonment on the record.

---

[5]    The hearing was originally scheduled for November 2, 2022, but was rescheduled to November 10, 2022 at the request of the parties. *See* Dkt. Nos. 190, 195.

[6]    Dkt. No. 36, ¶ 6.

[7]    Id. at ¶ 7.

[8]    Id. at ¶ 8.

(b)  Notwithstanding the foregoing, as the deed holder of the real property

located at 14140 U.S. Route 30, North Huntington, Pennsylvania (the "Real Property"),

Biros may (subject to the terms of this Order):

      (i)  implement any security measures she deems necessary, including but not limited to, the installation of video cameras for security and surveillance monitoring, limiting access to the Real Property, and/or hiring personnel to monitor and further secure the Real Property;

      (ii)  complete an in-depth walk through of the Real Property, identifying any areas which are locked and inaccessible, but may not enter any storage unit, locked or otherwise, or remove any property therefrom; and

      (iii)  Nothing in this Order shall impair the chapter 7 trustee or any storage tenant (provided said tenant is paid current through November 2022)[9] to have unfettered access to the Real Property. It is anticipated the trustee will conclude any rental arrangements through November 30, 2022 so as to effectuate a closing on the sale of the estate's assets in December 2022.

The Court finds that subject to paragraph (b)(iii), these actions do not

require stay relief because they do not interfere with the administration of

the estate and strike the balance necessary to protect Biros' interest in the

Real Property and the trustee's interest in maximizing value of the

bankruptcy estate for the benefit of creditors.


BY THE COURT:

Dated: November 14, 2022

_signature_
sjb

**GREGORY L. TADDONIO**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

---

[9]  The trustee represented that he recently accepted rental payments from one or two tenants.

FILED
6/3/22 5:04 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Case No. 22-20823-GLT |
| **U LOCK INC.,** | : | Chapter 7 |
| *Alleged Debtor.* | : | |
| | : | |
| **CHRISTINE BIROS,** | : | |
| *Movant,* | : | Related to Dkt. No. 14, 22 & 28 |
| v. | : | |
| **U LOCK INC.** and **SHANNI SNYDER,** | : | |
| *Respondents.* | : | |

### ORDER GRANTING CHRISTINE BIROS
### LIMITED RELIEF FROM THE STAY

    Shanni Snyder commenced these proceedings by filing an involuntary bankruptcy petition against the alleged debtor, U Lock Inc., on April 27, 2022. By operation of law, a stay was imposed under 11 U.S.C. § 362(a) protecting the assets, rights, and interests of U Lock from, among other things, certain creditor actions that arose prepetition. U Lock has yet to file a response to the involuntary petition, but the deadline to do so has not yet expired.

    Christine Biros holds deeds to the property located 14140 Route 30, North Huntingdon, Pennsylvania (the "Property") wherein U Lock conducts its business operations. She obtained the deeds through a state court judgment that was affirmed on appeal and constitutes a final, non-appealable order. Ms. Biros now requests either dismissal of the bankruptcy case or stay relief to eject U Lock from the Property.[1] She also contends the

---

[1] See *Motion for Entry of an Order (I) Dismissing the Case and for Sanctions against the Petitioning Creditor, or in the alternative (II) Making a Determination that the Automatic Stay is Inapplicable to State Court Action pursuant to 11 U.S.C. § 362(b)(10), or in the alternative (III) Granting Relief from the Automatic Stay to the Movant in relation to the Movant's Property and the State Court Case, or in the*

1

Property is adversely affected by several environmental issues which have not been remediated. The *Motion* is opposed by both U Lock and Ms. Snyder.

The Court conducted an emergency hearing on June 2, 2022 to consider the *Motion* and responses. At the conclusion of the proceeding, the Court indicated it would grant limited stay relief to Ms. Biros and defer consideration of the remainder of the *Motion* until July 6, 2022 so as to have the benefit of U Lock's response to the involuntary petition. The Court invited the parties to craft a consent order granting limited stay relief consistent with its ruling. But after reviewing the parties' recent submissions,[2] it is apparent that no agreement exists. In the absence of any consensus, the Court deems it necessary to draft its own order addressing the matters adjudicated at the June 2, 2022 hearing. Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that Ms. Biros is hereby granted limited relief from the stay under 11 U.S.C. § 362(a) under the following terms:

1.     Ms. Biros shall be permitted to immediately commence environmental remediation activities subject to the following: absent further Court Order or the consent of U Lock, Ms. Biros may not secure portions of the Property or restrict access to U Lock or its tenants. U Lock has not yet been adjudicated as a bankruptcy debtor and based on the Court's preliminary understanding, it continues to conduct business operations on the Property.

2.     With respect to the "garbage truck incident," Ms. Biros may conduct ground tests, take photographs, lodge an insurance claim with the waste management company that caused the accident, or initiate any legal action against that third-party related to the incident. Any ground tests and photographs shall occur during normal business hours (upon no less than 48-hours notice) and shall not impede U Lock's operations.

3.     U Lock shall remove all vehicles and trailers from the Property, and any and all proceeds received from the removal and/or sale of such items (including salvage and scrap payments) shall be held in escrow by U Lock's counsel until further order of this Court.

---

alternative *(IV) Abandoning the Movant's Property* [Doc. No. 14] (the "Motion"). Any capitalized term not otherwise defined herein shall have the same meaning ascribed in the *Motion*.

[2]     See Dkt. Nos. 28-29, 32-33.

2

4.     U Lock shall immediately make arrangements with the police to "tag" unauthorized vehicles on the Property.  Ms. Biros and her counsel may assist, facilitate, or demand the police move forward with the tagging process.

5.     U Lock shall remove all vehicles and trailers from the Property on or before the earlier of:  (a) June 24, 2022, or (b) ten (10) days after the date the police place "tags" on the subject vehicles.  To the extent U Lock requires additional time, it may make a reasonable request for an extension from Ms. Biros that shall not be unreasonably denied.

6.     Any vehicles or trailers remaining on the Property after June 24, 2022 (or such additional time as agreed by Ms. Biros) may be removed and disposed of by Ms. Biros at her convenience.  Notwithstanding the foregoing, the trailers pictured on **Exhibit "A"** hereto are disclaimed by U Lock and may be removed by Ms. Biros upon no less than 48-hours notice.

7.     On or before June 10, 2022, U Lock shall identify any tires placed on the Property by U Lock.  U Lock shall remove such tires on or before June 17, 2022.  Thereafter, Ms. Biros is authorized to remove any tires located on the Property upon no less than 48-hours notice.

8.     On or before June 10, 2022, U Lock shall itemize the tanks on the Property (listing them as unused, salvageable, or waste) and shall disclose the same to Ms. Biros.  All unused and salvageable tanks located on the Property shall be removed by U Lock on or before June 24, 2022.  Any and all proceeds related to the removal and/or sale of such items (including salvage and scrap payments) shall be held in escrow by U Lock's counsel until further order of this Court.  All tanks identified as waste by U Lock may be removed by Ms. Biros upon no less than 48-hours notice.

9.     Upon at least 48-hours notice, Ms. Biros may enter the Property with licensed contractors to conduct bona fide environmental testing and/or to create plans for remediation.

10.    Except as provided herein, nothing in this order shall:  (a) be construed as an ejectment of U Lock, (b) authorize the removal of any U Lock property that does not impede the environmental remediation efforts, and (c) authorize Ms. Biros to interfere with or impede U Lock's ongoing business operations or its tenant relationships.

11.    To the extent U Lock consents to bankruptcy relief, it shall disclose its list of tenants on *Schedule G*.  In the event U Lock does not consent to bankruptcy relief, it shall provide Ms. Biros with a list of tenants on or before June 17, 2022.

12.    If either U Lock or Ms. Biros fails to comply with the terms of this *Order*, the other respective party may file a notice of the non-compliance which shall specifically indicate:  (i) what action(s) have been taken since the entry of this *Order*, and (ii) what required actions remain outstanding.

3

13.     The remaining requests for relief in the *Motion*, as well as any related claims or defenses thereto by U Lock and Ms. Snyder are preserved pending the continued hearing on the *Motion* scheduled for July 6, 2022.

BY THE COURT:

Dated: June 3, 2022

Gregory L. Taddonio    **hct**
United States Bankruptcy Judge

BNC to serve:
U Lock Inc.
Christine Biros
Shanni Snyder

4

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In re: | : | Case No. 22-20823-GLT |
|  | : | Chapter 7 |
| **U LOCK, INC.,** | : |  |
|  | : |  |
| *Debtor.* | : | Related to Dkt. Nos. 258, 277, 285, 291 |
|  | : |  |

| | |
|---|---|
| Robert S. Bernstein, Esq. | John B. Joyce, Esq. |
| Lara S. Martin, Esq. | Jeremy J. Kobeski, Esq. |
| Bernstein Berkley, P.C. | Grenen & Birsic, P.C. |
| Pittsburgh, PA | Pittsburgh, PA |
| *Attorneys for Christine Biros* | *Attorneys for Shanni Snyder* |
| | |
| Robert H. Slone, Esq. | J. Allen Roth, Esq. |
| Mahady & Mahady | J. Allen Roth, Attorney at Law |
| Greensburg, PA | Latrobe, PA |
| *Chapter 7 trustee* | *Attorney for the Debtor* |

## <u>MEMORANDUM OPINION</u>

"Pigs get fat, hogs get slaughtered." Clichéd as it is, the adage thrives in bankruptcy circles precisely because it is a stark warning against the perils of overreach. Case in point: creditor Christine Biros filed a motion ("Motion") requesting an allowed administrative expense claim under section 503(b)(1)(A) of the Bankruptcy Code[1] arising from the chapter 7 estate's use and occupancy of her commercial property in North Huntingdon, Pennsylvania ("Property").[2] An expected and conceptually appropriate request. But the *Motion* obscenely demands a payment of $144,000—an amount more than twice the present value of the entire estate. Unsurprisingly, the *Motion* elicited universal derision from the parties in interest.[3]

---

[1] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as thereafter amended, 11 U.S.C. § 101, *et seq*. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[2] *Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)*, Dkt. No. 258.

[3] <u>See</u> *Trustee's Response to Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant To 11 U.S.C. § 503(b)(1)*, Dkt. No. 277; *Shanni Snyder's Objections to Christine Biros' Motion*

Because the administrative expense claim as asserted is a fanciful nonstarter, the Court will deny the *Motion* without prejudice and cancel the self-scheduled hearing. Still, for the reasons below, the *Motion* is so plainly frivolous that the Court will require both Ms. Biros and her counsel, Attorney Robert S. Bernstein, to show cause why the Court should not impose sanctions under Bankruptcy Rule 9011.

## I.   BACKGROUND

The Property is essentially a junkyard on Route 30, littered with construction debris, scrap piles, tire mounds, collapsed trailers, and inoperable vehicles. It contains two structures: a large, free-standing garage/warehouse and a rundown, single-story self-storage building. The Property is also subject to environmental contamination and was the site of a literal garbage fire post-petition.[4] Despite its present condition, the parties believe the Property is a "diamond in the rough" given its potential for commercial development. Indeed, the Debtor estimated the Property's value in 2022 as $1.9 million.[5] Frankly, the intense desire to reap those unrealized rewards has often driven the parties towards vitriol and litigation beyond all sense and reason for nominal, if not Pyrrhic, victories.

The Property was once owned by the Debtor and was its principal place of business. The Debtor purchased it in 2015 for $325,316 with funds advanced by Ms. Biros.[6] Though the Debtor operated a self-storage facility on the Property, the business and its minimal revenue (less than $1,500 per month) was incidental to the Debtor's aim to develop a retail plaza

---

for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)*, Dkt. No. 285; *Objections of George Snyder to Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. 503(b)(1)*, Dkt. No. 291.

[4]   See, e.g., *Claim No. 4*.

[5]   See *Schedule A/B: Assets – Real and Personal Property*, Dkt. No. 60 at 6. Notably, no one has ever offered evidence in support of that valuation.

[6]   *Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)*, Dkt. No. 258 at ¶ 14.

on the site.[7]  Yet, after years of litigation, Ms. Biros obtained the exclusive deeds to the Property

through a final, non-appealable state court judgment in her favor.[8]  Then, creditor Shanni

Snyder[9] filed an involuntary chapter 7 petition against the Debtor in April 2022,[10] and a default

order for relief entered on June 17, 2022.[11]  As a result, the Debtor occupied the Property without

a lease agreement at the commencement of this case.

On the petition date, the Property housed the estate's tangible assets, which

consisted mostly of scrap of inconsequential value.[12]  For the last eight months, the estate

remained in possession of the Property pending a sale of those assets.  The process was

frustratingly protracted for two main reasons.  First, the sale of the tangibles became intwined

with the estate's far more alluring intangible assets, including the right to bring a speculative

avoidance action against Ms. Biros to recover the Property.  Second, many of the tangible assets

had disappeared from the Property by the initial sale hearing, prompting an investigation.

The estate's possession of the Property has been constant but not exclusive.  In

June 2022, Ms. Biros was granted limited stay relief to start environmental remediation activities

and has had effective control of the Property ever since.[13]  Her exercise of control has raised

concerns throughout this case.  For example, Ms. Biros allegedly barred the Debtor's tenants

---

[7]       See *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy*, Dkt. No. 65 at 17.

[8]       See Biros v. U Lock, Inc., 255 A.3d 489 (Pa. Super. Ct. 2021), reargument denied (July 28, 2021), appeal denied, 271 A.3d 875 (Pa. 2022) (affirming trial court order directing conveyance of the property to Biros). On January 20, 2022, the Court of Common Pleas of Westmoreland County, Pennsylvania issued an order directing the release of deeds to the Real Property to Biros. See Biros v. U Lock, Inc., No. 17CJ04886 (Pa. Ct. Comm. Pl. January 20, 2022).

[9]       In addition to being a creditor, Shanni Snyder is the sister of the Debtor's director and majority shareholder, George Snyder.

[10]      *Involuntary Petition Against a Non-Individual*, Dkt. No. 1.

[11]      *Order for Relief under Chapter 7*, Dkt. No. 42.

[12]      See *Schedule A/B: Assets – Real and Personal Property*, Dkt. No. 60 at 1-10.

[13]      See *Order Granting Christine Biros Limited Relief from the Stay*, Dkt. No. 36.

from removing their personal property from the storage facility as directed by the trustee.[14]  It is
undisputed, however, that she removed estate assets from the Property to an undisclosed location
before the sale without informing the chapter 7 trustee.[15]   Whether her conduct violated the
automatic stay or improperly interfered with the sale of estate assets is the subject of a separate
*Order to Show Cause*.[16]  The point here is twofold: (1) the extent of the estate's possession of the
Property has been limited; and (2) Ms. Biros has seemingly extended the estate's possession by
delaying the expeditious resolution of this case.

A sale of the tangible and intangible assets for $70,000 closed on December 28,
2022.[17]  As a practical matter, the tangible assets—which again, consisted largely of scrap—
seemingly had only a modest impact on the ultimate sale price, as the prevailing bidder's initial
bid of $63,500 excluded them.[18]  This conclusion is also supported by the assessment of a
professional auctioneer who surveyed the tangible assets and declined to market them, as well as
the lack of interest from salvage dealers.  In any event, the sale proceeds currently represent the
only substantial asset of the estate, though the trustee collected some de minimis storage fees and
is examining potential avoidance actions against the Debtor's principle, George Snyder.[19]

Days after the sale order entered, Attorney Bernstein filed the *Motion* on behalf of
Ms. Biros.  As previewed, Ms. Biros asserts an administrative expense claim in the amount of
$144,000, arguing that the estate's benefit from the post-petition use of the Property is beyond

---

[14]   See, e.g., *Objections of George Snyder to Christine Biros' Motion for Allowance of Administrative Expense
Claim Pursuant to 11 U.S.C. § 504(b)(1)*, Dkt. No. 291.

[15]   See *Verification of Christine Biros*, Dkt. No. 231.

[16]   See *Order to Show Cause*, Dkt. No. 249; *Amended Order to Show Cause*, Dkt. No. 278.

[17]   See *Report of Sale Regarding Tangible and Intangible Personal Property of the Estate*, Dkt. No. 266.

[18]   *Notice of Qualified Bids Regarding Sale of Tangible and Intangible Personal Property of the Estate under
11 U.S.C. Section 363(f) Free and Clear of All Liens, Claims and Encumbrances*, Dkt. No. 224 at Ex. A.

[19]   The winning bid also provided a carve-out for the estate to share in any chapter 5 recovery. Id.  While such
a recovery is possible, it remains speculative as no avoidance actions have been filed or even articulated
with any specificity.

dispute.[20]    Employing a return-on-investment metric absent any lease, she contends that a reasonable value for the use of the Property is $18,000 per month.[21]    Although the *Motion* does not walk the Court through the arithmetic, it appears Ms. Biros assumes a return rate of 11.82% on a capital investment of $1.9 million.[22]

The *Motion* is particularly striking considering the Court's comments at the sale hearing.  As part of Ms. Biros' bid, the Court authorized a $10,000 administrative claim waiver, finding that roughly $1,500 a month was reasonable commercial rent.[23]  The Court subsequently refused to increase the credit bid, admonishing all parties for their "lack of common sense" in litigating without "any cognizable appreciation of what the value is of these assets."[24]  While the Court left determination of Ms. Biros' administrative claim for another day, the Court specifically cautioned her against making any hoggish demands.[25]

## II.    JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B).

---

[20]    *Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)*, Dkt. No. 258 at ¶¶ 39-42.

[21]    Id. at ¶¶ 20-22.

[22]    Id. at ¶¶ 23-30.

[23]    *Transcript of December 15, 2022 Hearing*, Dkt. No. 264 at 21:5-11.

[24]    Id. at 21:12-23:9.

[25]    Id. at 21:15-16.

## III.   DISCUSSION

Section 503(b)(1)(A) of the Bankruptcy Code allows a first priority administrative expense claim for "the actual, necessary costs and expenses of preserving the estate . . . ."[26]  To qualify for priority treatment under this subsection, the expense must arise from a "post-petition transaction between the claimant and the estate" and have "yielded a benefit to the estate."[27] Requiring a benefit to the estate is "merely a way of testing whether a particular expense was truly 'necessary.'"[28]  Although the benefit need not be "readily calculable" in dollars and cents, it "must be *actual*, not hypothetical."[29]    Additionally, the "requested claims must be reasonable—as it is 'axiomatic that *unreasonable expenses . . . would never be necessary.*'"[30] Claimants "carry the heavy burden" of proving their entitlement to an administrative expense priority.[31]

The United States Court of Appeals for the Third Circuit has recognized that "the payment of rent for the use and occupancy of real estate ordinarily counts as an 'actual, necessary' cost to which a landlord, as a creditor, is entitled."[32]    But this comes with an important caveat: "a debtor is generally required to pay only a *reasonable value* for the use and

---

[26]    11 U.S.C. § 503(b)(1)(A).

[27]    In re Energy Future Holdings Corp., 990 F.3d 728, 741 (3d Cir. 2021).

[28]    Id. (quoting Nabors Offshore Corp. v. Whistler Energy II, LLC (In re Whistler Energy II, LLC), 931 F.3d 432, 443 (5th Cir. 2019)) (internal quotation marks omitted).

[29]    Id. at 742 (emphasis in original); see also In re Marcal Paper Mills, Inc., 650 F.3d 311, 315 (3d Cir. 2011) ("By limiting priority to those claims that are actual and necessary, the Code prevents the estate from being consumed by administrative expenses, and preserves the estate for the benefit of the creditors.").

[30]    In re Energy Future Holdings Corp., 990 F.3d at 742 (quoting In re Express One Int'l, Inc., 217 B.R. 207, 211 (Bankr. E.D. Tex. 1998)) (emphasis added).

[31]    See In re Marcal Paper Mills, Inc., 650 F.3d at 315; In re Goody's Fam. Clothing Inc., 610 F.3d 812, 818 (3d Cir. 2010); Calpine Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien Env't Energy, Inc.), 181 F.3d 527, 533 (3d Cir. 1999).

[32]    Zagata Fabricators, Inc. v. Superior Air Prods., 893 F.2d 624, 627 (3d Cir. 1990).

6

occupancy of the landlord's property."[33]  After all, an administrative expense is measured by the "benefit to the estate, *not* the loss to the creditor."[34]

From the outset, the Court notes that Ms. Biros is likely entitled to a reasonable administrative expense claim for the estate's post-petition use of the Property.  The tangible assets were (or at least should have been) kept at the Property while awaiting the sale.  They needed to be stored somewhere, and the estate enjoyed the added benefit of not having to move them.  This would appear to be a prototypical actual and necessary administrative expense under Third Circuit precedent.  Indeed, the Court authorized a $10,000 credit bid on account of Ms. Biros' prospective claim.  That said, an administrative expense claim in the amount of $144,000 is patently absurd.

The *Motion* suffers from a trifecta of problems.  First, a return-on-investment metric is obviously an inappropriate standard under section 503(b)(1)(A) because it ignores the actual fair market value of the benefit granted to the estate.  Instead, Ms. Biros simply demands a return on the alleged value of her investment.  This leads to the second issue: her calculation lacks a factual basis.  Ms. Biros' capital investment is $325,316, not the estimated $1.9 million, and the Property cannot be developed until she completes "costly" environmental remediation.[35]  Finally, the claimed amount is grossly unreasonable.  At $144,000, Ms. Biros' administrative expense claim is more than double the sale proceeds and likely the total value of the estate.  Even a single monthly payment of $18,000 greatly exceeds the value of the tangible assets that were

---

[33]   Id. (emphasis added); see also In re Goody's Fam. Clothing Inc., 610 F.3d at 819 (collecting cases recognizing that landlords are entitled to the fair market value of a debtor's use and occupation of premises).

[34]   In re Energy Future Holdings Corp., 990 F.3d at 742 (quoting In re Whistler Energy II, LLC, 931 F.3d at 443) (internal quotation marks omitted, emphasis added); see also Am. Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S. A., 280 F.2d 119, 126 (2d Cir. 1960); In re C & L Country Mkt. of New Mkt., Inc., 52 B.R. 61, 63 (Bankr. E.D. Pa. 1985); In re Ram Mfg., Inc., 38 B.R. 252, 254 (Bankr. E.D. Pa. 1984).

[35]   See *Claim No. 4.*

stored at the Property.  In fact, the Debtor's annual revenues were less than $18,000 prepetition, to say nothing of the pittance the trustee's post-petition operation of the self-storage facility yielded to the estate.  Given these numbers, neither Ms. Biros nor Attorney Bernstein could have plausibly believed that $144,000 as requested by the *Motion* was an actual, necessary cost of preserving the estate.

There lies the bigger concern.  On its face, the *Motion* seemingly implicates several paragraphs of Bankruptcy Rule 9011(b).[36]  There was no basis in law for the return-on-investment standard urged,[37] which should have been apparent from the authority cited in the *Motion* itself.[38]  Nor was the calculation of the administrative expense well-grounded in fact.[39]  And, most egregiously, the amount of the claim is so beyond the pale that the Court cannot fathom a proper, non-frivolous purpose to the *Motion*.[40]

Despite the Court's repeated warnings, the parties to these proceedings have continuously pushed the boundaries of reasonable conduct, needlessly complicating and delaying the administration of a modest estate.  The Court can only conclude that they have been

---

[36]    Bankruptcy Rule 9011(b) provides in relevant part:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . .

[37]    See Fed. R. Bankr. P. 9011(b)(2).

[38]    *Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)*, Dkt. No. 258 at ¶¶ 33-38.

[39]    See Fed. R. Bankr. P. 9011(b)(3).

[40]    See Fed. R. Bankr. P. 9011(b)(1).

emboldened by the lack of real consequences to date. No more. The Court will not waste time hearing a defective motion. If Ms. Biros wants an administrative expense claim for the estate's use of the Property, she can file a reasonable request that satisfies applicable law. Meanwhile, Ms. Biros and Attorney Bernstein will have to answer for the *Motion*.

## IV.    CONCLUSION

In light of the foregoing, the *Motion* will be denied without prejudice to the filing of a reasonable request for an administrative expense claim. Additionally, the Court will order Ms. Biros and Attorney Bernstein to show cause why they should not be sanctioned under Fed. R. Bankr. P. 9011(b). This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: January 17, 2023

GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
Christine Biros
Robert Bernstein, Esq.

FILED
1/17/23 4:30 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Case No. 22-20823-GLT |
| | : | Chapter 7 |
| U LOCK, INC., | : | |
| *Debtor*. | : | Related to Dkt. No. 258 |
| | : | |

**ORDER TO SHOW CAUSE**

In accordance with the *Memorandum Opinion* of even date, it is hereby **ORDERED**,

**ADJUDGED**, and **DECREED** that:

1.      *Christine Biros' Motion for Allowance of Administrative Expense Claim*
*Pursuant to 11 U.S.C. § 503(b)(1)* [Dkt. No. 258] is **DENIED WITHOUT PREJUDICE** to the
filing of a reasonable request for an administrative expense claim.  The hearing scheduled for
January 27, 2023 with respect to this matter is **CANCELLED**.

2.      A show cause hearing is scheduled for **January 27, 2023 at 10:00 a.m.** in
Courtroom A, 54th Fl., U.S. Steel Tower, 600 Grant St., Pittsburgh, Pennsylvania, 15219.

3.      Christine Biros and Attorney Robert S. Bernstein shall each appear in person
at the hearing and show cause why the Court should not impose sanctions against either of them,
including but not limited to, monetary sanctions, for filing the *Motion* in violation of Fed. R. Bankr.
P. 9011(b)(1)-(3).

4.      On or before **January 25, 2023 at 4:00 p.m.**, Christine Biros and Attorney
Bernstein shall each file a written response to this *Order to Show Cause*.

5.      In accordance with Judge Taddonio's procedures, parties other than Christine
Biros and Robert S. Bernstein may appear remotely by utilizing the Zoom video conference
platform. Parties seeking to appear remotely must register for the hearing by submitting a
registration form via the link published on Judge Taddonio's website (which can
be found at: http://www.pawb.uscourts.gov/
'judge-taddonios-video-conference-hearing-instructions) no later

than 4 p.m. on the business day prior to the scheduled hearing. All parties participating remotely shall comply with Judge Taddonio's General Procedures (which can be found at: http://www.pawb.uscourts.gov/sites/default/files/pdfs/glt-proc.pdf). **Parties who fail to timely register for remote participation will be expected to attend the hearing in person.**

Dated: January 17, 2023

_____
GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Bankruptcy No. 22-20823-GLT |
| U LOCK INC., | Chapter 7 |
|      Debtor. | |
| | Related Doc Nos.: 258, 293 and 294 |
| | Response Deadline: January 25, 2023 @4pm<br>Hearing: January 27, 2023, at 10:00 a.m. |

### RESPONSE OF CHRISTINE BIROS AND ROBERT S. BERNSTEIN, ESQ.
### TO ORDER TO SHOW CAUSE

Christine Biros ("Biros") and her counsel in this case, Robert S. Bernstein, Esq. ("Bernstein"), hereby respond to the *Order to Show Cause* dated January 17, 2023 [Doc. No. 294], and related *Memorandum Opinion* [Doc. No. 293] with respect to Biros' . . . *Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)* [Doc. No. 258] (the "Motion"), which the Court denied without prejudice. In support, Biros and Bernstein state as follows:[1]

### BACKGROUND

1.      Since shortly after the date upon which Shanni Snyder commenced an involuntary bankruptcy case against her brother's company, U Lock, Inc. (the "Debtor"), Biros has been trying to extricate her commercial real property from the grip of the Debtor and its bankruptcy. Shanni Snyder and others in the Snyder family, who control the Debtor, have blocked Biros' way at every turn. Throughout its bankruptcy, the Estate has continued to use and benefit from Biros' premises,

---

[1] In its *Order to Show Cause*, the Court directed that Biros and Bernstein "shall each file a response." Because the circumstances and their positions overlap, and to minimize repetition, Biros and Bernstein respectfully submit these combined responses.

1

thus far rent-free.  As a result, Biros "is likely entitled to a reasonable administrative expense claim for the estate's post-petition use of" those premises.  *Memorandum Opinion* at p. 7.

2.       Biros' Motion for allowance and payment of an administrative expense claim for post-petition rent is merely one aspect of a much larger drama that has been unfolding for years between Biros and the Snyder family in Pennsylvania state and federal courts.  Because the disputes and claims in those proceedings (including this bankruptcy) are interrelated, filings, events and decisions in one forum may affect rights, claims and defenses in the others.[2]

3.       This Response, however, focuses on this case and the Court's *Order to Show Cause*. Because the Court dismissed Biros' Motion without notice or a hearing, this Response is Biros' and Bernstein's first opportunity to address the Court's concerns and to explain why the Motion comports with Fed. R. Bankr. P. 9011.  They also welcome the opportunity to expand on the following explanation at the hearing presently set for January 27, 2023.

4.       For the reasons set forth below and to be discussed during that hearing, sanctions are not appropriate in this instance.  The *Order to Show Cause* therefore should be discharged or vacated without sanctions.

### ARGUMENT

**I.       Sanctions under Fed. R. Bankr. P. 9011 can be imposed only in exceptional and egregious circumstances, which are not present here.**

5.       Sanctions may be imposed "'in the exceptional circumstance' where the claim or motion is patently unmeritorious or frivolous." *Dura Systems, Inc. v. Rothbury Invest., Ltd.*, 886

---

[2]  The history of Biros' and the Snyder family's litigation has been summarized in various filings in this case.  Therefore, Biros and Bernstein will refrain from repeating them here; instead, they incorporates those descriptions by reference.  *See, e.g., Christine Biros' Response to Amended Order to Show Cause* [Doc. No. 298]; *Objection [of Christine Biros] to Shanni Snyder's Motion to Enforce Order Confirming Sale of Tangible and Intangible Personal Property of the Estate Under 11 U.S.C. § 363(f), Free and Clear of All Liens, Claims and Encumbrances* [Doc. No. 302].

2

F.2d 551, 556 (3d Cir. 1989) (quoting from *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (citation omitted)).  Although Rule 9011 (which is based upon Fed. R. Civ. P. 11) requires a reasonable inquiry as to law and facts, it is "not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories."  *Id.* (quoting from Advisory Comm. Notes to Fed. R. Civ. P. 11).  "Consequently, the test for Rule 9011 sanctions is a stringent one."  *Sante Fe Minerals, Inc. v. BEPCO L.P. (In re 15375 Mem'l Corp.)*, 430 B.R. 142, 150 (Bankr. D. Del. 2010).  This ensures that litigants can diligently defend or enforce their rights and remedies and that their counsel can zealously represent those litigants' interests.

6.      In the Third Circuit, policy considerations direct that courts must exercise restraint in evaluating whether to impose sanctions – including because doing so can "increase tensions among the litigation bar and between the bench and the bar." *Id*. (quoting from *In re Aphton Corp.*, 423 B.R. 76, 96 (Bankr. D. Del. 2010) (Third Circuit citations omitted)).  "Therefore, a court should impose Rule 9011 sanctions only in egregious circumstances." *Id.*

7.      The court must assess the reasonableness of a filing under the circumstances, taking into account "a variety of factors, including 'whether the pleading, motion or other paper was based on a plausible view of the law.'" *Id*. (citing Advisory Comm. Note).  All doubts must be resolved in favor of the signor of the filed document. *See, e.g., In re Freeman*, 540 B.R. 129, 144 (Bankr. E.D. Pa. 2015) (citing *Ohio Cas. Grp. v. McClinton*, 1991 U.S. Dist. LEXIS 8891 (E.D. Pa. June 27, 1991)).

8.      As explained more fully below, the Motion is a legitimate, typical Motion and represents a plausible view of the law – an argument which Biros would have developed further at an evidentiary hearing, if she had been given the opportunity to do so.

9.      Because the Court entered its *Memorandum Opinion* and *Order to Show Cause* (and simultaneously dismissed the Motion) *sua sponte*, however, she did not have the opportunity to present argument or evidence to support her Motion.

10.      Furthermore, where, as here, a court enters a "show cause" order on its own initiative under Rule 9011(c)(1)(B), Rule 9011(c)(1)(A)'s "safe harbor" is not available.  That safe harbor provision ordinarily gives a litigant or its counsel 21 days within which to withdraw or "appropriately correct" a challenged submission.  As a result, several federal circuits and lower courts elsewhere require a *higher* standard – *i.e.*, "akin to contempt" – for court-initiated sanctions than for party-initiated sanctions.  *See, e.g., Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002); *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998).

11.      Some courts within the Third Circuit also follow this heightened, "akin to contempt" standard for purposes of Rule 9011.  *See, e.g., Sante Fe Minerals, Inc. v. BEPCO L.P. (In re 15375 Mem'l Corp.)*, 430 B.R. 142, 150 (Bankr. D. Del. 2010) (courts apply *sua sponte* sanctions only in situations that are "akin to contempt") (citations omitted).

12.      Court-initiated sanctions must be reviewed with "particular stringency."  *Kaplan, supra,* 331 F.3d at 1256 (citing *In re Pennie & Edmonds, LLP*, 323 F.3d 86, 90 (2d Cir. 2003); *MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 623 (8th Cir. 2003); *Hunter, supra*, 281 F.3d at 153; *United Nat'l Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1115 (9th Cir. 2001)).

13.      In this instance, whether or not this Court applies the higher "akin to contempt" standard, Biros and Bernstein should not be sanctioned under Rule 9011 or otherwise.

**II.     The Motion was filed for a proper purpose – *not* an improper one under Rule 9011(b)(1).**

14.     Biros filed her Motion for a proper purpose.  She sought allowance of a rent claim for the estate's continued post-petition use and occupancy after the Court denied Biros' initial request for possession of the property, the claim being in an amount that the Court would determine, after consideration of the facts of the case.  Biros sought to share in the sale proceeds (and other assets) to the extent of whatever the final allowed amount of her administrative expense claim may be.  In the *Memorandum Opinion*, the Court acknowledged that, typically, seeking allowance and payment of an administrative expense in this context is "[a]n accepted and conceptually appropriate request."  *Id*. at p. 1.

15.     Obviously, though, the Court took exception to the *amount* that Biros requested. While Biros and Bernstein are mindful of the Court's displeasure, Biros is entitled to vindicate her rights as a landlord.  A party's effort to vindicate its rights is a quintessential example of a "proper purpose" under Rule 9011.  *See, e.g., Nicholson v. Wells Fargo Bank, N.A. (In re Nicholson)*, 579 B.R. 640, 650 (Bankr. S.D. Ga. 2017) ("To determine whether a pleading is filed for an improper purpose, the court must inquire whether the pleading was filed to *vindicate the party's rights or for some other proper purpose*." (emphasis added)).

16.     In bankruptcy cases, the process for vindicating a creditor's rights ordinarily follows a standard trajectory:  The creditor files its pleading, motion or other request for relief; if other parties in interest disagree, they can object; negotiations often ensue in an effort to narrow or resolve those objections; if the parties do not reach an agreement, the matter is heard; and the court decides the proper outcome.

17.     Biros filed her Motion to maximize her recovery, as any creditor is entitled to do, anticipating that it would follow this trajectory.

5

18.     For a while, it did.  The fact that other parties in interest – basically, the Snyders –

expressed "derision" in response to the Motion is neither surprising nor dispositive.  As noted

above, it is not atypical for other parties to object.  Indeed, in this case the Snyders have objected

to essentially every request Biros has made.  The Snyders (and/or the Debtor they control) also

have filed Replies to Biros' Responses or Objections to the Snyders' motions.[3]  Therefore, it is

reasonable to assume the Snyders would have objected to the Motion *regardless* of the rent amount

Biros proposed, no matter how large or small.

19.     The Trustee's response is more revealing [Doc. No. 277].  He did not agree with

the monthly rent amount Biros requested, but he did request "that an administrative claim for rent

for Christine Biros in a lesser amount be set by the Court."  *Id*. at p. 3 of 4.  In fact, the Trustee

attached a proposed form of order providing that Biros "is awarded an allowance of administrative

claim for rent pursuant to 11 U.S.C. Section 503(b)(1) in the amount of \$_____ per

month." [Doc. No. 277-1].  Thus, the Trustee anticipated, as Biros did, that negotiation regarding

the Motion would ensue, that a hearing would take place, and that, if no agreement was reached

and approved by the Court, the Court would hear the evidence and decide how much to allow for

the administrative claim.

20.     Negotiation did occur.  After filing the Motion and before the Court dismissed it,

Bernstein spoke with the Trustee to discuss a mutually acceptable rental amount.  They did not

reach a resolution at that time, but had a productive discussion.  Before any further discussion

---

[3] *See, e.g.,* Debtor's *Reply to Response to the Statement of Non-Objection* [Doc. No. 32]; *Debtor U Lock's Reply to the Response of Christine Biros (Entry 298) to the Amended Order to Show Cause* [Doc. No. 299]; George Snyder's *Reply to the Response of Christine Biros (Entry 298) Re: Show Cause* [Doc. No. 303]; and Shanni Snyder's *Reply to the Response of Non-Party Christine Biros to the Trustee's Motion to Approve Settlement of the Exemption of Debtor's Assets* [in Case No. 18-21983-CMB, at Doc. No. 76].

could occur and before any hearing was convened to adduce evidence and submit argument, though, the Court dismissed the Motion.

21.     Finally, the fact that Biros seeks a larger administrative rent claim than the Court believes is justified does not mean her request is inherently frivolous or wholly meritless.  The Bankruptcy Code does not limit the dollar amount of administrative claims based upon how much money is available in the estate to pay them or what the total value of the estate is.  If it did, then no estate would ever become administratively insolvent.  But they do.  Nor does the value of the equipment at the premises create an automatic limitation on her claim.  The extent to which the estate benefits from its use of Biros' premises will affect the allowable amount of her claim, but that has yet to be determined.

22.     In short, Biros filed the Motion in an effort to quantify her administrative claim and to receive a just distribution of whatever the estate can ratably pay on that claim.  Those are legitimate, proper purposes for the relief she sought.

**III.    The administrative rent metric Biros advocated in the Motion is warranted by existing law or by a non-frivolous argument for the extension of existing law, pursuant to Rule 9011(b)(2).[4]**

23.     In order to quantify her administrative rent claim, Biros advocated starting with a "return on investment" ("ROI") approach.  Commercial property investors and developers often start with the cost of a project and the expected return on their investment when setting expectations of rent and cash flow.  Using ROI to estimate reasonable rent may not be the ultimate measure the Court would adopt to determine "commercially reasonable rent," but it is a measure of value that an investor or developer could use to predict the amount of its payment from tenants.

---

[4] Pursuant to Bankruptcy Rule 9011(c)(2)(A), Biros (as a "represented party") cannot be sanctioned monetarily for any violation of Rule 9011(b)(2).  As explained in this section, however, no violation of Rule 9011(b)(2) occurred.

7

Outside of bankruptcy, that amount is adjusted by multiple factors, such as supply and demand, anticipated tenant improvements, length of the lease and the tenant's creditworthiness.

24.     In bankruptcy, the amount Biros proposed would be adjusted by, among other factors, the extent of "benefit to the estate" (such as what percentage of the commercial real estate the Trustee actually used).

25.     Even if the Motion pointed to a "market rent" for the property, it would only be a starting point for determination of the "actual and necessary" expense that could be allowed.

26.     Although the Court expressed its view the ROI is not the proper measure for administrative rent, *see Memorandum Opinion* at p. 7, Respondents are unaware of any Third Circuit authority proclaiming that ROI is a patently *unacceptable* measure, and none has been found.

27.     On the other hand, authority *does* exist outside of this Circuit for the proposition that ROI can be a proper measure for determining reasonable rent.

28.     In *Geltzer v. Helen-May Holdings, LLC (In re Kollel Mateh Efraim, LLC)*, 2009 Bankr. LEXIS 2236 (Bankr. S.D.N.Y. Aug. 18, 2009) ("*Geltzer I*"), the bankruptcy court described events at, and the outcome of, an earlier evidentiary hearing in the case.  At the earlier hearing, the court entered an order approving rent *in an amount that was predicated upon expert testimony regarding the premises' ROI*.

29.     Pre-petition, the debtor in *Geltzer I* signed an agreement to purchase certain premises from Helen-May, LLC.  In advance of the purchase, the debtor occupied the premises under a pre-petition occupancy agreement.  The purchase never closed.  The debtor filed bankruptcy but continued in occupancy post-petition. In 2004, Helen-May, LLC sought, alternatively, either relief from stay or payment of amounts owed under the occupancy agreement

8

pursuant to 11 U.S.C. §§ 105, 503(b) and 365(d).  The court initially denied all relief except a

monthly payment of $5,000.  In a second motion, filed in mid-2005, Helen-May, LLC complained

that $5,000 was woefully insufficient to reflect the market rent of the premises.  It demanded

payment of amounts it alleged were owed for "use and occupancy."  The successor judge (his

predecessor, Judge Blackshear, had retired) informed the parties that he would proceed to hear the

second motion, characterizing it as an "adequate protection" motion.  In an opinion entered on

August 18, 2009, the bankruptcy court explained what happened at the July 2005 hearing on that

second motion:

> No one took issue with the [court's] reference to adequate protection, and the parties
> apparently ignored it; they tried the use and occupancy claim teed up by the Second
> Motion. ***Helen-May called Gene Barbanti, a real estate broker and
> consultant. The substance of his testimony was that the reasonable rental value
> of the Property was directly related to the expected return on the investment of
> $1.4 million, the value he ascribed to the Property based on the Contract price.
> Barbanti opined that an investor would expect at least a 10% return on his money,
> and concluded that the reasonable annual rental was $140,000. . . . In addition,
> the 10% return would represent profit after the payment of taxes. . . .  In other
> words, the tenant would also have to pay those sums each month.*** The debtor did
> not cross-examine Barbanti, and neither party called any other witnesses. . . .  The
> debtor's counsel implied that Helen-May had failed to prove its use and occupancy
> claim because it did not offer evidence of rentals in the area, and he had "heard"
> that the rentals were not directly proportional to the carrying costs and interest. . . .
> I responded that I had not heard or received any other evidence, and asked the
> debtor's counsel whether he wanted to reopen the record, an offer he declined. . . .
> ***I concluded, based on Barbanti's testimony, that the reasonable monthly value
> of the Property was $140,000 divided by 12, or $11,667, plus the real estate taxes.
> I directed the debtor to make those monthly payments as "adequate protection"
> on a going forward basis***, . . .  and told counsel to settle an order.

*Geltzer I,* 2009 Bankr. LEXIS 2236 at *6-9 (emphasis added; citations and footnote omitted).

Thus, the court heard expert testimony of "reasonable rental value" during that 2005 hearing that

was predicated upon the property's "expected return on the investment."  Based upon the expert's

unrebutted testimony, the court adopted the ROI calculation to determine what the "reasonable

monthly value" of the premises was.  It ordered monthly payments on that basis, plus real estate

taxes, albeit characterizing them as adequate protection. Tellingly, the court did not find that the

ROI approach is contrary to law. Nor did it decline to consider it. Instead, it heard and adopted

that methodology.

30.     In a complicated set of later decisions, the bankruptcy court reconsidered Helen-

May, LLC's claim. In a September 2010 opinion, the court determined that, at a follow-up hearing

on Helen-May, LLC's alleged administrative expense claim, Helen-May, LLC did not carry its

burden. The "second time around," Helen-May, LLC did not establish that the estate benefited

and it failed to adduce evidence of the premises' fair rental value. It did not offer Barbanti's

testimony again, and the court gave no weight to the testimony of Helen-May, LLC's lay witness

regarding rent. The court therefore concluded that Helen-May, LLC had not proved its entitlement

to an administrative claim. *See In re Kollel Mateh Efraim, LLC*, 2010 Bankr. LEXIS 3197 (Bankr.

S.D.N.Y. Sept. 21, 2010), *aff'd*, *Helen-May Holdings, LLC v. Geltzer (In re Kollel Mateh Efraim,*

*LLC)*, 456 B.R. 185 (S.D.N.Y. 2011) (affirming *Geltzer I* and two 2010 rulings), *aff'd*, 582 Fed.

Appx. 61 (2d Cir. 2014). Notably, however, in its September 2010 ruling the bankruptcy court did

not revisit or expressly change the earlier decision to utilize ROI as a measure for calculating

reasonable rental value.

31.     *Geltzer I* provides a plausible basis for Biros' ROI metric. *Geltzer I* also supports

a non-frivolous argument for an extension of existing law – namely, that ROI can be considered

as an alternative "starting point" for the process of determining reasonable rent under section

503(b)(1). In view of its pronouncements in the *Memorandum Opinion*, however, the Court

presumably would not follow *Geltzer I*. Nonetheless, "[w]hen there is some plausible basis, even

a weak one, supporting the litigant's position, imposition of sanctions is inappropriate." *Nicholson*

*v. Wells Fargo Bank, N.A. (In re Nicholson)*, 579 B.R. 640, 649-50 (Bankr. S.D. Ga. 2017) (citing *United Nat'l Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1117 (9th Cir. 2001)).

     **IV.**    **Biros' request for allowance of an administrative rent claim would have had adequate factual support, had she been given an opportunity to present evidence, for purposes of Rule 9011(b)(3).**

     32.    Biros and Bernstein also had an adequate factual basis upon which to seek the administrative rent claim.   As explained in the preceding section, a plausible legal basis existed for Biros' ROI proposal.  Biros therefore would have presented the "evidentiary support" regarding that calculation and the relief requested that Rule 9011(b)(3) contemplates.  She and Bernstein anticipated having an opportunity to argue the position and preview the evidence at the hearing originally scheduled, but later canceled.

     33.    In the *Memorandum Opinion*, the Court observes that Biros' capital investment is $325,316, rather than $1.9 million, and that the property cannot be developed until "costly" environmental remediation occurs.  *Id*. at 7.  But, even if investment (rather than value) is a proper consideration, the Court has not received any evidence on the extent of Biros' investment, so its observations about that are understandably incomplete.

     34.    Nor did the Court's decisions about bids at the December 15, 2022 sale hearing foreclose Biros from seeking a larger administrative rent claim.  At that hearing, the Court agreed to allow Biros a "credit bid" of $10,000 for unpaid post-petition rent, at $1,500 per month.  *See Memorandum Opinion* at p. 5.  But, while the Court heard argument before settling upon that estimated amount for Biros' "credit bid," it did not take any evidence.  As the Court acknowledged, it would need to receive evidence to decide the actual amount to which she is entitled under section 503(b)(1): ". . . I have no trouble concluding that the rent waiver component of Biros' bid has some value, but anything beyond that [$10,000] is difficult to quantify without a detailed record,

and already exceeds the scope of what we are looking at here today in terms of the bid increments."
*Transcript of December 15, 2022 Hearing* [Doc. No. 264] at 41:17-21.

35.       Accordingly, had she been given the opportunity, Biros would have presented that "detailed record" at the evidentiary hearing on the Motion, as the Court expressly "left determination of Ms. Biros' administrative claim for another day," *Memorandum Opinion* at p. 5. The Court confirmed that the "credit bid" was not a definitive ruling about how much larger the administrative rent claim actually may be.

**V.       Biros relied upon the advice of her counsel and is not responsible for the details of the Motion.**

36.       Biros relied upon the advice of her counsel regarding preparation and prosecution of the Motion.  She was not responsible for its details.

WHEREFORE, for the reasons set forth above, Biros and Bernstein respectfully requests that this Court discharge or vacate the Order to Show Cause without sanctions, and grant to them such other and further relief as is just and proper.

Dated: January 25, 2023

_____
CHRISTINE BIROS


BERNSTEIN-BURKLEY, P.C.

By: */s/ Robert S. Bernstein*_____
    Robert S. Bernstein (PA ID No. 34308)
    Lara S. Martin (PA ID No. 307272)
    601 Grant Street, Floor 9
    Pittsburgh, PA 15219
    Telephone: (412) 456-8108
    Facsimile: (412) 456-8135
    rbernstein@bernsteinlaw.com
    lmartin@bernsteinlaw.com

    Counsel for Christine Biros

12

36.    Biros relied upon the advice of her counsel regarding preparation and prosecution of the Motion.  She was not responsible for its details.

WHEREFORE, for the reasons set forth above, Biros and Bernstein respectfully requests that this Court discharge or vacate the Order to Show Cause without sanctions, and grant to them such other and further relief as is just and proper.

Dated: January 25, 2023

**CHRISTINE BIROS**

BERNSTEIN-BURKLEY, P.C.

By: /s/ Robert S. Bernstein
    Robert S. Bernstein (PA ID No. 34308)
    Lara S. Martin (PA ID No. 307272)
    601 Grant Street, Floor 9
    Pittsburgh, PA 15219
    Telephone: (412) 456-8108
    Facsimile: (412) 456-8135
    rbernstein@bernsteinlaw.com
    lmartin@bernsteinlaw.com

    Counsel for Christine Biros

14

FILED
1/30/23 3:55 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Case No. 22-20823-GLT |
| | : | |
| **U LOCK INC.,** | : | Chapter 7 |
| | : | |
| *Debtor*. | : | Related to Dkt. No. 293, 294, 304 |
| | : | |

**ORDER REGARDING ORDER TO SHOW CAUSE AND
<u>REQUEST FOR ADMINISTRATIVE EXPENSE</u>**

On January 27, 2023, the Court conducted a hearing on the *Order to Show Cause* dated January 17, 2023 directing creditor Christine Biros and her counsel, Attorney Robert S. Bernstein, to show cause why they should not be sanctioned for filing *Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)* ("Motion")[1] in violation of Fed. R. Bankr. P. 9011(b)(1)-(3).[2]  Before hearing oral argument, the Court provided its initial observations regarding their joint response.[3]  The Court also expressed a willingness to continue the *Order to Show Cause* so that the reasonableness of the $144,000 request could be demonstrated in conjunction with a renewed request for an administrative expense.

Following the Court's comments, Attorney Bernstein largely declined to defend the *Motion*.  Although he maintained that the amount requested was reasonable and filed in good faith,[4] Attorney Bernstein stated Ms. Biros would likely amend her request based on the Court's concerns. They asked that the *Order to Show Cause* be released without sanctions, but also indicated a desire to contest matters contained in the *Memorandum Opinion* setting forth the reasons for the *Order to Show Cause*.

---

[1]    <u>See</u> Dkt. No. 258.

[2]    <u>See</u> *Order to Show Cause*, Dkt. No. 294; <u>see also</u> *Memorandum Opinion*, Dkt. No. 293.

[3]    <u>See</u> *Response of Christine Biros and Robert S. Bernstein, Esq. to Order to Show Cause*, Dkt. No. 304.

[4]    While the response asserts that "[Ms. Biros] and [Attorney] Bernstein anticipated having an opportunity to argue the position and preview the evidence at the hearing originally scheduled [on the *Motion*]," neither the *Motion* nor the response contained such a preview, and none was given at the hearing.  <u>Id.</u> at ¶ 32.

Understandably, Ms. Biros and Attorney Bernstein need time to consider the Court's comments and decide how they wish to proceed. They still have the opportunity to seek reconsideration of the *Memorandum Opinion* (which the Court will extend), and the *Order to Show Cause* should be consolidated with any such proceedings. Also, Ms. Biros may still move for an administrative expense claim, so it may be logical to hear evidence on that issue in conjunction with their defense of the *Motion*'s $144,000 request, assuming one is asserted. At the very least, the Court will afford them one last chance to appear in opposition to the *Order to Show Cause* before it is taken under advisement.

**AND NOW**, therefore, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that:

1. The *Order to Show Cause* is **CONTINUED GENERALLY** as provided in this order.

2. Attorney Bernstein's oral motion to extend time to file a motion seeking reconsideration of the *Memorandum Opinion* is **GRANTED**. Any motion for reconsideration shall be filed on or before **March 1, 2023**.

3. On or before **March 1, 2023**, Ms. Biros shall file a renewed or amended application for an administrative expense claim to the extent she still seeks one.

4. Following submission of these motions (if any), the Court will enter appropriate scheduling orders.

Dated: January 30, 2023

_____
**GREGORY L. TADDONIO**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

In Re: U LOCK INC.            Bankruptcy No.: 22-20823-GLT

          Debtor,

                            Chapter 7

_____

**SHANNI SNYDER, as assignee of Robert Slone,
Chapter 7 Trustee for U Lock Inc.,**

          Plaintiff,

v.                          Adv. Proc. No.:

**CHRISTINE BIROS, and the
BIROS IRREVOCABLE LIFE INSURANCE
TRUST,**

          Defendants.

## <u>ADVERSARY COMPLAINT</u>

AND NOW, comes Shanni Snyder, as assignee of Robert Slone, Chapter 7 Trustee for U Lock, Inc., by and through her undersigned counsel, and submits the within Adversary Complaint, and in support thereof, states as follows:

### <u>Parties</u>

1.     The Plaintiff is Shanni Snyder, an adult individual with an address of 14390 US Rt. 30, North Huntington, Pennsylvania, 15642.

2.     Defendant Christine Biros ("Biros"), an adult individual with an address of 435 Millers Lane, Plum Boro, Pennsylvania, 15239.

3.     Defendant Biros Irrevocable Life Insurance Trust ("Trust") is a trust with an address of 3001 Jacks Run Road, White Oak, PA 15131.

4.     Collectively Biros and the Trust will be referred to as "Defendants."

**Jurisdiction and Venue**

5.      On April 27, 2022, the Plaintiff filed an involuntary petition for relief under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") against U Lock, Inc., in the United States Bankruptcy Court for the Western District of Pennsylvania. The Court ultimately granted the involuntary petition and entered the Order for Relief under Chapter 7 (Doc. No. 42).

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334.

7.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (2)(A), (F), (H), (K), (N) and (O).

9.      The Plaintiff consents to the jurisdiction of this Honorable Court and the entry of a final order by the Court.

**Facts**

10.     The claims herein involve a property located at 14140 Route 30, North Huntingdon, Pennsylvania (the "Property").

11.     The Plaintiff purchased these claims from the Chapter 7 Trustee pursuant to an Order of Court dated December 20, 2022.

12.     The Property is a commercial property that currently has storage units in place.

13.     In approximately 2015, John Biros and Christine Biros (the "Biros Parties"), George Snyder and Kash Snyder (the "Snyder Parties"), as well as others, discussed forming an entity to purchase the Property.

14.     The Biros and Snyder Parties believed that the Property could be acquired at a favorable price and be further developed to substantially increase its value.

15.     As such, the Biros and Snyder Parties attempted to form U Lock, Inc., in an effort to be the purchaser of the Property.

16.     U Lock, Inc.'s initial filing with the Pennsylvania Department of State deemed defective with the Pennsylvania Department of State for technical reasons.

17.     Ultimately, U Lock, Inc. was properly formed with the Pennsylvania Department of State.

18.     The Biros and Snyder Parties, through U Lock, Inc., obtained a $325,316.00 loan from Biros to purchase the Property. No formal loan documents were executed between the parties, and in fact, Biros only tendered the amount of $309,000 at the time of the sale.

19.     Ultimately, U Lock, Inc., did purchase the Property and deeds for the Property were ultimately recorded with U Lock, Inc., being the owner.

20.      The Deeds are a matter of public record and incorporated herein by reference.

21.     In approximately October of 2017, Biros filed suit against U Lock, Inc.  A true and correct copy of the Complaint is attached hereto as **Exhibit A.**

22.     The suit sought a determination from the Westmoreland County Court of Common Pleas that the Property should be deeded to Biros.

29.     On January 26, 2022, Biros recorded deeds for the Property in her name. The Deeds are recorded at Instrument Numbers 202201250003084, 202201250003085, 202201250003086, and 202201250003087.

30.     On or about February 11, 2022, the Trust was granted a mortgage on the Property.   The reason for the granting of the mortgage is unclear and the Plaintiff believes, and therefore avers, that it was placed on the Property to cloud title.   The mortgage was recorded with the Westmoreland County Recorder of Deeds at Instrument 202202110005448.

31.     Biros is an insider of the Debtor as (1) she acted as a director the enterprise; (2) she acted as an officer of the enterprise; (3) she acted as a person in control of the enterprise; (4) she is a close relative of officers, directors and persons in control or who exerted control of the enterprise.

**32.**     Furthermore, for similar reasons, the Defendant Trust herein is an insider of the Debtor.  Additionally, based on information and belief, the Biros Irrevocable Life Insurance Trust is a vehicle created by members of the Biros family to hold certain assets.  As such, it would also be an insider to the extent that the beneficiaries or control of the Trust are relatives of Christine Biros.  Further, it is believed that Biros is or has acted as Trustee of the Trust.

## <u>COUNT I- PREFERENCE PURSUANT TO 11 U.S.C. §547</u>

33.     The Plaintiff incorporates the preceding paragraphs by reference as if set forth at length herein.

34.     Biros received property of the Debtor in the form of a Deed recorded on or about January 26, 2022.

35. The Trust received Property in the form of a Mortgage subsequently granted on the Property.

36. As set forth above, the Defendants are insiders of the Debtor.

37. The transfer of the Property and the granting of a Mortgage constitute transfers of property of the Debtor to a creditor and/or insider of the Debtor.

38. The transfer of property was made for or on the account of an antecedent debt.

39. By virtue of the transfer of the Property and the granting of the mortgage, the Defendants received more than they would have received had the transfer not occurred and the estate been liquidated pursuant to Chapter 7 of the Bankruptcy Code.

40. As such, the payments constitute avoidable preferences pursuant to Section 547 of the Bankruptcy Code.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

## COUNT II- PREFERENCE PURSUANT TO 11 U.S.C. §550

41. The Plaintiff incorporates the preceding paragraphs by reference as if set forth at length herein.

42. The Defendants were initial transferees of the property or the immediate or mediate transferees of such initial transferee of the Property.

43. As such, the Plaintiff is permitted to recover the transfer from the Defendants in accordance with 11 U.S.C. §550(a).

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

## <u>COUNT III- FRAUDLENT TRANSFER PURSUANT TO 11 U.S.C. §548(a)(1)(A)</u>

44.     The Plaintiff incorporates the preceding paragraphs by reference as if set forth at length herein.

45.     The transfer of the property and placement of the mortgage on the property were for the benefit of the Defendants and within two (2) years of the Petition Date.

46.     The transfers were made directly to the Defendants and benefited the Defendants as they received a valuable asset that was or should have been owned by the Debtor.

47.     The transfers were made with the actual intent to hinder, delay or defraud the Plaintiff and the creditors of the Debtor who were owed money by the Debtor.

48.     The transfers were to the actual detriment of the Debtor's creditors.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

**COUNT IV- FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C 548 (a)(1)(B)**

49.     The Plaintiff incorporates the preceding paragraphs by reference as if set forth at length herein.

50.     The transfer of the property and placement of the mortgage on the property were for the benefit of the Defendants and within two (2) years of the Petition Date.

51.     The transfers were made directly to the Defendants and benefited the Defendants as they received a valuable asset that was or should have been owned by the Debtor.

52.     The transfers were made with the actual intent to hinder, delay or defraud the Plaintiff and the creditors of the Debtor who were owed money by the Debtor.

53.     The transfers were to the actual detriment of the Debtor's creditors.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

**COUNT V- FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §544(b) AND 12 PA C.S. §5104**

54.     The Plaintiff incorporates the previous paragraphs by reference as if set forth at length herein.

55.     The transfer of the Property was made by the Debtor benefited the Defendants within four (4) years of the Petition Date.

56.     The transfer of the Property was a transfer of an interest of the Debtor in the Property.

57.     The transfer was made for the direct benefit of the Defendants who each obtained interests in the Property to the detriment of the Debtor's creditors.

58.     At the time of the Transfer, there existed creditors holdings claims (both secured and unsecured) against the Debtor.

59.     Despite its debts to various creditors, the transfer was made for the benefit of the Defendants and the Debtor received no value for the Transfer.

60.     The transfer was done to hinder, delay or otherwise defraud or cause creditors of the Debtor to not receive payment on their claims.

61.     The transfer was made without the Debtor receiving reasonably equivalent while at the same time leaving virtually no meaningful assets available for the Debtor and rendering the Debtor unable to pay its creditors.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

### COUNT V- FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §544(b) AND 12 PA C.S. §5105

62.     The Plaintiff incorporates the previous paragraphs by reference as if set forth at length herein.

63.     The transfer of the Property was made by the Debtor benefited the Defendants within four (4) years of the Petition Date.

64.     The transfer of the Property was a transfer of an interest of the Debtor in the Property.

65.     The transfer was made for the direct benefit of the Defendants who each obtained interests in the Property to the detriment of the Debtor's creditors.

66.     At the time of the transfer, there existed creditors holding claims (both secured and unsecured) against the Debtor.

67.     At the time of the transfer, or as a result thereof, the Debtor was or was rendered insolvent and unable to pay its outstanding obligations.

68.     Despite its debts to various creditors, the transfer was made for the benefit of the Defendants and the Debtor received no value for the Transfer.

69.     The transfer was made without the Debtor receiving reasonably equivalent and/or for less than fair consideration, while at the same time leaving virtually no meaningful assets available for the Debtor and rendering the Debtor unable to pay its creditors.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

## COUNT VI- RECOVERY OF AVOIDED TRANSFER PURSUANT TO 11 U.S.C. §550

70.     The Plaintiff incorporates the previous paragraphs by reference as if set forth at length herein.

71.     To the extent that the transfer of the Property is avoided, the Plaintiff is entitled to recover the transferred Property or the value thereof from the Defendants.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court

deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

Respectfully Submitted,

Date: <u>February 28, 2023</u>

*/s/ David L. Fuchs*     
DAVID L. FUCHS
PA I.D. #205694
Fuchs Law Office, LLC
554 Washington Ave, First Floor
Carnegie, PA 15106
(412) 223-5404 (phone)
(412) 223-5406 (facsimile)
dfuchs@fuchslawoffice.com

AND

*/s/ John P. Lacher*
JOHN P. LACHER
PA I.D.#62297
The Lynch Law Group
501 Smith Drive, Suite 3
Cranberry Township, PA 16066
(724) 776-8000
(724) 776-8001
jlacher@lynchlaw-group.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>U LOCK INC.,<br><br>     Debtor. | Bankruptcy No. 22-20823-GLT<br><br>Chapter 7 |
| CHRISTINE BIROS,<br><br>    Movant,<br><br>v.<br><br>U LOCK INC., Debtor, and ROBERT H.<br>SLONE, Chapter 7 Trustee for the Debtor,<br><br>    Respondents. | Related Doc. Nos.: 258 & 314 |

### CHRISTINE BIROS' AMENDED MOTION FOR ALLOWANCE AND PAYMENTOF ADMINISTRATIVE EXPENSE PURSUANT TO 11 U.S.C. § 503(b)(1) AND/OR FOR PAYMENT OF ADEQUATE PROTECTION

For her amended motion seeking allowance and payment of an administrative expense, and/or for payment of adequate protection (the "Motion"), Christine Biros ("Biros" or "Movant"), by and through her attorneys, Bernstein-Burkley, P.C., states as follows:

### PRELIMINARY STATEMENT

Biros owns real property that debtor U Lock Inc.'s estate has occupied, used, and enjoyed during this case from the date it was commenced on April 27, 2022, until January 27, 2023 – 9 months – when the Court fully lifted the automatic stay against Biros.  Since the early weeks of this case, Biros sought relief from stay to gain possession of her property, but her requests were opposed and largely rebuffed.  Although the Court periodically granted Biros certain limited relief in response to her repeated requests, the debtor's estate has operated on or used the premises during

those 9 months rent-free.  In this Motion, Biros seeks allowance and payment of an administrative

claim and/or adequate protection claim to compensate her for the benefit the estate derived from

the premises, as any landlord would expect.

For the reasons explained below, Biros now believes she is entitled to allowance and

payment of at least $63,000 for post-petition use and occupancy as an administrative expense

and/or as adequate protection.

Biros has entered into a settlement agreement with the Trustee for the allowance and

payment of a reduced amount of allowed rent, as well as compromise and allowance of Biros'

other claims filed in the case.  A motion will shortly be filed under Bankruptcy Rule 9019 setting

for the details of the compromise.

### JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157

and 1334.  The Motion is a core proceeding for purposes of 28 U.S.C. § 157.

2.      Venue is proper in this district and division pursuant to 28 U.S.C. §§ 1408 and

1409.

3.      Sections 105, 361, 363(e), and 503(b) of title 11 of the United States Code, 11

U.S.C. § 101, *et seq*. (as amended, the "Bankruptcy Code"), are the statutory predicate for the

relief requested in this Motion.

### BACKGROUND

4.      The bankruptcy case of U Lock Inc. ("Debtor" or "U Lock") was commenced by

the filing of an involuntary petition for relief under Chapter 7 of the Bankruptcy Code on April 27,

2022 (the "Petition Date").

5.      The Debtor did not answer or controvert the involuntary petition.

6.      On June 17, 2022, the Court entered an order for relief.

7.      Robert H. Slone (the "Trustee") is the duly appointed Chapter 7 Trustee for the Debtor and is so acting.

## I.      The Property and buildings

8.      Biros owns certain non-residential real property located at 14140 Route 30, North Huntington, Westmoreland County, PA, County Tax Map Number of 54-03019-0-103 (the "Property").

9.      The Property consists of vacant, rentable land comprising approximately 21.09 acres.  In addition, a 3,200 square foot pole barn (storage building) and a 2,600 square foot building (containing approximately 26 self-storage units of varying sizes) are located on the Property.

10.     On or around July 16, 2015, without a valid lease, the Debtor began to operate its business as a storage facility on the Property.

11.     From July 2015 forward, the Debtor continued to operate its business on the Property.  Presumably due to state court litigation regarding ownership of the Property (which the state courts ultimately decided in Biros' favor), the Debtor never paid Biros any rent pre-petition. Biros has filed a claim for prepetition rent.

12.     After the Petition Date, the Debtor likewise continued to operate its business at the Property and, after an order for relief was entered and the Trustee was appointed, the estate continued to use the Property, to rent storage space to tenants, and to collect rent from tenants.

13.     From the Petition Date forward, the Debtor and its estate have not paid any rent or other consideration to Biros for the continued use and enjoyment of the Property or the revenues derived from it.

## II.     Biros' first request for relief from stay

14.     A few weeks after this case began, Biros initiated her efforts to obtain her Property. On May 20, 2022, Biros filed an Emergency Motion [Doc. No. 14] (the "Stay Relief Motion") seeking, among other things, dismissal of the Debtor's bankruptcy case or, alternatively, abandonment of the Property from the estate and relief from stay so that she may pursue a pending state court action, eject the Debtor, and possess her Property. *See id.* at pp. 6-7.

15.     The Debtor filed a response two days later [Doc. No. 22], in which it opposed the relief Biros sought.   Among other arguments, the Debtor asserted that it should remain in possession of the Property until this Court determines whether Biros' acquisition of ownership was a voidable preferential transfer under state law or the Bankruptcy Code. *Id*. at ¶4, p. 4.   The Debtor also argued that granting Biros relief from stay "would cause an immediate hardship to the bankruptcy estate and [its] renters and creditors" and would expose the Debtor's estate to the risk of potential bailment claims and increased litigation by disgruntled renters if they had to vacate the premises. *Id*. at ¶10, p. 6.

16.     Similarly, on May 31, 2022, Shanni Snyder ("Snyder") filed an extensive Opposition [Doc. No. 24] to Biros' Stay Relief Motion, in which she echoed many of the Debtor's arguments and made additional ones of her own.

17.     This Court allowed the Debtor to retain possession of the Property, without paying any rent.   Specifically, on June 3, 2022, the Court entered an *Order Granting Christine Biros Limited Relief From Stay* [Doc. No. 36] (the "June 3 Order"), in which Biros was authorized to "commence environmental remediation activities" at the Property, subject to certain restrictions the Court imposed – citing its preliminary understanding that the Debtor "continues to conduct business on the Property." *Id*. at ¶1.   Among other provisions, that Order also directed the Debtor

4

to remove all vehicles and trailers from the Property, as well as all tires the Debtor placed on the Property, within specified periods. *Id*. at ¶s 4-7. Biros also was authorized to remove such items after specified dates if the Debtor did not do so timely.

18.     Following a hearing, on July 6, 2022, the Court entered an *Order* [Doc. No. 73] in which, among other things, it denied Biros' Stay Relief Motion to the extent she sought dismissal of the Debtor's bankruptcy case.  The Court adjourned the hearing on Biros' alternative request for relief from stay to August 9, 2022. *Id.*

19.     In a text order dated August 10, 2022 [Doc. No. 113], the Court adjourned the stay relief hearing again, this time until August 25, 2022.

20.     On August 26, 2022, following the adjourned hearing at which the creditor parties accused one another of stay violations, the Court entered another text order [Doc. No. 129], directing the Trustee to review the parties' alleged violations of the automatic stay and determine whether to file any appropriate causes of action.  It did not decide Biros' request for relief from stay.

21.     Two months later, on October 25, 2022, the Trustee and Biros submitted a proposed, *Stipulated Order for Relief From Stay* [Doc. No. 189-1] for the Court's consideration (the "Stipulated Order").  If approved, that Stipulated Order would have granted relief from stay to Biros and provided for related relief.

22.     In the proposed Stipulated Order, the Trustee acknowledged, among other things, that the Debtor's estate had paid no rent or other consideration to Biros relating to the Property since the Petition Date. *See, e.g.,* Stipulated Order at ¶ 5.

23.     Following a hearing on November 11, 2022, the Court entered its *Order Denying Stipulated Order for Stay Relief* [Doc. No. 211] (the "Order Denying Relief"), in which it

5

expressed concerns with the Stipulated Order and denied it as being procedurally defective. Instead, the Court reiterated the limited relief Biros had been granted in the June 3 Order, and also authorized her to implement certain security measures and to perform a walk-through inspection at the Property, none of which (the Court opined) required stay relief. *Id*. at ¶2(a), (b)(i), (b)(ii). In essence, the Order Denying Relief authorized implementation of the security measures and the walk-through inspection to which the Trustee and Biros already had agreed in paragraph 12 of the proposed Stipulated Order, before the Court denied it.

24.     In the Order Denying Relief, though, the Court also directed that the Trustee and any tenants who were current on their rent would have "unfettered access" to the Property, but that the Trustee would "conclude any rental arrangements through November 30, 2022 so as to effectuate a closing on the sale of the estate's assets in December 2022." *Id*. at ¶2(b)(iii).

25.     The Court held that its Order Denying Relief "would strike the balance necessary to protect Biros' interest in the Real Property and the trustee's interest in maximizing value of the bankruptcy estate for the benefit of creditors," *id*. at p. 3, but at that time the Court did not direct the estate to pay any rent to Biros. Yet the Trustee had acknowledged in the proposed Stipulated Order that ever since the Petition Date the estate had been using the Property rent-free.

## III.    The Trustee's sale of tangible and intangible personal property

26.     With respect to the proposed sale mentioned in the Order Denying Relief, on November 17, 2022, the Trustee had filed his *Amended Motion for Sale of Tangible and Intangible Personal Property of the Estate Under 11 U.S.C. Section 363(f) Free and Clear of Liens, Claims and Encumbrances* [Doc. 217] (the "Amended Sale Motion"), seeking approval to sell certain property to Biros, subject to the competitive bidding conditions contained in the Amended Sale Motion.

6

27.    Pursuant to the Amended Sale Motion, Biros and Snyder submitted qualified bids.

28.    For purposes of valuing Biros' bid for the Debtor's assets, at a December 15, 2022

hearing on the proposed sale the Court agreed to consider, as a component of Biros' bid, the

"waiver" of her right to the first $10,000 of distribution she would receive. The Court noted that

the $10,000 "waiver" was equal to roughly $1,500 per month for the estate's use of the Property

for (what then was) approximately 7 months. *See Transcript of December 15, 2022 Hearing* [Doc.

No. 264] at 21:5-15.

29.    During that sale hearing, the Court took "judicial notice" that roughly $1,500 per

month was "a reasonable commercial lease amount." *Id*. at 21:5-11.  But the Court also explained

that, while it was willing to give Biros a $10,000 credit for the waiver, if Biros "wanted to ask for

more than that" as an administrative claim, the Court was "not prepared to do that on the record

today, and if [Biros] wants to present additional evidence on that [she] can," but it would "not be

a useful exercise" to do so at that hearing. *Id*. at 21:16-20.

30.    Accordingly, the Court's approval of the $10,000 waiver (for purposes of Biros'

bid for the Debtor's assets) did not foreclose Biros from seeking a larger administrative expense

amount for unpaid rent or other claims, if she wished.  Given that the Court received no evidence

at that hearing regarding rent, and "was not prepared to" consider a larger request at that hearing,

the $10,000 waiver also did not constitute a final determination about what reasonable rent for use

and occupancy of the Property might be.

31.    During the sale hearing, the Court also cautioned that "pigs get fat and hogs get

slaughtered," and expressed its views that the parties had been over-litigating the case relative to

the size of the estate, were motivated by mutual animosity and spite, and were not displaying

common sense.  *Id*. at 21:15-16; 22:21 - 23:9.  Biros recognizes and understands the Court's

7

concerns and through this Motion attempts to use her best good faith efforts to strike a balance between protecting and asserting her rights, while also taking into consideration the Court's directives.

32.     Snyder was the prevailing bidder for the assets.  The Court approved the Amended Sale Motion and authorized the Trustee to sell the affected assets to her for $70,000.

33.     Pursuant to the Court's *Order Confirming Sale of Tangible and Intangible Personal Property of the Estate . . .*, entered December 20, 2022 [Doc. No. 254] (the "Sale Order"), Snyder was given thirty days after the closing of the sale by which to remove tangible property she purchased from (among other locations) the Property.  *Id*. at ¶ 18.  The Sale Order also provides that any such tangible property Snyder did not remove or left behind would, as of the thirty-first day after the closing, be deemed abandoned by Snyder.  *Id*.[1]

34.     The sale of tangible and intangible assets closed on December 28, 2022.  *See Report of Sale Regarding Tangible and Intangible Personal Property of the Estate* [Doc. No. 266].

### IV.     Biros' second request for relief from stay

35.     Meanwhile, anticipating that the estate no longer would need her Property after the asset sale closed, Biros filed a second *Motion for Relief From the Automatic Stay* [Doc. No. 255] on December 22, 2022, in a renewed effort to gain exclusive possession of her Property (the "Second Stay Relief Motion").  She pointed out, yet again, that the estate has not paid her any rent since the bankruptcy case began.

36.     Notably, in her Second Stay Relief Motion Biros argued that her ownership interest in the Property was not being adequately protected.  *Id*. at ¶s 46-47, 52-53.

---

[1] The Debtor appealed from the Sale Order on January 3, 2023.  *See Notice of Appeal* [Doc. No. 269], W.D. Pa. Case No 2:23-cv-00010.

37.     Yet again, Snyder objected [Doc. No. 284], on January 9, 2023.  So did her brother, George Snyder [Doc. No. 292].

38.     On January 27, 2023, the Court entered an *Amended Order Granting Motion for Relief from the Automatic Stay* [Doc. No. 307], in which it granted Biros "relief from the stay under 11 U.S.C. § 362 to facilitate the transfer of possession and pursue any and all state court rights related to" the Property.  The relief was effective as of January 28, 2023.  *Id.*

**V.     Biros' initial motion for an administrative claim**

39.     Concurrently with her Second Stay Relief Motion, on December 22, 2022, Biros filed her *Motion for Allowance of Administrative Expense Claim . . .* [Doc. No. 258] (the "Initial Admin Claim Motion"), in which Biros advocated for an allowed administrative expense claim of $144,000 for the estate's use and occupancy of the Property since the Petition Date.  At that time, and given the unique facts of this case, Biros put forth her best estimate of the value of her claim.

40.     Once again, Snyder objected [Doc. No. 285], on January 9, 2023.  So did George Snyder [Doc. No. 286].  The Trustee also responded [Doc. No. 277].  He asked that the Initial Admin Claim Motion be denied for the amount requested, but that Biros be granted an administrative expense in a lesser dollar amount.  *Id*. at p. 3 of 4.  Biros' counsel had discussions with the Trustee prior to the Trustee filing his response, and was prepared to negotiate a reduced claim with the Trustee and fully expected to do so prior to the hearing.

41.     That hearing never happened. On January 17, 2023, the Court entered a *Memorandum Opinion* [Doc. No. 293] in which it canceled the self-scheduled hearing on, and denied, the Initial Admin Claim Motion *sua sponte*.  Concurrently, the Court issued an order to show cause [Doc. No. 294], directing Biros and her counsel, Robert S. Bernstein, Esq., to appear

for hearing.  Biros and attorney Bernstein responded to the order to show cause on January 25, 2023 [Doc. No. 304].

42.     During the January 27, 2023 hearing on the order to show cause and other pending matters in the case, the Court granted leave for Biros to file, on or before March 1, 2023, a "renewed or amended application for an administrative expense claim to the extent she still seeks one."  *See Order Regarding Order to Show Cause and Request for Administrative Expense* [Doc. No. 314] at ¶ 3.

43.     Having considered the Court's directives in its Memorandum Opinion and during the January 27 hearing, and appreciating the Court's concerns, Biros submits this amended request for allowance and payment of an administrative expense and/or adequate protection.  As explained above, this request is subject to the compromise agreement reached with the Trustee and pursuant to an appropriate Motion under Bankruptcy Rule 9019.

RELIEF REQUESTED

## I.     Legal standards

44.     In bankruptcy, landlords face unique economic risks.  They are forced to let delinquent tenants remain in possession and to control the landlord's real estate, and must continue doing business with them.  Meanwhile, other creditors often can opt to cease rendering services, to stop goods in transit, or to refrain from supplying financially distressed debtors unless and until those creditors receive whatever protections or enhancements they deem sufficient, such as "critical vendor" or adequate protection orders.  Congress amended the Bankruptcy Code in 1984 to better protect landlords for the very reason that "unlike other creditors who could simply choose to stop doing business with the debtor post-petition, landlords were stuck with the debtor while it decided whether to assume or reject the lease, during which time the debtor was not paying rent

10

and the landlord could not re-let the space." *In re Imperial Beverage Group, LLC*, 457 B.R. 490, 497 (Bankr. N.D. Tex. 2011) (citation omitted).  That risk is precisely what happened to Biros in this case:  For 9 months, the Debtor's estate continued to use Biros' Property and did not pay any rent for it, while the automatic stay barred Biros from developing or re-letting the premises.

### A.  Adequate protection principles

45.     Of course, landlords do have certain statutory remedies.  For example, a landlord's right to timely payment of rents during bankruptcy constitutes an interest in property entitled to adequate protection under sections 361 and 363.  *See In re Tihi Rest. Corp.*, 2023 Bankr. LEXIS 279 at *5-6 (Bankr. S.D.N.Y. Feb. 3, 2023) (citing cases).  A landlord's interests are not adequately protected if a debtor fails to remain current on post-petition rent.  *In re Sweet N Sour 7th Ave. Corp.*, 431 B.R. 63, 69 (Bankr. S.D.N.Y. 2010).  Likewise, a debtor's failure to pay post-petition rent can be "cause" to lift the stay under section 362(d)(1).  *Id.*

46.     Similarly, section 363(e) enables a court to prohibit or condition the use or lease of property in which another entity has an interest as is necessary to adequately protect that entity's interest.  11 U.S.C. § 363(e).  "Section 363 sets forth the conditions under which a debtor may use property in which others have an interest, including lessors," and subsection (e) empowers the court to impose conditions necessary to adequately protect lessors' interests.  *In re RB Furniture, Inc.*, 141 B.R. 796, 713 (Bankr. C.D. 1992).

47.     Section 361 provides a list of methods by which an entity with an interest in property (such as a landlord) may be provided with adequate protection under section 363.  The estate can make a single cash payment or "periodic cash payments" to the landlord.  If applicable, the estate can grant the landlord a replacement or additional lien.  Or the estate can grant the landlord other relief – other than entitling such entity to compensation as an administrative expense

under section 503(b)(1) – as will result in the landlord's realization of the "indubitable equivalent" of its interest in its property.  *See* 11 U.S.C. § 361.

48.    Courts can rely exclusively on sections 361, 362, and 363 to fashion relief that safeguards landlords' property interests during tenants' bankruptcies.  *See, e.g., In re Borbridge*, 66 B.R. 998, 1002 (Bankr. E.D. Pa. 1986) (sections 361, 362(d)(1), and 363(e) apply to a leasehold interest in a Chapter 7 case involving a nonresidential lease).

49.    Some courts therefore have issued adequate protection orders directing tenants to pay landlords for use and occupancy of real property – and have granted relief from stay if the debtors fail to make those adequate protection payments – all without any reliance upon the principles applicable to section 503(b)(1) of the Bankruptcy Code.  *See, e.g., In re Winer,* 2008 Bankr. LEXIS 1535 at *4, 10-11 (Bankr. E.D.N.Y. May 13, 2008) (landlord's interest in premises was not adequately protected, and "cause" existed to lift the automatic stay, where the debtor failed to make two adequate protection payments "for use and occupancy" pursuant to an adequate protection order).  Thus, sections 361, 362, and 363(e) can provide the statutory predicate to ensure adequate protection of a landlord's interests in real property and compensation for an estate's post-petition use and occupancy.

50.    Adequate protection is not a guarantee that a landlord's claim will be paid in full, though.  "Instead, the [c]ourt must determine whether the landlords' interests are protected as nearly as possible against possible risks to that interest."  *In re Ernst Home Center, Inc.,* 209 B.R. 955, 966 (Bankr. W.D. Wash. 1997).

51.    If the automatic stay is not lifted (despite non-payment of post-petition rent or other harms), "adequate protection" may fall short of protecting a landlord's interests "as nearly as possible against possible risks."

52.     Congress sought to ameliorate some of those risks for commercial landlords by, for example, enacting section 365(d)(3).  It requires debtors-in-possession and trustees to "timely perform all the obligations . . . arising from and after an order for relief under any unexpired leases of nonresidential real property . . .".  *See* 11 U.S.C. § 365(d)(3).  Congress added this provision (among others) in 1984 to "[e]insure that the debtor-tenants [of nonresidential property] pay their rent, common area and other charges on time, pending the trustee's assumption or rejection of the lease."  130 Cong. Rec. S8891, 599 (1984) (statement of Sen. Hatch).

53.     Section 365(d)(3) has its limits, though, because it only protects landlords who are parties to bona fide "unexpired leases" of commercial real property.  *See Imperial Bev. Group, supra*, 457 B.R. at 496 (citing *In re PCH Assocs.*, 804 F.2d 193, 198 (2d Cir. 1986)).

54.     Section 363(e)'s mandate to "adequately protect" landlords is not that limited, however; it applies even where (as in this case) no commercial lease exists on the petition date.  As the court in *RB Furniture* observed generally:

> Section 365(d)(3) just applies to commercial real property leases. There are many other executory contracts that require the protection of § 363(e). ***In addition, adequate protection is a fluid concept that reflects all the circumstances surrounding a debtor's use of the property***, while § 365(d)(3) deals solely with debtor's performance of its obligations under the contract. It could be that the mere performance of debtor's obligations under the contract would not provide adequate protection for the party in interest.

*RB Furniture, supra*, 141 B.R. at 713-14 (emphasis added).  Thus, a landlord's rights to adequate protection are expansive, derived from all the circumstances surrounding the debtor's use of the landlord's premises.

55.     A debtor must pay reasonable rent for the use of premises during bankruptcy.  If the debtor does not, then section 363(e) requires the debtor to provide some form of adequate protection. *See In re Attorneys Office Management, Inc.*, 29 B.R. 96, 98 (Bankr. C.D. Cal. 1983).

13

56.    Here, the Trustee acknowledges that (despite using her Property since the Petition Date) the estate has paid Biros nothing.  *See* Stipulated Order at ¶5.  Since early in this case, Biros consistently demanded relief from stay.  Section 363(e) therefore required the estate (through the Debtor or the Trustee, as the case may be) to adequately protect Biros' interest in the Property. The estate did not.

57.    Nor did the Court condition the estate's ongoing use of Biros' Property to the extent necessary to protect her interests "as nearly as possible against possible risks."  *In re Ernst Home Center, Inc.,* 209 B.R. 955, 966 (Bankr. W.D. Wash. 1997).  The Court approved only partial, circumscribed relief.  It denied Biros the most fundamental protection she sought – i.e., relief from stay to eject the Debtor and possess the Property – while not requiring the estate to pay her *anything*.

58.    Pursuant to section 363(e), the Court can and should award Biros sufficient compensation, in the form of a single payment as contemplated in section 361(1) or an indubitable equivalent as provided in section 361(3), to adequately protect her interest in the Property and its reasonable rental value since the Petition Date, albeit retroactively.

**B.  Section 503(b)(1) administrative expense principles**

59.    Adequate protection principles under sections 361, 362, and 363 are not the only remedies available to a landlord.  Section 503(b)(1) provides another basis on which to protect a landlord's interests – by potentially entitling it to an administrative expense claim for, among other things, post-petition rent.  Unlike section 365(d)(3), with its directive that trustees must proactively and "timely perform all the [lease] obligations," section 503(b)(1) requires the landlord to request post-petition rent as "actual, necessary costs and expenses of preserving the estate . . .".  *See* 11 U.S.C. § 503(b)(1)(A).

14

60.    "Actual and necessary costs under [s]ection 503 include costs ordinarily incident to operation of a business, and need not be limited to costs without which rehabilitation would be impossible." *In re Cohen & Sons Caterers, Inc.,* 143 B.R. 27 (E.D. Pa. 1992).  Bankruptcy courts have broad discretion to determine whether a claim is a proper administrative expense. *Upper Peninsula Power Co. v. Verso Corp. (In re Verso Corp.),* 2019 U.S. Dist. LEXIS 125420, at *6 n.3 (D. Del. July 29, 2019) (citations omitted).

61.    In order to be entitled to an administrative expense claim under section 503(b)(1)(A), the claimant must show that "(1) there was a post-petition transaction between the claimant and the estate and (2) those expenses yielded a benefit to the estate."  *In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021) (internal quotations and citations omitted).

62.    With respect to section 503(b)(1), the Third Circuit has adopted the view that the "benefit does not, however, 'have to be substantial' to qualify" as an administrative expense. *Id.* at 742 (quoting *In re Women First Healthcare, Inc.*, 332 B.R. 115, 121 (Bankr. D. Del. 2005)).

63.    The Third Circuit also has recognized that, even after a lease expires, if the debtor continues to use and occupy the premises post-petition, its landlord is entitled to an administrative expense for the reasonable rent associated with that use and occupancy. *See, e.g., Zagata Fabricators, Inc. v. Superior Air Prods.*, 893 F.2d 624, 629 (3d. Cir. 1990). *See also In re Goody's Family Clothing, Inc.,* 610 F.3d 812, 819 (3d Cir. 2010) ("Although it addressed an expired lease, *Zagata* supports that the Debtors' retaining possession of the premises, thereby inducing post-petition services from the Landlords, is sufficient under the *O'Brien* and *Mammoth Mart* inquiries to be a transaction justifying administrative priority."); *In re Jeans.com*, 491 B.R. 16, 2013 Bankr. LEXIS 1548 (Bankr. D. P.R. 2013).

64.    As the Circuit explained further in *Zagata*, "[t]here is no question, of course, that the payment of rent for the use and occupancy of real estate ordinarily counts as an 'actual, necessary' cost to which a landlord, as a creditor, is entitled." *Zagata, supra,* 892 F.2d at 627 (citation omitted). "Because bankruptcy proceedings are considered to be equitable, however, the landlord's right to collect monetary relief is somewhat curtailed: a debtor is generally required to pay only a reasonable value for the use and occupancy of the landlord's property, which may or may not equal the amount agreed upon in the terms of the lease." *Id.*

65.    In connection with balancing the equities between an estate's needs and a landlord's interests – even if a landlord is alleged to have misbehaved, as Snyder has self-servingly alleged on multiple occasions – courts should be mindful that "the equitable maxim requiring parties to come to the court with clean hands must be balanced against the paramount common sense principle that you can't get something for nothing." *Zagata Fabricators, Inc. v. Superior Air Prods.*, 893 F.2d 624, 629 (3d. Cir. 1990). Otherwise, "the inequities created by the remedy granted by the bankruptcy court [may] far outweigh the inequities sought to be redressed." *Id.* (where seller breached its contract of sale, bankruptcy court erred by allowing debtor to retain possession of and use the seller's real property rent-free).

66.    Moreover, a landlord is entitled to recover administrative rent even if the premises' post-petition use was not "profitable" to the debtor. *See, e.g., In re Patient Educ. Media, Inc.*, 221 B.R. 97 (S.D.N.Y. 1998) ("Just as the debtor in possession must still pay a trade vendor who provides inventory that cannot be sold, the debtor in possession must pay for the use of a nondebtor's property, even where the use turns out to be unprofitable.") (citing *In re Klein Sleep Prods., Inc.*, 78 F.3d 18, 26 (2d Cir. 1996)). *See also In re Continental Airlines, Inc.*, 146 B.R. 520, 527 (Bankr. D. Del. 1992). The district court in *Patient Education Media* explained that, as

16

a matter of policy, "[l]inking the creditor's priority entitlement to the profitable use of his credit will chill the creditor's willingness to extend credit, and ultimately, frustrate the goal of rehabilitation."  221 B.R. at 104.  In other words, conditioning a landlord's entitlement to post-petition rent on the debtor showing a profit (e.g., not becoming administratively insolvent) would force landlords to subsidize reorganizations and liquidations alike, and would motivate them to press for relief early and often in virtually every case.

67.    Furthermore, although disagreement exists among the courts, many have held (including in the Third Circuit) that the "reasonable value of use and occupancy" should be measured objectively, focusing on the reasonable value of the premises without regard to the debtor's actual use of the property.  *See In re F.A. Potts & Co.,* 137 B.R. 13, 17 (E.D. Pa. 1992).  This is so even if the debtor does not use the premises for the same purposes post-petition that it did pre-petition.  *Id.*

68.    Even if the use and occupation of real estate is merely to provide storage for property of the estate, that storage constitutes "preserving the estate" within the meaning of section 503(b)(1).  Therefore, post-petition expenses of storage are entitled to administrative expense priority too.  *See, e.g., In re Aerospace Techs*., 199 B.R. 331, 339-340 (Bankr. M.D.N.C. 1996).  In *Aerospace*, no lease or rental agreement existed.  The court observed that, in order for the trustee to sell the estate's personal property, the property had to be stored somewhere.  If it was not stored at the landlord's facility, the court reasoned, the trustee would have had store it elsewhere and pay the rent and storage fees to do so.  *Id*. at 340.  Based upon the evidence presented regarding reasonable rent for storage under the particular facts of that case, the court awarded the landlord an administrative expense of $16,250, equal to $2,500 per month for six and a half months of storage.  *Id.*

17

II.    **Determining the amount of Biros' administrative rent or adequate protection claim**

69.    Since the date upon which Biros filed her Initial Admin Claim Motion, the December 15 asset sale closed, the estate's tangible personal property was removed from the Property, and the automatic stay has terminated as to Biros.   Thanks to these intervening developments, Biros now knows the total period during which the estate used her Property, for purposes of determining her administrative rent or adequate protection claim.

70.    If an unexpired lease exists, determining the "reasonable post-petition rent" often is straightforward, because the stated rental amount in the lease typically is presumed to be a reasonable amount.  When no lease exists, though, "there is no rental rate which is presumptively reasonable." *In re Aerospace Techs*., 199 B.R. at 340.  Consequently, when no lease exists, determining the proper, reasonable rent necessitates use of other measures, other metrics.

71.    In other words, because no lease existed between Biros and the Debtor pre-petition, and because the Debtor operated without any rental agreement post-petition, the central question continues to be how best to "value" or determine the amount of Biros' "administrative rent" claim. Similarly, what is the proper amount of "adequate protection" required to compensate Biros for the real property?  Biros believes, and therefore avers, that this is a unique situation, and she should be compensated fairly for the time the estate used her Property without adequately protecting her interests.

72.    <u>First</u>, mindful of the Court's comments about "reasonable rent" in its Memorandum Opinion, Biros recently obtained an estimate of fair rental value from a real estate appraisal firm. That report indicates that the fair rental value consists of the following:

    1) Pole building – $5.50 per square foot (triple net), for 3,200 square feet, yielding a total of $1,466 per month;

2)  Self-storage areas – 5 units at $275 per month (i.e., $55 per unit per month (4 foot by 7 foot)), 20 units at $1,500 per month (i.e., $75 per unit per month (10 foot by 10 foot)), and 1 unit at $100 per month (10 foot by 20 foot by 30 foot); and

3)  Land areas of $2,500 per month for 50 rentable spaces (at $50 per space) and $1,240 per month for 31,000 square feet of lay down space (at $0.48 per square foot).

The rounded total for these rental values is $7,000 per month.  Thus, for 9 months' use, the total "reasonable rent" for the space under this metric would be $63,000.

73.    <u>Second</u>, Biros obtained a broker's opinion that the current value of the real estate is between $703,000 and $904,000.  For purposes of argument, utilizing the lesser of these two amounts (in place of the $1.9 million valuation listed in the Debtor's Schedules of Assets and Liabilities), and then multiplying that by 11.82% (the updated average return on commercial real estate investment for the S&P as of August 2022), the product is $83,424 per year – or an expected return by a developer of at least $6,952 per month.  (Biros' acquisition cost also includes substantial legal fees, taxes, carry costs and related expenses, which a real estate investor would include for purposes of determining a proper return on its assets (soft costs) – and as one means of gauging the rents it should charge its tenants in order to recover such amounts.  Adding those legal fees and expenses in this instance would enlarge this amount considerably.)

74.    Biros understands that the Court does not consider a "return on assets" or "return on investment" metric to be an appropriate analytical standard to determine reasonable rent in this context, and therefore does not rely on it for purposes of this request.  Biros merely observes that the adjusted amount calculated under that metric (without adding her legal fees and expenses) is congruent with the $7,000 per month "fair rental value" in the appraiser's report.

75.    <u>Third</u>, as the Court noted in its Memorandum Opinion, if the Trustee had opted to move the tangible personal property off-site to another location in preparation for the sale, the estate would have incurred moving expenses and rental or storage fees at an alternative location –

moving expenses and storage fees the estate avoided by continuing to use the Property for storage.

Biros obtained an estimate that a moving company would have charged $6,680 to move everything

from the Property, assuming it was given access to the on-site high-lift to help load the personal

property. Storage fees elsewhere may have been approximately $1,500 per month – e.g., the

$1,500 per month "credit" toward unpaid rent that the Court granted to Biros in connection with

her bid at the asset sale. The total of $6,680 (to move the personal property) and $1,500 per month

(to store it) for up to 9 months would equal $20,180. Add to that any expenses necessary to insure,

secure, or otherwise safeguard all of the personal property until consummation of the sale.

76.    <u>Fourth</u>, as yet another method of assessing "reasonable rent," Biros also has

considered the amount of rent the Debtor actually charged its renters for storage space at the

Property (inside and outside). Based upon testimony and lists the Debtor provided, it appears that

post-petition the Debtor rented space at the Property as follows:

1) 21 storage units (based on rent records of George Snyder) at an average of $80.00/unit, totaling $1,680.00 per month; plus

2) Garage rental: 2 half-garage at $250.00 per month, totaling $500.00 per month; plus

3) Vehicles: 55 containers, trailers, cars and construction equipment at $50.00 per month, totaling $2,750.00 per month.

The total monthly rentals charged for these uses was $4,930 per month. For the 9-month period,

under this metric the aggregate amount the Debtor charged was $44,370.

77.    Biros understands, though, that the Trustee did not actually collect that much

money. Nonetheless, the Trustee presumably has claims against the renters to recover the amounts

they owe but did not pay, plus interest if applicable. Whether the Trustee opts to pursue such

claims is a matter within his discretion (and subject to this Court's overview). In any event, the

rental amounts charged to those tenants is yet another measure of the benefit the estate derived

from the Property, even if the Trustee does not try and collect all of that rent.

78.    <u>Fifth</u>, Biros has considered the total rent the Trustee actually did collect.  She is informed that the Trustee collected rent of approximately $4,145, plus proceeds from junk cars of $975, for a total of $5,120.  If the Trustee pursued and collected even just 20% of the possible rents of $44,370 (after netting his legal fees to do so), the result would be almost $8,900.  Adding such net recovery to the $5,120 actually collected would constitute yet another measure of the estate's benefit from its use of the Property, totaling $14,020.

79.    Furthermore, adding this amount to the $20,180 the estate saved by not moving the personal property and paying to store it elsewhere (see above), the estate realized an aggregate benefit of $34,200.

80.    Given the unusual facts of this situation, and Congress' concern that landlords or landowners should be treated fairly during tenants' bankruptcy cases, Biros asserts that her claim does not fit squarely into the category normally associated with an administrative rent claim under section 503(b)(1).  Instead, Biros, and the Court for that matter, must analyze this complex set of facts and circumstances to arrive at an appropriate amount to compensate Biros with an administrative claim or as adequate protection of her interest in the Property – including because she was denied its possession and use.

81.    In any event, it is undisputed that the Debtor used the Property after the Petition Date to operate its business for a time, and that the Debtor and Trustee rented space to third parties and stored the estate's personal property until it could be sold during December 2022 and removed during January 2023.  Their use generated revenues and produced sale proceeds that benefited the estate, including as explained above.  To the extent section 503(b)(1) applies, its two elements for allowance of an administrative expense – i.e., a "transaction with the estate" and "benefit to the estate" – therefore are satisfied.

21

82.     That leaves the question of how much "administrative rent" or adequate protection is owed.  Where no lease exists to "presumptively" establish the "reasonable rent" amount, courts often rely on "expert" testimony to determine it.  In this instance, the appraiser provides an answer: Based upon the appraiser's report, the reasonable rent for the estate's use of the Property during this case is at least $7,000 per month.  Consequently, for 9 months' use since the Petition Date, ending January 27, 2023, the total reasonable rent is at least $63,000.

83.     Biros therefore now believes an appropriate  administrative expense claim or adequate protection payment would be $63,000 for the estate's post-petition use and occupancy of her Property.

III.    **Reservation of rights**

84.     Biros reserves all of her rights with respect to her section 503(b)(1) administrative expense and claim for adequate protection, including in conjunction with the Court's consideration of and action on any proposed global settlement that may be achieved between the Trustee and Biros and that will be the subject of a separate motion in this case under Bankruptcy Rule 9019. Furthermore, Biros reserves the right to amend or supplement this request for any purpose.


WHEREFORE, Christine Biros requests that the Court enter an order (I) allowing Biros an administrative expense pursuant to 11 U.S.C. § 503(b)(1) or award of adequate protection pursuant to 11 U.S.C. § 363(e) in the amount of $63,000, (II) directing the Trustee to pay such allowed administrative expense or award of adequate protection to Biros from funds in the Debtor's estate promptly after entry of the order, and (III) granting to Biros such other and further relief this Court deems just and proper after a hearing on the merits.

Dated: March 1, 2023                        BERNSTEIN-BURKLEY, P.C.

By: _/s/ Robert S. Bernstein_
    Robert S. Bernstein (PA ID No. 34308)
    Lara S. Martin (PA ID No. 307272)
    601 Grant Street, Floor 9
    Pittsburgh, PA 15219
    Telephone: (412) 456-8108
    Facsimile: (412) 456-8135
    rbernstein@bernsteinlaw.com
    lmartin@bernsteinlaw.com

    *Counsel for Christine Biros*

## IN THE UNITED STATES BANKRUPTCY COUR
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br>U LOCK INC.,<br>　　　　Debtor.<br><br><br>CHRISTINE BIROS,<br><br>　　　　　　Movant,<br><br>　　　　v.<br><br>ROBERT H. SLONE, Chapter 7 Trustee for<br>the Estate of U LOCK, INC.,<br><br>　　　　　Respondent | Bankruptcy No. 22-20823-GLT<br><br>Chapter 7<br><br><br>Related Doc. No. 258, 277 |

### CONSENT MOTION TO APPROVE SETTLEMENT AGREEMENT PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

NOW COMES, Christine Biros (the "Movant"), creditor and party-in-interest in the above captioned bankruptcy case, by and through her undersigned counsel, Bernstein-Burkley, P.C. and files this *Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* (the "Motion") and in support hereof states as follows:

### JURISDICTION AND VENUE

1.　　The United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2.　　Venue of this case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3.　　The statutory predicates for the relief hereinafter requested are section 105 of the

United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, "Bankruptcy Code") and Rule 9019 of

the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

## **FACTUAL BACKGROUND**

4.      The Chapter 7 Trustee, Robert H. Slone, Esq, has entered into the Settlement

Agreement referenced herein and asked that Biros' counsel file this Motion as a convenience to

the Trustee and with his consent.

5.      On April 27, 2022 (the "Petition Date"), an involuntary petition for relief under

Chapter 7 of the Bankruptcy Code was filed against U LOCK Inc., (the "Debtor") in the United

States Bankruptcy Court for the Western District of Pennsylvania (the "Court") at case number

22-20823-GLT (the "Case").

6.      The Debtor did not file a response to the involuntary petition.

7.      On June 17, 2022, the Court entered an Order for Relief. [Docket No. 42]

8.      On December 22, 2022, Biros filed her Motion for Allowance of Administrative

Expense Claim Pursuant to 11 U.S.C. §503(b)(1) [Doc. No. 258] (the "Motion for Administrative

Expense").

9.      On January 6, 2023, the Trustee filed his Response to the Motion for Administrative

Expense (the "Response") acknowledging that an allowance of some amount is appropriate, but

disputing the amount requested by Biros. *See*, Doc. No. 277.

10.     On January 30, 2023, this Honorable Court entered an Order setting, *inter alia*, a

deadline of March 1, 2023 for Biros to file a Renewed or Amended Motion for Administrative

Expense Claim.

11.     On August 25, 2022, Biros filed Claim Number 2 in the total amount of $20,642.53

("Claim Number 2"), seeking payment of certain real estate taxes which the Debtor was ordered

to pay by the Supreme Court of Pennsylvania on the real property owned by Biros. Biros intends

to amend the claim to include the postpetition taxes which the Debtor has also failed to pay.

12.     On August 25, 2022, Biros filed Claim Number 3, seeking payment of prepetition

rent in the total amount of $405,000.00 for the period of time from July 2015 through April 2022

("Claim Number 3") when Debtor held and used Biros' real property.

13.     On August 26, 2022, Biros filed Claim Number 4, seeking payment of unliquidated

damages for the cost of environmental remediation ("Claim Number 4" together with Claim

Number 1, Claim Number 2 and Claim Number 3, the "Claims") as a result of damage by the

Debtor to Biros' real property during the period when Debtor had the use and occupancy of the

real property.

14.     On December 20, 2022, this Honorable Court entered an Order approving a sale of

substantially all of the assets of the Debtor (the "Sale Order")[Doc. No. 254]

15.     After the sale of substantially all the assets of the Debtor, Biros and the Trustee

negotiated a comprehensive settlement to eliminate any disputes between them with respect to the

Claims and the Motion for Administrative Expense (the "Biros Claims")

16.     On February 27, 2023 Biros and the Trustee entered into the attached settlement

agreement resolving the Biros Outstanding Disputes (the "Settlement Agreement").

## **RELIEF REQUESTED**

17.     By this Motion, the Movant seeks the entry of an order pursuant to section 105(a)

of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure, substantially

in the form attached hereto, approving the Settlement Agreement, and granting such other and

further relief as this Court deems just and proper.

## BASIS FOR RELIEF REQUESTED

18.      Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "the court

may issue any order . . . necessary or appropriate to carry out the provisions of the Bankruptcy

Code. *See* 11 U.S.C. § 105(a). In addition, Federal Rule of Bankruptcy Procedure 9019(a) provides

that "on a motion by the trustee and after a hearing, the Court may approve a compromise or

settlement." Fed. R. Bankr. P. 9019(a).

19.      In approving a proposed compromise or settlement, the Bankruptcy Court is

required to make an "informed and independent judgment" as to whether the compromise or

settlement is "fair and equitable," based on an:

> Educated estimate of the complexity, expense, and likely duration of . . .
> litigation, the possible difficulties of collecting on any judgment which
> might be obtained, and all other factors relevant to a full and fair assessment
> of the wisdom of the proposed compromise.

*Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424

(1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).

20.      The Supreme Court has recognized "[i]n administering reorganization proceedings

in an economical and practical manner it will often be wise to arrange the settlement of claims as

to which there are substantial and reasonable doubts." Id.

21.      Guided by *Protective Comm.,* the Third Circuit established four criteria that the

Bankruptcy Court should consider when ruling on a motion to compromise: (i) the probability of

success in litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation

involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the

paramount interest of creditors. *Morane v. Martin (In re Martin),* 91 F.3d 389, 393 (3d Cir. 1996);

*see also Cameron & Mittleman v. Gibbons (In re RFE Indus., Inc.),* 283 F.3d 159 (3d Cir. 2002).

22.      When reviewing settlements, the Bankruptcy Court is not required to decide the

numerous questions of law and fact raised by the parties. *See In re W.T. Grant Co.,* 699 F.2d 599,

608 (2d Cir. 1983), cert. denied 464 U.S. 22 (1983); *Neshaminy Office Bldg. Assoc.,* 62 B.R. 798

(E.D. Pa. 1986). Rather, the Bankruptcy Court should canvass the issues and see if the settlement

falls below the lowest point in the range of reasonableness. *Id.*

23.     "[T]he decision whether to approve a compromise under Rule 9019 is committed

to the sound discretion of the Court, which must determine if the compromise is fair, reasonable,

and in the interest of the estate." *In re Louise's, Inc.,* 211 B.R. 798, 801 (D. Del. 1997).

24.     During the course of this Bankruptcy Case, there have been ongoing disputes *inter*

*alia* regarding Biros' Claims.  Now that the Sale Order has been entered, the Parties wish to resolve

outstanding disputes to work toward the Trustee's resolution and closing of this case.  A copy of

the Settlement Agreement is attached hereto as Exhibit A.

## SETTLEMENT TERMS AND REQUESTED RELIEF

25.     The significant terms of the Settlement Agreement are summarized as follows[1]:

a.  Biros has filed an Amended Motion for Administrative Expense, which the
    Trustee agrees should be allowed in the total amount of $18,000, which
    represents an allowance of $2,000 per month for the nine (9) month period of
    Debtor's possession.

b.  Biros has amended Claim Number 2, which Trustee agrees should be allowed
    as a priority claim pursuant to 11 U.S.C. 505(a)(8) in the amount of $27,701.59
    as a result of pre-petition and post-petition real estate taxes incurred on the real
    property.  No taxing body has filed a claim for the same taxes and Biros does
    not intend to recover on this claim if the same taxes are paid by the Estate to
    the taxing authority.

---

[1] Any capitalized terms not defined herein shall have the meaning ascribed to them in the Settlement
Agreement.

    a.  Claim Number 3 shall be allowed as an unsecured nonpriority claim in the amount of $162,000[2] for prepetition the use and possession of the real Property and deprivation of Biros' possession.

    b.  Claim Number 4 shall be allowed as an unsecured nonpriority claim in the compromised amount of $200,000 for the environmental remediation costs[3].

26.    Biros, with the Trustee's consent, requests that this Court enter an Order approving the Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019(a).

27.    "To minimize litigation and expedite the administration of the bankruptcy estate, [c]ompromises are favored in bankruptcy." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)) (internal quotation marks omitted).

28.    A settlement must be "fair and equitable" and fall above the "lowest point in the range of reasonableness."  *In re Capmark Financial Group, Inc.,* 438 B.R. 471, 515 (D. Del. 2010) (citing *In re: W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983)).

29.    The court must ultimately determine whether the proposed settlement is "fair, reasonable and in the interest of the bankruptcy estate."  *In re Marvel Entertainment Group, Inc.,* 222 B.R. 243, 249 (D. Del. 1998).

30.    In determining whether a settlement is fair and reasonable, the court should consider the following factors identified by the Third Circuit in *Martin*: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation

---

[2] Biros was determined to be the beneficial owner of the Property since July 2015 and accordingly, pursuant to Pennsylvania case law and the theory of quantum meruit, Biros is entitled to the fair rental value of the Property from July 2015 until the Petition Date.  Biros has received a professional valuation for the monthly market rent for the Property at $7,000.00.  The prepetition period was from July 2015 through April 2022 (81 months).  Accordingly, eighty-one months of rent at $7,000.00 equals $567,000.00.

[3] Biros has received various estimates for the remediation clean-up costs on the Property ranging from $125,000 to $314,500.00.  While the work has not yet been completed, Biros has agreed to the middle range of the estimates for purposes of valuing the remediation work.

involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *See id.* (citing *Martin*, 91 F.3d at 393).

31.     Here, the Settlement Agreement is in the best interest of creditors.

32.     The Motion for Administrative Expense asserted a claim for $144,000.00 pursuant to 11 U.S.C. §503(b)(1) for the use and occupancy of the Property for the eight months subsequent to the Petition Date.  The Amended Motion outlines the bases for a claim of at least $63,000.  The Settlement Agreement proposes to resolve the Motion for Administrative Expense for a claim in the reduced amount of $18,000.

33.     This reduction is a significant compromise for Biros and a substantial benefit to the Estate.  Biros' original Motion for Administrative Expense asserts the administrative expense claim based, in part, on the value of the subject property.  Subsequent to the filing of the motion, Biros' obtained a broker's opinion that the current value of the Property is between $703,000 and $904,000.  Based on the lower assessment value (and not the scheduled value of the Property), the expected return for the Property by a developer would be at least $6,952.00 per month.

34.     Additionally, the parties have estimated that the Trustee would have spent $6,680 for the moving the equipment that was kept on the Property, in addition to the storage costs for the equipment that was moved which would have been between $500-$1,000.00 per month.  Accordingly, even using a conservative estimate for the transportation costs of $6,680 and $750.00 per month for storage, the benefit to the estate for moving and storage for nine months alone (April 27-January 27) is $13,340.00.

35.     Finally, Biros' also obtained an estimate of the fair rental value for the Property from a real estate appraisal firm showing the rental value at $7,000.00/month.

36.    Biros' has a right to a claim for the deprivation of the possession of her Property as well as costs incurred and which possession was a benefit to the estate.   Accordingly, a compromised claim for the use of the Property for the nine month period at $2,000.00 is in the best interests of creditors in not only limiting Biros' right to recovery but also a cessation of any litigation over the Claims.

37.    Claim Number 2 asserts a claim for $20,642.53 pursuant to 11 U.S.C. §505(a)(8) for real estate taxes owed pursuant to Court Order.  Biros will be amending the claim to include taxes incurred postpetition.  The Debtor was ordered by the state court to pay the taxes and has not.  The Settlement Agreement proposes to allow Claim Number 2 for a priority claim in the amount of $27,701.59 owed to the Westmoreland County Tax Claim Bureau.  The Settlement resolves any possible dispute over the responsibility for the taxes and reduces the amount of expense the Estate will incur in such a dispute.

38.    Claim Number 3 asserts a claim for $405,000.00 for the prepetition rent due for the Property for the period of time from July 2015 through April 2022 when Debtor held and used Biros' real property.  Biros has or subsequent hereto will be filing an amended Claim Number 3 in the total amount of $567,000.00 for the prepetition rent based on the fair rental value of the Property.

39.    The Settlement Agreement proposes to resolve Claim Number 3 for $162,000.00. As discussed in prior pleadings filed by Biros in this case, pursuant to the litigation in Westmoreland County, it was determined that Biros was the beneficial owner of the Property since 2015.  Pursuant to Pennsylvania case law, Biros is entitled to a quantum meruit claim for the fair rental value of the Property from July 2015 until the Petition Date.  Biros has received a professional valuation for the monthly market rent for the Property at $7,000.00.  The prepetition

period was from July 2015 through April 2022 (81 months).  Accordingly, eighty-one months of rent at $7,000.00 equals $567,000.00.

40.    *Quantum meruit* is an equitable remedy to provide restitution for unjust enrichment in the amount of the reasonable value of a benefit provided to a recipient. *Durstv. MilroyGeneralContracting, Inc., 52A.3d 357 (2012) citing Am.& Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 606Pa. 584,2A.3d 526, 532fn. 8 (2010) (citing Black's Law Dictionary(8 th ed. 2004)).* There are three elements to be satisfied in order to support a finding for unjust enrichment: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. (citations omitted). *Durst, at360.*

41.    Further, where unjust enrichment is found, the law implies a contract which requires the defendant to pay to the plaintiff the value of the benefit conferred. *Durst, at 360, citing Schenckv. K.E. David, Ltd., 446 Pa.Super. 94,666A.2d327(1995).* Although *Durst* applied to a situation in which plaintiff contractor sued homeowners for the value of improvements, it applies equally in this situation of a real estate rental. In *Milby v. Pote, 189A.3d1065(2018)* , a lessee occupied multiple spaces within a manufactured home park and refused to pay either rent or reimbursement for utilities which the lessee had enjoyed. The landlord/owner of the trailer park asserted a claim for rent payment based on *quantum meruit* . The trial court awarded the landlord a financial judgment based on the market value of the use of the lot. *Milby, at 1087.* The principles underlying the theory of *quantum meruit* are expressed in the Restatement, Restitution which states, "…a person who has been unjustly enriched at the expense of another is required to make restitution to the other". *Milby, at 1087, citing Zawada v. Pennsylvania Sys. Bd. of Adjustment,*

*Bhd. of Ry. & S.S. Clerks, Freight Handlers, Exp. & Station Emp., 392Pa. 207,140A.2d 335,340(1958)(quoting Restatement, Restitution § 1).*

42.     The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, the focus is not on the intention of the parties but rather on whether the defendant has been unjustly enriched. *Schenck, at 97,328.*

43.      There is no dispute that Debtor occupied the Property.   In fact, this Honorable Court has specifically acknowledged Debtor's occupancy, both pre-petition and post-petition. Further, there is no question that Debtor benefitted from the occupancy of the Property by accepting rent from its various renters throughout this period.  This has been acknowledged by the President of Debtor, George Snyder. Lastly, because Biros has been deprived of the use of her property since 2015, retention of this benefit without payment has been inequitable.  With regard to the value of the benefit conferred, the question is not of value to the recipient, but rather the market value of the benefit conferred. *See e.g.*, *Fleming Steel Co. v. Jacobs Engineering Group, Inc., 373 F.Supp. 3d 567, 606(USDC, WDPA, 2019); Milby, at 1087.*

44.     In *Fleming Steel,* a manufacturer sued a contractor for unjust enrichment under Pennsylvania law in connection with an oral agreement. Fleming Steel, the plaintiff, claimed that it was entitled to reimbursement for the market value hourly rates Fleming Steel paid its engineers. The District Court held that Fleming Steel was entitled to present expert testimony as to the market value rates of its engineers. Consequently, the Court held that the issue was not whether Jacobs Engineering, the recipient of the services, could utilize the services or what the value of those services were to Jacobs Engineering, but rather what the market value was of Fleming Steel's engineering rates. *Fleming Steel, at 606.*

45.    Accordingly, the agreement to reduce Claim Number 3 to $162,000.00 significantly benefits the estate and its creditors by reducing the most significant unsecured claim.

46.    Claim Number 4 asserts a claim for unliquidated damages for the cost of environmental remediation as a result of damage by the Debtor to Biros' real property during the period when Debtor had the use and occupancy of the real property. The Settlement Agreement proposes to allow Claim Number 4 as an allowed unsecured claim for $200,000.00.

47.    This claim, as well as the presence of substantial sources of hazardous waste on the site, has previously been discussed during this case.  It is undisputed that a garbage truck caught fire when parked on the Debtor property between the Petition Date and the Order for Relief.

48.    The report of American Geosciences, Inc. from January, 2020 as well as its Affidavit from May, 2022, layout the presence of hazardous waste on the property, for which the Debtor would have liability under Pennsylvania statutes. *See*, Claim Number 4.   Under the Pennsylvania Hazardous Sites Cleanup Act, *35P.S. §§6020.101et seq.* ("HSCA"), both Debtor and principal George Snyder were responsible persons. Further, the HSCA authorizes Biros to seek contribution for the cost of remediation and cleanup.

49.    In light of the bankruptcy, it is unlikely that any substantial cleanup activity will be undertaken directly by the Debtor, and therefore Biros will be obligated to undertake any cleanup. In order to obtain any contribution from the Estate, it is necessary to demonstrate that, if it was solvent, Debtor would have an obligation to either perform the remediation or contribute to the cost of remediation.

50.    As described in the 2020 Report as well as the 2022 Affidavit, Hazardous Waste is present on the site and may have caused contamination of the soil and/or groundwater. The extent of this contamination is currently unknown. In the 2020 Report, a rough estimate of $414,500.00

was given for the cost of remediation of the site. In the interim, as part of the asset sale, various items were removed by Shanni Snyder or her representatives. The aggregate amount of the removed items in AGI's estimate was $100,000 thereby reducing AGI's estimate to $314,500. While this cost may not be currently valid, no environmental remediation is inexpensive.

51.    Biros has received various estimates for the cleanup. They range from a low of $125,000 to as much as $314,500. The work has not yet been completed.

52.    Biros has agreed to an allowed claim of $200,000 for the remediation costs.

53.    Continued litigation of the Biros' Claims would result in significantly more expense to the Debtor's estate and the settlement provides for a reasonable resolution of all outstanding claims by Biros against the Debtor's estate.

54.    The Settlement Agreement, by contrast, will relieve a burden on the estate by providing for a resolution for all of the outstanding matters and actions between the parties, and allow for the case to be administered and closed.

55.    Accordingly, the Agreement is fair and reasonable.

56.    The Parties submit that the proposed Settlement Agreement is fair and equitable, in the best interest of the Debtor's estate and creditors, and well within the range of reasonableness.

57.    Based on the foregoing, the Parties believe and therefore, aver that the <u>Martin</u> factors set forth above, weigh heavily in favor of approval of the Settlement Agreement.

WHEREFORE, Christine Biros, creditor and party-in-interest, and Robert H. Slone, Chapter 7 trustee of this Bankruptcy Case, respectfully request that this Honorable Court enter an order substantially in the form attached hereto (i) approving this Motion, and (ii) granting such other relief as this Court deems just and proper.

Dated: March 1, 2023

Respectfully submitted by:

BERNSTEIN-BURKLEY, P.C.

By: */s/ Robert S. Bernstein*
Robert S. Bernstein (PA ID No. 34308)
Lara S. Martin (PA ID No. 307272)
601 Grant Street, Floor 9
Pittsburgh, PA 15219
Telephone: (412) 456-8108
Facsimile: (412) 456-8135
rbernstein@bernsteinlaw.com
lmartin@bernsteinlaw.com

**BERNSTEIN ▪ BURKLEY**
— ATTORNEYS AT LAW —

*A business approach to legal service* ℠

Robert S. Bernstein

rbernstein@bernsteinlaw.com | (412) 456-8101

Board Certified in Business Bankruptcy Law and
Creditors' Rights Law - American Board of
Certification

---

February 27, 2023

Robert Slone, Esq., Trustee
Mahady & Mahady
223 South Maple Avenue
Greensburg, PA 15601

### SettlementAgreement

Re: Christine Biros v. U-Lock, Inc.
Our File Number: 3626-001

Dear Mr. Slone:

This will follow on our several conversations related to the various claims asserted by Christine Biros in the U Lock case. You and I agreed that we have reached the point where there is enough information available to allow us to come to an overall resolution of the Biros claims. This letter will set out terms for a settlement of the various claims, which we have agreed to as a package, to be supported by a Joint Motion under Rule 9019 which we will file on or about March 1, when Ms. Biros will have also filed an Amended Motion for Payment of Administrative Expense.

As you and I discussed, we have filed Objections to the filed claims of Shanni Snyder (Claim #1) and George Snyder (Claim #5). While we will file and prosecute the Objections, we have discussed the bases for the Objections with you and you have agreed to reasonably support our efforts.

We have also discussed the testimony of George Snyder that there was a sale of an asset in November of 2021, which resulted in a debt repayment of $38,000 to George Snyder and $7,000 to Tammy Snyder. We have agreed that you will pursue recovery of the preferential transfers and that Ms. Biros will reasonably support your efforts.

This settlement is a comprehensive settlement of the various claims listed and represents a combined compromise to save the potential litigation expense and risk to both the Estate and to Ms. Biros. The amounts agreed are interdependent and not severable without the express written consent of Ms. Biros. If the Court declines to approve the settlement as a whole, the proposed compromises of the other claims will not be enforceable against Ms. Biros without her expressed written consent and, failing that consent, she shall have the right to prosecute her claims without being limited by these proposed compromises.

The settlement is dependent upon approval by the Bankruptcy Court, upon appropriate Order(s) allowing the four claims in the amounts agreed herein.

---

Robert Slone, Esq.
February 27, 2023
Page 2

As to the Biros claims:

1. Administrative Rent Claim:

Now that the December 15 sale of assets has closed and the personal property has been removed from Biros' real property, and we have the opportunity to dig more deeply in the various metrics to be considered for a claim under §503(b), so we both have a better idea of what a fair claim might be in the context of the overall estate. Notwithstanding our arguments for a more significant claim, we have analyzed the administrative rent claim in a few different ways. We have provided you with our legal arguments and calculations.

While we think there are reasonable legal arguments that could be made for a higher administrative claim, our combined updated view of the case is that we need not fight that fight based on the likely assets in the case and the overall settlement consideration.

Ms. Biros is also not interested in a fight with you over whether the Trustee fees and reasonable attorneys' fees will be paid first or will be prorated with her administrative claim. She understands that your fees enjoy a high priority, and she is not interested in interfering with that. So, under this overall settlement proposal, her expected administrative claim is low enough as to not interfere with your getting paid on any allowed claim.

Therefore, we have agreed to an allowance of $2000 per month for the 9-month period for a total of $18,000 as an Administrative Expense priority claim. The allowed administrative expense claim will be paid upon approval by the Court.

2. Real Estate Tax Claim (Claim #2)

Claim #2 is for real estate taxes which the Debtor was ordered by the Pennsylvania Supreme Court to be paid by U Lock. The entire filed claim amount of $20,642.53 was incurred prior to the petition date. Since the Petition Date, another $6,201.87 has accrued, which we believe is also entitled to priority status. The entire $27,701.59 should be entitled to priority status under 505(a)(8)(B). We propose that you agree to allowance at that priority status. We will be amending Claim #2 to reflect the updated postpetition taxes.

The Westmoreland County Tax Claim Bureau has not yet filed its own claim for these taxes, but based on the order of the Supreme Court and Christine's ownership of the property, Ms. Biros can maintain that claim, since she will bear the expense if not paid by the Estate. In the event the Tax Claim Bureau files a claim for the same taxes, Ms. Biros agrees that only one claim need be paid as a priority.

3. Prepetition Rent Claim (Claim #3)

Pursuant to the litigation in Westmoreland County, it was determined that Biros was the beneficial owner of the property since July 2015. Under Pennsylvania case law and the theory of quantum meruit, Ms. Biros should be entitled to the fair rental value of the property from that date until it was returned to her.

The prepetition period was from July 2015 to April 2022, a period of 81 months. Even recognizing the limited size of the estate and the discounted distributions that might be made on this claim, Ms. Biros believes that the main aim of the actions of the Snyders and the Debtor have been to allow U Lock to use the

Robert Slone, Esq.
February 27, 2023
Page 3

property (and, perhaps to deprive Ms. Biros of the use) and, as such, she should receive a claim for the full value of the fair market rent for the property. In our negotiations, you have prevailed upon Ms. Biros to heavily compromise even this prepetition claim by reducing it to the same metric that was used for the settlement of the administrative claim. We have agreed to compromise this prepetition claim for $162,000 as part of our overall deal.

4.  Environment Claim (Claim #4)

This claim, as well as the presence of substantial sources of hazardous waste on the site, has previously been discussed in one of more hearings. It seems undisputed that a garbage truck caught fire when parked on the U Lock property between the Petition Date and the Order for Relief. Judge Taddonio has already indicated that it is likely not ordinary course so, occurring in the Gap Period, it is likely a prepetition claim rather than an administrative priority claim. The undisputed report of American Geosciences, Inc. from January, 2020 as well as its Affidavit from May, 2022, layout the presence of hazardous waste on the property, for which U Lock would have liability under Pennsylvania statutes. Therefore, we are treating the entire environmental claim as one claim.

For the purpose of coming to an overall agreement for the allowance of claims, we have agreed to have this claim allowed at $200,000 as unsecured and non-priority.

This letter represents a Settlement Agreement with respect to the claims:

- Administrative Expense Claim at $18,000;
- Priority Tax Claim #2 - $27,701.59;
- Prepetition Rent Claim #3 - $162,000; and
- Prepetition Remediation Claim #4 - $200,000.

under the terms hereof. Please countersign this letter and return it to me by February 28, as evidence of your agreement to the listed terms. Thank you.

Very truly yours,
BERNSTEIN-BURKLEY, P.C.

Robert S. Bernstein

RSB/rsb

Cc:    William E. Otto, Esq.
       Christine Biros

Agreed:

_Robert Slone, Trustee_ 2/28/2023
Robert Slone, Trustee of the Estate of U Lock, Inc.

**Page 272**

FILED

**U.S. Bankruptcy Court**
**WESTERN DISTRICT OF**
**PENNSYLVANIA**

3/1/2023

**Michael R. Rhodes, Clerk**

| Fill in this information to identify the case: |
| --- |
| Debtor 1   U LOCK INC |
| Debtor 2 |
| (Spouse, if filing) |
| United States Bankruptcy Court   **WESTERN DISTRICT OF PENNSYLVANIA** |
| Case number:  **22–20823** |

## Official Form 410
## Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

| **Part 1:** | **Identify the Claim** |
| --- | --- |

| 1. **Who is the current creditor?** | Christine Biros |
| --- | --- |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |

| 2. **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? |
| --- | --- |

| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Christine Biros<br><br>Name<br><br>c/o Bernstein–Burkley, P.C.<br>601 Grant Street, 9th Floor<br>Pittsburgh, PA 15219<br><br>Contact phone _____412–456–8100_____<br><br>Contact email ____lmartin@bernsteinlaw.com____<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one): | **Where should payments to the creditor be sent?** (if different)<br><br>Name<br><br>Contact phone _____<br><br>Contact email _____ |

| 4. **Does this claim amend one already filed?** | ☐ No<br>☑ Yes. Claim number on court claims registry (if known) _2_ | Filed on _08/25/2022_<br>MM / DD / YYYY |
| --- | --- | --- |

| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |
| --- | --- |

Official Form 410                    Proof of Claim                    page 1

**Part 2:**  **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| 7. **How much is the claim?** | $   27701.59          **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Outstanding Real Estate Taxes

9. **Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**  $ _____

**Amount of the claim that is secured:**  $ _____

**Amount of the claim that is unsecured:**  $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $ _____

**Annual Interest Rate** (when case was filed)  _____ %

☐  Fixed
☐  Variable

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410                    Proof of Claim                    page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☐ No | | Amount entitled to priority |
|---|---|---|---|---|
| | | ☑ **Yes.** *Check all that apply:* | | |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $ _____

☑ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $ 27701.59

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies    $ _____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    3/1/2023
                     MM / DD / YYYY

/s/ Lara S. Martin

Signature

Print the name of the person who is completing and signing this claim:

Name    Lara S. Martin
        First name    Middle name    Last name

Title    Attorney for Creditor

Company    Bernstein–Burkley, P.C.

Identify the corporate servicer as the company if the authorized agent is a servicer

Address    601 Grant Street, 9th Floor
           Number   Street
           Pittsburgh, PA 15219
           City   State   ZIP Code

Contact phone    412–456–8100        Email    lmartin@bernsteinlaw.com

Official Form 410          Proof of Claim          page 3

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | Bankruptcy No. 22-20823-GLT |
| U LOCK INC., | Chapter 7 |
| Debtor. | |

## ADDENDUM TO AMENDED PROOF OF CLAIM NUMBER 2
## FILED BY CHRISTINE BIROS

The priority claim of Christine Biros ("Biros") arises from Debtor's failure to pay the outstanding property taxes due and owing related to the real property located at 14140 U.S. Route 30, North Huntingdon, Pennsylvania (the "Property") owned by Biros.          .

To date, Biros' claim against the Debtor totals $27,701.59.  The original claim number 2 asserted $20,642.53 due prior to the Petition Date pursuant to the Pennsylvania Supreme Court's Order requiring Debtor to pay outstanding property taxes related to the Property.  Subsequent to the Petition Date, another $6,201.87 has accrued for which the Debtor remains responsible. Pursuant to 11 U.S.C. §505(a)(8)(B), the claim should be entitled to priority status.

**Page 276**

FILED

U.S. Bankruptcy Court
**WESTERN DISTRICT OF
PENNSYLVANIA**

3/1/2023

**Michael R. Rhodes, Clerk**

| Fill in this information to identify the case: |
|---|
| Debtor 1   U LOCK INC |
| Debtor 2 |
| (Spouse, if filing) |
| United States Bankruptcy Court   **WESTERN DISTRICT OF PENNSYLVANIA** |
| Case number:  **22–20823** |

## Official Form 410
## Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Christine Biros

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Christine Biros

Name

c/o Bernstein–Burkley, P.C.
601 Grant Street, 9th Floor
Pittsburgh, PA 15219

Contact phone ___412–456–8100___

Contact email ___lmartin@bernsteinlaw.com___

Where should payments to the creditor be sent? (if different)

Name

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☐ No
☑ Yes. Claim number on court claims registry (if known) ___3___   Filed on ___08/25/2022___
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                    Proof of Claim                    page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| 7. **How much is the claim?** | $  567000.00  **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Rent Owed based on fair rental value of the Property |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**                $ _____<br><br>**Amount of the claim that is secured:**     $ _____<br><br>**Amount of the claim that is unsecured:**   $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**   $ _____<br><br>**Annual Interest Rate** (when case was filed)   _____ %<br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410                    Proof of Claim                    page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No<br>☐ Yes. *Check all that apply*: | | Amount entitled to priority |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies   $ _____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐   I am the creditor.

☒   I am the creditor's attorney or authorized agent.

☐   I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐   I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   3/1/2023

MM / DD / YYYY

/s/  Lara S. Martin

Signature

Print the name of the person who is completing and signing this claim:

Name   Lara S. Martin

First name   Middle name   Last name

Title   Attorney for Creditor

Company   Bernstein–Burkley, P.C.

Identify the corporate servicer as the company if the authorized agent is a servicer

Address   601 Grant Street, 9th Floor

Number   Street
Pittsburgh, PA 15219

City   State   ZIP Code

Contact phone   412–456–8100   Email   lmartin@bernsteinlaw.com

Official Form 410   Proof of Claim   page 3

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Bankruptcy No. 22-20823-GLT |
| U LOCK INC., | Chapter 7 |
| Debtor. | |

### ADDENDUM TO AMENDED PROOF OF CLAIM NUMBER 3
### FILED BY CHRISTINE BIROS

The unsecured claim of Christine Biros ("Biros") in the total amount of $567,000.00 arises from Debtor's failure to pay the fair rental value of the Property which Debtor operated from and possessed since July 2015[1].

Pursuant to Pennsylvania case law and the theory of quantum meruit, Biros is entitled to the fair rental value of the Property from July 2015 until the Petition Date.  Biros has received a professional valuation for the monthly market rent for the Property at $7,000.00.  The prepetition period was from July 2015 through April 2022 (81 months).  Accordingly, eighty-one months of rent at $7,000.00 equals $567,000.00.

*Quantum meruit* is an equitable remedy to provide restitution for unjust enrichment in the amount of the reasonable value of a benefit provided to a recipient. *Durst v. MilroyGeneralContracting, Inc., 52A.3d 357 (2012) citing Am.& Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 606Pa. 584,2A.3d 526, 532fn. 8 (2010) (citing Black's Law Dictionary(8 th ed. 2004)).* There are three elements to be satisfied in order to support a finding for unjust enrichment: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by

---

[1] In its orders and opinions, the trial court determined (and the Pennsylvania Superior Court affirmed) that from the beginning of U Lock's occupation on July 16, 2015 and continuously thereafter, Christine Biros held equitable title in the Property, and Debtor's legal title was for the benefit of Christine Biros.  By issuing deeds dated in May 2019, the former owners of the Property conveyed legal title to Christine Biros, which continues to this date.

defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. (citations omitted). *Durst, at360.*  Further, where unjust enrichment is found, the law implies a contract which requires the defendant to pay to the plaintiff the value of the benefit conferred. *Durst, at360, citing Schenckv. K.E. David, Ltd., 446 Pa.Super. 94,666A.2d327(1995).*

There is no dispute that Debtor occupied the Property.  In fact, the Bankruptcy Court has specifically acknowledged Debtor's occupancy, both pre-petition and post-petition.  Further, there is no question that Debtor benefitted from the occupancy of the Property by accepting rent from its various renters throughout this period. This has been acknowledged by the President of Debtor, George Snyder. Lastly, because Biros has been deprived of the use of her property since 2015, retention of this benefit without payment has been inequitable.  With regard to the value of the benefit conferred, the question is not of value to the recipient, but rather the market value of the benefit conferred. *See e.g.*, *Fleming Steel Co. v. Jacobs Engineering Group, Inc., 373 F.Supp. 3d 567, 606(USDC, WDPA, 2019); Milby, at 1087.*

Biros is entitled to an allowed claim in the total amount of $567,000.00 from Debtor's failure to pay the fair rental value of the Property which Debtor operated from and possessed since July 2015 based on a monthly market rent for the Property of $7,000.00 for eighty-one months.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | BANKRUPTCY NO. 22-20823-GLT |
| U LOCK INC., | CHAPTER 7 |
|      Debtor, | |
| Christine Biros, | |
|      Movant, | Doc. No. |
| v. | Related to Doc. Nos.: 258, 277, 345 and 346 |
| Robert H. Slone,<br>Chapter 7 Trustee for the Estate of<br>U LOCK INC., | |
| | Hearing Date and Time:<br>April 13, 2023 at 1:30pm |
|      Respondent | |

## OBJECTION TO CONSENT MOTION TO APPROVE SETTLEMENT AGREEMENT PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

AND NOW, comes Shanni Snyder, a creditor of the Debtor and a party-in-interest herein, by and through her undersigned Counsel, and files this Objection to Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure as follows:

1. Chapter 7 Trustee Robert H Slone ("Trustee") and Christine Biros ("Biros") have entered into a Settlement Agreement which purports to be "a comprehensive settlement of the various claims listed and represents a combined compromise to save the potential litigation expense and risk to both the Estate and Ms. Biros".

2. The listed claims subject to settlement are:

   a. An Administrative Rent Claim;

   b. A Real Estate Tax Claim;

   c. A Prepetition Rent Claim; and

   d. An Environment Claim.

3. Biros has filed a Motion seeking approval of the Settlement Agreement and has represented in said Motion that the Trustee consents to approval.

4. To the extent that the Settlement Agreement seeks to bind other parties-in-interest herein such as Shanni Snyder and establish a final allowance of the listed claims without an opportunity for other parties-in-interest to contest same, Shanni Snyder objects.

5. As the Court is aware, Shanni Snyder has commenced an avoidance action which is currently pending before this Honorable Court. If Ms. Snyder is successful in said action, the listed claims, which are based upon Biros' purported ownership of certain real property, would become moot.

6. If the transfer of the real property underlying Biros' claims is avoided, Biros would have no claim for rent, no claim for real estate tax debt incurred and no claim for alleged environmental damages to the real property.

7. Even if Ms. Snyder is ultimately unsuccessful in avoiding the transfer, it is averred that the claims are problematic for a variety of reasons. For example, the rent claims seem not only excessive in relation to fair market value, but Biros seeks rent for several years prior to her obtaining the transfer of the real property. It is difficult to see how Biros is entitled to rent payments regarding real property owned by someone else. Further, Biros apparently obtained a transfer of the real property in lieu of a money judgment to avoid an unjust enrichment. For Biros to recover the property to compensate her for monies expended and then to receive rent in addition would result in double compensation to Biros which would, in itself, constitute an unjust enrichment to Biros. Likewise, the environmental claim is not based upon monies paid to remediate the real property but rather is based upon a unilateral estimate provided by Biros which has not been subject to challenge or scrutiny. Further still, the estimate provided by Biros sets forth a range of possible damage costs with the low end of the range being $125,000.00. Yet Biros claims $200,000.00. Oddly, the alleged damages occurred during the gap period herein and were related to actions caused by Big's Sanitation Inc. which is believed to be a fully insured entity. Yet no claim has been filed against

said entity in order to access the insurance to fund any required cleanup. As such, it is believed that there are ample grounds for parties-in-interest to object to the claims listed in the Settlement Agreement.

8. However, to go through the claim objection process with all of the time and expense attendant thereto when said claims may well become moot via the pending avoidance action would be a poor use of resources, including the use of the judicial resources of this Honorable Court.

9. As such, to the extent that approval of the Settlement Agreement between Biros and the Trustee results in Shanni Snyder and other parties-in-interest herein being precluded from objecting to the listed claims, approval should be denied.

WHEREFORE, it is respectfully submitted that this Honorable Court should deny approval of the proposed settlement or, in the alternative, make clear that the settlement is in no way binding upon other parties-in-interest herein.

Respectfully Submitted,

Date: March 16, 2023

*/s/ John P. Lacher*
John P. Lacher
PA I.D. #62297
501 Smith Drive, Suite 3
Cranberry Twp., PA 16066
(724) 776-8000 (Phone)
(724) 776-8001 (Fax)
jlacher @lynchlaw-group.com

and

*/s/ David L. Fuchs*
David L. Fuchs
PA I.D. #205694
Fuchs Law office, LLC
554 Washington Avenue, First Floor
Carnegie, PA 15706
(412) 223-5404 (Phone)
(412) 223-5406 (Fax)
dfuchs@fuchslaw.com

Counsel for Shanni Snyder

Case 22-20823-GLT    Doc 354    Filed 03/17/23    Entered 03/20/23 13:00:FD    Desc Main
Document    Page 1 of 9
**Page 284**
3/17/23  4:24 PM
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

In re:  U LOCK INC. a/k/a )
U-LOCK INC. )        Case. 22-20823-GLT
)
Debtor. )
)        RE:  Motion 344

### OBJECTIONS OF GEORGE SNYDER TO MOTION TO CONSENT FOR ALLOWANCE OF PAYMENT OF ADMINISTRATIVE EXPENSE

I am an officer of the debtor U Lock.  I file this objection in my personal capacity and as a creditor even though the motion lists only the Trustee Robert Slone as the Respondent.

I will keep this as concise as I can.  I am aware of the motion to settle which has a more reasonable figure of $2000, although even that is problematic since Ms. Biros is also seeking the property taxes and as this Court said, the property rent should be about $1500 considering that Ms. Biros possessed it along with U Lock and was able to do what she needed without much interruption.

### TIME OF PAYMENT

I do not think that Ms. Biros should be paid until other administrative expenses are paid.  This would wipe out the estate.  I will be filing some claims for salary at minimum wage, not much, but some.

### NO REPORT ATTACHED

As to the $7000 a month figure, I cannot have her report reviewed or challenged since she did not attach it.  I understand the Rules say exhibits are to be filed 4 days before the hearing, but this is expert testimony and I cannot analyze it without reading it. I have no clue who did the report, what methods, comparables, or most importantly what disclosures Biros gave the evaluator.

I am going to assume, since I don't have the report, that the person who found the property worth the amount and the $7000 rent was not made aware of all of these

environmental damages to the property.  So the renter would have to clean that up, or Ms.

Biros would, before it being worth that much.  This Court mentioned the condition of the

property in its Show Cause, so certainly the person making the $7000 claim should have been

given full disclosure.  Therefore, it'd be $7000 a month less impairments from environmental

that came with the property.

### ENVIRONMENTAL PROBLEMS REDUCE THE VALUE OF THE RENT

Biros' motion for settlement explains that she still did not do any environmental

rehabilitation since being given access and permission in June 2022.  This necessarily means

that the property would have to be subject to a rent value with the environmental problems

factored in.  As this Court knows, Big's Sanitation aside, most of the environmental issues,

tires, etc. existed in 2015 when U Lock bought the property.  Biros has not identified what U

Lock allegedly did, and Big's was just a small portion.

Also as Biros was constructing the whole time, moving dirt, any tenant could not

enjoy $7000 worth of property. That would reduce the fair rental value.

I believe this Court pointed that out in its Memorandum, but Ms. Biros does not

address it or reduce her rent.  While she did settle with the trustee for a lower amount, but

regardless of if accepted, candor with the Court should require she present the full picture.  I

believe the inflated valuation is meant to make it look like she's giving a bargain to the

Trustee at $2000.

### BIROS EXTENDED THE TIME NECESSARY TO OCCUPY U LOCK

As this Court stated in its last Order, Biros may have prolonged the time of

occupancy.  As the Court knows, the sale of assets Order was delayed because Ms. Biros.

Also she blocked the tenants and called the police on them.  As I told the Court in the last

motion, she put this boulder in front of the tenants' door.

Ms. Biros took no responsibility at all in her motion.  She could have knocked off a

month or two without admitting wrongdoing.



### FROM JUNE, BIROS HAD CONTROL OF 90 PERCENT OF U LOCK

This is from my last opposition.  I repeat it as it still applies if she's asking for $7000

a month. U Lock is 20 acres.  The storage sheds occupy less than 10%.  As soon as this Court

granted permission for Biros to "remediate," they started accepting boulders as part of a clean

fill operation. They blocked the roads, they began accepting commercial fill.  They were

repeatedly told not to by North Huntingdon Township, but they never stopped.  Finally

around September 2022, after pressure from Mr. Otto, the Township appears to allow them

but said no more boulders.  It is unclear if the Biros family received payment or what their

terms of accepting the clean fill from Colony Holdings were, but usually people have to pay

to get rid of the large boulders.  Accepting boulders from Colony Holdings without a permit

so they can build an Auto Zone up the road isn't really remediation–and it definitely isn't

something the Estate should pay rent for.[1]  In other words, Biros occupied the majority of the

_____
[1] The Court should direct Ms. Biros to disclose all income she received from receiving the boulders
and selling the scrap she took.  Perhaps Ms. Biros owes the Estate a portion of her gains.

property.

Certainly, Ms. Biros' possession of most of the property beginning in June reduces the amount she should receive – if she should receive anything – for the alleged rent.

Biros received the boulders then buried them.  The purpose of these pictures is not to criticize the operation but to demonstrate who possessed the majority of the property.



*"REMEDIATING" BY RECEIVING BOULDERS FROM COLONY HOLDINGS WHICH IS BUILDING AN AUTOZONE NEARBY AND NEEDED TO BE RID OF THEIR WASTE ROCK.  TRUCKLOADS AND TRUCKLOADS CAME.  IT IS UNCLEAR IF BIROS RECEIVED PAYMENT FOR TAKING THE WASTE OR WAS DOING A FAVOR (BIROS AND COLONY HOLDINGS ARE JOINT VENTURERS IN OAK PARK ASSOCIATES INC.).*



*BE IT REMEDIATION, CLEAN FILL OPERATION, OR PLAYING IN THE DIRT, BUT IT IS NOT U LOCK POSSESSING THE PROPERTY.  IT IS BIROS POSSESSING, BLOCKING U LOCK, AND NOW TRYING TO GET $18,000 A MONTH FOR DOING IT.*



*MORE BOULDER "REMEDIATION" – ALL PLACED BY BIROS.*



***U LOCK ONLY POSSESSED THE BUILDINGS. THE BOULDER FARM WAS
ALL POSSESSED BY BIROS WITH ALL BOULDERS BROUGHT BY BIROS AND
THEN BURIED.  (The Court saw the property after they buried most boulders).***

Regardless of the merits of Biros' remediation, the Court needs to calculate the

percentage of occupancy by Biros and the percentage by U Lock.  As is clear, Biros' boulder

farm and activities occupied the vast majority of the land.

Here is a map of the area in yellow that Biros took complete control over and

"remediated" through clean fill and boulder burying, destroying any item in their way.  The

purple is area that U Lock did not use for any reason and which they could have done

whatever they wanted on.  The black squared buildings are the U Lock buildings.  The trees

below the yellow areas were not used or possessed by U Lock and Biros had control over.



PURPLE AREA BIROS COULD HAVE UTILIZED FOR THEIR OPERATIONS.  NOT USED BY ULOCK

YELLOW AREA IS THE PORTION OF THE LAND THAT BIROS PHYSICALLY TOOK OVER DEPOSITED BOULDERS AND BURIED OR OTHERWISE "REMEDIATED" AND CONTROLLED DESTROYING ANYTHING IN THEIR WAY INCLUDING PERSONAL PROPERTY

**TRUSTEE CEDED TOTAL CONTROL TO BIROS IN LATE OCTOBER**

This is also from my last opposition and I repeat it.  Rent should stop in October when

Biros put up the chain and blocked access.  As I explained in my opposition to lift the stay,

Biros took complete control of the property with the Trustee's blessing in October.  I cannot

access my personal belongings and tenants cannot access the property.  This is because a

chain blocks the entrance.  They misquoted this Court's allowing them to implement security

by asserting that they can block all persons with a chain and never open it.  This is what they

did.

From my Opposition to the Stay:

As explained below, and in the attached police report and letter to tenants, Robert
Slone, Trustee, ceded complete control of the property to Christine Biros.

As this Court is aware, Biros placed a chain at U Lock and prevented access since late
October 2022.  Since that time, nobody has been able to access the property. The
chain went up, the tenants and myself were blocked.

 When a tenant attempted to, the police were called and a trespass warning was given.
Biros specifically told the police and tenant that they needed an Order allowing them
access.  Counsel for Biros, William Otto, went so far as to give the police this Court's
hearing notes to imply the Order was ambiguous and that access did not need to be
given.

On November 21, 2022, apparently the Trustee sent letters to the tenants giving them
nine (9) days to remove their items.  However, nobody could access the items because
the letter said they had to go through Christine Biros.  I received the letter from a
tenant who called me in late December 2022 saying he just got this letter. I told him I
suppose he needed to call Mr. Otto since that is what the letter says.  I don't know if
he called Mr. Otto or not.  The Trustee should be handling access, not Mr. Otto, but
the letter says Mr. Otto is in control.  As shown by the police report, Mr. Otto's
procedures aren't exactly tenant friendly.

The problem is that you cannot simply send a letter to tenants saying on November 21
they have until November 30 to obtain their property.  There's a Pennsylvania law
called the Self Storage Facility Act that requires notification and publication.  I don't
think that the Trustee had a lien because the law says for a lien to be enforced, it
needed to be within the contract.  Regardless, mailing a letter regular mail to out of
state and foreign people on November 21 saying the deadline is November 30, but the
tenants are blocked by a chain, and have to call Mr. Otto does not appear to be a good
procedure.

**CONCLUSION**

I do not think $7000 is a fair valuation considering the percentage U Lock possessed, the environmental damage, and the other conditions, and Ms. Biros' prolonging the time needed to wrap the matter up.

**DECLARATION**

I declare under the penalty for perjury that the foregoing is true and correct to the best of my knowledge, information, and belief (28 USC 1746).

**March 17, 2023.**

George Snyder
Box 15
Irwin PA 15642
412-979-9999

Case 22-20823-GLT    Doc 355    Filed 03/17/23    Entered 03/20/23 13:06:59    Desc Main
Document      Page 1 of 52

Page 293

FILED
3/17/23 10:46 PM
CLERK
U.S. BANKRUPTCY
COURT - WDPA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In re:  U LOCK INC. a/k/a          )
U-LOCK INC.                        )          Case. 22-20823-GLT
                                   )
                Debtor.            )
                                   )          RE:  Motion 345

### OBJECTIONS OF GEORGE SNYDER TO CONSENT MOTION TO APPROVE SETTLEMENT AGREEMENT

I am an officer of the debtor U Lock.  I file this objection in my personal capacity and as a creditor even though the motion lists only the Trustee Robert Slone as the Respondent.

I have reviewed the Consent Motion and I have many concerns.

The first thing is that I did want to object to the claims filed by Christine Biros.  There has not been a deadline set to do that.  I was waiting to see how the dispute between Shanni Snyder and Ms. Biros turned out because how this Court rules would implicate a decision and address many of the things I am concerned above.

The second thing is, while I am not an attorney, I thought the Trustee was the one who usually files to approve his settlement and that in his motion he would explain why he acted in good faith and why it made business sense.  When I look at this motion, it seems like as from the start, it is Ms. Biros driving the car with the Trustee in the back seat.  I say that because the Trustee didn't even sign the motion or put his name on it.  It's only Ms. Biros arguing why it should be settled.  With respect to the settlement agreement, I assume the Trustee at least read it since he did sign it.  So I am a little concerned that maybe the Trustee just wants to get this case over with and give Ms. Biros everything there is to give.  So let me go point by point.

### The Administrative Expense Claim of $2,000 a Month Post-Bankruptcy

I assume Ms. Biros started out with this as its the most reasonable.  I did object to her Motion for Administrative Expense Motion which should ask for $2,000, but does not.  It

asks for a lot more.  I assume that is to make this look like a compromise.  I am not sure why she didn't just ask for the $2,000 a month in the Motion for Administrative Expense and instead asks for $63,000 in that motion knowing what the Court explained to her before.  I will address the $63,000 in the other motion in case Your Honor doesn't resolve this by settlement.

I think the Court's estimate of $1,500 is more logical considering from the getgo, Your Honor gave her almost unfettered access to the property while she "remediated."  She prolonged the possession of the property by the Estate by doing funky things, hiding the assets, blocking the tenants with a 24 hour chain since October 2022, and calling the police on them when they tried to get their things.

But I have a real problem with the Court approving this considering Biros' attempt to double whammy by asking for 2022 property taxes to be paid for by U Lock as I explain below.  She can't have her rent and her taxes too.

**The Biros Tax Claim**

Next the Trustee seeks to just give her a priority administrative claim for property taxes.  It is clear that he didn't investigate this at all because Ms. Biros completely mischaracterizes what happened in the Supreme Court of Pennsylvania.

 I cannot understand how Ms. Biros can seek rent for 2022 in addition to seek to make U Lock pay the property taxes.  The letter the Trustee signed says, "Since the Petition Date, another $6,201.87 has accrued."  So why does U Lock pay both rent and property taxes.  This is a continuation of Ms. Biros taking bits and pieces of decisions and twisting them into something else.  In addition, the Order they cite does not contemplate that U Lock would be sharing possession with Ms. Biros.

See the Pennsylvania Supreme Court entered that Order about the property taxes at the request of Ms. Biros who didn't tell the Court that she had the judge give her the deeds.

The Supreme Court thought that the Order delaying remission of the record was a continued

stay of the case so, at Ms. Biros request, which U Lock didn't oppose because it too didn't

know that Biros filed deeds.

The Supreme Court of Pa. denied review of the case on January 19, 2022. But they

don't return jurisdiction to the lower court because U Lock could seek reconsideration or

apply for a delay to go the United States Supreme Court.  Nobody knew that on  January 20,

2022, Mr. Otto's paralegal had a private communication with the Court of Common Pleas

Judge's law clerk resulting in that Order.

Under P.R.A.P. 1701(a) to continue the stay of the case, I had U Lock ask the state

Supreme Court to stay the remand of the record pending the time allowed to petition the

United States Supreme Court.  I attach a copy of the motion as Exhibit A.

Biros filed a request on Feb 15 2022 never telling the PA. Supreme Court she

obtained the deeds and filed them and she requested the stay be conditioned upon U Lock

paying the property taxes on the property.  I attach that as Exhibit B.  Biros said "Real estate

taxes have accrued on the Property, and taxes for the years 2019, 2020 and 2021 remain

unpaid. Real estate taxes in the amount of Nineteen Thousand Seven Hundred Seventy-Three

and 41/100 Dollars ($19,773.41) are currently owed on the Property."

Implying U Lock still owed the property, Biros wrote, "These are real estate taxes

which are owed by Petitioner to local taxing authorities, not to Respondent."  Biros said, "The

real estate taxes are a legitimate debt of Petitioner to third parties; in this case, local taxing

authorities. Failure of the Petitioner to make payment of these taxes could expose the Property

to tax sale, potentially harming either or both of Petitioner or Respondent."

So why didn't I have U Lock object?  Well I didn't know she transferred deeds. She

didn't mention she did in her motion.  I thought we owned the property and thus owed the

taxes.

On March 16, 2022, as collateral for the stay, the Supreme Court noted, "Additionally, in accordance with Pa.R.A.P. 2572(d), Petitioner is hereby instructed to pay all accrued and unpaid real estate taxes and to keep such taxes current during the pendency of its occupancy of the Property." I attach this document as well as C.

So I take issue with this because it is not owed to Ms. Biros.  It was owed by U Lock to the tax bureau because everyone thought it owned the property.   If the deeds filed January 26, 2022, which are subject to all liens, are valid at all considering the Rule 2572 stay, then that debt shift to Ms. Biros at that time.

Also Ms. Biros represented to the Supreme Court of Pennsylvania that the taxes are owed to the taxing authorities, not to Ms. Biros.  So how can she now claim she is the tax authority based on an Order she obtained from representing we owed the tax bureau (because U Lock owed the property). She should be estopped from now switching her position.

So I have to object to this claim #2 settlement which the Trustee did not even consider this history because he never asked anyone or cared.

## PREPETITION RENT CLAIM #3

Ms. Biros got the Trustee to agree to give her $162,000 for pre-petition rent to the property.  She just amended her claim #3 for the pre-petition rent to a mind boggling $567,000.  To understand the absurdity of this, the Court really need to look at the language of the decisions below.  Ms. Biros keeps falsely stating that the Court found all the deeds to U Lock void.  It didn't.  In Ms. Biros' lawsuit, she never asked for any retroactive relief.  She asked that the 2015 deeds be declared void and that the Court declare the sale never to have occurred, and that it should be held that the Estates (Sellers) still own the property, and that they should sell it to her for the amount she loaned to U Lock.  But neither the state court nor

the Superior Court agreed with that.

Both the state court and the Superior Court stated that the 2018 deeds from the Estates to U Lock conveyed lawful ownership to the Company, but because we had no money to pay Biros back the $305,000 she loaned us, she should get the property in lieu of a money judgment.  I'll be specific.

The state judge wrote, "Even accounting for the void ab initio status of the original deeds, the … deeds, filed March 1, 2018, show legal title in the Subject Property belonging to U Lock, Inc."  He said "[t]he only equitable solution is the imposition of a constructive trust, and the present conveyance of the Subject Property to Plaintiff Christine Biros."  In its Order, the state court directed, "Legal title to the Subject Property shall be conveyed to Christine Biros by execution of the appropriate deeds, currently held in escrow."  This is from the case *U Lock v. Biros,* No. 4886 CJ 2017 on Aug. 22, 2019  Exhibit D.

Now I am not a scholar, but words like "present conveyance" and "shall be conveyed" and "by execution of the appropriate deeds" makes me think that it means something for the future.

Now U Lock appealed and the appellate court even made it more clear.  They said, "In summary, the record supports the following conclusions: 1)  Appellee paid for the Property on behalf of Appellant; 2)  Appellee expected repayment from Appellant; 3)  Appellant never repaid Appellee; 4)  Appellee had no adequate remedy at law because Appellant lacked resources, other than the Property, with which to compensate Appellee. There was no dispute that Appellee was entitled to repayment. Thus, the trial court faced a choice between imposing a constructive trust and awarding the Property to Appellee  or entering judgment for Appellant and trusting that the conclusion of this litigation would result in an influx of cash to Appellant with which it would, finally, repay its debt. The trial court chose the former, and

we conclude that it acted well within the appropriate bounds for a court sitting as fact finder."

That's found at 255 A.3d 489 (Pa. Super. 2021).   Exhibit E.

So I think that plainly means that instead of giving Ms. Biros a money judgment for $305,000, like a deed in lieu of foreclosure kind of thing without a Sheriff Sale, she just got the property.

So how would she be owed rent?

And even if that's a compromise, the amounts, how hard would it have been for the Trustee to just ask Your Honor this legal question?  It doesn't make good business sense to settle this legal issue because they are scared to ask the Court for a quick decision.

I believe the state courts gave her the property to compensate her for the $305,000 she loaned us.  They said it, we were unable to pay the loan.  They said it would be unjust for U Lock to keep the property without paying her, that I didn't disagree with, I just thought we should have had a chance to pay her.  But I don't think they wanted her to get the property and get $567,000 in rent, or even $162,000 in rent.

Finally Ms. Biros did ask the state judge to make us turn over the rents we collected to her.  She asked for an accounting.  He denied this part of her lawsuit.  She did not appeal this.  Now she files this claim for rent having lost the claim that we owed her for all our business activity.  Your Honor really has to read that decision thoroughly to see how she's trying to get something she already lost in a different context.

As a final point, Ms. Biros says the basis of her claim for rent is unjust enrichment.  But the basis of the court giving her the property was unjust enrichment.  How does she get paid twice for unjust enrichment.

Unjust enrichment is equity and this Court knows, and repeatedly stated, we didn't intend to run a self-storage there.  We (Biros, Kash, U Lock, and I) planned to develop it into a shopping center.  While the litigation occurred we just maintained a few customers to pay the bills.  It wasn't some enterprise to make a million dollars.  I couldn't build a McDonalds on the property because the litigation prevented that. I couldn't lease it or do much.  The property was stuck in limbo.  So we got no unjust enrichment.  We worked 7 years and received nothing.

**FOURTH CLAIM ENVIRONMENTAL DAMAGE**

Ms. Biros filed a proof of claim #4 for environmental damage.  That proof of claim didn't list an amount but included various environmental reports.

The trustee agreed to give her a claim for $200,000.  What's crazy about this is I don't think Ms. Biros has any plans to really remediate it.  I don't think the Department of Environmental Protection is making them do anything except bury the spots before they build.  In other words, they want a claim for work they won't even do.

Remember when this case first started.  They said it was an emergency, they needed on the property, they needed to remediate, there are PCBs, it's the end of the world.  They got permission to remediate and they just had their elderly father and their brother move dirt around (clean fill operation).   They had all this time to make a remediation plan, decide which contractor was the best, and rationalize it.  They didn't, they won't, it's fantasy, they will do whatever needs to be done with an excavator.

More troubling is they admit they received an offer of $125,000 to have a third party remediate it, yet the Trustee is making a "settlement" of $200,000.  Why?

Amazingly, they state that Shanni Snyder's removal of items from the property reduced the remediation costs of their high estimate by $100,000.  Did it reduce the low

estimate by 25% as well?  I think we all  know that Shanni Snyder didn't pay anything near

$100,000 for the work she did.  This is how inflated, convoluted, and speculative the claim is.

But here's what's truly disturbing about the claim.

First, most of the so-called trash and clean up requirements came with the property.

They can't point to what it is U Lock allegedly did.

Second, they keep talking about the Bigs Sanitation "accident."  I am not sure how U

Lock would be liable for this.  If the garbage truck came and spilled PCBs, you call the

garbage truck's insurance carrier.  The Trustee has a duty to do this.  He has a duty to seek

indemnification from Bigs if he's going to agree to $200,000.  But if this was Your Honor's

property, and some garbage truck from a huge waste hauling company dropped PCBs,

wouldn't you do something to make them clean it?  An ordinary, prudent, intelligent person

would simply call the Hauler's insurance company.  But they made no attempt.  In this

Court's Order way back in June 2022, it lifted the stay and specifically put in the Order that

they can make an insurance claim.  I know they are busy, but it's been a year.

How can the Trustee justify settling this without bothering to investigate the insurance

or lodge a claim.   Because the garbage truck didn't even dump where they say the PCBs

were.  The owner of Bigs is available he came to Court twice already to testify but nobody

was interested.  The trustee just needs to call him.

So in conclusion we have cleanup that, *if* it was ever done would cost $125,000, but

an allowed $200,000 claim, with no explanation as to what damage came with the property,

what damage was caused by Big's, or what damage was caused by what.

If anything, Ms. Biros owes the Estate for what I did clean up over the years including

thousands of tires that were on the property when U Lock bought it, removal of many things,

building of access roads, etc.

## <u>CONCLUSION</u>

Based on the above, I must object to the settlement. It's in bad faith, it defies logic, and I think the Trustee is just scared of litigating against Ms. Biros' legal team – and I understand that fear as sometimes I have to force myself to do what I think is the right thing. But it can't be good business judgment to rubber stamp these demands.  I guess tho at least he didn't sign the motion to settle.

March 17, 2023.

George Snyder
PO Box 15
Irwin PA  15642
412-979-9999

Received 2/2/2022 2:47:26 PM Supreme Court Western District
Filed 2/2/2022 2:47:26 PM Supreme Court Western District
259 WAL 2021

IN THE SUPREME COURT FOR THE COMMONWEALTH OF PENNSYLVANIA

| | | |
|---|---|---|
| U LOCK INC., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 259 WAL 2021 |
| | ) | |
| CHRISTINE BIROS, | ) | |
| | ) | |
| Respondent. | ) | |

## APPLICATION PURSUANT TO Pa.R.A.P. 2572(c) TO STAY REMAND OF RECORD PENDING UNITED STATES SUPREME COURT REVIEW

U Lock Inc. ("U Lock Inc.") applies to this Court pursuant to Pa.R.A.P. 2572(c) to stay the remand of the record pending the filing of a Petition for Writ of Certiorari with the United States Supreme Court. This is necessary to address and preserve the important Constitutional issue related to due process violations for providing an unsecured creditor control of the Petition through an equitable trust.

Respectfully submitted,

*/s/ J. Allen Roth, Esq.*

J. Allen Roth, Esq. (PA ID 30347)
805 S. Alexandria Street
Latrobe PA 15650
(724) 537-0939

ATTORNEY FOR APPLICANT
U LOCK INC.

EXHIBIT A

Received 2/15/2022 3:54:41 PM Supreme Court Western District

**Page 303**

Filed 2/15/2022 3:54:00 PM Supreme Court Western District
259 WAL 2021

IN THE SUPREME COURT OF PENNSYLVANIA

No. 259 WAL 2021

CHRISTINE BIROS,
Plaintiff-Respondent,
vs.
U LOCK INC., a Pennsylvania corporation,
Defendant-Petitioner.

On Petition for Allowance of Appeal from the Judgment of the
Superior Court at No. 1841 WDA 2019 Affirming the Judgment of
the Court of Common Pleas of Westmoreland County,
Pennsylvania, Civil Division, at 17CJ04886

ANSWER TO APPLICATION PURSUANT TO Pa.R.A.P. 2572(c) TO
STAY REMAND OF RECORD PENDING UNITED STATES SUPREME
COURT REVIEW AND APPLICATION FOR APPROPRIATE SECURITY

William E. Otto, Esq. (PA 32716)
P.O. Box 701
Murrysville, PA 15668
(724) 519-8778
weo@ottolawfirm.com
COUNSEL FOR RESPONDENT
CHRISTINE BIROS

EXHIBIT B

# <u>TABLE OF CITATIONS</u>

**Statutes:**

Pa.R.A.P 1733(a) ................................................................... 3

Pa.R.A.P 1733(b) ................................................................ 2

Pa.R.A.P 1734(a) ................................................................ 2

Pa.R.A.P. 2572(c) ............................................................. 1, 2

Pa.R.A.P. 2572(d) ............................................................... 2

AND NOW, comes Respondent Christine Biros by and through her counsel, William E. Otto, Esq., and files her <u>Answer to Application Pursuant to Pa.R.A.P. 2572(c) to Stay Remand of Record Pending United States Supreme Court Review And Application For Appropriate Security</u> in the above-captioned case.

The underlying dispute in this case involves that certain real estate situate at 14140 Route 30, North Huntingdon, PA 15642, more specifically identified by Tax Map ID No. 54-03-10-0-103 (the "Property"). Petitioner has had possession and control of the Property from July 16, 2015 and continues to occupy the Property to this date.

Verdict in the trial court was rendered in favor of Respondent Christine Biros, and Petitioner U Lock commenced the appeal procedure. On January 19, 2022, the Pennsylvania Supreme Court denied Petitioner's Petition for Allowance of Appeal to the Pennsylvania Supreme Court. On February 2, 2022, Petitioner filed an Application Pursuant to Pa.R.A.P. 2572(c) to Stay Remand of Record Pending United States Supreme Court Review.

1

Real estate taxes have accrued on the Property, and taxes for the years 2019, 2020 and 2021 remain unpaid. Real estate taxes in the amount of Nineteen Thousand Seven Hundred Seventy-Three and 41/100 Dollars ($19,773.41) are currently owed on the Property.   *See Exhibit "A".* These are real estate taxes which are owed by Petitioner to local taxing authorities, not to Respondent.

Pursuant to Pa.R.A.P. Rule 2572(d), appropriate security in an adequate amount may be required as a condition to the grant of a stay of remand. *Pa.R.A.P. Rule 2572(d).* The only definition of "appropriate security" in the Appellate Rules is contained in Chapter 17 of the Rules of Appellate Procedure, <u>Effect of Appeals; Supersedeas and Stays</u>.  *Pa.R.A.P. Chapter 17.* Pa.R.A.P Rule 1734 describes the various forms of "appropriate security" which may be required of an appellant, but Rule 1734(a) also provides that those forms of security apply "...unless otherwise ordered pursuant to this chapter [17]." *Pa.R.A.P Rule 1734(a).*  Although not completely on point, Rule 1733(b) addresses situations involving real property, and provides for an amount of security,

2

"…at such sums only as will secure any damages for the use and detention of the property, interest, the costs of the matter and costs on appeal." *Pa.R.A.P Rule 1733(a).*

The real estate taxes are a legitimate debt of Petitioner to third parties; in this case, local taxing authorities. Failure of the Petitioner to make payment of these taxes could expose the Property to tax sale, potentially harming either or both of Petitioner or Respondent.

Based on Petitioner's failure to pay the real estate taxes on the Property, Respondent Christine Biros requests that as a condition for the grant of a stay as requested by Petitioner, Petitioner be required promptly to either (1) pay all accrued and unpaid real estate taxes and keep such taxes current during the pendency of Petitioner's occupancy of the Property; or (2) post appropriate security in an amount equal to 120% of such amount, to be made available to the real estate taxing authorities having jurisdiction over the Property.

The grant of such security is to provide payment of such real estate taxes which Petitioner should have been paying. Such

3

action will prevent the risk of the Property being exposed to tax sale prior to the full resolution of this case.

**WHEREFORE**, Respondent Christine Biros respectfully requests this Court to direct that as a condition to the grant of a stay of remand of the record, Petitioner U Lock, Inc. be required Petitioner be required to promptly either to (1) pay all accrued and unpaid real estate taxes and keep such taxes current during the pendency of Petitioner's occupancy of the Property; or (2) post appropriate security in an amount equal to 120% of such amount, to be made available to the real estate taxing authorities having jurisdiction over the Property.

Respectfully submitted,

/s/ William E. Otto
William E. Otto, Esq.
P.O. Box 701
Murrysville, PA 15668
(724) 519-8778
COUNSEL FOR RESPONDENT
CHRISTINE BIROS

4

## <u>**CERTIFICATE OF COMPLIANCE WITH P.R.A.P. 127**</u>

I certify that this filing complies with the provisions of the

*Case Records Public Access Policy of the Unified Judicial System*

*of Pennsylvania* that require filing confidential information and

documents differently than non-confidential information and

documents.

/s/ William E. Otto
William E. Otto, Esq.

EXHIBIT "A"

PROPERTY TAXES

6



Deminito of Office
Director

Linda Kuchar
Deputy Director

Tim Andrews
Solicitor

Tax Claim Bureau
40 N. Pennsylvania Ave. Suite 109
Greensburg, PA 15601

Office Hours
Monday Through Friday
8:30 AM to 4:00 PM

DATE: 2/09/2022
TIME: 14:04:05

## REAL ESTATE TAX LIEN CERTIFICATE

PAGE 1

THIS DOCUMENT CERTIFIES THAT THE TAXES/COSTS DUE ON THE PROPERTY DESCRIBED BELOW, AS SHOWN BY THE RECORDS PROCESSED IN OUR OFFICE AS OF 2/09/22 ARE AS FOLLOWS.

******** DIST/CTL 54 9485 ********

BIROS CHRISTINE
3001 JACKS RUN RD
MC KEESPORT PA 15131

MAP NO 54 03 10 0 103
SITUS 14140 RT 30 E

PROPERTY BLDGS PCL 2
DESC 21.0976 AC
SHANE PLAN

```
            N HUNTINGDON TWP
65650       NORWIN                    BOOK/PAGE0220  3085
                                      LAND USE C
STATUS  C                             ACREAGE       21.097
                                      VALUE      46,410  VALUE C&G    46,410
```

CERT MAIL-R/C 91101252
CERT MAIL-SALE 91526920

| DATE | CODE | DESCRIPTION | RECEIPT NO | TAX | PENALTY | INTEREST | CHARGES | PAYMENTS | BALANCE DUE | INT ADDED EACH MO |
|------|------|-------------|-----------|-----|---------|----------|---------|----------|-------------|-------------------|
| 1/30/18 | 200 | COU-N HUNTINGDON TWP | 974.15 | | 97.42 | 116.96 | 1188.53 | | | .00 |
| 1/30/18 | 300 | CBT-N HUNTINGDON TWP | 539.28 | | 53.93 | 64.64 | 657.85 | | | .00 |
| 1/30/18 | 400 | SCH-NORWIN | 3601.42 | | 360.14 | 432.16 | 4393.72 | | | .00 |
| | | | | 2017 TAX TOTAL | | | 6240.10 | | | |
| 1/30/18 | 201 | COU-FILING FEE | | | | | 45.00 | | | |
| 2/05/18 | 205 | REMINDER COST | | | | | .80 | | | |
| 4/03/18 | 202 | POSTAGE RET & CLAIM | | | | | 5.45 | | | |
| 4/03/18 | 242 | ARCHIVE FEE | | | | | 4.00 | | | |
| 10/04/18 | 205 | REMINDER COST | | | | | .80 | | | |
| 5/07/19 | 203 | RECORD REVIEW FEE | | | | | 10.00 | | | |
| 5/07/19 | 206 | SALE PREPARATION | | | | | 25.00 | | | |
| 5/07/19 | 207 | POSTAGE SALE NOTICE | | | | | 12.00 | | | |
| | | | | 2017 FEE TOTAL | | | 103.05 | | | |
| 5/28/19 | | PAYMENT RECEIVED: | 804461 | | | | | 6343.15- | | |
| | | | | 2017 PAYMENT TOTAL | | | 6343.15- | | | |
| | | | | 2017 YEAR TOTALS & BALANCE | | | 6343.15 | 6343.15- | .00 | |
| 1/22/19 | 200 | COU-N HUNTINGDON TWP | 974.15 | | 97.42 | 29.24 | 1100.81 | | | .00 |
| 1/22/19 | 300 | CBT-N HUNTINGDON TWP | 539.28 | | 53.93 | 16.16 | 609.37 | | | .00 |
| 1/22/19 | 400 | SCH-NORWIN | 3712.80 | | 371.28 | 387.88 | 4471.96 | | | .00 |
| | | | | 2018 TAX TOTAL | | | 6182.14 | | | |
| 1/22/19 | 201 | COU-FILING FEE | | | | | 45.00 | | | |
| 2/28/19 | 205 | REMINDER COST | | | | | .85 | | | |
| 4/02/19 | 242 | ARCHIVE FEE | | | | | 4.00 | | | |
| 4/02/19 | 202 | POSTAGE RET & CLAIM | | | | | 5.65 | | | |
| 11/01/19 | 205 | REMINDER COST | | | | | .80 | | | |
| 6/05/20 | 203 | RECORD REVIEW FEE | | | | | 10.00 | | | |
| 6/05/20 | 206 | SALE PREPARATION | | | | | 25.00 | | | |
| 6/05/20 | 207 | POSTAGE SALE NOTICE | | | | | 12.00 | | | |
| 7/08/20 | 209 | POSTING UPSET SALE | | | | | 65.00 | | | |
| 7/08/20 | 210 | ADVERTISING | | | | | 10.00 | | | |
| 8/14/20 | 220 | PROOF OF MAIL FEE | | | | | 2.00 | | | |
| | | | | 2018 FEE TOTAL | | | 180.30 | | | |
| 5/28/19 | | PAYMENT RECEIVED: | 804461 | | | | | 3656.85- | | |
| 9/09/20 | | PAYMENT RECEIVED: | 840566 | | | | | 2705.59- | | |
| | | | | 2018 PAYMENT TOTAL | | | 6362.44- | | | |

***** DIST/CTL  54   9485 *****   LIEN CERTIFICATE CONTINUED   PAGE   2

| DATE | CODE | DESCRIPTION | RECEIPT NO | TAX | PENALTY | INTEREST | CHARGES | PAYMENTS | BALANCE DUE | INT ADDED EACH MO |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 2018 YEAR TOTALS & BALANCE | | | | | 6362.44 | 6362.44- | .00 | |
| 1/22/20 | 200 | COU-N HUNTINGDON TWP | 974.15 | | 97.42 | 182.75 | 1254.32 | | | 7.31 |
| 1/22/20 | 300 | CBT-N HUNTINGDON TWP | 539.28 | | 53.93 | 101.00 | 694.21 | | | 4.04 |
| 1/22/20 | 400 | SCH-NORWIN | 3824.18 | | 382.42 | 717.00 | 4923.60 | | | 28.68 |
| | | 2019 TAX TOTAL | | | | | 6872.13 | | | |
| 1/22/20 | 201 | COU-FILING FEE | | | | | 45.00 | | | |
| 2/04/20 | 205 | REMINDER COST | | | | | .80 | | | |
| 5/14/20 | 242 | ARCHIVE FEE | | | | | 4.00 | | | |
| 5/14/20 | 202 | POSTAGE RET & CLAIM | | | | | 5.80 | | | |
| 5/17/21 | 203 | RECORD REVIEW FEE | | | | | 10.00 | | | |
| 5/17/21 | 206 | SALE PREPARATION | | | | | 25.00 | | | |
| 5/17/21 | 207 | POSTAGE SALE NOTICE | | | | | 12.00 | | | |
| 7/01/21 | 209 | POSTING UPSET SALE | | | | | 65.00 | | | |
| 7/01/21 | 210 | ADVERTISING | | | | | 10.00 | | | |
| 8/17/21 | 220 | PROOF OF MAIL FEE | | | | | 2.00 | | | |
| | | 2019 FEE TOTAL | | | | | 179.60 | | | |
| | | 2019 YEAR TOTALS & BALANCE | | | | | 7051.73 | .00 | 7051.73 | 40.03 |
| | | ESTIMATED BALANCE DUE NEXT MONTH | | | | | | | 7091.76 | |
| 1/26/21 | 200 | COU-N HUNTINGDON TWP | 997.35 | | 99.74 | 97.24 | 1194.33 | | | 7.48 |
| 1/26/21 | 300 | CBT-N HUNTINGDON TWP | 542.53 | | 54.25 | 52.91 | 649.69 | | | 4.07 |
| 1/26/21 | 400 | SCH-NORWIN | 3935.57 | | 393.56 | 383.76 | 4712.89 | | | 29.52 |
| | | 2020 TAX TOTAL | | | | | 6556.91 | | | |
| 1/26/21 | 201 | COU-FILING FEE | | | | | 45.00 | | | |
| 2/09/21 | 205 | REMINDER COST | | | | | .80 | | | |
| 4/13/21 | 242 | ARCHIVE FEE | | | | | 4.00 | | | |
| 4/14/21 | 202 | POSTAGE RET & CLAIM | | | | | 5.90 | | | |
| | | 2020 FEE TOTAL | | | | | 55.70 | | | |
| | | 2020 YEAR TOTALS & BALANCE | | | | | 6612.61 | .00 | 6612.61 | 41.07 |
| | | ESTIMATED BALANCE DUE NEXT MONTH | | | | | | | 6653.68 | |
| 1/19/22 | 200 | COU-N HUNTINGDON TWP | 997.35 | | 99.74 | 7.48 | 1104.57 | | | 7.48 |
| 1/19/22 | 300 | CBT-N HUNTINGDON TWP | 542.53 | | 54.25 | 4.07 | 600.85 | | | 4.07 |
| 1/19/22 | 400 | SCH-NORWIN | 3935.57 | | 393.56 | 29.52 | 4358.65 | | | 29.52 |
| | | 2021 TAX TOTAL | | | | | 6064.07 | | | |
| 1/19/22 | 201 | COU-FILING FEE | | | | | 45.00 | | | |
| | | 2021 FEE TOTAL | | | | | 45.00 | | | |
| | | 2021 YEAR TOTALS & BALANCE | | | | | 6109.07 | .00 | 6109.07 | 41.07 |
| | | ESTIMATED BALANCE DUE NEXT MONTH | | | | | | | 6150.14 | |
| | | CLAIM TOTALS | | | | | 32479.00 | 12705.59- | 19773.41 | 122.17 |
| | | ESTIMATED TOTAL DUE NEXT MONTH | | | | | | | 19895.58 | |

MISC RECEIPTS - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| 4/23/19 | 960 | LIEN CERTIFICATE | 801274 | | | | | | 15.00 | |
| 5/20/19 | 960 | LIEN CERTIFICATE | 803746 | | | | | | 15.00 | |
| 6/12/19 | 960 | LIEN CERTIFICATE | 806067 | | | | | | 15.00 | |

CREDIT CARD TRANSACTIONS - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT**

| | | |
|---|---|---|
| CHRISTINE BIROS, AN INDIVIDUAL, | : | No. 259 WAL 2021 |
| | : | |
| Respondent | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| U LOCK INC., A PENNSYLVANIA | : | |
| CORPORATION, | : | |
| | : | |
| Petitioner | : | |

**ORDER**

**PER CURIAM**

    **AND NOW**, this 16th day of March, 2022, the Application to Stay Remand of Record

Pending United States Supreme Court Review is **GRANTED**.  Additionally, in accordance

with Pa.R.A.P. 2572(d), Petitioner is hereby instructed to pay all accrued and unpaid real

estate taxes and to keep such taxes current during the pendency of its occupancy of the

Property.

EXHIBIT C

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA

**CHRISTINE BIROS,** an individual,

       Plaintiff,

vs.

**DENISE SCHUR,** Executrix of the **ESTATE OF
ALEX SCHUR, HENRY L. MOORE and SUSAN
STANO,** Co-Executors of the **ESTATE OF
NICHOLAS SCHUR, KATHLEEN S. WALTER,**
Executor of the **ESTATE OF MICHAEL SCHUR,**
**CYNTHIA SARRIS,** Administrator of the **ESTATE
OF ANN SARRIS** and **U LOCK INC.,** a
Pennsylvania corporation,

       Defendants.

CASE NO. 4886 of 2017

**COMPLAINT IN CIVIL ACTION
FOR DECLARATORY
JUDGMENT AND EQUITABLE
ACTION TO CONVEY TITLE,
TO QUIET TITLE AND FOR AN
ACCOUNTING**

**LIS PENDENS**

Filed on Behalf of Plaintiff:
Christine Biros

Counsel of Record

I hereby certify that the actual location of the parcel
of real property is in the Township of North
Huntingdon, County of Westmoreland,
Commonwealth of Pennsylvania and known as
Tax Map No. 54-03-10-0-103.

William E. Otto, Esq., Counsel for Plaintiff

William E. Otto, Esq.
PA I.D. #32716
P.O. Box 701
Murrysville, PA 15668
office: (724) 519-8778

PROTHONOTARY
CHRISTINA O'BRIEN

2017 OCT -4  PM 12: 39

WESTMORELAND COUNTY
PROTHONOTARY'S OFFICE
FILED IN

1

## IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA

**CHRISTINE BIROS,** an individual,

       Plaintiff,

vs.

**DENISE SCHUR,** Executrix of the **ESTATE OF ALEX SCHUR, HENRY L. MOORE and SUSAN STANO,** Co-Executors of the **ESTATE OF NICHOLAS SCHUR, KATHLEEN S. WALTER,** Executor of the **ESTATE OF MICHAEL SCHUR, CYNTHIA SARRIS,** Administrator of the **ESTATE OF ANN SARRIS** and **U LOCK INC.,** a Pennsylvania corporation,

       Defendants.

CASE NO. 4886 of 2017

**COMPLAINT IN CIVIL ACTION FOR DECLARATORY JUDGMENT AND EQUITABLE ACTION TO CONVEY TITLE, TO QUIET TITLE AND FOR AN ACCOUNTING**

**LIS PENDENS**

### NOTICE TO DEFEND

**YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.**

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

**LAWYER REFERRAL SERVICE**
**WESTMORELAND BAR ASSOCIATION**
**P.O. BOX 565**
**GREENSBURG, PA 15601**
**TELEPHONE: (724) 834-8490**
**HTTP://LRS.WESTBAR.ORG**

2

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA

**CHRISTINE BIROS,** an individual,

        Plaintiff,

vs.

**DENISE SCHUR,** Executrix of the **ESTATE OF
ALEX SCHUR, HENRY L. MOORE and SUSAN
STANO,** Co-Executors of the **ESTATE OF
NICHOLAS SCHUR, KATHLEEN S. WALTER,**
Executor of the **ESTATE OF MICHAEL SCHUR,
CYNTHIA SARRIS,** Administrator of the **ESTATE
OF ANN SARRIS** and **U LOCK INC.,** a
Pennsylvania corporation,

        Defendants.

CASE NO. 4886 of 2017

**COMPLAINT IN CIVIL ACTION
FOR DECLARATORY
JUDGMENT AND EQUITABLE
ACTION TO CONVEY TITLE,
TO QUIET TITLE AND FOR AN
ACCOUNTING**

**LIS PENDENS**

### COMPLAINT IN CIVIL ACTION FOR DECLARATORY JUDGMENT AND EQUITABLE ACTION TO CONVEY TITLE, TO QUIET TITLE AND FOR AN ACCOUNTING

AND NOW comes Plaintiff Christine Biros, by and through her attorney, William E.

Otto, Esq., and files the herein Complaint in Civil Action for Declaratory Judgment and

Equitable Action to Convey Title, to Quiet Title and for an Accounting as follows:

1.     Plaintiff Christine Biros is an individual with a mailing address of 435 Millers

Lane, Plum, PA 15239.

2.     Defendant Denise Schur, Executrix of the Estate of Alex Schur, is an individual

with an address of 8700 Cleveland Road, Creston, OH 44217.

3.     Defendant Henry L. Moore, Co-Executor of the Estate of Nicholas Schur, is an

individual with a business address of 310 Keystone Commons, 35 West Pittsburgh Street,

Greensburg, PA 15601.

3

4.      Defendant Susan Stano, Co-Executor of the Estate of Nicholas Schur, is an individual with an address of 31856 Lake Drive, Avon Lake, OH 44012.

5.      Defendant Kathleen S. Walter, Executor of the Estate of Michael Schur, is an individual with an address of 3 Ridge Court, Saratoga Springs, NY 12866.

6.      Defendant Cynthia Sarris, Administrator of the Estate of Ann Sarris, is an individual with an address of 14249 Hiland Place, Irwin, PA 15642.

7.      Defendant U Lock Inc. ("U Lock") is a Pennsylvania corporation with a principal business address of 14140 Route 30, North Huntingdon, PA 15642.

8.      Defendant Denise Schur, Executrix of the Estate of Alex Schur, Defendants Henry L. Moore and Defendant Susan Stano, Co-Executors of the Estate of Nicholas Schur, Defendant Kathleen S. Walter, Executor of the Estate of Michael Schur and Defendant Cynthia Sarris, Administrator of the Estate of Ann Sarris (collectively, the "Owners") are the current owners of real property situate at 14140 Route 30, North Huntingdon, PA 15642 with a County Tax Map No. 54-03-10-0-103 (the "Property").

9.      On July 16, 2015 (the "Payment Date"), Plaintiff Christine Biros paid the sum of Three Hundred Nine Thousand Two Hundred Thirteen and 30/100 Dollars ($309,213.30) (the "Purchase Price") to Owners as consideration for the Property. Copies of such checks are attached hereto as Exhibit "A" and are incorporated herein.

10.     Plaintiff believes and therefore avers that on the Payment Date, four (4) deeds were delivered to Defendant U Lock (the "Deeds") by Defendant Owners.

11.     Plaintiff believes and therefore avers that each of the four (4) Deeds purported to transfer title to a different percentage interest in the Property to Defendant U Lock.

4

12.     Only one (1) of such Deeds has been recorded. A copy of such Deed is attached

hereto as Exhibit "B" and is incorporated herein.

13.     Defendant U Lock is a Pennsylvania corporation which was incorporated on

September 24, 2015. A certified copy of the Articles of Incorporation for U Lock Inc. are

attached hereto as Exhibit "C" and are incorporated herein.

14.     Defendant U Lock was not in existence on the Payment Date.

### COUNT I – DECLARATORY JUDGMENT

15.     The averments set forth above are incorporated as if fully set forth herein.

16.     Pursuant to Section 7533 of the Declaratory Judgments Act, 42 Pa C.S. § 7533,
"Any person interested under a deed…or other writings constituting a contract, or
whose rights, status or other legal relations are affected by a…contract,…may
have determined any question of construction or validity arising under the
instrument or contract,…and obtain a declaration of rights, status or other legal
relations thereunder." 42 Pa.C.S. § 7533.

17.     Plaintiff Christine Biros believes and therefore avers that on the Payment Date,

Defendant Owners delivered the four (4) Deeds to Defendant U Lock purporting to convey title

to the Property to Defendant U Lock.

18.     On the Payment Date, Defendant U Lock had not been incorporated and therefore

did not exist as a corporation.

19.     Pursuant to Pennsylvania case law, such Deeds are *void ab initio*, Africa, et al. v.

Trexler, 232 Pa. 493, 499, 81 A. 707 (Pa. 1911); Borough of Elizabeth v. Aim Sher Corporation,

316 Pa.Super. 97, 99, 462 A.2d 811, 812 (Pa.Super. 1983); Lester Associates v. Commonwealth

of Pennsylvania, 816 A.2d 394, 397, 399 (Pa. Commonwealth 2003).

20.     Since the Deeds purporting to convey title to Defendant U Lock dated the

Payment Date are *void ab initio*, no transfer of title has taken place.

5

21.     Pursuant to Pennsylvania law, Defendant Owners remain the owners in fee simple of the Property.

**WHEREFORE**, Plaintiff Christine Biros prays this Honorable Court enter an order in favor of Plaintiff Christine Biros as follows:

(i)      Declaring that any deeds conveying title to Defendant U Lock by Defendant Owners on the Payment Date are *void ab initio*;

(ii)     Declaring that Defendant Owners are still the owners in fee simple of the Property;

(iii)    Declaring that Plaintiff Christine Biros delivered the Purchase Price to Defendant Owners on the Payment Date;

(iv)     Declaring that Defendant Owners have received full consideration for the title to the Property; and

(v)      Declaring that Plaintiff Christine Biros is the equitable owner of the Property.

## COUNT II – EQUITABLE ACTION TO COMPEL CONVEYANCE OF TITLE

22.     The averments set forth above are incorporated as if fully set forth herein.

23.     Plaintiff Christine Biros paid Defendant Owners the Purchase Price for the Property on the Payment Date. See Exhibit "A".

24.     Defendant U Lock did not pay any portion of the Proceeds to Defendant Owners.

25.     Defendant U Lock has not paid any of the Proceeds to Plaintiff Christine Biros.

26.     Since Defendant Owners have received payment in full for the Property, Defendant Owners are obligated to convey title to a purchaser.

27.     Since Plaintiff Christine Biros paid the Proceeds to Defendant Owners, she is equitably entitled to receive legal, fee simple title to the Property from Defendant Owners.

6

28.     Since they have been paid in full, no harm will result to Defendant Owners by being compelled to convey title to the Property to Plaintiff Christine Biros.

29.     Since they have paid no consideration to either Plaintiff Christine Biros or Defendant Owners, no harm will result to Defendant U Lock if title is conveyed to Plaintiff Christine Biros.

**WHEREFORE**, Plaintiff Christine Biros prays this Honorable Court enter an order in favor of Plaintiff Christine Biros compelling Defendant Owners to convey fee simple title to the Property by deed to Plaintiff Christine Biros.

<u>**COUNT III – QUIET TITLE**</u>

30.     The averments set forth above are incorporated as if fully set forth herein.

31.     Plaintiff Christine Biros wishes to eliminate any cloud upon or doubt as to the true holder of title to the Property.

32.     Defendant U Lock has recorded one deed purporting to convey an Eighteen and 75/100 Percent (18.75%) interest in the Property from Kathleen S. Walter, Executrix of the Estate of Michael Schur, to U Lock Inc. A copy of such Deed is attached hereto as Exhibit "B".

33.     Since Defendant U Lock was not in existence on the date of such deed, such deed is *void ab initio*.

34.     Plaintiff believes and therefore avers that Defendant U Lock has three other deeds similarly purporting to convey title from Defendant Owners to Defendant U Lock.

35.     All such Deeds are *void ab initio*. <u>Africa, et al.;</u> <u>Borough of Elizabeth;</u> <u>Lester Associates.</u>

**WHEREFORE**, Plaintiff Christine Biros prays this Honorable Court enter an order in favor of Plaintiff Christine Biros as follows:

7

(i)    Declaring that certain deed conveying a portion of the Property to Defendant U

Lock from Kathleen S. Walter, Executrix of the Estate of Michael Schur, and recorded in the

Office of the Recorder of Deeds of Westmoreland County at Instrument No. 201704040010760

to be *void ab initio* and of no further force and effect;

(ii)    Declaring that any and all deeds executed by any one or all of Defendant Owners

purporting to convey title to Defendant U Lock on the Payment Date to be null and *void ab initio*

and of no further force and effect;

(iii)    Declaring that Plaintiff Christine Biros is entitled to the quiet, exclusive,

uninterrupted and peaceful possession and quiet enjoyment of the Property;

(iv)    Declaring that Defendant U Lock does not hold any property interest in the

Property, whether in trust or otherwise;

(v)    Quieting title to the Property in favor of Plaintiff Christine Biros and against

Defendant U Lock, its successors and assigns, in and to the Property and all persons claiming

under Defendant U Lock by reason of the Deeds, and that Defendant U Lock, its successors and

assigns, and any and all persons claiming under them have no estate, right, title, lien or interest in

or to said Property or any part thereof by reason of the Deeds or otherwise; and

(vi)    Awarding to Christine Biros from Defendant U Lock her attorney's fees, costs of

suit and such other relief which the Court deems just and proper.

### COUNT IV – ACCOUNTING

36.    The averments set forth above are incorporated as if fully set forth herein.

37.    Plaintiff Christine Biros believes and therefore avers that from and after the

Payment Date, Defendant U Lock has been in possession of the Property.

8

38.    Plaintiff Christine Biros believes and therefore avers that from and after the Payment Date, Defendant U Lock has been collecting rents from tenants and licensees of the Property.

39.    Plaintiff Christine Biros believes and therefore avers that Defendant U Lock has collected substantial sums from such tenants.

40.    Since Defendant U Lock has no legal or equitable ownership in the Property, Defendant U Lock should account for all sums collected from tenants of the Property since the Payment Date.

**WHEREFORE**, Plaintiff Christine Biros prays this Honorable Court enter an order in favor of Plaintiff Christine Biros:

(i)    That Defendant U Lock shall within thirty (30) days deliver a rent roll of all tenants of the Property from the Payment Date through a date set by the Court;

(ii)    That Defendant U Lock shall within thirty (30) days deliver a full accounting of all sums collected from each tenant of the Property;

(iii)    That Defendant U Lock shall within thirty (30) days deliver all such sums into escrow pending resolution of this case;

(iv)    That all sums collected thereafter by Defendant U Lock from the Property be placed in escrow pending resolution of this case; and

(v)    Awarding to Christine Biros from Defendant U Lock her attorney's fees, costs of suit and such other relief which the Court deems just and proper.

Respectfully submitted,

William E. Otto, Esq.
Attorney for Plaintiff

9

2021 PA Super 104

| | |
|---|---|
| CHRISTINE BIROS, AN INDIVIDUAL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| U LOCK INC., A PENNSYLVANIA CORPORATION | |
| Appellant | No. 1841 WDA 2019 |

Appeal from the Judgment Entered January 6, 2020
In the Court of Common Pleas of Westmoreland County
Civil Division at No: 17 CJ 04886

BEFORE:  SHOGAN, J., STABILE, J., and KING, J.

OPINION BY STABILE, J.:                    **FILED: MAY 21, 2021**

Appellant, U Lock Inc., appeals from the January 6, 2020 judgment entered in favor of Appellee, Christine Biros.  We affirm.

The record reflects that, in 2014, Erik Martin agreed with the Estates of Nicholas Schur, Anne Sarris, Alex Schur, and Michael Schur (the "Estates") for the purchase of real property (the "Property") for $325,000.  The agreement of sale listed the buyer as Erik Martin, incorporator of ULock, Inc.  Martin failed to appear at the scheduled closing.  A subsequent closing was scheduled for July 16, 2015.  One day prior, on July 15, 2015, Appellant filed articles of incorporation.

EXHIBIT E

At the closing, Appellee appeared with four cashier's checks worth approximately $309,000.00 in total.[1]   In a brief, handwritten note which provided for repayment on terms to be set by August 16, 2015, Appellant agreed to treat the funds as a loan from Appellee.  Appellee testified that she made the loan at the behest of her brother, John Biros, and that she never intended the money to be an investment in Appellant and she did not intend to own shares in Appellant.  Kash Snyder signed the handwritten agreement on behalf of Appellant.  The parties ultimately never agreed to the terms of repayment, though Appellant does not dispute its outstanding debt to Appellee.

At the closing, Appellee remitted the funds directly to the Estates.  The Estates issued a settlement statement listing the buyer of the Property as ULock, Inc.  Kash Snyder signed the settlement statement as director of Appellant.  His brother George Snyder, also of Appellant, accepted delivery of the deeds (the "2015 Deeds").  George Snyder believed Appellee and John Biros would be partners in the business venture; he did not expect Appellee to request a repayment agreement on the day of the closing.

On July 17, 2015, the day following the closing, the Pennsylvania Secretary of State issued a letter rejecting Appellant's articles of incorporation because of an error in the docketing statement.  The letter provided that

---

[1]  The Estates had already received the remainder of the balance in hand money.

Appellant could retain the July 15, 2015 date of incorporation so long as it corrected the error within thirty days.  Appellant failed to make a timely correction, but later refiled its articles of incorporation.  The Secretary of State accepted the new articles of incorporation on September 4, 2015.  On February 13, 2018, while this action was pending, the Estates issued new deeds to Appellant (the "2018 Deeds").  Appellant filed the 2018 Deeds with the recorder of deeds on March 1, 2018.[2]

On May 5, 2017, Appellee sent a letter to George Snyder designating the outstanding balance of the loan as $385,939 and demanding, among other things, repayment at 9% interest with a balloon payment of the outstanding balance by June 1, 2022.  On October 4, 2017, Appellee filed a complaint against Appellant and the Estates alleging and seeking a declaratory judgment that the July 2015 Deeds were void *ab initio*, and alleging equitable causes of action to convey title, quiet title, and for an accounting.  The Estates were later dismissed from the action with the agreement to place blank deeds to the Property in the court registry.  Appellant filed an answer and new matter, followed by several amended answers in response to Appellee's preliminary objections.

On April 1, 2019, Appellee filed a praecipe to schedule trial.  Trial commenced on April 29, 2019, and the trial court entered a declaration that

_____

[2]  According to Appellee's opening argument, the 2018 Deeds were "subject by the language of the deeds to *Lis Pendens*[.]"  N.T. Trial, 4/29/19, at 16.

- 3 -

the 2015 Deeds were void *ab initio*.  The court also entered judgment favor of Appellee on her action to compel conveyance of title.  The court found that Appellant would be unjustly enriched by maintaining its ownership in the Property with no ability to repay Appellee the money she lent for its purchase.  Thus, the court found that Appellant held the property in constructive trust, and it directed conveyance of the Property to Appellee.[3]

In its post-trial motions, Appellant argued that Appellant's declaratory judgment action as to the 2015 Deeds was moot, given the 2018 Deeds and the lack of any challenge as to their efficacy.  Appellant also argued that indispensable parties were absent, given Appellee's assertions:  (1) that the 2015 Deeds were void *ab initio,* and (2) that Appellant was not the valid owner of the Property.  Also, Appellant argued that Appellee did not plead constructive trust and unjust enrichment in her complaint and did not argue for it until the proposed conclusions of law she submitted at the conclusion of trial.  Appellant argued that Appellee's unsecured loan did not entitle her to any of the remedies the trial court granted, and that she had an adequate remedy at law.

The trial court conducted a hearing on the post-trial motions on November 8, 2019.  The trial court denied Appellant's post-trial motions by

---

[3] The trial court also held that the quiet title action was moot, and that entry of an accounting was not appropriate in an action at equity.

- 4 -

order of December 9, 2019.  The verdict was reduced to judgment on January

6, 2020.  We now turn to the issues Appellant raises in this timely[4] appeal.

On appeal from a non-jury trial, we are mindful of the following:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law.  The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury.  We consider the evidence in a light most favorable to the verdict winner.  We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.  However, [where] the issue ... concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

***Stephan v. Waldron Elec. Heating & Cooling LLC***, 100 A.3d 660, 664–65

(Pa. Super. 2014)

The first three of Appellant's six assertions of error are related, and we

consider them together.

I.   Whether the court lacked jurisdiction to grant declaratory and equitable relief as to the moot issue regarding the [2015 Deeds] considering the new [2018 Deeds]?

---

[4] Appellant filed its notice of appeal prematurely before the entry of judgment. We will treat Appellant's premature appeal as one from the January 6, 2020 judgment and entertain jurisdiction.  ***See Johnston the Florist v. TEDCO Constr. Corp.***, 657 A.2d 511, 514-15 (Pa. Super. 1995) (holding that this Court will entertain an appeal where the notice of appeal predates the entry of judgment).

- 5 -

II.     Whether the court lacked jurisdiction as a result of the failure to join indispensable parties?

III.    Whether the court erred by finding that filing mistake as to [Appellant's] corporation papers warranted finding deeds void *ab initio* and transferring property to an unsecured creditor? `

Appellant's Brief at 5.

As set forth above, Appellant filed its articles of incorporation the day before the 2015 closing, but the Commonwealth Secretary of State rejected them.  Appellant failed to cure the defect in time, and so its official date of incorporation, September 4, 2015, postdates the transaction in which the Estates transferred the Property to Appellant.  On that basis, Appellee asked the trial court to declare the 2015 Deeds void *ab initio*, and the court did so. Appellant argues that any defect in the 2015 Deeds was cured and rendered moot when the Estates issued the 2018 Deeds.  Appellant also argues that either 1) it was a *de facto* corporation pursuant to 15 Pa.C.S.A. § 504[5] on July

_____

[5]  That section provides:

Where heretofore or hereafter any act has been or may be done or any transfer or conveyance of any property has been or may be made to or by any corporation created or intended to be created under any statute supplied or repealed by this part, in good faith, after the approval of the articles or application for a charter or issuance of letters patent but without the actual recording of the original papers with the endorsements thereon, or a certified copy thereof, in the office of any recorder of deeds, as provided in such statutes then in force, the acts, transfers and conveyances shall nevertheless be deemed and taken to be valid and effectual for all purposes, regardless of the omission to record

- 6 -

15, 2015, the date of transfer of the 2015 Deeds, or 2) Appellee failed to join

indispensable parties—namely the officers, directors, and/or shareholders of

the corporation to be.

"An issue before a court is rendered moot when a determination is

sought in a matter which, when rendered, cannot have any practical effect on

the existing controversy." ***Printed Image of York, Inc. v. Mifflin Press,***

***Ltd.***, 133 A.3d 55, 59 (Pa. Super. 2016).  On consideration of the facts before

us, we conclude that the efficacy of the 2015 Deeds can have no effect on the

ultimate outcome of this case.  Appellant has not challenged the efficacy of

the 2018 Deeds. Appellant cites no legal authority preventing the Estates from

issuing the 2018 Deeds subject to *Lis Pendens*.  Furthermore, the trial court

accepted the legitimacy of the 2018 Deeds:  "Even accounting for the *void ab*

*initio* status of the [2015 Deeds], the corrective [2018 Deeds], show legal title

in the [Property] belonging to U Lock, Inc.  Certainly, U Lock has had full

possession and control of the [Property] since July 16, 2015 […]."  Trial Court

Opinion, 8/23/19, at 5.  The 2018 Deeds did not prejudice Appellant's cause

of action.  In some ways, they facilitated it.  Because of the 2018 Deeds, there

---

the original papers with the endorsements thereon, or a certified
copy thereof, as heretofore required by such statutes. Every such
corporation shall be deemed and taken to have been incorporated
on the date of approval of its articles or application for a charter
or on the date of issuance of its letters patent, whichever event
shall have last occurred.

15 Pa.C.S.A. § 504.

can be no dispute that Appellant is the proper party in interest, and therefore

the trial court had jurisdiction over Appellant's action for conveyance of title.

Likewise, we have no need to determine whether Appellant, as of the July 15,

2015 closing, met the definition of a *de facto* corporation.   In short, the

efficacy—or lack thereof—of the 2015 Deeds has no bearing on the relief the

trial court ultimately ordered—imposing a constructive trust on the Property

and ordering its conveyance to Appellee.   Thus, we come to Appellant's fourth

assertion of error, and the heart of the matter:

> IV.   Whether the court erred in granting judgment and
> transferring ownership of the [P]roperty through a
> constructive trust when:   (a) No allegations, facts, or
> theories or demand for for [sic] establishing a constructive
> trust were contained in the complaint or at trial; (b) No
> setting of the terms and conditions of the loan occurred by
> the trial court; (c) Transferring the [P]roperty under a
> constructive trust created an unjust enrichment and
> windfall; (d) Ordinary causes of action and a money
> judgment would have resolved the controversy?

Appellant's Brief at 5.

The following law governs the imposition of a constructive trust:

> A constructive trust arises when a person holding title to
> property is subject to an equitable duty to convey it to another on
> the ground he would be unjustly enriched if he were permitted to
> retain it.   The necessity for such a trust may arise from
> circumstances evidencing fraud, duress, undue influence or
> mistake.   The controlling factor in determining whether a
> constructive trust should be imposed is whether it is necessary to
> prevent unjust enrichment.

***Nagle v. Nagle***, 799 A.2d 812, 819 (Pa. Super. 2002) (citations omitted),

***appeal denied***, 820 A.2d 162 (Pa. 2003).

- 8 -

"There is thus no rigid standard for determining whether the facts of a particular case require a court of equity to impose a constructive trust; the test is whether or not unjust enrichment can thereby be avoided." ***Stauffer v. Stauffer***, 351 A.2d 236, 241 (Pa. 1976).  "This Court has repeatedly cited with approval the oft-quoted language of Justice (then Judge) Cardozo in ***Beatty v. Guggenheim Exploration Co.***, 122 N.E. 378, 380-81 (N.Y. 1919):

> A constructive trust is the formula through which the conscience of equity finds expression.  When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee … A court of equity in decreeing a constructive trust is bound by no unyielding formula.  The equity of the transaction must shape the measure of relief.

***Id.***  "To introduce the issue of a constructive trust a plaintiff must allege that the putative trustee had legal title to the property, and that were he to retain it, he would be unjustly enriched." ***Buchanan v. Brentwood Fed. Sav. and Loan Ass'n***, 320 A.2d 117, 127 (Pa. 1974).

Appellant argues that the trial court's imposition of a constructive trust must fail because Appellee did not specifically request the imposition of a constructive trust in her complaint.  We disagree.  In her complaint, Appellee alleges that she paid for the Property and that deeds were delivered to Appellant.  Complaint, 10/4/17, at ¶¶ 10-11.  In her cause of action for declaratory judgment, Appellee asked for a declaration that she was the equitable owner of the property.  ***Id.*** at ¶ 21(v).  Further, in her cause of action for equitable conveyance of title, Appellee alleged that she paid the

- 9 -

Estates for the Property, that Appellant paid no money toward the purchase of the Property, that Appellant never reimbursed Appellee for the payment, and that Appellee, therefore, was entitled to own the Property in fee simple. ***Id.*** at ¶¶ 22-29. Thus, while the words "unjust enrichment" and "constructive trust" are absent from Appellee's complaint, she very clearly pled the elements of a constructive trust in accord with ***Buchanan***, and the parties litigated those elements at trial.[6] Indeed, Appellant concedes that Appellee paid for the Property; that she deserves to be repaid; and that Appellant has not repaid her.

Further, the record supports the trial court's finding that Appellant lacks the financial wherewithal to repay Appellee, as evidenced in this exchange between Appellant's counsel and George Snyder:

Q.   Do you agree that you still owe this money, or U Lock, or someone, owes this money to [Appellee]?

A.   Yes, I do.

Q.   Are you attempting to try and make arrangements to pay that back?

A.   Well, yes. We could at any time that the *Lis Pendens* – **the deed makes it difficult.**

Q.   Okay. Are you willing to attempt to get that money together to pay her?

A.   Absolutely.

_____

[6] ***See also***, ***Marion v. Bryn Mawr Tr. Co.***, ___ A.3d ___ (Pa. Super. 2021) (looking at the substance of a cause of action, rather than its title, to determine whether the plaintiff alleged a valid cause of action).

- 10 -

Q.     Do you have people that want to become involved in your
       corporation, after this lawsuit is over, that would give you
       money to be able to pay her off?

A.     A whole list of people are very interested.

N.T. Trial, 4/29/19, at 49 (emphasis added).  The trial court could reasonably

find from the bolded portion of this passage that Appellant could not, without

alienating the Property, repay Appellee.  At other times during trial, the trial

court heard evidence that Appellant had limited resources, that it was not run

in accordance with applicable corporate law, and that it had never filed a

corporate tax return.[7]   From this, the trial court could reasonably reject

George Snyder's self-serving testimony about his "whole list" of wiling

investors waiting for this litigation to go away.

       In summary, the record supports the following conclusions:  1) Appellee

paid for the Property on behalf of Appellant; 2) Appellee expected repayment

from Appellant; 3) Appellant never repaid Appellee; 4) Appellee had no

adequate remedy at law because Appellant lacked resources, other than the

Property, with which to compensate Appellee.  There was no dispute that

Appellee was entitled to repayment.  Thus, the trial court faced a choice

between imposing a constructive trust and awarding the Property to Appellee

-------------------------------------------

[7]  George Snyder testified that Appellant never filed tax returns.  N.T. Trial,
8/29/19, at 52.   He was unsure whether Appellant ever issued stock
certificates to its 800 shareholders, and Appellant never sent an Internal
Revenue Service Form 1099 to any shareholder.  *Id.* at 51-52.  Appellant
maintained no insurance on the Property.  *Id.* at 52.  George Snyder believed
Appellant had corporate bylaws and minutes, but George Snyder was unable to
produce them in discovery.  *Id.* at 54.

or entering judgment for Appellant and trusting that the conclusion of this litigation would result in an influx of cash to Appellant with which it would, finally, repay its debt.  The trial court chose the former, and we conclude that it acted well within the appropriate bounds for a court sitting as fact finder.

That Appellant alleged causes of action for a declaratory judgment (including a declaration that she is the owner of the Property) and equitable conveyance of title, rather than for a constructive trust, does not alter our result.  As we have explained, the relief the court imposed is in accord with the facts alleged in the complaint, the relief sought in the complaint, and the issues litigated at trial.

For all the foregoing reasons, we discern no error in the trial court's imposition of a constructive trust on the Property and its direction that ownership thereof be transferred to Appellee.

In its fifth assertion of error, Appellant claims the trial court erred in scheduling a "snap trial" before the completion of discovery, and in denying Appellant's motion to continue the trial.  Appellant's Brief at 5.  The trial court acknowledges that its decision to schedule the trial was not in accord with the Westmoreland County Rules of Civil Procedure.  The court reasoned, however, that Appellant suffered no prejudice from its action.  The trial court cited Rule 126 of the Pennsylvania Rules of Civil Procedure, which permits it to "disregard any error or defect of procedure which does not affect the substantial rights of the parties."  Pa.R.C.P. No. 126.  In its brief, Appellant complains that it

**Appendix Vol. II**                    **Page 334**

was deprived of the opportunity to test Appellee's claims through discovery, but Appellant fails to specify any additional discovery it would have sought. Likewise, Appellant does not explain precisely how the scheduled order hampered its ability to defend itself in this case. For these reasons, Appellant is not entitled to relief on this issue.

In its sixth and final assertion of error, Appellant claims the trial court erred in sustaining Appellee's preliminary objection to scandalous and impertinent material set forth in Appellant's answer and new matter to Appellee's complaint. Appellant alleged that the funds Appellee used to pay for the property were derived from illicit gambling activity. Rule 1028(a)(2) permits a preliminary objection for "failure of a pleading to conform to law or rule of court or inclusion of scandalous or impertinent matter[.]" Pa.R.C.P. No. 1028(a)(2). "In order to be scandalous or impertinent, 'the allegation must be immaterial and inappropriate to the proof of the cause of action.'" ***Breslin v. Mountain View Nursing Home, Inc.***, 171 A.3d 818, 822 (Pa. Super. 2017) (**quoting *Common Cause/Pennsylvania v. Commonwealth of Pennsylvania***, 710 A.2d 108 (Pa. Commw. 1998)). We will reverse an order sustaining a preliminary objection only if the trial court committed an error of law or abuse of discretion. ***Id.*** at 822.

The trial struck the allegation as immaterial and inappropriate to this case of action. We agree. Whatever the source of Appellee's funds, she pled and proved that she paid for the Property expecting repayment, and that

Appellant has remained in possession and enjoyment of the Property ever since, without any apparent ability to make repayment. Thus, the source of Appellee's funds has no obvious bearing on the equities between the parties to this case. We discern no error of law or abuse of discretion in the trial court's decision.

For all the foregoing reasons, we affirm the trial court's judgment in favor of Appellee.

Judgment affirmed.

Judge King joins the opinion.

Judge Shogan concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/21/2021

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA
CIVIL ACTION

CHRISTINE BIROS,                          )
                                          )
                    Plaintiff,            )
                                          )        No. 4886 of 2017
        v.                                )
                                          )
U LOCK, INC.,                             )
                                          )
                    Defendant.            )
                                          )

<u>**NON-JURY TRIAL OPINION AND ORDER OF COURT**</u>

BY THE COURT:

The Court held a non-jury trial on the record with regard to this action on April 29, 2019

pursuant to the April 3, 2019 Order of Court designating the matter for a one day non-jury trial.

The case and concerns the conveyance of a property located at 14140 Route 30, North Huntingdon,

Westmoreland County, Pennsylvania, with a County Tax Map Number of 54-03-10-0-103 ("the

Subject Property").  The initial complaint named Denise Schur as Executrix of the Estate of Alex

Schur, Henry L. Moore and Susan Stano as Co-Executors of the Estate of Nicholas Schur, Kathleen

S. Walter as Executrix of the Estate of Michael Schur, and Cynthia Sarris as Administrator of the

Estate of Ann Sarris as Defendants, as these named estates together were the full owners of the

Subject Property.  The Estate Defendants were released from the case upon their motion at the

commencement of trial in this matter, upon assurance that the Estates would issue corrective deeds

to the prevailing party in this matter, and noting that the Estates had no further interest in the

litigation.  Upon conclusion of trial, proposed findings of fact, conclusions of law and orders of

court, along with accompanying briefs were ordered by this Court, and the same have been duly

considered in rendering the within opinion.

### *FACTS*

An agreement for sale of the Subject Property was entered into by the Defendant Estates and Defendant U Lock, and the same was executed by Defendant U Lock on November 25, 2014 and the Defendant Estates on December 22, 2014.  (Exhibit "A").  On July 16, 2015, the Subject Property was conveyed to Defendant U Lock.  (Transcript of Trial p 18).  Four checks were issued by Plaintiff Christine Biros to the former Defendant Estates in full compensation for their respective ownership interests in the Subject Property. (T.T. p. 19, 23, Exhibit "P1").  A handwritten agreement dated July 16, 2015 and signed by Kash Snyder as Director of U Lock, Inc. sets out in brief the terms of a loan agreement wherein Plaintiff Christine Biros lent the full sum of $325,316.00 to Defendant U Lock for the purchase of the Subject Property.  (Exhibit "P5").

U Lock attempted to file Articles of Incorporation on July 15, 2015, but the application was returned by the Commonwealth of Pennsylvania Department of State by letter dated July 17, 2015 for insufficiency.  (Exhibit "P2").  The letter indicating the applications rejection provided that the original date of incorporation could be retained, provided that a corrected application was provided to the Department of State within thirty days.  (Exhibit "P2").  U Lock's Articles of Incorporation were filed on September 4, 2015 with the Commonwealth of Pennsylvania Department of State. (Exhibit "P3").  No evidence of existent corporate by-laws or minutes was submitted by U Lock, and U Lock admits that the subject property has been and remains uninsured. (T.T. p. 53-54). No tax returns have been filed relative to the property since July 2015.  (T.T. p. 69).  Corrective deeds naming the now-existent U Lock, Inc. as purchaser of the Subject Property were filed with the Westmoreland County Recorder of Deeds on March 1, 2018.  (Exhibits "C," "D," "E," and "F").

It is undisputed that U Lock has remained in possession of the Subject Property exclusively since the transfer on July 16, 2015.  Plaintiff has never received any reimbursement from U Lock or on behalf of U Lock, and this is admitted by defendant U Lock.  (T.T. p. 32, 66).  Defendant U

Lock has since July 16, 2015 received and continues to receive income via the commercial operation of the Subject Property. (T.T. p. 61).

### *DISCUSSION AND ANALYSIS*

COUNT I – DECLARATORY JUDGMENT

Count I of Plaintiff's Complaint requests a declaratory judgment declaring that: (1) the deeds entered into on July 16, 2015 are *void ab initio*; (2) the Defendant Estates remain the owners of the property in fee simple; (3) Christine Biros delivered the purchase price for the property on the date of payment; (4) the Defendant Estates have received full consideration for title to the property; and (5) that Plaintiff Christine Biros is the equitable owner of the property. At the outset, the Court notes that the Defendant Estates have stipulated to the fact that they have received full consideration for title to the property. The Defendant Estates have agreed to execute deeds in favor of the prevailing party to this suit, and so the Estates have been dismissed from the within action.

As to the question of the July 16, 2015 deeds alleged *void ab initio* status, Plaintiff claims that because the deeds were delivered to "U Lock, Inc.," and U Lock, Inc. was not incorporated until September 4, 2015, the deeds are void from their inception. Defendant U Lock argues that U Lock, Inc. was operating as a *de facto* corporation at the time of the deed execution, and so the deeds were valid.

It is settled law in Pennsylvania that "[a] deed that purports to convey real estate to a nonexistent corporation has no effect." *Borough of Elizabeth v. Aim Sher Corp.*, 462 A.2d 811, 812 (Pa. Super. 1983) (citations omitted). "Upon the filing of the articles of incorporation in the Department of State or upon the effective date specified in the articles of incorporation, whichever is later, the corporate existence shall begin." 15 Pa. C.S. § 1309. In certain situations, a corporation may be considered to exist *de facto* despite the failure of the required process where "…after the approval of the articles or application for a charter or issuance of letters patent but without the

actual recording of the original papers with the endorsements thereon, or a certified copy thereof, in the office of any recorder of deeds..." the attempted corporation conducts business such as the transfer of property.  15 Pa. C.S. § 504.  Pennsylvania common law additionally provides a framework under which a *de facto* corporation may exist: "[f]irst, there must be a law or charter under which an organization might be effected. Second, there must be an attempt to organize which falls so far short of the requirements of the law or charter as to be ineffectual. Third, there must be an assumption and exercise of corporate powers, notwithstanding the failure to comply with the law or charter." *Appeal of Riviera Country Club*, 176 A.2d 704, 706 (Pa. Super. 1961).

It is clear that U Lock, Inc. did not come into being until September 4, 2015.  This is over seven weeks after the date of payment and conveyance of the property, being July 16, 2015.  It is notable that the letter rejecting U Lock's incorporation application provided a method of retaining the original date of incorporation, yet U Lock did not comply with this option. 15 Pa. C.S. § 504 allows that a *de facto* corporation may exist "after the approval of the articles or application for a charter or issuance of letters patent..."  This is plainly not the case here, as the application was not approved until September 4, 2015.

Looking to the common law requirements, it is obvious that a law exists under which U Lock may — and eventually did — incorporate.  Turning next to the "attempt to organize," comparing the requirements of various cases is illustrative, and demonstrates that this attempt is generally categorized as, at a minimum, the issuance of a corporate charter or other approval by the state. See e.g., *Cochran v. Arnold,* 58 Pa. 399 (Pa. 1868); *Spahr v. Farmer's Bank, Carlisle*, 94 Pa. 429 (Pa. 1880); *Pinkerton v. Pennsylvania Traction Co.,* 44 A. 284, 285 (Pa. 1899); *Schmitt v. Potter Title & Trust Co.*, 61 Pa. Super. 301 (Pa. Super. 1915); *In re Mt. Sharon Cemetery,* 120 A. 700, 701 (Pa. 1923); *Appeal of Riviera Country Club*, 176 A.2d 704, 707 (Pa. Super. 1961).  Here, there was no approval or issuance of any state approval until September 4, 2015.  U Lock

additionally did not avail itself of the Department of State's offer to retain its original July filing date, falling short of any alleged attempt to incorporate prior to September 4, 2015.

Based on the above reasoning, Defendant U Lock, Inc. was neither a *de facto* nor a *de jure* corporation at the time of the issuance of the original deeds, and so the original deeds are *void ab initio*. As conceded by Defendants Estates at the commencement of trial, the Defendants Estates have been fully compensated for the purchase price of the property by Plaintiff Biros. Plaintiff Biros' equitable ownership of the property will be discussed below.

COUNT II – EQUITABLE ACTION TO COMPEL CONVEYANCE OF TITLE

Count II of Plaintiff's Complaint requests relief in equity conveying title to the property to Plaintiff, Christine Biros. Plaintiff's proposed Conclusions of Law make clear that Plaintiff is proceeding under a theory that U Lock has held the property in a constructive trust for Plaintiff Biros. "The theory underlying the constructive trust doctrine is that '[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.' Courts will impose a constructive trust only where the defendant has acquired the property at issue as a result of fraud, duress, undue influence, mistake, abuse of a confidential relationship, or other such circumstances suggesting unjust enrichment." *Louis Dolente & Sons v. U.S. Fid. & Guar. Corp.*, 252 F. Supp. 2d 178, 182 (E.D. Pa. 2003) (citation omitted).

Even accounting for the *void ab initio* status of the original deeds, the corrective deeds, filed March 1, 2018, show legal title in the Subject Property belonging to U Lock, Inc. Certainly, U Lock has had full possession and control of the property since July 16, 2015, and has collected rents from tenants since that time. It is undisputed by U Lock that Christine Biros paid the full purchase price of the property to the Defendant Estates, and that U Lock has not repaid any of the purchase price to Plaintiff Biros. As such, the present case is ripe for the imposition of a constructive trust,

where it is clear that it would be wholly inequitable for Defendant U Lock to retain the beneficial interest of the property. It is clear that U Lock would be unjustly enriched in maintaining the benefits of the property, which, in addition to the mere ownership of the property itself, also consist of the accumulation of rent via tenants utilizing storage on the property.

As such, the Court finds that equity demands the imposition of a constructive trust in this situation. In its Findings of Fact and Conclusions of Law, Defendant U Lock maintains that the Plaintiff failed to pursue remedies at law, such as a claim for breach of contract, and so relief in equity is unwarranted. Pennsylvania law provides, however, that "a court of equity has the power to afford relief despite the existence of a legal remedy when, from the nature and complications of a given case, justice can best be reached by means of equity's flexible machinery." *Vautar v. First Nat. Bank of Pennsylvania*, 133 A.3d 6, 12–13 (Pa. Super. 2016) (citation omitted).

Here, the Court notes the unique nature of real property in establishing Plaintiff Biros' right to relief in equity, which provides not only the instant unique piece of real property, but the additional tenant rents which have been collected by U Lock since July 2015 and which will continue to accumulate into the future. Additionally, the Court notes that the record reflects doubt as to U Lock's solvency and ability to repay Plaintiff Biros the purchase price of over $300,000.00 now or at any point subsequent. As such, the only equitable solution is the imposition of a constructive trust, and the present conveyance of the Subject Property to Plaintiff Christine Biros.

COUNT III – QUIET TITLE

Plaintiff Biros' Count III requests judgment in quiet title. As title to the subject property has been equitably awarded to Plaintiff Biros pursuant to Count II of this action, any claim in quiet title is moot, and so must be dismissed.

COUNT IV – ACCOUNTING

Plaintiff Biros' Count IV requests an accounting of all sums collected by U Lock from

tenants of the subject property since July 16, 2015. To establish a right to an accounting a plaintiff

must show the following:

> (1) there was a valid contract, express or implied, between the parties
> whereby the defendant (a) received monies as agent, trustee or in any
> other capacity whereby the relationship created by the contract imposed a
> legal obligation upon the defendant to account to the plaintiff for the
> monies received by the defendant, or (b) if the relationship created by the
> contract between the plaintiff and defendant created a legal duty upon the
> defendant to account and the defendant failed to account and the plaintiff
> is unable, by reason of the defendant's failure to account, to state the exact
> amount due him, and (2) that the defendant breached or was in dereliction
> of his duty under the contract.

*Haft v. U.S. Steel Corp.*, 499 A.2d 676, 678 (Pa. Super. 1985). Here, as the action is based solely in

equity and no contract action has been maintained, an accounting is inappropriate. Plaintiff's Count

IV must therefore be dismissed.

Based upon the foregoing reasoning, this Court enters the following Order of Court:

## ORDER OF COURT

AND NOW, to wit, this 22nd day of August, 2019, consistent with the analysis contained in the foregoing Opinion; it is hereby ORDERED, ADJUDGED and DECREED, as follows:

1. As to the Plaintiff's Complaint, a verdict is hereby ENTERED in favor of Plaintiff Christine Biros and against Defendant U Lock, Inc. on Counts I and II.

2. Count III of Plaintiff's Complaint is hereby DISMISSED as moot.

3. Count IV of Plaintiff's Complaint is hereby DISMISSED.

4. Any and all deeds executed by any one or all Defendant Estates purporting to convey title to Defendant U Lock, Inc. on July 16, 2015 are *void ab initio* and of no further force and effect.

5. Defendant Estates have received full consideration for title to the Subject Property.

6. Plaintiff Christine Biros is the equitable owner of the Subject Property.

7. Legal title to the Subject Property shall be conveyed to Christine Biros by execution of the appropriate deeds, currently held in escrow.

8. The Court will consider Plaintiff Biros' request for an appeal bond should an appeal be taken by Defendant U Lock.

9. Further, in accord with Pa.R.C.P. No. 236(a)(2)(b), the Prothonotary is DIRECTED to note in the docket that the individuals listed below have been given notice of this Order.

BY THE COURT,

Harry F. Smail, Jr., Judge

ATTEST:

Prothonotary

cc:   William E. Otto, Esq.
J. Allen Roth, Esq.
John Tumolo, Esq.
Dennis Del Cotto, Esq.

FILED
4/24/23 3:44 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

```
IN RE:                      .    Case No. 22-20823-GLT
                            .
                            .
U LOCK INC,                 .    5414 U.S. Steel Tower
                            .    600 Grant Street
                            .    Pittsburgh, PA 15219
          Debtor.          .
                            .    April 13, 2023
. . . . . . . . . . . . . ..     1:30 p.m.
```

TRANSCRIPT OF #294 CONTINUED ORDER TO SHOW CAUSE SIGNED
ON 1/17/2023. (RE: RELATED DOCUMENT(S): 258 APPLICATION
FOR ADMINISTRATIVE EXPENSES; #278 CONTINUED AMENDED ORDER
TO SHOW CAUSE SIGNED ON 1/6/2023. (RE: RELATED DOCUMENTS(S):
249 ORDER SCHEDULING HEARING); #345 CONSENT MOTION TO
APPROVE COMPROMISE UNDER RULE 9019; #340 OBJECTION TO CLAIM
OF SHANNI SNYDER; AT CLAIM NUMBER 1; #337 OBJECTION TO CLAIM
OF GEORGE SNYDER; AT CLAIM NUMBER 5; #344 AMENDED
APPLICATION FOR ADMINISTRATIVE EXPENSES PURSUANT TO
11 U.S.C. 503(b)(1) AND/OR FOR PAYMENT OF ADEQUATE PROTECTION

BEFORE HONORABLE GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:          Law Office of J. Allen Roth
                         By:  J. ALLEN ROTH, ESQ.
                         805 S. Alexandria Street
                         Latrobe, PA 15650

For George Snyder:       By: GEORGE SNYDER, PRO SE
                         Box 15
                         Irwin, PA 15642


ECRO:                    Hayley Smith


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311      Fax No. (609) 587-3599**

```
APPEARANCES (Cont'd):

For Christine Biros:        Bernstein-Burkley, P.C.
                           By:  ROBERT S. BERNSTEIN, ESQ.
                                MARK LINDSAY, ESQ.
                           601 Grant Street, 9th Floor
                           Pittsburgh, PA 15219

For Christine Biros,        The Law Firm of William E. Otto
Lead Counsel in the        By:  WILLIAM E. OTTO, ESQ.
State Court Action:        4027 Old William Penn Highway
                           P.O. Box 701
                           Murrysville, PA 15668

TELEPHONIC APPEARANCES:

Chapter 7 Trustee:          Mahady & Mahady
                           By:  ROBERT H. SLONE, ESQ.
                           223 South Maple Avenue
                           Greensburg, PA 15601

For Shanni Snyder:          The Lynch Law Group LLC
                           By:  JOHN PATRICK LACHER, ESQ.
                           501 Smith Drive, Suite 3
                           Cranberry Twp, PA 16066
```

- - -

1          ECRO:  Court may now come to order.  The Honorable

2  Gregory L. Taddonio presiding.

3          THE COURT:  All right.  Good afternoon, everyone.

4  This is the United States Bankruptcy Court for the Western

5  District of Pennsylvania and this is the Court's docket of

6  Chapter 7 and Chapter 11 matters on this Thursday, April 13,

7  2023.  The matter under consideration at this time is Case

8  Number 22-20823, U LOCK INC.  I'll begin by taking appearances

9  first here in the courtroom and I'll start over here.  Mr.

10  Roth?

11          MR. ROTH:  Alan Roth on behalf of U LOCK.

12          THE COURT:  All right, good afternoon.

13          MR. SNYDER:  George Snyder.

14          THE COURT:  All right, good afternoon.  Want to come

15  over here?

16          MR. BERNSTEIN:  Your Honor, on behalf of Christine

17  Biros, Robert Bernstein, Bernstein-Burkley.

18          THE COURT:  Okay.

19          MR. BERNSTEIN:  William Otto sitting next to me.

20          THE COURT:  All right, good afternoon.

21          MR. BERNSTEIN:  Ms. Biros is in the courtroom next to

22  him and my colleague Mark Lindsay.

23          MR. LINDSAY:  Good afternoon.

24          THE COURT:  All right, good afternoon, everyone.  All

4

1 right, that satisfies the appearances here in the courtroom and

2 then I'll take appearances on the Zoom call.  I'll start first

3 with the Chapter 7 Trustee.

4         MR. SLONE:  Yes.  Robert Slone, Chapter 7 Trustee,

5 Your Honor.

6         THE COURT:  All right, good afternoon.  And, I'll

7 take an appearance for Shanni Snyder?

8         MR. LACHER:  Good afternoon, Your Honor.  John Lacher

9 on behalf of Shanni Snyder, and Shanni Snyder is in the room

10 with me, Your Honor.

11         THE COURT:  Okay, good afternoon.  All right, and is

12 there anyone else who wishes to enter an appearance in this

13 case?

14                     (No audible response)

15         THE COURT:  All right.  This is a hearing set on

16 several pending matters and I have -- the Claims Objections

17 filed by Christine Biros to the claims of George Snyder and

18 Shanni Snyder.  I have an Amended Application for Payment of

19 Administrative Expenses, including Post-Petition Rent,

20 relatedly a Consent Motion to Approve Compromise under Rule

21 9019, and then two continuations of hearings related to Orders

22 to Show Cause that were issued by the Court at Docket Numbers

23 278 and 294.  Unless there's any housekeeping matters that I

24 need to be aware of, I am just going forward in starting with

25 the claims objections, so any preliminary comments from the

1  parties that we need to address?

2                    (No audible response)

3            THE COURT:  All right, hearing none.  I'd like to

4  begin with the Christine Biros' objection to the claim of

5  George Snyder, which is Claim Number 5, and since this seemed

6  to help us with some efficiencies in the hearing, I'm going to

7  just go through some of my observations of what the parties

8  have argued at this point and just ask if there's additional

9  clarification or other remarks that anyone wants to add?

10           So, I have Claim Number 5-1 that was filed by George

11 Snyder in the amount of $99,000 as an unsecured claim or,

12 quote, wage, Fair Labor Standards, end quote.  There was no

13 supporting documentation attached to the claim, but it was

14 timely filed.  Ms. Biros has filed an objection indicating that

15 Mr. Snyder signed the schedules without listing a wage claim

16 and should be judicially estopped from doing so now, and at the

17 341 meeting, Mr. Snyder allegedly testified that, quote, the

18 $99,000 is what Biros would owe me, end quote, because he never

19 received officer compensation for the last seven years.

20           Ms. Biros asserts that the Fair Labor Standards Act

21 does not apply to these claims because, one, Snyder is not an

22 employee of the Debtor and testified the Debtor has no

23 employees.  The FLSA carves out establishments whose only

24 regular employees are the owner and immediate family members,

25 so Snyder is not entitled to a minimum wage.

1          In addition there is no evidence that Snyder was a

2   contractor for U LOCK, and even if he could assert a claim, the

3   statute of limitations is two years, not seven.  Mr. Snyder has

4   filed a response, indicating that he worked for Biros, and if

5   she is correct and owned the business at all times since 2015,

6   he filed the claim after researching Shanni's FLSA claim.  He

7   also cites to Section 13(a)(1) and 13(a)(17) of the FLSA, which

8   provides exemptions from Section 206 regarding minimum wage

9   requirements for employees in a bona fide executive,

10  administrative, or professional capacity, and certain skilled

11  computer workers, and the declaration provides as calculation,

12  assuming he worked four to five hours a day five days a week.

13  Mr. Snyder also asserts he doubled the amount of his actual

14  claim as liquidated damages.

15          So, that's the context of how I understand the claim

16  objection and I'll ask the parties if there's anything in

17  addition that they wish to add separate and apart from what's

18  already in the papers.  Mr. Bernstein?

19          MR. BERNSTEIN:  Assuming that Your Honor was

20  highlighting what was in the papers and not making an

21  exhaustive recitation, we have nothing else to add to what was

22  in our objection.

23          THE COURT:  All right.  Thank you.  Mr. Snyder,

24  anything else you want to add?

25          MR. SNYDER:  Not much.  You covered mostly

1  everything.  I just wanted to add the one thing that Mr. Slone

2  --

3        MR. BERNSTEIN:  Your Honor, I'm sorry.  Could we --

4  because Mr. Snyder is representing himself, is it possible that

5  he be sworn for these assertions so that we have a clear

6  record?

7        THE COURT:  I don't have any issue with that.  Mr.

8  Snyder, you understand what we're going to do is we're going to

9  put you under oath and so any statements that you give are

10  going to be your sworn testimony in this matter?

11        MR. SNYDER:  Yes, I do.

12        THE COURT:  Okay.  If you can please rise and raise

13  your right hand and I'll ask the court reporter to please swear

14  you in.

15              GEORGE SNYDER, WITNESS, SWORN

16        ECRO:  Thank you, and if you can please speak clearly

17  into the microphone.  Thank you.

18        MR. SNYDER:  Okay, yeah.  I noticed I did that.  Kay.

19        The only other thing I wanted to add throughout this

20  whole process, right after we handed in the schedules, I was

21  also going to -- Mr. Slone and I were talking about amending

22  the schedules, so I could have amended that part as well.  I

23  just thought I'd mention that.

24        THE COURT:  Okay.  But, nothing further at this

25  point?

1          MR. SNYDER:  No.

2          THE COURT:  All right.  Well, upon review of the

3 papers and review of the claim, I'm going to make the following

4 findings.  Number one, as noted before, the claim is just a

5 bare bones claim.  It does not have any supporting

6 documentation substantiating the amounts claimed, or breakdown

7 of the time periods, or the time frames by which the wages were

8 accrued, and so under the <u>Allegheny International</u> line of cases

9 that followed from the Third Circuit decision there, I find

10 that it's not entitled to prima facie validity.  And in

11 addition to that, I do think that there are valid points that

12 have been raised by Christine Biros with respect to

13 deficiencies in the claim.

14          First off, under applicable law, 29 U.S.C.A. Section

15 203(s)(2), provides, quote, any establishment that has as its

16 only regular employees, the owner thereof, or the parent,

17 spouse, child, or other member of the immediate family of such

18 owner, shall not be considered to be an enterprise engaged in

19 commerce, or in the production of goods for commerce, or a part

20 of such an enterprise, end quote.

21          Relatedly, Section 29 U.S.C.A., Section 206 provides,

22 quote, every employer shall pay to each of his employees, who

23 in any work week is engaged in commerce, or in the production

24 of goods for commerce, or is employed in an enterprise engaged

25 in commerce, or in the production of goods for commerce, wages,

1  at the following rates, end quote.

2        Here, the Court is finding that this did not

3  constitute -- U LOCK did not constitute an entity or an

4  enterprise engaged in commerce, since he was -- George Snyder

5  was the owner, U LOCK had no other employees, and consequently

6  George does not appear to be an employee as qualified under the

7  FLSA.

8        I also note that the statute does provide under 29

9  U.S.C., Section 255(a), that there is a two year statute of

10 limitations except that an action arising from a willful

11 violation may be commenced within three years.  Here, the

12 allegation is that some of these claims may reach as far back

13 from 2015 to at least 2019 and, therefore, would seemingly be

14 time barred.

15       I also note that the response that was given does

16 seem to have some inconsistencies.  I'm not sure exactly why

17 Mr. Snyder is claiming exemptions under the FLSA, because the

18 exemptions would not be helpful to him and, in fact, would

19 exclude U LOCK or his status from coverage for wages.

20       It also appears to me that Claim 5-1 appears to be an

21 attempt to recoup lost sweat equity or capital contributions

22 that were provided through his labor and efforts, rather than a

23 wage.

24       And, finally, and also compelling, is that the claim

25 does conflict with sworn statements that were given elsewhere

1  in this case, particularly with respect to the schedules and

2  testimony at the 341 meeting and in other sworn declarations.

3  So, for all those reasons, I find that the objection is well-

4  founded and I will sustain the objection and deny Mr. Snyder's

5  claim.

6        So, that brings us forward to the next claim

7  objection which is the objection to Claim Number 1 filed by

8  Shanni Snyder.  This was a claim filed in the amount of

9  $263,100, originally as a secured judgment.  Ms. Biros has

10  filed an objection, asserting that Shanni was not an employee

11  of U LOCK, and as is supported by Shanni's schedules, and given

12  her failure to properly schedule a wage claim, Shanni should be

13  judicially estopped from asserting one now.

14        Both George and Kash Snyder have testified

15  extensively that U LOCK had no employees and did not consider

16  Shanni Snyder to be an employee.  She also notes that there is

17  no evidence that Shanni was a contractor of U LOCK and further

18  observes that Shanni does not qualify as an employee under the

19  FLSA because U LOCK was an immediately -- or an immediate

20  family-owned business.  And, even if she had such a claim under

21  the FLSA, the statute of limitations is two years.

22        Biros' also asserts that the claimant Shanni worked

23  for ten hours a night, every night, for four years, is on its

24  face incredible, and given that the security setup at the site

25  did not have wifi or other connectivity, it is unclear how

1  Shanni could have monitored the cameras as alleged in her

2  claim.

3           Ms. Snyder filed a response arguing that Biros is

4  seeking to collaterally attack her judgment and she asserts

5  that judicial estoppel cannot apply because she later amended

6  her schedules and only part of the claim belonged to her

7  estate, and finally suggests that if an evidentiary hearing is

8  necessary to address the validity of the judgment, the

9  reference should be withdrawn to permit the District Court to

10 do so.

11          So, again, those are my initial observations of what

12 had been contended by each of the parties with respect to that

13 pending claim objection.  Is there anything further that Ms.

14 Biros wishes to raise with respect to that claim objection?

15          MR. BERNSTEIN:  Nothing further at this point, Your

16 Honor.  Thank you.

17          THE COURT:  All right, thank you.  All right, Mr.

18 Lacher, how about on your behalf for Ms. Snyder?

19          MR. LACHER:  Yes, thank you, Your Honor.  Again, as

20 noted, we're dealing here with a final judgment and I would

21 also point out that Ms. Biros has commenced a RICO action in

22 the District Court, which includes the same attacks on the

23 judgment that they raise here before Your Honor.  So, you have

24 them asking the District Court to pass on the facts and they

25 have Your Honor asking to pass on the facts, and based on Your

1  Honor's findings in regard to the last objection, I'd also

2  point out, they rely largely on a case issued by Judge Deller,

3  kind of stating that this Court can always get behind a

4  judgment in a claims objection situation.  I don't think that

5  case says that at all.  That was a case that dealt with

6  confessed judgments that, on the face of the record, were not

7  lawful, the process was not followed.  In this instance, Ms.

8  Snyder filed her complaint.  Went to court.  Attended a hearing

9  in front of Judge Colville.  Judge Colville took evidence.

10 Judge -- including testimony from Ms. Snyder.  He rendered a

11 final judgment.  That judgment is a year and a half old.

12 Nobody has attacked it, and I do believe this Court can't get

13 behind it, and I also believe that if it is going to be

14 challenged, it should go back to the District Court, as Your

15 Honor mentioned.

16         THE COURT:  Okay.  Anything in response, Mr.

17 Bernstein?

18         MR. BERNSTEIN:  Nothing that we haven't already set

19 forth, Your Honor.  Thank you.

20         THE COURT:  All right, thank you.  All right.  I'll

21 address the points as follows.  I do think that Shanni's

22 judgment was entered by default.  It's clearly indicated as

23 such and, therefore, I reach the finding that it is not

24 entitled to preclusive effect, and in support of that, I do

25 rely on the In re Chatkin case, 465 B.R. 54, at Page 65, which

1  is a decision of the Bankruptcy Court of the Western District

2  of Pennsylvania from 2012, which provided, quote, as a general

3  rule under federal law, any issue raised in a case where a

4  default judgment was entered is not actually litigated for

5  purposes of collateral estoppel, and therefore does not bar

6  litigation of the issue in the Second Federal Court, end quote.

7        There is no exception where the defendant never

8  appeared and participated.  I think Biros is correct that the

9  statute of limitations for the FLSA claim is two years, with

10  the possibility of three years for a wilful violation.  It's

11  under 29 U.S.C., Section 255(a), and to the extent that Shanni

12  reopened her bankruptcy case and amended her schedules and

13  entered into a settlement with the Trustee, I do find that

14  judicial estoppel would appear to be moot and is no longer at

15  play here.

16        But, even though Shanni is the sister of Kash and

17  George, it is unclear whether adult siblings under the

18  circumstances would be considered, quote, immediate family

19  under the FLSA, and I think there are some factual issues that

20  are raised here, but nevertheless, the fact that there is a

21  judgment, does require at this point for the Court to schedule

22  an evidentiary hearing on the merits of the claim itself.  And,

23  so I am prepared to do that and we'll issue a suitable pretrial

24  order.  My expectation though is that this should not be a long

25  or involved process.  I am contemplating an evidentiary hearing

1  of no more than two hours and I think the primary witness would

2  be Ms. Snyder herself.  If there is cause to be shown that

3  there are needs for other witnesses, we can address that, but

4  I'm not envisioning that as we sit here today.

5          To the extent the parties need a discovery period,

6  I'm prepared to provide a brief 60-day discovery period for

7  that.  But, in short, I'm moving forward with quantifying the

8  claims of this estate, and the only way to do so is to have an

9  evidentiary hearing on the merits of that claim objection.  To

10  the extent that Ms. Snyder wants to seek a withdraw of the

11  reference, that's her prerogative.  She can file an appropriate

12  motion with the District Court.  The District Court can act

13  with it as it deems necessary, but my expectation would be that

14  liquidating and determining the allowance of claims is

15  something that is normally done within the Bankruptcy Court and

16  unless there's some other basis to seek a withdraw of the

17  reference, I would not be betting money that the District Court

18  would grant that.

19          But, nevertheless, I'm prepared to be surprised on

20  that, but in the meantime, I'm not going to wait for the

21  District Court to rule on that.  This is an estate that needs

22  to be properly addressed, and so I will move forward with the

23  evidentiary hearing under the schedule that I've just outlined.

24          I would also note though that, and this is for Mr.

25  Lacher's benefit because he is new to the party, so to speak,

1  is that, on its face and given the circumstances of which

2  unfolded, and again mind you, I'm not making any final

3  determinations, but the veracity and validity of the Shanni

4  Snyder claim is certainly somewhat dubious.  I made no mistake

5  about that and some of the things I've written in my orders

6  before, and so I want to make sure that we're all clear on what

7  the expectations are going forward, and that is the Court has

8  already put all of the parties in this room and on the Zoom

9  call on notice that I'm not tolerating any more games or

10 crossing any lines.  Rule 11 is in play and, to the extent that

11 there were sworn statements given in this proceeding, penalty

12 of perjury also applies here.

13         So, as we move forward with an evidentiary hearing, I

14 want folks to be mindful of that so that we can be all clear on

15 what the expectation is and that there is no funny business or

16 games that are being played as we move forward with the goal of

17 including the administration of this estate and determining

18 what the claims are and allowing the Trustee to take what

19 limited resources he has and make distributions to creditors.

20 So with that, any questions or further clarifications that the

21 parties need at this stage?

22         MR. BERNSTEIN:  No, Your Honor.

23         MR. LACHER:  No, Your Honor.

24         THE COURT:  So, while we're at it, I'm going to just

25 set a date.  If I use 60 days from today for discovery, I have

1   the window of July 14th in the afternoon, which is a Friday,

2   for an evidentiary hearing.  How does that work for the

3   parties?

4           MR. BERNSTEIN:  Fine with us, Your Honor.

5           MR. LACHER:  Fine with me, Your Honor.

6           THE COURT:  All right.  Then, I'll set that for July

7   14th at 1:30 p.m.

8           MR. OTTO:  Unless you're home for Bastille Day.

9           THE COURT:  All right.  That brings us forward to the

10  next pending item, which I will take as the consent motion to

11  approve the compromise under Rule 9019 and this is somewhat

12  related to the amended application for administrative expenses

13  that was filed by Christine Biros, which has drawn an objection

14  from George Snyder.  The motion to compromise has drawn

15  objections from both George Snyder and Shanni Snyder and a

16  consent response from the Chapter 7 Trustee.

17          Okay.  So, again, where I view the papers at this

18  stage is as follows.  Christine Biros and the Trustee have

19  entered into a settlement of her claims.  The settlement would

20  provide for an allowance of an administrative expense claim of

21  $18,000 for use and occupancy of the subject property during

22  the pendency of the bankruptcy.  That equates to $2,000 a month

23  for a period of nine months.  It would also allow amended Claim

24  Number 2 in the amount of $27,701.59 as a priority claim under

25  Section 507(a)(8) for pre and post-petition real estate taxes

1 incurred on the real property.  Biros will reduce this claim to

2 the extent the taxes are paid by the estate.  It will also

3 allow Claim Number 3 in the amount of $162,000 as a general

4 unsecured claim for the pre-petition use and occupancy of the

5 property.  That is based on a rental figure of $7,000 a month

6 for 81 months, dating back to approximately July of 2015.

7 And, Claim Number 4, which is $200,000 as an allowed

8 general unsecured claim for environmental remediation costs.

9 And, Ms. Biros asserts that this is the middle range of the

10 remediation estimates she received.  I have objections from

11 Shanni Snyder indicating that Biros' claims are premature,

12 because they are based on Biros' alleged ownership, which

13 Shanni has challenged in an avoidance action that is pending

14 before this Court, and even if Shanni is not successful, she

15 alleges that the rent claims are excessive in relation to the

16 fair market value.  She also contends that rent would

17 constitute unjust enrichment, because after obtaining title to

18 the property, she would effectively be recovering a second time

19 for the same pre-petition period.  And, Shanni also contends

20 the environmental claim is unilateral estimate of damages and

21 does not address the availability of insurance coverage for the

22 garbage truck fire.

23 George has filed an objection indicating that he

24 thinks that $1500 a month for administrative expense rent is

25 the more appropriate number.  He objects to Biros seeking rent

1  and real estate taxes and objects to the real estate taxes

2  being paid to her, as they are owed to the taxing authorities,

3  and objects to the pre-petition rent on the basis that the

4  State Court did not grant retroactive relief.

5        I will hear from the parties in just a minute, but I

6  do have some additional questions for the Trustee with respect

7  to this, and so -- well, let me go around the room first.

8  Anything further from Ms. Biros' team with respect to this

9  motion?

10       MR. BERNSTEIN:  The only thing I'd point out and I

11  don't know where the Court is inclined to go, at this point,

12  Mr. Snyder is not a creditor and on his own I don't think would

13  have standing to object or --

14       THE COURT:  I think that's correct, but that's just

15  an order I issued today, so I think for the purposes of today,

16  I'll still allow him to be heard with the expectation of I've

17  ruled that he is not a creditor any further at this point.

18       MR. BERNSTEIN:  Thank you.  That's all, Your Honor.

19       THE COURT:  All right.  So, anything further, Mr.

20  Snyder?  I'm going to come back after I hear from the Trustee,

21  but any preliminary comments?

22       MR. SNYDER:  Just preliminarily, the State Court, you

23  know, kind of looked at it as if we owed this -- the State

24  Court looked at is as, you know, part of the basis of their

25  judgment, was to say that we owed the taxes, so in lieu of

1  taxes, they gave them the property, so they get the property,

2  and now they're going to come back and try to get the money for

3  the taxes.  So, that was one of my -- I just don't think the --

4  the settlement, I think it lacks good faith and it's not a good

5  business decision for that reason and several others --

6           THE COURT:  Okay.  And --

7           MR. SNYDER:  -- others.

8           THE COURT:  -- Mr. Lacher, anything else from you

9  preliminarily?

10          MR. LACHER:  Yes, Your Honor.  I would just say that

11  there is a claims process under the bankruptcy code.  Parties

12  in interest have an opportunity to object.  There's no real

13  deadline on that in the Chapter 7 case.  Obviously, if Your

14  Honor wants these objections filed, you can order it and we

15  would most certainly obey, but to be bound to have our right to

16  object taken away because the Trustee and Ms. Biros agree to

17  the treatment of the claims vis-a-vis the Trustee, I think,

18  would be improper.

19          So, I would say at the very least we should be given

20  an opportunity to object.  But, again, as set forth in my

21  response, I think that's pretty wasteful and maybe needlessly

22  costly and time consuming if the avoidance action is going to

23  make all these claims subject to change, so I would just put

24  that --

25          THE COURT:  Okay, but why wasn't there an objection

1  raised prior to this?  I mean, these claims have been out there

2  for a while.  It looks like Ms. Biros filed her claims back in

3  August and, you know, I've now looking to conclude the estate.

4  I've had the Trustee liquidate some of the proceeds or some of

5  the assets into proceeds.  You've got your adversary claim.  I

6  mean, this is the time to quantify claims, so I don't know why

7  it's incumbent upon the Court to actually set a deadline for

8  claims objections at this point.  The creditors were free to

9  file objections at any point.

10       MR. LACHER:  Well, I agree, Your Honor, but -- and I

11  do agree.  But, I would also say that we're not passed a

12  deadline to file objections.  You know, and again, Ms. Biros

13  just filed her claim to Ms. Snyder's and Mr. Snyder's

14  objection.  Those claims sat there for a long time, as well.

15  In this case, you have an avoidance action intervening.  It can

16  really change the validity or mootness of those claims.  That

17  said, if Your Honor wants objections, we'll absolutely file

18  them right away.

19       THE COURT:  Well, I'm just saying.  I mean, the

20  motion to compromise was filed -- when was this filed?

21       MR. BERNSTEIN:  March 1st, Your Honor.

22       THE COURT:  March 1st.  So, we're a month in.

23  There's been no claim objection.  This was an effort to

24  compromise the claim.  I'm thinking if there was a time to

25  object to the claim, it's now or never, and so I'm not too

1  receptive to parties that want to sit on their rights and then

2  claim somehow that there's a need for a further delay when the

3  issue has been teed up.  The Trustee has had a discussion with

4  Biros about compromising the claims.  The Trustee obviously

5  must have had some reason to object in his own right to some of

6  the claims and that's why the parties have come forward with a

7  compromise to resolve their dispute.  So, this is the time to

8  do it.  All right, well, let me turn to the Trustee.

9  Relatedly, Mr. Slone, is it correct for me to understand that

10  you've investigated these claims and you've looked into them?

11       MR. SLONE:  I have, Your Honor.  Before we get too

12  far, the claim for the real estate taxes had to be paid

13  directly to the Tax Claim Bureau of Westmoreland County.  I

14  think that was part of the agreement.  It doesn't have to go to

15  Mrs. Biros.  It can be paid there.  So, I'm holding a little

16  over $70,000 in my account.  If the administrative claim is

17  between 15 and $18,000 and the tax claim is $27,000, that's

18  over $40,000 right there.  I have a lot of time in this case.

19  My bookkeeper pointed out I have 155 hours already in the case.

20  Even if half of that is legal time we're eating up most of the

21  $70,000 with administrative costs in the tax claims, Your

22  Honor.  We're fighting over -- we'd be fighting over just a

23  little bit of money on unsecureds at this point.  I don't think

24  we're going to get too many -- too much money left for the

25  unsecured creditors, Your Honor.

1          THE COURT:  Well, that's kind of my thought, as well,

2  but you've investigated the claims, you've looked at the

3  assertions that Ms. Biros has made in terms of what she's

4  alleging in each one of these components that you're seeking to

5  compromise?

6          MR. SLONE:  I am, Your Honor.  Rather than me file

7  objections in all four claims, I thought this was the best way

8  to handle this.

9          THE COURT:  All right, and there's a reference to

10  this appraisal report or the estimate of the fair rental value

11  and the valuation of the property.  Have you seen those

12  reports?

13          MR. SLONE:  I got the -- not the entire reports.  I

14  got the summary from Mr. Lindsay and Mr. Bernstein when we were

15  trying to put this thing together, Your Honor.  I disregarded

16  most of it.  I didn't feel that it was worth anywhere near

17  $7,000 a month for rent.  I thought 2,000 was more of a figure

18  that I would be more comfortable with, Your Honor.

19          THE COURT:  All right.  And, what -- have you run

20  down the issue on the garbage fire insurance?

21          MR. SLONE:  I have not, Your Honor.  Although, the U

22  LOCK would be, under the law, would be responsible even if it

23  wasn't there -- or could be responsible.  And, again, it would

24  only be if an unsecured creditor for the amount of money we are

25  dealing with would be de minimis.

1              THE COURT:  All right.  All right, let me go around

2    the room one more time.  Then, based on where we are at this

3    point, anything further from Christine Biros?

4              MR. BERNSTEIN:  I'm just going to point out with

5    respect to what the Trustee said, there were more than one

6    environmental problem on the property.  The truck fire was only

7    the most recent one.  And, the compromise amount obviously is

8    significantly less than the fair rental value under this

9    broker's report, this real estate appraisal report that we

10   received.  We'd certainly make that available if necessary.

11   There's no attempt to hide it.  There was no --

12             MR. SLONE:  Your Honor, may I ask Mr. Bernstein to

13   speak into the microphone?

14             THE COURT:  Okay.

15             MR. BERNSTEIN:  I'm sorry.

16             THE COURT:  Is --

17             MR. BERNSTEIN:  I was just saying that there was more

18   than one environmental problem.  It wasn't just the truck.

19   And, with respect to the $7,000 opinion by the appraiser, the

20   comprise is -- the compromise agreement with the Trustee is for

21   significantly less than that.  And, I believe we may have

22   provided the summary pages to Mr. Slone.  It is a bonafide

23   report.  There is no attempt to hide it and we'll produce it as

24   requested.

25             THE COURT:  Okay, and you will produce that?  All

1  right.  All right, anything further, Mr. Snyder?

2          MR. SNYDER:  Yeah.  In response to that, they said

3  there was no attempt to hide it.  In fact, the person who did

4  the environmental report did in fact hide.  He parked his car

5  down the street, walked over, and did what he did.  There were

6  no other environmental issues.  The DEP had came out several

7  times from Harrisburg and said there was no issue and nothing

8  the buyers were required to remediate, so that's a fabricated

9  number, in my opinion.

10          Also, there weren't other environmental issues that

11  were new to the property.  When the property was acquired,

12  there were some tires there.  Some junk vehicles and things

13  like that.  In January, myself and a couple people cleaned up

14  everything that really wasn't our responsibility to clean up,

15  and I believe the purchaser, or my sister purchasing the

16  assets, cleaned the property even further, so everything was

17  cleaned up, which really they weren't entitled to that cleanup.

18  So, I don't see where there would be one dollar required to

19  clean up anything let alone a couple hundred thousand, so I

20  don't think that's a good compromise.

21          THE COURT:  Well, I mean, do you have anything to

22  back that up in terms of additional evidence or an

23  environmental expert that would counter the American

24  Geosciences report?

25          MR. SNYDER:  As far as the garbage truck fire?

 1          THE COURT:  Well, just the environmental claim

 2    generally?

 3          MR. SNYDER:  Well, I don't have -- I don't have

 4    anything to refute that, other than the fact that they don't

 5    have a report from the DEP saying it's required to clean up,

 6    because they did investigate it and came from Harrisburg

 7    several times and I haven't seen anything in any of the filings

 8    that said there was environmental damage because of this truck

 9    and anything had to be cleaned up.  In fact, she told me in

10    person that nothing needed to be cleaned up.

11          THE COURT:  Well, is there a reason that the DEP has

12    to be a prerequisite to having an allowed environmental claim?

13          MR. SNYDER:  Pardon me?

14          THE COURT:  Is there somewhere that you can point to

15    that a determination of the DEP is a prerequisite to having an

16    environmental claim?

17          MR. SNYDER:  Well, just that they are saying there's

18    multiple environmental issues, and I'm just saying that it's

19    not really substantiated.  And, then in the report, I don't

20    know if it was -- I can't remember when this was done.  This

21    was -- they had a report from an environmental company that

22    said cars need to be removed, tires need to be removed.  There

23    was a lot of issues and they've all been addressed and resolved

24    that I'm aware of.

25          THE COURT:  Okay.  Thank you.  Mr. Lacher, anything

1 further from you?

2          MR. LACHER:  Yes, thank you, Your Honor.  Again, I

3 would point out, there was not an attempt to sit on our rights

4 here.  I did raise some substantive objections in my response,

5 I pointed out to the Court but I thought it might be wasteful

6 in light of the avoidance action to do these things now.  I

7 will point out that neither U LOCK, nor Biros, nor anyone else,

8 has gone after the garbage truck owner that caused the problem,

9 and I think there's grounds to object if the Court thinks it's

10 necessary to object at this point, and I would ask that they be

11 allowed to do so.

12          THE COURT:  All right.  Thank you.  So, I do have one

13 additional question for Ms. Biros and that is, so the

14 contention is that the pre-petition rent is a double recovery.

15 Why is that not accurate, because I mean it's unclear to me

16 that the State Court order was meant to be entirely retroactive

17 and it would seem to me that if the State Court was issuing an

18 order saying, "well, because you lent the money, it would be

19 unjust enrichment for U LOCK to have title with no ability to

20 pay back that money, a constructive trust was imposed."  But,

21 why does that entitle Ms. Biros to pre-petition rent on top of

22 that?

23          MR. BERNSTEIN:  So, obviously, Your Honor, the

24 initial position is that the purpose of this compromise is to

25 avoid litigating these issues which may be in dispute.  If Ms.

1  Biros was the beneficial owner of this property since 2015 and

2  did not have the use of the property, we believe that she has a

3  claim against the party who held the property for the fair

4  rental value of that property.  The so-called unjust

5  enrichment, and I know we're using unjust enrichment twice in

6  this situation, but that's advisedly.

7        So, her property, she had a right to this property.

8  She had the equity interest in this property that was worth

9  something, and it was kept from her.  She couldn't use it.

10 She's entitled to some -- compensation for that.  And, even

11 though she has the property today, or as of the end of January,

12 she had that whole pre-petition period where she did not have

13 the property.

14        THE COURT:  Okay.  So, let me stop you there.  Where

15 in the State Court order, either Trial Court or Superior Court

16 does it reach back to 2015 or does it give her title

17 retroactively?  I mean, it just seemed that it imposed a

18 constructive trust, declared the 2015 deeds void ab initio, but

19 that doesn't necessarily equate to giving title to Ms. Biros as

20 of 2015.  At least that's my initial review.  So, if you want

21 to direct me somewhere else, I'm happy to do that, because,

22 again, she was deemed by the State Court to be a lender here

23 and the constructive trust was imposed as an equitable remedy,

24 so she normally would not be the titleholder, and so this was

25 extraordinary relief that was given, and so, as such, I need to

1   have an understanding of how she can reach back to 2015 for

2   that rent.

3          MR. BERNSTEIN:  I don't know that we have all of

4   those documents here, Your Honor.  And, Mr. Otto, who is more

5   conversant with this, is going to see if he can point to that.

6          THE COURT:  Okay.  Well, I know Mr. Snyder included

7   the copies of the State Court and Superior Court orders to his

8   responses, so that's one area where the copy is.

9          MR. BERNSTEIN:  Here -- look through there.  While

10  Mr. Otto is looking, Your Honor, just briefly in response to

11  what Mr. Lacher said.  Purpose of the compromise is to avoid

12  the fight.  The Court certainly has the power to allow the

13  claims, and allowing the claims ends the ability of other

14  parties to object.  Ms. Snyder, as the Court said, has been

15  here since the beginning.  Has -- these claims have been here

16  since almost the beginning of this case.  We were here three or

17  four months ago when the Court admonished both Ms. Snyder and

18  Ms. Biros to bring their actions and let's get this going.  If

19  you wanted us to bring the objections to the claims, to their

20  claims.  You wanted her to bring the avoidance action.  All of

21  that is now in play.  It simply doesn't make sense to us to

22  allow some further period for them to object, to have us

23  litigate these claims that we're trying to compromise.  Now,

24  that will change the whole deal with the Trustee.

25          THE COURT:  All right.  Well, let me tell you where

1  I'm at, at this point, while you search for that.  This is a

2  settlement and compromise, so I'm not looking for perfection

3  and I'm not looking for, you know, crossing every T and dotting

4  every I.  I do find that what's been proposed is the allowed

5  administrative expense for use and occupancy post petition wise

6  at $18,000, is reasonable under the circumstances.  It's not

7  far off from what the Court had originally estimated during the

8  sale process, and I acknowledged that that's a significant

9  change from the position that Ms. Biros was at several months

10  earlier.

11          As to the taxes, I don't know that there's

12  necessarily a dispute as to that from what I heard from Mr.

13  Snyder.  I mean, there's an acknowledgment that real estate

14  taxes are due and owing.  If it's due and owing from U LOCK,

15  and I don't think particularly that there's an issue with that,

16  then that would be paid from the U LOCK estate.  If it's not

17  paid from the U LOCK estate, Ms. Biros, as the current title

18  holder, is alleging that she's entitled to reimbursement from

19  the estate for that.  So, I do find that that aspect of the

20  compromise is not a really compromise.  It's just commonsense

21  at this point.

22          As to Claim Number 4 and the environmental claim.

23  It's $200,000.  I acknowledged that I have a report from

24  American Geosciences in 2020 that was attached suggesting that

25  the remediation was about $414,000.  Ms. Biros has also alleged

1  that there's estimates between 125 to $314,000 for the cleanup

2  work.  And, this is a significant compromise down to $200,000,

3  so Biros asserts that that's the middle range of the

4  remediation estimates.

5        As I noted during the exchange with the parties, I

6  don't have anything from anybody else challenging those numbers

7  from any degree of certainty or expertise.  It's just

8  conjecture.  And, at this point, I just need more than just

9  bare lay opinion.  I need some sort of data points to look at

10 and I've got the Trustee relaying to me that he has

11 investigated these things.  He has taken the time to drill down

12 and represents the $200,000 allowance for that claim is

13 reasonable.

14        Where I do have the problem and where I think the

15 Snyders have made a compelling argument to me, is with respect

16 to this general unsecured claim for their pre-petition use and

17 occupancy of the premises.  $7,000 a month for 81 months.  In

18 my review, I'm not convinced that the State Court has

19 retroactively granted her relief for that period and it would

20 seem to be a double recovery, and so I'm not inclined to allow

21 or accept that portion of the settlement.  If that blows things

22 up, then be that as it may, but I'm inclined to otherwise rule

23 in that direction.  I do find that the Martin factors otherwise

24 are satisfied.  I think there's a probability of success on the

25 merits, weighs to the fact that there is a likelihood that Ms.

1  Biros can prevail on her claims as showing entitlement to

2  post-petition rent and reimbursement of taxes for the reasons

3  I've stated, as well as proof that environmental remediation

4  costs exist, and those costs existed before the garbage truck

5  fire and are separate and distinct from that whole fiasco.

6          The difficulty of collection, you know, is one of the

7  estate having limited assets and, furthermore, there is a

8  complexity of the matter that would require unnecessary time

9  and expense and delay to go through and litigate these matters.

10 One thing that's been apparent to me throughout this case and

11 I've remarked on it on several occasions, is the parties have

12 no problems litigating minute or small dollar amount issues to

13 the hilt in a way that is totally out of proportion of what the

14 value of the claim is, so that's to me probably the most

15 compelling thing here is that this would preserve what little

16 is left in the estate for the distribution of creditors.  And,

17 so from that standpoint, it's in the paramount interest of

18 creditors to allow the estate to proceed to quantify these

19 claims and get closer to a distribution that the Chapter 7

20 Trustee can make to creditors.

21         Having said all that, I am mindful of one thing that

22 Mr. Lacher has said, which is he's got his pending avoidance

23 action out there and I think that could change the perspective

24 here.  So, as a result, I'm prepared, based on what I've said

25 on the record, I'll give Ms. Biros' team one last chance to

1  respond on this pre-petition rent thing, but that the allowance

2  is on an interim basis, but the payment of any claim would be

3  held in abeyance pending the conclusion of the avoidance

4  action.  And, from that standpoint, that would allow me to

5  ensure that there is no money going out the door prematurely

6  until we have a full handle on the what the estate is and what

7  the respective rights of the parties are.

8       Having said that, and I understand that this is not

9  teed up for today, but if nothing, I always try to be candid

10  with you all so you know exactly where I sit on these things.

11  I've had a chance to look at the avoidance action and, right

12  now, I have to tell you, I'm not real impressed with it.  You

13  know, I question whether it could be dismissed as implausible

14  under <u>Twombly</u> and, specifically, the complaint seems to be more

15  mechanical and simply assumes that the constructive trust is an

16  avoidable transfer without giving any more depth or background

17  to that.  So, again, that's not a final determination.  That's

18  just an initial off-the-cuff reaction of what I've seen on the

19  pleadings, but it does color, in an extent, to me, the

20  scheduling of where we are and the need to move forward and

21  what the expectations are for what I think the time frames need

22  to be to bring this matter to a close.  If I thought there was

23  more there, then I think we would be inclined to have a more

24  robust time frame for this to occur.  It's not to say we're not

25  going to do that here.  It's just that I'm starting to question

1  whether or not this is something that can be resolved on a Rule

2  12 stage at this point, but we'll see what the coming weeks are

3  at this point.

4         Again, just food for thought for the parties so that

5  there are no surprises, and the parties can come into the

6  courtroom on the appropriate date adequately prepared to

7  address what I see as some concerns at this stage.  So with

8  that, let me come back, anything further on the pre-petition

9  rent?

10        MR. BERNSTEIN:  Yes, Your Honor, just a couple of

11  things addressing, maybe in reverse order, what the Court said.

12  If the Court -- we understand the concern about the avoidance

13  action might have some affect on payment of these claims and we

14  don't expect -- we don't expect payment now other than perhaps

15  the tax claim should be paid and we would be happy to work with

16  the Trustee.  The Trustee may want to file a claim on behalf of

17  the Tax Claim Bureau.  I believe the Trustee is entitled to do

18  that.  And, if that's allowed, because Ms. Biros isn't looking

19  for a duplicate claim, so we can -- we'd like to put that one

20  to bed.  We'd like to put the fight over Ms. Biros' claims to

21  bed now, even if payment is not made until ultimately later in

22  the case or at the end of the case.

23        With respect to the 2015 issue, I think the -- Mr.

24  Otto, who litigated that, can speak more to it, but in looking

25  at the August 2019 order, perhaps the particular section, I'm

1  sorry paragraph, is that, one, it says "plaintiff, Christine

2  Biros, is the equitable owner of the subject property."  It

3  does not indicate in that paragraph, that 2015, that it's

4  retroactive to them.  Even -- and I think Mr. Otto can explain

5  why that is and perhaps satisfy the Court that it is

6  retroactive.  Even if it isn't, it would be effective as of

7  that date, which is August of 2019, and if we count August of

8  2019 to the petition date, I think I count 45 months.  45

9  months at our asserted fair rental value of $7,000 a month is

10  more than the 162,000 that we've compromised.  45 months, even

11  at the $2,000 that we've been using in the admin claim is

12  $90,000, and I would need a few seconds to speak with Ms. Biros

13  about whether that would be a number that would satisfy her if

14  that would eliminate that retroactivity issue from the Court's

15  concerns.  If I may have just a --

16        THE COURT:  Well, yes, I mean, my initial reaction to

17  that though is that even though that was the decision in 2019,

18  that the deeds were still not delivered until later and, you

19  know, it's -- I don't want to get back into asking the State

20  Court to have to clarify that order because it's just not time

21  intensive.  And the other aspect of this, which I think is

22  another point that's been raised by several parties is, at the

23  end of the day, is this going to really matter when the Trustee

24  is holding no more than $70,000 plus whatever could be salvaged

25  from the avoidance claim?  I've already told you that I've got

1  some concerns about the avoidance claims, so if I go with the

2  supposition that there's only $70,000, arguing over an

3  additional hundred and --

4          MR. BERNSTEIN:  Sixty-two.

5          THE COURT:  -- sixty-two thousand when I've already

6  said I'm going to allow the 200,000 plus the 27,000 for taxes

7  and the 18,000 for the administrative claim, I just think it's

8  a fool's errand.

9          MR. BERNSTEIN:  Your Honor, you're right, and if the

10 Shanni Snyder claim was disallowed also and Ms. Biros knew that

11 her $200,000 general unsecured claim was the only one, then it

12 would be -- that would be an easy resolution.  We're still in a

13 little bit of shifting sands, but we know there's very little,

14 and I'd love to figure out a way so that this compromise could

15 resolve all of those things.  That's what we were trying to do

16 with the Trustee.  Perhaps Mr. Otto can just give you a couple

17 of minutes on the State Court, that background to see if --

18          THE COURT:  All right.  I'll allow it very briefly.

19          MR. BERNSTEIN:  Thank you.

20          MR. OTTO:  Your Honor, the Trial Court actually

21 issued three post-trial orders.  The first was the judgment and

22 that was on the August 2019 date.  The second was an order in

23 response to post-trial motions.  The third order was issued in

24 mid-2022 in response to appeals by U LOCK, Shanni Snyder, and

25 Mark Mycka, when he issued a 1925 order.  The appeals from U

1  LOCK, Mark Mycka, and Shanni Snyder, were all filed post

2  petition, and he was -- the judge was required by Superior

3  Court to issue a 1925 opinion, which he did.  And, in the

4  course of those three orders -- and I apologize, we don't have

5  those three orders in front of us, we only have the Trial Court

6  or the trial decision.  In at least one of those, the judge

7  specifically states that she had equitable title dating back to

8  2015.

9          I would also point out something that Mr. Bernstein

10 probably wasn't thinking about.  The way this trial went, there

11 were deeds that were issued by the estates in May of 2019.

12 After the final decision by the Pennsylvania Supreme Court,

13 then we recorded the deeds that we received from the Trial

14 Court.  Those deeds were dated in May of 2019, which in essence

15 predate the Trial Court's trial judgment.  So, if the question

16 is how far back do we go, theoretically, we could go back to

17 legal title in May of 2019.

18          THE COURT:  Okay.

19          MR. OTTO:  But, I -- if Your Honor wants or asks for,

20 I would be happy to provide the portions of the Trial Court's

21 orders that state that she had equitable title dating back to

22 2015.  I do agree with Mr. Bernstein that you get to the point

23 where it doesn't make a big difference because there's not

24 enough money to cover everything anyway.

25          THE COURT:  Yes.

1          MR. BERNSTEIN:  Let me see if I can help here, Judge.

2          THE COURT:  Well, I mean, yes, all right, if you have

3   a suggestion.

4          MR. BERNSTEIN:  I do have a suggestion.  Using August

5   of 2019 when the order occurred, or using -- when was the deed

6   dated."

7          MR. OTTO:  May.

8          MR. BERNSTEIN:  -- May when the deeds were dated, we

9   would offer the Trustee a unilateral amendment to our

10  settlement to reduce Claim 3 to $90,000.  We think that's fair.

11  The cost of litigating this, it's not worth it to anybody.  We

12  really, in this settlement, tried to protect the Trustee so

13  that at this point the reasonable expectation is the Trustee is

14  going to get paid for what he did and what his counsel did and

15  we're not in his pocket.  The more we litigate this, the more

16  that is not clear.  You know, so I'll bid against myself twice.

17  If the Court were to allow the administrative claim, allow the

18  tax payment either to us or to the Tax Claim Bureau, allow

19  Claim 4 of the general unsecured claim, and allow the Claim 3

20  in any amount from 0 to $162,000, we would be satisfied.

21         THE COURT:  I'm sorry.  Say that last part again?

22         MR. BERNSTEIN:  The last part is, we'll give up on

23  Claim 3 --

24         THE COURT:  Okay.

25         MR. BERNSTEIN:  -- if we can't convince the Court

1  that there is some value to that.  It's just not worth it to

2  stand here and argue over it.

3          THE COURT:  All right.  Thank you.  Well, that's

4  where I was ending up on this, is that I am prepared to enter

5  an interim order approving the settlement on the grounds that I

6  said, which is to allow the administrative expense, the tax

7  claim, and the environmental claim, to preclude the

8  pre-petition rent claim on the basis that I've said, and

9  payment would be deferred pending the resolution of the

10  avoidance action and we'll take it back up again when that's

11  concluded, at which time I would enter a final order

12  authorizing the settlement at that point, because I just don't

13  see a utility in having a full blown evidentiary hearing on

14  this.  That's the whole point of a settlement is to avoid

15  unnecessary litigation when the costs exceed the benefits.

16          So having said all of that, I'm going to issue an

17  order to that effect and then we'll take up the rest of it once

18  the --

19          MR. BERNSTEIN:  Your Honor, if I may just ask for

20  clarification to --

21          THE COURT:  -- avoidance action is resolved, with the

22  exception of the tax claim though.  I mean, if the Trustee --

23          MR. BERNSTEIN:  If I heard correctly, the allowance

24  will not be final until the avoidance action is resolved?

25          THE COURT:  What I will do is, I will withhold the

 1  payments and the distributions until the avoidance action is

 2  resolved.

 3          MR. BERNSTEIN:  That's fine.  I just don't want to

 4  have to come back and fight over the claims again.  Thank you.

 5          THE COURT:  But --

 6          MR. LACHER:  Well, Your Honor -- I'm sorry.

 7          THE COURT:  Well, let me make this clear though.  I'm

 8  saying the distributions would be withheld, with the exception

 9  that if the Trustee wishes to proceed with paying the tax claim

10  to the Tax Claim Bureau he is free to do that because that's

11  something that would be independent of the settlement here.

12  Mr. Lacher?

13          MR. LACHER:  Yes, Your Honor.  The one I'm focused on

14  is the environmental claim and this kind of mirrors Mr.

15  Bernstein's question for clarification.  If we were successful

16  in the avoidance action, am I to understand Ms. Biros would

17  have an allowed claim from the environmental clean up even

18  though she's not the owner of the property?

19          THE COURT:  Well, she would not receive a

20  distribution on that claim if she is not the owner of that

21  property.  That's how I would rectify that.

22          MR. LACHER:  I appreciate that, Your Honor, and

23  that's why, again, I wanted to know the effect of the

24  allowance, let's say.

25          THE COURT:  Yes.

1            MR. LACHER:  Thank you, Your Honor.

2            THE COURT:  Okay.  All right, any other

3    clarifications or questions that we have with respect to that?

4            MR. BERNSTEIN:  I'm sorry, Your Honor, I have to do

5    this, because the landscape just changed again.  If the

6    avoidance action is successful, that will put more money in the

7    estate.  If the unsecured claim of Ms. Biros is disallowed

8    because the avoidance action is successful, then she will have

9    given up her claim to the pre-petition rent argument as part of

10   the settlement and be left with nothing out of the unsecured

11   portion.  We're just trying to fix the rights now and if the

12   avoidance action is successful, she's likely -- she will have

13   lost a significant value.

14           THE COURT:  Well, no, I don't know.  I mean, if she

15   loses the avoidance action, that would deem that she is not the

16   owner of the property.  She would not be subject to the

17   environmental obligations at that point because she has no duty

18   to do that as not being the owner, so --

19           MR. BERNSTEIN:  We can't say that for sure.  She's a

20   -- if she's a potentially responsible person, party, now, we

21   don't know whether the environmental claim will follow her

22   because she was the owner of that property during the time that

23   it occurred.  She may have some liability and there's no --

24   there's nobody indemnifying her.  I know it creates a

25   complication, but that's part of why we did this, this way,

1  with the Trustee, because otherwise she can come out -- I know

2  that we don't expect her to lose the avoidance action, but

3  lightening strikes.  If she lost the avoidance action,

4  therefore, loses her environmental claim, doesn't get any

5  distribution as an unsecured creditor, but is a target of

6  somebody, perhaps the new owner of the property, Ms. Snyder,

7  who decides to go after people who were in control of the

8  property when the environmental situation happened.  It just

9  opens up a whole can of worms.

10       THE COURT:  All right.  Well, if that's the case,

11 then what I'm doing is, I'm just deferring any determination on

12 the settlement motion until after the avoidance action is

13 concluded because --

14       MR. BERNSTEIN:  I guess you have to do that, Judge.

15 I can't -- we're -- I'm sorry -- yeah, other than perhaps the

16 taxes, but the rest of it --

17       THE COURT:  Well, the taxes, but I mean, again, you

18 raise a point about her being in a chain of title as being a

19 responsible party for the environmental, but I'm still not

20 hearing how she would have any claim to pre-petition rent if

21 she was not the owner having lost the avoidance action.  But,

22 be that as it may, you know, this is starting to dilute the

23 efficacy of having a compromise, so --

24       MR. BERNSTEIN:  Yeah.

25       THE COURT:  -- at this stage, I'm inclined to just

1  defer it until after the avoidance action and then I'll take it

2  up at that point and see what the landscape is at that stage.

3  But I think that, as I indicated, my views on the

4  administrative expense claim are such that I think that would

5  be a satisfactory resolution of the administrative expense

6  motion, but if we're not going to approve that today then I'm

7  going to just --

8          MR. BERNSTEIN:  Your Honor, one moment please.

9  Sorry.

10                         (Pause)

11          MR. BERNSTEIN:  What we're discussing, Your Honor, is

12  whether it's worth upsetting this settlement and then allowing

13  the other parties to file objections to the claims or taking

14  the beating that we're taking today and having you allow the

15  claims, which will prevent another set of objections to the

16  claims in the litigation that would follow there.  I think

17  we'll take what the Court offered before I raised the

18  environmental responsibility issue.  I just think that that is

19  -- that we're better off taking that and eliminating the

20  ongoing fight objection from the Snyders as to these claims and

21  beating them to death.

22          THE COURT:  Well, again, I think if the avoidance

23  action is successful, it changes the landscape of rights.  It

24  changes Ms. Biros from being an owner, back to being a lender,

25  and what that entails.  You know, you've got potentially

1  another $300,000 worth of claims that she would have at that

2  point so, but, again, I had viewed this as a way of trying to

3  narrow the issues, but if it's going to create more, then I'm

4  just going to defer it and then we'll see what happens with the

5  avoidance action and make that determination at that time.

6       MR. BERNSTEIN:  Is the Court willing to determine

7  that the process to date and the opportunity to object to this

8  settlement was a sufficient time for the other parties in the

9  case to --

10      THE COURT:  I definitely think that the settlement

11 was appropriately noticed and there was adequate time to be

12 heard with respect to the merits of the settlement.

13      MR. BERNSTEIN:  However Your Honor wants to handle it

14 at this point.  I will just add that the avoidance action being

15 successful does not automatically undo Ms. Biros' rights that

16 occurred during the time that she was an owner or a

17 constructive owner, just as if Ms. Biros had received a

18 monetary transfer, if it -- if that monetary transfer or that

19 preference were avoided, but she had used that money to create

20 some investment that she made a million dollars on, the

21 estate's claim for the avoidance would not be the profits on

22 the avoidance, it would just be the value at the time that it

23 was transferred.  So, she's still going to have her claims as a

24 constructive owner and as a real owner, regardless of whether

25 the transfer was avoided.  She was an owner during the time she

1  was an owner.  So, I just don't think it's automatic that if

2  they win the avoidance action that her claims disappear.  With

3  that, I'll sit down and Your Honor decide --

4          THE COURT:  Well, I didn't say they'd disappear.  I

5  just -- I think they get recharacterized into different types

6  of claims, but --

7          MR. BERNSTEIN:  Perhaps.

8          THE COURT:  You know, all right.  And, since we've

9  had a long exchange there, anything further, Mr. Lacher, that

10  you wanted to add at this point?

11          MR. LACHER:  No thank you, Your Honor.

12          THE COURT:  George?

13          MR. SNYDER:  Yes.  If I can clarify two things.  On

14  the environmental claim, they had mentioned something about the

15  things that had happened while Christine was the owner.  For

16  clarification, the only thing environmental would have been

17  that fire truck -- or garbage truck that caught on fire.  All

18  the other stuff, the property was purchased in a condition with

19  the tires, and cars, and different things.  None of that was U

20  LOCK bringing any environmental issues to the table.  So, I

21  wanted to clarify that.

22          THE COURT:  Okay.

23          MR. SNYDER:  And, the thing with the rent, I had just

24  wanted to mention.  I spoke with Mr. Slone and officially they

25  were given -- the Biros were given sole control, possession of

45

1  the property in October, because I was -- because they put a

2  cable up. Locked me out, the tenants out.  In fact, there were

3  tenants that they knew.  They met them before, exchanged

4  numbers and information and called the police on them, and I

5  think Mr. Otto actually went to the police station the next day

6  to try to get them arrested.  So, but prior to that, and I

7  believe early on, you know, it was like the Biros took over

8  full trustee powers from Mr. Slone and he appeared to be in the

9  backseat.  And, when I spoke to Mr. Slone about it, he had said

10 that he was threatened by them, so I'm not sure --

11        MR. BERNSTEIN:  Your Honor, I'll object to that,

12 hearsay.

13        MR. SNYDER:  Here, he could maybe speak to that.

14        THE COURT:  All right.  Well, it's not relevant to

15 the issue that I'm hearing, other then that you're contending

16 that Ms. Biros had full control of the property, which I

17 understand you've made before, and I have discussed that in my

18 opinion before that it's not as if she was deprived of all

19 access to the property during the time period.  But, what this

20 comes down to is, what is a reasonable value of what the

21 estate's interest was for having possession of the property,

22 and bottom line is, irrespective of whether Ms. Biros had

23 control of 80 percent of the property or none of the property,

24 the fact of the matter is, the estate had assets on the

25 property at that time.  The use of the property was beneficial

46

1  to the estate and, as such, Ms. Biros, as the title holder, is

2  entitled to some sort of compensation for the reasonable value,

3  and you know we've discussed that ad nauseam at the prior

4  hearings.  But, you know, again, I come back to where we are

5  now, $2,000 a month.  You, yourself, said 1500 was reasonable.

6  This is just slightly above that, so I'm not really quibbling

7  with that amount at this stage.

8            MR. SNYDER:  Okay, and that -- that's the part I was

9  getting at.  That's what I was discussing with Mr. Slone,

10  because I said about the 1500, which could have been a

11  reasonable amount, but I was telling him, that wasn't even

12  necessarily fair because I didn't have access to doing

13  anything.  You couldn't do anything.  And, Mr. Slone seemed to,

14  you know, he said I had a good point.  But, yeah, I'm not

15  arguing about --

16            THE COURT:  Okay.

17            MR. SNYDER:  -- you know, the particulars there,

18  other than they weren't really entitled to anywhere near this.

19            THE COURT:  Okay.  Thank you.

20            MR. SNYDER:  Thank you.

21            THE COURT:  All right.  Well, I'm going to take this

22  under advisement and consider whether what kind of order I do,

23  if I do an order with respect to the settlement motion, but

24  we've had an extensive discussion on this so you know where the

25  Court has preliminary comments has been and what my inclination

1  was initially.  I'll ponder some more what was discussed and

2  see if that changes my thought process at all.

3          Relatedly, is the Christine Biros' amended motion for

4  allowance of payment of the administrative expense.  I did have

5  the objections from George Snyder and I think we've covered

6  that, so to the extent that I approve the settlement, that will

7  render the administrative claim motion moot.  To the extent

8  that I deny or defer approval of the settlement, that will keep

9  that objection live and I'll issue a scheduling order on that

10 further, to the extent that that remains an active issue.

11          MR. BERNSTEIN:  On that scheduling, Your Honor, we're

12 happy to have it ride along if the Court decides to defer the

13 settlement.  We're happy to have that admin motion ride along

14 without it.

15          THE COURT:  That's what I would intend to do, so

16 thank you.

17          MR. BERNSTEIN:  Thank you.

18          THE COURT:  Okay.  So, then the next item is the

19 order to show cause that was issued on January 17, 2023.  This

20 relates to the administrative expenses.  At the last hearing, I

21 explained in detail why I found the filing of Christine Biros'

22 motion for allowance of the administrative expense claim,

23 pursuant to 11 U.S.C., Section 503(b)(1), was in violation of

24 Rule 9011(b)(1) through (3) and why I found the response to be

25 unpersuasive.

48

1        Most notably, the response offered no defense to the

2    assertion of the $144,000 administrative expense, other than

3    suggesting that Ms. Biros could have proven its reasonableness

4    had she been afforded an opportunity to submit a detailed

5    record.  The Court continued the order to show cause to allow

6    Ms. Biros and Attorney Bernstein to -- time to consider the

7    Court's comments and potentially seek reconsideration of the

8    Court's memorandum.  I note that no motion for reconsideration

9    was filed, nor was there any further response.  And, as noted,

10   Ms. Biros did file her amended motion for administrative

11   expense seeking $63,000, which was less than half of the

12   original request, and then she then proposed to settle the

13   claim for $18,000, which is roughly 12.5 percent of the

14   original request.  So, as indicated in the Court's order dated

15   January 30, 2023, at Docket Number 314, this was their last

16   change to appear in opposition to the order to show case.  So,

17   anything further that the parties wish to raise or address at

18   this point on that account?

19        MR. BERNSTEIN:  The Court can resolve this obviously

20   however it wants to.

21        THE COURT:  Okay.

22        MR. BERNSTEIN:  I think we've shown why what was

23   requested in the original admin motion was not completely

24   unreasonable, or impossible, or so out of line.  We've

25   attempted to provide the estate with a way to resolve the admin

49

1  claim at a reasonable number.  We have heard and taken to heart

2  the Court's comments about the way it proceeded.  Although, and

3  the fact that we did not file a motion for reconsideration or a

4  further response, frankly, we thought the filing -- we thought

5  our choices included filing an amended motion and that it

6  wasn't necessary to file a new response or a motion for

7  reconsideration and that it was open.  And, we have -- we've

8  previously apologized to the Court for taking an approach which

9  the Court found unreasonable, and we did what we thought was an

10  appropriate thing to do for our client under the circumstances.

11         As I said at the last hearing on this, Ms. Biros, on

12  this matter, followed our recommendations and did not have an

13  independent decision to file the motion the way it was filed.

14  We told her what we thought the appropriate thing to do is.

15  So, to the extent there is a sanction to be applied, it should

16  be us and not her.  And, frankly, we think that we've suffered

17  as a result of being in a position to receive that kind of

18  order from the Court and I think that's all I have to say, Your

19  Honor.

20         THE COURT:  Okay.

21         MR. BERNSTEIN:  Thank you.

22         THE COURT:  So, I mean, what I want to address though

23  is there's no effort at this point to establish any further

24  record, or offer anything else to suggest the reasonableness of

25  the $144,000?

 1          MR. BERNSTEIN:  Other than the assertions in our

 2     amended motion that explain the various values and methods of

 3     computation, I have nothing -- nothing further to add today.

 4          THE COURT:  Okay.  Thank you.  All right, well, I'm

 5     not finding anything that dissuades me from the original

 6     finding that there was a Rule 9011 issue with respect to the

 7     original motion and that the $144,000 was unreasonable.

 8     Certainly, appreciate the efforts to try to resolve this

 9     through the amended motion.  I thought that was certainly well

10     crafted and well thought out and it doesn't go unnoticed from

11     the Court, the time and effort that went into that.  But, it

12     still leaves me with the factor that the original claim of

13     $144,000 was settled for 12.5 percent of that, which seems to

14     indicate again to me that the original amount was patently

15     unreasonably.

16          In terms of where we go from here, I am considerate

17     of the fact that Mr. Bernstein has indicated that Ms. Biros

18     followed the advice of counsel and, as a result, with taking

19     that advice, she is not blame worthy at this point with respect

20     to sanctions.  And, with respect to counsel, I do find that

21     this is a first offense and that the prior memorandum opinion

22     is a sufficient admonishment with respect to where we are with

23     respect to this matter, so I will conclude it there with that.

24          MR. BERNSTEIN:  Thank you, Your Honor.

25          THE COURT:  Going forward, we have the order to show

51

1  cause that was issued with respect to the stay violations.  I

2  had just continued this as a placeholder in the event that

3  there was anything else that had any bearing on those motions.

4  They were submitted, but to the extent that there was

5  additional discussion that had an impact on the Court's

6  findings or conclusions, I wanted to have the option open.

7          I'm not hearing anything today that would suggest

8  that I need to add new considerations to the mix, but before I

9  do close the door on that, I open it up one last time to the

10  parties if there's anything else they wish to address on any

11  other matters here?

12          MR. BERNSTEIN:  Nothing further from Ms. Biros, Your

13  Honor.

14          THE COURT:  All right, thank you.  Mr. Snyder?

15          MR. SNYDER:  Nothing further, Your Honor.

16          THE COURT:  All right.  Mr. Lacher?

17          MR. LACHER:  Nothing further, Your Honor.  Thank you.

18          THE COURT:  All right, thank you.  All right.  Well,

19  then that concludes the matters that are presently set before

20  the Court at this time.  I will enter an order just to recap

21  sustaining the objection to the claim of George Snyder.  I will

22  issue a scheduling order on the claim of Shanni Snyder.  I will

23  consider what I do with respect to the 9019 motion, and if it's

24  granted, the application for administrative expenses at 344

25  will be denied as moot.  If it's continued, then that motion at

52

1  344 will be continued and heard at the same time, and I have

2  addressed the show cause orders in the latter two with respect

3  to the stay motions are under advisement with the other show

4  cause having been resolved on the record for the reasons stated

5  here today.  And, with that, we will call it a day.

6          MR. BERNSTEIN:  Thank you, Your --

7          THE COURT:  The Court will now stand adjourned and we

8  will close the record.  Thank you, everyone.

9          MR. BERNSTEIN:  Thank you, Your Honor.

10          UNIDENTIFIED ATTORNEY:  Thank you.

11          UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

12          UNIDENTIFIED ATTORNEY:  Thanks, Your Honor.

13                    * * * * *

14              **C E R T I F I C A T I O N**

15          I, WENDY ANTOSIEWICZ, court approved transcriber,

16  certify that the foregoing is a correct transcript from the

17  official electronic sound recording of the proceedings in the

18  above-entitled matter and to the best of my ability.

19

20  /s/ Wendy Antosiewicz

21  WENDY ANTOSIEIWICZ

22  J&J COURT TRANSCRIBERS, INC.    DATE:  April 24, 2023

23

24

25

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In Re: U LOCK INC.                                   Bankruptcy No.: 22-20823-GLT

            **Debtor,**

                                                     **Chapter 7**

_____

**SHANNI SNYDER, as assignee of Robert Slone,**
**Chapter 7 Trustee for U Lock Inc.,**

        **Plaintiff,**

**v.**                                               **Adv. Proc. No.:  23-2020-GLT**

**CHRISTINE BIROS, and the**
**BIROS IRREVOCABLE LIFE INSURANCE**
**TRUST,**

        **Defendants.**

### AMENDED ADVERSARY COMPLAINT

        AND NOW, comes Shanni Snyder, as assignee of Robert Slone, Chapter 7

Trustee for U Lock, Inc., by and through her undersigned counsel, and submits the within

Adversary Complaint, and in support thereof, states as follows:

### Parties

        1.      The Plaintiff is Shanni Snyder ("Snyder"), an adult individual with an address

of 14390 US Rt. 30, North Huntington, Pennsylvania, 15642.

        2.       Defendant Christine Biros ("Biros"), an adult individual with an address of

435 Millers Lane, Plum Boro, Pennsylvania, 15239.

        3.      Defendant Biros Irrevocable Life Insurance Trust ("Trust") is a trust with an

address of 3001 Jacks Run Road, White Oak, PA 15131.

        4.      Collectively Biros and the Trust will be referred to as "Defendants."

1

**Jurisdiction and Venue**

5.    On April 27, 2022, the Plaintiff filed an involuntary petition for relief under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") against U Lock, Inc., in the United States Bankruptcy Court for the Western District of Pennsylvania.  The Court ultimately granted the involuntary petition and entered the Order for Relief under Chapter 7 (Doc. No. 42).

6.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334.

7.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8.    This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (2)(A), (F), (H), (K), (N) and (O).

9.    The Plaintiff consents to the jurisdiction of this Honorable Court and the entry of a final order by the Court.

10.    The Plaintiff purchased these claims from the Chapter 7 Trustee pursuant to an Order of Court dated December 20, 2022 and, as such, sues in her capacity as assignee of the Trustee.

**Facts**

11.    The claims herein involve a property located at 14140 Route 30, North Huntingdon, Pennsylvania (the "Property").

12.    The Property is a commercial property that currently has storage units in place.

2

13.     During the Third Quarter of 2014, John Biros and Christine Biros (the "Biros Parties"), George Snyder and Kash Snyder (the "Snyder Parties"), as well as others, discussed forming an entity to purchase the Property.

14.     John Biros and George Snyder had maintained an extremely close friendship.  The Biros Parties and the Snyder Parties knew each other and conducted business since high school in the late 1980s.

15.     The Biros and Snyder Parties believed that the Property could be acquired at a favorable price and be further developed to substantially increase its value.

16.     Based on information and testimony from George and Kash Snyder, prior to the purchase, various conversations took place between the Biros family and the Snyder party relating to how to buy the property.

17.     The Property was owned by several Estates at the time U Lock sought to purchase it.

18.     In or around late November 2014, Erik Martin executed an agreement as "ERIK MARTIN, as incorporator for U Lock Inc." to purchase the property for $325,000. $20,000 was paid around that time as a deposit toward the purchase.  *See* **Exhibit 1**.

19.     A closing was set up, but U Lock did not show.  Henry Moore, one of the Seller Estates' co-administrators explained, "We originally had a -- a $20,000 deposit was made by the incorporator of U Lock. I believe it was Eric Martin. We had a closing set up at the Westmoreland County Bar Association. On the day of closing, Mr. DelCotto and I appeared. No one from U Lock appeared. So, we sat for there about an hour and then we left. At that point in time, I instructed Mr. Del Cotto [the other Estate administrator] that the deal must have fallen through. No one from U Lock bothered to tell us why they didn't

3

come. At that point Mr. DelCotto subsequently thereto got a hold of someone from U Lock. The only way the deal was resurrected would be I demanded another $10,000 deposit money. So twenty thousand became thirty thousand, and the settlement date was set again for July 16th [2015]." ***See Exhibit 2,  Excerpts from Transcript from Non -Jury , page 22.***[1]

20.    On July 15, 2015, the day before the new closing, the Snyder parties, with the knowledge of the Biros parties, had Samantha McKee use the Pennsylvania Secretary of State's PENNFile system to electronically file Articles of Incorporation for U Lock.

21.    On July 16, 2015, Biros acquired four Cashier's Checks totaling $309,213.30 to loan U Lock for the purchase of the Property. Christine Biros made the loan for her brother, John.  Ms. Biros explained:

> Q.  Ms. Biros, how did you wind up paying approximately $309,000 to the estate?
>
> A.  My brother asked me to do that. I did it for him.
>
> Q. Would you have loaned money to U Lock on your own?
>
> A. No.
>
> Q. Was it for an investment?
>
> A. Not for me, no.

***See Exhibit 2,  Excerpts from Transcript from Non -Jury, page 29***.

22.    Christine Biros subsequently testified, "Before going into the closing, I asked for some sort of guarantee that I would get my money paid back to me from them, being

---

[1] The quoted portions of the transcript omit extraneous materials, including objections.

4

U Lock, Snyder's, whoever. I wanted to make sure that I was getting paid back." ***See Exhibit 2, Page 30.***

23.     Kash Snyder testified that Ms. Biros and her brother dictated the terms and had him write it out:

> Q.  So you wrote this out?
>
> A. I took it -- I dictated -- I'm sorry. I took it from dictation. It was the three of us,  John, Christine and I in her vehicle. They handed me paper, dictated, and I wrote it and I signed it.
>
> Q. So it's not your language?
>
> A. Correct.
>
> Q. Who dictated it?
>
> A.  I can't recall. I would think it's mostly John, but it was probably --  it may have been the both of them. But I can't be sure.

***See Exhibit 2, Page 71.***

24.     The terms of the loan, executed by Kash Snyder, and dictated by the Biros Parties, stated, "This loan agreement between U Lock Inc. (borrower) A Pennsylvania corporation and Christine Biros (lendor) and/or guarantor collateralized from S&T Bank for the sum of $325,316.00.  The terms + conditions of the payment will be agreed upon on or before 8/16/15.  Lender will set terms if agreement is not settled by that date.  /s/ Kash Snyder, Director, U Lock Inc.  7/16/2015."  See **Exhibit 3.**

25.     At the time of the execution of the loan, U Lock was insolvent, had no bank account, no money, and relied substantially upon the Biros parties for its future.

26.     The Biros parties knew this.   They knew of George Snyder's personal situation, his financial condition, and the fact that the Snyder Parties were reliant on the Biros Parties to provide money for the property and to develop or service it.

27.     At the state court trial, George Snyder explained:

> A. I thought we were still in a partnership agreement. I still continued to meet with them several times a week. Every Wednesday -- sometimes John and I almost daily. We would get together and get lunch or go to the property or I would go see them at their bar. I would ask -- you know, they didn't want repaid. It was a partner. At one time Christine asked if I could repay it. I said I can get the money. I could give you your money back. She replies -- and I said so John wants out of the partnership? She said, no, you should be out of it. I said, well, if I buy you out or pay the amount, then he would no longer be a partner. She said, well, wait a minute. We might still be partners. Let me talk to John. They went back and forth for almost two years. That was the first demand. That second letter you put in was in 2017, was the first time they asked for a payment. So up until then, we were behaving like partners.

> Q. On the day of closing, where did the money come from?

> A. Christine loaned it to me.

> Q. And she had you sign the agreement?

> A. For U Lock.

*See Exhibit 2, Page 46.*

28.     Christine Biros also made it clear that it was a loan.   She explained:

> Q. And that's why you filed this lawsuit because you wanted to get paid back?

> A. Yes. But it says I will set the terms and agreement if not settled by that date. That was their agreement with me.

> Q. I understand that. You weren't paid back and you were dissatisfied with that and that's why you are in the courtroom today; correct?

> A. Correct. I prefer to have the cash. Do you have it?

> Q. So you treated it as a loan the entire time; is that correct?

> A. Yes.

> Q. And you went to a closing; is that correct?

6

A. Yes.

Q. And you supplied some funds at that closing; is that right?

A. Yes.

Q. And did you see the documents that were being exchanged at that closing?

A. No.

Q. You didn't see any of them?

A. I only saw my checks and that. I didn't see -- I saw Kash Snyder signing documents. That's all I saw.

Q. Were you familiar with why they were at a closing? Were they getting land? Is that what they were doing?

A. They were purchasing property.

Q. And you knew they were purchasing property?

A. Yes.

Q. And since Mr. Snyder was the one signing the papers, the property was going to Mr. Snyder you assumed? I assume you assumed that.

A. I didn't assume anything at that point. I didn't know who the property was going to.

Q. But you knew the property was not going to you? You didn't sign any papers that day in order for the property to go to you?

A.  That's correct.

***See Exhibit 2, Page 32-36***

29.    At the closing, Martin assigned the purchase agreement to Kash Snyder and directed the sellers to "execute all deeds to convey the subject property to U Lock Inc."  *See* **Exhibit 4**.

30.    The sellers issued a Settlement Statement to U Lock Inc.  *See* **Exhibit 5**.

31.     On July 17, 2015, the Pennsylvania Secretary of State sent a letter rejecting U Lock's articles of incorporation because of a problem with the docketing statement, not because of any issue with the Articles of Incorporation.  *See* **Exhibit 6**.

32.     When Biros was asked whether she had come to an agreement on the terms of her loan to U Lock before August 16th, 2015,  Biros stated, "No."  ***See Exhibit 2, Page 30.***

33.     On September 4, 2015, the Secretary of State accepted the Articles of Incorporation on behalf of U Lock Inc.

34.     Sometime in late 2015 or early 2016, John Biros provided U Lock with a GMC truck to use as a company vehicle.

35.     Furthermore, Ms. Biros infused additional money into U Lock.  She testified as follows:

Q. Did you advance any further sums to them?

A. Five thousand dollars.

Q. Why would you do that?

A. To pay the taxes is what I was told on the property."

***See Exhibit 2, Page 31.***

36.     On April 4, 2017, U Lock recorded *one* of *four* 2015 deeds with the Westmoreland County Recorder of Deeds.  U Lock paid the transfer tax associated with the recording of the Deed.

37.     On May 5, 2017, Christine Biros sent an unsigned letter to George to "document a loan" for the purchase of real estate.  Ms. Biros demanded an interest rate of nine percent, stating $60,939.85 is "to be added to the proceeds," conditioned on

8

George, Kash, and Erik Martin guaranteeing it, executing a note, mortgage, and assignment of leases and rents. Biros changed the face amount of the loan to $385,939 plus additional advances including her "legal fees" and any other charges she may incur. She stated that the loan would be at 9% interest, with monthly payments of "principal and interest" based on an "amortization of ten (10) years, with a balloon payment of the outstanding balance of the loan due on or before June 1, 2022."  *See* **Exhibit 8**.

38.     At the time of the demand setting the terms of the loan, the Biros parties were aware that U Lock had very little assets and revenue and no means to pay its creditors or operate functionally.

39.     In late September or early October 2017, members of the Biros family brought two mobile homes which they owned to the U Lock property and stored them there.  They did not pay U Lock for the storage for the trailers.

40.     In October 2017, Biros filed suit against U Lock Inc., "a Pennsylvania corporation," and the Estates before the Court of Common Pleas of Westmoreland County Pennsylvania.  *See* **Exhibit 9**.

41.     On February 13, 2018, deeds conveying the property to U Lock, Inc., were tendered and were recorded on or about March 1, 2018, with the Westmoreland County Recorder of Deeds, at instrument numbers 201803010006263, 201803010006264, 201803010006265, and 201803010006267.

42.     Immediately prior to trial on April 29, 2019, Christine Biros and the Estates announced a settlement where the Estates would be dropped from the case in exchange for $10,000 towards taxes on the property and placing blank deeds into the court registry.

43.     Specifically, the Estates offered, "At this time, all four estates are willing to issue an executor deed, a fiduciary deed, up through the date of the original closing July 16th, 2015, in the name of Christine Biros in an offer to implead them into the court so that whatever party prevails, the deeds are available for recordation after you render verdict." ***See Exhibit 2, Page 4.***

44.     However, Christine Biros objected to the backdating of the deeds.  Her counsel stated, "Your Honor, the only objection my client might have with that is not related to the motion that the estates have made, but specifically to the deeds, the date of the deeds. Since my client has had no possession or access to the property, the issue of back taxes and liability related to the property is at issue. Fundamentally, my client is not opposed to letting the estates out of the case provided they deliver the deeds with blank dates that the Court could then in its verdict establish." ***See Exhibit 2, Page 5***

45.     The Court then stated, "At this time, I am going to grant the motion. With regard to Denise Schur, Executrix of the Estate of Alex Schur; Henry L. Moore and Susan Stano, Co-Executors of the Estate of Nicholas Schur; Kathleen S. Walter, Executor of the Estate of Michael Schur; Cynthia Sarris, Administrator of the Estate of Ann Sarris are hereby granted relief and removed from the caption and out of the case with the requirement that deeds be impleaded and delivered to the Court no later than May the 13th of 2019 in such a fashion that their interest is removed, and the deeds will be made blank as to how they will be executed for the purposes of the parties by determination of the Court at the conclusion of said trial." ***See Exhibit 2, Page 8-9.***

46.     Despite the state court's admonishment that the deeds were not to be dated and were to be "made blank," the Estates delivered to the Court for escrow four deeds

with four different dates on them. The deed subsequently recorded at 2022012500003084 is dated May 9, 2019. The deed subsequently recorded at 202201250003085 is dated May 13, 2019. The deed subsequently recorded at 202201250003086 is dated May 2, 2019. The deed subsequently recorded at 202201250003086 is dated May 3, 2019.

47.     Based on information and belief, these deeds were not provided to U Lock prior to escrow and were not made public until filing.

48.     No compliance with the verbal Order occurred that the deeds would be submitted without a date and without specific terms.

49.     Ultimately, on August 23, 2019, the Westmoreland County Court of Common Pleas entered an Order regarding the Property. A true and correct copy of the Order is attached hereto as **Exhibit 10.**

50.     In large part, the Court determined that Biros was the source of funds for the purchase of the Property, that at the time of the purchase of the Property U Lock, Inc. was not a valid entity with the Commonwealth of Pennsylvania, but that the 2018 deeds did convey ownership to U Lock, Inc., that U Lock, Inc.,  because of solvency issues, had no ability to repay Biros and that the imposition of a Trust in her favor would prevent an unjust enrichment to U Lock, Inc.

51.     On January 10, 2020, Ms. Biros filed a Motion to Require U Lock to Post Security Pursuant to Pa.R.A.P. Rule 1733. *See* **Exhibit 11.**

52.     In this document, Biros admits the debtor-creditor relationship and that the money constituted a loan.

53.     On March 23, 2020, Biros filed a Motion to Deliver Deeds. *See* **Exhibit 12**.

54.    On May 7, 2020, the Court of Common Pleas denied the motion to deliver deeds without prejudice.  *See* **Exhibit 13**.

55.    Based on information and belief, the Court of Common Pleas orally denied the motion for U Lock to post security and/or simply did not require security.

56.    The Superior Court of Pennsylvania affirmed in 2021. *Biros v. U Lock Inc.,* 2021 Pa. Super. 104, 255 A.3d 489 (Pa. Super. Ct. 2021).  In their decision, the Superior Court held:  "[T]he trial court accepted the legitimacy of the 2018 Deeds: 'Even accounting for the *void ab initio* status of the [2015 Deeds], the corrective [2018 Deeds], show legal title in the [Property] belonging to U Lock, Inc. Certainly, U Lock has had full possession and control of the [Property] since July 16, 2015 […].'"

57.    In addition, the Superior Court explained that the transfer of property constituted a creditor remedy:  "[T]he record supports the following conclusions: 1) Appellee paid for the Property on behalf of Appellant; 2) Appellee expected repayment from Appellant; 3) Appellant never repaid Appellee; 4) Appellee had no adequate remedy at law because Appellant lacked resources, other than the Property, with which to compensate Appellee. There was no dispute that Appellee was entitled to repayment. Thus, the trial court faced a choice between imposing a constructive trust and awarding the Property to Appellee or entering judgment for Appellant and trusting that the conclusion of this litigation would result in an influx of cash to Appellant with which it would, finally, repay its debt. The trial court chose the former, and we conclude that it acted well within the appropriate bounds for a court sitting as fact finder."  A copy of the decision is attached hereto as **Exhibit 14**.

12

58. U Lock petitioned the Supreme Court of Pennsylvania for leave to appeal. The Supreme Court denied the petition on January 19, 2022. *Biros v. U Lock Inc.*, 259 WAL 2021. *See* **Exhibit 15**.

59. The denial of leave to appeal did not end the jurisdiction of the appellate courts in Pennsylvania or the stay of lower court proceedings pursuant to P.R.A.P. 1701(a). On the contrary, the Pennsylvania Supreme Court does not remand the case until certain time periods expire. P.R.A.P. 2572(a)(ii).

60. Prior to the remand of the case pursuant to Pennsylvania Rule of Appellate Procedure 2572(a)(ii), on January 20, 2022, the paralegal for counsel for Ms. Biros called the law clerk for the state court judge telephonically and advised that the Supreme Court of Pennsylvania denied leave to appeal and asked the procedure to obtain the deeds. The law clerk advised to submit an Order. On the same day, counsel prepared and submitted an Order and the state court judge signed it. The Order was not served on any party and provided directly to counsel for Ms. Biros.

61. Unbeknownst to counsel for U Lock that the Order existed, on February 2, 2022, U Lock requested the Pennsylvania Supreme Court stay the remand until the time to petition the Supreme Court of the United States expired. P.R.A.P. 2572(c).

62. The Supreme Court of Pennsylvania stayed the remand, but as stated above, the state court judge had already issued the Order without the knowledge of U Lock's counsel.

63. On March 17, 2022, after U Lock learned of the existence of the Order it filed a Motion to Strike the January 20, 2022, Order.

64.    On March 18, 2022, the Pennsylvania Supreme Court lodged the stay of the remand on the docket of the state court record.  **See Exhibit 16.**

65.    On May 12, 2022, Shanni Snyder personally notified the state court judge of this bankruptcy proceeding and the stay.

66.    May 13, 2022, the judge issued an Order denying the motion to strike filed by U Lock.

67.    On May 23, 2022, U Lock filed two notices of appeal to preserve its rights as to the January 20, 2022, and the May 13, 2022, Orders to the Superior Court of Pennsylvania.

68.    Those two appeals remain pending at docket numbers 615 WDA 2022 and 617 WDA 2022 respectively.  In addition, the Supreme Court never remanded the record to the Court of Common Pleas from its decision. Rather, it noted the bankruptcy and stayed the case.

69.    The Superior Court also never remanded the record and its docket shows as active considering the Supreme Court's stay of the remand.

70.    Considering the procedural posture of the Supreme Court stay of the remand, and the pending appeals, Plaintiff is unsure whether the Court of Common Pleas had jurisdiction to release the deeds on January 20, 2022, or whether Ms. Biros had a right to file them on January 25, 2022.

71.    Before and throughout the state court litigation (from 2015 through 2019) the Biros Parties and the Snyder Parties continued to discuss the development of the Property and acted in a manner that demonstrated the participation in or partial control of

14

U Lock, Inc.  This included weekly meetings with Biros as well as near daily meetings between the Snyder Parties and John Biros even during the trial.

72.     As it was at its inception, throughout the period from 2015 to 2022, and upon the transfer of the Property to Biros, the Debtor was insolvent.

73.     Upon the transfer of the divestiture of the property, the Debtor was left with only negligible assets.

74.     At no time did the Biros parties pay for the storage of the mobile homes on the U Lock property, demonstrating their control over entity.

75.     In or around 2020 or 2021, John Biros had U Lock return the company vehicle he loaned for it to use.

76.     Further, the value of the Property is believed to be substantially greater than any amount owed to Biros.  Through Ms. Biros' own admissions the property is valued between $700,000 and $900,000.

77.     On January 25, 2022, Biros recorded deeds for the Property in her name. The Deeds are recorded at Instrument Numbers 202201250003084, 202201250003085, 202201250003086, and 202201250003087.

78.     On or about February 11, 2022, the Trust was granted a mortgage on the Property.  The reason for the granting of the mortgage is unclear and the Plaintiff believes, and therefore avers, that it was placed on the Property to cloud title.  The mortgage was recorded with the Westmoreland County Recorder of Deeds at Instrument 202202110005448.

79.     During the two separate creditors meetings in this case, both George Snyder and Kash Snyder provided testimony about the weekly board meetings.  In

addition, they claimed under oath that they did not file any taxes because, up to 2018, the Biros parties instructed them to hold off because of an investigation.

80.     The promissory note allowing the Biros parties to set the terms, the demanded terms of the loans made two years after the fact, the reliance on the Biros parties for assistance and funding, the weekly meetings with the Biros parties, the placement of a trailer on the land from 2017 through the bankruptcy without payment, instructions as to when to file taxes, and providing the enterprise with a truck for use from 2015 through 2020 render Ms. Biros and her family as one who has a sufficiently close relationship with the Debtor that her conduct is subject to closer scrutiny as opposed to those dealing with the Debtor at arm's length.

81.     Biros is an insider of the Debtor as (1) she acted as a director the enterprise; (2) she acted as an officer of the enterprise; (3) she acted as a person in control of the enterprise; (4) she is a close relative of officers, directors and persons in control or who exerted control of the enterprise.

82.     Furthermore, for similar reasons, the Defendant Trust herein is an insider of the Debtor.  Additionally, based on information and belief, the Biros Irrevocable Life Insurance Trust is a vehicle created by members of the Biros family to hold certain assets.

83.     As such, it would also be an insider to the extent that the beneficiaries or control of the Trust are relatives of Christine Biros.  Further, it is believed that Biros is or has acted as Trustee of the Trust.

84.     By virtue of the transfer of the Property and the granting of a subsequent mortgage, the Defendant's received more than they would have received had the transfer

16

not occurred and the Estate been liquidated pursuant to Chapter 7 of the Bankruptcy

Code.

85.    Furthermore, the transfer was for less than reasonably equivalent value.

## <u>COUNT I- PREFERENCE PURSUANT TO 11 U.S.C. §547</u>

86.    The Plaintiff incorporates the preceding paragraphs by reference as if set

forth at length herein.

87.    Biros received property of the Debtor in the form of a Deed recorded on or

about January 25, 2022.

88.    The Trust received Property in the form of a Mortgage subsequently granted

on the Property.

89.    As set forth above, the Defendants are insiders of the Debtor.

90.    The transfer of the Property and the granting of a Mortgage constitute

transfers of property of the Debtor to a creditor and/or insider of the Debtor.

91.    The transfer of property was made for or on the account of an antecedent

debt.

92.    By virtue of the transfer of the Property and the granting of the mortgage,

the Defendants received more than they would have received had the transfer not

occurred and the estate been liquidated pursuant to Chapter 7 of the Bankruptcy Code.

93.    As such, the payments constitute avoidable preferences pursuant to

Section 547 of the Bankruptcy Code.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her

favor against the Defendants, together with costs of suit and all other relief this Court

17

deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

<u>**COUNT II- PREFERENCE PURSUANT TO 11 U.S.C. §550**</u>

94.    The Plaintiff incorporates the preceding paragraphs by reference as if set forth at length herein.

95.    The Defendants were initial transferees of the property or the immediate or mediate transferees of such initial transferee of the Property.

96.    As such, the Plaintiff is permitted to recover the transfer from the Defendants in accordance with 11 U.S.C. §550(a).

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

<u>**COUNT III- FRAUDLENT TRANSFER PURSUANT TO 11 U.S.C. §548(a)(1)(A)**</u>

97.    The Plaintiff incorporates the preceding paragraphs by reference as if set forth at length herein.

98.    The transfer of the property and placement of the mortgage on the property were for the benefit of the Defendants and within two (2) years of the Petition Date.

99.    The transfers were made directly to the Defendants and benefited the Defendants as they received a valuable asset that was or should have been owned by the Debtor.

18

100.    The transfers were made with the actual intent to hinder, delay or defraud the Plaintiff and the creditors of the Debtor who were owed money by the Debtor.

101.    The transfers were to the actual detriment of the Debtor's creditors.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

## COUNT IV- FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C 548 (a)(1)(B)

102.    The Plaintiff incorporates the preceding paragraphs by reference as if set forth at length herein.

103.    The transfer of the property and placement of the mortgage on the property were for the benefit of the Defendants and within two (2) years of the Petition Date.

104.    The transfers were made directly to the Defendants and benefited the Defendants as they received a valuable asset that was or should have been owned by the Debtor.

105.    The transfers were made with the actual intent to hinder, delay or defraud the Plaintiff and the creditors of the Debtor who were owed money by the Debtor.

106.    The transfers were to the actual detriment of the Debtor's creditors.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

## COUNT V- FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §544(b) AND 12 PA C.S. §5104

107.   The Plaintiff incorporates the previous paragraphs by reference as if set forth at length herein.

108.   The transfer of the Property was made by the Debtor benefited the Defendants within four (4) years of the Petition Date.

109.   The transfer of the Property was the transfer of an interest of the Debtor in the Property.

110.   The transfer was made for the direct benefit of the Defendants who each obtained interests in the Property to the detriment of the Debtor's creditors.

111.   At the time of the Transfer, there existed creditors holdings claims (both secured and unsecured) against the Debtor.

112.   Despite its debts to various creditors, the transfer was made for the benefit of the Defendants and the Debtor received no value for the Transfer.

113.   The transfer was done to hinder, delay or otherwise defraud or cause creditors of the Debtor to not receive payment on their claims.

114.   The transfer was made without the Debtor receiving reasonably equivalent while at the same time leaving virtually no meaningful assets available for the Debtor and rendering the Debtor unable to pay its creditors.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

20

## COUNT V- FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §544(b) AND 12 PA C.S. §5105

115.    The Plaintiff incorporates the previous paragraphs by reference as if set forth at length herein.

116.    The transfer of the Property was made by the Debtor benefited the Defendants within four (4) years of the Petition Date.

117.    The transfer of the Property was the transfer of an interest of the Debtor in the Property.

118.    The transfer was made for the direct benefit of the Defendants who each obtained interests in the Property to the detriment of the Debtor's creditors.

119.    At the time of the transfer, there existed creditors holding claims (both secured and unsecured) against the Debtor.

120.    At the time of the transfer, or as a result thereof, the Debtor was or was rendered insolvent and unable to pay its outstanding obligations.

121.    Despite its debts to various creditors, the transfer was made for the benefit of the Defendants and the Debtor received no value for the Transfer.

122.    The transfer was made without the Debtor receiving reasonably equivalent and/or for less than fair consideration, while at the same time leaving virtually no meaningful assets available for the Debtor and rendering the Debtor unable to pay its creditors.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

21

## COUNT VI- RECOVERY OF AVOIDED TRANSFER PURSUANT TO 11 U.S.C. §550

123.    The Plaintiff incorporates the previous paragraphs by reference as if set forth at length herein.

124.    To the extent that the transfer of the Property is avoided, the Plaintiff is entitled to recover the transferred Property or the value thereof from the Defendants.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

Respectfully Submitted,

Date: April 19, 2023

/s/ David L. Fuchs
DAVID L. FUCHS
PA I.D. #205694
Fuchs Law Office, LLC
554 Washington Ave, First Floor
Carnegie, PA  15106
(412) 223-5404 (phone)
(412) 223-5406 (facsimile)
dfuchs@fuchslawoffice.com

AND

/s/ John P. Lacher
JOHN P. LACHER
PA I.D.#62297
The Lynch Law Group
501 Smith Drive, Suite 3
Cranberry Township, PA 16066
(724) 776-8000
(724) 776-8001
jlacher@lynchlaw-group.com

FILED

**U.S. Bankruptcy Court**
**WESTERN DISTRICT OF**
**PENNSYLVANIA**

4/26/2023

**Michael R. Rhodes, Clerk**

| Fill in this information to identify the case: |
| --- |

Debtor 1  U LOCK INC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **WESTERN DISTRICT OF PENNSYLVANIA**

Case number:  **22–20823**

## Official Form 410
## Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

George Snyder

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| George Snyder | |
| Name | Name |
| Box 15<br>Irwin, PA 15642 | |
| Contact phone        4128299999 | Contact phone |
| Contact email<br>snyder4judge@yahoo.com | Contact email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known)          Filed on

MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

Official Form 410                    Proof of Claim                    page 1

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

7. **How much is the claim?**

$ unknown

**Does this amount include interest or other charges?**
☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

indemnification contribution reimbursement

9. **Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe:
_____

**Basis for perfection:**
_____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____

**Amount of the claim that is secured:** $ _____

**Amount of the claim that is unsecured:** $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

11. **Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

Official Form 410                                   Proof of Claim                                   page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply*: | | Amount entitled to priority |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies  $ _____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  4/26/2023
MM / DD / YYYY

/s/  George Snyder
Signature

Print the name of the person who is completing and signing this claim:

Name  George Snyder
First name    Middle name    Last name

Title

Company
Identify the corporate servicer as the company if the authorized agent is a servicer

Address  Box 15
Number  Street
Irwin, PA 15642
City  State  ZIP Code

Contact phone  _____  Email  snyder4judge@yahoo.com

Official Form 410                     Proof of Claim                     page 3

<table>
<tr><td colspan="2">**Fill in this information to identify the case:**</td></tr>
<tr><td>Debtor 1</td><td>U LOCK INC  AKA U-LOCK INC.</td></tr>
<tr><td>Debtor 2<br>(Spouse, if filing)</td><td></td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>WESTERN   District of   PENNSYLVANIA</td></tr>
<tr><td>Case number</td><td>22-20823-GLT</td></tr>
</table>

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

## Part 1:   Identify the Claim

**1. Who is the current creditor?**

Department of Treasury - Internal Revenue Service
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

[X] No

[ ] Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Internal Revenue Service
Name

P.O. Box 7346
Number Street

Philadelphia          PA          19101-7346
City              State          ZIP Code

Contact phone   1-800-973-0424

Contact email _____

Creditor Number:   15555009

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

Where should payments to the creditor be sent? (if different)

Internal Revenue Service
Name

P.O. Box 7317
Number Street

Philadelphia          PA          19101-7317
City              State          ZIP Code

Contact phone   1-800-973-0424

Contact email _____

**4. Does this claim amend one already filed?**

[ ] No

[X] Yes. Claim number on court claims registry (if known)   6

Filed on   12/19/2022
            MM / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

[X] No

[ ] Yes. Who made the earlier filing? _____

Official Form 410                    **Proof of Claim**                    page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: See Attachment ____

**7. How much is the claim?**   $_____ 65,421.08   **Does this amount include interest or other charges?**

☐ No

☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Taxes

**9. Is all or part of the claim secured?**

☒ No

☐ Yes. The  claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a Mortgage Proof of Claim Attachment (Official Form 410-A) with this Proof of Claim.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____

**Amount of the claim that is secured:**   $_____

**Amount of the claim that is unsecured:**   $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☒ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☐ No

☒ Yes. Identify the property: See Attachment _____

Official Form 410                          **Proof of Claim**                          page 2

**Appendix Vol. II          Page 423**

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ No

☒ Yes. Check one:

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☒ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____29,556.00 |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:  Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☒ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   05/04/2023
                   MM  /  DD  /  YYYY

/s/ MAUREEN SVETKOVICH
Signature

**Print the name of the person who is completing and signing this claim:**

Name    MAUREEN                                    SVETKOVICH
        First name          Middle name            Last name

Title   Bankruptcy Specialist

Company  Internal Revenue Service
         Identify the corporate servicer as the company if the authorized agent is a servicer.

Address  1000 Liberty Avenue, M/S 711B
         Number Street
         Pittsburgh                    PA        15222-3714
         City                          State     ZIP Code

Contact phone   412-404-9730          Email   Maureen.L.Svetkovich@irs.gov

---

# Proof of Claim for Internal Revenue Taxes



**Form 410**
Attachment

Department of the Treasury/Internal Revenue Service

**In the Matter of:** U LOCK INC
AKA U-LOCK INC.
C/O GEORGE SNYDER
POO BOX 15
IRWIN, PA 15642

**Case Number**
22-20823-GLT

**Type of Bankruptcy Case**
CHAPTER 7A

**Date of Petition**
04/27/2022

Amendment No. 1 to Proof of Claim dated 12/19/2022

The United States has the right of setoff or counterclaim. However, this determination is based on available data and is not intended to waive any right to setoff against this claim debts owed to this debtor by this or any other federal agency. All rights of setoff are preserved and will be asserted to the extent lawful.

## Unsecured Priority Claims    under section 507(a)(8) of the Bankruptcy Code

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|---|
| XX-XXX4911 | CORP-INC | 12/31/2019 | 1 D-ESTIMATED-SEE NOTE | $9,752.00 | $0.00 |
| XX-XXX4911 | CORP-INC | 12/31/2020 | 1 D-ESTIMATED-SEE NOTE | $9,852.00 | $0.00 |
| XX-XXX4911 | CORP-INC | 12/31/2021 | 1 D-ESTIMATED-SEE NOTE | $9,952.00 | $0.00 |
| | | | | $29,556.00 | $0.00 |

**Total Amount of Unsecured Priority Claims:** **$29,556.00**

## Unsecured General Claims

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|---|
| XX-XXX4911 | CORP-INC | 12/31/2016 | 2 4-PER RECORDS/DEBTOR | $9,452.00 | $2,699.13 |
| XX-XXX4911 | CORP-INC | 12/31/2017 | 1 D-ESTIMATED-SEE NOTE | $9,552.00 | $0.00 |
| XX-XXX4911 | CORP-INC | 12/31/2018 | 1 D-ESTIMATED-SEE NOTE | $9,652.00 | $0.00 |
| | | | | $28,656.00 | $2,699.13 |

Penalty to date of petition on unsecured general claims (including interest thereon) . . . . . .$4,509.95

**Total Amount of Unsecured General Claims:** **$35,865.08**

1 LIABILITY IS ESTIMATED BASED ON AVAILABLE INFORMATION BECAUSE THE RETURN HAS NOT BEEN FILED. THIS CLAIM MAY BE AMENDED AS NECESSARY AFTER THE DEBTOR FILES THE RETURN OR PROVIDES OTHER REQUIRED INFORMATION.
2 INFORMATION FROM DEBTOR OR RETURN RECEIVED THAT IS NOT YET ASSESSED. THIS CLAIM MAY BE AMENDED AS NECESSARY UPON ASSESSMENT OF THE LIABILITY OR EXAMINATION OF DEBTOR TAX RETURN.

**Page 426**

FILED

**U.S. Bankruptcy Court**
**WESTERN DISTRICT OF**
**PENNSYLVANIA**

7/9/2023

**Michael R. Rhodes, Clerk**

| Fill in this information to identify the case: |
| --- |
| Debtor 1   U LOCK INC |
| Debtor 2 |
| (Spouse, if filing) |
| United States Bankruptcy Court   **WESTERN DISTRICT OF PENNSYLVANIA** |
| Case number:  **22–20823** |

## Official Form 410
## Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

George Snyder

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

George Snyder

Name

Box 15
Irwin, PA 15642

Contact phone      4128299999
Contact email    snyder4judge@yahoo.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

Where should payments to the creditor be sent? (if different)

Name

Contact phone
Contact email

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known)         Filed on
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

Official Form 410                    Proof of Claim                    page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

6. **Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

7. **How much is the claim?**

$ ____1045.94____  **Does this amount include interest or other charges?**
☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

At the direction of the Trustee I obtained an insurance policy for the debtor for
14140 US Route 30 NHT PA

9. **Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:**

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____

**Amount of the claim that is secured:** $ _____

**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

11. **Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

Official Form 410                    Proof of Claim                    page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | | |
|---|---|---|---|
| | | ☐ No | |
| | | ☑ Yes. *Check all that apply*: | Amount entitled to priority |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $ _____

☑ Other. Specify subsection of 11 U.S.C. § 507(a)(2) that applies   $ 1045.94

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   7/9/2023
                   MM / DD / YYYY

/s/  George Snyder

Signature

Print the name of the person who is completing and signing this claim:

Name   George Snyder
       First name   Middle name   Last name

Title

Company
       Identify the corporate servicer as the company if the authorized agent is a servicer

Address   Box 15
          Number   Street
          Irwin, PA 15642
          City  State  ZIP Code

Contact phone   4128299999        Email   snyder4judge@yahoo.com

Official Form 410                  Proof of Claim                  page 3

FILED
7/21/23 3:28 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Case No. 22-20823-GLT |
| | : | Chapter 7 |
| **U LOCK, INC.,** | : | |
| | : | |
| *Debtor.* | : | |
| | : | |
| | : | |
| **SHANNI SNYDER**, as assignee of | : | Adv. Pro. No. 23-2020-GLT |
| Robert Slone, chapter 7 trustee of | : | |
| U LOCK, INC., | : | |
| | : | |
| *Plaintiff,* | : | |
| v. | : | Related to Dkt. Nos. 17, 22, 23, 28, 29 |
| | : | |
| **CHRISTINE BIROS** and | : | |
| **THE BIROS IRREVOCABLE** | : | |
| **LIFE INSURANCE TRUST,** | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

David L. Fuchs, Esq.          Mark A. Lindsay, Esq.
Fuchs Law Office, LLC         Lara S. Martin, Esq.
Carnegie, PA                  Bernstein-Burkley, P.C.
                              Pittsburgh, PA
John P. Lacher, Esq.          *Attorneys for the Defendants*
The Lynch Law Group
Cranberry Township, PA
*Attorneys for the Plaintiff*

## <u>MEMORANDUM OPINION</u>

Debtor U Lock, Inc. is out of the picture, but its fight with Christine Biros over a

junkyard in North Huntingdon ("Property") that she once helped it purchase is seemingly

unending.  After acquiring the estate's rights through an asset sale, petitioning creditor Shanni

Snyder commenced this action hoping to recover the Property from Ms. Biros as a preference or

fraudulent transfer.[1]  Ms. Biros seeks dismissal, asserting that this is yet another attempt to frustrate her control of the Property by collaterally attacking the final state court orders which gave it to her.[2]  Ms. Snyder opposes dismissal.[3]  Ultimately, because Ms. Biros did not receive her Property interests from U Lock, there were no avoidable "transfer[s] of an interest of the debtor" under the Bankruptcy Code.[4]  Thus, for the reasons below, the Court will grant the *Motion to Dismiss* with prejudice.

## I.    BACKGROUND

The unusually combative procedural history of U Lock's bankruptcy is largely irrelevant so the Court will eschew the topic entirely.  For now, it is enough to know that Ms. Snyder filed an involuntary petition against U Lock so that this avoidance action could be brought against Ms. Biros.  Then Ms. Snyder purchased the right to assert such claims herself from the chapter 7 trustee.

At this stage, the Court must accept all well-pleaded allegations as true,[5] recognizing, of course, that the salient facts are largely judicially established and a matter of record.[6]  Indeed, this adversary proceeding essentially seeks to avoid a judgment of the Court of

---

[1]    *Amended Adversary Complaint* ("Complaint"), Dkt. No. 17.

[2]    *Motion to Dismiss Amended Complaint Pursuant to Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure and Rule 12(b)(6) of the Federal Rules of Civil Procedure* ("Motion to Dismiss"), Dkt. No. 22; see also *Brief in Support of Motion to Dismiss Amended Complaint Pursuant to Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure and Rule 12(b)(6) of the Federal Rules of Civil Procedure* ("Brief in Support"), Dkt. No. 23.

[3]    *Response to Motion to Dismiss Adversary Complaint* ("Response"), Dkt. No. 28; *Brief in Opposition to Motion to Dismiss Amended Adversary Complaint* ("Brief in Opposition"), Dkt No. 29.

[4]    See 11 U.S.C. §§ 544(b)(1), 547(b), 548(a)(1).  Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as thereafter amended, 11 U.S.C. § 101, *et seq*. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[5]    See Ashcroft v. Iqbal, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940-41, 173 L. Ed. 2d 868 (2009).

[6]    The Court may consider documents the complaint incorporates by reference and matters of public record when deciding a motion to dismiss.  See Kind Operations, Inc. v. Cadence Bank, N.A. (In re PA Co-Man,

2

Common Pleas of Westmoreland County ("Trial Court") that was later affirmed by the Superior

Court of Pennsylvania.  Because the Court finds that Ms. Snyder's avoidance theories are legally

flawed rather than simply inadequately pled, the Court will prioritize the "major plot points" over

an exhaustive recitation of allegations.

As the Court previously observed: "[t]he Property is essentially a junkyard on

Route 30, littered with construction debris, scrap piles, tire mounds, collapsed trailers, and

inoperable vehicles," and "contains . . . a rundown, single-story self-storage building."[7]  In 2014,

a group including Ms. Biros, and her brother John, and Ms. Snyder's brothers, George and Kash

(together, the "Snyders"), discussed forming an entity to purchase the Property.[8]  Ms. Snyder is

not alleged to have been involved.[9]  The idea was to acquire the Property and boost its value

through commercial development.[10]  To that end, the Snyders formed U Lock.[11]  The *Complaint*

identifies no one officially designated as U Lock's officers and directors other than the Snyders.[12]

On July 16, 2015, the sellers executed deeds purporting to convey the Property to U Lock,[13] but,

unbeknownst to anyone at that time, U Lock would not successfully incorporate until September.[14]

---

Inc.), 644 B.R. 553, 582 (Bankr. W.D. Pa. 2022) (citing Miller v. Redwood Toxicology Lab'y, Inc., 688 F.3d 928, 931 n. 3 (8th Cir. 2012)).

[7]    In re U Lock, Inc., No. 22-20823-GLT, 2023 WL 308210, at *1 (Bankr. W.D. Pa. Jan. 17, 2023).  These are first-hand observations made after the Court conducted a site visit on the Property with the parties.

[8]    *Amended Adversary Complaint*, Dkt. No. 17 at ¶¶ 13-18.

[9]    Without getting into the weeds on a separate issue, Ms. Snyder obtained a default judgment under the Fair Labor Standards Act on the basis that she was an unpaid employee of U Lock for a period after its formation.  Ms. Biros' objection to Ms. Snyder's claim is the subject of forthcoming decision.

[10]   *Amended Adversary Complaint*, Dkt. No. 17 at ¶ 15.

[11]   Id. at ¶ 20.

[12]   Id. at ¶¶ 24, 79, 81.

[13]   Id. at ¶¶ 29-30; *Exhibit 4*, Dkt. No. 17-4.  The sellers were the executors of several estates.  *Amended Adversary Complaint*, Dkt. No. 17 at ¶ 17.

[14]   Id. at ¶¶ 20, 31, 33; *Exhibit 6*, Dkt No. 17-6.  Due to an initial filing insufficiency, the Secretary of State rejected U Lock's articles of incorporation on July 17, 2015, the day after the sale closed.

Ms. Biros provided the funds to purchase the Property.[15]  Prior to closing, Kash Snyder, as U Lock's director, executed a hand-written loan agreement between U Lock and Ms. Biros for $325,316 with repayment terms to be determined later.[16]  In fact, the loan agreement allowed Ms. Biros to unilaterally set the terms if she and U Lock did not agree to any within a month.[17]  She ultimately did so in May 2017, demanding a 9% interest rate, a mortgage to secure the loan, and guarantees from the Snyders.[18]  But U Lock never repaid any portion of the loan nor delivered the requested mortgage or guarantees.[19]

Despite big dreams, U Lock only ever used the Property as a self-storage site to generate minimal revenue.[20]  The *Complaint* offers no insight into why it was not developed as planned.  Ms. Snyder alleges that U Lock was never solvent and that everyone understood that the Snyders were financially reliant on the Biroses to "develop or service" the Property.[21]  Allegedly, the Snyders viewed the Biroses as partners,[22] and they all met weekly, if not daily, to discuss their plans for the Property even after the outset of litigation.[23]  As a result, Ms. Snyder contends that Ms. Biros was an "insider" based on her engagement with and alleged effective control of U Lock.[24]  That said, these allegations are largely conclusory with little, if any, factual support.

---

[15]    *Amended Adversary Complaint*, Dkt. No. 17 at ¶ 21.

[16]    Id. at ¶¶ 22-24, 27-28; *Exhibit 3*, Dkt. No. 17-3.

[17]    Id.

[18]    *Amended Adversary Complaint*, Dkt. No. 17 at ¶¶ 32, 37; *Exhibit 8*, Dkt. No. 17-8.

[19]    See *Exhibit 10*, Dkt. No. 17-10 at 3.

[20]    *Amended Adversary Complaint*, Dkt. No. 17 at ¶¶ 12, 38.  While perhaps neither here nor there, the Court is under the impression that the self-storage operations on the Property pre-date U Lock.

[21]    Id. at ¶¶ 25-26, 38, 72-73.

[22]    Id. at ¶ 27.

[23]    Id. at ¶¶ 71, 80.

[24]    Id. at ¶¶ 34-35, 39, 71, 74, 80-83.

4

In any event, Ms. Biros sued U Lock and the Property sellers in the Trial Court in October 2017.[25]  Seizing on U Lock's delayed incorporation, she asked that the 2015 deeds be declared *void ab initio* and the Property be conveyed to her as its equitable owner.[26]  The sellers first provided so-called "corrective" deeds to U Lock in 2018 before escrowing blank deeds in 2019 to secure a release from the litigation.[27]  The Trial Court held a bench trial in April 2019.[28]

In August 2019, the Trial Court entered a *Non-Jury Trial Opinion and Order of Count* ruling in Ms. Biros' favor.[29]  First, it agreed that U Lock was neither a *de facto* nor *de jure* corporation at the time of the original conveyance, rendering the 2015 deeds *void ab initio*.[30]  Acknowledging that the 2018 deeds transferred legal title, the Trial Court still concluded that "it would be wholly inequitable for Defendant U Lock to retain the beneficial interest of the property."[31]  It found that: (1) "[Ms.] Biros paid the full purchase price of the [P]roperty"; (2) "U Lock has not repaid any of the purchase price"; and (3) "the record reflects doubt as to U Lock's solvency and ability to repay . . . now or at any point subsequent."[32]  As a result, the Trial Court held that "the only equitable solution is the imposition of a constructive trust, and the present

---

[25]   Id. at ¶ 40.

[26]   *Exhibit 9*, Dkt. No. 17-9 at 8-11.

[27]   *Amended Adversary Complaint*, Dkt. No. 17 at ¶¶ 41-47.

[28]   Id. at ¶ 42.

[29]   *Exhibit 10*, Dkt. No. 17-10 at 9.

[30]   Id. at 6.

[31]   Id. at 6-7 ("Even accounting for the *void ab initio* status of the original deeds, the corrective deeds, filed March 1, 2018, show legal title in the Subject Property belonging to U Lock, Inc.  Certainly, U Lock has had full possession and control of the property since July 16, 2015, and has collected rents from tenants since that time.  It is undisputed by U Lock that Christine Biros paid the full purchase price of the property to the Defendant Estates, and that U Lock has not repaid any of the purchase price to Plaintiff Biros.  As such, the present case is ripe for the imposition of a constructive trust, where it is clear it would be wholly inequitable for Defendant U Lock to retain the beneficial interest of the property.").

[32]   Id.

5

conveyance of the [] Property to [Ms.] Biros."[33]  The accompanying order therefore states that "Plaintiff Christine Biros *is* the equitable owner of the Subject Property" and directs the execution of the appropriate deeds to her.[34]  But the order only expressly invalidated the 2015 deeds and was silent about the 2018 deeds.[35]

Unable to obtain reconsideration, U Lock appealed the ruling to the Superior Court.[36]  In May 2021, the Superior Court affirmed, holding:

> In summary, the record supports the following conclusions: 1) [Ms. Biros] paid for the Property on behalf of [U Lock]; 2) [Ms. Biros] expected repayment from [U Lock]; 3) [U Lock] never repaid [Ms. Biros]; 4) [Ms. Biros] had no adequate remedy at law because [U Lock lacked resources, other than the Property, with which to compensate [Ms. Biros]. There was no dispute that [Ms. Biros] was entitled to repayment. Thus, the trial court faced a choice between imposing a constructive trust and awarding the Property to [Ms. Biros] or entering judgment for [U Lock] and trusting that the conclusion of this litigation would result in an influx of cash to [U Lock] with which it would, finally, repay its debt. The trial court chose the former, and we conclude that it acted well within the appropriate bounds for a court sitting as fact finder.[37]

In January 2022, the Supreme Court of Pennsylvania denied U Lock leave to further appeal.[38]  It did, however, enter an order two months later staying the remand of the case to allow U Lock to petition the Supreme Court of the United States for review.[39]

---

[33]  Id. at 7.

[34]  Id. at 9 (emphasis added).

[35]  Id.

[36]  Biros v. U Lock Inc., 2021 PA Super 104, 255 A.3d 489, 493 (2021), reargument denied (July 28, 2021), appeal denied, 271 A.3d 875 (Pa. 2022).

[37]  Id. at 496; see *Amended Adversary Complaint*, Dkt. No. 17 at ¶¶ 56-57.

[38]  Biros v. U Lock Inc., 271 A.3d 875 (Pa. 2022); see *Amended Adversary Complaint*, Dkt. No. 17 at ¶¶ 58-59.

[39]  *Amended Adversary Complaint*, Dkt. No. 17 at ¶¶ 62, 64; *Exhibit 16*, Dkt. No. 17-16 at 2.

Just days after leave to appeal was denied but before the stay, the 2019 deeds from the sellers were released to Ms. Biros and recorded in her name.[40]  Notably, they declare that "all deeds of record dated on or after July 16, 2015 are hereby NULL AND VOID" based on the August 2019 opinion and order.[41]  Soon after, Ms. Biros granted a mortgage on the Property to the Biros Irrevocable Life Insurance Trust ("Trust"), which was recorded with the Westmoreland County Recorder of Deeds.[42]  U Lock subsequently filed appeals asserting the release of the deeds was premature and without proper notice.[43]  These appeals were stayed by the chapter 7 order for relief entered on June 17, 2022.[44]

Ms. Snyder alleges that "[t]he value of the Property is believed to be substantially greater than any amount owed to Ms. Biros."[45]  Her belief is based on "Ms. Biros' own admissions [that] the [P]roperty is valued between $700,000 and $900,000,"[46] apparently referencing an unfiled broker's price opinion from January-March 2023.[47]  Ms. Snyder does not otherwise attempt

---

[40]     *Amended Adversary Complaint*, Dkt. No. 17 at ¶¶ 60, 70, 77.

[41]     *Exhibit G*, Dkt. No. 23-7 at 2, 17, 30, 44.  It is unclear whether the Trial Court added, approved, or was even aware of the "null and void" language of the 2019 deeds.

[42]     *Amended Adversary Complaint*, Dkt. No. 17 at ¶ 78.

[43]     Id. at ¶¶ 61-70.  Notably, Ms Snyder indicates in her *Complaint* that she is "unsure" whether the stay of remand impacted the Trial Court's jurisdiction to release the deeds.  Id. at ¶ 70.

[44]     *Order for Relief Under Chapter 7*, Case No. 22-20823-GLT, Dkt. No. 42.

[45]     *Amended Adversary Complaint*, Dkt. No. 17 at ¶ 76.

[46]     Id.

[47]     See, e.g., *Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure*, Case No. 22-20823-GLT, Dkt. No. 345 at ¶ 33 (stating that Ms. Biros obtained a broker's price opinion indicating the current value of the Property).

7

to quantify Ms. Biros' claim, which, suffice it to say, has been the subject of lengthy proceedings.[48]

Still, it is undisputed that U Lock had only negligible assets without the Property.[49]

Through the *Complaint*, Ms. Snyder argues that the transfers to Ms. Biros and the Trust are recoverable under section 550[50] either avoidable preferences under section 547,[51] actual fraudulent transfers under sections 548(a)(1)(A) and 544(b),[52] or constructive fraudulent transfers under sections 548(a)(1)(B) and 544(b).[53]   Frankly, these theories depend on several dubious assumptions, most notably that "[Ms.] Biros received *property of the Debtor* in the form of a Deed recorded on or about January 25, 2022."[54]   Patently absurd, however, is Ms. Snyder's bald assertion that Ms. Biros somehow received the Property "with actual intent to hinder, delay or defraud" U Lock's creditors.[55]

The *Motion to Dismiss* primarily challenges the allegation that Ms. Biros received a "transfer of *property of the Debtor*" as conflicting with final, non-appealable rulings and barred

---

[48]   Ms. Biros filed three proofs of claim and a request for allowance of an administrative expense, all of which are the subject of contested motion to compromise.  See Claims 2-2, 3-2, and 4-1; *Christine Biros' Amended Motion for Allowance and Payment of Administrative Expense Pursuant to 11 U.S.C. § 503(b)(1) and/or Payment of Adequate Protection*, Case No. 22-20823-GLT, Dkt. No. 344; *Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure*, Case No. 22-20823-GLT, Dkt. No. 345; *Objection to Consent Motion to Approve Settlement Agreement Pursuant to Federal Rules of Bankruptcy Procedure*, Case No. 22-20823-GLT, Dkt. No. 352.

[49]   *Amended Adversary Complaint*, Dkt. No. 17 at 73.  The Court pauses to note the patent inconsistency of alleging that the Property's value far exceeded Ms. Biros' claim but that U Lock was *never* solvent without identifying other creditors.  See id. at ¶ 72.

[50]   Id. at ¶¶ 94-96, 123-124 ("Count II – Preference Pursuant to 11 U.S.C. § 550" and "Count VI [sic] – Recovery of Avoided Transfer Pursuant to 11 U.S.C. § 550").

[51]   Id. at ¶¶ 86-93 ("Count I – Preference Pursuant to 11 U.S.C. § 547").

[52]   Id. at ¶¶ 97-101, 107-114 ("Count III – Fraudulent [sic] Transfer Pursuant to 11 U.S.C. § 548(a)(1)(A)" and "Count V – Fraudulent Transfer Pursuant to 11 U.S.C. § 544(b) and 12 Pa C.S. § 5104").

[53]   Id. at ¶¶ 102-106, 115-122 ("Count IV – Fraudulent Transfer Pursuant to 11 U.S.C. § 548(a)(1)(B)" and "Count V [sic] – Fraudulent Transfer Pursuant to 11 U.S.C. § 544(b) and 12 Pa C.S. § 5105").

[54]   Id. at ¶ 87 (emphasis added).

[55]   Id. at ¶¶ 100, 105, 113.

8

by preclusion doctrines.[56]  In response, Ms. Snyder relies on the 2018 deeds to cast U Lock as the judicially recognized "legitimate owner of the Property" and posits that later deeds transferred that interest.[57]  At the hearing on the *Motion to Dismiss*, the Court identified cases from this district holding that a constructive trust under Pennsylvania law is not a transfer of a debtor's interest.[58]  Since neither party cited this seemingly dispositive authority, the Court allowed them to submit supplemental briefing.[59]  The matter is now ripe for determination.

## II.    JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(H).

## III.    POSITIONS OF THE PARTIES

### A.    Ms. Biros

Ms. Biros argues that Ms. Snyder "continues to self-servingly ignore [] the fact that proper ownership of the Property was fully litigated, determined in favor of Biros, affirmed on appeal, and that no appellate rights remain available."[60]  She emphasizes that U Lock never

---

[56]    See *Motion to Dismiss*, Dkt. No. 22 at 2 (emphasis in original).

[57]    *Brief in Opposition*, Dkt No. 29 at 10-11.

[58]    See Melaragno v. CitiMortgage, Inc. (In re Sandman), No. 12-10339-TPA, 2013 WL 3991971, at *1 (Bankr. W.D. Pa. Aug. 1, 2013); Smithfield Tr. Co. v. Pitchford (In re Pitchford), 410 B.R. 416 (Bankr. W.D. Pa. 2009); Kedzuf v. Turetsky (In re Turetsky), 402 B.R. 663 (Bankr. W.D. Pa. 2009); Electric M & R, Inc. v. Aultman (In re Aultman), 223 B.R. 481 (Bankr. W.D. Pa. 1998).

[59]    See *Supplement Brief in Support of Motion to Dismiss Amended Complaint Pursuant to Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure and Rule 12(b)(6) of the Federal Rules of Civil Procedure* ("Supplement in Support"), Dkt. No. 33; *Supplemental Brief in Opposition to Motion to Dismiss Amended Adversary Complaint* ("Supplement in Opposition"), Dkt. No. 34.

[60]    *Brief in Support*, Dkt. No. 23 at ¶ 27.

9

obtained a stay or posted a supersedeas bond,[61] and the remaining appeals concern "only . . . the timing and procedure for delivery of the Deeds"[62]  As such, Ms. Biros asserts that any attempt to revisit those facts and issues is barred by res judicata and collateral estoppel.[63]

The main thrust of the *Motion to Dismiss* is that the *Complaint* wrongly assumes Ms. Biros received property interests from U Lock when her deeds were recorded in January 2022.[64]  To the contrary, she argues the 2019 deeds conveyed legal title to her directly from the sellers and were effective upon delivery to the escrow in May 2019.[65]  Ms. Biros also maintains that the express language of the 2019 deeds rendered U Lock's 2018 deeds "null and void."[66]  Even so, she insists that the imposition of a constructive trust vested the Property's equitable title in her as of July 2015, meaning U Lock never owned the Property.[67]  Although Ms. Biros did not initially articulate a basis for retroactively applying the constructive trust, she now relies on *In re Aultman* for this point.[68]

Even aside from its inability to identify a transfer of U Lock's interest in the Property, Ms. Biros contends that the *Complaint* is fatally defective for many other reasons.  First, she notes that her interests precede the non-insider statutory look-back periods[69] and the *Complaint* only offers conclusory allegations to paint her as a director or officer of U Lock.[70]  Next, Ms. Biros

---

[61]    Id. at ¶¶ 28-29.

[62]    Id. at ¶ 27.

[63]    Id. at ¶¶ 55-59.

[64]    Id. at ¶ 30.

[65]    Id. at ¶¶ 33, 63, 65, 76.

[66]    Id. at ¶ 64, 77.

[67]    Id.

[68]    *Supplement in Support*, Dkt. No. 33 at ¶ 5 (citing In re Aultman, 223 B.R. at 485-87).

[69]    *Brief in Support*, Dkt. No. 23 at ¶¶ 64, 77-78, 82, 87, 90, 93.

[70]    Id. at ¶¶ 35-42, 75.

10

asserts that there is no basis in fact for Ms. Snyder's claim that the Trial Court-ordered transfer of the Property was in anyway fraudulent.[71]  Similarly, Ms. Biros avers that Ms. Snyder's allegations of U Lock receiving less than reasonably equivalent value for the Property are threadbare and lack any specificity.[72]  Finally, she posits she could not have been unjustly enriched by any transfer since the Trial Court imposed the constructive trust to prevent U Lock's unjust enrichment.[73]

B.    <u>Ms. Snyder</u>

Ms. Snyder characterizes her action as "simple and straightforward," explaining that Ms. Biros was a creditor who obtained the Property in satisfaction of a debt of less than half its value.[74]  She contends that her avoidance claims are distinct from the Trial Court proceedings and therefore, cannot be barred by either res judicata or collateral estoppel.[75]

The central premise on which Ms. Snyder constructed her avoidance theories is that the Superior Court recognized that "the trial court accepted the legitimacy of the 2018 Deeds."[76]  Thus, she asserts "there has already been a determination that [U Lock] was the legitimate owner of the Property."[77]  From there, Ms. Snyder concludes, though without elaboration, that the recording of the 2019 deeds resulted in a transfer of U Lock's property interests.[78]  She does not acknowledge the details of the 2019 deeds (including the "null and void" language or the fact that the transferors were the sellers) but apparently assumes they were effective.

---

[71]    <u>Id.</u> at ¶¶ 81, 91.

[72]    <u>Id.</u> at ¶¶ 83, 85, 88.

[73]    <u>Id.</u> at ¶¶ 70-72.

[74]    *Brief in Opposition*, Dkt. No. 29 at 6.

[75]    <u>Id.</u> at 8-10.

[76]    <u>Id.</u> at 11 (quoting <u>Biros v. U Lock Inc.</u>, 255 A.3d at 494).

[77]    <u>Id.</u>

[78]    <u>Id.</u>

Interestingly, Ms. Snyder downplays the independent significance of the constructive trust, reasoning that the 2019 deeds were necessary to effectuate it.[79]  She first relied on *In re CRS Steam, Inc.*,[80] a decision applying Illinois law, for the proposition that "a constructive trust comes into being only when a court issues its order of transfer."[81]  Following the Court's admonition to focus on Pennsylvania law, Ms. Snyder acknowledges that constructive trusts often "relate[] back to an earlier time" but asserts "there is no such requirement that it do so."[82]  Stressing that equitable remedies are flexible, she argues that the Trial Court specifically ordered "the **present conveyance** of the Subject Property," thus defining the nature and timing of the remedy.[83]  In other words, the constructive trust did not expressly relate back.[84]  Ms. Snyder cites no case in which a constructive trust did not relate back, but notes the atypical absence of fraud or wrongdoing giving rise to the remedy here.[85]  In essence, she contends that the Trial Court granted Ms. Biros a "remedy similar to the award of a monetary judgment."[86]

Ms. Snyder also denies that her claims are time-barred, citing Third Circuit precedent holding that a transfer of real property is binding to third parties, like a trustee, when recorded.[87]  She also insists that the *Complaint* contains sufficient factual support for the allegation that Ms. Biros is an insider.[88]  In fact, Ms. Snyder urges the Court to infer malice and fraudulent

---

[79]    Id. at 17-18.

[80]    CRS Steam, Inc. v. Eng'g Res., Inc. (In re CRS Steam, Inc.), 225 B.R. 833 (Bankr. D. Mass. 1998)

[81]    *Brief in Opposition*, Dkt. No. 29 at 18 (quoting In re CRS Steam, Inc., 225 B.R. at 845) (internal quotation marks omitted).

[82]    *Supplement in Opposition*, Dkt. No. 34 at 9.

[83]    Id. at 2 (quoting *Exhibit 10*, Dkt. No. 17-10 at 9) (emphasis added by Ms. Snyder).

[84]    Id.

[85]    Id. at 9.

[86]    Id. at 4.

[87]    Id. at 11 (citing In re MacQuown, 717 F.2d 859, 863 (3d Cir. 1983)).

[88]    *Brief in Opposition*, Dkt. No. 29 at 12-13.

12

intent from Ms. Biros' (alleged) insider status which enabled her to take possession of U Lock's only material asset.[89]

## IV.    DISCUSSION

Under Federal Rule Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted.[90]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[91]  "[F]acial plausibility" means "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," not facts "'merely consistent with' . . . liability."[92]  Legal conclusions couched as fact and threadbare recitals supported by conclusory statements must be disregarded.[93]  In assessing plausibility, the court may also consider "documents attached to the complaint and matters of public record, . . . and a court may take judicial notice of a prior judicial opinion."[94]  Ultimately, whether to grant a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[95]

From the start, the Court reiterates that the bulk of what has been presented are not mere allegations, but facts established by final state court orders that cannot be relitigated.  And those rulings speak for themselves quite clearly, without the need for interpretation or delicate parsing.  Instead, the Court's role is simply to determine whether those facts, along with any well-

---

[89]    Id. at 14.

[90]    See Fed. R. Civ. P. 12(b)(6), made applicable to adversary proceedings by Fed. R. Bankr. P. 7012(b).

[91]    Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Alantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

[92]    Id.

[93]    Id.

[94]    McTernan v. City of York, Penn., 577 F.3d 521, 526 (3d Cir. 2009) (citation omitted); see Tanksley v. Daniels, 902 F.3d 165, 172 (3d Cir. 2018); In re PA Co-Man, Inc., 644 B.R. at 582.

[95]    Ashcroft v. Iqbal, 556 U.S. at 679.

13

supported allegations, state a plausible claim for relief under chapter 5 of the Bankruptcy Code. To that end, the common element of every asserted avoidance provision is a "transfer of an interest of the debtor in property."[96]  Similarly, unless a transfer is avoided, there is no property to recover under section 550.[97]  Accordingly, the threshold question is whether Ms. Biros received a transfer of an interest in the Property from U Lock.

Ms. Snyder speculates that the 2019 deeds transferred U Lock's interest to Ms. Biros because the 2018 deeds evidence that U Lock owned the Property.  Admittedly, the state courts acknowledged the "legitimacy of the 2018 Deeds" that "show legal title in the [] Property belonging to U Lock."[98]  And those deeds, unlike the original 2015 deeds, were not expressly invalidated by the Trial Court.  But Ms. Snyder is glossing over a critical point: the 2019 deeds purportedly convey the Property to Ms. Biros *directly from the sellers*, not U Lock.  As a practical matter, the Court questions how the 2019 deeds could transfer to Ms. Biros what the sellers had once given to U Lock in 2018.  Ms. Biros would answer that the 2019 deeds declare all deeds recorded after July 16, 2015 null and void,[99] but there is no explicit order to that effect.[100]  This incongruity apparently escaped the Trial Court's attention.  However this wrinkle is eventually

---

[96]     See 11 U.S.C. §§ 544(b)(1), 547(b), 548(a)(1).

[97]     11 U.S.C. § 550.

[98]     Biros v. U Lock Inc., 255 A.3d at 494 ("Appellant has not challenged the efficacy of the 2018 Deeds. Appellant cites no legal authority preventing the Estates from issuing the 2018 Deeds subject to Lis Pendens. Furthermore, the trial court accepted the legitimacy of the 2018 Deeds: "Even accounting for the void ab initio status of the [2015 Deeds], the corrective [2018 Deeds], show legal title in the [Property] belonging to U Lock, Inc. Certainly, U Lock has had full possession and control of the [Property] since July 16, 2015 [...]." Trial Court Opinion, 8/23/19, at 5.").

[99]     See Exhibit G, Dkt. No. 23-7 at 2, 17, 30, 44.

[100]    See Exhibit 10, Dkt. No. 17-10 at 9, ¶ 4.  Ironically, if the 2019 deeds could return U Lock's interest to the sellers and then transfer it to Ms. Biros, that might support the existence of an indirect "transfer of an interest of the debtor."

14

smoothed, today it is enough that the 2019 deeds did not "transfer of an interest *of the debtor* in property."[101]

To be blunt, the deeds are a distraction whose importance has been overstated. It is unclear whether the 2019 deeds effectively transferred anything to Ms. Biros. And the "accepted . . . legitimacy of the 2018 Deeds"[102] merely recognizes a matter of public record: that "[e]ven accounting for the *void ab initio* status of the original [2015] deeds, the [2018 deeds] show *legal title* in the [] Property belonging to U Lock, Inc."[103] Far from the validation Ms. Snyder touts, the chain of title is a technicality that ignores the effect of the Trial Court's orders on the Property's equitable interest.

It is undisputed that the Trial Court imposed a constructive trust on the Property in favor of Ms. Biros, which the Superior Court affirmed on appeal.[104] "The imposition of a constructive trust is an equitable remedy designed to prevent unjust enrichment."[105] In essence, "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee."[106] The point

---

[101]    11 U.S.C. §§ 544(b)(1), 547(b), 548(a)(1) (emphasis added).

[102]    Biros v. U Lock Inc., 255 A.3d at 494.

[103]    *Exhibit 10*, Dkt. No. 17-10 at 6 (emphasis added); see Biros v. U Lock Inc., 255 A.3d at 494.

[104]    Biros v. U Lock Inc., 255 A.3d at 496.

[105]    Yohe v. Yohe, 466 Pa. 405, 411, 353 A.2d 417, 420 (1976). Under Pennsylvania jurisprudence, "[a] trust 'ex maleficio' is another expression for a constructive trust." Murphy v. Landsburg, 58 F.R.D. 165, 170 (E.D. Pa. 1973), aff'd, 490 F.2d 319 (3d Cir. 1973); see Hamberg v. Barsky, 355 Pa. 462, 465, 50 A.2d 345, 346 (1947).

[106]    Biros v. U Lock Inc., 255 A.3d at 495 (quoting Beatty v. Guggenheim Expl. Co., 225 N.Y. 380, 386, 122 N.E. 378, 380-81 (1919)) (internal quotation marks omitted); see Shoemaker v. Lehigh Twp., 544 Pa. 304, 311, 676 A.2d 216, 220 (1996); Stauffer v. Stauffer, 465 Pa. 558, 568, 351 A.2d 236, 241 (1976); Buchanan v. Brentwood Fed. Sav. & Loan Ass'n, 457 Pa. 135, 152, 320 A.2d 117, 127 (1974); Pierro v. Pierro, 438 Pa. 119, 127, 264 A.2d 692, 696 (1970); Truver v. Kennedy, 425 Pa. 294, 305, 229 A.2d 468, 474 (1967); Chambers v. Chambers, 406 Pa. 50, 55, 176 A.2d 673, 675 (1962).

15

is "to restore to the plaintiff property of which he has been unjustly deprived."[107]  As explained by

the Superior Court, "[t]he necessity for [a constructive] trust may arise from . . . fraud, duress,

undue influence or mistake,"[108] but wrongdoing is not required.[109]  To the contrary, there is "no

rigid standard"[110] since "[t]he controlling factor . . . is whether it is necessary to prevent unjust

enrichment."[111]

It is oft repeated that "a constructive trust is bound by no unyielding formula" and

that "[t]he equity of the transaction must shape the measure of relief."[112]  Still, the Pennsylvania

Supreme Court has recognized that "no rule is better established than that a [constructive trust] can

arise *only at the inception of the title*."[113]  Indeed,

> [a]lthough a constructive trust may not be judicially decreed until many
> years subsequent to the transaction giving rise to the trust, the accepted
> theory is that the constructive trust is in existence at the inception of the
> transaction and *the beneficiary is possessed with an equitable interest in the
> trust property prior to the declaration of the constructive trust*.[114]

---

[107]    City of Philadelphia v. Heinel Motors, 142 Pa. Super. 493, 503, 16 A.2d 761, 766 (1940) (quoting Restatement (First) of Restitution § 160, comment (d), p.643 (1937)).

[108]    Biros v. U Lock Inc., 255 A.3d at 495 (quoting Nagle v. Nagle, 799 A.2d 812, 819 (Pa. Super. 2002), appeal denied, 573 Pa. 659, 820 A.2d 162 (2003)) (internal quotation marks omitted).

[109]    See City of Philadelphia v. Heinel Motors, 16 A.2d at 765 ("a constructive trust is imposed . . . to redress wrong or unjust enrichment.").

[110]    Biros v. U Lock Inc., 255 A.3d at 495 (quoting Stauffer v. Stauffer, 351 A.2d at 241) (internal quotation marks omitted).

[111]    Id. (quoting Nagle v. Nagle, 799 A.2d at 819) (internal quotation marks omitted); see Shepley v. Dobbin, 351 Pa. Super. 182, 188, 505 A.2d 327, 330 (1986) ("Equity will impose a constructive trust under appropriate circumstances. However, our case law is exigent in demanding evidence of unjust enrichment before a trust will be created.").

[112]    Stauffer v. Stauffer, 351 A.2d at 241 (quoting Beatty v. Guggenheim Exploration Co., 122 N.E. at 380—81) (internal quotation marks omitted).

[113]    Turney v. McKown, 242 Pa. 565, 568, 89 A. 797, 798 (1914) (emphasis added); see In re Pitchford, 410 B.R. at 420; In re W/B Assocs., 307 B.R. 476, 484 (Bankr. W.D. Pa. 2004), aff'd sub nom. Est. Partners, Ltd. v. Leckey, No. 2:04CV1404, 2005 WL 4659380 (W.D. Pa. Aug. 31, 2005), aff'd sub nom. In re W/B Assocs., 196 F. App'x 105 (3d Cir. 2006); In re Aultman, 223 B.R. at 483; Grubbs v. Dembec, 274 Pa. Super. 362, 370, 418 A.2d 447, 451 (1980).  In fact, the Pennsylvania Supreme Court asserted that "[t]his rule is too familiar to call for any citation of authorities in support."  Turney v. McKown, 89 A. at 798.

[114]    Grubbs v. Dembec, 418 A.2d at 451 n.1 (1980) (typographical error corrected, citations omitted, emphasis added).

Retroactivity is inherently logical because the trust is triggered by the property owner "acquir[ing]" title to it in some way that creates the equitable duty in favor of the [beneficiary]."[115] This duty renders them a constructive trustee whose "sole responsibility . . . is to surrender the property to the one on whose behalf the constructive trust is raised."[116] As a result, the legal title holder "has *no right whatsoever* to the property"[117] and is deemed *never* to have owned the equitable interest.[118]

    As recognized by the late Judge McCullough in two published decisions, these principles make a constructive trust under Pennsylvania law innately unavoidable as a preference or fraudulent transfer.[119] Since the "debtor is deemed to have never owned the equitable interest . . . in the first place," he reasoned that "property that is the subject of a constructive trust is, as a matter of law, never legally transferred back by a debtor to the beneficiary."[120] Thus, the imposition of a constructive trust is neither a "transfer" for purposes of the Code, nor a transfer "of an interest of the debtor."[121] The Court finds this analysis unassailable.

    Ms. Snyder does not dispute these concepts generally but challenges their applicability here. Positing that the Trial Court was "free to fashion an appropriate remedy under the circumstances,"[122] she seizes on the Trial Court's reference to "the **present conveyance of the Subject Property**."[123] Ms. Snyder contends that this language reveals that the conveyance to Ms.

---

[115]    Shoemaker v. Lehigh Twp., 544 Pa. 304, 311, 676 A.2d 216, 220 (1996).

[116]    Buchanan v. Brentwood Fed. Sav. & Loan Ass'n, 320 A.2d at 127

[117]    Kern v. Kern, 2005 Pa. Super. 422, ¶ 21, 892 A.2d 1, 8 (2005).

[118]    See In re Pitchford, 410 B.R. at 420 (citing In re Aultman, 223 B.R. at 485-86).

[119]    Id.

[120]    In re Pitchford, 410 B.R. at 420-21 (citing In re Aultman, 223 B.R. at 485-86).

[121]    Id.

[122]    *Supplement in Opposition*, Dkt. No. 34 at 9.

[123]    Id. at 2 (quoting *Exhibit 10*, Dkt. No. 17-10 at 9) (emphasis added by Ms. Snyder).

Biros did not relate back, affording her a remedy akin to a money judgment.[124]  Yet the Court finds

this emphasized passage has been pulled from its context to advance an irrational interpretation of

the Trial Court's ruling and constructive trust law as a whole.

       To start, the entire passage of the Trial Court's ruling states: "the only equitable

solution is the imposition of a constructive trust, *and* the present conveyance of the Subject

Property to [Ms.] Biros."[125]  Fundamentally, a constructive trust with prospective effect only upon

the delivery of a deed is just a transfer.  Even considering the Trial Court's equitable relief flexibly,

the express imposition of a constructive trust requires the remedy to include some trust-like aspect.

Of course, a fair reading of that passage reveals that the "present conveyance" *supplements* "the

imposition of the constructive trust."[126]  By operation of law, the constructive trust vested the

Property's equitable interest in Ms. Biros as of the original sale transaction in July 2015.

Therefore, the "present conveyance" was only necessary to transfer legal title.  After all, as Ms.

Snyder stresses, the 2018 deeds "show *legal title* in the Subject Property belonging to U Lock."[127]

And to remove any lingering doubts, the Trial Court's order provides that "Christine Biros *is* the

equitable owner of the Subject Property" and separately directs the execution of "appropriate

deeds."[128]

       In sum, Ms. Snyder has stated no claim for relief because neither Ms. Biros nor the

Trust received a "transfer of an interest of the debtor" in the Property.[129]  Despite the "legitimacy

---

[124]    Id. at 2, 4, 11.

[125]    *Exhibit 10*, Dkt. No. 17-10 at 7 (emphasis added).

[126]    Id.

[127]    Id. at 6.

[128]    Id. at 9 (emphasis added).

[129]    11 U.S.C. §§ 544(b)(1), 547(b), 548(a)(1).

of the 2018 Deeds,"[130] U Lock never held an equitable interest in the Property as a result of the constructive trust.  At best, U Lock might hold bare legal title to the Property in trust for Ms. Biros until the Trial Court clarifies its orders.  In any event, the inability to allege an avoidable transfer is a conceptual defect in the *Complaint* that further amendment cannot correct.[131]  Accordingly, dismissal with prejudice is warranted.

## V.    CONCLUSION

In light of the foregoing, the Court will grant the *Motion to Dismiss* and dismiss this adversary proceeding with prejudice since further amendments would be futile.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: July 21, 2023

_____
GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[130]    Biros v. U Lock Inc., 255 A.3d at 494.

[131]    As was undoubtedly telegraphed throughout this *Memorandum Opinion*, the other elements of these avoidance theories rely almost entirely on threadbare assertions that lack facial plausibility. See Iqbal, 556 U.S. at 678-79.  This includes: Ms. Biros' alleged insider status; Ms. Biros' alleged intent to hinder delay or defraud; that the alleged "transfer" was for less than reasonably equivalent value; and that Ms. Biros allegedly received more than she would have in a chapter 7 liquidation had U Lock owned the Property.

19

**Page 448**

FILED
8/2/23 3:07 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re:  U LOCK INC. a/k/a | ) | |
| U-LOCK INC. | ) | Case. 22-20823-GLT |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ——------------------------------------- | ) | |
| GEORGE SNYDER, | ) | RE:  Claim 9  Administrative Expense |
| | ) | |
| Movant, | ) | Related to Dkt. No. 463 |
| | ) | Hearing: August 17, 2023 at 10:30 a.m. |
| v. | ) | |
| | ) | |
| U LOCK INC., Debtor, | ) | |
| ROBERT H. SLONE, Chapter | ) | |
| 7 TRUSTEE, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING GEORGE SNYDER'S MOTION FOR ALLOWANCE AND PAYMENT
OF ADMINISTRATIVE EXPENSE PURSUANT TO 11 U.S.C. 503(b)(1), 11 USC 507(a)(2), OR
ANY OTHER STATUTE**

AND NOW, this  2nd  day of  August  2023, upon due consideration of the Motion for

Allowance and Payment of Administrative Expense filed by George Snyder, it is hereby ORDERED,

ADJUDGED, and DECREED that said motion is GRANTED.

George Snyder is granted an allowed administrative expense pursuant to 11 USC 503(b)(1) in

the amount of $1,045.94.  This disposes of his Claim #9.

The Trustee is directed to pay the Allowed Amount from funds in the Debtor's estate promptly

after entry of this Order.

Prepared by:   George Snyder

**DEFAULT ENTRY**

Dated: August 02, 2023

_____
Gregory L. Taddonio        *jah*
Chief United States Bankruptcy Judge

Case Administrator to serve:
George Snyder
Robert H. Slone, Esq.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br>U LOCK INC.,<br>　　　　　Debtor.<br><br><br>CHRISTINE BIROS,<br>　　　　　　　Movant,<br><br>　　　　　v.<br><br>ROBERT H. SLONE, Chapter 7 Trustee for<br>the Estate of U LOCK, INC.,<br><br>　　　　　Respondent | Bankruptcy No. 22-20823-GLT<br><br>Chapter 7<br><br><br>Related Doc. No. 344, 345, 346, 349, 365,<br>367 |

## MOTION TO RESET THE HEARING ON CONSENT MOTION TO APPROVE SETTLEMENT AGREEMENT PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

NOW COMES, Christine Biros (the "Movant"), creditor and party-in-interest in the above captioned bankruptcy case, by and through her undersigned counsel, Bernstein-Burkley, P.C. and files this *Motion to Reset the Hearing on the Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure [Doc. No. 345]* (the "Motion") and in support hereof states as follows:

## JURISDICTION AND VENUE

1.　　The United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2.　　Venue of this case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3.     The statutory predicates for the relief hereinafter requested are section 105 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

## SUMMARY

4.     The Chapter 7 Trustee, Robert H. Slone, Esq, (the "Trustee") has entered into a Settlement Agreement with creditor Christine Biros referenced herein that was the subject of the Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure [Doc. No. 345](the "9019 Motion") that settled Biros' claims against the Estate and was previously heard before this Honorable Court.

5.     The Trustee has indicated that he has no objection to Biros asking the Court to reset the hearing on the 9019 Motion.

## FACTUAL BACKGROUND

6.     On April 27, 2022 (the "Petition Date"), an involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against U LOCK Inc., (the "Debtor") in the United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") at case number 22-20823-GLT (the "Case").

7.     The Debtor did not file a response to the involuntary petition.

8.     On June 17, 2022, the Court entered an Order for Relief. [Docket No. 42]

9.     On August 25, 2022, Biros filed Claim Number 2 in the total amount of $20,642.53 ("Claim Number 2"), seeking payment of certain real estate taxes which the Debtor was ordered to pay by the Supreme Court of Pennsylvania on the real property owned by Biros.  Biros intends to amend the claim to include the post-petition taxes which the Debtor has also failed to pay.  These taxes have since been paid to the taxing authority by the Trustee.

10.     On August 25, 2022, Biros filed Claim Number 3, seeking payment of prepetition rent in the total amount of $405,000.00 for the period of time from July 2015 through April 2022 ("Claim Number 3") when Debtor held and used Biros' real property.

11.     On August 26, 2022, Biros filed Claim Number 4, seeking payment of unliquidated damages for the cost of environmental remediation ("Claim Number 4" together with Claim Number 1, Claim Number 2 and Claim Number 3, the "Claims") as a result of damage by the Debtor to Biros' real property during the period when Debtor had the use and occupancy of the real property.

12.     On December 20, 2022, this Honorable Court entered an Order approving a sale of substantially all of the assets of the Debtor (the "Sale Order"). [Doc. No. 254]

13.     On December 22, 2022, Biros filed her Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. §503(b)(1) [Doc. No. 258].

14.     On January 6, 2023, the Trustee filed his Response to the Motion for Administrative Expense (the "Response") acknowledging that an allowance of some amount is appropriate, but disputing the amount requested by Biros. *See*, Doc. No. 277.

15.     On January 30, 2023, this Honorable Court entered an Order setting, *inter alia*, a deadline of March 1, 2023, for Biros to file a Renewed or Amended Motion for Administrative Expense Claim.

16.     On February 27, 2023, Biros and the Trustee entered into an agreement resolving the claims asserted by Biros, including an allowed administrative expense claim in the reduced agreed amount of $18,000.00 (the "Administrative Expense Claim") (the "Settlement Agreement").

17.     On March 1, 2023, Biros and the Trustee submitted a Consent Motion to Approve

the Settlement Agreement [Doc. No. 345] (the "9019 Motion").

18.     On March 1, 2023, Biros also filed an Amended Motion for Allowance and Payment of Administrative Expenses Pursuant to 11 U.S.C.§ 503(b)(1) and/or for Payment of Adequate Protection [Doc. No. 344] (the "Motion for Administrative Expense Claim").

19.     The Court held a hearing on the 9019 Motion on April 13, 2023.  For the reasons stated on the record, the Court continued the hearing until conclusion of that certain avoidance action filed against Biros and pending further Court order. See, Doc. No. 365.

20.     The avoidance action filed against Biros on February 28, 2023 by Shanni Snyder at Adversary Case Number 23-02020 (the "Avoidance Action") was dismissed with prejudice on July 21, 2023[1]. On July 7, 2023, this Court entered an Order requesting that the Chapter 7 Trustee submit a status report indicating the amount of fees spent to date, the balance of funds held by the Estate, and whether the Chapter 7 Trustee believes any claims still exist that might result in a recovery for the estate and, if possible, their estimated value.  [Doc. No. 451]

21.     On July 13, 2023, the Chapter 7 Trustee submitted the Status Report. [Doc. No. 477].

## **RELIEF REQUESTED**

22.     By this Motion, the Movant respectfully requests that this Court reset the hearing on the 9019 Motion as to the Administrative Expense Claim only and grant such other and further relief as this Court deems just and proper.

---

[1] Biros notes Shanni Snyder has appealed the Dismissal Order to the Western District of Pennsylvania District Court at Case No. 2:23-cv-01410 and the appeal is currently pending.  Biros believes and therefore avers, the District Court will issue an opinion denying the appeal shortly.

## BASIS FOR RELIEF REQUESTED

23.    Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "the court may issue any order . . . necessary or appropriate to carry out the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a). In addition, Federal Rule of Bankruptcy Procedure 9019(a) provides that "on a motion by the trustee and after a hearing, the Court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). For further basis, Movant respectfully incorporates and refers to the basis stated in the 9019 Motion.

24.    Since the continuance of the 9019 Motion, the Trustee has paid the real estate taxes, resolving Claim Number 2 filed by Biros.

25.    During the course of this Bankruptcy Case, there have been ongoing discussions *inter alia* regarding Biros' Claims. Now that the Sale Order has been entered, and Claim Number 2 has been resolved, the Parties wish to resolve outstanding disputes and to work toward the Trustee's resolution and closing of this case.

26.    Based on the Status Report filed by the Truste, combined with the other activity in the case, it appears there is little or no likelihood of substantial additional funds coming into the Trustee's hands from which a distribution could be made.

27.    Considering the amounts disclosed by the Status Report, it appears obvious that the allowed Administrative Expense claims in the case will consume all the distributable funds and will still not be paid in full.

28.    As set forth above, since the hearing on the 9019 Motion, the Trustee has paid the priority tax claim, which was the subject of Claim Number 2, thereby mooting that claim.

29.    As a result, Biros does not believe the Court needs to consider approval of the Settlement Agreement as it relates to Claim Number 2 as it is now moot.

30.     Additionally, given the lack of available funds to distribute, the only Biros Claims set forth in the 9019 Motion that would potentially receive a distribution given the Bankruptcy Code's priority scheme is the Administrative Expense Claim.   Since there are no pending Objections to Claim 3 and Claim 4, there is no need for the Court to consider the 9019 Motion with respect to those claims.

31.     As only the requested Administrative Expense Claim will have an impact on the Trustee's expected distribution and there are minimal funds remaining in the Estate, the Trustee and Biros respectfully request that this Honorable Court reset a hearing on the 9019 Motion to consider the Administrative Expense Claim only.

WHEREFORE, Christine Biros, creditor and party-in-interest, respectfully request that this Honorable Court reset the hearing on the Settlement Motion.

Dated: November 29, 2023

Respectfully submitted by:

BERNSTEIN-BURKLEY, P.C.

By: */s/ Robert S. Bernstein*
Robert S. Bernstein (PA ID No. 34308)
Lara S. Martin (PA ID No. 307272)
601 Grant Street, Floor 9
Pittsburgh, PA 15219
Telephone: (412) 456-8108
Facsimile: (412) 456-8135
rbernstein@bernsteinlaw.com
lmartin@bernsteinlaw.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

U LOCK INC.,

      Debtor,

---

Christine Biros,

      Movant,

v.

Robert H. Slone,
Chapter 7 Trustee for the Estate of
U LOCK INC.,

      Respondent

BANKRUPTCY NO. 22-20823-GLT

CHAPTER 7

---

Doc. No.

Related to Doc. Nos.: 344, 345, 352, 356, 365, 367, 501 and 503

Hearing Date and Time:
January 4, 2024 at 10:00 A.M.

---

### RESPONSE TO MOTION TO RESET THE HEARING ON CONSENT MOTION TO APPROVE SETTLEMENT AGREEMENT PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

And Now, comes Shanni Snyder ("Snyder"), a creditor of the Debtor and a party-in-interest herein, by and through her undersigned Counsel, and files this Response to Motion to Reset the Hearing on Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure as follows:

1. On March 1, 2023, Christine Biros ("Biros") filed an Amended Application for Administrative Expenses at Doc. No. 344 herein.

2. Also on March 1, 2023 Biros filed a Consent Motion to Approve Compromise Under Rule 9019 at Doc. No. 345. The compromise for which approval was being sought included an allowance of Biros' asserted administrative claim with the consent of Chapter 7 Trustee Robert Slone.

3. Snyder objected to the proposed Settlement Agreement at Doc. No. 352 herein.

4. Following a hearing on the matter (Doc. No. 365), this Honorable Court continued the matter pending further Order of Court (Doc. No. 367).

5. Biros has filed a Motion requesting that this Honorable Court reset the hearing on the Consent Motion to Approve Settlement at Doc. No. 501 herein ("the Reset Motion").

6. The Reset Motion purports to merely seek the scheduling of a hearing on the Consent Motion to Approve Settlement Agreement. However, the proposed order attached to the Reset Motion provides for contradictory relief. The first paragraph of the proposed order provides for the granting of the Consent Motion to Approve Settlement Agreement while the second paragraph of the proposed order calls for the scheduling of a hearing on the Motion to Approve Settlement Agreement.

7. If, in fact, Biros is simply seeking the scheduling of a hearing on this matter, Snyder does not oppose same. However, if the Reset Motion, in itself, is intended to result in an Order from This Honorable Court approving the Settlement Agreement between Biros and Trustee Slone, Snyder objects for the following reasons:

   a. Trustee Slone recently paid Westmoreland County for the property taxes on the property at 14140 Route 30. Based on information, not only did Trustee Slone pay the past due taxes, but he also paid a portion of the taxes during the time when Christine Biros had majority possession of the property.

   b. Further, this Honorable Court previously ruled, that under a constructive trust, Biros gained retroactive ownership of the property from 2015.

   c. That decision is on appeal, presently in front of the district court.

   d. If the decision of this Honorable Court is affirmed, then the amount paid by the

Trustee in property taxes would offset Biros' claim for administrative rents – especially the amounts of property taxes paid during the time the deed was in Biros' name and she had possession or majority possession.

e.  It would be improvident to decide these matters absent a final adjudication of the finding of fact relating to the ownership of the property and, as a result, the amount of rent that Biros would be entitled to pursuant to the administrative claim in that the Biros administrative claim includes claims for rent at the same time that she was awarded the property in lieu of a money judgment to avoid an unjust enrichment. For Biros to receive the property to compensate her for monies expended and then receive rent in addition would constitute double compensation and an unjust enrichment to Biros.

f.  There is likewise an environmental clean-up component to the Biros claim, the legitimacy of which is in dispute.

8.  Therefore, the Motion to Reset Hearing should be denied without prejudice and the matters should be held in abeyance until it can be determined whether the payment of tax liabilities that may have actually belonged to Biros, not the Estate, and whether the propriety of the rent and environmental component of the Biros claim, can be determined.

WHEREFORE, the Motion to Reset the Hearing should be denied without prejudice.


Respectfully Submitted,


Date: <u>December 21, 2023</u>          <u>*/s/ David L. Fuchs*</u>
                                        DAVID L. FUCHS
                                        PA I.D. #205694
                                        Fuchs Law Office, LLC
                                        554 Washington Ave, First Floor
                                        Carnegie, PA 15106

(412) 223-5404 (phone)
(412) 223-5406 (facsimile)
dfuchs@fuchslawoffice.com

AND

/s/ *John P. Lacher*
JOHN P. LACHER
PA I.D.#62297
The Lynch Law Group
501 Smith Drive, Suite 3
Cranberry Township, PA 16066
(724) 776-8000
(724) 776-8001
jlacher@lynchlaw-group.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In re:  U LOCK INC. a/k/a          )
U-LOCK INC.                        )        Case. 22-20823-GLT
                                   )
            Debtor.                )
                                   )        To be heard January 4, 2024

### RESPONSE OF GEORGE SNYDER TO MOTION TO RESET HEARING

I am filing my response to the Motion of Christine Biros to reset the hearing as an interested

party and creditor of the Debtor.

First, I agree with the position of Shanni Snyder's response. The matter should not be

determined until a final ruling occurs.

Second, if this Court does decide to hear the matter now instead of later, I ask that the hearing

Ms. Biros requests be set for a period in mid to late March, 2024, to accommodate my temporary

disability pursuant to the Americans With Disabilities Act.  Specifically, I was recently informed that I

need open heart surgery promptly. I am informed that my aortic valve needs replaced with either a tissue

valve or a carbon fiber valve.  This created a serious disability that stops me from litigating temporarily.

 I am informed that pre-op testing and procedures will be done over the next couple weeks.  This will

include aortic measurements and a cardiac catheterization.  There will also be lab tests, chest x-ray,

EKG, evaluation for anaesthesia, and other pre-operation procedures.  I was informed that I will need

to do a catheter in my arteries pre-op. Then I will be scheduled for the surgery which will keep me in

the hospital for about one week to ten days.  After discharge, if I am not required to go to rehab, I was

instructed to stay home during recuperation for approximately one month, prohibited from driving, and

engaging in any strenuous or stressful matter.  These are best case scenarios and assume the surgery has

zero complications.  NOTE: I may not be able to attend the January 4, 2024, hearing.  I will try my

best to attend by Zoom, it depends if I have a doctor's appointment or they tell me not to go.  I ask for

accommodation that these objections be considered even if I don't attend. I probably won't have much to add verbally anyway.

Third, of course, I disagree on the merits of Ms. Biros' claims. I will file objections before my surgery. To summarize, the environmental claim is nothing but a money grab as they did not, do not intend to, and will not do any remediation. They admitted that their estimates were reduced by the work Shanni Snyder did by $50,000 or more, which shows the specious nature of the claims. It's like taking a car to various auto shops, getting estimates to repair them, and then just taking a bottle of nail polish to fix the scratches. They simply mixed the old dirt that they said was contaminated with the junk dirt and boulders they took, probably for compensation, while billing U Lock for rent. As to the tax claim, they have no legal basis to say it was a priority claim and they, of course, pressured the Trustee to pay it as though it were somehow due.

Even without Shanni Snyder's position that this Court's ruling showed Biros is responsible for the taxes, the fact is that the deed Biros filed accepted all liens including that tax lien. It's right in the language on that deed. Therefore the Estate never owed those taxes since Biros accepted that deed without notice to U Lock. More important to the merits of the tax claim, the Trustee had no reason to pay the last year's taxes. Biros owned the property for that entire year and possessed it.

With respect to the rent claim, it needs to be offset by the unjust enrichment and windfall from the erroneous paid taxes. Also during the time Biros was collecting clean fill, the rent should be reduced as they operated over 80 percent of the facility. They also blocked access and removed all of the equipment. They blocked tenants from accessing it and engaged in self-help remedies.

I declare under the penalty for perjury that the foregoing are true and correct to the best of my knowledge. 28 USC 1746.

This 21st day of December, 2023



George Snyder


CERTIFICATE OF SERVICE

The following persons will receive ECF Electronic service when the Clerk files and processes these objections:

Bernstein lawyers for Christine Biros

Allen Roth for U Lock

Mr. Fuchs and Lacher for Shanni Snyder

Trustee Robert Slone

Interested Trustee Charles Zebley

All members of the ECF who receive notice electronically.


This 21st day of December, 2023

George Snyder
PO Box 15
Irwin PA  15642
412-979-9999

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

FILED
1/10/24 9:03 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN RE:                          .   Case No. 22-20823-GLT
                                .
U LOCK INC,                     .   5414 U.S. Steel Tower
                                .   600 Grant Street
                                .   Pittsburgh, PA 15219
          Debtor.              .
                                .   January 4, 2024
. . . . . . . . . . . . . . .   .   10:05 a.m.

TRANSCRIPT OF #501 MOTION TO CONTINUE/RESCHEDULE HEARING
ON THE CONSENT MOTION TO APPROVE SETTLEMENT AGREEMENT PURSUANT
TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
(DOC. NO. 345)
BEFORE THE HONORABLE GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For Christine Biros:        Bernstein-Burkley, P.C.
                            By:  ROBERT S. BERNSTEIN, ESQ.
                            601 Grant Street, Ste 9th Floor
                            Pittsburgh, PA 15219

TELEPHONIC APPEARANCES:

For the Chapter 7           Office of the U.S. Trustee
Trustee:                    By:  ROBERT H. SLONE, ESQ.
                            223 South Maple Avenue
                            Greensburg, PA 15601

For Shanni Snyder:          The Lynch Law Group LLC
                            By:  JOHN PATRICK LACHER, ESQ.
                            501 Smith Drive, Suite 3
                            Cranberry Twp, PA 16066

For George Snyder:          By:  GEORGE SNYDER - Pro se
                            PO Box 15
                            Irwin, PA 15642

ECRO:                       Hayley Smith

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311      Fax No. (609) 587-3599**

1          THE COURT:  All right.  The next matter is Case

2    Number 22-20823, U LOCK INCORPORATED.

3          I'll start by taking appearances here in the

4    courtroom, please.

5          MR. BERNSTEIN:  Good morning, Your Honor.  Robert

6    Bernstein, Bernstein-Burkley, on behalf of Christine Biros, who

7    is also here at counsel table with me.

8          THE COURT:  Good morning.

9          MS. BIROS:  Morning.

10          THE COURT:  And do I have any appearances by Zoom by

11    the Chapter 7 Trustee?

12          MR. SLONE:  Yes.  Chapter 7 Trustee, Robert Slone.

13          THE COURT:  All right.  Good morning.  And do I have

14    an appearance for Shanni Snyder?

15          MR. LACHER:  Good morning, Your Honor.  John Lacher

16    on behalf of Creditor and Party-in-Interest Shanni Snyder.

17          THE COURT:  All right.  Good morning.  And do I have

18    an appearance for Mr. Snyder?  You might be on mute, Mr.

19    Snyder.

20          MR. SNYDER:  Yes.  George Snyder, Your Honor.

21          THE COURT:  All right.  Good morning.

22          MR. SNYDER:  Good morning.

23          THE COURT:  All right.  Is there anyone else who

24    wishes to enter an appearance in this case?

25          Okay.  This is the Motion to Continue or Reschedule a

1  Hearing on the Consent Motion to Approve the Settlement

2  Agreement between Christine Biros and the Trustee involving

3  several Claims and I have Responses that have been filed to

4  that Motion by Shanni Snyder and George Snyder.

5           Before I get into the heart of the issues here, I

6  just wanted to get some brief explanatory information from the

7  Trustee.  And this is I think taken from the Status Report and

8  the prior Hearing we had last August or so in this.

9           My understanding is that Trustee has paid some of the

10 real estate taxes on this parcel and I wanted to verify with

11 Mr. Slone what the amounts of those payments were and what

12 periods those covered.

13          MR. SLONE:  Yes, Your Honor.  The Tax Claim Bureau

14 was paid I believe it was May of 2023.  The amount was

15 $28,028.75.

16          THE COURT:  Okay.  So, you paid $28,028.75?

17          MR. SLONE:  75 cents.

18          THE COURT:  I'm sorry.  You're cutting out a little

19 bit.  So, what was the cents?

20          MR. SLONE:  I'm sorry.  $28,028.75.

21          THE COURT:  Okay.  And, again, confirm for me the

22 period that that applied to.

23          MR. SLONE:  That was -- I'll get that out, hold on.

24 That was the periods from 2019 to 2022.

25          THE COURT:  Okay.  And that's the extent of what's

4

1  been paid?

2            MR. SLONE:  Yes.

3            THE COURT:  Has there been any other disbursements

4  from the Estate other than that?

5            MR. SLONE:  Yes.  I paid myself a part of the

6  Attorney's fee, which was approved by the Court, Your Honor.

7            THE COURT:  Is that with the sale?  I don't recall

8  when that --

9            MR. SLONE:  Yes.  I was paid $18,972.

10           THE COURT:  Okay.  And what was the basis for paying

11 the real estate taxes?

12           MR. SLONE:  That was part of the Agreement and at the

13 Hearing on 4/13/23 on Page 39 it says, "I'm saying that the

14 distribution would be withheld with the exception that if the

15 Trustee wishes to proceed with paying the Tax Claim to the Tax

16 Claim Bureau, he is free to do that."

17           Also prior to paying those taxes I contacted the

18 party, Mr. Lacher I talked to in the Bernstein office, and I

19 believe William Otto, to pay those taxes, and then sent a

20 receipt of the payment afterwards, Your Honor.

21           THE COURT:  Okay.  All right.  So, thank you, Mr.

22 Slone.

23           This is the Motion to bring forward again the Court's

24 consideration of the Settlement Motion and in the Motion it's

25 been represented that some of these items may have been

1 resolved through themselves and then other items, Christine

2 Biros is asking the Court to consider again and approve.

3        So, let me hear from the parties at this point and

4 then we'll proceed from there.  Mr. Bernstein.

5        MR. BERNSTEIN:  Thank you, Your Honor.  So we, just

6 to be clear, we are not seeking any action with regard to the

7 property taxes, the real estate taxes.  Our understanding was

8 after the April 13th Hearing it made sense for the Trustee to

9 pay them.  This was what was included in Ms. Biros' Claim

10 Number 2 and we're not seeking to go forward on that.

11       Likewise, Ms. Biros has Claims Number 3 and 4 that

12 are pre-petition Unsecured Claims, one for rent for a

13 pre-petition period, and the other for environmental

14 remediation, both of which we are clear from the Status

15 Conference in August and what's happened since then, they're

16 out of the money.  The Unsecured Creditors are not receiving

17 anything here.

18       So, that was the subject, that's really what led up

19 to our Motion.  We have the Administrative Claim.  The April 13

20 Hearing almost resolved the 9019 Motion.  I think the Court was

21 very close to approving some or all of the settlements.  The

22 avoidance action that was pending created sufficient

23 uncertainty that the Court continued the Motion.  During that

24 Hearing the Court suggested the Trustee could pay the real

25 estate taxes and he subsequently did, as he said.  And the

1  Motion on for today, we're seeking only the Administrative

2  Claim approval.  The others are either moot or irrelevant.

3          In the past the Court has expressed concerns about

4  the level of animosity and litigation over what was a very

5  small Estate and has turned out to be very small.  Ms. Biros

6  has tried to explain that much of her activity has resulted

7  from the practices of the Snyders to litigate everything,

8  everywhere, as many times as they can.  And, of course, that's

9  the basis for her action, RICO action in the District Court.

10          Today we see evidence of that strategy from the

11  Snyders again.  We filed what we thought was a simple innocuous

12  request for a hearing on the $18,000 Administrative Right

13  Claim, and the Snyders both filed lengthy Objections to all of

14  the Claims and lengthy Objections to the Motion, referring to

15  all the Claims.

16          While George Snyder holds an Administrative Claim

17  which might give him standing to object to the Unsecured

18  Claims, Shanni Snyder doesn't have a Claim.  We don't think she

19  has standing.  In any event, we'll deal with Mr. Snyder's

20  Objections when they are heard.

21          I'm sorry, I wasn't clear.  He not only filed an

22  Objection to the Motion, but he filed yesterday Objections to

23  the Claim 3 and Claim 4, which doesn't make any sense to us,

24  but we'll deal with it when we deal with it.

25          For today we're seeking an opportunity to argue the

7

1 9019 Settlement Agreement with the Trustee on the

2 administrative rent.  If this is the Hearing to do that, we're

3 prepared to go forward.  If this is a Hearing to set a Hearing,

4 we're prepared to deal with that.  We just, we want to help

5 move the case forward.  We're trying to end this.

6          With regard to the substance of the 9019, we'd say

7 that we incorporate the arguments made on April 13th.  The

8 Settlement of the Administrative Rent Claim is well within the

9 range of reasonableness and meets the Martin factors, as

10 outlined on the 13th.  Ms. Biros is the owner of the Real

11 Property.  The Debtor and the Trustee had possession of some or

12 all of that Real Property for approximately nine months

13 post-petition.  $2,000 per month is a reasonable compromise of

14 the Rental Value for that possession.

15          The Court was ready to approve the Claim on April

16 13th, but heard arguments from the Snyders that a possible

17 favorable result on the Adversary might somehow allow an unjust

18 result, if the Settlements had been approved at that time.

19 This seems no longer even remotely likely.  We would ask the

20 Court to approve the Settlement for the reasons heard on April

21 13th.

22          I'd just like to add at that Status Conference in

23 August, when we were discussing the administrative insolvency

24 of this Chapter 7 case, we expressed concern that the Court

25 might find the need to moot our Objection to Shanni Snyder's

1  Claim.

2            We encourage the Court to continue to make the

3  Decision since it had been fully briefed and argued, and the

4  Court indicated that it would.

5            Since that time, the District Court has affirmed this

6  Court's Decision on the Dismissal in the Adversary.  We hope

7  the Court is near to releasing a Decision on the Shanni Snyder

8  Claim Objection so that we can begin to deal with the appeal

9  process which we have no doubt will ensue.

10           So, we would ask the Court to approve today the

11 $18,000 Settlement of the Admin Claim so that the Trustee can

12 have clarity on what the Administrative Expenses are that have

13 to be prorated.

14           Thank you, Your Honor.

15           THE COURT:  Thank you.  All right.  Well I -- to

16 answer your first question, I am prepared to move forward on

17 the merits of this today for two reasons.  One is, I previously

18 had a full hearing on the Settlement Motion before, and took it

19 under advisement at the time and figured that it was ready for

20 consideration pending the Court's consideration of other

21 factors.

22           Related to that though you mentioned just now that

23 the District Court affirmed my Dismissal of the Adversary

24 Proceeding.  I wasn't aware of that.  Is that -- I mean, I was

25 aware that the --

1          MR. BERNSTEIN:  I'm pretty sure I saw that Decision

2    last week, Your Honor, from --

3          THE COURT:  I think that was my Decision on George

4    Snyder's Claim.

5          MS. BIROS:  Yes.

6          MR. BERNSTEIN:  I may have misspoken.

7          THE COURT:  Okay.  Because I --

8          MR. BERNSTEIN:  I apologize, Your Honor.

9          THE COURT:  I just wanted to make sure I didn't miss

10   something because that would be something that I, you know,

11   certainly would want to take into consideration.

12         MR. BERNSTEIN:  We're fully expecting it to be

13   affirmed.

14         THE COURT:  Okay.

15         MR. BERNSTEIN:  Sorry, I may have jumped the gun.

16         THE COURT:  No, that's fine.  And then, secondly, I

17   think I've given the parties ample time to be heard.  You know

18   this was scheduled for a Hearing.  This Motion was filed in

19   early December and now here we are a month later and the

20   parties have had time to be heard on this and have voiced full

21   throated Responses and Objections.  So, I think there has been

22   adequate due process afforded here.

23         So, let me ask you specifically the type of relief

24   that you are asking for.  You are asking that basically I would

25   approve the Settlement to the extent it applies to the

1 Administrative Rent Claim and then do nothing further on the

2 other two Claims or what --

3        MR. BERNSTEIN:  Correct, Your Honor.  We'd like the

4 $18,000 Administrative Claim to be allowed, to be paid on final

5 distribution.  And the Motion could be dismissed as to the

6 other three Claims, the 9019 Motion.

7        THE COURT:  Okay.  Thank you.  All right.  Let me

8 hear from Shanni Snyder.  And at this point, you know, I've not

9 issued a Ruling yet on the Claim Objection, so she still has a

10 Claim at this point, so I think has an ability to be heard.

11 So, Mr. Lacher?

12        MR. LACHER:  Thank you, Your Honor.  Good morning.  I

13 would just point out that at the time we received the Motion, I

14 think there's been, you know, a lot of clarification today in

15 regards to the relief being sought.

16        The Motion itself was fashioned as a Motion to Reset

17 a Hearing.  So, was it a request to set a Hearing, or was it a

18 request for the relief?  Your Honor has made that clear.  And

19 I assumed all along that this would be the Hearing on the

20 relief.

21        But there were other pieces of confusion in the

22 Motion just to explain why we're here.  The Motion seeked (sic)

23 an approval of the Settlement Agreement with the Trustee which

24 not only included the Administrative Rent Claim, but it

25 included a pre-petition Rent Claim, a Real Estate Tax Claim,

1 and an environmental cleanup.  So, the Motion itself, as I read

2 it, was not limited to an Environmental Cleanup Claim.

3       And further still, the proposed Order with the Motion

4 included provisions to schedule a Hearing on the matter, but

5 could be read in a way with a contradictory provision just

6 simply approving the full Settlement.

7       So, the Objection, the first and foremost, was Ms.

8 Snyder wanted clarification of what exact relief was being

9 sought.  And I've heard today that it's limited to the

10 post-petition Administrative Rent Claim.

11      The continuance to my Objection here would be that

12 Ms. Snyder opposes an allowance until the appeal process plays

13 out in regard to who the actual owner of the property is.  I

14 believe we need a final determination of ownership and a final

15 accounting of the purpose of payments made by the Trustee.

16      And I'll just point out some examples.  If Biros

17 turns out not to be the property owner, why is she entitled to

18 rent?  If Biros is not the property owner, why does she have

19 any connection on an Environmental Cleanup Claim.

20      If Biros is the property owner, why would U LOCK pay

21 real estate taxes in regard to property owned by Biros?

22      If Biros became an owner later in the process but not

23 from the inception, as this Court has ruled, then she owned the

24 property but she's getting rent for periods where she didn't --

25 the rent may not -- if the property was granted to repay her

1 loan, then the rent she seeks would result in a windfall.

2        I will agree -- by the way, I want to make this very

3 clear.  Mr. Slone is a terrific Trustee.  Mr. Slone absolutely

4 contacted me about the payment of real estate taxes.  This is

5 in no way, shape, or form an attack on Mr. Slone.

6        I will say though that we have confusing matters.

7 Certainly Mr. Slone did and should have paid any real estate

8 taxes owed by the Estate.  But it's unclear, and again, because

9 who is the owner of the property?  When did each party become

10 owner of the property or not become owner of the property?  You

11 know, what taxes were paid?

12        U LOCK should not be paying real estate taxes for

13 property owed, owned, pardon me, by Ms. Biros, or if they

14 should, I don't really understand why.

15        So, again, Your Honor, I am simply asking the Court

16 to maybe take a wait and see position until things are fully

17 clarified and then we can deal with these Claims.

18        And you know, again, I acknowledge there's not a lot

19 of money on hand, but these issues, as far as I'm concerned,

20 are up in the air.

21        THE COURT:  Well but that seems to be what --

22        MR. LACHER:  So we would just ask Your Honor to --

23        THE COURT:  -- Attorney Bernstein is proposing though

24 is to allow the Administrative Claim and then take a wait and

25 see on the other two.  If the other two or three Claims are out

1  of the money, then it's not really relevant at this point.

2          But I have said before and it still appears to me

3  that there would be an entitlement to administrative rent for

4  the Estate's use of the property during the post-petition

5  period until stay relief is granted.  And so is there anything

6  further you wanted to say on that count?

7          MR. LACHER:  No, Your Honor, I think I've just

8  pointed out that knowing who the owner was and when they became

9  the owner --

10          THE COURT:  All right.

11          MR. LACHER:  -- might be relevant to calculating

12  those figures.

13          THE COURT:  Okay.

14          MR. LACHER:  But, otherwise, Your Honor was loud and

15  clear at the last hearing.  And I did want to explain I as a

16  lawyer was genuinely confused reading the Motion as to what we

17  were seeking here today.  So, that is my request of the Court.

18  I would ask that you put it all on hold, but that's all I have

19  to say, Your Honor.

20          THE COURT:  Okay.

21          MR. LACHER:  Thank you.

22          THE COURT:  All right.  Mr. Snyder, anything else you

23  wish to offer?  I mean I do hope you -- I read your Pleading

24  and saw that you were having some health issues, so I wish you

25  well with respect to those.  But anything that you wanted to

1  address with the Court today?

2          MR. SNYDER:  I appreciate that, Your Honor.  For the

3  most part I agree with the position of Shanni Snyder in her

4  Response.  And I would just like to add my position is the same

5  thing.  I sort of think it's premature until the process is

6  over.

7          But also that the Claim I feel should be reduced by

8  the rent and the property taxes, or the rent should be reduced

9  by the property taxes.

10         And the reason we keep, you know, I keep feeling, you

11 know, not to want to litigate every thing, but I'm compelled to

12 because everything is misstated in court.  Just even as recent

13 as today he said most or all the property use was used by U

14 LOCK.  We really used a very small percentage of the property

15 and I had included that in a diagram of one of my filings.

16         And also I was kicked off.  U LOCK wasn't even

17 allowed on the property for so many months and, you know.  So,

18 to state today that I had use of most of the property, U LOCK

19 had most use of the property is not, I don't think, correct.

20         A lot of tenants lost valuable things, and U LOCK was

21 really on the hook for everything.  They sort of bulldozed over

22 down there, so, that was all.

23         And if you do set a hearing in the future then, like

24 I said, I have to get my aorta replaced and reconstructed so

25 that's going to be a couple month process, or maybe about a

1  month -- a week in the hospital, maybe a month in a recovery,

2  and then -- so I would -- I have a doctor's appointment today,

3  and then the process will start.  So, somewhere in mid-March

4  would probably be great, or after.

5          THE COURT:  Well, you're also welcome to continue to

6  participate via Zoom if that's more convenient, but you know --

7          MR. SNYDER:  Okay.

8          THE COURT:  Otherwise, you know, I'm going to proceed

9  on what we have in front of us and I appreciate your comments.

10         Having heard all the parties I do find as a

11  supplement to what I've previously stated on the record on the

12  initial Hearing on the Settlement Motion, that there is

13  sufficient grounds to grant the Settlement on a limited basis.

14         I do think that Christine Biros and the Trustee have

15  shown that the Martin standards are satisfied with respect to

16  the Administrative Rent Claim.

17         I do appreciate the compromise that was made there

18  and the compromise indeed is within the Court's expectation of

19  what a reasonable rent would be for the property and for the

20  use that the Debtor had or the Estate had of that property

21  during the time that it occupied the premises.

22         So, I am prepared to approve the Settlement as it

23  pertains to the Administrative Rent Claim.

24         I'll deny the remainder of the Settlement without

25  prejudice and we can determine later on whether or not it's

1  worth going down the road of evaluating the merits of the other

2  Claims given that the Estate does not appear to be growing and

3  is what it is and there may not be enough money to pay all the

4  Administrative Claims at this point.

5          Having said that, I do find it necessary to, and

6  perhaps helpful, to give some preliminary comments to the

7  parties, again, just some ideas that I have from looking at

8  this and it's a bit of a continuation from what I had observed

9  before.

10          But with respect to the pre-petition Rent Claim I

11  think there is some questions and concerns that the Court would

12  have in terms of the entitlement there in light of the fact

13  that this was a Constructive Trust and the property was awarded

14  to Ms. Biros because U LOCK was unable to pay the Loan.

15          And so, from that standpoint Ms. Biros was a Lender

16  and instead of getting repayment was given the Deed to the

17  property.  I'm not entirely convinced at this point that that

18  would entitle her to pre-petition rent on top of that.  So,

19  that's a hill that will need to be overcome, in my view, if we

20  ever get to the merits of that Claim.  Again, you know, it may

21  not reach that point based on where the Estate is, but that's

22  something I want to at least tell you where I'm at right now.

23          And then as far as the Environmental Claim is

24  concerned, I do think that it's been a showing, at least at

25  this point, that there are some environmental concerns there on

1  the property.

2         The question I would have at this point is, what

3  proof is there that U LOCK caused those environmental issues or

4  is ultimately liable for any environmental remediation that

5  would be necessary?  So, that's something else that would need

6  to be addressed if the day and time comes that we would go into

7  the merits of that Claim in full.

8         But, otherwise, as to the matter at hand, I do find

9  that there is a sufficient basis to grant the relief on a

10  limited basis, and so I'll enter an Order to that effect later

11  today.

12         MR. BERNSTEIN:  Thank you, Your Honor.  May I raise

13  one brief point?

14         THE COURT:  Sure.

15         MR. BERNSTEIN:  Unrelated to this Motion.  Maybe get

16  some guidance.  Earlier in the case in November of '22 the

17  Court approved a Stipulation between George Snyder and the

18  Trustee that provided that George Snyder would be responsible

19  for preparing and filing tax returns.

20         There was, I believe, one tax return filed during the

21  case and it was for 2016 and it contained, among other improper

22  assertions, it contained the assertions that Ms. Biros was an

23  owner of U LOCK, and so it disclosed her Social Security

24  Number.  It made some other what we think are improper

25  allegations.

1          We think at this point it's clear that the Court can

2    no longer rely on Mr. Snyder to file the tax returns and we'd

3    like the Trustee to file tax returns, including an Amendment of

4    2016 to correct those errors.

5          And we realize that we can't unring the bell as far

6    as it being on a piece of paper filed with the IRS somewhere,

7    but we can correct the record by the Trustee filing proper tax

8    returns, even if many of the numbers are unknown because the

9    records don't exist.

10          So, I don't know, we have an existing Order that says

11   Mr. Snyder will assist the Trustee.  We could file another

12   Motion to require the Trustee to file the tax returns.  Can we

13   get some guidance from the Court on this?

14          THE COURT:  I think it would be best to do a Motion

15   with respect to that so we have notice and opportunity to be

16   heard.  And then, you know, has there been a preliminary

17   discussion with Trustee Slone on this?

18          MR. BERNSTEIN:  Not yet.

19          THE COURT:  Okay.  Well, I think that would be

20   advisable as well and that might help shape the discussion and

21   if there is consent that can be gained on that one issue, then

22   that would seem to be appropriate.  So, I think that's the best

23   way to proceed.

24          MR. BERNSTEIN:  Thank you, Your Honor.

25          THE COURT:  Okay.  All right.  Anything else from the

1  parties at this point?

2            MR. SNYDER:  No, Your Honor.

3            THE COURT:  Very good.  Then I will enter an Order on

4  the pending matter at this point and then we'll wait to see

5  where we are.  And as I indicated before, I do have a couple

6  things that are still under advisement and the Court will be

7  getting those out as quickly as possible.

8            MR. BERNSTEIN:  Thank you, Your Honor.

9            THE COURT:  So, thank you very much, everyone.

10           MR. BERNSTEIN:  Have a good day.

11           THE COURT:  You, too.

12           MR. SLONE:  Thank you, Your Honor.

13           MR. LACHER:  Thank you, Your Honor.

14           MR. SNYDER:  Thank you, Your Honor.

15

16                 **C E R T I F I C A T I O N**

17           I, JANET D. PERSONS, court approved transcriber,

18  certify that the foregoing is a correct transcript from the

19  official electronic sound recording of the proceedings in the

20  above-entitled matter and to the best of my ability.

21

22  /s/ Janet D. Persons

23  JANET D. PERSONS

24  J&J COURT TRANSCRIBERS, INC.    DATE:  January 9, 2024

25

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNI SNYDER *as assignee of Robert Slone,*
*Chapter 7 Trustee for U Lock Inc.,*

          Appellant,

   v.

U LOCK INC.,

          Debtor,

   v.

CHRISTINE BIROS, BIROS IRREVOCABLE
LIFE INSURANCE TRUST,

          Appellees.

23cv1410
ELECTRONICALLY FILED

**MEMORANDUM OPINION**

This bankruptcy appeal arises out of an adversary action.  The United States Bankruptcy Judge dismissed the adversary complaint upon motion. Appellant, hereinafter "Snyder", presents the question of whether the Bankruptcy Judge erred when he found, in reliance upon the decisions from the Westmoreland County Court of Common Pleas and the Pennsylvania Superior Court, that a constructive trust in favor of the Appellees (hereinafter "Biros") properly conveyed the equitable interest in a junkyard to Biros.  For the reasons set forth herein, this Court finds the Bankruptcy Court properly dismissed the this adversary and affirms its decision.

## I. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).  A district court sits as an appellate court in bankruptcy proceedings.  *In re Michael,* 699 F.3d 305, 308 n.2 (3d Cir. 2012).

The standards of review which apply to this case are as follows:

First, this Court cannot disturb the factual findings of a bankruptcy court unless they are clearly erroneous.  *In re Gray,* 558 Fed. Appx. 163, 166  (3d Cir. 2014); *see also Accardi v. IT Litig. Trust (In re IT Group, Inc.)*, 448 F.3d 661, 667 (3d Cir. 2006).  A factual finding is "clearly erroneous" if the reviewing court is "left with a definite and firm conviction that a mistake has been committed."  *In re W.R. Grace & Co.*, 729 F.3d 311, 319, n.14 (3d Cir. 2011); *see also Gordon v. Lewistown Hosp.*, 423 F.3d 184, 201 (3d Cir. 2005).  Under the clearly erroneous standard, it is the responsibility of an appellate court to accept the ultimate factual determinations of the fact-finder, unless that determination is either: (1) completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data."  *DiFederico v. Rolm Co.*, 201 F.3d 200, 208 (3d Cir. 2000) (citations omitted).

Second, this Court exercises plenary, or *de novo*, review over any legal conclusions reached by a bankruptcy court.  *In re Ruitenberg*, 745 F.3d 647, 650 (3d Cir. 2014); *see also Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999).

Third, if the Bankruptcy Court's decision is a mixed question of law and fact, this Court must break down the determination and apply the appropriate standard of review to each.  *In re Montgomery Ward Holding Corp.*, 326 F.3d 383, 387 (3d Cir. 2003).  The Court should "apply a clearly erroneous standard to integral facts, but exercise plenary review of the court's interpretation and application of those facts to legal precepts."  *In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3d Cir. 2011) (citation omitted).

Finally, this Court reviews a bankruptcy court's exercise of discretion for abuse.  *In re Friedman's Inc.,* 738 F.3d 547, 552 (3d Cir. 2013).  A bankruptcy court abuses its discretion

2

when its ruling rests upon an error of law or a misapplication of law to the facts.  *In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999).

## II. BACKGROUND

Snyder purchased certain assets of the Debtor (U Lock) through the Bankruptcy Court in December of 2022.  On February 28, 2023, Snyder initiated an adversary proceeding by filing a complaint against Biros, claiming Biros fraudulently acquired a junkyard.  Adv. Pro. No.  23-2020-GLT.

After an amended complaint was filed by Snyder, Biros filed a motion to dismiss the adversary action primarily contending that Snyder's lawsuit was an attempt to circumvent final Orders of the Westmoreland County Court of Common Pleas (hereinafter "State Court") which conferred title of the junkyard to Biros.[1]  The Bankruptcy Court determined that because Biros did <u>not</u> receive her interest in the junkyard from U Lock (the Debtor), "there were no avoidable 'transfer[s] of an interest of the debtor' under the Bankruptcy Code." ECF 5-1, p. 2.  As a result of this and other legal conclusions, the Bankruptcy Court granted Biros' Motion to Dismiss Snyder's adversary action.

## III. DISCUSSION

### A. State Court Proceedings

Snyder begins by discussing the relationship between Snyder and Biros in 2014, when they formed an entity called U Lock to purchase the junkyard at issue.[2]  On July 15, 2015, one

---

[1] The Pennsylvania Superior Court affirmed the decision of the Court of Common Pleas on May 21, 2021.  See *Biros v. U Lock*, 255 A.3d 489 (Pa. Super. 2021).  The decision of the Superior Court became final when the Supreme Court of Pennsylvania declined to review the matter on January 19, 2022.  See *Biros v. U Lock ,* 271 A.3d 875 (Pa. 2022).

[2] According to the Bankruptcy Court, the junkyard is located "on Route 30, [and is] littered with construction debris, scrap piles, tire mounds, collapsed trailers and inoperable vehicles" which Snyder and

day before closing on the junkyard property, articles of incorporation were filed for U Lock.

*Biros v. U Lock Inc.*, 255 A.3d 489, 491 (Pa. Super. 2021).  Biros obtained over $300,000 in

cashier's checks to loan to U Lock so that U Lock could purchase the junkyard.  *Id., at 492*.  In a

brief, handwritten note which provided for repayment on terms to be set by August 16, 2015,

U Lock agreed to treat the funds as a loan from Biros.  *Id.*  U Lock closed on the junkyard, and

U Lock received the deeds from the original owners of the junkyard in 2015.  However, on July

17, 2015, one day after the closing, the Pennsylvania Secretary of State rejected U Lock's

articles of incorporation.  *Id.*  Although the Secretary of State indicated that U Lock could retain

its incorporation date of July 15, 2015, to do so it would have to correct its error within 30 days.

*Id.*  U Lock failed to do so.  *Id.*  In September of 2015, after making the necessary corrections, the

Secretary of State accepted U Lock's articles of incorporation.  *Id.*

On October 4, 2017, Biros filed a complaint against U Lock and the original 2015

junkyard owners (hereinafter "previous junkyard owners") seeking a declaratory judgment that

the July 2015 Deeds were void *ab initio*, and alleging equitable causes of action to convey title,

quiet title, and for an accounting.  *Id.*  On February 13, 2018, while this action was pending, the

previous junkyard owners issued new deeds to U Lock (the "2018 Deeds").  *Id.*  U Lock filed the

2018 Deeds with the recorder of deeds on March 1, 2018.  *Id.*  In April of 2019, the previous

junkyard owners tendered a fully executed deed for the junkyard to the State Court to hold in

escrow, pending the outcome of the Biros declaratory judgment trial. ECF 6, p. 3.  These

escrowed deeds indicated that any other deeds recorded between July 16, 2015 and the

recordation of the escrowed deed were null and void. ECF 6, p.3

---

Biros wanted to buy with the goal of "boost[ing] its value through commercial development." ECF 5-1,
p. 3.  To this end, U Lock was formed. Id.

Following a trial, the State Court determined that the deeds issued to U Lock in 2014 were void *ab initio*. *Biros v. U Lock Inc.,* 255 A.3d at 492. The State Court also held that U Lock would be unjustly enriched by maintaining its ownership in the junkyard with no ability to repay Biros the money lent for its purchase. *Id.* Thus, the State Court found that U Lock held the junkyard in a constructive trust as the junkyard's trustee, and it directed conveyance of the junkyard to Biros. *Id.*

On appeal to Pennsylvania's Superior Court, the Superior Court in its 2021 Opinion noted that the following law governs the imposition of a constructive trust:

> A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground he would be unjustly enriched if he were permitted to retain it. The necessity for such a trust may arise from circumstances evidencing fraud, duress, undue influence or mistake. The controlling factor in determining whether a constructive trust should be imposed is whether it is necessary to prevent unjust enrichment.

*Id.* at 495, citing *Nagle v. Nagle*, 799 A.2d 812, 819 (Pa. Super. 2002) (citations omitted), appeal denied, 573 Pa. 659, 820 A.2d 162 (2003).

Based upon the facts recited above, and the legal definition of a constructive trust, the Superior Court concluded as follows:

> In summary, the record supports the following conclusions: 1) [Biros] paid for the [junkyard] on behalf of U Lock; 2) Biros expected repayment from U Lock; 3) U Lock never repaid Biros; 4) Biros had no adequate remedy at law because U Lock lacked resources, other than the junkyard, with which to compensate Biros. There was no dispute that Biros was entitled to repayment. Thus, the trial court faced a choice between imposing a constructive trust and awarding the junkyard to Biros or entering judgment for U Lock and trusting that the conclusion of this litigation would result in an influx of cash to U Lock with which it would, finally, repay its debt. The trial court chose the former, and we conclude that it acted well within the appropriate bounds for a court sitting as fact finder.

*Id.* at 496.

5

### B. Bankruptcy Court Proceedings

As noted above, in December of 2022, after U Lock filed an involuntary petition in accordance with Chapter 7 of the Bankruptcy Code, Snyder purchased certain assets from U Lock's Bankruptcy Trustee. In so doing, Snyder filed the instant adversary action against Biros claiming that Biros' acquisition of the junkyard was either avoidable as a preference or avoidable as a fraudulent conveyance.

Biros argued in its Rule 12(b)(6) motion to dismiss that Snyder's amended complaint failed to state a cause of action upon which the Bankruptcy Court could grant relief because Biros accepted and recorded deeds that had been in held in escrow by the State Court.  Stated differently, Biros argued that she obtained the deeds directly from the previous owners and not from the debtor, U Lock, through the State Court.

Snyder opposed Biros' motion to dismiss, and the Bankruptcy Court heard oral argument on the matter on June 22, 2023.

In its well-reasoned Opinion, the Bankruptcy Court began by noting that the bulk of what the parties presented were "not mere allegations," but instead, "were facts established by final state court orders that cannot be relitigated." ECF 5-1, p. 13.  Given the situation that presented itself, the Bankruptcy Court defined its own role as "simply to determine whether those facts [established by final state court orders], along with any well-supported allegations, state a plausible claim for relief under [C]hapter 5 of the Bankruptcy Code."  Id., p. 1-3-14.

In providing Snyder with all benefit of the doubt under the *Iqbal* standard, the Bankruptcy Court noted that the State Court found that the original 2015 deeds for the junkyard were void *ab initio,* but also noted the State Court did not void the 2018 deeds which purportedly conveyed the junkyard to U Lock.  However, the Bankruptcy Court noted that the "chain of title"

6

with respect to the junkyard's deeds was essentially a red herring (or using the Bankruptcy Court's words, a "technicality" and a "distraction") detracting from the more important occurrence in the State Court.

As explained by the Bankruptcy Court, the State Court imposed a constructive trust on the junkyard in favor of Biros (and the Superior Court affirmed this imposition of a constructive trust on appeal). In so doing, the State Court, through the constructive trust, provided Biros with an equitable remedy so as to "prevent unjust enrichment." Id., p. 15. The Bankruptcy Court citing to Pennsylvania caselaw explained that when property – such as the junkyard at issue in this case – is acquired through circumstances "that the title holder" – in this case U Lock – cannot "in good conscience retain the beneficial interest[,] equity converts [U Lock] into a trustee." Id., quoting *Biros v. U Lock,* 255 A.3d at 495 (footnote and internal citations omitted).

In reliance upon Pennsylvania law, the Bankruptcy Court explained that while an imposition of a constructive trust may arise from fraud, duress, undue influence, or mistake, "wrongdoing is not required." Id., p. 16 (footnote and citations omitted). No matter how a constructive trust arises, the Bankruptcy Court noted that Pennsylvania law unequivocally strips the legal title holder of his or her rights to the property in question and deems the legal title holder "to have *never* owned the equitable interest in the property." Id., p. 17 (emphasis in original, footnote and citations omitted). Accordingly, the Bankruptcy Court, based on the undisputed facts presented to it by Snyder and U Lock and construing all factual allegations in Synder's amended complaint as true, determined that the constructive trust the State Court placed upon the junkyard in favor of Biros rendered Biros the owner of the equitable interest in the junkyard, further noting that under Pennsylvania law, U Lock never possessed equitable ownership. Therefore, even assuming U Lock had been a legal title holder to the junkyard,

U Lock had no right whatsoever to the junkyard because once the constructive trust was imposed, U Lock was rendered a "constructive trustee whose 'sole responsibility . . . [was] to surrender the [junkyard] to [Biros] on whose behalf the constructive trust [was] raised.'" Id., p. 17 (footnote and citations omitted).  Boiled down to its simplest terms, the Bankruptcy Court held, "U Lock never held an equitable interest in the [junkyard] as a result of the constructive trust." ECF 5-1, p. 19.

### C. This Court's Review

In this case, there were no new factual findings issued by the Bankruptcy Court.  It explained that the facts in the amended complaint present in its case emanated from unopposed facts that were established by the State Court and affirmed on appeal by the Superior Court.  The motion to dismiss the amended complaint filed in the Bankruptcy Court argued that there was no claim upon which relief could be granted because the constructive imposed by the State Court transferred equitable interest in the junkyard from the original owners to Biros.  Moreover, it does not appear to this Court that the State Court's factual premises were ever disputed either in the State Court forum, nor before the Bankruptcy Court.  Instead, in this adversary proceeding, Snyder attempted to convince the Bankruptcy Court that the deeds which Snyder claims conveyed legal ownership of the junkyard to U Lock in 2017, trumped the constructive trust imposed by the State Court which conveyed equitable interest in the same property to Biros, retroactively back to 2015.

Because there are no factual disputes, this Court next considers whether the Bankruptcy Court abused its discretion.  The Bankruptcy Court abuses its discretion when its ruling rests upon an error of law or a misapplication of law to the facts.  The Court finds that the Bankruptcy Court did not abuse it discretion.

As noted by the Bankruptcy Court, the State Court imposed a constructive trust which conveyed the equitable rights of the junkyard from the junkyard's original, 2015 owners to Biros. The Bankruptcy Court concluded that nothing was ever transferred from the Debtor (U Lock) to Biros. This Court concurs with the legal analysis that the Bankruptcy Court utilized to arrive at this conclusion.

This Court's review of Pennsylvania case law with respect to the nature of a constructive trust supports the Bankruptcy Court's conclusion that once the State Court imposed a constructive trust, the equitable interest in the junkyard resided with Biros – retroactively – back to the original date of transfer, which in this case, was 2015.  As such, there was no transfer from U Lock to anyone.  At best, U Lock could only be considered under Pennsylvania law to be the constructive trustee of the junkyard, and the trust was put in place to keep U Lock from being unjustly enriched.  Because there was no conveyance from U Lock to Biros, the Bankruptcy Court really had no claim as suggested by Snyder to adjudicate.  Accordingly, the Bankruptcy Court properly dismissed the amended complaint as requested by Biros.

Even though there was no conveyance of any kind of interest in the junkyard from U Lock to Biros to consider, the Bankruptcy Court carefully considered Snyder's secondary argument in opposition of the motion to dismiss suggesting the State Court's language ("present conveyance") upon imposing the constructive trust indicated its prospective – not retrospective – application of the of trust.  This Court concurs with the Bankruptcy Court's legal analysis wherein it found that the phrase "present conveyance" supplemented the phrase "the imposition of the constructive trust."   Given that a constructive trust – under Pennsylvania law – vests equitable ownership to the beneficiary of the trust (in this case, Biros) back to the date of the original sale (in this case 2015), the "present conveyance" would only have been in reference to

the transfer of legal title.  This is precisely what the Bankruptcy Court suggests in its Opinion, and this Court agrees with the analysis and therefore, finds that the Bankruptcy Court did not abuse its discretion when it dismissed Snyder's amended complaint in this matter.


### IV. CONCLUSION

This Court will affirm the final judgment of the Bankruptcy Court as expressed in its July 21, 2023 Order and accompanying Memorandum Opinion.  An appropriate Order shall follow.

s/Arthur J. Schwab
United States District Judge


Dated: January 5, 2024

cc:   All ECF counsel of record

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>U LOCK INC.,<br><br>                              Debtor.<br><br>GEORGE SNYDER,<br><br>                         Movant,<br>v.<br><br>CHRISTINE BIROS,<br><br>                         Respondent. | Bankruptcy No. 22-20823-GLT<br><br>Chapter 7<br><br><br>Related Doc. Nos.: 509, 513 & 517<br><br>Hearing Date: March 28, 2024 @1:30pm<br>Response Deadline: January 22, 2024 |

**LIMITED RESPONSE AND RESERVATION OF RIGHTS
OF CREDITOR CHRISTINE BIROS RELATED TO
OBJECTIONS TO CLAIMS FILED BY GEORGE SNYDER**

For her response to the *Objection to Claim # 2* [Doc. No. 509], *Objection to Claim # 3* [Doc. No. 513], and *Objection to Claim # 4* [Doc. No. 517] (the "Objections") filed by George Snyder ("Movant"), Christine Biros ("Respondent") states as follows:

**A. The Objection to Claim No. 2 is Moot and Should be Denied**

1.      Claim No. 2 was for payment of real estate taxes that were the responsibility of the U Lock, Inc. (the "Debtor") and the Bankruptcy Estate (the "Estate"). Those taxes were paid to the taxing authority by Robert H. Slone, Chapter 7 Trustee for the Estate (the "Trustee").

2.      Accordingly, with the resolution of Claim No. 2, the Objection to Claim No. 2 is moot and should be denied with prejudice.

**B. In Light of Limited Resources Available for Distributions to Unsecured Creditor Claims, Claim Nos. 3 and 4 are Unlikely to be Paid**

3.  It is abundantly clear that there will be no distribution to general unsecured creditors. Claims No. 3 and No. 4 are general unsecured claims. Considering the present state of the case, Respondent does not believe that the Respondent, the Movant, the Trustee, or the Court should expend further resources on the Objection proceedings related to these claims.

## RESERVATION OF RIGHTS

4.  Respondent reserves all rights to respond in the future to any objection on any grounds in the event that Respondent files amended proofs of claims. If the Trustee discovers assets which could lead to a distribution for general unsecured creditors, Respondent shall be permitted to amend and defend Claim Nos. 3 & 4 and have them considered timely filed and subject to further objections pursuant to applicable law.

WHEREFORE, the Respondent respectfully requests that this Court (i) deny the objections to Claims No. 2, 3, and 4 as MOOT, and (ii) grant such other and further relief as is just and proper.


Dated: January 22, 2024                    Respectfully submitted,

                                           BERNSTEIN-BURKLEY, P.C.

                                           By: */s/ Robert S. Bernstein*
                                           Robert S. Bernstein (PA ID No. 34308)
                                           601 Grant Street, Floor 9
                                           Pittsburgh, PA 15219
                                           Telephone: (412) 456-8108
                                           Facsimile: (412) 456-8135
                                           rbernstein@bernsteinlaw.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>U LOCK INC.,<br><br>      Debtor.<br><br>CHRISTINE BIROS,<br><br>      Movant,<br><br>v.<br><br>GEORGE SNYDER and ROBERT H.<br>SLONE, Chapter 7 Trustee for the Estate of U<br>LOCK, INC.,<br><br>      Respondents. | Bankruptcy No. 22-20823-GLT<br><br>Chapter 7<br><br><br>Related Doc. Nos.: 509, 513, 517, Claim No.<br>2, Claim No. 3, Claim No.4<br><br>Hearing Date:  February 22, 2024 @ 10am<br>Response Deadline: February 8, 2024 |

### <u>MOTION TO WITHDRAW CLAIMS WITHOUT PREJUDICE<br>OR, IN THE ALTERNATIVE, TO CONTINUE HEARINGS<br>ON OBJECTIONS INDEFINTELY, UNTIL FURTHER ORDER OF COURT</u>

NOW COMES, Christine Biros (the "<u>Movant</u>"), creditor and party-in-interest in the

above captioned bankruptcy case, by and through her undersigned counsel, Bernstein-Burkley,

P.C. and files this *Motion to Withdraw Claims Without Prejudice Or, In the Alternative, To

Continue Hearings on Objections Indefinitely Until Further Order of Court* (the "<u>Motion</u>") and

in support hereof states as follows:

### <u>JURISDICTION AND VENUE</u>

1.      The United States Bankruptcy Court for the Western District of Pennsylvania (the

"<u>Court</u>") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core

proceeding under 28 U.S.C. § 157(b).

2.      Venue of this case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief hereinafter requested are section 105 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, "Bankruptcy Code") and Rule 3006 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

## SUMMARY

4.      The Movant filed three claims (Claim No. 2, Claim No. 3, and Claim No. 4), which were the subject of prior hearings and Orders in the case.

5.      George Snyder (the "Objector") filed Objections to all three claims [Doc. Nos. 509, 513, 517] and hearings are scheduled for March 28, 2024.

6.      Claim No. 2 was for payment of real estate taxes that were the responsibility of the Debtor and the Bankruptcy Estate (the "Estate").  Those taxes were paid to the taxing authority by Robert H. Slone, Chapter 7 Trustee for the Estate.  Claim No. 2 is moot and should be withdrawn.

**7.**      It is abundantly clear that there will be no distribution to general unsecured creditors.  Claims No. 3 and No. 4 are general unsecured claims.  Considering the present state of the case, Movant does not believe that the Movant, the Objector, the Trustee, or the Court should expend further resources on the Objection proceedings related to these claims.

## FACTUAL BACKGROUND

8.      On April 27, 2022 (the "Petition Date"), an involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against U LOCK Inc., (the "Debtor") in the United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") at case number 22-20823-GLT (the "Case").

9.      The Debtor did not file a response to the involuntary petition.

10.     On June 17, 2022, the Court entered an *Order for Relief* [Docket No. 42] that granted the involuntary petition.

11.     On August 25, 2022, Biros filed Claim Number 2 in the total amount of $20,642.53 ("Claim Number 2"), seeking payment of certain real estate taxes which the Debtor was ordered pre-petition to pay by the Supreme Court of Pennsylvania on the real property owned by Biros. Biros intends to amend the claim to include the post-petition taxes which the Debtor has also failed to pay. These taxes have since been paid to the taxing authority by the Trustee.

12.     On August 25, 2022, Biros filed Claim Number 3, seeking payment of pre-petition rent in the total amount of $405,000.00 for the period of time from July 2015 through April 2022 ("Claim Number 3") when Debtor held and used Biros' real property.

13.     On August 26, 2022, Biros filed Claim Number 4, seeking payment of unliquidated damages for the cost of environmental remediation ("Claim Number 4" together with Claim Number 1, Claim Number 2 and Claim Number 3, the "Claims") as a result of damage by the Debtor to Biros' real property during the period when Debtor had the use and occupancy of the real property.

14.     On December 20, 2022, this Honorable Court entered an order *Confirming Sale of Tangible and Intangible Personal Property of The Estate Under 11 U.S.C. § 363(F), Free and Clear of All Liens, Claims, And Encumbrances* [Doc. No. 254] (the "Sale Order").

15.     On December 22, 2022, Biros filed her *Application for Administrative Expenses Pursuant to 11 U.S.C. §503(b)(1)* [Doc. No. 258] (the "Application for Administrative Expenses").

16.     On January 6, 2023, the Trustee filed his response to the Application for Administrative Expenses (the "Response") [Doc. No. 277] acknowledging that an allowance of some amount is appropriate, but disputing the amount requested by Biros.

17.     On January 30, 2023, this Honorable Court entered an order [Doc. No. 314] setting, *inter alia*, a deadline of March 1, 2023, for Biros to file a renewed or amended Application for Administrative Expenses.

18.     On February 27, 2023, Biros and the Trustee entered into an agreement resolving the claims asserted by Biros, including an allowed administrative expense claim in the reduced agreed amount of $18,000.00 (the "Administrative Expense Claim") (the "Settlement Agreement").

19.     On March 1, 2023, Biros and the Trustee submitted a *Consent Motion to Approve the Settlement Agreement* [Doc. No. 345] (the "9019 Motion").

20.     On March 1, 2023, Biros also filed an *Amended Application for Administrative Expenses Pursuant to 11 U.S.C. § 503(b)(1) and/or for Payment of Adequate Protection* [Doc. No. 344] (the "Amended Application for Administrative Expense Claim").

21.     The Court held a hearing on the 9019 Motion on April 13, 2023.  For the reasons stated on the record, the Court continued the hearing until conclusion of that certain avoidance action filed against Biros and pending further Court order. *See*, Doc. No. 365.

22.     The Court held a further hearing on January 4, 2024 and issued an Order allowing Movant's Claim No. 1, and dismissing the remainder of the 9019 Motion as moot.

23.     On January 3, 2024, George Snyder (the "Objector") filed Objections to Movant's Claim No. 2 [Doc No. 509].

24.     On January 3, 2024, Objector filed Objections to Movant's Claim No. 3 [Doc No. 513].

25.     On January 4, 2024, Objector filed Objections to Movant's Claim No. 4 [Doc No. 517].

## RELIEF REQUESTED

26.     By this Motion, the Movant respectfully requests that this Court permit Movant to withdraw her Claim No. 2, Claim No. 3, and Claim No. 4 without prejudice to refiling Claim No. 3 and Claim No. 4 in the event assets are located that might provide a distribution to unsecured creditors.  In the alternative, Movant asks that the Court continue the hearings on the Objections indefinitely so as to eliminate the need to expend resources on a trial related to Claim No. 3 and Claim No. 4.

## BASIS FOR RELIEF REQUESTED

27.     Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "the court may issue any order . . .  necessary or appropriate to carry out the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a). In addition, Federal Rule of Bankruptcy Procedure 9019(a) provides that "on a motion by the trustee and after a hearing, the Court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). For further basis, Movant respectfully incorporates and refers to the basis stated in the 9019 Motion.

28.     Federal Rule of Bankruptcy Procedure 3006 provides that "[i]f after a creditor has filed a proof of claim an objection is filed thereto or a complaint is filed against that creditor in an adversary proceeding . . . the creditor may not withdraw the claim except on order of the court after a hearing on notice to the trustee."

29.     In light of the Objections to Claim Nos. 2, 3, and 4, Movant now seeks such relief as contemplated by F.R.B.P 3006.

30.     Since the initial hearing on the 9019 Motion, the Trustee has paid the real estate taxes, resolving Claim Number 2 filed by Biros.

31.     Based on the Status Reports filed by the Trustee, combined with the other activity

in the case, it appears there is little or no likelihood of substantial additional funds coming into the Trustee's hands from which a distribution could be made.

32.     Considering the amounts disclosed by the Status Reports, it appears obvious that the allowed Administrative Expense claims in the case will consume all the remaining distributable funds and will still not be paid in full.

33.     As set forth above, since the hearing on the 9019 Motion, the Trustee has paid the priority tax claim, which was the subject of Claim Number 2, thereby mooting that claim.

34.     As a result, Biros believes that the Court need not again consider that claim and should permit it to be withdrawn as moot.

35.     Claims 3 and 4 have been part of the proceedings in several hearings, including the hearing on the 9019 Motion on January 4, so the Court and the parties are well aware of the issues and the likely significant time and expenditure of judicial resources on the trial of the Objections to those two claims.

36.     Inasmuch as there will be no distribution for unsecured creditors, while the Movant fully believes she is entitled to allowance of those two claims, Movant also realizes that there is no benefit to spending the money and the Court's time on the trials on the subject Objections and claims.

37.     Movant believes that the interests of justice and judicial economy will be best served by permitting the withdrawal of such claims with the opportunity to refile the Claims (subject to future Objections) in the event assets are discovered which could provide a distribution to general unsecured creditors.

38.     No party will be disadvantaged by permitting such withdrawal.  The Trustee has indicated no objection to this request by the Movant.

WHEREFORE, Christine Biros, creditor and party-in-interest, respectfully requests that this Honorable Court enter the attached order withdrawing Claims 2, 3 & 4 as well as the Objections, provided, however, that if the Trustee discovers assets which could lead to a distribution for general unsecured creditors, Movant shall be permitted to refile Claims 3 & 4 and have them considered timely filed and subject to further objections pursuant to applicable law.


Dated: January 22, 2024

Respectfully submitted by:

BERNSTEIN-BURKLEY, P.C.

By: */s/ Robert S. Bernstein*
Robert S. Bernstein (PA ID No. 34308)
601 Grant Street, Floor 9
Pittsburgh, PA 15219
Telephone: (412) 456-8108
Facsimile: (412) 456-8135
rbernstein@bernsteinlaw.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>U LOCK INC.,<br><br>        Debtor.<br><br>CHRISTINE BIROS,<br><br>        Movant,<br>v.<br><br>GEORGE SNYDER and ROBERT H.<br>SLONE, Chapter 7 Trustee for the Estate of U<br>LOCK, INC.,<br><br>        Respondents. | Bankruptcy No. 22-20823-GLT<br><br>Chapter 7<br><br><br>Related Doc. No.: 530 & 531<br><br>Hearing Date:  February 22, 2024 @ 10am<br>Response Deadline: February 8, 2024 |

### CERTIFICATION OF NO OBJECTION REGARDING
### CHRISTINE BIROS' MOTION TO WITHDRAW CLAIM NOS.: 2, 3 AND 4 (Doc. No.: 530)

The undersigned hereby certifies that, as of the date hereof, no answer, objection or other responsive pleading to the Motion to Withdraw Claims filed on January 22, 2024 has been received. The undersigned further certifies that the Court's docket in this case has been reviewed and no answer, objection or other responsive pleading to the Motion to Withdraw Claims appears thereon. Pursuant to the Notice of Hearing, objections to the Motion to Withdraw Claims were to be filed and served no later than February 8, 2024.

It is hereby respectfully requested that the Order attached to the Motion to Withdraw Claims be entered by the Court.

Dated:  February 9, 2024

Respectfully submitted,

BERNSTEIN-BURKLEY, P.C.

By: /s/ Robert S. Bernstein
Robert S. Bernstein, Esq.
PA I.D. #34308
rbernstein@bernsteinlaw.com
601 Grant Street, 9th Floor
Pittsburgh, PA 15219
Phone: (412) 456-8101
Fax: (412) 456-8135

Counsel for Christine Biros

FILED
2/9/24 3:34 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| In re: | |
|---|---|
| U LOCK INC., | Bankruptcy No. 22-20823-GLT |
| Debtor, | Chapter 7 |
| CHRISTINE BIROS, | |
| Movant, | Related Doc. No.  530 |
| v. | |
| ROBERT H. SLONE, Chapter 7 Trustee for the Estate of U LOCK, INC., | |
| Respondent. | |

### ORDER OF COURT

AND NOW, this __9th__ day of Underline February , 2024, upon consideration of the *Motion to Withdraw Claims Without Prejudice Or, In the Alternative, To Continue Hearings on Objections Indefinitely Until Further Order of Court* (the "Motion") filed by Christine Biros, creditor and party-in-interest, it is hereby,

**ORDERED, ADJDUDGED, AND DECREED** that the Motion is GRANTED; and it is further ORDERED:

1. Claims 2, 3, & 4 are withdrawn, *without prejudice*; and

2. In the event the Trustee discovers assets which could lead to a distribution for general unsecured creditors, Christine Biros shall be permitted to refile Claims 3 & 4 and have them considered timely filed and subject to further objections pursuant to applicable law.

Prepared by:  __Robert Bernstein, Esq.__

**DEFAULT ENTRY**

Dated: __February 09, 2024__

_____
Gregory L. Taddonio  **hct**
Chief United States Bankruptcy Judge

FILED
6/24/24 2:03 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Case No. 22-20823-GLT |
| | : | Chapter 7 |
| **U LOCK, INC.,** | : | |
| | : | |
| *Debtor.* | : | Related to Dkt. Nos. 294, 304 |
| | : | |

## ORDER

Following the *sua sponte* denial of *Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)* ("Motion")[1] as "plainly frivolous,"[2] the Court ordered her and her counsel, Attorney Robert S. Bernstein, to show cause why they should not be sanctioned under Bankruptcy Rule 9011.[3] The Court "[could not] fathom a proper, non-frivolous purpose to the *Motion*" for three reasons.[4] First, the administrative expense requested for the bankruptcy estate's use of Ms. Biros' property utilized a return-on-investment metric, ignoring the value the estate received.[5] Second, the expense calculation lacked a factual basis.[6] Third, at $144,000, the claim was more than twice the value of the estate (i.e., the sale proceeds of the tangible assets stored on the property) and 11 times the Debtor's prepetition annual

---

[1] *Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)*, Dkt. No. 258. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et seq.* All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[2] See In re U Lock, Inc., No. 22-20823-GLT, 2023 WL 308210, at *4 (Bankr. W.D. Pa. Jan. 17, 2023).

[3] *Order to Show Cause*, Dkt. No. 294.

[4] In re U Lock, Inc., 2023 WL 308210, at *4.

[5] Id.

[6] Id.

revenue.[7]  They timely filed a joint response,[8] and the Court held two hearings on the *Order to Show Cause*.[9]

Although Ms. Biros and Attorney Bernstein insist the *Motion* comports with Bankruptcy Rule 9011, the Court disagrees.  Unlike other claims, administrative expenses under section 503(b)(1)(A) are measured by the "benefit to the estate, *not* the loss to the creditor."[10]  The single unpublished decision cited (after the fact) to support a return-on-investment approach does not even involve valuing an administrative expense.[11]  More critically, no effort was made to defend the specific $144,000 request, leading the Court to conclude their refusal is a concession that it is indefensible.  Indeed, the only explanation offered—that it was merely a starting point with room for negotiation—points to an improper litigation tactic.

Ultimately, fault for the *Motion* lies with counsel, rather than client.  Attorney Bernstein (the attorney who signed the offending document) should have known the standard for administrative expenses under section 503(b)(1)(A) and that $144,000 was an absurd ask in this case.  That said, the Court is confident the lesson has been learned and will not be repeated.

---

[7]   Id.  Put differently, the proposed monthly rent substantially exceeded the Debtor's annual revenue.

[8]   *Response of Christine Biros and Robert S. Bernstein, Esq. to Order to Show Cause*, Dkt. No. 304.

[9]   See *Transcript of January 27, 2023 Hearing*, Dkt. No. 316 at 52:17-68:24; *Transcript of April 13, 203 Hearing*, Dkt. No. 377 at 47:19-50:23.

[10]   In re Energy Future Holdings Corp., 990 F.3d 728, 742 (3d Cir. 2021) (quoting Nabors Offshore Corp. v. Whistler Energy II, LLC (In re Whistler Energy II, LLC), 931 F.3d 432, 443 (5th Cir. 2019)) (internal quotation marks omitted, emphasis added)).

[11]   See Geltzer v. Helen-May Holdings, LLC (In re Kollel Mateh Efraim, LLC), 2009 WL 2929430, at *1 (Bankr. S.D.N.Y. Aug. 18, 2009), aff'd, 456 B.R. 185 (S.D.N.Y. 2011).

2

Therefore, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the *Order to Show Cause*

is **RELEASED**.

ENTERED at Pittsburgh, Pennsylvania.

Dated: June 24, 2024

_____
GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE

3

FILED
6/24/24 5:13 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In re: | : Case No. 22-20823-GLT |
|  | : Chapter 7 |
| **U LOCK, INC.,** | : |
|  | : |
| *Debtor*. | : Related to Dkt. Nos. 278, 298, 299, 301, 303 |
|  | : |

Robert S. Bernstein, Esq.  
Lara S. Martin, Esq.  
Bernstein Berkley, P.C.  
Pittsburgh, PA  

William E. Otto, Esq.  
The Law Firm of William E. Otto  
Murrysville, PA  
*Attorneys for Christine Biros*

Robert H. Slone, Esq.  
Mahady & Mahady  
Greensburg, PA  
*Chapter 7 Trustee*

### <u>MEMORANDUM OPINION</u>

The most basic tenet of the Bankruptcy Code[1] is the inviolability of the bankruptcy estate.[2] Yet prior to a scheduled auction under section 363(b), most of the scheduled tangible assets of the debtor U Lock, Inc. disappeared from its business premises (the "Property"). Further proceedings, including on-site inspections, revealed that both George Snyder (U Lock's principal) and creditor Christine Biros (the owner of the Property) gained possession of estate assets. Their actions appearing to be willful violations of the automatic stay, an *Order to Show Cause* followed.[3] After considering the responses filed by Mr. Snyder and Ms.

---

[1] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et seq*. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[2] <u>See</u> 11 U.S.C. §§ 541(a), 362(a).

[3] <u>See</u> *Order to Show Cause*, Dkt. No. 249, <u>superseded by</u> *Amended Order to Show Cause*, Dkt. No. 278.

Biros,[4] the Court finds that his removal and possession of estate assets was authorized by the chapter 7 trustee ("Trustee"), but hers was not.  In fact, Ms. Biros' offers only post-facto justifications as a smokescreen to distract from her willful overreach after the Court denied her greater relief.  Therefore, the Court will release the *Order to Show Cause* as to Mr. Snyder and require Ms. Biros to pay damages as outlined below.

## I.    BACKGROUND

Narrow as the *Order to Show Cause* might appear, it is inextricably linked to the broader dispute between the Snyder and Biros families over the Property's fate.  For this reason, the litigation history and the parties' conduct prior to the alleged stay violations are relevant to assessing their knowledge and willfulness.  Importantly, Mr. Snyder and Ms. Biros have personally attended every hearing, though he appears pro se while she is accompanied by both bankruptcy counsel and her state court counsel, Attorney William E. Otto.

A.    Prologue: U Lock and the Property

The Property is essentially a junkyard located on Route 30 in North Huntingdon, Pennsylvania with a run-down self-storage building.[5]  Though U Lock ostensibly ran a small self-storage business there, it was formed by Mr. Snyder and others to acquire and commercially develop the Property for profit.[6]  Mr. Snyder believed that Ms. Biros and her brother John were

---

[4]    See *Christine Biros' Response to Amended Order to Show Cause*, Dkt. No. 298; *Response to Amended Order to Show Cause (278)*, Dkt. No. 301; see also *Debtor U Lock's Reply to the Response of Christine Biros (Entry 298) to the Amended Order to Show Cause*, Dkt. No. 299; *Reply to the Response of Christine Biros (Entry 298) RE Show Cause*, Dkt. No. 303.

[5]    In re U Lock, Inc., No. 22-20823-GLT, 2023 WL 308210, at *1 (Bankr. W.D. Pa. Jan. 17, 2023) ("The Property is essentially a junkyard on Route 30, littered with construction debris, scrap piles, tire mounds, collapsed trailers, and inoperable vehicles. It contains two structures: a large, free-standing garage/warehouse and a rundown, single-story self-storage building. The Property is also subject to environmental contamination and was the site of a literal garbage fire post-petition.").

[6]    See generally, Biros v. U Lock Inc., 2021 PA Super 104, 255 A.3d 489, 492 (2021), re-argument denied (July 28, 2021), appeal denied, 271 A.3d 875 (Pa. 2022).

2

partners in the real estate venture.[7]   She loaned the funds to purchase the Property while Mr.

Snyder and his brother Kash operated U Lock.[8]   According to Mr. Snyder, Ms. Biros was also to

fund the Property's development, but the project was in a "holding pattern" because the Biroses

were then under indictment.[9]   As is, U Lock only generated minimal revenue through the self-

storage facility on the Property.[10]

Two years later, Ms. Biros sued U Lock in the Court of Common Pleas of

Westmoreland County ("Trial Court") to recover the Property on account of the unpaid loan.[11]

Ultimately, the Trial Court imposed a constructive trust on the Property in favor of Ms. Biros due

to U Lock's insolvency, rendering her the equitable owner from the start.[12]   The Snyders'

appeals failed,[13] effectively cutting them out of the project before any benefits were realized.

They maintained this outcome was unfair because everyone agrees that the Property is worth at

least double the amount of Ms. Biros' loan.[14]

---

[7]     Id.

[8]     Id.  The Trial Court found the Snyders did not expect Ms. Biros to request a purchase-money repayment agreement just prior to Property's closing but nonetheless agreed.  Id.  The handwritten note signed by U Lock provided that if repayment terms were not mutually established within a month, Ms. Biros could set them unilaterally.  Snyder v. Biros (In re U Lock, Inc.), 652 B.R. 456, 460 (Bankr. W.D. Pa. 2023).  As a practical matter, this afforded her the ability to trigger a default at any time by imposing terms beyond U Lock's capacity.

[9]     See In re U Lock, Inc., No. 22-20823-GLT, 2024 WL 878464, at *2 (Bankr. W.D. Pa. Feb. 29, 2024).

[10]    Id. ("The statement of financial affairs reflects prepetition gross revenue ranging from $8,400 to $13,200 in the previous three years, which George testified was consistent with prior operations as well.") (footnotes omitted).

[11]    Biros v. U Lock Inc., 255 A.3d at 492.  Before commencing litigation, Ms. Biros sent a letter to Mr. Snyder increasing the principal amount of the loan and demanding, among other things, 9% interest, a mortgage, personal guarantees, and a five-year repayment period.  Id.; In re U Lock, Inc., 652 B.R. at 460.

[12]    Id.; see also In re U Lock, Inc., 652 B.R. at 461 ("The accompanying order therefore states that 'Plaintiff Christine Biros is the equitable owner of the Subject Property' and directs the execution of the appropriate deeds to her.") (emphasis in original).

[13]    Biros v. U Lock Inc., 255 A.3d at 496-97; see also Biros v. U Lock Inc., 271 A.3d 875 (Pa. 2022) (denying leave to appeal).

[14]    See, e.g., In re U Lock, Inc., 652 B.R. at 462 (Ms. Snyder asserting that Ms. Biros valued the Property between $700,000 and $900,000); In re U Lock, Inc., 2023 WL 308210, at *1 (Debtor estimating the value of the Property in 2022 as $1.9 million).

3

When Ms. Biros was poised to gain possession of the Property, Shanni Snyder, Mr. Snyder's sister, filed an involuntary chapter 7 petition against U Lock in April 2022.[15] Unbeknownst to the Court at the time, the involuntary petition was part of a scheme to continue the litigation and recover the Property through an avoidance action.[16]  As the Court later found, Ms. Snyder fraudulently obtained a default judgment against U Lock to cloud the title to the Property and establish a claim to commence the involuntary.[17]

Given this backdrop, it is unsurprising that this case has been unreasonably contentious and driven by personal animosity.  That said, there are no angels here.  Every party played a role in transforming an otherwise simple chapter 7 case that should have been fully administered within a few months into an endless slog of litigation.

B.    U Lock's Bankruptcy and Limited Stay Relief

From the get-go, Ms. Biros sought expedited dismissal of the involuntary or, in the alternative, stay relief.[18]  Though she disputed Ms. Snyder's claim and asserted that the petition was filed in bad faith, she primarily wanted unfettered possession of the Property.[19] Before the hearing on her motion, Ms. Biros obtained a writ of possession from the Trial Court permitting her to, among other things, levy and sell U Lock's property.[20]  And, in what proved to

---

[15]   In re U Lock, Inc., 2024 WL 878464, at *3-4.

[16]   Id. at *17.

[17]   Id.  Ms. Snyder's claim has since been disallowed.  Id. at *19.

[18]   See *Emergency Motion for Entry of an Order (I) Dismissing the Case and for Sanctions Against the Peitioning [sic] Creditor, or in the Alternative (II) Making a Determination that the Automatic Stay is Inapplicable to the State Court Action Pursuant to 11 U.S.C. § 362(b)(10), or in the Alternative (III) Granting Relief from the Automatic Stay to the Movant in Relation to the Movant's Property and the State Court Case, or in the Alternative (IV) Abandoning the Movant's Property* ("Motion to Dismiss"), Dkt. No. 14.

[19]   Id.

[20]   *Motion to Dismiss*, Dkt. No. 14 at ¶ 78; see also *Transcript of June 2, 2022 Hearing*, Dkt. No. 38 at 8:13-19,11:22-12:1.

4

be an apt metaphor for subsequent proceedings, there was a literal garbage truck fire on the Property.[21]

The Court conducted an initial hearing in June 2022. It declined to consider dismissal until after U Lock answered the involuntary petition, noting that consent to an order for relief would seemingly moot Ms. Biros' challenges.[22] As to the writ of possession, Ms. Biros acknowledged that the Trial Court entered it post-petition with knowledge of the automatic stay.[23] Yet rather than admit the defect, she argued that the writ was valid because the Property was not property of the estate to which the stay applied.[24] Emphasizing the distinction between title and possession, as well as the writ of possession's authorization to levy and sell estate property, the Court held that it was void.[25] The Court reserved the question of the willfulness of the stay violation for another day.[26]

Undeterred, Ms. Biros urged the Court to grant her stay relief to dispossess U Lock from the Property and begin immediate environmental remediation.[27] In addition to the alleged soil contamination from the garbage truck fire, she cited the general features of the

---

[21]    See *Exhibit Disclosing Police Report*, Dkt. No. 27.

[22]    *Transcript of June 2, 2022 Hearing*, Dkt. No. 38 at 32:10-33:6.

[23]    Id. at 6:17-7:17, 9:14-23.

[24]    Id. at 10:8-15.

[25]    See id. at 7:15-17, 10:16-11:2, 33:19-21; see also *Order*, Dkt. No. 143.

[26]    *Transcript of June 2, 2022 Hearing*, Dkt. No. 38 at 33:24-34:3. Rather than wait for the Trustee to assess the claim, U Lock filed a complaint seeking damages for the alleged stay violation, which Ms. Snyder sought to join. See generally *U Lock, Inc. v. Biros*, Adv. Pro. No. 22-2048. Given their lack of standing, the Court dismissed it without prejudice and observed they likely violated the stay by usurping the estate's rights. See *Transcript of August 9, 2022 Hearing*, Dkt. No. 115 at 27:16-23, 31:5-11. Both U Lock and Ms. Snyder have appealed that decision to the United States Court of Appeals for the Third Circuit after the United States District Court for the Western District of Pennsylvania affirmed. See U Lock, Inc. v. Biros, 2:22-cv-1222-NBF, Dkt. No. 15 (W.D. Pa. June 21, 2023). The Trustee has not since pursued any stay violations. See *Status Report*, Dkt. No. 173.

[27]    *Transcript of June 2, 2022 Hearing*, Dkt. No. 38 at 17:15-18:3.

5

junkyard, such as "broken down cars," tires, and other debris as environmental concerns.[28]  U

Lock maintained that the emergency was overstated and professed a desire to continue its own

clean-up efforts towards developing the Property despite the Trial Court's orders.[29]  Regardless,

the Court found that limited stay relief was appropriate to address what appeared to be "a

festering environmental issue."[30]  With the parties agreeing in principle that remedial efforts

should move forward, the Court gave them a chance to cooperate on a draft form of order.[31]

Unfortunately, a joint proposed order proved unworkable given Ms. Biros' desire

for exclusive possession of the Property and U Lock's refusal to accept the finality of her

ownership.[32]  The Court drafted its own order ("Limited Stay Relief Order") adopting the

parties' terminology and focus.[33]  It authorized Ms. Biros to begin environmental remediation

subject to the following caveats: (1) she could not restrict the access of U Lock or its tenants to

the Property;[34] (2) she was not to interfere with U Lock's ongoing operations;[35] (3) she could not

remove "any U Lock property that [did] not impede the environmental remediation efforts;"[36]

---

[28]      Id. at 5:19-6:16, 12:24-15:6.

[29]      See *Alleged Debtor U Lock's Response to the Emergency Motion Filed by Christine Biros*, Dkt. No. 22 at ¶ 2; *Transcript of June 2, 2022 Hearing*, Dkt. No. 38 at 23:10-26:19.  U Lock contended that the Property's condition had not substantially changed since the purchase.  Id. at 27:16-18.

[30]      *Transcript of June 2, 2022 Hearing*, Dkt. No. 38 at 28:19-29:3, 31:17-32:7, 33:7-19.

[31]      Id.

[32]      See *Notice of Partial Non-Objection to Limited Relief from the Stay*, Dkt. No. 28; *Response to Notice of Partial Non-Objection to Limited Relief from the Stay*, Dkt. No. 29; *Reply to Response to Statement of Non-Objection*, Dkt. No. 32.

[33]      See *Order Granting Christine Biros Limited Relief from the Stay*, Dkt. No. 36.  This point bears mentioning because the Court's understanding of the relevant issues stemmed entirely from the parties' representations and descriptions.

[34]      Id. at ¶ 1.

[35]      Id. at ¶¶ 1, 10.

[36]      Id. at ¶ 10.

6

and (4) nothing in the order was to be construed as an ejectment of U Lock.[37]  As to abandoned

cars and trailers on the Property, the *Limited Stay Relief Order* expressly provided:

> U Lock shall remove all vehicles and trailers from the Property on
> or before the earlier of: (a) June 24, 2022, or (b) ten (10) days after
> the date the police place "tags" on the subject vehicles.  To the
> extent U Lock requires additional time, it may make a reasonable
> request for an extension from Ms. Biros that shall not be
> unreasonably denied.
>
> Any vehicles or trailers remaining on the Property after June 24,
> 2022 (or such additional time as agreed by Ms. Biros) may be
> removed and disposed of by Ms. Biros at her convenience.[38]

Similar removal provisions applied to tires and certain storage tanks,[39] but no other tangible

material was specifically identified.

Ultimately, U Lock did not contest the involuntary petition so an *Order for Relief*

*Under Chapter 7* entered two weeks later and the Trustee was appointed.[40]  Thereafter, Mr.

Snyder completed schedules on U Lock's behalf.[41]  In terms of tangible assets, U Lock only

listed about ten items consisting of inoperable trucks, trailers, and heavy equipment (including

excavators and front loaders).[42]  Notably, their descriptions were fairly rudimentary and, in some

cases, nonspecific.[43]  The Trustee, in consultation with a professional auctioneer, determined the

scheduled assets had minimal salvage value for the estate consistent with Mr. Snyder's

estimates.[44]  An individual named Glenn Mowry also informally claimed ownership of many (if

---

[37]   Id.

[38]   Id. at ¶¶ 5-6 (paragraph numbers omitted).

[39]   Id. at ¶¶ 7-8.

[40]   See *Order for Relief Under Chapter 7*, Dkt. No. 42; *Notice of Appointment of Trustee*, Dkt. No. 49.

[41]   See Dkt. Nos. 59-66.

[42]   See *Schedule A/B: Assets – Real and Personal Property*, Dkt. No. 60 at 3, 5, 9.

[43]   For example, *Schedule A/B* lists "4 trailers," a "GMC Flatbed," and a "Blue Ford with Snow Plow."
*Schedule A/B: Assets – Real and Personal Property*, Dkt. No. 60 at 5.

[44]   *Transcript of August 9, 2022 Hearing*, Dkt. No. 115 at 5:22-6:4.

7

not all) of these items.[45]  He never filed a proof of claim or appeared in this case, but his alleged

interests have been co-opted by various parties whenever it suits them.  Further complicating

matters, the Property, as both a self-storage facility and *de facto* junkyard, contained a plethora

of un-inventoried tangibles whose value and ownership were uncertain.[46]  The takeaway is that it

was unclear exactly what U Lock owned, but *Schedule A/B* represented the only itemization of

its personal property interests.  And given the lack of perceived value of the tangibles (both

scheduled and not), no one expended the effort to define them with greater certainty.

    The Court held several continued hearings in July and August 2022.  Much of it

concerned bickering among U Lock, Mr. Snyder, and Ms. Biros regarding compliance with the

*Limited Stay Relief Order* and whether greater relief was appropriate.  U Lock and Mr. Snyder

argued that she was exceeding the limited relief granted and allegedly destroying valuable

assets,[47] though apparently none that had been scheduled.[48]  Meanwhile, Ms. Biros accused him

of impeding her access and "dumping" personal property,[49] both of which he denied.[50]  She

repeatedly pressed for unconditional stay relief, asserting "it's difficult for her to want to invest

funds . . . while U Lock remains in possession."[51]

    Despite the histrionics, the Court maintained that the *Limited Stay Relief Order*

appropriately balanced the estate's interests with Ms. Biros' immediate needs.  The Trustee first

---

[45]    See id. at 6:22-7:4; but see *Declaration of George Snyder in Reference to Certain Equipment*, Dkt. No. 108 at ¶¶ 6-11 (disputing Mr. Mowry's ownership).

[46]    As if to illustrate the adage that "one man's trash is another man's treasure," whether certain personal property was worthless garbage or valuable scrap was likely in the eyes of the beholder.

[47]    See *Debtor U Lock's Notice of Non-Compliance*, Dkt. No. 86; *Declaration of George Snyder*, Dkt. No. 100; *Transcript of August 9, 2022 Hearing*, Dkt. No. 115 at 11:11-14.

[48]    See *Trustee's Response to Debtor U Lock's Notice of Non-Compliance*, Dkt. No. 96 at ¶ 1; *Response to Debtor U Lock's Notice of Non-Compliance*, Dkt. No. 97 at ¶¶ 6-8.

[49]    See *Transcript of July 6, 2022 Hearing*, Dkt. No. 88 at 7:22-9:12.

[50]    Id. at 12:9-17, 13:10-14:16; see also *Status Report*, Dkt. No. 55.

[51]    See *Transcript of July 6, 2022 Hearing*, Dkt. No. 88 at 35:5-15.

required an opportunity to investigate the estate[52] and provide notice to U Lock's tenants, for which there were few records.[53]  Then, having received offers, he needed time to liquidate the estate's assets, including the estate's right to any claims or causes of action regarding the Property (i.e., an avoidance action).[54]  Accordingly, the Court denied Ms. Biros' request for dismissal without prejudice,[55] declined to enter broader stay relief, and advised her to work with the Trustee in the interim.[56]

C.      The Sale and Renewed Bid for Possession

The sale process was needlessly protracted.  After receiving multiple offers, the Trustee ultimately moved to sell the estate's tangible and intangible assets to Ms. Biros in late September 2022.[57]  Her bid included a cash component, a partial waiver of post-petition rent, and an assumption of environmental liabilities backstopped by a substantial bond.[58]  U Lock and the Snyders objected, citing deficiencies in the sale notice and criticizing the use of disputed claims

---

[52]     See id. at 10:8-22, 40:7-13, 43:16-45:2; *Transcript of August 9, 2022 Hearing*, Dkt. No. 115 at 33:13-22.

[53]     See *Transcript of August 9, 2022 Hearing*, Dkt. No. 115 at 6:5-14.

[54]     *Transcript of August 25, 2022 Hearing*, Dkt. No. 139 at 4:15-5:2; see also *Transcript of August 9, 2022 Hearing*, Dkt. No. 115 at 35:2-8 (stating that Ms. Biros would like an opportunity to purchase any assets or potential claims of the estate).

[55]     See *Text Order*, Dkt, No. 73.  The Court also denied U Lock's motion to convert to chapter 11, finding, *inter alia*, that a plan would merely pursue a tenuous claim to the Property rather than reorganize the existing business.  *Text Order*, Dkt. No. 110; *Transcript of August 9, 2022 Hearing*, Dkt. No. 115 at 20:25-25:12.

[56]     See *Transcript of August 25, 2022 Hearing*, Dkt. No. 139 at 13:18-14:20.

[57]     *Trustee's Motion for Sale of All Tangible and Intangible Personal Property of the Estate*, Dkt. No. 175. This sale motion replaced two separate motions that had been filed a month earlier.

[58]     Id. at ¶ 13.  Ms. Biros also demanded that other bidders obtain a second $25,000 bond to reimburse her for the cost of disposing of any tangible assets not removed from the Property within 30 days.  Id. at ¶ 14.  The Court struck that term from the sale.  See *Amended Order*, Dkt. No. 213 at¶ 5(b)(v).

9

and unnecessary bonds to artificially inflate the offer's perceived value.[59]  Ms. Biros disputed their allegations and standing.[60]

Roughly two weeks before the sale hearing, Ms. Biros and the Trustee filed a *Stipulated Order for Relief from Stay* ("Stipulated Order") under a Certification of Counsel.[61] "In order to efficiently facilitate the transfer of possession of the Property from the Estate to Biros," they agreed that she "shall have sole and legal possession of the Property" no later than 10 days following entry of the *Stipulated Order*.[62]  In other words, Ms. Biros wanted exclusive possession of the Property and the ability to exclude parties even before the sale was completed. The *Stipulated Order* also contemplated Ms. Biros unilaterally moving or disposing of the contents of the storage units.[63]  Predictably, U Lock and the Snyders objected.[64]

The Court heard both matters in early November 2022.  From the start, there is little doubt that Ms. Biros was trying to buy an end to the litigation with the Snyders and the estate's occupation of the Property.  And in the Trustee's haste to complete that sale (and the estate's administration), he neglected to provide adequate notice of what he was actually selling. Indeed, since fully defining the estate's property interests was impractical, the Trustee purported to sell them, whatever they were, without warranties or representations.  But the sale notice neither captured that nuance nor grounded the abstraction in something definitive like *Schedule*

---

[59]  *Debtor U Lock Inc.'s Objections to Trustee's Motion for Sale of All Tangible and Intangible Personal Property of the Estate*, Dkt. No. 183; *Petitioning Creditors Objection to the Motion for Sale*, Dkt. No. 184; *Objections of George Snyder to Motion for Sale*, Dkt. No. 185.

[60]  *Reply to Objection to Sale Motion and to Verification of Connections of Shanni Snyder*, Dkt. No. 202.

[61]  *Stipulated Order for Relief from Stay*, Dkt. No. 189-1.

[62]  Id. at ¶ 12(a).

[63]  Id. at ¶ 12(b)-(c).  The *Stipulated Order* states Ms. "Biros will cause the contents . . . to be evaluated," but that appears to be just a legalistic way of saying she will decide what to do with them.

[64]  *U Lock Inc.'s Objections to the Settlement and Certification of Counsel Regarding Stipulated Order for Relief from Stay*, Dkt. No. 200; *Petitioning Creditor's Objection to Consent Order*, Dkt. No. 205; *Objections of George Snyder to Consent Order*, Dkt. No. 206.

*A/B,* so it lacked sufficient detail to inform competitive third-party bidders.[65]   Thus, over Ms.

Biros' protest,[66] the Court directed the Trustee to re-notice the sale with "a schedule of assets

subject to the sale [compiled] from the best available information."[67]   The Court also established

an on-site due diligence period for prospective bidders to evaluate the tangible assets and the

environmental liabilities.[68]   An in-court auction was scheduled for December 1, 2022.[69]

Like Ms. Biros' prior attempts to gain possession of the Property through stay

relief, the *Stipulated Order* was denied in favor of maintaining the status quo.[70]   The Court found

that it was procedurally defective without the consent of all parties and an inappropriate

delegation of the Trustee's authority to Ms. Biros.[71]   It also seemed premature to enter any

storage units as the Trustee continued to accept rental payments.[72]   Between the perceived

overreach and "troublesome comments" about the alleged destruction and removal of tangibles,[73]

the Court entered an order reiterating the scope of the *Limited Stay Relief Order*.[74]   Specifically,

the Court observed that:

[Ms.] Biros was authorized to remove

---

[65]    See *Amended Order*, Dkt. No. 213 at 3.

[66]    See *Audio Recording of November 10, 2022 Hearing* at 12:58:38-1:00:47 p.m.  Ms. Biros argued that despite the conceptual complexities, the sale was simplistic because the Snyders were the only other interested parties and should have had enough information to formulate bids.

[67]    *Amended Order*, Dkt. No. 213 at ¶ 1.

[68]    Id. at ¶ 4.

[69]    Id. at ¶ 6.

[70]    *Order Denying Stipulated Order for Relief from Stay*, Dkt. No. 211.

[71]    Id. at ¶ 1.  "By filing a [Certification of Counsel], attorneys or unrepresented parties represent to the Court that the revised or agreed form of order has been reviewed and approved by all parties affected by the order."  See W.PA.LBR 9013-8(b).

[72]    See *Audio Recording of November 10, 2022 Hearing* at 1:40:25-1:45:04 p.m.  Without records or lease agreements, the rent checks were in some cases the only way to identify tenants.  This also raised the question of whether the payment was meant to satisfy an arrearage or represented a prospective rent.

[73]    Id. at 1:06:55-1:07:25 p.m.

[74]    *Order Denying Stipulated Order for Relief from Stay*, Dkt. No. 211 at ¶ 2(a).

11

(i) "vehicles or trailers" (remaining after June 24, 2022);

(ii) "tires" (remaining after June 17, 2022 and with notice); and

(iii) "tanks identified as waste" (remaining after June 24, 2022 and with notice).

The Court further directed that "nothing in this order shall . . . be construed as an ejectment of U Lock [or] authorize the removal of any U Lock property that does not impede the environmental remediation efforts.  Based on the foregoing, and after review of its docket, *the Court finds nothing in the record that authorizes [Ms.] Biros to remove or destroy any items other than those listed above.*[75]

The Court also admonished the Trustee to not take direction from Ms. Biros in the execution of his statutory duties.

> D.    <u>The Failed Auction and On-Site Inspections</u>

On December 1, 2022, the parties reconvened for a properly noticed auction of U Lock's assets.[76]  Ms. Snyder submitted the only other qualified bid, though her offer was limited to the intangible assets.[77]  As expected, the Snyders and U Lock renewed their objections to Ms. Biros' bid but also leveled a new accusation: Ms. Biros removed most tangible assets from the Property prior to the inspection period.[78]  At the hearing, the Trustee confirmed that scheduled assets he had observed on the Property in August could not be located during the on-site inspections in October and November.[79]

---

[75]    <u>Id.</u> (emphasis added, footnotes omitted).

[76]    <u>See</u> *Trustee's Amended Motion for Sale of Tangible and Intangible Personal Property of the Estate under 11 U.S.C. Section 363(f) Free and Clear of All Liens, Claims, and Encumbrances*, Dkt. No. 217.

[77]    *Exhibit A*, Dkt. No. 224-1 at ¶¶ A, D.

[78]    <u>See</u> *Objections of George Snyder to Motion for Sale*, Dkt. No. 225 at 1-2; *U Lock's Objections to Motion for Sale*, Dkt. No. 226 at ¶¶ 7-9; *Shanni Snyder's Objection to Trustee's Amended Motion for Sale of Tangible and Intangible Personal Property of the Estate Under 11 U.S.C. Section 363(f) Free and Clear of All Liens, Claims, and Encumbrances*, Dkt. No. 227 at ¶¶ 19-20.

[79]    *Audio Recording of December 1, 2022 Hearing* at 10:22:11-10:24:14 a.m.

When the Court directly asked whether Ms. Biros removed assets from the Property, her bankruptcy counsel provided a meandering, yet affirmative response:

> These are serious allegations, obviously, taking assets from a bankruptcy estate. For the purposes of today's hearing, Ms. Snyder has made an offer to buy intangibles, not personal property. Ms. Biros has made an offer that buys tangible personal property also. We understand that there may be things that the Trustee thought were in the sale which are not in the sale because somebody moved them. Ms. Biros is prepared to go forward notwithstanding these fuzzy issues about where property is. I think Ms. Snyder is not interested in buying the personal property, so it should be less of an issue for her today. Notwithstanding, Ms. Biros tells me . . . the property that she has removed has been moved to storage. . . .[80]

At first, Ms. Biros asserted that she acted with the Trustee's blessing in furtherance of her clean-up efforts,[81] though he insisted that he only consented to moving things *within* the Property.[82] She then asserted it was necessary to secure the assets because "things kept disappearing off-site," while the Trustee noted that some tenants removed their property with his permission.[83] As a last-gasp, Ms. Biros argued that the estate had no legal right to be on the Property before she was reminded that her post-petition writ of possession was void.[84]

Asked the same question, Mr. Snyder acknowledged that he removed two scheduled water tanks from the Property prepetition but had removed nothing post-petition.[85] In

---

[80]    Id. at 10:26:28-10:27:35 a.m.

[81]    Id. at 10:27:45-10:27:56 a.m.

[82]    Id. at 10:28:03-10:28:17 a.m.

[83]    Id. at 10:29:10-10:30:46 a.m.

[84]    Id. at 10:59:20-10:59:53 a.m.

[85]    Id. at 10:31:50-10:32:35 a.m.

13

fact, he maintained that Ms. Biros had barred him from the Property, even during the due diligence period.[86]

Although Ms. Biros originally pressed to complete the sale, she reversed course when the Court suggested severing the tangible assets and proceeding to auction only the intangibles.[87]  The objecting parties also opposed moving forward for a variety of reasons. Stymied, the Court undertook two measures to resolve all doubts as to the location of the scheduled tangible assets.  First, it ordered Ms. Biros, Mr. Snyder, and Ms. Snyder to immediately file sworn statements signed under 28 U.S.C. § 1746 identifying: (1) any assets they removed from the Property; (2) the current location of any removed assets; and (3) the authority by which the assets were removed.[88]  Second, the Court scheduled on-site inspections of each disclosed location the next day to confirm the whereabouts and existence of the sale assets.

Consistent with their in-court disclosures, both Ms. Biros and Mr. Snyder filed affidavits admitting they were in possession of scheduled estate assets, while Ms. Snyder swore that she was not.[89]  The Court, accompanied by staff and a mandatory security escort, then traveled to three sites with all parties in attendance.  The first, located in McKeesport, Pennsylvania (approximately seven miles from the Property), was controlled by the Biros family and was notably adjacent to a scrap recycling center ("McKeesport Property").[90]  During the McKeesport Property inspection, the parties observed eight pieces of scheduled heavy equipment—one more than Ms. Biros had admitted to relocating.  Next, the Court viewed the

---

[86]    Id. at 10:45:11-10:45:25 a.m.  Mr. Snyder also alleged that Ms. Biros destroyed his personal property, which, even if true, is not relevant to the matters before the Court.

[87]    Id. at 10:58:07-11:01:29 a.m.

[88]    Text Order, Dkt. No. 237.

[89]    See Affidavit of Shanni Snyder, Dkt. No. 230; Verification of Christine Biros, Dkt. No. 231; Declaration of George Snyder in Reference to Certain Equipment, Dkt. No. 233; Supplemental Declaration of George Snyder in Reference to Certain Equipment, Dkt. No. 234.

[90]    See Status Report with Address for December 2, 2022 Site Meeting, Dkt. No. 236.

Property, where additional scheduled assets were found, albeit with some difficulty.[91]   Finally,

the Court went to Mr. Snyder's site (located a half mile from the Property) and observed two

scheduled water tanks.[92]

      E.      <u>The Order to Show Cause</u>

      A sale of the tangible and intangible assets was finally completed on December

15, 2022, with Ms. Snyder as the prevailing bidder.   Comparing her initial bid for just the

intangibles and her final bid for both, the scheduled assets added no more than $6,500 of value to

the sale.[93]   A day later, the Court ordered Ms. Biros and Mr. Snyder to show cause why sanctions

should not be imposed against them for exercising control over property of the estate in violation

of the automatic stay and for interfering with the sale of estate assets.[94]   Both filed timely

responses.[95]   The Court conducted a hearing on the *Order to Show Cause* in late January 2023, at

which time Mr. Snyder, Ms. Biros, the Trustee, and Attorney Otto testified.

      Contrary to his prior representation, Mr. Snyder's written response and testimony

revealed that he had removed estate assets from the Property post-petition after all.[96]   The catch,

he explained, was that the *Limited Stay Relief Order* required him to do so.[97]   Mr. Snyder

---

[91]      For example, the "Ford F250 Custom Green and Red" identified on *Schedule A/B* turned out to be blue and orange and was located at the base of an embankment in the rear of the Property on what appeared to be an overgrown fire trail.

[92]      <u>See</u> *Declaration of George Snyder in Reference to Certain Equipment*, Dkt. No. 233 at ¶ 6(b).

[93]      <u>See</u> <u>In re U Lock, Inc.</u>, 2023 WL 308210, at *2 ("A sale of the tangible and intangible assets for $70,000 closed on December 28, 2022. As a practical matter, the tangible assets—which again, consisted largely of scrap—seemingly had only a modest impact on the ultimate sale price, as the prevailing bidder's initial bid of $63,500 excluded them." (footnotes omitted)).

[94]      *Order to Show Cause*, Dkt. No. 249, <u>superseded by</u> *Amended Order to Show Cause*, Dkt. No. 278.  The initial order neglected to set a deadline for written responses.  Given the severity of the circumstances, the Court did not wait for the Trustee to initiate proceedings himself.

[95]      <u>See</u> *Christine Biros' Response to Amended Order to Show Cause*, Dkt. No. 298; *Response to Amended Order to Show Cause (278)*, Dkt. No. 301.

[96]      *Transcript of January 27, 2023 Hearing*, Dkt. No. 316 at 73:7-74:5.

[97]      <u>Id.</u>; *Response to Amended Order to Show Cause (278)*, Dkt. No. 301 at ¶¶ 3-5, 12.

testified that he took the two water tanks and some unauthorized vehicles in early June because U Lock was directed to remove them by June 24, 2022.[98]  Upon the Trustee's appointment,  Mr. Snyder disclosed the water tanks' location to him and turned over the salvage proceeds of the unauthorized vehicles.[99]  The Trustee not only confirmed Mr. Snyder's account, but testified that he instructed Mr. Snyder to "leave [the water tanks] where they are."[100]  Mr. Snyder also admitted to removing his personal property, including the trailers referenced in the *Limited Stay Relief Order*, with the Trustee's knowledge.[101]

In comparison, Ms. Biros' defense presented as a series of after-the-fact justifications.  First, she contended that she could not have violated the automatic stay by relocating scheduled assets because they belonged to Mr. Mowry, not the estate.[102]  Second, Ms. Biros asserted that she understood the *Limited Stay Relief Order* to authorize her to remove things from the Property in furtherance of a "wider clean-up."[103]  Third, she argued that she reasonably secured the scheduled assets from Mr. Snyder after the Trustee failed to act as Attorney Otto urged.[104]

The Trustee denied knowledge that Ms. Biros moved anything off-site until he read her declaration.[105]  Ms. Biros contests this.  She testified that Attorney Otto spoke to him

---

[98]    Id.; see *Order Granting Christine Biros Limited Relief from the Stay*, Dkt. No. 36 at ¶¶ 3-8.

[99]    *Transcript of January 27, 2023 Hearing*, Dkt. No. 316 at 75:19-76:7.

[100]   Id.

[101]   *Response to Amended Order to Show Cause (278)*, Dkt. No. 301 at ¶¶ 4, 6-11.

[102]   *Transcript of January 27, 2023 Hearing*, Dkt. No. 316 at 77:2-78:10.  In support, she offered seven exhibits purporting to establish Mr. Mowry's ownership of the assets she removed.  See *Bench Exhibits*, Dkt. No. 308.  The Trustee provided these documents to Ms. Biros long before the sale to disclose the scheduled assets' contested ownership.  See *Transcript of January 27, 2023 Hearing*, Dkt. No. 316 at 85:6-86:10, 93:7-19.

[103]   *Transcript of January 27, 2023 Hearing*, Dkt. No. 316 at 78:11-79:1.

[104]   Id. at 79:2-5; 82:13-83:10.

[105]   Id. at 93:2-6.

16

and believed "[the Trustee] knew I was moving [the scheduled assets] to another site" because "[i]t was the only way I could secure it."[106]  For his part, Attorney Otto insisted he told this to the Trustee many times and even offered to return the assets to the Property if necessary.[107]  He did not, however, tell the Trustee their location.[108]  Attorney Otto also recalled that the "Trustee told [Mr. Mowry] to go ahead and take his stuff off the site,"[109] which seems at odds with the Trustee's apparent sale efforts.  In contrast, Ms. Biros testified that Mr. Mowry was not given the same opportunity to collect his personal property as other tenants.[110]

When asked why Ms. Biros, knowing that the scheduled assets were gone, silently allowed the Court to schedule a futile due diligence period for bidders in November, her bankruptcy counsel suggested:

> The only answer I can give is that the process has been so messy because of all of the accusations and moving things and being unclear whose is what, that it just, *Ms. Biros just didn't feel that that was a clarification that needed to be made*.[111]

During his testimony, Attorney Otto added:

> The only thing I can say about a failure to disclose it in November when we had that discussion, was that there was a focus on the site and since there was only at the time either Mr. Snyder or Ms. Snyder were going to bid on it and they, obviously, knew that the equipment existed.[112]

Ms. Biros did not address this point during her testimony, leaving her counsels' statements as the only answer to the Court's inquiry.

---

[106]    Id. at 84:14-17.

[107]    Id. at 83:4-10.

[108]    *Exhibit C*, Dkt. No. 298-3 at 1.

[109]    *Transcript of January 27, 2023 Hearing*, Dkt. No. 316 at 82:23-83:1.

[110]    Id. at 86:11-87:9.

[111]    Id. at 80:1-5 (emphasis added).

[112]    Id. at 83:13-17.

Ultimately, Ms. Biros acknowledged that her actions "inconvenienced" everyone and caused "difficulty and confusion," but otherwise insisted the estate and sale process were unharmed.[113]  At the end of the hearing, the Court took the matter under advisement.

Although the *Order to Show Cause* was fully briefed and argued some time ago, the Court prioritized resolving the steady flow of substantive matters impeding the administration of the estate.  This has afforded the Court added perspective.  At present, the estate is administratively insolvent,[114] though that may change.[115]  In addition to the Trustee's fees and Mr. Snyder's *de minimis* claim for insurance reimbursement, Ms. Biros holds an allowed administrative expense of $18,000 for post-petition rent.[116]  The Snyders' general unsecured claims have been disallowed,[117] and Ms. Biros' unsecured claims seeking roughly half a million dollars were withdrawn without prejudice given the dim prospect of a distribution.[118]  The only other claimant is the Internal Revenue Service, asserting a claim for estimated corporate income taxes.[119]  At this point, the administration of the estate is all but complete, subject to the outcome of the various pending appeals and any derivative proceedings.

## II.    JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States

---

[113]    Id. at 79:5-9, 80:9-12.

[114]    See *Status Report*, Dkt. No. 477 at ¶¶ 1-3.

[115]    Following the denial of Ms. Snyder's claim, the Court ordered her to show cause why it should not impose monetary sanctions against her for asserting a fraudulent claim and lying under oath.  See *Order to Show Cause*, Dkt. No. 561.  This matter is stayed indefinitely pending the exhaustion of Ms. Snyder's appellate rights.

[116]    See *Order*, Dkt. No. 523 at ¶ 2(A).

[117]    See In re U Lock, Inc., 2024 WL 878464, at *1; *Order of Court*, Dkt. No. 366.

[118]    See *Motion to Withdraw Claims Without Prejudice or, in the Alternative, to Continue Hearings on Objections Indefinitely, Until Further Order of Court*, Dkt. No. 530; *Order of Court*, Dkt. No. 552.

[119]    See *Clam No. 6-2*.

District Court for the Western District of Pennsylvania on October 16, 1984.  This is a core

proceeding under 28 U.S.C. § 157(b)(2)(A).

III.    **DISCUSSION**

    A.    <u>The Automatic Stay</u>

        As recognized by the United States Court of Appeals for the Third Circuit, "[t]he

automatic stay is one of the fundamental debtor protections supplied by the Bankruptcy

Code."[120]  The automatic stay is a series of statutory injunctions codified in section 362(a) which

arise automatically—that is, without a formal order—upon the commencement of a bankruptcy

case.[121]  In general, these injunctions are broad[122] and collectively bar acts to "obtain property of

the debtor or property of the bankruptcy estate."[123]  "It is designed to effect an immediate freeze

of the *status quo*"[124] to, among other things, "replace the 'unfair race to the courthouse' with [an]

orderly liquidation that treats all creditors equally."[125]

        Pertinent here, section 362(a)(3) operates as a stay of "any act to obtain

possession of property of the estate or of property from the estate or *to exercise control over*

*property of the estate*."[126]  This provision prevents the "'dismemberment' of the bankruptcy

estate until the bankruptcy process permits either a financial reorganization of the debtor or an

---

[120]    <u>Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)</u>, 973 F.2d 1065, 1074 (3d Cir. 1992) (citing <u>Cuffee v. Atl. Bus. & Cmty. Dev. Corp. (In re Atl. Bus. & Cmty. Dev. Corp.)</u>, 901 F.2d 325, 327 (3d Cir. 1990)).

[121]    11 U.S.C. § 362(a)(1)-(8).

[122]    <u>ACandS, Inc. v. Travelers Cas. & Sur. Co.</u>, 435 F.3d 252, 259 (3d Cir. 2006).

[123]    <u>Wingard v. Altoona Reg. Health Sys. (In re Wingard)</u>, 382 B.R. 892, 899 (Bankr. W.D. Pa. 2008).

[124]    <u>Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n</u>, 997 F.2d 581, 585 (9th Cir. 1993).

[125]    <u>In re Univ. Med. Ctr.</u>, 973 F.2d at 1074. (citing <u>United States v. Nicolet, Inc.</u>, 857 F.2d 202, 207 (3d Cir. 1988)).

[126]    11 U.S.C. § 362(a)(3) (emphasis added).

19

orderly liquidation of the assets of the bankruptcy estate."[127]  "Property of the estate," in turn, broadly encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case."[128]

Under section 362(k), "an individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees."[129]  Under Third Circuit precedent, an "individual" includes a corporate debtor and a bankruptcy trustee operating in a representative capacity for the estate.[130]  A stay violation is "willful" if the creditor commits an intentional act that violates the stay with knowledge that a bankruptcy petition has been filed.[131] No specific intent to violate the stay is required.[132]  Thus, to recover damages under section 362(k), one must establish three elements by a preponderance of the evidence: (1) a stay violation occurred; (2) the act giving rise to the violation was willful; and (3) the violation caused injury.[133]

---

[127]  Allentown Ambassadors, Inc. v. NE. Am. Baseball, LLC (In re Allentown Ambassadors, Inc.), 361 B.R. 422, 435–36 (Bankr. E.D. Pa. 2007); see In re Trump Ent. Resorts, Inc., 534 B.R. 93, 102 (Bankr. D. Del. 2015).

[128]  11 U.S.C. § 541(a)(1); see United States v. Whiting Pools, Inc., 462 U.S. 198, 204-05, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983) ("The House and Senate Reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad."); Westmoreland Human Opportunities, Inc. v. Walsh, 246 F.3d 233, 241 (3d Cir. 2001) ("§ 541(a)'s legislative history demonstrates that the language of this provision was intended to sweep broadly . . . .").

[129]  11 U.S.C. § 362(k)(1).  This provision was previously codified as section 362(h) but re-codified in 2005 as section 362(k)(1) as part of BAPCPA.  Because the provisions are identical, prior caselaw regarding section 362(h) is remains relevant to the application of section 362(k)(1).  In re Wingard, 382 B.R. at 900 n.5.

[130]  In re Atl. Bus. & Cmty. Corp., 901 F.2d at 329; Roberts v. Vara (In re Roberts), No. 21-20618-JAD, 2024 WL 2050561, at *11 n.11 (Bankr. W.D. Pa. May 8, 2024); AUA Private Equity Partners, LLC v. Kind Operations, Inc. (In re Pa Co-Man, Inc.), 654 B.R. 92, 96 (Bankr. W.D. Pa. 2023); Prithvi Catalytic, Inc. v. Microsoft Corp. (In re Prithvi Catalytic, Inc.), 571 B.R. 105, 143 n. 220 (Bankr. W.D. Pa. 2017); Böhm v. Howard (In re Howard), 428 B.R. 335, 338 (Bankr. W.D. Pa. 2010), aff'd, No. 2:10CV962, 2011 WL 578777 (W.D. Pa. Feb. 9, 2011).

[131]  Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 320 n.8 (3d Cir. 2003); In re Univ. Med. Ctr., 973 F.2d at 1088.

[132]  In re Atl. Bus. & Cmty. Corp., 901 F.2d at 329 (quoting Goichman v. Bloom (In re Bloom), 875 F.2d 224, 227 (9th Cir. 1989)).

[133]  In re Prithvi Catalytic, Inc., 571 B.R. at 143; In re Wingard, 382 B.R. at 900.

Section 362(k) also authorizes an award of punitive damages "in appropriate circumstances."[134]    "[P]unitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes."[135]    They "are especially appropriate when a party has acted in 'arrogant defiance' of the Bankruptcy Code."[136]    And because stay "[v]iolations . . . threaten the foundation of the protections afforded by the Bankruptcy Code,"[137] the need to deter others from similarly outrageous conduct in the future is a valid consideration.[138]    "The decision whether to award punitive damages is left to the sound discretion of the bankruptcy court,"[139] but is typically informed by: "(1) the defendants' conduct; (2) their motives; (3) any provocation by the debtor; and (4) each individual defendant's ability to pay."[140]    While "an award of punitive damages must bear some reasonable relationship to the amount of harm suffered,"[141] there are "no rigid benchmarks that a punitive damages award may

---

[134]    11 U.S.C. § 362(k)(1).

[135]    In re Howard, 2011 WL 578777, at *13 (quoting Wagner v. Ivory (In re Wagner), 74 B.R. 898, 903 (Bankr. E.D. Pa. 1987)); see Lansaw v. Zokaites (In re Lansaw), No. 06-23936-TPA, 2015 WL 224093, at *12 (Bankr. W.D. Pa. Jan. 14, 2015), aff'd sub nom. Zokaites v. Lansaw, No. 2:15CV404, 2016 WL 1012597 (W.D. Pa. Mar. 15, 2016), aff'd sub nom. In re Lansaw, 853 F.3d 657 (3d Cir. 2017); Iskric v. Commonwealth Fin. Sys., Inc. (In re Iskric), 496 B.R. 355, 365 (Bankr. M.D. Pa. 2013); Frankel v. Strayer (In re Frankel), 391 B.R. 266, 275 (Bankr. M.D. Pa. 2008).

[136]    In re Frankel, 391 B.R. at 275; see In re Howard, 2011 WL 578777, at *13; In re Lansaw, 2015 WL 224093, at *12; Curtis v. LaSalle Nat'l Bank (In re Curtis), 322 B.R. 470, 486 (Bankr. D. Mass. 2005); Walker v. Midland Mortg. Co. (In re Medlin), 201 B.R. 188, 194 (Bankr. E.D. Tenn. 1996).

[137]    Slaughter v. VA Pittsburgh Emp. Fed. Credit Union (In re Slaughter), No. 09-20221-GLT, 2014 WL 4960881, at *10 (Bankr. W.D. Pa. Sept. 30, 2014).

[138]    See In re Iskric, 496 B.R. at 365; In re Frankel, 391 B.R. at 275.

[139]    In re Lansaw, 2015 WL 224093, at *13.    Appeals courts "consider three guideposts" when reviewing punitive damage awards: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded . . . and the civil penalties authorized or imposed in comparable cases."    In re Lansaw, 853 F.3d at 671 (quoting State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 417, 123 S. Ct. 1513, 1520, 155 L. Ed. 2d 585 (2003)).

[140]    In re Howard, 2011 WL 578777, at *13.

[141]    In re Lansaw, 2015 WL 224093, at *13.

21

not surpass."[142]    Higher ratios of punitive-to-actual damages may be necessary "where 'a particularly egregious act has resulted in only a small amount of economic damages.'"[143]

      Yet "a stay violation is not just a private injury. It strikes at the entire bankruptcy system and all parties for whom it was designed."[144]    Since the automatic stay is an "injunction with the force of an order," a stay violation "may give rise to civil contempt."[145]    Bankruptcy courts are empowered to remedy civil contempt through section 105(a) and the court's inherent power.[146]    Proof of civil contempt requires: "(1) that a valid court order existed; (2) that the alleged contemnor knew of the order; and (3) that the contemnor disobeyed the order."[147]    "A finding of civil contempt must be supported by clear and convincing evidence."[148]    The standard is generally objective, though subjective intent may be relevant to determining an appropriate sanction for the contemptuous conduct.[149]    In other words, "good faith is not a defense to civil contempt."[150]

---

[142]   State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. at 425

[143]   Id. (quoting BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 582, 116 S. Ct. 1589, 1602, 134 L. Ed. 2d 809 (1996)).

[144]   Rushing v. Green Tree Serv., LLC (In re Rushing), 443 B.R. 85, 97–98 (Bankr. E.D. Tex. 2010).

[145]   Patti v. Fred Ehrlich, PC, 304 B.R. 182, 187 (E.D. Pa. 2003); see In re Stephen W. Grosse, P.C., 84 B.R. 377, 383–84 (Bankr. E.D. Pa. 1988), aff'd sub nom. In re Grosse, 96 B.R. 29 (E.D. Pa. 1989), aff'd sub nom. Dubin v. Jakobowski, 879 F.2d 856 (3d Cir. 1989), and aff'd sub nom. In re Stephen W. Grosse, P.C., 879 F.2d 857 (3d Cir. 1989); see also Walker v. Got'cha Towing & Recovery (In re Walker), 551 B.R. 679, 692 (Bankr. M.D. Ga. 2016) ("a violation of the automatic stay constitutes contempt of the court").

[146]   See Minech v. Clearview Fed. Credit Union (In re Minech), 632 B.R. 274, 280 (Bankr. W.D. Pa. 2021); Winnecour v. Ocwen Loan Serv. (In re Ransom), 599 B.R. 791, 802 (Bankr. W.D. Pa. 2019); Englert v. Ocwen Loan Serv., LLC (In re Englert), 495 B.R. 266, 271 (Bankr. W.D. Pa. 2013); Walsh v. Free (In re Free), 466 B.R. 48, 57 (Bankr. W.D. Pa. 2012).

[147]   In re Minech, 632 B.R. at 280; see F.T.C. v. Lane Labs-USA, Inc., 624 F.3d 575, 582 (3d Cir. 2010); Harris v. City of Phila., 47 F.3d 1311, 1326 (3d Cir. 1995).

[148]   Harris v. City of Phila., 47 F.3d at 1321.

[149]   Taggart v. Lorenzen, 139 S. Ct. 1795, 1802, 204 L. Ed. 2d 129 (2019).

[150]   Robin Woods Inc. v. Woods, 28 F.3d 396, 399 (3d Cir. 1994).

Sanctions for civil contempt must be either remedial or coercive.[151]  As explained by the Third Circuit:

> Remedial or compensatory actions are essentially backward looking, seeking to compensate the complainant through the payment of money for damages caused by past acts of disobedience. Coercive sanctions, in contrast, look to the future and are designed to aid the plaintiff by bringing a defiant party into compliance with the court order or by assuring that a potentially contumacious party adheres to an injunction by setting forth in advance the penalties the court will impose if the party deviates from the path of obedience.[152]

In contrast, punitive sanctions that serve "to vindicate the authority of the court" are criminal in nature[153] and beyond the contempt power of the bankruptcy court.[154]

B.    Mr. Snyder

On this record, the Court finds that Mr. Snyder did not violate the automatic stay, let alone willfully or contemptuously.  The analysis starts from the simple premise that the stay only applies to property of the estate.[155]  Debtors identify their property interests by filing a schedule of assets,[156] which U Lock did, listing less than a dozen tangible items in which it asserted an interest.[157]  Of those *scheduled assets*, it is undisputed that Mr. Snyder was in

---

[151]    See In re Free, 466 B.R. at 58.

[152]    Latrobe Steel Co. v. United Steelworkers of Am., AFL-CIO, 545 F.2d 1336, 1344 (3d Cir. 1976) (footnotes omitted).

[153]    Id. at 1343 (citing, e.g., United States v. United Mine Workers of Am., 330 U.S. 258, 302, 67 S. Ct. 677, 700, 91 L. Ed. 884 (1947)).

[154]    See Burtch v. Masiz (In re Vaso Active Pharms., Inc.), 514 B.R. 416, 421 (Bankr. D. Del. 2014); Matter of Kennedy, 80 B.R. 673, 674 (Bankr. D. Del. 1987).

[155]    See 11 U.S.C. § 362(a).

[156]    See 11 U.S.C. § 521(a)(1)(B)(i); Fed. R. Bankr. P. 1007(b)(1)(A).

[157]    See Schedule A/B: Assets – Real and Personal Property, Dkt. No. 60 at 3, 5, 9.

23

possession of only two water tanks.[158]  Therefore, whatever else he may have taken from the

Property is simply irrelevant to the automatic stay and the *Order to Show Cause*.[159]

Next, the Court must consider why Mr. Snyder was in possession of scheduled

assets since acts to obtain possession or control over property of the estate violate the stay.[160]  He

contends that he merely complied with the *Limited Stay Relief Order*.  Specifically, it directed

that "[a]ll unused and salvageable tanks located on the Property *shall be removed by U Lock* on

or before June 24, 2022."[161]  Upon review, the Court agrees that the stay was modified under that

provision to not only permit but *require* Mr. Snyder's relocation of the water tanks.  After that,

he promptly disclosed their existence and location to the Trustee, who instructed him to "just

leave them there where they are."[162]  Mr. Snyder's compliance with the Trustee's mandate

obviously cannot be viewed as possession or control of estate property in a manner inconsistent

with the stay.  Accordingly, the Court will release the *Order to Show Cause* against him.

C.   Ms. Biros

Despite Ms. Biros' protests, the Court finds that she willfully and contemptuously

violated the automatic stay by removing scheduled assets from the Property.  Again, the Court

---

[158]   See *Response to Amended Order to Show Cause (278)*, Dkt. No. 301 at ¶¶ 3-5, 12.

[159]   Ms. Biros complains that Mr. Snyder removed nearly all the "trailers and containers" from the Property without proving his ownership.  *Christine Biros' Response to Amended Order to Show Cause*, Dkt. No. 298 at ¶¶ 6-7.  She misses the point, however, because U Lock did not assert an interest in those assets. Moreover, the *Limited Stay Relief Order* required U Lock to remove all trailers from the Property to facilitate Ms. Biros' environmental remediation.  See *Order Granting Christine Biros Limited Relief from the Stay*, Dkt. No. 36 at ¶ 3.

[160]   See 11 U.S.C. § 362(a)(3).

[161]   *Order Granting Christine Biros Limited Relief from the Stay*, Dkt. No. 36 at ¶ 8.  Although the trailers and unauthorized vehicles were not scheduled assets, Mr. Snyder also removed them as required by the *Limited Stay Relief Order* and turned over salvage proceeds to the Trustee.

[162]   *Transcript of January 27, 2023 Hearing*, Dkt. No. 316 at 75:19-76:1.  In hindsight, if the Trustee knew the water tanks were at Mr. Snyder's property rather than at the Property, the sale notice should have said so.

24

emphasizes that the stay only applies to property of the estate,[163] so any other tangible property

she may have removed or destroyed is not relevant to the *Order to Show Cause*.

There is no dispute that Ms. Biros removed scheduled assets from the Property,

yet she denies that they were property of the estate subject to the stay.  Instead, Ms. Biros argues

that Mr. Mowry indisputably owned all the items she relocated to the McKeesport Property.[164]

Not so.  U Lock asserted an interest in all tangible assets listed on *Schedule A/B*, including the

ones she relocated.[165]  And the Trustee, despite receiving some documentation from Mr. Mowry,

opted to sell those interests (albeit without representations) rather than allow Mr. Mowry to

recover his alleged property.[166]  Mr. Mowry (and Ms. Biros) may dispute the estate's interests,

but he neither pressed a claim, nor objected to the sale, nor appeared and testified at any

hearing.[167]  So Mr. Mowry's alleged interest in the scheduled assets is neither undisputed nor

proven.  But even if the estate's interests were subject to a bona fide dispute, the stay would

apply to the scheduled assets pending its resolution.[168]

---

[163]    See 11 U.S.C. § 362(a).

[164]    *Christine Biros' Response to Amended Order to Show Cause*, Dkt. No. 298 at ¶ 19.

[165]    See *Schedule A/B: Assets – Real and Personal Property*, Dkt. No. 60 at 3, 5, 9.

[166]    See *Transcript of January 27, 2023 Hearing*, Dkt. No. 316 at 83:7-25.

[167]    For this reason, the exhibits purporting to demonstrate Mr. Mowry's ownership of the scheduled assets are hearsay.

[168]    See In re Grooms, 599 B.R. 155, 165 (Bankr. W.D. Okla. 2019) ("There has developed a doctrine that the stay should continue to apply when the ownership of the estate property is in *bona fide* dispute."); In re Stringer, 586 B.R. 435, 443–44 (Bankr. S.D. Ohio 2018), aff'd, No. 2:18-CV-563, 2019 WL 13259280 (S.D. Ohio Sept. 12, 2019), aff'd sub nom. Squire v. Stringer, 820 F. App'x 429 (6th Cir. 2020) ("But the law is clear that a belief that property is not included in the bankruptcy estate does not obviate compliance with § 362."); Franco v. Franco (In re Franco), 574 B.R. 730, 736 (Bankr. D.N.M. 2017) ("where the estate's ownership of property is in bona fide dispute, it is reasonable to hold that the stay applies, pending resolution of the dispute."); In re Daya Medicals, Inc., 560 B.R. 855, 858 (Bankr. S.D. Fla. 2016) ("a dispute as to a debtor's property rights does not obviate the effect of the automatic stay. To the contrary, where it is unclear whether a debtor in bankruptcy has an interest in property, parties must act with caution."); In re Pickel, 487 B.R. 289, 295 (Bankr. D.N.M. 2013) ("where, as here, the debtor has demonstrated a bona fide dispute with a creditor regarding whether property is property of the estate, it seems reasonable to hold that the stay applies."); In re Levenstein, 371 B.R. 45, 47 (Bankr. S.D.N.Y. 2007) ("Where the debtor claims an interest in property, the secured creditor may not make its own, unilateral determination of property rights after the debtor has invoked the jurisdiction of the Bankruptcy Court and

25

Next, Ms. Biros contends that her possession and control of the scheduled assets was authorized.  She points to paragraph six of the *Limited Stay Relief Order*,[169] which permits her to "remove[] and dispose[]" of "[a]ny vehicles or trailers remaining on the Property after June 24, 2022."[170]  Ms. Biros, however, moved *heavy equipment*, not vehicles or trailers. Context matters.  At the hearing preceding the *Limited Stay Relief Order*, the parties' focus was abandoned "broken down cars,"[171] which is why it refers to the police "tagging" unauthorized vehicles.[172]  Given that background, and the fact that the Court used their proposed terminology, there is no objective basis to read "vehicles" so broadly.  The Court also notes that the *Limited Stay Relief Order* entered prior to the *Order for Relief* and *Schedule A/B*.  As such, it is unreasonable to construe limited relief in a manner that would permit the removal and destruction of estate property before it was identified by the debtor.

Alternatively, Ms. Biros argues that she reasonably acted to protect the estate with the express or implied authority of the Trustee.[173]  As an affirmative defense, it was incumbent upon her to establish that the Trustee's blessing was plainly given.  Of course, there is no documentary evidence of either express or implied permission, which is notable given how many attorneys were involved.[174]  All Ms. Biros points to is a timeline of contacts between Attorney

---

with it the protection of the automatic stay. It is for the Bankruptcy Court, not the secured creditor, to determine whether the debtor has a sufficient interest in property to implicate the automatic stay, even if the debtor's claimed interest in property may turn out to be groundless.").

[169]  *Christine Biros' Response to Amended Order to Show Cause*, Dkt. No. 298 at ¶ 10.

[170]  *Order Granting Christine Biros Limited Relief from the Stay*, Dkt. No. 36 at ¶ 6.

[171]  *Transcript of January 27, 2023 Hearing*, Dkt. No. 316 at 12:24-14:7, 27:24-28:4, 29:9-15, 30:10-23, 31:3-4.

[172]  *Order Granting Christine Biros Limited Relief from the Stay*, Dkt. No. 36 at ¶ 4-5.

[173]  *Christine Biros' Response to Amended Order to Show Cause*, Dkt. No. 298 at ¶ 11-13.

[174]  After all, it is common practice to memorialize important verbal discussions or agreements by a follow-up letter or email to create a "paper trail."

26

Otto and the Trustee.[175]  Attorney Otto's testimony largely described one-sided expressions of concern about securing the Property without suggesting anything the Trustee said or did that implied assent to Ms. Biros' actions.[176]  It is undisputed that Attorney Otto did not tell the Trustee where the scheduled assets were relocated,[177] and the Court does not believe that he clearly informed the Trustee that scheduled assets had been moved off-site.[178]  The relocation of nearly all estate assets is out of the ordinary and therefore memorable, particularly when coupled with an equally unusual offer to return them if necessary.[179]  But the Trustee denied all of it and has no reason to lie.[180]  Accordingly, the Court finds that Ms. Biros has not shown that her conduct was cloaked with any express or implied authority.

Having dispensed with those contrivances, moving scheduled assets to an undisclosed location and restricting access are obviously prohibited acts to obtain possession and exercise control over property of the estate.[181]  As was concealing it.  There is also no doubt that Ms. Biros' conduct was willful because she intentionally removed the scheduled assets from the Property with knowledge of the automatic stay.  Indeed, her knowledge of the stay is patent from the months she spent seeking relief.  Therefore, the next question under section 362(k) is whether Ms. Biros' willful stay violation caused an in injury.[182]

---

[175]    See *Exhibit C*, Dkt. No. 298-3.

[176]    See *Transcript of January 27, 2023 Hearing*, Dkt. No. 316 at 82:13-83:10.

[177]    *Exhibit C*, Dkt. No. 298-3 at 1 ("I did not tell him where it was, but I told him it was on property owned by the Biros family and he could either see it or have it returned any time.").

[178]    *Transcript of January 27, 2023 Hearing*, Dkt. No. 316 at 83:4-10.

[179]    Id.

[180]    The Trustee already admitted that he knew the water tanks were at Mr. Snyder's facility even though he did not disclose it in the sale notice.

[181]    See 11 U.S.C. § 362(a)(3).

[182]    See 11 U.S.C. § 362(k)(1).

As Ms. Biros sees it, moving the scheduled assets to "a safer location in McKeesport" protected them from dissipation at no cost to the estate.[183]  In the Court's view, any purported benefit is speculative because it assumes the scheduled assets would have been stolen prior to the sale.[184]  Beyond that, she argues that her stay violation ultimately did not impact the outcome of the December 15, 2022 auction.[185]  On this last point the Court agrees, which is why the sale was approved.  Still, Ms. Biros ignores the obvious: *the auction should have taken place two weeks earlier without the need for site visits*.

To be clear, Ms. Biros' removal and concealment of the scheduled assets caused more than just inconvenience and delay.  That implies the auction merely happened later than originally scheduled.  The reality is that Ms. Biros caused the unnecessary expenditure of additional time and resources.  The on-site due diligence was worthless without the scheduled assets on the Property.  As a result, she not only thwarted efforts to resolve outstanding objections to the sale but prompted new ones.  The December 1, 2022 sale hearing then devolved into a lengthy waste of time as the Court charted a path forward.  And but for Ms. Biros' actions (including her incomplete disclosure), the Court, Trustee, and parties would not have spent hours traveling to three sites in a quest to find the scheduled assets.  "Time," as they say, "is money," so professional fees and costs are real economic losses attributable to her conduct.  And though neither the Court nor the U.S. Marshal are "individuals" under section 362(k)(1), the Court observes that both were forced to incur extraordinary costs to facilitate the site inspections.  Put simply, Ms. Biros' willful stay violation resulted in injuries.

---

[183]  *Christine Biros' Response to Amended Order to Show Cause*, Dkt. No. 298 at ¶¶ 6, 11-12, 17.

[184]  The Court is thoroughly unimpressed with Ms. Biros' offer not to seek an administrative expense for the cost of relocating and preserving the scheduled assets.  It should go without saying that a creditor who takes possession of estate property in violation of the automatic stay cannot seek the costs of preserving those assets.

[185]  *Christine Biros' Response to Amended Order to Show Cause*, Dkt. No. 298 at ¶¶ 14-16.

28

While specific intent to violate the stay is not required under section 362(k), a party's conduct and motive are relevant considerations to an award of damages. Ms. Biros applies a positive gloss to her stay violation, grossly mischaracterizing her conduct as reasonable and beneficial to the estate. A more accurate assessment is that she, in a stunning display of overreach, usurped the authority of the Trustee and unilaterally exercised control over property of the estate. Even viewed in the best light possible, Ms. Biros supplanted the Trustee's judgment with her own because he purportedly failed to heed her warnings about tangibles disappearing from the Property. It is also difficult to see past the hypocrisy of her preemptively snatching the scheduled assets (apparently worth no more than $6,500) to prevent them from being pilfered by Mr. Snyder.[186]

Of course, the Court has already found that Mr. Snyder did not remove any estate assets from the Property without authorization and notice to the Trustee. In fact, the suspicious activity that Ms. Biros cites in her written response—the removal of cars and trailers in June 2022—was mandated by the *Limited Stay Relief Order*.[187] Obviously, lobbing accusations over measures explicitly allowed by a court order undermines her credibility and indicates how carefully she and counsel read it. The Court also notes that other "disappearances" might have been attributable to tenants removing their personal property as instructed by the Trustee, which would explain his lack of concern. And notably, the Trustee did not dispute Mr. Snyder's ownership of the personal property he took and openly stored essentially across the street.

---

[186]    See Section III.B, *supra*. In this vein, Ms. Biros seemingly borrows the plot line from the film, *National Treasure,* where the protagonist, Benjamin Franklin Gates concludes that "the only way to protect the Declaration [of Independence] is to steal it." NATIONAL TREASURE (Walt Disney Pictures, November 19, 2004).

[187]    See *Christine Biros' Response to Amended Order to Show Cause*, Dkt. No. 298 at ¶ 11(a)-(b).

Ultimately, the Court finds Ms. Biros' "estate protection" justification nothing more than an effort to muddy the waters and create a false equivalence for her transgressions.

Frankly, the Court is unconvinced that Ms. Biros was motivated by altruism. Viewing the record of this case as a whole, her actions have all been in service of one goal: expediting the commercial development of the Property.  Ms. Biros aggressively sought unfettered possession of the Property from the start, often beyond what was reasonable or permissible under the circumstances.  Recall that she asserted the validity of a writ of possession obtained post-petition in violation of the automatic stay.  And impatient with the speed of the bankruptcy process, Ms. Biros then repeatedly demanded unconditional stay relief prior to the administration of the estate.  From this perspective, the Court is confident that her motivation in acquiring any tangibles was simply to end the estate's use of the Property and remove impediments to its development.[188]  Therefore, the Court concludes that Ms. Biros improperly removed the scheduled assets to accelerate her efforts to clean-up the Property.[189]

Ms. Biros removed the scheduled assets from the Property sometime between August and early November 2022.  As explained above, it was not objectively reasonable to believe the *Limited Stay Relief Order* gave her blanket authority over scheduled estate property.  And considering that Ms. Biros clings to ambiguities in the order to defend her conduct yet ignores those plain terms covering Mr. Snyder's actions, she demonstrates a remarkable indifference to the provisions of the order.  The Court infers that she "jumped the gun," assuming

---

[188]    The Court's conclusion is supported by the contradictory positions articulated in Ms. Biros' written response.  On the one hand, she professed concern that Mr. Snyder's alleged removal of assets would erode the value of the estate and diminish the benefit of her future purchase.  Id. at ¶ 7.  On the other, she asserted that Mr. Mowry's claim to the scheduled assets was undisputed.  Id. at ¶ 19.  Put together, Ms. Biros wanted to purchase things she thought the estate did not own and could not transfer.  It seems far more likely that the scheduled assets were physically in the way of her efforts.

[189]    It is strangely coincidental that the scheduled assets, which consisted of scrap, were moved to a location adjacent to a scrap recycling center.

that her bid for the estate's assets (amply cushioned with substantial bonds and assumed environmental liabilities) would prevail. The *Stipulated Order* reflected a similar premature sense of victory by proposing to grant Ms. Biros exclusive possession of the Property and authority over the tenants' belongings before a completed sale.

Ms. Biros doubled-down on her stay violation at the hearing in early November 2022. When the Court scheduled on-site due diligence for prospective bidders, she knew or should have known that the Court and parties expected the scheduled assets to be on the Property. Yet Ms. Biros said nothing even though she knew that most scheduled assets were already relocated to the McKeesport Property.[190] Her silence is telling, as is her decision to not explain it. Ms. Biros could not have reasonably believed at that point that the removal of the scheduled assets was proper. And lest there were any lingering doubts, the Court reiterated the scope of the *Limited Stay Relief Order* in denying the *Stipulated Order*: "the Court finds nothing in the record that authorizes [Ms.] Biros to remove or destroy any items other than [(i) "vehicles or trailers"; (ii) "tires"; and (iii) "tanks identified as waste"]."[191]

It is surprising that Ms. Biros did not undertake any remedial measures—even disclosure—before the on-site due diligence window opened since the scheduled assets' absence would be noticed. After all, Ms. Snyder was allowed on the Property to view them even though Mr. Snyder was not. Ms. Biros probably figured that her stay violation still had a chance of escaping detection. The Court also suspects she was emboldened by her substantial claims, her

---

[190]     It is now apparent that Attorney Otto was aware in early November that Ms. Biros relocated the scheduled assets. Because Attorney Otto was not ordered to show cause, the Court is currently not in a position to examine whether his silence during the Court's scheduling of a futile due diligence period is compatible with his duty of candor. See Pa. Rules of Prof'l Conduct 3.3(a). "[W]hen an attorney learns that a client has engaged in fraudulent or unauthorized conduct, they must take reasonable remedial measures, including, if necessary, disclosure to the tribunal." In re Bush, No. 22-10043-GLT, 2023 WL 6543194, at *6 (Bankr. W.D. Pa. Oct. 6, 2023).

[191]     *Order Denying Stipulated Order for Relief from Stay*, Dkt. No. 211 at ¶ 2(a) (footnotes omitted).

31

view that she was the only legitimate creditor, and the likelihood that she would prevail at auction.  In fact, Ms. Biros only came clean when the Court directly asked whether she had removed scheduled assets from the Property.

In sum, the Court finds by clear and convincing evidence that Ms. Biros' conduct not only willfully violated the stay but did so in "arrogant defiance" of the Code.  For all the same reasons, the Court necessarily finds that she is in contempt of the automatic stay.  To repeat: the stay is "an injunction with the force of an order," Ms. Biros was aware of it, and knowingly violated it.[192]  And finally, independent of the stay violation, the Court also finds that her willful and contemptuous conduct knowingly interfered with the sale process and the administration of the estate.[193]

As explained above, section 362(k) requires the Court to award actual damages, including attorneys' fees and costs, to any individual injured by a willful stay violation.[194]  In terms of actual damages, Ms. Biros' willful stay violation unnecessarily increased the estate's administrative burden.  Therefore, those costs must be shifted to her to make the estate whole.

By delaying the auction (and therefore the sale's closing), Ms. Biros forced the estate to remain in possession of the Property and incur additional use charges to her.  Had this not occurred, she could have obtained unconditional stay relief by the end of December 2022, rather than January 2023.  Since the Court previously awarded her an $18,000 administrative expense for nine months of post-petition use, a $2,000 reduction is appropriate to account for the delay she caused.

---

[192]     Patti v. Fred Ehrlich, PC, 304 B.R. at 187.

[193]     See, e.g., In re Primel, 629 B.R. 790, 802 (Bankr. W.D. Pa. 2021).

[194]     11 U.S.C. § 362(k)(1).

32

Next, Ms. Biros' removal and concealment of the scheduled assets unnecessarily multiplied the proceedings and the estate should not be burdened by the resulting professional fees and costs.  Time wasted at the on-site due diligence, the early December sale hearing, and the Court-supervised site inspections are *solely* attributable to her conduct.  Notwithstanding the brief visit to Mr. Snyder's land, his possession of only two estate assets was known and authorized by the Trustee.  In contrast, Ms. Biros' unauthorized removal of the scheduled assets from the Property and subsequent incomplete disclosure when called to account created the need to locate them.  The Court estimates approximately 6.5 hours was misspent on these activities.

The Trustee, who serves as his own counsel, bills "attorney time" at $425 per hour.[195]  Nevertheless, the Court is mindful that "trustee time" is not compensated that way.  To prevent him from individually suffering any out-of-pocket loss recoverable under section 362(k), the Court will apply his attorney rate for the entire period.  This is warranted given that Ms. Biros' violation was not only willful, but arrogantly defiant.  This results in an award of $2,762.50 in fees, which the Court will round up to $2,800 for reasonable costs.  To prevent any undue benefit as an administrative creditor, Ms. Biros will be required to pay this directly to the Trustee rather than the estate.

Beyond the Trustee, the Court declines to award professional fees to any other parties.  Mr. Snyder incurred none.  U Lock, however, lacked standing to object to the sale, casting doubt on the reasonableness of any fees.  Ms. Snyder may have incurred modest attorneys' fees, but the Court cannot ignore her bad faith in filing this involuntary.[196]  Her provocation and unclean hands are valid considerations in this context.  Thus, the Court finds

---

[195]   See *Application for Unpaid Administrative Fees*, Dkt. No. 583 at ¶ 12.

[196]   See In re U Lock, Inc., 2024 WL 878464, at *14-19.

that Ms. Snyder has forfeited any right to attorneys' fees stemming from Ms. Biros' stay violation.

The Court reiterates that both it and the U.S. Marshals needlessly incurred extraordinary expenses related to the site inspections. Though not "individuals" entitled to reimbursement under section 362(k), the Court may use civil contempt powers to redress these injuries with a compensatory sanction. Accordingly, the Court will order Ms. Biros to pay $1,000 to the U.S. Marshals to reimburse the cost of the security escort. The Court will also impose a $500 fine payable to the Clerk of Court to both cover needless costs arising from the inspections and to discourage future disobedience with Court orders.

Given Ms. Biros' outrageous conduct and her arrogant defiance of the Code, the bankruptcy process, and orders of this Court, these modest compensatory awards are inadequate. Especially so as she may have factored these foreseeable damages into her calculus and decided to nonetheless "take the foul." A larger coercive sanction is unavailable at this late stage because there is no longer an opportunity to repeat this conduct or meaningfully interfere with the administration of the estate. That said, the Court may award punitive damages to the estate under section 362(k) without the need for criminal contempt powers.[197]

The egregiousness of Ms. Biros' contemptuous interference with estate property and its sale requires a penalty that will be felt despite her significant administrative expense and unsecured claims. Punitive damages must "bear some reasonable relationship" to the actual damages,[198] but "particularly egregious act[s]" resulting in only a small economic harm justify a higher ratio of punitive-to-actual damages.[199] Here, the Court awarded compensatory damages

---

[197]    See 11 U.S.C. § 362(k)(1).

[198]    In re Lansaw, 2015 WL 224093, at *13.

[199]    State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. at 425.

totaling $6,300, though the actual damages are probably slightly higher since the Court equitably denied Ms. Snyder her attorneys' fees.  The Court concludes a punitive award of $15,000 payable to the estate without setoff is justified.  This represents roughly a 2-to-1 ratio between the punitive and actual damages, which is in line with what has been approved in other cases.[200]

## IV.  CONCLUSION

In light of the foregoing, the Court will release the *Order to Show Cause* against Mr. Snyder and order Ms. Biros to pay damages as outlined above.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: June 24, 2024

GREGORY  TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
George Snyder

---

[200]    See id.; see also In re Lansaw, 853 F.3d at 671.

35

FILED
6/24/24 5:16 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Case No. 22-20823-GLT |
| | : | Chapter 7 |
| **U LOCK, INC.,** | : | |
| | : | |
| *Debtor*. | : | Related to Dkt. Nos. 278, 298, 299, 301, 303 |
| | : | |

## <u>ORDER</u>

These matters came before the Court upon the *Order to Show Cause* dated January 6, 2023[1] and the responses thereto filed by Christine Biros[2] and George Snyder.[3]  In accordance with the *Memorandum Opinion* of even date, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that:

1.    The *Order to Show Cause* against Mr. Snyder is **<u>RELEASED</u>**.

2.    Ms. Biros' allowed administrative expense of $18,000 for post-petition use and occupancy of her real property shall be reduced by $2,000 to $16,000.

3.    On or before **July 31, 2024**, Ms. Biros shall:

a.    Pay $2,800 in compensatory damages *directly* to Robert Slone, Esq. on account of his professional fees and costs;

b.    Pay $1,000 in compensatory damages to the U.S. Marshal Service at its office in the Joseph F. Weis, Jr. U.S. Courthouse in Pittsburgh, Pennsylvania (Attn: Brian E. Allen, Judicial Security Unit);

c.    Pay $500 to the Clerk of the U.S. Bankruptcy Court for the Western District of Pennsylvania as both a compensatory and coercive sanction; and

---

[1]    *Order to Show Cause*, Dkt. No. 249, <u>superseded by</u> *Amended Order to Show Cause*, Dkt. No. 278.

[2]    *Christine Biros' Response to Amended Order to Show Cause*, Dkt. No. 298.

[3]    *Response to Amended Order to Show Cause (278)*, Dkt. No. 301.

d.      Pay $15,000 in punitive damages to Robert Slone, as chapter 7

trustee of the estate of U Lock, Inc.;

4.      On or before August 1, 2024, Ms. Biros shall file a certification that all

payments required under ¶ 3 of this order have been completed.

ENTERED at Pittsburgh, Pennsylvania.

Dated: June 24, 2024                        _____
                                                    GREGORY  TADDONIO
                                                    CHIEF UNITED STATES BANKRUPTCY JUDGE

<u>Case administrator to mail to</u>:
George Snyder

2

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-1202

_____

In re:  U LOCK INC.,
Debtor

SHANNI SNYDER,
as assignee of Robert Slone, Chapter 7 Trustee for U Lock Inc.,
Appellant
v.

CHRISTINE BIROS and the BIROS IRREVOCABLE LIFE INSURANCE TRUST

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-23-cv-01410)
U.S. District Judge:  Honorable Arthur J. Schwab

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 6, 2024

_____

Before: SHWARTZ, MATEY, and McKEE, <u>Circuit Judges</u>.

(Filed: January 9, 2025)

_____

OPINION*

_____

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

SHWARTZ, <u>Circuit Judge</u>.

Shanni Snyder appeals from the District Court's order affirming the Bankruptcy Court's dismissal of her adversary action alleging that U Lock transferred property to Christine Biros and that such transfer was an avoidable preference or fraudulent transfer. Because Biros always held equitable title to the property, the property was not a part of the estate and hence could not be transferred from it. As a result, we will affirm the order dismissing the adversary action.

I[1]

A

A group of individuals—including Biros, her brother, and relatives of Snyder—formed U Lock Inc. to purchase a commercial property for development. Biros lent U Lock $325,000 to purchase the property[2] and U Lock closed on the property. U Lock never repaid Biros for the loan.

Two years later, Biros filed a complaint against U Lock and the property's prior owners in Pennsylvania state court, asserting that she was the property's equitable owner because U Lock never repaid her and requesting an order compelling the prior owners to convey legal title to her. After trial, the court (1) found that the initial deeds naming U Lock as the grantee were void ab initio because U Lock was not a properly formed

---

[1] We accept as true the facts stated in the adversary complaint and may also consider "public records, including judicial proceedings." <u>In re Energy Future Holdings Corp.</u>, 990 F.3d 728, 737 (3d Cir. 2021) (quoting <u>S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.</u>, 181 F.3d 410, 426 (3d Cir. 1999)).

[2] U Lock had no other assets at the time.

2

corporation at the time of sale; (2) imposed a constructive trust on the property and

recognized Biros as its equitable owner because she had fully funded the purchase and U

Lock did not repay her; and (3) directed U Lock to convey legal title to Biros.  The state

appellate court affirmed, finding "no error in the trial court's imposition of a constructive

trust on the [p]roperty and its direction that ownership thereof be transferred to [Biros]."

Biros v. U Lock Inc., 255 A.3d 489, 496 (Pa. Super. Ct. 2021).  The state supreme court

denied U Lock's petition for leave to appeal.  The next day, Biros recorded the relevant

deeds to the property in her name.

Months later, purported creditor Snyder placed U Lock into involuntary Chapter 7

bankruptcy.  Chapter 7 Involuntary Petition, In re U Lock Inc., No. 22-20823 (Bankr.

W.D. Pa. Apr. 27, 2022), ECF No. 1.  Snyder later purchased from the U Lock estate

virtually all causes of action it held as of the date of its bankruptcy.

B

Snyder filed an adversary complaint against Biros,[3] alleging that the transfer of

property from U Lock to Biros constituted an avoidable preference[4] or fraudulent

---

[3] Based on her ownership of the estate's causes of action, Snyder brings the
present action as the estate's assignee.  Order Confirming Sale, In re U Lock Inc., No. 22-
20823 (Bankr. W.D. Pa. Dec. 20, 2022), ECF No. 254.

[4] "The Bankruptcy Code's avoidable preference provision, 11 U.S.C. § 547(b),
allows a bankruptcy trustee to recover certain transfers a debtor made prior to filing a
petition in bankruptcy."  In re First Jersey Sec., Inc., 180 F.3d 504, 509 (3d Cir. 1999).

3

transfer,[5] and Biros moved to dismiss under Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b)(6).

The Bankruptcy Court granted Biros's motion, reasoning that (1) Snyder's claims required her to show a "transfer of an interest of the debtor in property"; and (2) Snyder could not make this showing because, under Pennsylvania law, the "debtor is deemed to have never owned the equitable interests [] in the first place," and therefore the imposition of a constructive trust is not a "transfer of an interest of the debtor." Snyder v. Biros (In re U Lock Inc.), 652 B.R. 456, 466, 468 (Bankr. W.D. Pa. 2023) (internal citations and quotation marks omitted) (emphasis omitted).

The District Court affirmed, holding that "the equitable interest in the [property] resided with Biros [since] the original date of transfer" to U Lock from the prior owners, and that therefore, "there was no conveyance from U Lock to Biros." Snyder v. Biros (In re U Lock Inc.), No. 23-1410, 2024 WL 69628 at *5 (W.D. Pa. Jan. 5, 2024).

Snyder appeals.

## II[6]

---

[5] "[11 U.S.C. §] 548(a)(1) allows a trustee to avoid any transfer of the debtor's interest in property made within [two years] before the filing of a bankruptcy petition if the transfer was the result of actual or constructive fraud." In re Fruehauf Trailer Corp., 444 F.3d 203, 210 (3d Cir. 2006).

[6] The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157 and 1334, the District Court had appellate jurisdiction under 28 U.S.C. §§ 158 and 1334, and we have jurisdiction under 28 U.S.C. §§ 158(d) and 1291. We exercise plenary review of the Bankruptcy Court's order dismissing the complaint, see In re Hertz Corp., 120 F.4th 1181, 1191 (3d Cir. 2024), and must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" In re Energy Future Holdings, 990 F.3d at 736-37 (quoting Ashcroft v. Iqbal, 556

4

To prevail on her claims, Snyder must demonstrate that there was a transfer of a property interest from U Lock to Biros. See 11 U.S.C. §§ 547(b) (providing "the trustee may . . . avoid any transfer of an interest of the debtor in property" meeting § 547's definition of a preference), 544(b) (providing "the trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law"), 548(a)(1) (providing "[t]he trustee may avoid any transfer . . . of an interest of the debtor in property" meeting § 548's definition of a fraudulent transfer). Because "state law generally determines what interest, if any, a debtor has in property," In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000), we examine U Lock's interest in the property under Pennsylvania law to determine whether a transfer took place.[7]

Under Pennsylvania law, a constructive trust is "a relationship with respect to property[,] subjecting the person [holding title] to an equitable duty to convey [title] to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property." Kern v. Kern, 892 A.2d 1, 8 (Pa. Super. Ct. 2005) (internal quotation marks and citation omitted). The beneficiary of a constructive trust is deemed to have held equitable title from the date the original owner conveyed the property, and the trustee[8] (1) is deemed to "have never

---

U.S. 662, 678 (2009)); id. at 736 n.1 (explaining that under Bankruptcy Rule of Procedure 7012, motions to dismiss adversary complaints are evaluated under the standard set forth in Federal Rule of Civil Procedure 12(b)(6)).

[7] We may not sit in appellate review of the state court's decision to impose a constructive trust. Merritts v. Richards, 62 F.4th 764, 774 (3d Cir. 2023) ("The Rooker-Feldman doctrine prevents [district and circuit] courts from . . . engag[ing] in appellate review of state-court orders.").

[8] The trustee in this case is the legal title holder.

5

owned the equitable interest in [the] property in the first place," In re Pitchford, 410 B.R. 416, 420 (Bankr. W.D. Pa. 2009); and therefore (2) has "no right whatsoever to the property," Kern, 892 A.2d at 8. "[A]lthough a constructive trust may not be judicially decreed until many years subsequent to the transaction giving rise to the trust, the accepted theory is that the constructive trust is in existence at the inception of the transaction." Grubbs v. Dembec, 418 A.2d 447, 451 n.1 (Pa. Super. Ct. 1980) (citations omitted); see also City of Farrell v. Sharon Steel Corp., 41 F.3d 92, 97 (3d Cir. 1994) (recognizing that, under Pennsylvania law, a constructive trust arises at the time of the relevant transaction).

Here, Biros loaned U Lock the funds to buy the property from the prior owners. U Lock never repaid her for her loan and had no assets with which to do so. As a result, the state court (1) imposed a constructive trust on the property as of the date it was sold and recognized Biros as the beneficiary and equitable title holder to compensate her for the loss of her funds and (2) recognized U Lock, as the trustee, as holding only legal title.

Because a constructive trust exists at the time a prior owner sells a property to a debtor, bankruptcy courts applying Pennsylvania law have determined that a judicial declaration of a constructive trust does not constitute a transfer of property of the estate. See, e.g., In re Aultman, 223 B.R. 481, 485-86 (Bankr. W.D. Pa. 1998) (explaining that, under Pennsylvania law, imposition of a constructive trust is not a transfer of an interest from the debtor in the property); In re Pitchford, 410 B.R. at 422-23 (same). The debtor, as trustee, never had any equitable interest in the property to transfer, In re Pitchford, 410 B.R. at 423, and any transfer of bare legal title for such property is not a transfer of

6

property of the estate, see In re Net Pay Sols., Inc., 822 F.3d 144, 155 (3d Cir. 2016)

("[T]he Code's definition of property of the estate [] includes 'all legal or equitable

interests of the debtor in property as of the commencement of the case' but excludes

property in which the debtor holds only legal title and not an equitable interest." (internal

quotation marks and citation omitted); United States v. Whiting Pools, Inc., 462 U.S. 198,

204 n.8 (1983) (concluding that "Congress intended to exclude from the estate property

of others in which the debtor had some minor interest such as [] bare legal title").[9]  Thus,

neither the state court's declaration that Biros was the property's equitable owner, nor the

subsequent transfer of legal title to her, constituted a transfer of property of the estate to

Biros, and therefore, Snyder's avoidable preference and fraudulent transfer claims fail.[10]

### III

For the foregoing reasons, we will affirm.

---

[9] The trial court ordered "the present conveyance of the . . . [p]roperty to Plaintiff
Christine Biros."  A405.  Although Snyder argues that this language indicates that the
court directed a transfer of estate property, we understand the phrase "present
conveyance" to refer to the conveyance of legal title only, which all parties agree U Lock
held at the time the state trial court issued its opinion.

[10] Snyder's reply brief also alludes to the "strong-arm powers of the Trustee as
creditor" under 11 U.S.C. § 544(a), Reply Br. at 5, but she did not raise it in her opening
brief so the argument is forfeited.  Kalu v. Spaulding, 113 F.4th 311, 344 n.21 (3d Cir.
2024).

7

## THIS INDENTURE

**MADE this** _____ 9ᵀᴴ _____ **day of** _____ MAY _____, 2019.

I hereby CERTIFY that this document is recorded in the RECORDERS OFFICE of Westmoreland County Pennsylvania

Frank Smith

Frank Schiefer • Recorder of Deeds

**BETWEEN:** **HENRY LEE MOORE AND SUSAN STANO,**

Co-Administrators, d.b.n.c.t.a, of the Estate of **NICHOLAS A. SCHUR,**

of North Huntingdon Township, Westmoreland County, Pennsylvania,

Grantor and party of the first part, and

**AND**

**CHRISTINE BIROS,**

Grantee and party of the second part;

Instr: 202201250003084          1/25/2022
P: 1 of 14          F: $129.25          3:13 PM
Frank Schiefer          1 20220002552
Westmoreland County Recorder

WHEREAS, NICHOLAS A. SCHUR, Deceased, became seized of the property hereinafter described by the following deeds: (i) Deed dated January 27, 1989, and recorded February 7, 1989 in Westmoreland County in Deed Book Volume 2858, Page 381, from Nicholas Schur, et al., conveyed onto Nicholas Schur, single (40%), Margaret Schur (15%), Ann Sarris (15%), Alex Schur (15%), and Michael Schur (15%), in fee; and (ii) The said Margaret Schur, widow, conveyed her entire interest to Nicholas Schur, Ann Sarris, Alex Schur, and Michael Schur by her deed dated August 5, 1999, and recorded in the Office of the Recorder of Deeds of Westmoreland County, Pennsylvania in Deed Book Volume 3697, Page 048.

WHEREAS, NICHOLAS A. SCHUR died testate on November 26, 2010; and,

WHEREAS, FRANCES JAQUETTE AND SUSAN STANO, were appointed, Co-executrices ofhe Estate of NICHOLAS A. SCHUR, Letters Testamentary having been granted by the Register of Wills of Westmoreland County, Pennsylvania, on December 9, 2010, at No. 65-10-02349.

WHEREAS, the said Frances Jaquette was removed as Co-executor by Order of the Honorable, Judge Anthony G. Marsili, dated October 24, 2014, and said HENRY LEE MOOREand SUSAN STANO, were appointed Co-Administrators, d.b.n.c.t.a of the Estate of NICHOLAS A. SCHUR on November 7, 2014.

WHEREAS, the said HENRY LEE MOORE AND SUSAN STANO, Co-Administrators, d.b.n.c.t.a, of the Estate of NICHOLAS A. SCHUR, Deceased, have the power and authority to convey the real estate hereinafter described by virtue of Section 3351 of the Probate, Estates, and Fiduciaries Code, as amended.

WHEREAS, the Grantee, Christine Biros, has commenced an action against U Lock, Inc., et al. seeking to set aside the Deed previously conveyed to U Lock, Inc. by the Grantor herein.

**NOW THIS INDENTURE WITNESSETH,** that the said Grantor(s) for and in consideration of ONE DOLLAR ($1.00) and other good and valuable consideration to them now paid by the party of the second part at or before the signing of and delivery hereof, the receipt whereof is hereby acknowledged, have granted, bargained, sold, aliened, released and confirmed and by these presents do grant, bargain, sell, alien, release and confirm unto the said party of the second part,

**UPI 54-09485-00000**
**MAP 54-03-10-0-103**

her heirs executors, administrators and assigns **43.75%** of the following described real estate:

ALL that certain parcel of land situate in North Huntingdon Township, Westmoreland County, Pennsylvania, bounded and described according to a property survey for Nick Schur, prepared by Barry E. Sakal, Land Surveyor, dated December, 1986, as follows, to wit:

Beginning at a point in the centerline of U.S. Route 30, at the dividing line between property now or formerly of Oddo-Keddie, Inc., and property herein described; thence S 24 degrees 0 minutes E, 335.11 feet to a point; thence S 63 degrees 26 minutes W, 175.60 feet to a point; thence S 14 degrees 50 minutes E, 265.17 feet to a point; thence S 25 degrees 17 minutes E, 250 feet to a point; thence S 64 degrees 43 minutes W, 26.95 feet to a point; thence S 25 degrees 17 minutes E, 86.59 feet to a point; thence S 69 degrees 06 minutes W, 149.27 feet to a point; thence S 25 degrees 17 minutes E, 200 feet to a point; thence S 69 degrees 06 minutes W, 542.81 feet to a point; thence N 34 degrees 0 minutes W, 1,093.47 feet to a point; thence N 64 degrees 35 minutes E, 1,113.59 feet to a point, the place of beginning;

EXCEPTING AND RESERVING the out sale of property on February 27, 1989, described and recorded on March 14, 1989, in Deed Book Volume 2864, Pages 315 to 317, from Nicholas Schur, Margaret Schur, Ann Sarris, Alex Schur and Mildred Schur, his wife, and Michael Schur and Anne Schur, his wife, to James S. Whelan.

The premises hereby conveyed are subject to the following exceptions:

1. Unrecorded easements, discrepancies, or conflicts in boundary lines, shortages in areas or in encroachments, which an accurate survey would disclose.
2. Under and subject to conditions, restrictions, rights-of-way, and easements of record.
3. All previously conveyed or transferred oil, gas, coal, hydrocarbons and mining rights, and other leases and rights of way of record pertaining thereto.

**ALSO EXCEPTING AND RESERVING unto the Grantor, all of Grantors' interest in the coal, gas, oil, and all hydrocarbons and all other minerals underlying the above-described land, whatever that interest may be.**

**ALSO SUBJECT TO:**

1. Any remaining unpaid property taxes;
2. Any judgments, liens, or encumbrances against the within described property.

BEING Tax Map Number 54-03-10-0-103.

**THIS Indenture was impleaded by the Defendant, the Grantor herein, in that civil action filed at No.17CJ04886 in the Court of Common Pleas of Westmoreland County, Pennsylvania. This deed was held by the Honorable Harry F. Smail, Jr., Presiding Judge of the Civil Division, and delivered to the Plaintiff, Christine Biros once a verdict was rendered, and final judgment entered in her favor thereby transferring/conveying ownership of the real property described herein to her.**

**ACCORDINGLY, all deeds of record dated on or after July 16, 2015 are hereby NULL AND VOID. See accompanying Opinion and Order of Court annexed to this deed (Smail, Judge).**

THE true and actual consideration of the conveyance is ONE ($1.00) DOLLAR in that Pennsylvania Real Estate Transfer Taxes, in the amount of $ 6,500.00, were previously paid on

July 09, 2015 was recorded in the Office of the Recorder of Deeds on April 04, 2017, at Instrument Number 201704040010760. **Said deed was later being deemed NULL AND VOID by the Court. See accompanying Opinion and Order of Court annexed to this deed (Smail, Judge).**

**BEING** the same property conveyed to the Sellers/Grantors herein by deed of Nicholas Schur, Margaret Schur, Ann Sarris, Alex Schur, and Michael Schur, dated January 27, 1989, and recorded in the Officer of the Recorder of Deeds of Westmoreland County, Pennsylvania in Deed Book Volume 2858, Page 381. The said Margaret Schur, widow, conveyed her entire interest to Nicholas Schur, Ann Sarris, Alex Schur, and Michael Schur by her deed dated August 5, 1999, and recorded in the Office of the Recorder of Deeds of Westmoreland County, Pennsylvania in Deed Book Volume 3697, Page 048.

PURSUANT TO SECTION 405 OF THE SOLID WASTE MANAGEMENT ACT OF 1980 THE GRANTORS HEREBY STATE THAT THEY HAVE NO KNOWLEDGE OF ANY HAZARDOUS WASTE WHICH IS PRESENTLY BEING DISPOSED OF OR HAS EVER BEEN DISPOSED OF ON THE ABOVE-DESCRIBED LAND OR ANY PART THEREOF.

with the appurtenances: **TO HAVE AND TO HOLD** the same unto and for the use of the said party of the second part for herself, her heirs, executors, administrators, and assigns, forever,

AND the said Henry Lee Moore and Susan Stano, Co Administrators dbncta of the Estate of Nicholas Schur, Deceased, covenant, promise, and agree with the said party of the second part, its successors and assigns, by these presents that they, the said party of the first part have not done, committed, or knowingly or willingly suffered to be done or committed any act, matter, or thing whatsoever, whereby the premises hereby granted or any part thereof, is, are, shall or may be impeached, charged, or encumbered, in title, charge, estate, or otherwise howsoever.

**NOTICE - THIS DOCUMENT MAY NOT/DOES NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE/HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND, IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT, OR MODIFY ANY LEGAL RIGHTS OR ESTATE OTHERWISE CREATED, TRANSFERRED, EXCEPTED, OR RESERVED BY THIS INSTRUMENT. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984, as amended, and is not intended as notice of unrecorded instruments, if any.)**

IN WITNESS WHEREOF, the said HENRY LEE MOORE and SUSAN STANO, Co-Co-Administrators, d.b.n.c.t.a of the Estate of NICHOLAS A. SCHUR, have hereunto set their hands and seals the day and year first above written.

WITNESS:

_____        _____
                                 HENRY LEE MOORE
                                 Co-Administrator, d.b.n.c.t.a
                                 Estate of Nicholas A. Schur

_____        _____(SEAL)
                                 SUSAN STANO
                                 Co-Administrator, d.b.n.c.t.a

Estate of Nicholas A. Schur

**NOTICE** The undersigned, as evidenced by the signature(s) to this Notice and the acceptance and recording of this Deed (is, are) fully cognizant of the fact that the undersigned may not be obtaining the right of protection against subsidence, as to the property herein conveyed, resulting from coal mining operations and that the purchased property, herein conveyed, may be protected from damage due to mine subsidence by a private contract with the owners of the economic interest in the coal. This Notice is inserted herein to comply with the Bituminous Mine Subsidence and Land Conservation Act of 1966.

WITNESS:

_____                    _____
                                              Christine Biros

    The undersigned hereby certifies that the precise residence address of the grantee herein is as follows: _3001 Jacks Run Road White Oak Pa 15131_

_____ , Grantee

COMMONWEALTH OF PENNSYLVANIA )
                             )  SS:
COUNTY OF WESTMORELAND       )

    On this the _11th_ day of _MAY_ , 2019, before me the undersigned authority, personally appeared

 HENRY LEE MOORE, Co-Administrator dbncta of the Estate of Nicholas A. Schur, Deceased,

known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Richard A. Yurt, Notary Public
Penn Twp., Westmoreland County
My Commission Expires April 10, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

_Richard A. Yurt_
_Notary Public_
(Title of Officer)

My commission expires:

*************************************************************

STATE OF OHIO                )
                             )  SS:
COUNTY OF _Butler_           )

    On this the _9_ day of _____ before me the undersigned authority, personally appeared

SUSAN STANO, Co-Administrator dbncta of the Estate of Nicholas Schur, Deceased,

known to me or satisfactorily proven to be the person whose name is subscribed to the within
instrument and acknowledged that she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
(Title of Officer)

My commission expires:

**JUSTIN BARTON**
Notary Public, State of Ohio
My Commission Expires
October 25, 2021

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA
CIVIL ACTION

CHRISTINE BIROS,                    )
                                    )
            Plaintiff,              )
                                    )        No. 4886 of 2017
        v.                          )
                                    )
U LOCK, INC.,                       )
                                    )
            Defendant.              )
                                    )

## NON-JURY TRIAL OPINION AND ORDER OF COURT

BY THE COURT:

The Court held a non-jury trial on the record with regard to this action on April 29, 2019

pursuant to the April 3, 2019 Order of Court designating the matter for a one day non-jury trial.

The case and concerns the conveyance of a property located at 14140 Route 30, North Huntingdon,

Westmoreland County, Pennsylvania, with a County Tax Map Number of 54-03-10-0-103 ("the

Subject Property"). The initial complaint named Denise Schur as Executrix of the Estate of Alex

Schur, Henry L. Moore and Susan Stano as Co-Executors of the Estate of Nicholas Schur, Kathleen

S. Walter as Executrix of the Estate of Michael Schur, and Cynthia Sarris as Administrator of the

Estate of Ann Sarris as Defendants, as these named estates together were the full owners of the

Subject Property. The Estate Defendants were released from the case upon their motion at the

commencement of trial in this matter, upon assurance that the Estates would issue corrective deeds

to the prevailing party in this matter, and noting that the Estates had no further interest in the

litigation. Upon conclusion of trial, proposed findings of fact, conclusions of law and orders of

court, along with accompanying briefs were ordered by this Court, and the same have been duly

considered in rendering the within opinion.

### *FACTS*

An agreement for sale of the Subject Property was entered into by the Defendant Estates and Defendant U Lock, and the same was executed by Defendant U Lock on November 25, 2014 and the Defendant Estates on December 22, 2014. (Exhibit "A"). On July 16, 2015, the Subject Property was conveyed to Defendant U Lock. (Transcript of Trial p 18). Four checks were issued by Plaintiff Christine Biros to the former Defendant Estates in full compensation for their respective ownership interests in the Subject Property. (T.T. p. 19, 23, Exhibit "P1"). A handwritten agreement dated July 16, 2015 and signed by Kash Snyder as Director of U Lock, Inc. sets out in brief the terms of a loan agreement wherein Plaintiff Christine Biros lent the full sum of $325,316.00 to Defendant U Lock for the purchase of the Subject Property. (Exhibit "P5").

U Lock attempted to file Articles of Incorporation on July 15, 2015, but the application was returned by the Commonwealth of Pennsylvania Department of State by letter dated July 17, 2015 for insufficiency. (Exhibit "P2"). The letter indicating the applications rejection provided that the original date of incorporation could be retained, provided that a corrected application was provided to the Department of State within thirty days. (Exhibit "P2"). U Lock's Articles of Incorporation were filed on September 4, 2015 with the Commonwealth of Pennsylvania Department of State. (Exhibit "P3"). No evidence of existent corporate by-laws or minutes was submitted by U Lock, and U Lock admits that the subject property has been and remains uninsured. (T.T. p. 53-54). No tax returns have been filed relative to the property since July 2015. (T.T. p. 69). Corrective deeds naming the now-existent U Lock, Inc. as purchaser of the Subject Property were filed with the Westmoreland County Recorder of Deeds on March 1, 2018. (Exhibits "C," "D," "E," and "F").

It is undisputed that U Lock has remained in possession of the Subject Property exclusively since the transfer on July 16, 2015. Plaintiff has never received any reimbursement from U Lock or on behalf of U Lock, and this is admitted by defendant U Lock. (T.T. p. 32, 66). Defendant U

Lock has since July 16, 2015 received and continues to receive income via the commercial operation of the Subject Property. (T.T. p. 61).

### DISCUSSION AND ANALYSIS

COUNT I – DECLARATORY JUDGMENT

Count I of Plaintiff's Complaint requests a declaratory judgment declaring that: (1) the deeds entered into on July 16, 2015 are *void ab initio*; (2) the Defendant Estates remain the owners of the property in fee simple; (3) Christine Biros delivered the purchase price for the property on the date of payment; (4) the Defendant Estates have received full consideration for title to the property; and (5) that Plaintiff Christine Biros is the equitable owner of the property. At the outset, the Court notes that the Defendant Estates have stipulated to the fact that they have received full consideration for title to the property. The Defendant Estates have agreed to execute deeds in favor of the prevailing party to this suit, and so the Estates have been dismissed from the within action.

As to the question of the July 16, 2015 deeds alleged *void ab initio* status, Plaintiff claims that because the deeds were delivered to "U Lock, Inc.," and U Lock, Inc. was not incorporated until September 4, 2015, the deeds are void from their inception. Defendant U Lock argues that U Lock, Inc. was operating as a *de facto* corporation at the time of the deed execution, and so the deeds were valid.

It is settled law in Pennsylvania that "[a] deed that purports to convey real estate to a nonexistent corporation has no effect." *Borough of Elizabeth v. Aim Sher Corp.*, 462 A.2d 811, 812 (Pa. Super. 1983) (citations omitted). "Upon the filing of the articles of incorporation in the Department of State or upon the effective date specified in the articles of incorporation, whichever is later, the corporate existence shall begin." 15 Pa. C.S. § 1309. In certain situations, a corporation may be considered to exist *de facto* despite the failure of the required process where "…after the approval of the articles or application for a charter or issuance of letters patent but without the

actual recording of the original papers with the endorsements thereon, or a certified copy thereof, in the office of any recorder of deeds..." the attempted corporation conducts business such as the transfer of property. 15 Pa. C.S. § 504. Pennsylvania common law additionally provides a framework under which a *de facto* corporation may exist: "[f]irst, there must be a law or charter under which an organization might be effected. Second, there must be an attempt to organize which falls so far short of the requirements of the law or charter as to be ineffectual. Third, there must be an assumption and exercise of corporate powers, notwithstanding the failure to comply with the law or charter." *Appeal of Riviera Country Club*, 176 A.2d 704, 706 (Pa. Super. 1961).

It is clear that U Lock, Inc. did not come into being until September 4, 2015. This is over seven weeks after the date of payment and conveyance of the property, being July 16, 2015. It is notable that the letter rejecting U Lock's incorporation application provided a method of retaining the original date of incorporation, yet U Lock did not comply with this option. 15 Pa. C.S. § 504 allows that a *de facto* corporation may exist "after the approval of the articles or application for a charter or issuance of letters patent..." This is plainly not the case here, as the application was not approved until September 4, 2015.

Looking to the common law requirements, it is obvious that a law exists under which U Lock may — and eventually did — incorporate. Turning next to the "attempt to organize," comparing the requirements of various cases is illustrative, and demonstrates that this attempt is generally categorized as, at a minimum, the issuance of a corporate charter or other approval by the state. See e.g., *Cochran v. Arnold,* 58 Pa. 399 (Pa. 1868); *Spahr v. Farmer's Bank, Carlisle*, 94 Pa. 429 (Pa. 1880); *Pinkerton v. Pennsylvania Traction Co.,* 44 A. 284, 285 (Pa. 1899); *Schmitt v. Potter Title & Trust Co.*, 61 Pa. Super. 301 (Pa. Super. 1915); *In re Mt. Sharon Cemetery,* 120 A. 700, 701 (Pa. 1923); *Appeal of Riviera Country Club*, 176 A.2d 704, 707 (Pa. Super. 1961). Here, there was no approval or issuance of any state approval until September 4, 2015. U Lock

additionally did not avail itself of the Department of State's offer to retain its original July filing date, falling short of any alleged attempt to incorporate prior to September 4, 2015.

Based on the above reasoning, Defendant U Lock, Inc. was neither a *de facto* nor a *de jure* corporation at the time of the issuance of the original deeds, and so the original deeds are *void ab initio*. As conceded by Defendants Estates at the commencement of trial, the Defendants Estates have been fully compensated for the purchase price of the property by Plaintiff Biros. Plaintiff Biros' equitable ownership of the property will be discussed below.

COUNT II – EQUITABLE ACTION TO COMPEL CONVEYANCE OF TITLE

Count II of Plaintiff's Complaint requests relief in equity conveying title to the property to Plaintiff, Christine Biros. Plaintiff's proposed Conclusions of Law make clear that Plaintiff is proceeding under a theory that U Lock has held the property in a constructive trust for Plaintiff Biros. "The theory underlying the constructive trust doctrine is that '[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.' Courts will impose a constructive trust only where the defendant has acquired the property at issue as a result of fraud, duress, undue influence, mistake, abuse of a confidential relationship, or other such circumstances suggesting unjust enrichment." *Louis Dolente & Sons v. U.S. Fid. & Guar. Corp.*, 252 F. Supp. 2d 178, 182 (E.D. Pa. 2003) (citation omitted).

Even accounting for the *void ab initio* status of the original deeds, the corrective deeds, filed March 1, 2018, show legal title in the Subject Property belonging to U Lock, Inc. Certainly, U Lock has had full possession and control of the property since July 16, 2015, and has collected rents from tenants since that time. It is undisputed by U Lock that Christine Biros paid the full purchase price of the property to the Defendant Estates, and that U Lock has not repaid any of the purchase price to Plaintiff Biros. As such, the present case is ripe for the imposition of a constructive trust,

where it is clear that it would be wholly inequitable for Defendant U Lock to retain the beneficial interest of the property. It is clear that U Lock would be unjustly enriched in maintaining the benefits of the property, which, in addition to the mere ownership of the property itself, also consist of the accumulation of rent via tenants utilizing storage on the property.

As such, the Court finds that equity demands the imposition of a constructive trust in this situation. In its Findings of Fact and Conclusions of Law, Defendant U Lock maintains that the Plaintiff failed to pursue remedies at law, such as a claim for breach of contract, and so relief in equity is unwarranted. Pennsylvania law provides, however, that "a court of equity has the power to afford relief despite the existence of a legal remedy when, from the nature and complications of a given case, justice can best be reached by means of equity's flexible machinery." *Vautar v. First Nat. Bank of Pennsylvania*, 133 A.3d 6, 12–13 (Pa. Super. 2016) (citation omitted).

Here, the Court notes the unique nature of real property in establishing Plaintiff Biros' right to relief in equity, which provides not only the instant unique piece of real property, but the additional tenant rents which have been collected by U Lock since July 2015 and which will continue to accumulate into the future. Additionally, the Court notes that the record reflects doubt as to U Lock's solvency and ability to repay Plaintiff Biros the purchase price of over $300,000.00 now or at any point subsequent. As such, the only equitable solution is the imposition of a constructive trust, and the present conveyance of the Subject Property to Plaintiff Christine Biros.

COUNT III – QUIET TITLE

Plaintiff Biros' Count III requests judgment in quiet title. As title to the subject property has been equitably awarded to Plaintiff Biros pursuant to Count II of this action, any claim in quiet title is moot, and so must be dismissed.

COUNT IV – ACCOUNTING

Plaintiff Biros' Count IV requests an accounting of all sums collected by U Lock from tenants of the subject property since July 16, 2015. To establish a right to an accounting a plaintiff must show the following:

> (1) there was a valid contract, express or implied, between the parties whereby the defendant (a) received monies as agent, trustee or in any other capacity whereby the relationship created by the contract imposed a legal obligation upon the defendant to account to the plaintiff for the monies received by the defendant, or (b) if the relationship created by the contract between the plaintiff and defendant created a legal duty upon the defendant to account and the defendant failed to account and the plaintiff is unable, by reason of the defendant's failure to account, to state the exact amount due him, and (2) that the defendant breached or was in dereliction of his duty under the contract.

*Haft v. U.S. Steel Corp.*, 499 A.2d 676, 678 (Pa. Super. 1985). Here, as the action is based solely in equity and no contract action has been maintained, an accounting is inappropriate. Plaintiff's Count IV must therefore be dismissed.

Based upon the foregoing reasoning, this Court enters the following Order of Court:

## ORDER OF COURT

AND NOW, to wit, this 22nd day of August, 2019, consistent with the analysis contained in the foregoing Opinion; it is hereby ORDERED, ADJUDGED and DECREED, as follows:

1. As to the Plaintiff's Complaint, a verdict is hereby ENTERED in favor of Plaintiff Christine Biros and against Defendant U Lock, Inc. on Counts I and II.

2. Count III of Plaintiff's Complaint is hereby DISMISSED as moot.

3. Count IV of Plaintiff's Complaint is hereby DISMISSED.

4. Any and all deeds executed by any one or all Defendant Estates purporting to convey title to Defendant U Lock, Inc. on July 16, 2015 are *void ab initio* and of no further force and effect.

5. Defendant Estates have received full consideration for title to the Subject Property.

6. Plaintiff Christine Biros is the equitable owner of the Subject Property.

7. Legal title to the Subject Property shall be conveyed to Christine Biros by execution of the appropriate deeds, currently held in escrow.

8. The Court will consider Plaintiff Biros' request for an appeal bond should an appeal be taken by Defendant U Lock.

9. Further, in accord with Pa.R.C.P. No. 236(a)(2)(b), the Prothonotary is DIRECTED to note in the docket that the individuals listed below have been given notice of this Order.

BY THE COURT:

Harry F. Smail, Jr., Judge

ATTEST:

Christina O'Brien

Prothonotary

cc: William E. Otto, Esq.
J. Allen Roth, Esq.
John Tumolo, Esq.
Dennis Del Cotto, Esq.

**pennsylvania** DEPARTMENT OF REVENUE (EX) MOD 04-19 (FI)

1830019105

**RECORDER'S USE ONLY**

**REV-183**
BUREAU OF INDIVIDUAL TAXES
PO BOX 280603
HARRISBURG, PA 17128-0603

**REALTY TRANSFER TAX
STATEMENT OF VALUE**
COMPLETE EACH SECTION

State Tax Paid:

Book: | Page:

Instrument Number:

Date Recorded:

**SECTION I — TRANSFER DATA**

Date of Acceptance of Document

| Grantor(s)/Lessor(s) HENRY LEE MOORE | Telephone Number |
| of SUSAN STANDETEL ESTATE | |

Mailing Address NICHOLAS SCHUR

| Grantee(s)/Lessee(s) CHRISTINE BIROS | Telephone Number |

Mailing Address 3001 JACKS RUN ROAD

| City | State | ZIP Code | City WHITE OAK | State PA | ZIP Code 15131 |

**SECTION II — REAL ESTATE LOCATION**

Street Address 14140 ROUTE 30

City, Township, Borough NORTH HUNTINGDON

County WESTMORELAND | School District | Tax Parcel Number 54-03-10-0-103

**SECTION III — VALUATION DATA**

Was transaction part of an assignment or relocation? ☐ YES ☐ NO

| 1. Actual Cash Consideration $325,000.00 | 2. Other Consideration + | 3. Total Consideration = $325,000.00 |
| 4. County Assessed Value 46,410.00 | 5. Common Level Ratio Factor x 8.13 | 6. Computed Value = 377,313.30 |

**SECTION IV — EXEMPTION DATA**

| 1a. Amount of Exemption Claimed $325,000.00 | 1b. Percentage of Grantor's Interest in Real Estate 43.75 % | 1c. Percentage of Grantor's Interest Conveyed 100 % |

2. Check Appropriate Box Below for Exemption Claimed.

☐ Will or intestate succession. _____

(Name of Decedent) _____ (Estate File Number)

☐ Transfer to a trust. (Attach complete copy of trust agreement and all amendments.)
☐ Transfer from a trust. (Attach complete copy of trust agreement and all amendments.)
☐ Transfer between principal and agent/straw party. (Attach complete copy of agency/straw party agreement.)
☐ Transfers to the commonwealth, the U.S. and instrumentalities by gift, dedication, condemnation or in lieu of condemnation. (If condemnation or in lieu of condemnation, attach copy of resolution.)
☐ Transfer from mortgagor to a holder of a mortgage in default. (Attach copy of mortgage and note/assignment.)
☐ Corrective or confirmatory deed. (Attach complete copy of the deed to be corrected or confirmed.)
☐ Statutory corporate consolidation, merger or division. (Attach copy of articles.)
☐ Other (Provide a detailed explanation of exemption claimed. If more space is needed attach additional sheets.)

PER ORDER OF COURT ATTACHED, PRIOR DEED FROM GRANTOR DECLARED
VOID AB INITIO. TRANSFER TAX WAS PAID ON SUCH DEED

**SECTION V — CORRESPONDENT INFORMATION**

Name WILLIAM E. OTTO, ESQ | Telephone Number 724-519-8128

Mailing Address PO BOX 701 | City MURRYSVILLE | State PA | ZIP Code 15668

Under penalties of law, I declare that I have examined this statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.

Signature of Correspondent or Responsible Party | Date 1/25/2022

**FAILURE TO COMPLETE THIS FORM PROPERLY OR ATTACH REQUESTED DOCUMENTATION MAY RESULT IN THE RECORDER'S REFUSAL TO RECORD THE DEED.**