# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

## No. 25-1177

---

IN RE:  U LOCK, INC,
*Debtor.*

GEORGE SNYDER,
*Appellant.*

---

## BRIEF OF APPELLEE CHRISTINE BIROS

---

On Appeal from the December 31, 2024 Order of the United States
District Court for the Western District of Pennsylvania at Case No.
2:24-cv-135-CB Affirming the January 8, 2024 Decision of the U.S.
Bankruptcy Court for the Western District of Pennsylvania at Case No.
22-20823-GLT Granting in Part the Consent Motion to Approve
Settlement Agreement

---

Stuart C. Gaul, Jr., Esquire
Pa. I.D. No. 74529
Mary A. Shahverdian, Esquire
Pa. I.D. No. 329048
BERNSTEIN-BURKLEY, P.C.
601 Grant Street, 9th Floor
Pittsburgh, PA 15219
(412) 456-8100  Telephone
(412) 456-8135  Facsimile
sgaul@bernsteinlaw.com
mshahverdian@bernsteinlaw.com

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION ........................................................... 1

STATEMENT OF THE ISSUE PRESENTED .......................................... 2

STATEMENT OF RELATED CASES AND PROCEEDINGS ................. 2

CONCISE STATEMENT OF THE CASE ................................................ 4

    A.  The Subject Property and the Constructive Trust ......................... 5

    B.  The U Lock Bankruptcy Proceeding and Biros's Claims ............... 6

    C.  The Settlement Agreement and the Initial Hearing ...................... 8

    D.  The Bankruptcy Court's Hearing on the Revised Settlement
        Agreement ................................................................................ 12

    E.  The Bankruptcy Court's Approval of the Revised Settlement
        Agreement ................................................................................ 15

    F.  The District Court's Affirmance ................................................. 18

SUMMARY OF ARGUMENT ............................................................... 18

ARGUMENT ....................................................................................... 19

THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION
IN DETERMINING THAT THE SETTLEMENT AGREEMENT
WAS FAIR AND EQUITABLE. ............................................................ 19

    A.  Standard of Review ................................................................... 19

    B.  The Bankruptcy Court Identified and Applied the Correct Legal
        Standard. ................................................................................. 20

    C.  The Bankruptcy Court Was Correct That the Settlement
        Was Fair and Equitable. ............................................................ 22

    D.  George Raises No Other Reason to Disturb the
        Decisions Below. ....................................................................... 25

CONCLUSION ................................................................................... 28

COMBINED CERTIFICATIONS

# TABLE OF AUTHORITIES

## Cases

*Biros v. U Lock Inc.*, 255 A.3d 489 (Pa. Super . 2021)...........................5, 6

*Biros v. U Lock Inc.*, 271 A.3d 875 (Pa. 2022) .........................................6

*Carson v. American Brands, Inc.,* 450 U.S. 79 (1981) ...........................22

*In re Alecto Heathcare Servs., LLC,* Civ. Nos. 24-494-GBW,
23-1142-GBW, 2025 U.S. Dist. LEXIS 61698
(D. Del. Mar. 31, 2025) ........................................................................23

*In re American Cartage, Inc.*, 656 F.3d 82 (1st Cir. 2011) .....................22

*In re Brown*, 951 F.2d 564 (3d Cir. 1991) .............................................19

*In re Energy Future Holdings Corp.* 990 F.3d 728 (3d Cir. 2021) .........19

*In re Gypsum Antitrust Cases,* 565 F.2d 1123 (9th Cir 1977) ..............20

*In re Imerys Talc. Am., Inc.*, 38 F.4th 361 (3d Cir. 2022) .....................19

*In re Key3Media Grp., Inc.*, 336 B.R. 87 (Bankr. D. Del. 2005)............22

*In re Martin*, 91 F.3d 389 (3d Cir. 1996) ..................................... passim

*In re Martin*, 490 F.3d 1272 (11th Cir. 2007) ......................................22

*In re New Concept Housing, Inc.,* 951 F.2d 932 (8th Cir. 1991) ............22

*In re NovaPro Holdings, LLC,* 815 Fed. App'x 655
(3d Cir. 2020)..............................................................................22, 23

*In re Nutraquest, Inc.*, 434 F.3d 639 (3d Cir. 2006) .............................19

*In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315
(3d Cir. 2001)..................................................................................19

*In re RFE Industries, Inc.,* 283 F.3d 159 (3d Cir. 2002)..................25, 26

*In re rue21, Inc.*, 575 B.R. 314 (Bankr. W.D. Pa. 2017) ...................16, 23

*In re Trans World Airlines, Inc.*, 145 F.3d 124 (3d Cir. 1998) ............... 19

*In re Tribune Co.*, 464 B.R. 126 (Bankr. D. Del. 2011) .......................... 16

*In re U Lock, Inc.*, 652 B.R. 456 (Bankr. W.D. Pa. 2023) ............ 8, 12, 27

*In re U Lock, Inc.*, Case No. 22-20823-GLT, 2024 Bankr. LEXIS 484,
  2024 WL 878464 (Bankr. W.D. Pa. Feb. 29, 2024) ............................. 3

*In re U Lock, Inc.*, No. 24-1202, 2025 U.S. App. LEXIS 476
  (3d Cir. Jan. 9, 2025) ..................................................... passim

*In re U Lock, Inc.*, No. 24-1163, 2025 U.S. App. LEXIS 1698,
  2025 WL 303065 (3d Cir. Jan. 27, 2025) ................................................ 3

*In re W.T. Grant Co.*, 699 F.2d 599 (2d Cir. 1983) ................................ 22

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry,
  Inc. v. Anderson*, 390 U.S. 414 (1968) ........................................ 20, 21

*Rode v. Dellarciprete*, 892 F.2d 1177 (3d Cir. 1990) ............................ 20

*Snyder v. U Lock, Inc.*, 23cv1410, 2024 U.S. Dist. LEXIS 2872
  (W.D. Pa. Jan. 5, 2024) ............................................................ 16

**Statutes**

11 U.S.C. § 105 ....................................................................... 1

11 U.S.C. § 503 ....................................................................... 7

18 U.S.C. §§ 1961 *et seq.* ........................................................ 3

28 U.S.C. § 157 ....................................................................... 1

28 U.S.C. § 158 ....................................................................... 1

28 U.S.C. § 1334 ..................................................................... 1

42 Pa. C.S. § 5103 ................................................................... 4

## Rules

Fed. R. Bankr. P. 9019 ................................................................ passim

## Treatises

9 *Collier on Bankruptcy* ¶ 9019.03[1] (15th ed. 1993) ...........................20

*10 Collier on Bankruptcy* ¶ 9019.02 (16th ed. 2024) ..............................21

## STATEMENT OF JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 158(d) to consider this appeal. On December 31, 2024, the United States District Court for the Western District of Pennsylvania (the "District Court") entered its memorandum and order from which Appellant George Snyder ("George")[1] takes this appeal. Snyder filed his notice of appeal to this Court in the District Court on January 28, 2025.

The District Court had jurisdiction under 28 U.S. C. § 158(a) to consider Snyder's appeal from the January 8, 2024 decision of U.S. Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court") approving a settlement between the Appellees, Christine Biros and Robert Slone (the "Trustee"). Slone is the Chapter 7 Trustee of the debtor in the underlying *In re U Lock, Inc.* bankruptcy case (the "Bankruptcy Case"). Snyder filed his appeal to the District Court from that order on January 22, 2024.

The Bankruptcy Court had jurisdiction under 11 U.S.C. § 105, 28 U.S.C. §§ 157 & 1334, Fed. R. Bankr. P. 9019, and the Order of

---

[1] Biros adopts the short form "George" for Mr. Snyder because of the substantial number of Snyder Family members involved in this dispute. She intends no disrespect in using only Mr. Snyder's first name.

Reference that the District Court entered on October 16, 1984 to hear

the motion of Appellee Christine Biros to approve her settlement with

Slone.

## STATEMENT OF THE ISSUE PRESENTED

Whether the Bankruptcy Court acted within its discretion in

approving the settlement between Biros and the Trustee, which

resulted in approval of Biros's administrative claim for post-petition

rent at an amount lower than her original and revised claims and was

accompanied by Biros's withdrawal of her other claims against the

estate of the Debtor, as fair and equitable.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

George's sister Shanni Snyder ("Shanni")[2] is the appellant before

this Court in the matters consolidated at Nos. 24-1842 & 24-3134. In

those appeals, Shanni asks this Court to restore her unsecured claim

that the Bankruptcy Court disallowed on the basis of its conclusion that

she procured her putative claim through fraud on several courts.

Shanni attempts to argue in that appeal that the dispute about her

claim is moot even though (or possibly because) she asks this Court to

---

[2] See footnote 1, above.

restore her claim.  *See generally In re U Lock, Inc.*, Case No. 22-20823-GLT, 2024 Bankr. LEXIS 484, 2024 WL 878464 (Bankr. W.D. Pa. Feb. 29, 2024), *aff'd*, Civ. A. No. 24-4782024 U.S. Dist. LEXIS 185882, 2024 WL 4476492 (W.D. Pa. Oct. 11, 2024).[3]

George is among the appellees in this Court in *Biros v. Snyder*, No. 25-1845.  Biros takes that appeal from the District Court's March 31, 2025decision at Case No. 2:23-cv-00297-RJC, which dismissed Biros's claim under the Racketeer-Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, and declined to exercise supplemental jurisdiction over her state-law claims. On July 9, 2025, this Court denied George's motion to dismiss Biros's appeal.

George is also currently a defendant in the District Court at Case 2:25-cv-00912-RJC.  After the District Court declined to exercise

---

[3] The United States Supreme Court granted the applications that George and Shanni separately filed to extend the period in which to petition for certiorari from this Court's decisions in, respectively, *In re U Lock, Inc.*, No. 24-1163, 2025 U.S. App. LEXIS 1698, 2025 WL 303065 (3d Cir. Jan. 27, 2025) (affirming disallowance of George's claim) and *In re U Lock*, 2025 U.S. App. LEXIS 476 (3d Cir. Jan. 9, 2025) (affirming Bankruptcy Court's dismissal of Shanni's complaint in adversary proceeding).  *See* U.S. Nos. 24A972, 24A1036.  However, neither George nor Shanni appears to have actually filed a petition, and those extended deadlines have now passed.

jurisdiction over Biros's non-RICO, state-law claims, Biros filed a praecipe in the Court of Common Pleas of Westmoreland County, Pennsylvania (the "State Court") pursuant to 42 Pa. C.S. § 5103(b) to transfer those unadjudicated claims to that court. Shanni then removed that action *back* to the District Court. George consented in writing to that removal. Biros anticipates filing a motion to remand that case to the State Court.

The Bankruptcy Case itself remains pending.

In the Superior Court of Pennsylvania, Shanni remains the appellant and Biros the appellee in *Biros v. U Lock, Inc.* at 113 WDA 2024.

## CONCISE STATEMENT OF THE CASE

On January 9, 2024, the Bankruptcy Court entered an order in Case 22-20823-GLT (the "U Lock Bankruptcy Case") that granted in part Biros's "Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure" (the "Settlement Motion"), approved the modified settlement agreement between Biros and the Trustee, and, consistent with that modified agreement, denied the remainder of Biros's motion. *(A10-A13)*.

## A. The Subject Property and the Constructive Trust

George was an owner and manager of U Lock, the debtor in the Bankruptcy Case. *(B1)*.

On October 4, 2017, Biros filed a complaint in the State Court against U Lock and four persons (the "Four Executors") who were the executors of the estates of the former owners a property located at 14140 Route 30 in North Huntington Township, Westmoreland County, Pennsylvania (the "Subject Property"). *(B18-B41)*. Biros sought a declaratory judgment that she owned the Subject Property and that deeds for that parcel from the Four Executors to U Lock dated in July 2015 were void *ab initio*. *(B25)*.

Prior to the State Court's 2019 trial of Biros's complaint, the Four Executors agreed to execute deeds to the Subject Property that the court would hold in escrow and deliver to the prevailing party. In return, the State Court released those parties from that action. *(B42)*.

The State Court then conducted a bench trial and determined that U Lock had held the Subject Property in a constructive trust for Biros's benefit and that the 2015 deeds to U Lock were, in fact, void *ab initio*. *(B71-78)*. *See also Biros v. U Lock Inc.*, 255 A.3d 489, 492 (Pa. Super.

2021).  The State Court found that the imposition of the constructive trust in Biros's favor was necessary to prevent unjust enrichment of U Lock.  *(B46-B47)*.

The Superior Court of Pennsylvania affirmed the State Court's decision in 2021.  *Biros*, 255 A.3d at 497.  The Supreme Court of Pennsylvania denied U Lock's petition for review of that decision in January 2022.  *Biros v. U Lock Inc.*, 271 A.3d 875 (Pa. 2022).  No one ever petitioned the United States Supreme Court for certiorari or otherwise directly challenged that decision further.

Immediately following the Supreme Court of Pennsylvania's denial of review, the State Court released to Biros the Four Executors' deeds that conveyed the Subject Property to her.  Biros recorded those deeds.

## B. The U Lock Bankruptcy Proceeding and Biros's Claims

In May 2022, Shanni initiated the Bankruptcy Case by filing an involuntary Chapter 7 petition against U Lock.  *(A19* at #1*)*.  Later that month, the Bankruptcy Court entered an order identifying George as a principal operating officer and managing general partner of U Lock.  *(A20* at #9*)*.

U Lock remained in at least partial possession of the Subject Property until the Bankruptcy Court entered its "Amended Order Granting Motion for Relief from the Automatic Stay" on January 27, 2023. *(A63* at #307, *A11* & n.6*)*.

Biros filed four claims in the Bankruptcy Case, each of which related to U Lock's continuing occupancy of the Subject Property, in August 2022:

- Biros filed an administrative claim seeking payment pursuant to 11 U.S.C. § 503 for post-petition rent. *(A137-A143)*. She later amended that claim. *(A233-A255)*.

- Claim 2 was for payment of real estate taxes of $27,701.59 that were the responsibility of the Debtor and the Bankruptcy Estate. *(B51)*. The Pennsylvania Supreme Court had entered an Order on March 16, 2022 that required U Lock to pay outstanding property taxes owed to Westmoreland County for the Subject Property. *(A313)*.

- Claim 3 sought payment of pre-petition rent in the total amount of $405,000.00 for the period when the Debtor held and used Biros' real property from July 2015 through April 2022. *(A126)*.

- Claim 4 sought payment of unliquidated damages for the cost of environmental remediation as a result of damage by the Debtor to Biros' real property during the period when Debtor had the use and occupancy of the real property. *(A130)*.

In February 2023, subsequent to Biros's submitting those claims, Snyder filed an adversary proceeding against Biros in the Bankruptcy Court, alleging that Biros's taking ownership of the Subject Property

was somehow a preference or a fraudulent conveyance. *(A68 at #343, A222-A232, A397-A418).* She claimed that, instead of Biros's acquiring ownership of the Subject Property from the Four Executors under the constructive trust as of 2015, Biros had acquired the property from U Lock when she recorded the Four Executors' deeds in 2022. *See Snyder v. Biros*, 652 B.R. 456, 462-63 (Bankr. W.D. Pa. 2023).

## C. The Settlement Agreement and the Initial Hearing

On March 1, 2023, Biros moved the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for approval of the comprehensive settlement she and the Trustee had negotiated to eliminate their disputes with respect to all four of her claims (the "Settlement Agreement"). *(A256-A271).* Biros's motion summarized the significant terms of the Settlement Agreement:

- Biros's claim for administrative expenses would be settled for $18,000, representing rent of $2,000 per month for the nine-month period of the Debtor's post-petition possession of Biros' property.

- Biros would not pursue her Claim 2 if the estate paid the outstanding real estate taxes to the taxing authority.

- On Claim 3, Biros and the Trustee agreed that Biros would have an unsecured nonpriority claim of $162,000 for U Lock's pre-petition use and possession of the Subject Property and the accompanying deprivation of Biros' possession.

- Claim 4 was to be allowed as an unsecured nonpriority claim in a compromise amount of $200,000.

Biros's motion laid out the anticipated costs to the debtor's estate if all four of Biros' claims continued in litigation. The motion explained that the litigation would present significant risk to both the Estate and Biros. It offered that the proposed compromise would relieve that burden by providing for a resolution for *all* of the outstanding matters and actions between Biros and the Trustee related to Biros's claims and would allow for the case to be administered and closed. *(A258)*.

Both George and Shanni filed objections that yet again contested Biros's ownership of the Subject Property. They also asserted that the Bankruptcy Court's consideration of the Settlement Motion was premature. *(A281-A283, A284-A344)*. At around that same time, Shanni filed her adversary proceeding against Biros, in which Shanni concurrently attempted to avoid the transfer of the Subject Property to Biros as preferential or a fraudulent conveyance. *(A22, B5)*.

The Bankruptcy Court addressed the motion to approve the Settlement Agreement at a hearing on April 13, 2023. *(A345, A360-A391)*. That court noted that George, as part of his objections, had asserted that $1,500 per month was an appropriate figure for U Lock's

post-petition rent for the Subject Property. *(A361)*. It also questioned the Trustee *(A364-A366)* and Biros's counsel *(A367, A370-A372, A379-A382)*. The Trustee advised that, after investigation, he believed $2,000 per month to be a fair figure for the post-petition rent of the Subject Property. *(A365-A366)*.

When George attempted to challenge Biros's Claim 4, for the prospective costs of environmental remediation, the Bankruptcy Court established that George could provide no report or other documentation contrary to Biros's proffered expert report that supported the amount of her claim. *(A369)*.

The Bankruptcy Court observed, "This is a settlement and compromise, so I'm not looking for perfection and I'm not looking for, you know, crossing every T and dotting every I." *(A373)*. It then considered Biros's claims, beginning with her Claim 1 for post-petition rent:

> I do find that what's been proposed is the allowed administrative expense for use and occupancy post petition wise at $18,000, is reasonable under the circumstances. It's not far off from what the Court had originally estimated during the sale process, and I acknowledged that that's a significant change from the position that Ms. Biros was at several months earlier.

10

*(A373).*

In an apparent reference to this Court's decision in *In re Martin*, 91 F.3d 389 (3d Cir. 1996), the Bankruptcy Court expressed reservations about the claim for pre-petition rent but found "that the *Martin* factors otherwise are satisfied." *(A374).* That court elaborated:

> The difficulty of collection, you know, is one of the estate having limited assets and, furthermore, there is a complexity of the matter that would require unnecessary time and expense and delay to go through and litigate these matters. One thing that's been apparent to me throughout this case and I've remarked on it on several occasions, is the parties have no problems litigating minute or small dollar amount issues to the hilt in a way that is totally out of proportion of what the value of the claim is, so that's to me probably the most compelling thing here is that this would preserve what little is left in the estate for the distribution of creditors. And, so from that standpoint, it's in the paramount interest of creditors to allow the estate to proceed to quantify these claims and get closer to a distribution that the Chapter 7 Trustee can make to creditors.

*(A375).*

Out of caution, the Bankruptcy Court withheld any ruling on the Settlement Agreement while it considered Shanni's then-pending adversary proceeding against Biros. It explained that this delay would "allow me to ensure that there is no money going out the door

prematurely until we have a full handle on the what the estate is and what the respective rights of the parties are." *(A376)*.

At the same time, the Bankruptcy Court advised that the outcome of Shanni's adversary proceeding was likely to have little impact on whether it approved Biros's administrative claim, and it expressly and knowingly allowed the Trustee to pay outstanding real estate taxes for the Subject Property. *(A382-A383)*.

The Bankruptcy Court dismissed Snyder's adversary proceeding against Biros, with prejudice, on July 1, 2023. *(A89 at #487; Snyder*, 652 B.R. at 458-59.

### D. The Bankruptcy Court's Hearing on the Revised Settlement Agreement

In November 2023, Biros requested that the Bankruptcy Court resume consideration of her pending motion and approve a revised version of the Settlement Agreement. *(A449-A454)*. Biros and the Trustee had agreed to settle Biros's claims by allowing her Claim 1, which was her administrative claim for post-petition rent, for $18,000.00. They had also agreed to ask the Bankruptcy Court to dismiss, without prejudice, the remainder of the motion, which addressed Biros's other claims. *(A453-A454)*.

12

As before, George and Shanni filed written objections. *(A455-A458)*.

The Bankruptcy Court considered Biros's request at a hearing on January 4, 2024. *(A462-A480)*. The Trustee, George, and Shanni's counsel were present and spoke.

The Bankruptcy Court began the hearing by confirming that the Trustee had caused the U Lock Estate to pay $28,028.75 in real estate taxes on the Subject Property and that the payment was of the amounts due for the years 2019 through 2022. *(A464-A465)*.

Biros advised the Court that she was no longer pursuing her Claims 2 through 4 because those claims had become "either moot or irrelevant." *(A466-A467)*. As to Claim 2, in particular, Biros stated that, in coming to the revised agreement, she had been aware that the Trustee had paid the property taxes for the Subject Property. *(A466)*. Biros pointed out that her claim amounted to rent of $2,000 per month for the nine post-petition months in which U Lock had retained some possession of the Subject Property. *(A468)*. Biros also noted that the Bankruptcy Court had disposed of Shanni's challenge to her ownership of the Subject Property and that the District Court had just affirmed

that decision. *(A468-A469)*. Biros clarified, "We'd like the $18,000

Administrative Claim to be allowed, to be paid on final distribution.

And the Motion could be dismissed as to the other three Claims, the

9019 Motion." *(A471)*.

The Bankruptcy Court then noted that the interested parties had

been afforded adequate due process:

> I think I've given the parties ample time to be heard. You
> know this was scheduled for a Hearing. This Motion was
> filed in early December and now here we are a month later
> and the parties have had time to be heard on this and have
> voiced full throated Responses and Objections.

*(A470)*.

Shanni, through counsel, stated her position that the Bankruptcy

Court should defer action "until the appeal process plays out in regard

to who the actual owner of the property is." *(A472)*. She also

questioned the Trustee's payment of the real estate taxes for the

Subject Property but did not challenge the Bankruptcy Court's

statement that, regardless of who had paid the taxes, Biros had some

entitlement to post-petition rent. *(A473-A474)*.

The Bankruptcy Court then turned to George, who raised concerns

about the payment of taxes and the extent to which U Lock had been in

possession of the Subject Property during part of the time for which Biros would be entitled to rent. *(A475)*. That court also offered George an opportunity to participate further by Zoom, but George did not indicate that he wished to offer more. *(A476)*.

The Bankruptcy Court then advised, "Otherwise, you know, I'm going to proceed on what we have in front of us and I appreciate your comments." *(A476)*.

### E. The Bankruptcy Court's Approval of the Revised Settlement Agreement

At the same January 4 hearing and after hearing from the interested parties, the Bankruptcy Court orally assessed the merits of the revised Settlement Agreement:

> Having heard all the parties I do find as a supplement to what I've previously stated on the record on the initial Hearing on the Settlement Motion, that there is sufficient grounds to grant the Settlement on a limited basis.

> I do think that Christine Biros and the Trustee have shown that the *Martin* standards are satisfied with respect to the Administrative Rent Claim.

> I do appreciate the compromise that was made there and the compromise indeed is within the Court's expectation of what a reasonable rent would be for the property and for the use that the Debtor had or the Estate had of that property during the time that it occupied the premises.

> So, I am prepared to approve the Settlement as it pertains to the Administrative Rent Claim.

*(A476)*.

The Bankruptcy Court added observations about the claims on which it was not ruling, including particularly the claim for rent that might have fallen due before the commencement of the U Lock Bankruptcy Case and the viability of the claim for environmental remediation. *(A477-A478)*.

Within a day after that hearing, the District Court affirmed the Bankruptcy Court's dismissal of Shanni's adversary complaint against Biros. *See Snyder v. U Lock, Inc.*, No. 23cv1410, 2024 U.S. Dist. LEXIS 2872 (W.D. Pa. Jan. 4, 2024).

The Bankruptcy Court followed up with its four-page order of January 8, 2024. *(A10-A13)*. In that order, that court was adamant that Biros was entitled to a claim in *some* amount for post-petition rent. *(A11)*. It then cited to the fairness factors set forth in *Martin* and looked to its prior holding in *In re rue21, Inc.*, 575 B.R. 314, 323 (Bankr. W.D. Pa. 2017) (citing *In re Tribune Co.*, 464 B.R. 126, 158 (Bankr. D. Del. 2011)), that a compromise "need not be . . . the best compromise, but only that it falls above the lowest range of reasonableness." *(A12)*.

The Court found that $18,000.00 was "far above" that lowest range. *(A12)*.

The Bankruptcy Court was particularly vehement in rejecting George's demand that it should delay further while Shanni pursued any appeal to this Court. It noted that the District Court had recently rejected Shanni's appeal, leaving her with only a "remote possibility that the . . . Third Circuit might reverse."[4] *(A11)*. "Whether the Snyders like it or not," it held, "Ms. Biros is the owner of the Property." *(A11)*.

As Biros and the Trustee had requested, the Bankruptcy Court otherwise denied without prejudice Biros's motion for approval of the Settlement Agreement. *(A12-A13)*.[5]

---

[4] This Court has since proven the Bankruptcy Court's assessment to be correct. *See Snyder*, 2025 U.S. LEXIS 476, at *1.

[5] On January 22, 2024, before George filed his notice of appeal to the District Court on this issue, Biros moved to withdraw her Claims 2, 3, and 4 without prejudice. *(A96 at #530, #532, A493-A499)*. The Bankruptcy Court granted that motion on February 9, 2024. *(A501)*.

## F. The District Court's Affirmance

On George's appeal, the District Court made appropriately short work of holding that, in approving Biros's settlement agreement with the Trustee, the Bankruptcy Court had acted within its discretion. That court pointed to the *Martin* factors, noted that the Bankruptcy Court had acknowledged those factors, and held that the analysis of those factors "supports its decision to approve the settlement." *(A8-A9).* It added that the Bankruptcy Court had given George ample opportunity to be heard on his objections and had actually considered those objections. It therefore affirmed the Bankruptcy Court's order and closed the case before it. *(A7-A8).*

## SUMMARY OF ARGUMENT

This is a simple case. The Bankruptcy Court had authority to approve the proposed settlement between Biros and the Trustee, and, in looking to *Martin*, it used the correct standard. It applied that standard in a reasonable manner.

George raises no credible argument to the contrary. He does little more than attempt to confuse his disagreement with the Bankruptcy Court's conclusion for some sort of insistence that the court did not consider his arguments at all. Neither court below struggled with the

issues here.  This Court should also make short work of this matter, and it should affirm their decisions.

## ARGUMENT

### THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN DETERMINING THAT THE SETTLEMENT AGREEMENT WAS FAIR AND EQUITABLE.

#### A. Standard of Review

In considering appeals from the Bankruptcy Court, this Court applies the same standard of review that the District Court should apply, "unfettered by the district court's determination." *In re Energy Future Holdings Corp.* 990 F.3d 728, 736 (3d Cir. 2021) (citing *In re Brown*, 951 F.2d 564, 567 (3d Cir. 1991)).  This Court "review[s] the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998).

Abuse of discretion is a highly deferential standard of review. *In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir. 2006); *In re Imerys Talc. Am., Inc.*, 38 F.4th 361, 370 (3d Cir. 2022).  An exercise of discretion should not be disturbed "unless there is a definite and firm conviction that the court […] committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id.*  "The test is not

what this court would have done under the same circumstances; that is not enough. The court must feel that only one order could have been entered on the facts." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 320 (3d Cir. 2001) (quoting *In re Gypsum Antitrust Cases,* 565 F.2d 1123, 1128 (9th Cir 1977); *See also Rode v. Dellarciprete*, 892 F.2d 1177, 1182 (3d Cir. 1990) (finding an abuse of discretion "when no reasonable person would adopt the district court's view").

No such error exists here.

## B. The Bankruptcy Court Identified and Applied the Correct Legal Standard.

Rule 9019 of the Federal Rules of Bankruptcy Procedure authorizes bankruptcy courts to approve settlements or compromises. "To minimize litigation and expedite the administration of the bankruptcy estate, 'compromises are favored in bankruptcy.'" *Martin*, 91 F.3d at 393 (quoting 9 *Collier on Bankruptcy* ¶ 9019.03[1] (15th ed. 1993)) (internal quotation marks omitted). In exercising this power, a bankruptcy court may approve a settlement that is "fair and equitable." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

In *Martin*, this Court identified four criteria to consider when faced with assessing the fairness of a proposed settlement:

> (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors.

91 F.3d at 393.

The Bankruptcy Court applied this standard. It recognized the source of its authority in Fed. R. Bankr. P. 9019. *(A10, A360)*. It looked to the requirement of fairness and equity. *(A10)*. In assessing whether the revised Settlement Agreement met this standard, it looked to the *Martin* factors. *(A12, A374-A375, A476)*.

No meaningfully different alternative standard appears to exist. *See* 10 Collier on Bankruptcy ¶ 9019.02 (16th ed. 2024). There is no mistake of law here that might lead this Court to conclude that the Bankruptcy Court abused its discretion, and there is no basis to disturb that court's order approving the settlement.

## C. The Bankruptcy Court Was Correct That the Settlement Was Fair and Equitable.

The Bankruptcy Court correctly noted that, in considering the *Martin* factors, it was not required to decide every question of law and fact raised by a party:

> Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. They do not decide the merits of the case or resolve unsettled legal questions.

*Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) (citing *Anderson*, 390 U.S. at 424-425). "The Bankruptcy Court need not probe the merits of all claims or conduct a 'mini-trial' before approving the settlement; rather, avoiding litigating the issues is one of the main advantages of settlement." *In re NovaPro Holdings, LLC*, 815 Fed. App'x 655, 658 (3d Cir. 2020) (quoting *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92-93 (Bankr. D. Del. 2005), collecting cases).[6]

---

[6] To the same effect as this Court's unpublished decision in *NovaPro*, see *In re American Cartage, Inc.*, 656 F.3d 82, 91 (1st Cir. 2011); *In re Martin*, 490 F.3d 1272, 1275-76 (11th Cir. 2007); *In re New Concept Housing, Inc.*, 951 F.2d 932, 938 (8th Cir. 1991); and *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983).

Rather, the Bankruptcy Court's task was to canvass the evidence and the issues to determine whether, on the basis of the *Martin* factors, the settlement fell "below the lowest point in the range of reasonableness." *In re Alecto Healthcare Servs., LLC*, Civ. Nos. 24-494-GBW, 23-1442-GBW, 2025 U.S. Dist. LEXIS 61698, at *39 (D. Del. Mar. 31, 2025); *see also NovaPro Holdings*, 815 Fed. App'x at 658 (identifying same process). That court "need not [have been] convinced that it is the best possible compromise, but only that it falls above the lowest range of reasonableness." *In re rue21, Inc.*, 575 B.R. at 323.

The Bankruptcy Court did exactly what it was supposed to do. It considered Biros's motion and George's and Shanni's multiple and extensive written objections. It gave all parties a fair opportunity to be heard – twice, and several months apart. *(A360-A391*, *A462-A480)*. It cited and considered the *Martin* factors across its April 2023 hearing, its January 2024 hearing, and its January 2024 order. *(A12*, *A374-A375*, *A476)*.

The Bankruptcy Court's consideration and balancing of the *Martin* factors was completely reasonable. That court went well beyond mere recitation of the factors. It expressed its considered opinions

23

about Biros's succeeding on the merits of her claims, ranging from a virtual certainty of success on her claim for post-petition rent to lesser prospects on the claim for pre-petition rent. It found the $2,000.00-per-month rent figure to be well within the range of reasonableness. It noted the difficulties in collection on any claims given the condition of the U Lock estate. In assessing the likely expense of litigating those claims, it pointed directly to the level of litigiousness in the U Lock Bankruptcy Case. And it noted that its accepting the compromise would bring the legitimate creditors closer to distribution than would its allowing the full litigation of all four of Biros's claims. *(A374-A376)*.

To any extent that the Bankruptcy Court's determinations were contingent, this Court and the District Court resolved that contingency when they affirmed the dismissal of Shanni's adversary proceeding against Biros. *(A11)*. Moreover, by not including the Settlement Agreement's proposed unsecured claims for Biros's Claims 3 and 4, the revised settlement that the Bankruptcy Court actually approved was markedly less favorable to Biros than the settlement that court was prepared to approve in April 2023.

George completely ignores material parts of the record when he asserts that the Bankruptcy Court was unaware of or failed to consider the Trustee's having paid certain real estate taxes. The Bankruptcy Court ended its first hearing on the settlement, in April 2023, by authorizing the Trustee to pay those taxes. *(A382-A383)*. That court then *began* its resumed hearing on the motion in January 2024 by clarifying with the Trustee that he had actually made those payments. *(A464-A465)*. The Bankruptcy Court knew about the taxes, it knew about George's objections, and it patently included them in its consideration of Biros's motion. *(A10 at n.4, A11 at n.5)*. The Bankruptcy Court knew the relevant facts here, and George was aware of that knowledge.

### D. George Raises No Other Reason to Disturb the Decisions Below.

In his remaining arguments, George offers little more than misstatements of the record and misinterpretations of caselaw. These can be addressed briefly:

- *In re RFE Industries, Inc.*, 283 F.3d 159 (3d Cir. 2002) does not disturb this Court's role as a court of review. Although this Court advised the bankruptcy court in that matter to "examine

25

the *Martin* factors in light of the present circumstances," it confronted a situation in which the bankruptcy court had never actually considered those factors but had instead improperly rejected the settlement before it on another basis. *Id.* at 165. Here, of course, the Bankruptcy Court looked to and relied on the *Martin* factors. Moreover, while this Court issued its caution in *RFE* "[b]ecause the situation has changed drastically since Gibbons first negotiated the Settlement," *id.*, George points to nothing of which the Bankruptcy Court was unaware when it approved the settlement in January 2024.

- George's attack on Biros's administrative claim as originally filed is a sideshow that has nothing to do with the merits of his appeal. Certainly, the Bankruptcy Court knew throughout both hearings and reaching its decision here that it had previously determined that Biros's original rent claim was excessive. In approving that settlement, that Court expressly held that the approved amount was reasonable.[7]

---

[7] George's ad hominem attack on Biros on the basis of the Bankruptcy Court's determination about items removed from the Subject Property is, if possible, even less relevant. To the extent any response is

- Similarly, when the Bankruptcy Court made its decision here, it *knew* that Biros's ownership of the Subject Property ran back to 2015. It had made that decision itself. *See Snyder*, 652 B.R. at 458-59.

- The Bankruptcy Court was extraordinarily solicitous of George. It offered him additional opportunity to make any relevant submissions, and he declined that offer. *(A476)*.

- As to George's repeated allegations that Biros has sought to multiply the proceedings here, Biros points this Court towards the pending matters listed in the "Statement of Related Cases and Proceedings" section and Footnote 1, above; to the now-closed matters that were before the District Court at Case Nos. 2:22-cv-01222, 2:22-cv-01284, 2:23-cv-00691, 2:23-cv-00979, 2:23-cv-01410, and 2:24-cv-00478; and to the appeals formerly before this Court at Nos. 23-2293, 24-1163, and 24-1202.

---

necessary, it need only be noted that, while Biros did not agree with many of the Bankruptcy Court's conclusions about that matter, she accepted the finality of that decision, complied with that court's orders, and moved on. *(A106 at ##599, 600)*.

There is no support in the record for any contention that the Bankruptcy Court abused its discretion. The Bankruptcy Court took a reasonable approach and reached reasonable answers to the correct questions. There is no reason at all to conclude to the contrary, and this Court should affirm the decision below.

## CONCLUSION

For all of the reasons stated above, Biros requests that this Court affirm the decisions of the District Court and the Bankruptcy Court.

Respectfully submitted,

BERNSTEIN-BURKLEY, P.C.

Dated: July 23, 2025

By: */s/ Stuart C. Gaul, Jr.*
Stuart C. Gaul, Jr., Esquire.
Mary A. Shahverdian, Esquire
BERNSTEIN-BURKLEY, P.C.
601 Grant Street
9th Floor
Pittsburgh, PA 15219
(412) 456-8100  Telephone
(412) 456-8135  Facsimile
sgaul@bernsteinlaw.com

*Counsel for Appellee,*
*Christine Biros*

## <u>COMBINED CERTIFICATIONS</u>

I, Stuart C. Gaul, Jr., hereby certify as follows:

1. **<u>Bar Membership.</u>** I certify that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

2. **<u>Word Count and Typeface.</u>** This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,332 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac, ver. 16.83 in 14-point, Century.

3. **<u>Service.</u>** I certify that on the 23rd day of July 2025, I am filing this brief with the Clerk of United States Court of Appeals for the Third District via the Court's CM/ECF system, which will cause service on all counsel and parties of record, who are registered as CM/ECF users.

4.     **Identical Compliance of Brief.**  The text of the electronically filed brief and the text of the paper copies are identical.

5.     **Virus Check.**  A virus check has been performed on the PDF file containing the brief.   The virus check was completed using SentinelOne, and no viruses were found.


Dated: June 23, 2025              */s/ Stuart C. Gaul, Jr.*